# Exhibit 18

## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

**NAVY SEAL #1,** *et al.*

Plaintiffs,

v.

**JOSEPH R. BIDEN**, in his official capacity as
President of the United States, *et al.*

Case No. 8:21-cv-02429-SDM-TGW

Defendants.

## DECLARATION OF DAVID J. FURNESS

I, David J. Furness, hereby state and declare as follows:

1.      I am a Lieutenant General in the United States Marine Corps, currently serving as

the Deputy Commandant for Plans, Policies, and Operations, Headquarters Marine Corps,

located in Washington, D.C. I make this declaration in my official capacity, based upon my

personal knowledge and upon information that has been provided to me in the course of my

official duties.

2.      I have been assigned to my current position since August 2021. Prior to my

current assignment, I served as the Assistant Deputy Commandant for Plans, Policies and

Operations from August 2020 to August 2021. My Marine Corps career began in 1987 when I

was commissioned as a Second Lieutenant on 16 May after graduating from the Virginia

Military Institute. Throughout my career I have served in a variety of command and staff billets

in both the operating forces and supporting establishment.

(a) As a Lieutenant I served as a rifle platoon command and an 81mm mortar platoon commander in the Second Marine Division with 3d Battalion, 4th Marines and 2d Battalion, 8th Marines. As a Captain and Major I served in the 1st Marine Division as the Commanding Officer of Company K, and the Operations Officer of the 3rd Battalion, 7th Marines. As a Lieutenant Colonel I again served in the 1st Marine Division as the G3 Plans Officer, Deputy G-3, Commanding Officer of 1st Battalion, 1st Marines, and then as the Executive Officer of the 1st Marine Regiment. As a Colonel I commanded the 1st Marine Regiment. As a General Officer I commanded Combined Joint Task Force-Horn of Africa, and the 2d Marine Division.

(b) In the Supporting Establishment I have served on the staff of The Basic School as a Staff Platoon Commander and as a Tactics Instructor for both the Basic Officer and Infantry Officer Course, as Commanding Officer of Recruiting Station Sacramento, California, as the Director, Marine Corps Legislative Liaison Office, United States House of Representatives, as the Director of Expeditionary Warfare School, as the Legislative Assistant to the Commandant of the Marine Corps, and as the Assistant Deputy Commandant for Plans, Policy and Operations, Headquarters, United States Marine Corps.

(c) My professional military education includes The Basic School, the Infantry Officer Course, the U.S. Army Infantry Officer Advanced Course, the Marine Corps Command and Staff College, the School of Advanced Warfighting, and the National War College. I earned Masters Degrees from both the Marine Corps Command and Staff College and the National War College.

(d) I participated in contingency operations in the Republic of Panama, and in the following named operations: Operation Provide Comfort, Operation Unified Assistance, Operation Iraqi Freedom, and Operation Enduring Freedom.

(e) As part of my duties currently, I am responsible for coordinating the development and execution of Marine Corps plans and policies related to the structure, deployment, and employment of Marine Corps forces in general. I am also the Operations Deputy for the Commandant on all Joint Chiefs of Staff matters. In this capacity I serve as the focal point for the interface between the Marine Corps and the other joint and combined activities of the Joint Chiefs of Staff and the unified Commanders-in-Chief, and various allied other foreign defense agencies.

3. On August 24, 2021, the Secretary of Defense directed the Secretaries of the Military Departments to immediately begin full vaccination of all members of the Armed Forces under DoD authority on active duty or in the Ready Reserve. The Secretary of the Navy directed implementation of SECDEF's COVID-19 vaccination mandate[1] via a Department-wide administrative message (ALNAV) on August 30, 2021. The ALNAV applies to both Services within the Department of the Navy (DON), the United States Navy and the United States Marine Corps. The ALNAV requires all active duty DON Service members, who are not already vaccinated, exempted, or currently seeking an exemption, to be fully vaccinated with an FDA-approved COVID-19 vaccine within 90 days, and all Reserve Component personnel to be fully vaccinated within 120 days. ALNAV 062/21 ¶ 4.

4. Active duty Sailors and Marines must therefore become fully vaccinated by November 28, 2021, and Reserve Component Sailors and Marines must become fully vaccinated[2] by December 28, 2021. The requirement to obtain full vaccination constitutes a lawful order under

---

[1] SECDEF Memo, "Memorandum for Senior Pentagon Leadership, Commanders of the Combatant Commands, Defense Agency, and DoD Field Activity Directors," (August 24, 2021).
[2] Although refusal to receive the vaccine may subject a member to adverse administrative or disciplinary action, the vaccine will not be forcibly administered to any member who refuses.

3

Article 92 of the Uniform Code of Military Justice (UCMJ), and failure to comply may result in punitive or adverse administrative action, or both. ALNAV 062/21 ¶ 5.

5.  The USMC issued service-specific guidance via a separate administrative message ("MARADMIN") on September 1, 2021. MARADMIN 462/21 outlines Marine Corps policy concerning the mandatory vaccination of USMC service members, vaccination administration and reporting requirements, and general guidance related to logistics and distribution of vaccines. The policy reiterates that all Marine Corps active and reserve personnel must become fully vaccinated against COVID-19, unless medically or administratively exempt. MARADMIN 462/21 ¶ 3.a.-3.b.  The requirement to become fully vaccinated is a lawful order, punishable under Article 92 of the Uniform Code of Military Justice (UCMJ). *Id*. ¶ 3.l.; 10 U.S.C. § 892. Ordinarily, any officer with authority to convene courts-martial or administer nonjudicial punishment under Article 15 of the UCMJ may dispose of alleged violations of the UCMJ. Manual for Courts-Martial ("MCM"), Part II, Rules for Court Martial, 401.  The authority to dispose of offenses arising from COVID-19 vaccine refusals is withheld to the general court-martial convening authority, although the special court-martial convening authority may issue administrative counseling. MARADMIN 462/21 ¶ 3.l.  Withholding this authority from lower ranking commanding officers and commanders precludes administrative separation or disciplinary action without elevated review and direction of a general officer.[3]

6.     MARADMIN 462/21 ¶ 3.j & 3.k provides that service members may seek two types of exemptions, medical and administrative.  Medical exemptions to vaccination are governed by Army Regulation (AR) 40-562, which is a consolidated Military Services regulation

---

[3] "General officers" comprise the highest ranks in the military. Officer ranks range from O-1 to O-10, with general officers occupying the ranks between O-7 to O-10. In the Marine Corps, a general officer is any officer serving in the rank of Brigadier General or higher.

applicable to the Navy and Marine Corps via Bureau of Medicine Instruction 6230.15B

(hereinafter BUMEDINST 6230.15B). Granting medical exemptions is a medical function,

whereas granting administrative exemptions is a non-medical function. BUMEDINST 6230.15B,

2-6.

     7.     The policy provides the following with respect to medical exemptions:

a. Medical exemptions. A medical exemption includes any medical contraindication relevant to a specific vaccine or other medication. Health care providers will determine a medical exemption based on the health of the vaccine candidate and the nature of the immunization under consideration. Medical exemptions may be temporary (up to 365 days) or permanent. Standard exemption codes appear in appendix C.

     (1) *General examples* of medical exemptions include the following—

          (a) Underlying health condition of the vaccine candidate (for example, based on immune competence, pharmacologic or radiation therapy, pregnancy and/or previous adverse response to immunization).

          (b) *Evidence of immunity* based on serologic tests, documented infection, or similar circumstances.

          (c) An individual's clinical case is not readily definable. In such cases, consult appropriate medical specialists, including specialists in immunization health care.

AR 40-562, ¶ 2-6a.(1) (emphasis added).

As the policy reflects, these are just examples of situations when health care providers may

determine a medical exemption is warranted but each exemption request is an individual

determination based on the health of the individual and the disease at issue. Additionally, there

are *some*, but not all, diseases in which serologic or other tests may be used to identify pre-

existing immunity.[4]

---

[4] The AR states, *"Screening for immunity.* For *some* vaccine-preventable diseases, serologic or other tests can be used to identify pre-existing immunity from prior infections or immunizations that may eliminate unnecessary immunizations." AR 40-562, 2-1.g (emphasis added).

8. MARADMIN 462/21 ¶ 3.j. provides specific guidance related to processing medical exemptions. The policy requires the electronic documentation of vaccination or vaccine exemption, if applicable, in the Medical Readiness Reporting System (MRRS) and the Service member's Electronic Health Record (EHR). MARADMIN 462/21 ¶ 3.h.2. Permanent medical exemptions are granted only where the service member has a medical contraindication to the COVID-19 vaccine and must be approved by the first Command Surgeon, in the grade of O-5 or above, in the Service member's chain of command. MARADMIN 462/21 ¶ 3.j. Temporary medical exemptions may be granted when there is a temporary medical reason to postpone vaccination, and such exemptions may be approved by a licensed DoD healthcare provider. *Id.*

9. On October 7, 2021, MARADMIN 533/21 was issued to provide additional guidance related to the documentation of medical exemptions. Permanent medical exemptions are assessed, granted, and documented as required by MARADMIN 462/21 and MARADMIN 533/21 ¶2.c.2. All administrative exemptions are required to be documented in the Medical Readiness Reporting System (MRRS) not later than October 24, 2021, for active duty service members, and November 24, 2021, for reserve component personnel. MARADMIN 533/21 ¶ 2.c. Members with pending exemption requests are granted temporary medical exemptions pending the approval or denial of their request.[5] MARADMIN 533/21 ¶2.c.4.

10. For either a temporary or permanent medical exemption request, medical providers evaluate the patient for medical contraindications based on documented medical history and/or clinical evaluation, and an assessment of the benefits and risks to the patient. BUMEDNOTE 6300 of September 3, 2021, *Clinical Consultation Guidance for COVID 19 Vaccine Permanent Exemption* (published September 3, 2021). Additionally, medical providers

---

[5] No disciplinary or administrative action will be initiated with a permanent medical exemption request is pending.

are encouraged to request expert consultation by an immunizations specialist, when necessary.

Medical contraindications for the COVID-19 vaccine include:

(a)  Anaphylaxis from a previous COVID-19 vaccine or COVID-19 vaccine ingredient;

(b)  Myocarditis or pericarditis after COVID-19 vaccine administration or infection;

(c)  Temporary association of Stevens-Johnson Syndrome or Guillain-Barré Syndrome that cannot be attributed to another underlying cause within 6 weeks of COVID-19 vaccine administration or infection;

(d)  Thrombosis with Thrombocytopenia Syndrome (TTS) after COVID-19 vaccine administration;

(e)  Persistent clinical symptoms lasting 4 or more weeks following a COVID-19 infection that cannot be attributed to another underlying cause after evaluation and focused workup ("Long COVID").  *Id.*

In the *Clinical Consultation Guidance*, providers are also encouraged to consult CDC guidance.[6]

11.    If a patient does not present with contraindications for COVID-19 vaccination, or does not otherwise present a clinical case requiring specialized assessment under BUMEDINST

---

[6] An example of CDC clinical considerations includes:

If you were treated for COVID-19 with monoclonal antibodies or convalescent plasma, you should wait 90 days before getting a COVID-19 vaccine. Talk to your doctor if you are unsure what treatments you received or if you have more questions about getting a COVID-19 vaccine.

If you or your child has a history of multisystem inflammatory syndrome in adults or children (MIS-A or MIS-C), consider delaying vaccination until you or your child have recovered from being sick and for 90 days after the date of diagnosis of MIS-A or MIS-C. Learn more about the clinical considerations for people with a history of multisystem MIS-C or MIS-A.

https://www.cdc.gov/coronavirus/2019-ncov/vaccines/faq.html

6230.15B, paragraph 2-6a.(1)(c), the patient does not qualify for a permanent medical exemption.

12.     In contrast to medical exemptions, granting administrative exemptions is a non-medical function handled by separate procedures. Administrative exemptions may be granted for reasons such as pending separation or retirement, permanent change of station, emergency leave, and religious accommodation. BUMEDINST 6230.15B, ¶ 2-6.b.  Marine Corps policy concerning requests for the accommodation of religious practices generally, including immunizations, is outlined in Marine Corps Order (MCO) 1730.9 (attached as Exhibit A to this declaration).  A service member seeking an exemption from immunization for religious reasons must submit the request, using Navy Marine Corps (NAVMC) 10274 Administrative Action (AA) Form (attached as Exhibit B to this declaration),   in accordance with MCO 1730.9, paragraphs 4.a.(2) and 4.a.(3).

>       a. The requirements for a request include: (1) the nature of the accommodation requested, (2) the duration of the request, (3) the religious or sincerely held spiritual basis for the request, and (4) the faith group or belief system identified with the request. MCO 1730.9 ¶ 4.a.(3). Service members must complete an interview with the cognizant command chaplain, who assesses whether the requestor's beliefs appear sincerely held for recommendation to the commander. *Id.*, encls. (1) and (2). Requests for the accommodation or religious practices for medical requirements are forwarded, via the general court-martial convening authority, to the Deputy Commandant, Manpower and Reserve Affairs (DC M&RA)[7] for action as the adjudication authority. *Id.* ¶ 4.b.

---

[7] "Requests for the accommodation of religious practices that require the waiver of Department of Navy and Marine Corps Orders and regulations will be submitted to DC M&RA via the first GCMCA. This type of request includes requests for grooming, religious apparel, and medical requirements. Prior to an Adjudication Authority determination, the authority must consult with their staff judge advocate." *Id.* ¶ 4.b.

8

Requests for waiver of immunization requirements must be forwarded to DC M&RA within 30 days of receipt of the request. *Id*. ¶ 4.b.(2). DC M&RA review and final determination must be made within 60 days of receipt of the request.[8] *Id*.

　　b. If a policy, practice, or duty substantially burdens a Marine's exercise of religion then the request can only be denied if the military policy, practice, or duty is in furtherance of a compelling governmental interest, and there is no lesser restrictive means to furthering that compelling interest. *Id*. ¶ 3.a. The policy states that the Marine Corps, not the Marine requesting the accommodation, carries the burden of proof in establishing that the policy, practice or duty furthers a compelling governmental interest and there are no lesser restrictive means to further that interest. *Id*. ¶ 3.a.(2).

　　c. MCO 1730.9 directs the adjudication authority to consider every request on a case-by-case basis. However, adjudication authorities may consider the "individual and the cumulative effects of granting similar religious accommodation requests on the necessary elements of mission accomplishment;" *Id*. ¶ 4(b)(2). MCO 1730.9 lists specific considerations to be considered when a member requests a religious accommodation seeking exemption from vaccination requirements.[9] The DC M&RA also considers the recommendation of the Religious Accommodation Board.[10] Further, the adjudication

---

[8] No disciplinary or administrative action will be initiated while a request for an exemption for religious accommodations is pending.

[9] "The Marine Corps requires immunizations for all Marines, based upon our compelling interest in military readiness and the health and safety of the Total Force. Immunizations are an important component of individual and unit medical readiness. Marines may be called upon to operate in environments and under conditions that increase their exposure and susceptibility to illness, particularly in deployed environments and when Marines are required to be in close proximity to each other such as recruit training and embarked on ships, aircraft, and military vehicles. Mission accomplishment may require that Marines be immunized to protect against disease due to increased exposure potential, or to conform with international health regulations incident to foreign travel or unit deployment." *Id.,* ¶ 3.f.(1).

[10] The Religious Accommodation Review Board (RARB) consists of a minimum of three voting members and non-voting advisors, to include a recorder, a legal advisor, a chaplain advisor, and other personnel as determined by the Board President. *Id.,* Encl. 3, ¶ 1. The RARB provides written recommendations as to the merits of each

authority may consider any adverse health and safety impacts of the request in rendering its decision. *Id.*, ¶ 4.b.(3)(b). For any medical-related accommodation request, paragraph 4(e)(6) requires the Director, Health Services provide a medical advisory. If the request for religious accommodation for immunization is disapproved, the service member has the right to request an appeal to the Commandant of the Marine Corps (CMC).[11] *Id.* ¶ 4(c)(1).

13.     Enforcement Generally: USMC commanders are required to issue appropriate orders to ensure Service members under their command are fully vaccinated. MARADMIN 462/21 ¶ 3.1. In the event a service member does not qualify for an exemption and refuses the order to become vaccinated, the member's refusal is documented in MRRS and the general court-martial convening authority may initiate disciplinary or adverse administrative action. MARADMIN 533/21 ¶ 2.c.4.

14.     Disciplinary options generally: While MARADMIN 462/21 elevates disposition authority for cases involving vaccine refusal to the general court-martial convening authority, commanders generally possess a wide array of administrative and disciplinary options with which to dispose of Service members' offenses under the UCMJ. Subject to the limits of the commander's authority, the commander's administrative corrective measures include formal or

---

religious accommodation request and whether the DC M&RA should approve or deny, in whole or in part, each request. The Board may also recommend an accommodation request be temporarily or partially denied. *Id.*, Encl. 3, ¶ 2.

[11] "The appellate authority for religious accommodation requests that can be approved consistent with Department of Navy and Marine Corps Orders and regulations is the first Marine Corps GCMCA The Appellate Authority for religious accommodation requests that require waiver of Department of Navy and Marine Corps Orders or regulations is the Commandant of the Marine Corps (CMC). The Assistant Commandant of the Marine Corps or the Director of the Marine Corps Staff may take action on behalf of the CMC. Decisions by an Appellate Authority are final. A Service member who desires to appeal DC M&RA's decision will submit the appeal in standard naval letter addressed to CMC within 10 business days of receiving the determination. The appeal should provide substantive information as to why the Service member or applicant believes the decision was unjust. The appeal will be sent to CMC(MPO) at MPO@usmc.mil." *Id.* ¶ 4.c.(1).

informal counseling, non-punitive letters of caution or censure,[12] withholding of privileges, and extra-military instruction, as governed by the relevant service policy.  Disciplinary options include non-judicial punishment under Part V of the MCM, disposition of the charges by court-martial where the commander has the authority to do so, or forwarding of charges for trial by court-martial where the commander does not.

    a. Nonjudicial punishment is a forum generally reserved for minor offenses, or those offenses which the maximum sentence would not include a Dishonorable Discharge or confinement for greater than one year if tried by a general court-martial. MCM, Part V ¶ 1.e. Punishments are limited by the rank and position of the cognizant commander, as well as the rank of the person accused of misconduct. *Id.* ¶ 2, 5.  Punishments and service limitations are outlined in MCM Part V and the Manual of the Judge Advocate General (JAGMAN), but commonly include some combination of the following: admonishment or reprimand, extra duties, restriction, reduction in rank, or forfeiture of pay. MCM, Part V ¶ 5; JAGMAN, 0111. Commanders are encouraged to permit the accused to speak with counsel subject to the immediate availability of counsel, the delay involved, and operational commitments or military exigencies.  JAGMAN 0108 ¶ a.(1).  Service members not attached to a vessel have the right to refuse non-judicial punishment and request trial by court-martial. MCM, Part V ¶ 3; JAGMAN 0108 ¶ a. Following imposition of non-judicial punishment, the service member has five working days to submit an appeal, and may request additional time for good cause. MCM, Part V ¶ 7. The member's appeal is forwarded, along with the commander's endorsement, to the cognizant general court-martial convening authority for action. MCM, Part V ¶ 7; JAGMAN, 0117.

---

[12] Non-punitive letters of caution or censure are matters between the issuing authority and the counseled member and do not become part of the member's official service record.  Manual of the Judge Advocate General (JAGMAN) 105 ℙb.(2).

        b.  More serious offenses under the UCMJ may be subject to trial by court-

martial.  There are three types of courts-martial: summary court-martial, special court-martial,

and general court-martial.  Depending on the rank and position of the commander, he or she may

or may not be authorized to convene certain types of courts-martial. UCMJ, 10 U.S.C. § 821-24.

Further, the nature of the proceedings and punishments available are limited depending on the

forum and rank of the accused. *See* UCMJ, 10 U.S.C. Chapter 47, Subchapters IV, VIII.  The

most severe punishments, such as the death penalty, a Dishonorable Discharge, Dismissal, or

extended periods of confinement, are only available at general courts-martial, and certain

offenses are only permitted to be tried by general courts-martial.  *Id.*  Summary courts-martial

are less formal than either special or general courts-martial, which are equivalent in formality

and procedure to civilian criminal courts; however, each court-martial forum is governed by the

procedures outlined in the MCM, Part II, Rules for Court Martial.  Special courts-martial and

general courts-martial, in particular, have substantial legal and procedural requirements with

respect to pre-trial, trial, and post-trial judicial proceedings.[13] The adjudication of trials by court-

martial generally take months before the court is convened, and may take several months,

depending on the matters involved in the case and the court's docket, prior to the trial date.

Upon conclusion of the trial, the member may appeal the findings or sentence as provided in

Chapter XI and XII of the MCM.

        15.    Administrative Separations Generally: Adverse administrative action includes

administrative separation from the service. Administrative separation procedures may vary in

certain respects depending on the Service member's status (officer or enlisted), years of service,

---

[13] Relevant to a charge of violation of Article 92 (disobeying a lawful order) for refusal to receive the COVID-19 vaccination, an accused member could choose to raise all available affirmative defenses, including the lawfulness of the order, at court-martial.

and record of performance, among other factors. Administrative separations for officers are processed in accordance with SECNAV Instruction 1920.6D (hereinafter SECNAVINST 1920.6D) and Chapter 4 of MCO 1900.16, Separation and Retirement Manual (hereinafter MARCORSEPMAN), while enlisted administrative separations are processed pursuant to MARCORSEPMAN, Chapter 6. "Marines refusing the COVID-19 vaccination, absent an approved administrative or medical exemption, religious accommodation, or pending appeal shall be processed[14] for administrative separation." MARADMIN 612/21 ¶ 3.a.

16.     Adverse incidents involving officers require notification to the CMC, Military Personnel Policy Branch. MARCORSEPMAN ¶ 4101. The CMC shall initiate administrative separation processing when the officer's performance or conduct is such that administrative separation is appropriate. *Id*. Reasons for separation are outlined in SECNAVINST 1920.6D, and include reasons such as Misconduct, Moral or Professional Dereliction, and Substandard Performance. The specific procedures involved with processing an officer for misconduct are outlined in SECNAVINST 1920.6D, Enclosure (6), "Policy Governing Involuntary Separation for Cause or Parenthood", and Enclosure (7), "Guidelines on Separations for Cause".

17.     The applicable procedures may vary in certain respects depending on the officer's type of appointment, years of service, and record of performance, among other factors. Probationary officers may be processed without a Board of Inquiry (BOI) when the show cause authority determines that an Honorable, or General (under honorable conditions) characterization of service is appropriate. SECNAVINST 1920.6D, Encl (2), ¶ 25; Encl (7), ¶ 3.a. Non-probationary officers must be processed using BOI procedures, which entails a formal administrative hearing over which a panel of no fewer than three senior officers preside in order

---

[14] Although processing for separation is required, this does not automatically result in a member actually being separated. Members processed for separation may ultimately be retained in the service.

to make findings with respect to the bases for separation, and recommendations with respect to retention or separation, and character of service. *Id.*, Encl (7) ¶ 4; Encl (11).

18.     Separation processing should be completed 30 calendar days from the date a command notifies an officer of the commencement of separation processing in cases where no BOI is required. SECNAVINST 1920.6D ¶ 9b.  In cases where a BOI is required, the processing goal is 90 calendar days from the date a command notified an officer of the commencement of separation processing.  *Id.* at ¶ 9c.  Every effort is made to adhere to these time goals but the failure to process an administrative separation within the prescribed time goals will not constituted a bar to separation or characterization.  *Id.* at ¶ 9.

19.     Enlisted Marines may be separated for the convenience of the government for reasons including refusal of medical treatment, including refusal of inoculation, if the refusal interferes with duty.  MARCORSEPMAN ¶ 6203.7.e.  Alternatively, Marines may be separated by reason of misconduct for offenses which would warrant a punitive discharge under the UCMJ, which includes violations of Article 92 of the UCMJ. MARCORSEPMAN ¶ 6210.6. Marines with fewer than six years of service may be processed using notification procedures under MARCORSEPMAN 6303, unless characterization of service[15] of Other Than Honorable is warranted.  Administrative board procedures under MARCORSEPMAN paragraph 6304 are used in instances where an Other Than Honorable characterization is warranted, or for Marines with greater than six years of service, if they elect an administrative board.

---

[15] A characterization of service is assigned to a Service member upon separation from the military and generally reflects the quality of an individual's military service. The highest characterization of service is Honorable, followed by General (Under Honorable Conditions), Other Than Honorable, Bad-Conduct, and Dishonorable. Officers may be awarded a Dismissal, which is akin to a Dishonorable discharge. The first three types of characterization may be awarded using administrative procedures, whereas Bad Conduct and Dishonorable discharges, as well as an officer's Dismissal, are considered "punitive discharges." These types of discharges may only be awarded by a court-martial sentence and imposed after appellate review is complete.

20.     Notification procedures afford the Marine with notice of the adverse
administrative action and an opportunity to submit written matters for consideration, whereas
administrative board procedures require a formal administrative hearing.  The
MARCORSEPMAN processing time goal where a board is not required is 15 working days after
the Marine received notification of separation. MARCORSEPMAN ¶ 6102.  If a board is
required, action should be completed within 50 working days after the Marine received
notification of separation. *Id.*

21.     MARADMIN 462/21 permits the special court-martial convening authority to
issue administrative counseling pursuant to paragraph 6105 of the MARCORSEPMAN, which
provides the following for involuntary separations by reason of misconduct:

> "In cases involving unsatisfactory performance, pattern of misconduct, minor
> disciplinary infractions, or other bases requiring counseling under paragraph
> 6105, separation processing may not be initiated until the Marine is counseled
> concerning deficiencies and afforded a reasonable opportunity to overcome those
> deficiencies."

MARCORSEPMAN ¶ 6105.3.  The duration of time that affords the Marine a "reasonable
opportunity" is determined by the commanding officer on a case-by-case basis, and the
commanding officer must sign the formal counseling document (commonly known as a "Page
11"). *Id.*  The MARCORSEPMAN provides standard language to include to advise the Marine of
potential disciplinary or adverse administrative action, to include administrative separation, and
advises the member of his or her right to provide a rebuttal to be filed with the counseling. *Id.*

22.     Discharged service members may seek a review of his or her discharge through
the cognizant Discharge Review Board (DRB). 10 U.S.C. § 1553.  The DRB is empowered to
change and issue a new discharge on grounds of equity or propriety. 32 C.F.R. § 70.9.  DRBs
may consider factors such as the applicant's service history, awards and decorations, letters of

commendation or reprimand, wounds received in action, acts of merit, length of service, convictions by court-martial or civilian convictions, non-judicial punishments, records of unauthorized absence, or records relating to the member's discharge. *Id*.  Discharged service members may also seek an upgraded discharge from the appropriate Board for Correction of Military Records (BCMR), which is the Board for Correction of Naval Records (BCNR) for the Navy and Marine Corps personnel. 10 U.S.C. § 1552.  The BCNR has more extensive authority than DRBs to upgrade discharges, void discharges, alter reenlistment codes, and remove otherwise inaccurate or adverse documents from a service member's record.  The BCNR may correct any military record when it is necessary to correct an error or remove an injustice.  *Id*. The BCNR's action may result in a member being reinstated in the Marine Corps. If a Service member is unable to obtain relief through the appropriate DRB or BCMR, the service member may elect to challenge the agency's decision and administrative proceedings in federal court under applicable federal law.

23.  In summary, the Marine Corps is providing its personnel opportunities to seek medical and religious exemptions from the requirement to be vaccinated.  For those Marines who do not wish to pursue an exemption or have their exemption requests denied after full adjudication including appeals and still refuse to be immunized, the Marine Corps' interest in good order and discipline is best served by adjudicating each refusal on a case-by-case basis.  Each Marine will be afforded all due process to which he or she is entitled while fully exhausting intra-service administrative and disciplinary processes that result in a final agency action.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true

and correct. Executed this 3rd day of November, 2021.

DAVID J. FURNESS

Furness Declaration - Exhibit A



**DEPARTMENT OF THE NAVY**
HEADQUARTERS UNITED STATES MARINE CORPS
3000 MARINE CORPS PENTAGON
WASHINGTON DC 20350-3000

MCO 1730.9
M&RA (MPO)
12 July 2021

MARINE CORPS ORDER 1730.9

From:  Commandant of the Marine Corps
To:    Distribution List

Subj:  ACCOMMODATION OF RELIGIOUS PRACTICES IN THE MARINE CORPS

Ref:   (a) Free Exercise Clause of the First Amendment to the Constitution of
           the United States
       (b) The Religious Freedom Restoration Act of 1993 (RFRA),
           42 U.S.C. § 2000bb, *et seq.*
       (c) 10 U.S. Code §774
       (d) DoDI 1300.17, Religious Liberty in the Military Services
       (e) SECNAVINST 1730.8B CH-1, Accommodation of Religious Practices
       (f) MCRP 6-11D, Sustaining the Transformation (28 Jun 99)
       (g) MCTP 6-10A CH 1, Sustaining the Transformation (4 Apr 18)
       (h) MCWP 6-11, Leading Marines (formerly FMFM 1-0)
       (i) MCO 1020.34H, Marine Corps Uniform Regulations

Encl:  (1) Chaplain Interview Checklist Template
       (2) Chaplain Memorandum for the Record Template
       (3) Religious Accommodation Review Board

1.  <u>Situation</u>.  Pursuant to reference (a), Service members have a right to
observe the tenets of their religion or to observe no religion at all, as
provided in this Order.  Reference (b) prohibits the federal government from
substantially burdening a person's exercise of religion unless the government
can demonstrate the burden to the person is: (1) in furtherance of a
compelling government interest; and (2) the least restrictive means of
furthering that compelling government interest.  This Order implements Marine
Corps policy for religious accommodation requests in accordance with
references (d) and (e).

2.  <u>Mission</u>.  As required by references (a) – (d), the Marine Corps will
accommodate individual expressions of sincerely held beliefs (conscience,
moral principles, or religious beliefs) which do not have an adverse impact
on a compelling government interest.  Religious accommodation includes
excusing a service member from an otherwise applicable military policy,
practice, or duty.  In accordance with reference (d), if such a military
policy, practice, or duty substantially burdens a service member's exercise
of religion, the accommodation request can only be denied if the cognizant
Adjudication Authority determines the following: (1) the military policy,
practice, or duty is in furtherance of a compelling government interest; and
(2) the military policy, practice, or duty is the least restrictive means of
furthering that compelling governmental interest.

DISTRIBUTION STATEMENT A:  Approved for public release; distribution is
unlimited.

MCO 1730.9
12 JUL 2021

3. <u>Execution</u>

a. <u>Commander's Intent</u>

(1) Per references (b) through (d), Marine Corps Adjudication Authorities will accommodate practices of a Marine based on a sincerely held religious belief when such requests do not adversely affect a Marine or unit's mission accomplishment capabilities.  Accommodation includes excusing a Marine from an otherwise applicable military policy, practice, or duty.  In accordance with reference (d), if such military policy, practice, or duty substantially burdens a Marine's exercise of religion then a request for accommodation can only be denied if:

(a) The military policy, practice, or duty is in furtherance of a compelling governmental interest; and

(b) The denial is the least restrictive means of furthering that compelling interest.

(2) In applying the standard of paragraphs 3.a.(1)(a) and 3.a.(1)(b), the burden of proof is placed upon the Marine Corps, not the individual requesting the exemption.

(3) Commanders making final determinations on requests will consider, with appropriate annotation on the determination, the elements of mission accomplishment that form the basis of the compelling governmental interest.

(4) Commanders must remain objective in considering requests to accommodate religious practices.  Each request for religious accommodation must be reviewed on a case-by-case basis, giving consideration to the full range of facts and circumstances relevant to the specific request.  It is essential that commanders articulate the factual basis underlying their decision.

b. <u>Compelling Governmental Interest</u>  The United States Marine Corps has a compelling governmental interest in mission accomplishment at the individual, unit, and organizational levels.  The necessary elements of mission accomplishment include: (1) military readiness; (2) unit cohesion; (3) good order and discipline; and (4) health and safety.  Adjudication Authorities must pay particular attention to how religious accommodation request determinations will impact the unit's ability to accomplish the mission.  In making their decision, the matters to be considered by a commander include, but are not limited to, the following:

(1) The Marine Corps has a compelling interest in instilling in each Marine an identity as part of a team.  Almost everything the Marine Corps does, it does as a team.  It trains as a team, fights as a team, wins as a team.  This identity is in the very nature of a "Corps."  To be effective, every member of the team must commit to accepting a role and a willingness to sacrifice individually to carry out that role in support of the team.  To defend our nation, some Marines have been, and will be called upon to make the ultimate sacrifice.  A commitment of this magnitude runs counter to humanity's most primal survival instincts, but the mission of the Corps requires it.  The very nature of being a Marine means possessing more than a willingness to go into harm's way—it requires the strength of character to move forward in environments that will cost Marine lives.  To do this, Marines must have more than courage.  They must have the highest level of

discipline and a unique trust in those with whom they serve.  They must know at an instinctual level that their fellow Marines are as committed to stepping forward in those dangerous environments to execute the mission. This discipline is forged through Marine training and culture, instilled as an ethos at the very beginning of a recruit's journey to becoming a Marine, and carried with them into those dangerous and difficult environments for which the Corps was created.

(2) The Marine way of life includes the use of certain tools to instill and maintain that team mindset.  One such tool is the uniform.  For the Marine, uniformity is a reminder for the individual that they have joined a storied team with a warrior culture.  An individual joins the Corps and through the transformation to Marine, joins a team that relies on individual sacrifice and performance in the context of executing the Corps' mission.  As a practical matter, this means that everyone desiring to be a Marine often must be willing to give up something to accept uniformity and what it means. This common sacrifice contributes to the forging of unit cohesion.

(3) Importantly, the uniform is a representation of commitment to other Marines.  It does not supersede an individual Marine's personal beliefs or values.  No Marine will be asked to change their personal beliefs, including religious beliefs, which are protected by the United States Constitution.  The Corps has an obligation to try to find ways to facilitate each Marine's commitment to their faith as well as to each other.  To facilitate that obligation, the Corps has created a process enabling each Marine to request a waiver of its regulations to allow the display or facilitation of articles of faith.  That process is outlined herein.

c.  <u>Pre-accession Requests and Delayed Entry Program</u>.  During the screening process, the recruiter will explain to the applicant the Marine Corps' uniform and grooming policies and the religious accommodation policy. An applicant will acknowledge an understanding of these policies, in writing, and inform the recruiter if they maintain religious beliefs that would require an accommodation of the uniform and/or grooming policies.  The recruiter will explain the conditions and considerations taken by commands and individuals when an accommodation has been requested as described in sections 3.c, 3.d, 3.e, and 3.f of this Order.  An applicant must be determined by the Recruiting Station to be a qualified applicant for accession before a request for religious accommodation will be considered. The applicant will acknowledge, in writing, an understanding of these policies.  Once a decision on the accommodation request is made, the applicant may accept the decision and then be contracted and enter the delayed entry program or direct ship.  While in the delayed entry program, the recruiter reinforces the requirements to be a Marine, and begins to instill the sense of team over self.  The qualified applicant begins to gain an understanding of what it means to be a Marine and begins transforming underlying assumptions of being a Marine into service beliefs of being a Marine.  This transformation, as identified in references (f) and (g), begins as the qualified applicant prepares for recruit training.

d.  <u>Entry Level Training (ELT)</u>.  Of particular importance is the recruit training phase which begins the ELT continuum.  During recruit training, the recruit is transformed from a civilian into a United States Marine.  Recruit training instills the understanding of, and ability to, put the needs of the unit over an individual Marine's needs.  Uniformity plays an integral role in the Transformation.  As the Marine proceeds through the ELT continuum, the

Marine is increasingly introduced to working with military equipment, and the associated necessary health and safety precautions.

    e.  <u>Unit Assignment</u>

        (1) <u>Fleet and Deployable units</u>.  Marines assigned to Fleet and deployable units face the possibility of protecting the interest of the United States in the full range of conflict at any time.  Unit readiness, safety and security are essential in ensuring Marine units are ready to respond to crisis.  Marines assigned to these units are involved in many inherently dangerous activities to include combat operations.  Personal protective equipment is required.  Some accommodations may not be suitable during such assignments and previously approved accommodations are subject to review.  During combat deployments, the needs of the unit are greater than the needs of the individual.

        (2) <u>Non-deployable units</u>.  Marines assigned to non-deployable units are typically involved in fewer inherently dangerous activities and have less reliance on personal protective equipment and therefore, health and safety considerations are weighed against some accommodations.  However, the need for uniformity in public-facing ceremonial duties is high.  Marines who perform ceremonial duties must be mindful that they represent the entirety of the Corps to the general public and to each specific audience for whom ceremonies are performed.  When performing public-facing ceremonial roles, Marines must signal that the Corps is neutral on matters of religion.  This is an important representational role, one that inspires others to join the Corps and that communicates to national leaders and others that the Corps is achieving its goal of creating a cohesive group of warriors capable of defending the nation's interests.

    f.  <u>Other Considerations</u>

        (1) The Marine Corps requires immunizations for all Marines, based upon our compelling interest in military readiness and the health and safety of the Total Force.  Immunizations are an important component of individual and unit medical readiness.  Marines may be called upon to operate in environments and under conditions that increase their exposure and susceptibility to illness, particularly in deployed environments and when Marines are required to be in close proximity to each other such as recruit training and embarked on ships, aircraft, and military vehicles.  Mission accomplishment may require that Marines be immunized to protect against disease due to increased exposure potential, or to conform with international health regulations incident to foreign travel or unit deployment.

        (2) The Marine Corps generally accommodates religious dietary observances by adopting a standard core menu that supports many religious dietary requirements at military dining facilities, ashore and afloat, as well as by issuing meals, ready-to-eat (MREs) and meals, religious, ready-to-eat (MRE-R) in field environments.  However, forward deployed dining facilities may not be able to provide for all dietary practices and MRE or MRE-Rs cannot always be guaranteed.  When military dining facilities, MREs or MRE-Rs cannot meet a Marine's religious dietary observances during training events, commanders may authorize Marines to provide their own supplemental food rations to the extent that health, safety or mission readiness of the unit is not compromised.

(3) The Marine Corps generally accommodates religious observance requests by permitting Marines time off for worship and similar religious observance practices, consistent with mission accomplishment. Time off for religious observances can routinely be addressed by modifying duty schedules, or by granting leave or liberty when the time required for religious observance would interfere with the performance of normal duties. However, a Marine must also be prepared to perform alternative duty or duty hours for the benefit of the team. Marines must also recognize that time for religious observances may not always be readily available in a forward-deployed or operational environment.

4. Concept of Operations

   a. Accommodation Requests

      (1) Qualified Applicant Requests. Qualified applicants will be briefed on the requirements of references (d) and (e) and this Order and screened on their willingness to comply with reference (i) if accessed into the Marine Corps. Qualified applicants may submit a pre-accession request for religious accommodations in accordance with this Order. Qualified applicants requesting an accommodation will be interviewed by a chaplain, per enclosures (1) and (2). A decision concerning the request must be made prior to participation in the commissioning program, warrant officer program, enlistment, reenlistment, enrollment in a Military Service Academy or a Senior Reserve Officers' Training program, or award of such scholarship or benefit. Pre-accession requests for religious accommodations will be forwarded through the chain of command to the Commanding General, Marine Corps Recruiting Command (CG, MCRC), for further coordination with the Deputy Commandant, Manpower and Reserve Affairs (DC M&RA). Qualified applicants who submit such requests may not be accepted for enlistment before DC M&RA makes a determination on their requests.

      (2) Service Members. Service member religious accommodation requests will be submitted using the NAVMC 10274 AA form. Requests requiring DC M&RA decision will be forwarded, via the chain of command, to include the first Marine Corps General Court-Martial Convening Authority (GCMCA) in the chain of command. Service members submitting a religious accommodation request must continue to comply with the policy, practice, or duty from which an accommodation has been requested until informed that the request has been approved by the appropriate authority unless exceptional circumstances exist. The cognizant Appellate Authority may determine whether a particular circumstance qualifies as an exceptional circumstance. For the purposes of this Order, a cadet or midshipman enrolled at a Military Service Academy or in a Reserve Officers' Training Corps are considered service members.

      (3) Minimum requirements. Religious accommodation requests will include the nature of the accommodation requested, duration of the request, the religious or sincerely held spiritual basis for the request, and the faith group or belief system identified with the request. Requesters are encouraged, but not required, to propose viable alternatives that could balance the Marine Corps and Marine's interests appropriately (e.g., limiting a request to the wear of certain religious attire in an indoor setting or identifying an alternative immunization). If applicable, the request must also include a photo or description of any head covering, religious affiliated item, grooming standard, and/or personal appearance for which the requester is requesting accommodation. For Service member requests, an

interview from the cognizant command chaplain is required.  See enclosures (1) and (2).

   b.  Adjudication Authority.  Religious accommodation requests that can be approved/denied consistent with Department of Defense, Department of Navy, and Marine Corps Orders and regulations will be reviewed and acted upon by a Marine Corps special court-martials convening authority (SPCMCA).  This type of request includes requests for dietary practices and time off for religious observances.  Requests for the accommodation of religious practices that require the waiver of Department of Navy and Marine Corps Orders and regulations will be submitted to DC M&RA via the first GCMCA.  This type of request includes requests for grooming, religious apparel, and medical requirements.  Prior to an Adjudication Authority determination, the authority must consult with their staff judge advocate.

      (1) Review and Action Timelines

         (a) Review and Action Timelines.  Adjudication Authority review and final determinations for requests that can be approved consistent with existing orders, regulations, and policies must be made within 30 business days of receipt of a request that meets the minimum requirements under this Order.  However, Adjudication Authority review and a final determination for requests originating from outside the United States or for Reserve Component Service members not on active duty must be made within 60 days of receiving a request that meets the minimum requirements under this Order.  Exceptions to these timelines may be granted only in exceptional circumstances.

         (b) Requests that require the waiver of otherwise applicable orders, regulations, and policies, must be forwarded to DC M&RA within 30 days of receipt of a request that meets the minimum requirements under this Order.  Requests originating from outside the United States or for Reserve Component service members not on active duty must be forwarded to the DC M&RA within 60 days of receipt of a request that meets the minimum requirements under this Order.  DC M&RA review and final determinations for these requests must be made within 60 days of receipt of a request.  In addition, the individual requesting the accommodation must be informed of the final determination within five business days of final action.

         (c)  All pre-accession qualified applicant requests will be submitted to DC M&RA for final determination.  The request must be received by DC M&RA within 30 days from submission to recruiter.

         (d) Per reference (d) to establish controls for compliance, commands will inform DC M&RA when a request for accommodation is received.

      (2) Standard of Review.  The Marine Corps will approve an individual request for accommodation unless such approval erodes a compelling government interest.  The factors detailed above shall be considered.  Adjudication Authorities must demonstrate that their determinations consider whether the request is based on a sincerely held religious belief and whether there is a less restrictive alternative means of meeting the compelling government interest while providing for a religious accommodation.  Adjudication Authorities must consider every request on a case-by-case basis.  However, Adjudication Authorities may consider: (1) the individual and the cumulative effects of granting similar religious accommodation requests on the necessary elements of mission accomplishment; and (2) whether any existing exemptions available for other individuals or entities could be expanded to include the

requester in whole or in part.  Pursuant to reference (d), Adjudication
Authorities must ensure, to the greatest extent practical, the consistent
application of the policies and procedures prescribed by this Order.  This
should include a consistent application of prior accommodation decisions.

        (3) In making their decision, the matters to be considered and
annotated by an adjudication authority include, but are not limited to, the
following:

            (a) The unit's readiness and potential impacts of the request.
This includes consideration of the overall mission of the unit and of the
particular position the service member occupies.

            (b) Any adverse health and safety impacts of the request.  This
includes potential interference with the proper functioning of special or
protective military equipment (for example a respirator, gas mask, protective
helmet or communication gear).

            (c) Whether or not accommodations of similar nature have been
granted in the past within the unit and the cumulative impact of repeated
similar accommodations.  Note, requests to accommodate religious practices
should not be approved or denied simply because similar requests were
approved or denied in the past.

            (d) Least restrictive alternate means to fulfil the request that
support the Service member in the exercise of their religious beliefs and
practices.

        (4) Adjudication Authority Notice of Resolution

            (a) A qualified applicant or service member will be informed of
the approval or disapproval of their request for accommodation in accordance
with the review and action timelines in this Order.

            (b) A religious accommodation request may be granted in whole or
in part.  The qualified applicant or service member will be informed in
writing of any conditions or limitations placed on the approval to meet the
compelling governmental interest in mission accomplishment.  For example,
conditions related to deployment, health and safety issues relative to
particular assignments or types of assignments, or training events or
ceremonial occasions that require a service member to conform to military
standards to protect health and safety, or maintain good order and
discipline.

            (c) A qualified applicant or service member whose request is
granted in whole or in part will be informed, in writing, of the specific
elements of that approval.

    c.  Administrative Appeal Process.  An appeal must be requested in
writing within five business days of receipt of final decision by the
adjudication authority.  An appeal must be forwarded via the chain of
command, through the first Marine Corps GCMCA in the chain of command, for
appellate decision.

        (1) Appellate Authority.  The appellate authority for religious
accommodation requests that can be approved consistent with Department of
Navy and Marine Corps Orders and regulations is the first Marine Corps GCMCA.

MCO 1730.9
12 JUL 2021

The Appellate Authority for religious accommodation requests that require waiver of Department of Navy and Marine Corps Orders or regulations is the Commandant of the Marine Corps (CMC).  The Assistant Commandant of the Marine Corps or the Director of the Marine Corps Staff may take action on behalf of the CMC.  Decisions by an Appellate Authority are final.  A Service member who desires to appeal DC M&RA's decision will submit the appeal in standard naval letter addressed to CMC within 10 business days or receiving the determination.  The appeal should provide substantive information as to why the Service member or applicant believes the decision was unjust.  The appeal will be sent to CMC(MPO) at MPO@usmc.mil.

    d.  Duration and Proposals to Rescind.  In accordance with reference (d), an approved religious accommodation request will remain in effect during follow-on duties, assignments, or locations, and for the duration of a service member's military career, including after promotions, reenlistment or commissioning, unless and until rescinded in accordance with the requirements of this Order.  As detailed above, the Adjudication Authority may place conditions or limitations on the request, for example those related to deployment, health and safety issues relative to particular assignments or types of assignments, or training events or ceremonial occasions.

        (1)  Rescissions and modifications.  An approved accommodation may be subject to review and rescission, in whole or in part, at any time, based upon a determination that the circumstances and conditions under which the grant of accommodation was approved have changed (e.g., deployment, new duties, or other material change in circumstances).  The standard for repealing a previously granted accommodation is the same as the standard for denying an accommodation request.  Proposals to review, rescind, or modify an approved accommodation will, at a minimum, originate from the cognizant SPCMCA and will state the basis on which the proposed review, rescission or modification of the religious accommodation has been submitted.  When such a proposal is initiated, the service member will be afforded the following:

            (a)  A written summary of the nature of the materially changed circumstances that require such review and repeal;

            (b)  No fewer than 10 business days to review and comment on the proposed rescission of the accommodation;

            (c)  An opportunity to review and comment on any endorsements of the proposal from the chain of command;

            (d)  Subject to security classification requirements, the opportunity to review and comment on any documents or attachments to the proposal or subsequent endorsements.

        (2)  Exigent Circumstances

            (a)  Previously approved requests may be revoked due to exigent circumstances in furtherance of a compelling government interest and due to operational necessity, when time is of the essence, and no less restrictive means of religious accommodation are available.  Exigent circumstances may include instances in which a competent military authority has identified a specific and concrete threat to the health and safety (such as toxic chemical, biological, radiological, nuclear agents that may merit a heightened protective posture).  During exigent circumstances, the cognizant GCMCA, after consultation with their staff judge advocate, must notify a

service member of the need to suspend a religious accommodation, the basis for the suspension, the date the suspension will go into effect, and the service member's right to appeal.  The cognizant GCMCA shall inform DC M&RA of any actions to suspend a religious accommodation due to exigent circumstances within three business days.  Service members will have five business days to submit their appeal to DC M&RA.  A Service member may temporarily self-suspend an approved accommodation without surrendering the approval.

(b) Imminent Threat Exigent Circumstances.  During exigent circumstances involving an imminent threat to individual, unit, or organizational health and safety, the GCMCA may shorten or eliminate the notification and appeal process until such time as the imminent threat to health and safety no longer exists.  The cognizant GCMCA shall inform DC M&RA of any actions to suspend a religious accommodation due to imminent and exigent circumstances within three business days.

e.  Subordinate Element Tasks

(1)  Deputy Commandant for Manpower and Reserve Affairs (DC M&RA)

(a) Establish a non-statutory Religious Accommodation Review Board ("Board") to consider religious accommodation requests requiring DC M&RA determination (see enclosure (3)).

(b) In accordance with references (d) and (e), the DC M&RA is delegated the authority to act on religious accommodation requests that require waiver of Department of Navy and Marine Corps issuances, directives, and regulations.

(2) Commanding General, Training and Education Command (CG TECOM)

(a) Ensure the training curriculum for commanding officers and sergeants major include appropriate education and training on this Order.

(b) Provide subject matter expertise on the Transformation Process during the ELT training continuum.

(3) Commanding General, Marine Corps Recruiting Command (CG MCRC)

(a) Ensure qualified applicants are screened on their willingness to comply with reference (i), if inducted into the Marine Corps.  Qualified applicants may submit a pre-accession request for religious accommodation in accordance with this order.

(b) Qualified applicants who submit such requests may not be accepted for enlistment before DC M&RA makes a determination on their requests.  Pre-accession requests for religious accommodations will be forwarded through the chain of command to the CG MCRC, for further coordination with the DC M&RA.

(c) Ensure Service members in the Ready Reserve submit their request for religious accommodation through Marine Corps Individual Reserve Supporting Activity chain of command before joining them through Prior Service Recruiting.

MCO 1730.9
12 JUL 2021

(d) Ensure recruiters are provided appropriate education and training on this Order.

(4) <u>Chaplain of the Marine Corps</u>

(a) Provide a chaplain advisor to support the Religious Accommodation Review Board, who assess the interviewing chaplain's advisement to the command concerning the sincerity and the nature (i.e., conscience, moral principles, or religious beliefs) of the held beliefs.

(b) Ensure chaplains complete enclosures (1) and (2) for all accommodation requests.

(c) Ensure chaplains assigned to the Marine Corps are provided appropriate education and training on this Order.

(5) <u>Staff Judge Advocate to the Commandant of the Marine Corps (SJA to the CMC)</u>

(a) Provide a legal advisor to support the Religious Accommodation Review Board.

(b) Ensure staff judge advocates assigned to the Marine Corps commands are provided appropriate education and training on this Order.

(6) <u>Director, Health Services (HS)</u>.  Provide a medical advisory for any medical related accommodation request.

f.  <u>Coordinating Instructions</u>

(1) DC M&RA will make determinations on requests for grooming, religious apparel, and medical practices (including, but not limited to, immunizations and deoxyribonucleic acid (DNA) specimen samples).

(2) Commanding officers will make determination on dietary requests and requests for time off for religious observances in accordance with the guidance in this Order.

(3) Service members requesting an accommodation within the context of this Order will be interviewed by a chaplain.  The chaplain will conduct an interview of the Marine and record it with the templates found in enclosures (1) and (2).  The interviewing chaplain shall assess the sincerity and the nature (i.e., conscience, moral principles, or religious beliefs) of the held belief.

(4) Nothing in this Order precludes disciplinary or administrative action for conduct by a service member that is prohibited by Chapter 47 of Title 10, U.S. Code, also known as the "Uniform Code of Military Justice."

(5) An expression of sincerely held beliefs may not be used as the basis of any adverse personnel action, discrimination, or denial of promotion, schooling, training, or assignment.

g.  <u>Definitions</u>

(1) <u>Business Days</u>.  Any day except any Saturday, any Sunday, any day which is a federal legal holiday, or a day in which the Office of Personnel

MCO 1730.9
12 JUL 2021

Management designates the federal offices in the Washington D.C. area as closed.

(2) Exceptional Circumstances. An incident that is out of the ordinary, unavoidable, or unexpected where time is of the essence and the incident requires immediate and mandatory intervention. For example, a showing of exceptional circumstance may include the exercise of certain religious practices for a medical emergency or funeral rite.

(3) Qualified Applicant. A Marine Corps applicant who has been found to be mentally, morally, and physically qualified for accession in to the Marine Corps. This term includes applicants applying for a commissioning program, warrant officer program, enlistment, reenlistment, or enrollment in a military service academy or Reserve Officers' Training Corps program (including military service academy preparatory schools).

(4) Service Member. For the purposes of this Order, this term means a member of the Marine Corps. Additionally, this term means members of the Navy who are serving with Marine Corps units and authorized to wear the Marine Corps uniform.

5. Administration and Logistics

a. Records Management. Records created as a result of this directive shall be managed according to National Archives and Records Administration (NARA)-approved dispositions per SECNAV M-5210.1 CH-1 to ensure proper maintenance, use, accessibility and preservation, regardless of format or medium. Records disposition schedules are located on the Department of the Navy/Assistant for Administration (DON/AA), Directives and Records Management Division (DRMD) portal page at: https://portal.secnav.navy.mil/orgs/DUSNM/DONAA/DRM/Records-and-Information-Management/Approved%20Record%20Schedules/Forms/AllItems.aspx. Refer to MCO 5210.11F for Marine Corps records management policy and procedures.

b. Privacy Act. Any misuse or unauthorized disclosure of Personally Identifiable Information (PII) may result in both civil and criminal penalties. The Department of the Navy (DON) recognizes that the privacy of an individual is a personal and fundamental right that shall be respected and protected. The DON's need to collect, use, maintain, or disseminate PII about individuals for purposes of discharging its statutory responsibilities shall be balanced against the individuals' right to be protected against unwarranted invasion of privacy. All collection, use, maintenance, or dissemination of PII shall be in accordance with the Privacy Act of 1974, as amended (5 U.S.C. 552a) and implemented per SECNAVINST 5211.5F.

c. Recommendations. Recommendations for the content of this Order may be sent to Manpower and Reserve Affairs (M&RA), Manpower Military Policy (MPO) branch.

11

MCO 1730.9
12 JUL 2021

6.  <u>Command and Signal</u>

a.  <u>Command</u>.  This Order is applicable to the Total Force.

b.  <u>Signal</u>.  This Order effective date signed.

David H. Berger
Commandant of the Marine Corps

Distribution: PCN 10202400600

12

MCO 1730.9
12 JUL 2021

CHAPLAIN INTERVIEW CHECKLIST TEMPLATE

| Requester: | | | | Interview Date: |
|---|---|---|---|---|
| Name: | | | | Chaplain Interviewer: |
| Phone: | | | | Phone: |
| Email: | | | | E-mail: |
| Command: | | | | Chaplain's Command: |
| Interview Preliminaries | | | | |
| Yes | No | N/A | | |
| | | | Chaplain reviewed policy and doctrine on religious accommodation and the policy for which the requestor is seeking accommodation. | |
| | | | Requester was notified that the interview is not confidential and will be used to advise the command. | |
| | | | Chaplain explained to the requester that confidential support can be received from another chaplain. | |
| | | | Requester has been granted a waiver for this practice previously. | |
| Type of Waiver Requested | | | | |
| Yes | No | N/A | | |
| | | | Uniform standards | |
| | | | Grooming standards | |
| | | | Immunization requirements | |
| | | | DNA sampling | |
| | | | Other (Please describe): | |
| Interview | | | | |
| Yes | No | N/A | | |
| | | | Requester's beliefs (conscience, moral principles, or religious beliefs) seemed honestly and sincerely held using one or more of the following factors: | |
| | | | 1. Requester was credible (consistently keeps tenets, practices, etc.). | |
| | | | 2. Requester's demeanor and pattern of conduct are consistent with the request. | |
| | | | 3. Requester participates in activities associated with the belief(s). | |
| | | | 4. Other persons supporting the claim are credible. | |
| | | | 5. Request is supported by letter(s) of verification or endorsement from an organization espousing the beliefs which are the basis for the claim. | |
| | | | Alternate means of accommodating the practice were explored in the interview. | |
| Process Checklist | | | | |
| Yes | No | N/A | | |
| | | | Chaplain has prepared a memorandum documenting the interview. | |
| | | | Chaplain reviewed memorandum with requester and provided a copy. | |
| | | | Chaplain submitted the memorandum and this document to the commanding officer via chain of command. | |
| | | | Chaplain referred requester to command to process request. | |

MCO 1730.9
12 JUL 2021

## CHAPLAIN MEMORANDUM FOR THE RECORD TEMPLATE

Date

From: [Chaplain's rank and name], CHC, USN
To:   [Commanding Officer of requester]

Subj: REQUEST FOR A WAIVER OF POLICY TO ACCOMMODATE
      PRACTICE BASED ON RELIGIOUS BELIEF ICO [REQUESTER'S
      RANK, NAME]

Ref: (a) DoDI 1300.17
     (b) SECNAVINST 1730.8B

1.  (Requester's rank and name) has submitted a request for accommodation of a religious practice.  Per MCO 1730.9, I interviewed the requester on (date).  I explained that this interview would not be a confidential communication as defined by reference (b) and informed the requestor that referral for confidential chaplain support was available.

2.  Nature of the request.  (Provide a narrative summary of the request for religious accommodation and whether or not the requestor has previously had this or any other related request approved or denied).  The narrative summary should also identify the beliefs are derived from a matter of conscience, rooted in moral principles, or religious beliefs.

3.  Basis.  (Identify the religious beliefs on which the accommodation request is based and provide a professional and objective opinion regarding the religious importance of the request to the member.

4.  Alternate Means.  (Indicate alternate means of meeting the request).

5.  Sincerity.  (Assess the sincerity of the requester.  The memorandum should focus on the sincerity of the member's personal religious beliefs, including the information provided during the interview).

6.  My contact information is (telephone number and e-mail address).

[Signature]

Copy to:
(Rank and name of requester)

Enclosure (2)

MCO 1730.9
12 JUL 2021

RELIGIOUS ACCOMMODATION REVIEW BOARD

1.  The Religious Accommodation Review Board will use existing M&RA board structure and will consist of a minimum of three voting members assigned by DC M&RA.  The Board will be supported by non-voting advisors, to include a recorder, a legal advisor, a chaplain advisor, and other personnel as determined by the Board President.

2.  The Board will make written recommendations as to the merits of each religious accommodation request and whether the DC M&RA should approve or deny, in whole or in part, each request.  The Board may also recommend an accommodation request be temporarily or partially denied.  For example, the Board may recommend a particular accommodation request be denied for a short period of time during ELT (e.g., during recruit training), for safety reasons (i.e., within 25 feet of an operating aircraft), or during combat operations (i.e., to ensure the proper wear or function of special or protective clothing or equipment).

3.  For each accommodation request where the Board recommends an accommodation be temporarily approved or denied, the Board is encouraged to make a recommendation on what conditions could affect the modification or revocation of an accommodation.

4.  The Board is encouraged to make specific recommendations that will allow consistent accommodation decision for Marines serving in similar MOSs, geographical locations, and duty assignment.

Furness Declaration - Exhibit B

**ADMINISTRATIVE ACTION (5216)**
**NAVMC 10274 (REV. 3-93) (EF)**
Previous editions will be used
SN:  0109-LF-063-3200  U/I:  PADS OF 100

| 1.  ACTION NO. | 2.  SSIC/FILE NO. |
|---|---|
| 3.  DATE | |

4.  FROM (Grade, Name, SSN, MOS, or CO, Pers. O., etc.)

5.  ORGANIZATION AND STATION (Complete address)

6.  VIA (As required)

7.

**TO:**

8.  NATURE OF ACTION/SUBJECT

9.  COPY TO (As required)

10.  REFERENCE OR AUTHORITY (if applicable)

11.  ENCLOSURES (if any)

12.  SUPPLEMENTAL INFORMATION (Reduce to minimum wording - type name of orginator and sign 3 lines below text)

-----------------------------------------------------------------------------------------------------------------------------------------

13.  PROCESSING ACTION.  (Complete processing action in item 12 or on reverse.  Endorse by rubber stamp where practicable.)

Designed using FormFlow 2.15, HQMC/ARAE May 98

NAVMC 10274 (REV. 3-93) (EF) BACK