# Exhibit 21

# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA

NAVY SEAL #1, et al.,                                )
                                                     )
     Plaintiffs,                             )
                                                     )
         v.                              )       No. 8:21-cv-02429
                                                     )
JOSEPH R. BIDEN, JR., in his official                )
capacity as President of the United States,          )
*et al.*,                                            )
                                                     )
     Defendants.                             )
                                                     )

## <u>DECLARATION OF CHAPLAIN, MAJOR MATTHEW J. STREETT</u>

I, Matthew J. Streett, hereby state and declare as follows:

1.      I am a Major in the United States Air Force currently assigned as a Staff Chaplain at the

Office of the Chief of Chaplains.  I have been in this position since June 2021.  As a part of my

duties, I am responsible for coordinating Chaplain Corps policy, publications, and religious

accommodation concerns for the United States Air Force and the United States Space Force, and

I lead the Policy branch of the Plans and Programs division.

2.      I make this declaration in my official capacity as a Staff Chaplain and based upon my

personal knowledge and upon information that has been provided to me in the course of my

official duties.

3.      The Air Force policy and procedures for addressing religious accommodation requests

are outlined in Department of the Air Force Instruction (DAFI) 52-201, *Religious Freedom in the*

*Department of the Air Force*, dated 23 June 2021 and Air Force Instruction (AFI) 48-110_IP,

*Immunizations and Chemoprophylaxis for the Prevention of Infectious Diseases*, dated 7 October

2013 (certified current 16 February 2018).[1]  DAFI 52-201 implements Department of the Air

Force Policy Directive 52-2, *Accommodation of Religious Practices in the Air Force*, which

implements Department of Defense Instruction (DoDI) 1300.17, *Religious Liberty in the Military*

*Services*, in the Air Force.  DoDI 1300.17 implements requirements in the Religious Freedom

Restoration Act"[2] and other applicable laws.[3] I am familiar with the religious accommodation

policy and process as it falls within the scope of my professional duties.

4.      A service member may request a religious accommodation from an immunization

requirement by submitting a written request addressed to the approval authority to his or her unit

commander.  The request will include, in addition to other identifying information, "the religious

basis for the request; a comment on the sincerity of the request; and the substantial burden on the

member's expression of religion."[4]  The approval authority indicated in DAFI 52-201 is the

Major Command (MAJCOM), Field Command (FIELDCOM), Direct Reporting Unit (DRU), or

Field Operating Agency (FOA) commander over the service member.  The appeal authority for

any disapproved request is the Air Force Surgeon General.

5.      When evaluating a religious accommodation request, DAFI 52-201 states that "[t]he

Department of the Air Force has a compelling government interest in mission accomplishment

and will take this into account when considering members' requests for accommodation of

religious beliefs. This interest includes military readiness, unit cohesion, good order and

discipline, and health and safety for both the member and the unit.  Commanders may only

---

[1] AFI 48-110_IP is an inter-service publication. The Army identifies is at Army Regulation (AR) 40-562, Navy as Bureau of Medicine and Surgery Instruction (BUMEDINST) 6230.15B, and Coast Guard (CG) Commandant Instruction (COMDTINST) M6230.4G.
[2] 42 U.S.C. § 2000bb-1.
[3] Note that because of publication dates, AFI 48-110_IP does not reflect the recent, significant changes in DoDI 1300.17, while DAFI 52-201 does reflect those changes. When there are conflicts between AFI 48-110_IP and DAFI 52-201 on the same subject, DAFI 52-201 will reflect more recent guidance.
[4] DAFI 52-201, paragraph 5.3.

impose limits on such expressions when there is a real (not theoretical) adverse impact on military readiness, unit cohesion, good order and discipline, or public health and safety for both the individual and unit levels. Any imposed limitations will employ the least restrictive means possible on expressions of sincerely held religious beliefs." [5]  In evaluating a request, an individual's religious practices should not adversely impact the member or the member's unit, but methods should be evaluated to allow the member his or her religious expression without increasing the risk to the member or the member's unit.

6.      To ensure commanders are properly informed of the facts and circumstances of the request and able to make an informed recommendation and/or decision, the Air Force uses a Religious Resolution Team, which "is a multidisciplinary team that advises commanders regarding resolution of religious liberty matters."[6] At the installation level, the team is comprised of the commander (or designee), Senior Installation Chaplain, a public affairs officer, a member of the Staff Judge Advocate's office (i.e., the legal office).  Teams addressing immunization requests also include a medical provider.

7.      Prior to review by the Religious Resolution Team, the member will have three consultations, in no particular order.  First, a chaplain is appointed to interview the service member.  The interview addresses the type of request, the sincerity of the request, potential alternate means of accommodating the practice, and the substantial burden.  Second, the service member's unit commander must also counsel the service member concerning the impact not receiving the specified vaccine may have on "readiness for deployment, assignment, international travel, or result in other administrative consequences."[7]  Third, a military physician

---

[5] DAFI 52-201, paragraph 2.1.
[6] DAFI 52-201, paragraph 3.8.1.
[7] DAFI 52-201, paragraph 6.6.1.1.

must ensure the service member is making an informed decision and consult with the member on "at a minimum, specific information about the diseases concerned; specific vaccine information including product constituents, benefits, and risks; and potential risks of infection incurred by unimmunized individuals."[8]  The chaplain, commander, and medical provider each provide written memorandums of their respective meetings to include in the request package.

8.      The Religious Resolution Team reviews the package (i.e., written request and other submitted endorsements/letters, chaplain memorandum, medical provider memorandum, unit commander memorandum, and any other pertinent information) and provides a written recommendation from the team, including dissenting views of any members of the team.  If necessary to making a recommendation, the team may request additional information.  Separately, a written legal review for the package is provided.

9.      The package is then routed through each commander in the chain of command, from the unit commander up to the approval authority, with each commander providing an endorsement with a recommendation to approve or disapprove the request. "Endorsements must address if there is a compelling government interest and any effect the accommodation will have on readiness, unit cohesion, good order and discipline, health, or safety, and impact on the duties of the member. . . . The endorsement must also address whether less restrictive means can be used to meet the government's compelling government interest."[9]

10.     Depending on the chain of command for a specific service member, the commanders endorsing a request may include a squadron command, group command, wing command/delta commander, Numbered Air Force commander, and MAJCOM/FIELDCOM/DRU/FOA commander.  In addition, as the package is routed through the chain of command, Religious

---

[8] AFI 48-110_IP, paragraph 2-6.(b)(3)(a)(2).
[9] DAFI 52-201, paragraph 6.6.1.5.

Resolution Teams at the MAJCOM (or equivalent) level also review the package and advise the commander.  The MAJCOM (or equivalent) commander is the final approval authority.

11.     A religious accommodation request based on the government substantially burdening a sincerely held religious belief will be approved unless there is a compelling governmental interest and the policy, practice or duty causing the substantial burden is the least restrictive means to achieve the compelling governmental interest.[10]  "Using the least restrictive means necessary may include partial approval, approval with specified conditions, or other means that are less burdensome on the member's religious beliefs."[11] A religious accommodation request based on the government substantially burdening a sincerely held belief based on conscience or moral principle (as opposed to religious beliefs) are not evaluated under the compelling government interest standard; in these cases, the needs of the member are balanced against the needs of mission accomplishment.[12]

12.     Requests for religious accommodation from an immunization requirement made by an active duty service member within the Continental United States should be reviewed with final action and notification to the member within thirty business days from the date the service member submitted the request.  For requests from a member outside the Continental United States or reserve component service members, the timeline is extended to 60 business days.[13]  If there is a large influx of religious accommodation requests, these timelines may not be met. However, even if the timelines are not met, a service member is temporarily exempted from the

---

[10] DAFI 52-201, paragraph 2.4; DoDI 1300.17, paragraph 1.2.(e)(2).
[11] DAFI 52-201, paragraph 2.4.
[12] DoDI 1300.17, paragraph 1.2.d. Para. 2.2.b directs the services to establish regulations and policies addressing conscience and moral principles ("Accommodation of practices reflecting a Service member's sincerely held conscience or moral principles will be governed by the policies of the DoD Component concerned."); DAFI 52-201, paragraph 2.5 describes that policy.
[13] DAFI 52-201, Table 2.1; DoDI 1300.17, Table 1.

relevant immunization requirement while their religious accommodation request is pending. [14] The temporary exemption applies to both the approval process and any appeal from a denial, if applicable.  No administrative or disciplinary action is to be taken for failure to comply with the vaccination requirement during that exemption period.

13.     If the final approval authority approves a religious accommodation request, a written approval is provided to the member's servicing Force Support Squadron to include in the member's electronic personnel record.  The member's unit commander will inform the member of the approved request.  If a request is disapproved, the member may elect to appeal the request to each level of command and ultimately to the final appeal authority, the Air Force Surgeon General. [15]  To file an appeal, the member addresses the appeal memorandum to the appeal authority and provides a copy to the unit commander.  The unit commander will provide the request to both the prior approval authority and the appeal authority. [16]  An appeal should be resolved within 30 business days following the member's written notification of intent to appeal. [17]  As noted, if the timeline is not met the service member suffers no harm and continues to be exempt from the immunization requirement, and no administrative or disciplinary action is to be taken for failure to comply with the vaccination requirement during that exemption period.

---

[14] DAFI 52-201, paragraph 2.12.
[15] DAFI 52-201, paragraph 5.8.1. While the DAFI discusses appealing to the next higher decision authority, absent a delegation of approval authority from the MAJCOM to a lower level, in this case the next higher authority for immunization requirements is the Air Force Surgeon General with no intermediate appeal authority.
[16] DAFI 52-201, paragraph 5.8.2. – 5.8.3.
[17] DAFI 52-201, paragraph 5.8.4.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 3rd day of November 2021.

STREETT.MATTHEW.
JAMES.1147844570

Digitally signed by
STREETT.MATTHEW.JAMES.1147
844570
Date: 2021.11.03 09:06:09 -04'00'

MATTHEW J. STREETT, Maj, USAF
Staff Chaplain

Attachments:
1. DoDI 1300.17, *Religious Liberty in the Military Services*, dated 1 September 2020
2. DAFI 52-201, *Religious Freedom in the Department of the Air Force*, dated 23 June 2021



# DoD Instruction 1300.17

# Religious Liberty in the Military Services

---

| | |
|---|---|
| **Originating Component:** | Office of the Under Secretary of Defense for Personnel and Readiness |
| **Effective:** | September 1, 2020 |
| **Releasability:** | Cleared for public release.  Available on the Directives Division Website at https://www.esd.whs.mil/DD/. |
| **Reissues and Cancels:** | DoD Instruction 1300.17, "Accommodation of Religious Practices Within the Military Services," February 10, 2009, as amended |
| **Incorporates and Cancels:** | Assistant Secretary of Defense for Force Management Policy Memorandum, "Sacramental Use of Peyote by Native American Service Members, "April 25, 1997 |
| **Approved by:** | Matthew P. Donovan, Under Secretary of Defense for Personnel and Readiness |

---

**Purpose:**  In accordance with the authority in DoD Directive 5124.02, this issuance:

- Establishes DoD policy in furtherance of the Free Exercise Clause of the First Amendment to the Constitution of the United States, recognizing that Service members have the right to observe the tenets of their religion, or to observe no religion at all.

- Establishes policy, assigns responsibilities, and provides procedures for the accommodation of religious practices of Service members.

- Establishes DoD policy on the accommodation of individual expressions of sincerely held beliefs (conscience, moral principles, or religious beliefs), which do not have an adverse impact on military readiness, unit cohesion, good order and discipline, or health and safety.

- Establishes DoD policy providing that an expression of sincerely held beliefs (conscience, moral principles, or religious beliefs) may not, in so far as practicable, be used as the basis of any adverse personnel action, discrimination, or denial of promotion, schooling, training, or assignment.

- Implements requirements in Section 2000bb-1 of Title 42, United States Code (U.S.C), also known as "The Religious Freedom Restoration Act" (RFRA), and other laws applicable to the accommodation

of religious practices for DoD to provide, in accordance with the RFRA, that DoD Components will normally accommodate practices of a Service member based on a sincerely held religious belief.

• Requires DoD Components to oversee the development and provision of education and training on the policies and procedures pertaining to the accommodation of religious practices of Service members to commanders, judge advocates, chaplains, recruiters, and other personnel as deemed appropriate by the Military Department or Military Service concerned.

*DoDI 1300.17, September 1, 2020*

# TABLE OF CONTENTS

SECTION 1: GENERAL ISSUANCE INFORMATION ............................................................ 4
   1.1. Applicability. ........................................................................................................... 4
   1.2. Policy. ...................................................................................................................... 4
SECTION 2: RESPONSIBILITIES ....................................................................................... 6
   2.1. Assistant Secretary of Defense for Manpower and Reserve Affairs (ASD(M&RA)). ...... 6
   2.2. DoD Component Heads Other than the Secretaries of the Military Departments. ........... 6
   2.3. Secretaries of the Military Departments. ................................................................. 6
SECTION 3: PROCESSING ACCOMMODATION REQUESTS .................................................. 9
   3.1. Accommodation Requests. ..................................................................................... 9
   3.2. Review of and Action on Requests for the Accommodation of Religious Practices ........ 9
      a. Adjudication Authority. ................................................................................. 9
      b. Delegation. ................................................................................................... 9
      c. Review and Action Timelines. ....................................................................... 10
      d. Factors for Consideration ............................................................................. 10
      e. Notice of Resolution. .................................................................................... 11
      f. Administrative Appeal Process. ...................................................................... 11
      g. Accommodation Duration and Proposals to Rescind a Granted Accommodation. ..... 11
      h. Accommodation Modification or Suspense Under Exigent Circumstances. ............... 12
      i. Pre-accession Procedures. ............................................................................. 13
   3.3. Required Principles and Rules for Military Regulations and Policies ........................... 14
   3.4. Additional Guidance Regarding the Use of Peyote. ................................................. 15
GLOSSARY ................................................................................................................... 17
   G.1. Acronyms. ............................................................................................................ 17
   G.2. Definitions. .......................................................................................................... 17
REFERENCES ................................................................................................................. 19

TABLES

Table 1. Review and Action Timeline for Processing Accommodation Requests ..................... 10

# SECTION 1:  GENERAL ISSUANCE INFORMATION

## 1.1.  APPLICABILITY.

a.  This issuance applies to OSD, the Military Departments, the Office of the Chairman of the Joint Chiefs of Staff and the Joint Staff, the Combatant Commands, the Office of Inspector General of the Department of Defense, the Defense Agencies, the DoD Field Activities, and all other organizational entities within the DoD (referred to collectively in this issuance as the "DoD Components").

b.  The definitions, policies, procedures, and assignments of responsibility prescribed in this issuance apply only to the accommodation of religious practices of Service members and in no other context.

## 1.2.  POLICY.

a.  Pursuant to the Free Exercise Clause of the First Amendment to the United States Constitution, Service members have the right to observe the tenets of their religion or to observe no religion at all, as provided in this issuance.

b.  In accordance with Section 533(a)(1) of Public Law 112-239, as amended, the DoD Components will accommodate individual expressions of sincerely held beliefs (conscience, moral principles, or religious beliefs) which do not have an adverse impact on military readiness, unit cohesion, good order and discipline, or health and safety.  A Service member's expression of such beliefs may not, in so far as practicable, be used as the basis of any adverse personnel action, discrimination, or denial of promotion, schooling, training, or assignment.

c.  In accordance with Section 533(b) of Public Law 112-239, as implemented by DoD Instruction 1304.28, no Service member may require a chaplain to perform any rite, ritual, or ceremony that is contrary to the conscience, moral principles, or religious beliefs of the chaplain, nor may any Service member discriminate or take any adverse personnel action on the basis of the refusal by the chaplain to comply with such requirements.  This does not preclude disciplinary or administrative action for conduct by a Service member that is proscribed by Chapter 47 of Title 10, U.S.C. (the Uniform Code of Military Justice), including actions and speech that threaten good order and discipline.

d.  Requests for religious accommodation will be analyzed under the standard in Paragraph 1.2.e. of this issuance using the process in Section 3 of this issuance.  Accommodation of practices reflecting a Service member's sincerely held conscience or moral principles will be governed by the policies of the DoD Component concerned.

e.  DoD Components have a compelling governmental interest in mission accomplishment at the individual, unit, and organizational levels, including such necessary elements of mission accomplishment as military readiness, unit cohesion, good order and discipline, and health and safety.  In accordance with RFRA and the guidance in this issuance, DoD Components will normally accommodate practices of a Service member based on sincerely held religious belief.

Accommodation includes excusing a Service member from an otherwise applicable military policy, practice, or duty.  In accordance with RFRA, if such a military policy, practice or duty substantially burdens a Service member's exercise of religion, accommodation can only be denied if:

(1)  The military policy, practice, or duty is in furtherance of a compelling governmental interest.

(2)  It is the least restrictive means of furthering that compelling governmental interest.

In applying the standard in Paragraphs 1.2.e.(1) and 1.2.e.(2), the burden of proof is placed upon the DoD Component, not the individual requesting the exemption.

f.  Requests for the accommodation of religious practices will be reviewed and acted on as soon as possible, in accordance with this issuance and any DoD Component implementing guidance.

g.  In accordance with provisions in Paragraphs 1.2.e and 1.2.f of this issuance, immediate commanders may resolve requests for accommodation of religious practices that do not require a waiver of DoD Component policies regarding the wearing of military uniforms, the wearing of religious apparel, or Service grooming, appearance, or body art standards.

*DoDI 1300.17, September 1, 2020*

# SECTION 2:  RESPONSIBILITIES

## 2.1.  ASSISTANT SECRETARY OF DEFENSE FOR MANPOWER AND RESERVE AFFAIRS (ASD(M&RA)).

Under the authority, direction, and control of the Under Secretary of Defense for Personnel and Readiness, the ASD(M&RA):

a.  Is responsible for the administration of this issuance and for oversight of the implementation of the policies and procedures it establishes.  Issues guidance to the DoD Components, as necessary, concerning the accommodation of religious practices and the implementation of the policies in this issuance.

b.  Acts on Military Department requests regarding limitations on the use, possession, or transportation of peyote cactus for religious practices, in addition to those already listed in Paragraph 3.4. of this issuance, in accordance with Paragraph 3.4.a.(4) of this issuance.

## 2.2.  DOD COMPONENT HEADS OTHER THAN THE SECRETARIES OF THE MILITARY DEPARTMENTS.

The DoD Component heads other than the Secretaries of the Military Departments:

a.  Ensure that requests for the accommodation of religious practices are processed or forwarded for review and action in accordance with this issuance and the implementing regulations and policies of the Military Department and Military Service to which the Service member belongs.

b.  Establish component regulations and policies to address the Service member's sincerely held conscience or moral principles in accordance with Paragraph 1.2.d. of this issuance.

## 2.3.  SECRETARIES OF THE MILITARY DEPARTMENTS.

The Secretaries of the Military Departments:

a.  Adhere to all provisions of this issuance.

b.  Administer their respective programs and update existing regulations and policies, or develop and distribute new guidance, as appropriate, to implement the provisions of this issuance.  Implementing issuances will, consistent with this issuance:

(1)  Establish controls to ensure compliance with established procedures and processing timelines applicable to accommodation requests.

(2)  Designate appropriate agency officials to review and act on the following:

(a)  Requests for the accommodation of religious practices.

(b)  Requests for an exemption to an otherwise applicable Military Department or Military Service policy in support of the requesting Service member's exercise of religion or furtherance of religious practices, including, but not limited to, requests pertaining to:

    <u>1</u>.  Religious apparel, including religious body art.

    <u>2</u>.  Grooming.

    <u>3</u>.  Medical practices, including DNA (deoxyribonucleic acid) specimen sampling and immunizations.

(c)  Requests from a Service member's command to rescind a previously granted accommodation.

(3)  Ensure, to the greatest extent practical, the consistent application of the policies and procedures prescribed by this issuance to similarly situated requests for the accommodation of religious practices throughout their respective Military Departments.

(4)  Develop and implement a standards-based approach to the review of, and final action on, requests for the accommodation of religious practices to promote predictable outcomes for the same or similar requests.  Such standards will be evidence-based and address commonly requested accommodations.  The Military Departments and Military Services will issue or update applicable regulations and policies to authorize officers or officials at the lowest appropriate level of command or supervision to review and take final action on requests for accommodations covered by such standards, in accordance with this issuance.  The absence of a standards-based approach to a requested accommodation will not, standing alone, serve as the basis for denying the request.  Such a standards-based approach may include:

(a)  A list of accommodations of religious practices that may, in ordinary circumstances, be granted to a member serving in a particular military occupational specialty, rating, specialty code, or duty assignment.

(b)  Specific guidance on factors to be considered in making individual determinations with regard to a commonly requested or other accommodation of religious practices.  Such factors may include those enumerated in Paragraph 3.2.d. of this issuance.

(c).  Provide information about the policies and procedures governing the accommodation of religious practices and religious expression to prospective Service members, in accordance with Paragraph 3.2.i. of this issuance.

(d)  Request, as appropriate, approval from the ASD(M&RA) regarding limitations on the use, possession, or transportation of peyote cactus for religious practices, in addition to those already listed in Paragraph 3.4. of this issuance, in accordance with Paragraph 3.4.a.(4) of this issuance.

(5)  Oversee the development and provision of education and training on the policies and procedures pertaining to the accommodation of religious practices of Service members to:

(a)  Commanders.

(b)  Judge advocates.

(c)  Chaplains.

(d)  Recruiters.

(e)  Other personnel as deemed appropriate by the Military Department or Military Service concerned.

# SECTION 3:  PROCESSING ACCOMMODATION REQUESTS

## 3.1.  ACCOMMODATION REQUESTS.

a.  Service members submitting a request for accommodation will continue to comply with the policy, practice, or duty from which an accommodation has been requested unless and until informed that the request has been approved by the appropriate authority.  Exceptions to this requirement may only be granted in exceptional circumstances, in accordance with the implementing regulations and policies promulgated by the Military Department and Military Service concerned.

b.  Requests for accommodation submitted by a cadet or midshipman enrolled at a Military Service Academy or in a Senior Reserve Officers' Training Corps program will be addressed in accordance with this issuance and the implementing regulations and policies promulgated by the Military Department and Military Service concerned.

c.  Nothing in this issuance precludes disciplinary or administrative action for conduct by a Service member that is prohibited by Chapter 47 of Title 10, U.S.C., also known as "The Uniform Code of Military Justice."

## 3.2.  REVIEW OF AND ACTION ON REQUESTS FOR THE ACCOMMODATION OF RELIGIOUS PRACTICES.

### a.  Adjudication Authority.

Requests for the accommodation of religious practices that can be approved consistent with Military Department and Military Service regulations or policies, (e.g., current uniform and grooming standards) will be reviewed and acted on at the lowest appropriate level of command or supervision, as provided in the regulations and policies of the Military Department and Military Service concerned and in accordance with this issuance.  Requests for the accommodation of religious practices that require the waiver of otherwise applicable Military Department and Military Service regulations and policies will be forwarded to the Secretary of the Military Department concerned.  Records concerning requests for accommodations will be maintained in accordance with DoD Instruction 5400.11.

### b.  Delegation.

The Secretary of a Military Department may delegate, in writing, the authority to act on requests for the accommodation of religious practices that require the waiver of otherwise applicable Military Department and Military Service regulations and policies only as described in Paragraph 3.2.b.(1) through 3.2.b.(3).

#### (1)  Department of the Army.

Delegation may be no lower than the Deputy Chief of Staff, G-1.

*DoDI 1300.17, September 1, 2020*

(2)  Department of the Navy.

Delegation may be no lower than the Chief of Naval Personnel, or the Deputy Commandant of the Marine Corps for Manpower and Reserve Affairs, as appropriate.

(3)  Department of the Air Force.

Delegation may be no lower than the Air Force Deputy Chief of Staff for Manpower, Personnel, and Services, or the Deputy Chief of Space Operations for Personnel and Logistics Services, as appropriate.

**c.  Review and Action Timelines.**

Requests for the accommodation of religious practices will be reviewed and acted on as soon as practicable, and no later than the timelines provided in Table 1.  Exceptions to this review and action timeline may be granted only in exceptional circumstances, as determined by the regulations and policies of the Military Department and Military Service concerned.

**Table 1.  Review and Action Timeline for Processing Accommodation Requests**

| Action to be Taken | For Requests Within the United States | For Requests Outside the United States or for Reserve Component Service Members Not on Active Duty |
|---|---|---|
| **Action on Requests for Religious Accommodation that Can Be Approved Consistent with Existing Military Department or Military Service Regulations or Policies** | | |
| Review and final action completed and written notification to requesting Service member provided | No later than 30 business days from Service member submission | No later than 60 days from Service member submission |
| **Action on Requests for Religious Accommodation that Require the Waiver of Otherwise Applicable Military Department or Military Service Regulations or Policies** | | |
| Written request for accommodation received by the Office of the Secretary concerned[1] | No later than 30 days from Service member submission to commander or supervisor | No later than 60 days from Service member submission to commander or supervisor |
| Review and final action completed and written notification to requesting Service member provided | No later than 60 days from receipt by the Office of the Secretary concerned.[1] Must be provided to the Service member within 5 days of final action<br><br>1. Unless authority is delegated to a subordinate official in accordance with Paragraph 3.2.b of this issuance. | |

**d.  Factors for Consideration.**

Officials charged with making recommendations or taking final action on a Service member's request for the accommodation of religious practices will review each request

individually, considering the full range of facts and circumstances relevant to the specific request.  Factors to consider include:

(1)  The compelling governmental interest in mission accomplishment, including military readiness, unit cohesion, good order and discipline, or health and safety.

(2)  Alternate means available to address the requested accommodation.  The means that is least restrictive to the requestor's religious practice and that does not impede a compelling governmental interest will be determinative.

### e.  Notice of Resolution.

A Service member will be promptly informed of the approval or disapproval of his or her request for accommodation in accordance with Table 1.

(1)  A Service member's request for the accommodation of religious practices may be granted in whole or in part.  The Service member will be informed in writing of any conditions or limitations placed on the grant that are necessary to meet the DoD's compelling governmental interest in mission accomplishment, such as, for example, conditions related to:

(a)  Deployment;

(b)  Health and safety issues relative to particular assignments or types of assignments; or

(c)  Training events or ceremonial occasions that require a Service member to conform to military standards to protect health and safety, or maintain good order and discipline.

(2)  A Service member whose request is granted in part will be informed, in writing, of the specific elements of that approval.

### f.  Administrative Appeal Process.

The regulations and policies of a Military Department or Military Service implementing this issuance will provide a process for Service members to appeal the denial of a request for accommodation of religious practices, or any condition on such accommodation.  Appeals will be sent to an official in the chain of command or chain of supervision above the officer or official who took final action on the request.  No further administrative appeal will be available for a decision made by the Secretary of the Military Department.

### g.  Accommodation Duration and Proposals to Rescind a Granted Accommodation.

An approved request for accommodation will remain in effect during follow-on duties, assignments, or locations, and for the duration of a Service member's military career, including after promotions, reenlistment or commissioning, unless and until rescinded in accordance with the requirements of this issuance.

(1)  In accordance with this issuance and the implementing policies and regulations of the Military Department and Military Service concerned, an approved accommodation may be subject to review and rescission, in whole or in part, at any time, based upon a determination that the circumstances under which the grant of accommodation was approved have changed (e.g., deployment, new duties, or other material change in circumstances).  The Military Department or Military Service concerned—not the individual Service member—bears the burden of initiating a proposal to review and rescind an accommodation previously granted.

(2)  When a Military Department or Military Service initiates a proposal to review and rescind an accommodation previously granted, an appropriate officer or official will forward a written summary of the nature of the materially changed circumstances that require such review and repeal to the Service member concerned for comment.

(a)  The Service member will be:

1.  Allotted no fewer than 10 days to review and comment on the proposed rescission of the accommodation.

2.  Afforded the opportunity to review and comment on any endorsements of this proposal from the chain of command.

3.  Afforded, subject to security classification requirements, the opportunity to review and comment on any documents or attachments to the proposal or subsequent endorsements.

(b)  Any comments submitted by the Service member will be forwarded for consideration by the appropriate official authorized to act on the matter, in accordance with this issuance.

(3)  A proposal to review and rescind a previously approved accommodation must be acted on at a level of authority no lower than that at which the accommodation was granted, in accordance with this issuance and the regulations and policies of the Military Department and Military Service concerned implementing this issuance.  The standard for repealing a previously granted accommodation, in whole or in part, is the same as the standard for denying a request for the accommodation of religious practices in the first place, and the same factors must be considered, as appropriate.

**h.  Accommodation Modification or Suspense Under Exigent Circumstances.**

Under exigent circumstances and in furtherance of a compelling governmental interest due to operational necessity, when time is of the essence and no less restrictive means of religious accommodation are available, a commander at a level determined by the Military Department or Military Service concerned may temporarily modify or suspend accommodations granted, upon notice to the Service member concerned and without benefit of appeal.  The level of this commander must be no lower than the officer exercising Summary Court-Martial Convening Authority over a Service member who has previously been granted an accommodation of religious practices.

(1)  To the extent practicable, the commander concerned, if not a general officer or flag officer, or member of the senior executive service, will notify, in advance, the first general officer or flag officer, or member of the senior executive service, as appropriate, in the affected Service member's chain of command or supervision, of the commander's intent to modify or suspend a previously granted accommodation.  When such advance notice is not practicable, the commander concerned will notify the appropriate general officer or flag officer, or member of the senior executive service, as appropriate, as soon as circumstances permit.

(2)  The Service member concerned may be required to immediately comply with the modification or suspension of an accommodation, if circumstances so warrant.

(3)  The modification or suspension of the accommodation will apply for only the minimum period required by the circumstances.

### i.  Pre-accession Procedures.

(1)  Applicants to the Military Services will be informed of the policies and procedures for the accommodation of religious practices in accordance with this issuance, and as implemented by the Military Department or Military Service concerned.  These applicants include individuals who apply for:

(a)  A commissioning program;

(b)  A warrant officer program;

(c)  Enlistment or entry in the Military Services;

(d)  Reenlistment (or reentry) in the Military Services;

(e)  Enrollment in a Military Service Academy or a Senior Reserve Officers' Training Corps program (including Military Service Academy preparatory schools); or

(f)  The award of a scholarship or other benefit that requires a commitment to serve as a Service member.

(2)  The Military Departments and Military Services will develop processes for the review and action on pre-accession requests for the accommodation of religious practices and establish those processes in appropriate regulations and policies.  Such processes must provide applicants the opportunity to submit a request for accommodation of religious practices, and receive a final decision on that request, before participation in the commissioning program, warrant officer program, enlistment, reenlistment, enrollment in a Military Service Academy or a Senior Reserve Officers' Training Corps program, or award of such scholarship or benefit.  The review and processing of such requests must be consistent with this issuance.

## 3.3.  REQUIRED PRINCIPLES AND RULES FOR MILITARY REGULATIONS AND POLICIES.

DoD Component regulations and policies must include the following principles and rules:

a.  Worship practices, holy days, and Sabbath or similar religious observance requests will be accommodated to the extent possible, consistent with mission accomplishment and will normally not require a religious accommodation request.

b.  A Service member's religious practices will be considered in acting on a request for separate rations.  Accommodation requests for separate rations may be adjudicated at the command level.

c.  A Service member's religious practices will be considered in acting on a request for exemption from required medical practices.  Action on a request for medical exemption must be consistent with mission accomplishment, including consideration of potential medical risks to other persons comprising the unit or organization.

d.  The following rules govern the wear of items of religious apparel:

(1)  In accordance with Section 774 of Title 10, U.S.C., Service members may wear items of religious apparel while in uniform, except in circumstances in which wearing the item would interfere with the performance of the member's military duties or the item of apparel is not neat and conservative.  The Military Departments and Military Services will prescribe regulations governing the wear of such items.  Factors that may be considered in determining whether an item of religious apparel interferes with military duties include, but are not limited to, whether the item:

(a)  Impairs the safe and effective operation of weapons, military equipment, or machinery.

(b)  Poses a health or safety hazard to the Service member wearing the religious apparel or to others.

(c)  Interferes with the wear or proper function of special or protective clothing or equipment (e.g., helmets, protective masks, wet suits).

(d)  Otherwise impairs mission accomplishment.

(2)  Religious items or articles not visible or apparent may be worn with the uniform, provided they do not interfere with the performance of the Service member's military duties, as described in Paragraph 3.3.d.(1) of this issuance, and do not interfere with the proper wear of any authorized article of the uniform.

(3)  Under regulations and policies of the Military Department and Military Service concerned, religious headgear may be worn with the uniform whenever a military cap, hat, or other headgear is not prescribed.  Religious headgear may also be worn underneath prescribed

military headgear, provided it does not interfere with the proper wear, function, or appearance of the headgear, as described in Paragraph 3.2.d.(1).

(4)  Notwithstanding any other provision in this issuance, while conducting worship services and during the performance of rites and rituals associated with his or her religious faith, a chaplain may wear with the military uniform any required religious apparel or accouterments associated with the traditions or practices of his or her religious faith.

(5)  In evaluating requests for the accommodation of religious practices related to body art, these factors will be among those considered:

(a)  Whether the body art is neat and conservative.

(b)  The location of the body art, including whether the body art is visible when the Service member is wearing the military uniform.

## 3.4.  ADDITIONAL GUIDANCE REGARDING THE USE OF PEYOTE.

a.  There are additional rules governing the use of peyote in religious practices.  In accordance with Section 1996a of Title 42, U.S.C. (also known as the "American Indian Religious Freedom Act Amendments of 1994"), Service members who are members of Indian tribes as defined in that statute may use, possess, or transport the peyote cactus as a religious sacrament in connection with the bona fide practice of a traditional Indian religion, and will not be penalized or discriminated against on the basis of such use, possession, or transportation. Reasonable limitations on the use, possession, transportation, or distribution of peyote may be imposed to promote military readiness, promote safety, or comply with international law or laws of other countries.  The Secretaries of the Military Departments will prescribe regulations authorizing the use, possession, or transportation of peyote cactus and imposing limitations on such use, possession, or transportation including, but not limited to, the following:

(1)  Peyote will not be used on duty or within 24 hours before scheduled military duty.

(2)  Peyote may be possessed in amulet form, not for ingestion, and such an amulet may be worn as an item of religious apparel subject to Military Service uniform regulations. Otherwise, peyote will not be used, possessed, distributed, or introduced aboard military vehicles, vessels, or aircraft or, except when permitted by the installation commander, on military installations.

(3)  A Service member who has used peyote will promptly notify their commander upon return to duty after such use.

(a)  The Secretary of the Military Department concerned may require pre-use notification by Service members performing designated duties when it is in the interest of military readiness or safety to notify commanders of a Service member's intent to use peyote.

(b)  Upon notification of use or intended use of peyote, the Service member will provide documentation verifying membership in an Indian tribe as defined by Section 1996a(c)(2) of Title 42, U.S.C.

(4)  The establishment by the Secretary of a Military Department of limitations on the use, possession, or transportation of peyote cactus, in addition to those already listed in Paragraph 3.4. of this issuance, must be consistent with RFRA, the Free Exercise Clause of the First Amendment to the Constitution of the United States, any other applicable statutes such as the American Indian Religious Freedom Act Amendments of 1994, and this issuance.  Any such additional limitations must be approved, in advance, by the ASD(M&RA).  Before approving any additional limitation proposed by the Secretary of a Military Department, the ASD(M&RA) will consult with representatives of traditional Indian religions for which the sacramental use of peyote is integral to their practice, pursuant to Section 1996a(b)(7) of Title 42, U.S.C.

b.  Requests by Service members for the accommodation of a religious practice involving the use, possession, or transportation of any substance other than peyote, the use, possession, transportation, manufacturing, or distribution of which is prohibited by law or policy, will be forwarded to the Secretary of the Military Department concerned for resolution.  Before taking final action on any such accommodation request, the Secretary of the Military Department concerned will notify the ASD(M&RA).

*DoDI 1300.17, September 1, 2020*

# GLOSSARY

## G.1.  ACRONYMS.

| ACRONYM | MEANING |
|---|---|
| ASD(M&RA) | Assistant Secretary of Defense for Manpower and Reserve Affairs |
| RFRA | Religious Freedom Restoration Act |
| U.S.C. | United States Code |

## G.2.  DEFINITIONS.

These terms and their definitions are for the purpose of this issuance.

| TERM | DEFINITION |
|---|---|
| **compelling government interest** | In the DoD, a military requirement that is essential to accomplishment of the military mission.  In accordance with Paragraph 1.2.e. of this issuance, DoD Components have a compelling governmental interest in mission accomplishment at the individual, unit, and organizational levels, including such necessary elements of mission accomplishment as military readiness, unit cohesion, good order and discipline, and health and safety. |
| **neat and conservative** | In the context of the wear of a military uniform, items of religious apparel that:<br><br>Are discreet, tidy, and not dissonant or showy in style, size, design, brightness, or color.<br><br>Do not replace or interfere with the proper wear of any authorized article of the uniform.<br><br>Are not temporarily or permanently affixed or appended to any authorized article of the uniform. |
| **pre-accession** | The period of time before a prospective Service member's participation in a commissioning program, warrant officer program, enlistment (or entry), reenlistment (or reentry), or enrollment in a Military Service Academy or a Senior Reserve Officers' Training Corps program. |

*DoDI 1300.17, September 1, 2020*

| TERM | DEFINITION |
|---|---|
| **religious apparel** | Articles of clothing, jewelry or other such accoutrements the wearing of which is part of the observance of the religious faith practiced by the Service member. |
| **religious body art** | Temporary or permanent tattoos, piercings through the skin or body parts, or other modifications to the body that are a part of a Service member's religious practice. |
| **religious practice** | An action, behavior, or course of conduct constituting individual expressions of religious beliefs, whether or not compelled by, or central to, the religion concerned. |
| **substantial burden** | A governmental act is a substantial burden to a Service member's exercise of religion if it: |

    Requires participation in an activity prohibited by a sincerely held religious belief;

    Prevents participation in conduct motivated by a sincerely held religious belief; or

    Places substantial pressure on a Service member to engage in conduct contrary to a sincerely held religious belief.

*DoDI 1300.17, September 1, 2020*

# REFERENCES

DoD Directive 5124.02, "Under Secretary of Defense for Personnel and Readiness (USD(P&R))," June 23, 2008

DoD Instruction 1304.28, "Guidance for the Appointment of Chaplains for the Military Departments," June 11, 2004, as amended

DoD Instruction 5400.11, "DoD Privacy and Civil Liberties Programs," January 29, 2019

Section 533 of Public Law 112-239, the "National Defense Authorization Act for Fiscal Year 2013," December 18, 2012, as amended

United States Code, Title 10

United States Code, Title 42

United States Constitution

***BY ORDER OF THE***
***SECRETARY OF THE AIR FORCE***



***DEPARTMENT OF THE AIR FORCE***
***INSTRUCTION***

***52-201***

***23 JUNE 2021***

*Chaplain*

***RELIGIOUS FREEDOM IN THE***
***DEPARTMENT OF THE AIR FORCE***

## COMPLIANCE WITH THIS PUBLICATION IS MANDATORY

**ACCESSIBILITY:**   Publications and forms are available on the e-Publishing website at **www.e-Publishing.af.mil** for downloading or ordering.

**RELEASABILITY:** There are no releasability restrictions on this publication.

OPR:  DAF/HCX

Certified by: AF/HCX
(Ch, Lt Col Chris Conklin)
Pages: 37

This instruction implements Department of the Air Force Policy Directive (DAFPD) 52-2, *Accommodation of Religious Practices in the Air Force*. It interfaces with DAFPD 52-1, *Chaplain Corps*; Air Force Instruction (AFI) 1-1, *Air Force Standards*; AFI 36-2903, *Dress and Personal Appearance of Air Force Personnel*; AFI 36-2710, *Equal Opportunity Program*; AFMAN 36-2032, *Military Recruiting and Accessions*; AFI 44-102, *Medical Care Management*; AFI 48-110_IP, *Immunizations and Chemoprophylaxis for the Prevention of Infectious Diseases*; and Air Force Manual (AFMAN) 34-240, *Appropriated Fund (APF) Food Service Program Management*. This publication applies to all civilian employees and uniformed members of the Regular Air Force, the Air Force Reserve, the Air National Guard and the United States Space Force. This publication requires the collection and maintenance of information authorized by Department of Defense Instruction (DoDI) 5400.11, *DoD Privacy and Civil Liberties Programs*. The applicable Privacy Act System of Records Notification (SORN) F036 AF PC C, Military Personnel Records System is available at **http://dpcld.defense.gov/Privacy/**. Ensure all records created as a result of processes prescribed in this publication are maintained in accordance with AFI 33-322, *Records Management and Information Governance Program*, and disposed of in accordance with the Air Force Records Disposition Schedule, which is located in the Air Force Records Information Management System. Refer recommended changes and questions about this publication to the Office of Primary Responsibility (OPR) using the AF Form 847, *Recommendation for Change of Publication*; route AF Forms 847 from the field through the appropriate functional chain of command. This publication may be supplemented at any level, but all direct supplements must be

routed to the OPR of this publication for coordination prior to certification and approval.  The authorities to waive wing/unit-level requirements are identified with a Tier ("T-0, T-1, T-2, T-3") number following the compliance statement.  See DAFI 33-360, *Publications and Forms Management*, for a description of the authorities associated with the Tier numbers.  Submit requests for waivers through the chain of command to the appropriate Tier waiver approval authority, or alternately, to the requestor's commander for non-tiered compliance items.  Compliance with the **attachment 5** in this publication is mandatory.

## 1. Overview.

1.1.  It is Department of the Air Force (DAF) policy to place a high value on the rights of Airmen and Guardians to observe the tenets of their respective religions or to observe no religion at all.  Through this policy, the DAF maintains an environment in which members can realize their highest potential.

1.2.  General Guidelines and Respect.

1.2.1.  Mutual respect and human dignity are essential to the culture of the Department of the Air Force.

1.2.2.  Commanders must create an environment in which Airmen and Guardians are free to practice their religious or secular worldview, while respecting the beliefs of others, unless such practices have an adverse impact on mission accomplishment, military readiness, unit cohesion, good order and discipline, health or safety.  **(T-0).**

1.2.3.  Airmen, Guardians, and Department of the Air Force leaders have many resources to assist them with religious freedom and accommodation questions to include the First Amendment to the United States Constitution, the Religious Freedom Restoration Act, Department of Defense policies and instructions, Department of the Air Force policies and instructions, Chaplain Corps personnel, judge advocates, equal opportunity offices, inspectors general, public affairs (PA), and higher headquarters.

1.3.  A member's expression of sincerely held beliefs may not be used as the basis for any adverse personnel action, discrimination, or denial of promotion; and may not be used as a basis for making schooling, training, or assignment decisions.  **(T-0).**

1.4.  This DAFI does not preclude disciplinary or administrative action for military members when an Airman or Guardian requesting religious accommodation engages in conduct prohibited by Title 10 United States Code Chapter 47, Uniform Code of Military Justice, including actions and speech that threaten good order and discipline, or for civilian employees who engage in conduct in violation of AFI 36-704, *Discipline and Adverse Actions of Civilian Employees*.

1.5.  The Department of the Air Force thoroughly reviews all instances in which members report concerns regarding religious freedom or religious accommodations.

## 2. Religious Accommodation Resolution Factors.

2.1. The Department of the Air Force has a compelling government interest in mission accomplishment and will take this into account when considering members' requests for accommodation of religious beliefs.  This interest includes military readiness, unit cohesion, good order and discipline, and health and safety for both the member and the unit.  Commanders may only impose limits on such expressions when there is a real (not theoretical) adverse impact on

military readiness, unit cohesion, good order and discipline, health or safety of the member or the unit.  Any imposed limitations will employ the least restrictive means possible on expressions of sincerely held religious beliefs.  **(T-0).**

2.2. Airmen and Guardians may request religious accommodations from a policy, practice, or duty.  As the right to request religious accommodation is based on the U.S. Constitution and federal statutes, it is critically important to fully consider and appropriately value an Airman's or Guardian's request. Airmen and Guardians may request religious accommodation when the request is grounded in a sincerely held belief, but a DoD or DAF mandated policy, practice, or duty substantially burdens the exercise of it.

2.2.1.  The first question to answer is whether the request is based on the expression of sincerely held beliefs (e.g., conscience, moral principles, or religious beliefs).  If it is based on a sincerely held belief, the relevant expression can include any religious practice, whether compelled by, or central to, an organized system of religious belief.

2.2.2.  The second question is whether the policy, practice, or duty from which the member is requesting accommodation substantially burdens the expression of that belief.

2.2.3.  A governmental act is a substantial burden to a Service member's exercise of religion if it:

2.2.3.1.  Requires participation in an activity prohibited by a sincerely held religious belief;

2.2.3.2.  Prevents participation in conduct motivated by a sincerely held religious belief; or

2.2.3.3.  Places substantial pressure on a Service member to engage in conduct contrary to a sincerely held religious belief.

2.3. The Department of the Air Force will approve a member's request for religious accommodation unless the request would have a real (not theoretical) adverse impact on military readiness, unit cohesion, good order, discipline, health or safety.

2.4. Commanders will approve the religious accommodation request unless a compelling governmental interest exists for the policy, practice, or duty from which the member is seeking religious accommodation.  **(T-0).**  Any restriction on the expression of sincerely held religious beliefs must use the least restrictive means with respect to the applicant to achieve the compelling governmental interest.  **(T-0).**  Using the least restrictive means necessary may include partial approval, approval with specified conditions, or other means that are less burdensome on the member's religious beliefs.  With the advice of a chaplain, alternative ways (i.e., partial approval) to satisfy the requested accommodation can also be considered.

2.4.1. In determining whether a compelling governmental interest exists and whether the restriction uses the least restrictive means necessary to achieve the compelling interest, consider the following factors, in addition to any other factors deemed appropriate:

2.4.1.1.  The importance and need for the specific policy, practice, or duty as it relates to mission accomplishment, mission readiness, unit cohesion, good order and discipline, health, and safety.

2.4.1.2.  Mission-related circumstances including operational tempo, location, and threat level.

2.4.1.3.  The cumulative impact based on the real potential for multiple requests of a similar nature.

2.4.1.4.  Previous decisions on similar requests, including decisions on similar requests made for other than religious reasons.

2.5.  Requests for accommodation from a military policy, practice, or duty that does not substantially burden a military member's exercise of religion (e.g., beliefs of conscience or moral principle) should not be evaluated under the compelling government interest standard. Under these circumstances, the needs of the requesting member are balanced against the needs of mission accomplishment. Only if it is determined that the needs of mission accomplishment outweigh the needs of the Service member may the request be denied.

2.6.  When the policy, practice, or duty from which the member is requesting accommodation does not substantially burden the expression of sincerely held beliefs related to conscience or moral principles, the needs of the requesting member are balanced against the needs of mission accomplishment.  In this case, the request will only be denied when the needs of mission accomplishment outweigh the needs of the member.  **(T-1).**

2.7.  If, after a thorough analysis of the above factors, the religious accommodation of Airmen or Guardian cannot be met, administrative actions that may be considered include reassignment, reclassification, or voluntary separation.

2.8.  Approving authorities must make decisions in a timely manner according to **Table 2.1**. **(T-0).**

2.9.  The member may elect to appeal a disapproved religious accommodation request to each level of the chain of command and ultimately to the final appeal authority listed in **Table 4.1** and **Table 6.1**.

2.10.  Appeal of a disapproved religious accommodation request must be resolved no later than 30 business days following the member's written notification of intent to appeal to the next higher decision authority in the chain of command.  **(T-1).**  The member's commander shall notify the member of the appeal authority's decision. **(T-3).**

**Table 2.1.  Religious Accommodation Timeline Requirements.**

| Action to be Taken | For Requests Within the United States | For Requests Outside the United States or for Reserve Component Service Members Not on Active Duty |
|---|---|---|
| **Action on Requests for Religious Accommodation that Can Be Approved Consistent with Department of the Air Force Regulations or Policies or Directives** | | |
| Review and final action completed and written notification to requesting Service member provided | No later than 30 business days from Service member submission | No later than 60 days from Service member submission |
| **Action on Requests for Religious Accommodation that Require the Waiver of Department of the Air Force Regulations or Policies or Directives** | | |

| Written request for accommodation received by the office delegated responsibility by the Secretary of the Air Force | No later than 30 days from Service member submission to commander or supervisor | No later than 60 days from Service member submission to commander or supervisor |
|---|---|---|
| Review and final action completed and written notification to requesting Service member provided. | No later than 60 days from receipt by the office delegated responsibility by the Secretary of the Air Force. Must be provided to the Service member within 5 days of final action. | |

2.11.  With the exception of medical practice or immunization accommodation requests, Airmen and Guardians will continue to comply with directives, instructions, and lawful orders for which the member seeks accommodation until their religious accommodation request has been approved. **(T-0)**

2.12.  Airmen and Guardians are temporarily exempted from compliance in cases of medical practice or immunization while their religious accommodation request is pending.  **(T-0).**

2.13.  Commanders, Chaplain Corps personnel, medical providers, judge advocates, and other subject matter experts work as a Religious Resolution Team (RRT), as applicable, to determine the effect the request for accommodation of religious practices would have on the specific military policy, practice, or duty.  The team will consider impact on mission accomplishment to include military readiness, unit cohesion, good order, discipline, public health, safety, and other military requirements.

**3.  Roles and Responsibilities.**

3.1.  The Department of the Air Force Chief of Chaplains (DAF/HC).  Develops policy and procedures for the accommodation of the expression of religious beliefs and the expression of conscience and moral principles.

3.2.  The Surgeon General (AF/SG).  Serves as the final appeal authority for all denials of requests for accommodation for religious practices pertaining to occupational health requirements, medical treatment, and immunization exemptions. Develops policies and guidance for the exemption of specific medical duties based on medical providers' religious beliefs.

3.3.  The Chief of Safety (AF/SE).  Advises decision making authorities on all denials of requests for accommodation for religious practices pertaining to safety rules and regulations.

3.4.  Air Force Services Center (AFSVC).  Considers revisions to the Air Force menu to accommodate the dietary needs of religiously observant Airmen and Guardians.

3.5.  Accession source headquarters are responsible for ensuring Regular Air Force, the Air Force Reserve, the Air National Guard and the United States Space Force enlisted and officer accessions are informed of uniform and grooming standards and policies, as well as procedures for seeking religious accommodations.

3.5.1.  Accession source headquarters must document this opportunity in writing and ensure all accession requests for religious accommodation are adjudicated prior to entering service.  **(T-2).**

Refer to **Attachment 2** for language that should be used to document the applicant's understanding of the Department of the Air Force's religious accommodation policy.

3.5.2.  This documentation will be added to the administrative folder of the requestor's Personnel Record Display Application if the individual joins the service.  **(T-2).**

3.6.  Military Treatment Facility Commander (or Air Reserve Component equivalent).  Develops processes and procedures for convening an ethics function, if required, when an Airman or Guardian's request for religious accommodation from medical treatment impacts their fitness for continued service.

3.7.  Unit Commander. Ensures all assigned members complete the "Religious Freedom Training" every three years.  **(T-1).**

3.8.  Religious Resolution Team (RRT).

3.8.1.  The RRT is a multidisciplinary team that advises commanders regarding resolution of religious liberty matters.  The RRT is the advisory body by which the Department of the Air Force meets the commander's need for expertise in the religious freedom decision-making process.  RRTs exist at every level of command:  Installation (tactical), Major Command (MAJCOM) or Field Command (operational), and Department of the Air Force (strategic).  The commander or any mandatory member of the RRT may convene the team for consultations.  The senior chaplain leads the RRT in providing recommendations to commanders on how to resolve religious matters.  Mandatory RRT membership includes:

3.8.1.1.  At the installation level, the commander (or designee), Senior Installation Chaplain (or equivalent), public affairs officer, and staff judge advocate.  **(T-2).**  For issues involving medical exemptions for religious reasons, the team must include a medical provider.  **(T-2).**  The commander may add additional subject matter experts in accordance with the needs of the situation.

3.8.1.2.  At MAJCOM, Field Command and Department of the Air Force levels, Deputy Chief of Staff for Manpower, Personnel, and Services (AF/A1), Chaplain Corps (HC), Public Affairs (PA), and Judge Advocates General (JA).  **(T-1).**  Any member of the RRT may request the participation of additional subject matter experts in accordance with the needs of the situation.  For issues involving medical exemptions for religious reasons, the team must include a representative from the appropriate level SG.  **(T-1).**

3.8.2.  The RRT determines and documents the facts surrounding the religious matter and, as appropriate, consults with subject matter experts.

3.8.3.  The RRT then advises the appropriate commander regarding the recommended course of action to resolve matters of religious accommodation and religious liberty.

3.9.  Wing or Garrison Chaplain or equivalent.

3.9.1.  Serves as the primary advisor to the commander on all religious freedom and accommodation matters.

3.9.2.  Appoints a chaplain as a member of the ethics function required for medical religious accommodation matters.

3.10.  Medical Provider. Advises commanders concerning health risks associated with religious accommodation requests.

3.11. Public Affairs Officer. Advises commanders on communications of timely and accurate information to ensure transparency of the Department of the Air Force policies, programs, and processes concerning religious freedom.

3.12. Judge Advocate General. Advises commanders on law related to religious accommodation requests and issues of religious freedom.

**4. General Religious Accommodation Procedures.**

4.1. Pre-Accession Religious Accommodation.

4.1.1. In accordance with DAFPD 52-2, the Department of the Air Force will allow individuals intending to enter service to submit a pre-accession exception to policy request of religious accommodation for dress and appearance policy and immunizations, and to receive a decision before entry.  Individuals may also request accommodation of religious practices to include diet and worship and receive a decision before entry.

4.1.2. For the purposes of this instruction, "pre-accession request" is defined as a request submitted before entering military service, enlisting, or commissioning as an officer.

4.1.3. Applicants must complete all processing and be otherwise eligible for enlisting or commissioning, including meeting all testing and medical requirements, before they submit a request for a religious accommodation.  **(T-3).**

4.1.4. The Department of the Air Force is committed to ensuring that all individuals have the opportunity to serve in occupational specialties for which they qualify.  A religious accommodation will not affect an individual's assignment of specialty code, duty location, or attendance at a military school unless an evidence-based determination by the career field manager is made that the accommodation is incompatible with the safe and effective execution of all required duties.  **(T-1).**

4.2. Officer and Enlisted Pre-Accession Requests for Religious Accommodation.

4.2.1. Individuals must submit a letter addressed to the appropriate approval authority listed in **Table 4.1** through the chain of command (see **Attachment 3** and **Attachment 4**).  **(T-1).**  The accommodation request letter will include, at a minimum, the name, faith group, unit, and specialty code of the Airman or Guardian; the nature of the accommodation requested; the religious basis for the request; and a comment on the sincerity of the request and the substantial burden on the applicant's expression of religion.  **(T-1).**

4.2.2. If applicable, the memorandum will include a photo or description of the head covering, religious affiliated item, grooming standard, and/or personal appearance for which the member is requesting accommodation.  **(T-1).**

4.2.3. Optional attachments include statements or endorsements by officials of the member's faith group, local religious leader statements, copies of religious writings, statements, or doctrinal declarations bearing on the member's request, and (if appropriate) a statement from the member explaining in more detail the nature of the request.

4.2.4. The recruiter will forward the request to the appropriate Department of the Air Force recruiting agency and, if applicable, to the individual's career field manager for endorsement.  **(T-1).**

4.2.5.  Air Force Recruiting Service (AFRS/RSOC), Air Force Reserve Command Recruiting Service (AFRC/RS), or National Guard Bureau (NGB/A1Y) identifies an appropriate Department of the Air Force chaplain to conduct an in-person or telephonic interview of the applicant to assess whether the requested accommodation is in keeping with the applicant's sincerely held religious beliefs.  Memorandums from other chaplains or religious leaders may accompany the request as optional attachments, but do not meet the requirement for interview by the assigned chaplain.

4.2.6.  The assigned chaplain will interview the requesting prospective Airman or Guardian concerning the request for accommodation.  **(T-1).**  Refer to **Attachment 5** for the chaplain interview checklist.

4.2.7.  The chaplain will submit a written memorandum to the approval authority that addresses each item in **Attachment 5**.  **(T-0).**

4.2.8.  Exceptions to policy for religious accommodation will be resolved in a timely manner and will be approved when accommodation would not adversely affect mission accomplishment, health, safety, good order, or discipline.  **(T-0).**

4.2.9.  If a specialty has been assigned, the career field manager must review the request and address effect on health or safety and impact on duties of the prospective Airman or Guardian.  **(T-1).**

4.2.10.  A staff judge advocate will draft a written legal review.  **(T-1).**  The review will also state whether the request and enclosures are complete within the provisions of this directive.  **(T-1).**

4.2.11.  Once all materials are received by the recruiter, the recruiter forwards the applicant's religious accommodation request package through command channels to the approving authority, as identified in **Table 4.1**  **(T-1).**

4.2.12.  The applicant may elect to appeal a disapproved religious accommodation request to each level of the chain of command and ultimately to the final appeal authority listed in **Table 4.1**.

4.2.12.1.  The applicant should address the memorandum to the appeal authority, copy the previous disapproval authority, and transmit the memorandum to the applicant's assigned recruiter for processing.

4.2.12.2.  The assigned recruiter transmits the package to the appeal authority for decision.

4.2.13.  Appeal of a disapproved religious accommodation request must be resolved no later than 30 business days following the applicant's written notification of intent to appeal to the next higher decision authority in the chain of command.  **(T-1).**  The applicant's recruiting commander shall notify the applicant of the appeal authority's decision. **(T-3).**

4.2.14.  Requests denied by the commander of the appropriate Air Force recruiting agency may be appealed to the final appeal authority identified in **Table 6.1** as appropriate.  For requests requiring AF/A1, Space Force Deputy Chief of Staff for Manpower, Personnel, and Services (USSF/S1), Air Force Reserves (AF/RE), or National Guard Bureau NGB/CF final action, the commander of the appropriate Air Force recruiting agency will provide a recommendation for approval or disapproval.

4.2.15.  Upon a final decision by the approval authority, and if approved, a copy of the waiver will be added to the administrative folder of the requestor's Personnel Record Display Application when their account is established.  **(T-1).**

4.2.16.  Subject to the limitations contained in the approval memorandum, all approved religious accommodation waivers continue throughout the applicant's career unless rescinded in accordance with the provisions of **Paragraph 5.10**.

4.2.17.  Submission of a new request for accommodation is not required unless the applicant has a break in service longer than 365 days or is requesting a modification of a previously approved waiver.

4.3.  Refer to the religious accommodation categories in **Paragraph 6** of this instruction for further detailed guidance.

**Table 4.1.  Approval and Appeal Authorities for Pre-Accession Waivers.**

| Recruiting Component | Governing Policy/ Instructions | Approval Authority | Final Appeal Authority |
|---|---|---|---|
| AFRS | **See Table 6.1.** | AFRS/CC | AF/A1 |
| AFRC/RS | **See Table 6.1.** | Commander, AFRC/RS | AF/RE |
| NGB | **See Table 6.1.** | National Guard Bureau NGB/AY1 | NGB/CF |
| All | Immunizations | Commander Air Education and Training Command AETC/CC | AF/SG |

## 5.  Post-Accession  Religious Accommodation.

5.1.  Supervisors and commanders may approve requests for religious accommodation that do not require a waiver to DAF policies. Supervisors and commanders may grant such requests from Airmen and Guardians without any further coordination.

5.2.  Religious Accommodation requests that require a waiver to DAF policies must use the process below.  **(T-1).**  Denials of Religious Accommodation requests must be documented using the process below.  **(T-1).**

5.3.  Individuals must submit a letter addressed to the appropriate approval authority, which is based upon the category of religious accommodation and is listed in **Table 6.1** , through their chain of command (see **Attachment 6**).  **(T-1).**  The accommodation request letter will include, at a minimum, the name, grade, DoD Identification number, faith group, unit, and specialty code of the Airman or Guardian; the nature of the accommodation requested; the religious basis for the request; a comment on the sincerity of the request; and the substantial burden on the member's expression of religion  **(T-1).**

5.3.1.  If applicable, the memorandum will include a photo or description of the head covering, religious affiliated item, grooming standard, and/or personal appearance for which the member is requesting accommodation.  **(T-1).**

5.3.2.  Optional attachments include statements or endorsements by officials of the member's faith group, local religious leader statements, copies of religious writings, statements, or doctrinal declarations bearing on the member's request, and (if appropriate) a statement from the member explaining in more detail the nature of the request.

5.4.  A chaplain will be appointed to interview the requesting Airman or Guardian concerning the request for accommodation.  **(T-1).**  Refer to **Attachment 5** for the chaplain interview checklist. The interviewing chaplain will submit a written memorandum to the requestor's commander following the procedures provided in **Attachment 5**.  **(T-2).**

5.5.  Religious accommodation waiver packets will consist of the member's accommodation request letter, chaplain interview memorandum, legal review, and recommendations from the chain of command.  **(T-1).**  The package will also consist of all information, data, or other materials pertinent to resolving the request.  **(T-3).**  Such information includes the member's duties, relevant safety and protective clothing or equipment standards, local threat conditions, and any other materials supporting the recommendation.

5.6.  The Religious Resolution Team (RRT) will review the package and make a recommendation to the unit commander.

5.6.1.  The RRT recommendation will be documented in the request package.  **(T-1).**

5.6.2.  The staff judge advocate, as a member of the RRT will prepare a legal review for inclusion in the request package.  **(T-1).**  The legal review must also state whether the request and attachment(s) are complete within the provisions of this instruction.  **(T-1).**

5.6.3.  The wing chaplain, as the lead for the RRT, shall write the memorandum to the decision authority detailing the RRT recommendation and any dissenting views of others.  **(T-3).**

5.7.  The member's commander will inform the member of approved requests for accommodation of religious practices, to include specific conditions or limitations placed on the approval.  **(T-3).**

5.7.1.  If the commander with approval authority approves the request for accommodation, written approval will be returned to the member's servicing Force Support Squadron (FSS).  **(T-3).**  The servicing FSS will ensure a copy of the final decision is included in the member's electronic personnel record.  **(T-1).**  The member's commander will inform the member of the approved accommodation.  **(T-3).**

5.7.2.  The member will be informed, in writing, what specific element(s) of the request is being accommodated.  **(T-1).**  Approvals will remain in effect during follow-on duties, assignments, or locations, and for the duration of a Service member's military career.  However, there may be a change in circumstances that requires the accommodation to be reevaluated in the future (e.g., deployment, new duties, or other material change in circumstances).

5.7.3.  New requests for the same accommodation are not necessary upon new assignment, transfer of duty stations, temporary duty, or other significant changes in circumstances, including deployment unless noted on the approval memorandum.

5.7.4.  Approved accommodations will continue unless the member's commander determines a compelling government interest exists requiring a temporary or permanent withdrawal of the approval.  **(T-1).**

5.8.  The member's commander will inform the member of disapproved requests for accommodation of religious practices.  **(T-3).**

5.8.1.  The member may elect to appeal a disapproved religious accommodation request to each level of the chain of command and ultimately to the final appeal authority listed in **Table 6.1**.

5.8.2.  The member shall address a memorandum to the appeal authority with a copy given to the previous disapproval authority and provide the memorandum to the unit commander for processing.  **(T-3).**

5.8.3.  The unit commander transmits the memorandum to the appeal authority for decision.

5.8.4.  Appeal of a disapproved religious accommodation request must be resolved no later than 30 business days following the member's written notification of intent to appeal to the next higher decision authority in the chain of command.  **(T-1).**

5.8.5.  The member's commander shall notify the member of the appeal authority's decision. **(T-3).**

5.9.  Refer to the religious accommodation categories in **Paragraph 6** of this instruction for further detailed guidance.

5.10.  Rescinding a Religious Accommodation.  A commander may initiate a proposal to review and modify or rescind a religious accommodation previously granted.

5.10.1.  Such a proposal must include the nature of the compelling government interest in modifying or rescinding a previously granted request.  **(T-0).**  The proposal must include the length of time for the modification or rescission.  **(T-1).**

5.10.2.  Airmen and Guardians will be given no fewer than 10 duty days to review and respond to the proposal, as well as afforded the opportunity to review and comment on any endorsements, documents and attachments subject to security classifications.  **(T-0).**  The member's response will be included in the final package for review by the decision authority.  **(T-0).**

5.10.3.  The level of authority to decide on modifying or rescinding a religious accommodation must be no lower than that at which the accommodation was granted.  **(T-0).**

5.10.4.  The member may elect to appeal a modification or rescission of a religious accommodation to each level of the chain of command and ultimately to the final appeal authority listed in **Table 6.1**  **(T-1).**

5.10.5.  Under exigent circumstances and in furtherance of a compelling governmental interest due to operational necessity, when time is of the essence and no less restrictive means of religious accommodation are available, a commander, at no lower than the Summary Court-Martial Convening Authority level, over a Department of the Air Force member may temporarily modify or suspend accommodations granted, upon notice to the member concerned and without benefit of appeal.  **(T-0).**

5.10.5.1.  The first general officer in the member's chain of command will be notified of the temporary suspension of accommodations.  **(T-0).**

5.10.5.2.  The temporary suspension of accommodations shall remain in effect only during the identified exigent circumstances.  **(T-0).**

**6. Religious Accommodation Categories.**

6.1. Worship Practice Accommodation. Airman and Guardians may belong to, or participate with, religious groups, which have worship or religious observation requirements that contrast with availability for duty during the duty day. If the time required for a religious requirement falls within duty hours and equivalent, alternative opportunities for the practice outside duty hours do not exist, the member may request an accommodation to participate. The member must be prepared to perform alternative duty or duty hours for absences extending through a significant portion of a normal duty day. Commanders may grant a pass or ordinary leave in accordance with AFI 36-3003, *Military Leave Program*, as an option to members who desire an absence to observe worship practices that extend beyond a limited portion of a duty day.

6.2. Use of Peyote. In accordance with the American Native American Religious Freedom Act Amendments of 1994, Title 42 United States Code Section 1996a, Airmen or Guardians who are members of Native American tribes as deemed in that statute may use, possess, or transport the peyote cactus as a religious sacrament in connection with the bona fide practice of a traditional Native American religion, and shall not be penalized or discriminated against on the basis of such use, possession, or transportation. **(T-0).** However, pursuant to 42 U.S.C. § 1996a (b) (7), reasonable limitations on the use, possession, transportation, or distribution of peyote may be imposed to promote readiness, safety, or to comply with international law or laws of other countries.

6.2.1. Commanders will verify that the Airman or Guardian is a member of a Native American tribe that uses peyote for religious reasons, as defined by 42 U.S.C. § 1996a(c) (2), and that the member's duty requirements do not restrict them from using peyote. **(T-0).** Native American members on Nuclear Weapons Personnel Reliability Program (PRP) status, in accordance with DoDI 5210.42, *DoD Nuclear Weapons Personnel Reliability Assurance*, and DoDD 5210.56, *Arming and the Use of Force* are not authorized a religious accommodation exemption for peyote. **(T-0)**.

6.2.2. If the religious accommodation request is approved, members will notify their unit commander and supervisor in writing within 48 hours of their intended use each time prior to using peyote. **(T-1).**

6.2.3. Peyote will not be used on duty or within 24 hours before scheduled duty. **(T-0).** Commanders will not schedule for duty or recall to duty any member previously approved an absence for the use of peyote. **(T-1).**

6.2.4. Commanders will allow members to possess peyote in amulet form, not for ingestion, and allow the amulet to be worn as an item of religious apparel subject to AFI 36-2903. **(T-0).** Otherwise, peyote shall not be used, possessed, distributed, or introduced aboard military vehicles, vessels, or aircraft, on military installations except when permitted by the installation commander. **(T-0)**.

6.3. Dietary Restrictions Requiring Separate Rations. Airmen or Guardians may belong to or participate with faith groups whose beliefs prohibit the consumption of specific foods or prescribe a certain manner in which food must be prepared in addition to "time of day" requirements and fasting.

6.3.1. Dietary Religious Accommodation. Airmen and Guardians may request religious accommodation related to food and diet.

6.3.2.  Unit commanders may approve such a request for religious accommodation.

6.3.3.  Unit commanders must coordinate with the food service officer concerning the possibility of accommodation through changes to the government dining menu.  **(T-3).** If changes to the government dining menu are not possible, consider exempting the member from Essential Station Messing (ESM).

6.3.4.  A member in ESM status with a conflict between food provided by the Department of the Air Force and the requirements of the member's religious practice may submit a religious accommodation request to be waived from the ESM requirement in accordance with AFMAN 34-240, *Appropriated Fund (APF) Food Service Program Management*.

6.3.5.  In field conditions, commanders should arrange to provide special religious (e.g., Halal, Kosher, and vegetarian) Meals Ready to Eat as practicable.  The member is permitted to take personal supplemental rations when in a field or combat environment when such personal rations are practicable.

6.4.  Religious Apparel Accommodation.  Religious apparel is defined as apparel worn as part of the observance of a religious faith practiced by an Airman or Guardian.  Members may request a waiver to permit wear of neat and conservative religious apparel.

6.4.1.  Religious apparel worn during worship services does not require a religious accommodation request.  Religious items that do not meet the standards of AFI 36-2903 may be worn by members in uniform while they are present at a worship service, rite, or other ritual distinct to a faith or denominational group.  Commanders may, for operational or safety reasons, limit the wear of non-subdued items of religious apparel during services conducted outdoors in field conditions or combat conditions and based on military necessity.

6.4.2.  Religious apparel not visible or otherwise apparent does not require a religious accommodation request.  Such apparel may be worn by members in uniform, provided it does not interfere with the performance of the member's military duties or with the proper wearing of any authorized article of the uniform.  Commanders may, for operational or safety reasons, limit the wear of religious apparel that is not visible or otherwise apparent.  However, commanders must ensure they are using the least restrictive means to further the compelling government interest.  **(T-0).**

6.5.  Grooming and Personal Appearance Accommodation.

6.5.1.  Some religious beliefs require members to maintain grooming standards, religious body art, and/or personal appearance modifications that conflict with Department of the Air Force dress and personal appearance standards in AFI 36-2903.  Grooming practices are subject to consideration for accommodation under the same analysis governing religious apparel accommodation requests.  Factors to consider include whether approving the religious accommodation would impair the safe and effective operation of weapons, military equipment, or machinery, pose a health or safety hazard, interfere with the wear or proper function of special or protective clothing or equipment, or impair discipline, morale, unit cohesion, or accomplishment of the unit mission.

6.5.2.  Dress and Appearance Waivers.  Only AF/A1, AF/RE, NGB/CF or USSF/S1 as applicable may grant exception to policy of dress and personal appearance standards for religious accommodation not otherwise delegated to lower commanders in this instruction (see **Table 6.1** ). The approval memorandum will outline any conditions or limitations.  Religious accommodation

dress and appearance exception to policy waivers extend to temporary duty  and subsequent permanent duty assignment locations.

6.5.3.  Airman and Guardian's home station wing or garrison commanders or headquarters Air Force (HAF), MAJCOM, Field Command, Numbered Air Force (NAF), Field Operating Agency (FOA) and Direct Reporting Unit (DRU) Directors (O-6/GS-15 and above) are the approval authority for only the following dress and appearance religious accommodation requests: 1) hijab; 2) beard; 3) indoor/outdoor head coverings; 4) turban or underturban/patka worn with unshorn beard and with unshorn hair.  All other requests require AF/A1 or SF/S1 decision.

6.5.4.  AF/A1, AF/RE, NGB/CF, or USSF/S1 as appropriate, makes the final determination on all recommendations to approve and disapprove dress and appearance religious accommodation requests not listed in **Paragraph 6.5.3**  Prior to disapproving a religious accommodation request from Air Force Reserve and Air National Guard Airmen, AF/RE or NGB/CF will coordinate with AF/A1 and obtain a legal review from the Civil Law and Litigation Domain (DAF/JAC)  **(T-1).**

6.5.5.  The unit commander will review each request and process the request based on the appropriate approval authority listed in **Table 6.1**  **(T-1).**  Additionally, the unit commander will:

6.5.6.  For grooming requests, coordinate with the installation emergency management personnel (CEX) regarding the possible interference with the wear or proper function of special or protective clothing or equipment.  **(T-1).**

6.5.7.  Approve or disapprove the request if authorized, or indicate on the request a recommendation for approval or disapproval, and forward to the servicing FSS.

6.5.8.  Commanders must address if there is a compelling government interest and any effect the accommodation will have on readiness, unit cohesion, good order and discipline, health, or safety, and impact on the duties of the member.  **(T-0).**

6.5.9.  If applicable, the servicing FSS forwards the request package to the wing or installation commander and, if appropriate, to the member's MAJCOM, Field Command or DRU A1, equivalent S1 or, if in a joint environment, to the Joint Manpower, Personnel and Services (J1) as applicable.  **(T-1).**

6.5.10.  The wing or installation commander, in consultation with the RRT, approves or disapproves the request, if authorized, or indicates on the request package a recommendation for approval or disapproval and forwards to the FSS for appropriate action.  **(T-1).**

6.5.11.  If applicable, the MAJCOM, Field Command or DRU Religious Resolution Team reviews the package and makes a recommendation to the MAJCOM, Field Command or DRU commander. For dress and grooming requests, the MAJCOM, Field Command or DRU commander recommends approval or disapproval and forwards the request package and their recommendations to AF/A1 or USSF/S1 for final action.  The Department of the Air Force Religious Resolution Team reviews the package and makes a recommendation to the AF/A1 or USSF/S1 who approves or disapproves the request after obtaining a legal review from DAF/JA.

6.5.12.  Air Force Deputy Chief of Staff for Manpower, Personnel, and Services (AF/A1).  Serves as the approval authority and final appeal authority for all requests from Regular Air Force Airmen for accommodation for religious practices pertaining to wear of religious apparel, grooming and personal appearance standards, and dietary restrictions not otherwise delegated in this instruction.

6.5.13.  United States Space Force Deputy Chief of Staff for Manpower, Personnel, and Services (USSF/S1).

6.5.13.1.  Serves as the approval authority for all requests from Guardians for accommodation for religious practices pertaining to wear of religious apparel, grooming and personal appearance standards, and dietary restrictions not otherwise delegated in this instruction.

6.5.13.2.  Serves as the final appeal authority for all denials of requests for accommodation for religious practices pertaining to wear of religious apparel, grooming and personal appearance, and dietary restrictions for Space Force personnel. Serves as the final appeal authority for all denials of requests for the accommodation of worship practices.

6.5.14.  Service level uniform policy sections will track approved religious accommodation exceptions to policy for dress and personal appearance.  **(T-1).**

6.5.15.  Wing Commanders or HAF, MAJCOM, Field Command, NAF, FOA and DRU commanders receiving a request for an accommodation involving uniform wear and grooming will provide a completed, approved request package to AF/A1PA at **af.a1pa.workflow@us.af.mil** for tracking.  **(T-2).**

6.5.16.  The revocation of a previously approved dress and grooming accommodation will require notification to AF/A1, AF/RE, NGB/CF, or USSF/S1.  **(T-0).**

6.5.17.  Some religious holy days or practices may require wear of certain non-permanent religious modifications while in uniform, such as the imposition of ashes on Ash Wednesday or henna for religious ceremonies.  These modifications do not require an accommodation request.

6.6.  Medical Treatment Accommodation.

6.6.1.  Immunization Exemptions.  Airmen and Guardians may belong to or participate with faith groups that have worship or religious observation requirements that conflict with some immunizations or components of immunizations.   Members may request exemption of immunization requirements from their MAJCOM, Field Command, DRU or FOA commander.

6.6.1.1.  The unit commander must counsel the requestor after receiving the request that noncompliance with immunization requirements may adversely affect readiness for deployment, assignment, international travel, or result in other administrative consequences. **(T-1).**  Counseling must be documented in a memorandum and included with the religious accommodation request package.  **(T-3).**

6.6.1.2.  Ensure a military medical provider counsels the requestor.  **(T-1).**  Counseling must be documented in a memorandum and included with the religious accommodation request package. **(T-1).**

6.6.1.3.  Submit the package to the Religious Resolution Team for review.  The RRT will include a medical provider.  **(T-1).**

6.6.1.4.  Pre-service religious accommodations for immunizations can only be approved by the AETC commander.  **(T-1).**

6.6.1.5.  Each commander shall endorse the request with recommendation for approval or disapproval and forward through the chain of command to the decision authority.  **(T-1).** Endorsements must address if there is a compelling government interest and any effect the accommodation will have on readiness, unit cohesion, good order and discipline, health, or safety,

and impact on the duties of the member.  **(T-0).**  The endorsement must also address whether less restrictive means can be used to meet the government's compelling government interest.  **(T-0).**

6.6.1.6.  Disapproved requests.  If the MAJCOM, Field Command, DRU, or FOA commander determines partial or complete denial is appropriate, he/she will indicate so on the memorandum, indicate the reasoning for disapproval and forward it to the servicing FSS.  The servicing FSS ensures a copy of the final decision is included in the member's automated personnel records.  The member's commander should notify the member of the final decision.

6.6.2.  Medical Treatment.  Airmen and Guardians may belong to or participate with faith groups that have worship or religious observation requirements that conflict with certain medical treatments.  Members may request a religious accommodation for medical treatment.  In emergencies, the attending provider may take immediate steps to save a member's life regardless of religious practices or objections.  **(T-1).**

6.6.2.1.  The commander will convene a Religious Resolution Team, which will include a medical corps officer.  **(T-1).**

6.6.2.2.  A documented evaluation of potential negative health outcomes for the member if the medical treatment is not completed will be conducted by a medical provider.  **(T-1).**

6.6.2.2.1.  The evaluation shall address the reasonableness of the member's refusal to undergo treatment.  The risks ordinarily associated with the proposed treatment, the member's age, general physical condition, and the reasons for refusing treatment will be considered and articulated in this report.  **(T-1).**  This report will be part of the religious accommodation package reviewed by the RRT.

6.6.2.2.2.  The medical provider will provide a recommendation regarding the requested accommodation.  **(T-1).**  In cases in which disapproval of the request is recommended, the report will explain the rationale for this recommendation, the least restrictive means to meet the compelling government interest, and a recommendation for further action (return to duty, administrative action, or medical board).  **(T-1).**  This recommendation will be part of the religious accommodation package reviewed by the RRT.

6.6.2.3.  The commander will approve or disapprove the request.  The member must be informed and given the opportunity to accept the prescribed medical care.  **(T-1).**

6.6.2.4.  If the commander, or AF/SG on appeal, approves the request for accommodation, written approval will be returned to the commander and the member's servicing FSS, who will notify the member of the final decision and ensure a copy of the final decision is included in the member's automated personnel record.  **(T-3).**

6.6.2.5.  Disapproved requests.  The member may elect to appeal a disapproved religious accommodation request to each level of command and ultimately to the final appeal authority listed in **Table 6.1**.

6.6.2.5.1.  If, on final appeal, AF/SG determines partial or complete denial is appropriate, he/she will indicate so on the memorandum and forward it to the commander.  **(T-1).**

6.6.2.5.2.  The commander will provide the requesting member a final opportunity to accept the treatment.  **(T-1).**

6.6.2.5.3.  If the requesting member refuses medical treatment, the commander may take action, as that authority deems appropriate.

6.6.3.  Medical personnel who, for moral, ethical, religious, or professional grounds, object to providing medical treatment or procedures contrary to their deeply held convictions must inform the Chief of Medical Staff  (or equivalent), department chair, or Medical Treatment Facility commander  (for Reserve Component members, Reserve Medical Unit  Commander or Guard Medical Unit  Commander as appropriate). Medical professionals are not required to engage or assist in such treatments or procedures unless the refusal poses an immediate, life-threatening risk to the patient.  Medical professionals are obligated to facilitate timely identification of a willing provider.  **(T-1).**  Refer to AFI 44-102 for additional information.

6.7.  If a religious accommodation request does not fit within one of the listed categories for approval, the authority to approve or disapprove the request is AF/A1, AF/RE, NGB/CF, or USSF/S1 according to the component of the requester.  **(T-1).**

6.8.  In consultation with the Religious Resolution Team, commanders will disapprove requests for religious accommodation that satirize, mock, or otherwise denigrate another faith group, religious belief, religious practice, or religious beliefs and practices in general.  **(T-1).**

6.9.  The Secretary of the Air Force and the Assistant Secretary of the Air Force for Manpower and Reserve Affairs (SAF/MR) may review proposed religious accommodation decisions in accord with Secretariat oversight responsibility.

6.9.1.  The Secretary of the Air Force, the Under Secretary, SAF/MR and any other official through whom delegation of approval has been made, may withdraw authority from any subordinate official to whom delegation or re-delegation has been made, to any higher level in the chain of delegation and re-delegation, on a case by case basis.

6.9.2.  To ensure that this authority to withdraw may be exercised in appropriate cases, all officials exercising delegated or re-delegated authority under this instruction will provide written notification to SAF/MR and AF/HC before taking action in any matter identified as being of high sensitivity or having the potential for significant Congressional, media, public interest, or will create a conflict of precedent within the Department of the Air Force.  **(T-1).**

**Table 6.1.  Religious Accommodation Categories and Approval Authorities.**

| Category of Religious Accommodation | Governing Policy/ Instruction | Approval / Disapproval Authority | Final Appeal Authority |
|---|---|---|---|
| Worship Practices | | | |
| Worship Practices, holy days and Sabbaths, or other similar religious observances | Department of Defense Instruction (DoDI )1300.17 | Unit Commander | DAF/HC |
| Native American Traditional Ceremony use of Peyote | 42 United States Code Section 1996a | Unit Commander (see note 1) | DAF/HC |

| Dietary Practices | | | |
|---|---|---|---|
| Dietary Practices | AFMAN 34-240 | Unit Commander | AF/A1 or USSF/S1 as appropriate |
| **Religious Apparel** | | | |
| Religious Apparel (During Worship Services) | AFI 36-2903 | Authorized (see note 2) | AF/A1 or USSF/S1 as appropriate |
| Religious Apparel (Not Visible or Apparent) | AFI 36-2903 | Authorized (see note 3) | AF/A1 or USSF/S1 as appropriate |
| Religious Apparel (Visible or Apparent) | AFI 36-2903 | Wing or Installation Commander (see note 4) | AF/A1 or USSF/S1 as appropriate |
| **Grooming Standards and Personal Appearance** | | | |
| Grooming and Personal Appearance | AFI 36-2903 | Wing or Installation Commander or AF/A1 or USSF/S1 (see note 4) | AF/A1 or USSF/S1 as appropriate |
| **Medical Treatment** | | | |
| Immunization Exemptions | AFI 48-110_IP | MAJCOM or Field Command Commander | AF/SG |
| Medical Treatments | AFI 44-119, *Medical Quality Operations* | Unit Commander | AF/SG |
| Medical Personnel | AFI 44-102 | Medical Treatment Facility Commander | AF/SG |
| **Miscellaneous/Uncategorized** | | | |
| Accommodation requests that are outside the categories above. | | | AF/A1, AF/RE, NGB/CF, or USSF/S1 according to the component of the requester. |

**Notes:**

1. For personnel in Nuclear Weapons Personnel Reliability Program (PRP) status, reference Paragraph 6.2.1.

2. Commanders may, for operational or safety reasons, limit the wear of non-subdued items of religious apparel during services conducted in field conditions based on a compelling government interest.

3. Commanders may, for operational or safety reasons, limit the wear of religious apparel only when there is a compelling government interest.

4. Airman and Guardian's home station wing or garrison commanders or HAF, MAJCOM, Field Command, NAF, FOA and DRU Directors (O-6/GS-15 and above) are the approval authority for only the following dress and appearance religious accommodation requests: 1) hijab; 2) beard; 3) indoor/outdoor head coverings; 4) turban or underturban/patka worn with unshorn beard and with unshorn hair.  All other requests require AF/A1 or SF/S1 decision.

## 7.  Other Religious Freedom Issues.

7.1.  Religious and Holiday Displays.

7.1.1.  Offices and Workstations.  Displays of religious articles, sacred texts, and books of faith are permissible in government offices such as a religious text on a desk or a display on their wall where it is clear that the articles are for personal use, and are not used to create unprofessional relationships.

7.1.2.  Installation Holiday Displays.

7.1.2.1.  Religious Holiday Displays.  The Senior Installation Chaplain (or equivalent) may authorize Chaplain Corps sponsored, traditional, faith group-specific outdoor religious displays on the grounds of the chapel facility during significant holy day observances (such as sukkahs, menorahs, and nativity scenes).

7.1.2.2.  On installations without designated chapel facilities, where chapel facilities are either temporarily unusable or condemned, or where Chaplain Corps programs are utilizing a non-chapel facility for worship, rites, ceremonies, or ordinances, the installation commander may designate an area in proximity to the facility for the display of traditional, faith group-specific outdoor religious holiday displays in coordination with the Senior Installation Chaplain.

7.1.2.3.  Installation Christmas Trees and Tree Lighting Ceremonies.  Installation commanders may conduct installation Christmas tree lighting ceremonies in coordination with the Senior Installation Chaplain.

7.1.2.4.  Holiday Card Displays.  The celebration of public holidays including those squarely based on religious beliefs, and the depiction of the origins of those holidays via a government-sponsored display, are permissible. Such displays do not establish nor endorse religion.

7.1.2.5.  Displays should avoid explicit exhortations to demonstrate adherence towards a particular religion (or religion in general).

7.1.2.6.  Installation commanders should carefully describe eligibility to participate in holiday card displays.  Once eligibility is established, the installation will not discriminate among members of the participant group.  **(T-1).**

7.2.  Prisoner Of War/Missing In Action (POW/MIA) Tables.  Commanders may authorize the placement of a faith group-specific book of sacred text on POW/MIA tables when such tables are displayed at events or as permanent displays within dining facilities.  Like the other elements on the table, the sacred text serves as a symbol of the historic roles of faith in strengthening former POWs and of the important role of spiritual fitness.

7.2.1.  The sacred text will be plain in color (black, blue, or dark tone), and not overbearing in size. **(T-1).**

7.2.2.  Commanders will coordinate the sacred text placement on a POW/MIA table through the Senior Installation Chaplain.  **(T-3).**

7.2.3.  Commanders or designees will ensure tables and their elements are displayed in such a way as to encourage dignified and respectful remembrance of POWs and MIAs.  Unauthorized individuals will not touch, move, or remove any element from the table.  **(T-3).**

7.3. Integrated Resiliency Displays.  Commanders may authorize advertising and base-wide displays promoting integrated resiliency, to include the spiritual domain.  Spiritual fitness displays will not solely promote any particular religion.  **(T-0)**.

7.4. Invocations and Prayers at Official Events and Ceremonies.  Commanders may invite a chaplain to provide a prayer or invocation at official events and ceremonies, to include but not limited to changes of command, quarterly and annual award ceremonies, banquets, holiday parties, and other mandatory and non-mandatory installation and unit gatherings.

7.4.1.  Commanders who opt for an invocation should consult with their Senior Installation Chaplain on the assignment of the most appropriate chaplain to provide the prayer.  The Senior Installation Chaplain is the subject matter expert and best suited to determine if a particular official event would conflict with a chaplain's ability to provide a prayer.

7.4.2.  If a commander invites a chaplain to provide a prayer, the commander should do so with the understanding that he or she cannot require the chaplain to provide a prayer contrary to the chaplain's conscience, moral principles, or religious beliefs.  **(T-0)**

7.4.3.  Chaplains must not denigrate others, or engage in an impermissible government purpose when offering prayers at official, mandatory military events and ceremonies in accordance with AFI 1-1.  **(T-1).**

7.4.4.  Chaplains should be mindful they are not performing this invocation for themselves.  The invocation or prayer is for the military member, unit members, their leaders, subordinates, peers, and support network.

7.4.5.  Promotion and retirement ceremonies are non-mandatory and personal in nature.  Honorees may request a chaplain or another individual to pray at such ceremonies in accordance with the specific religious or spiritual tradition of the honoree.  Honorees and invited personal speakers may thank God or any supreme being (or none at all) during their remarks.

7.5.  Change of Command Ceremonies.

7.5.1.  A commander may thank God or any supreme being (or none at all) during the commander's remarks.

7.5.2.  A commander may have an invocation at the change of command.  The commander may invite a chaplain or non-chaplain to provide the invocation.

7.5.3.  A commander in his or her remarks, or individual providing an invocation, cannot denigrate others, or engage in an impermissible government purpose in accordance with AFI 1-1, *Air Force Standards*.  **(T-1).**

7.6.  Installations and units are encouraged to use official communication systems such as protocol, Chaplain Corps (HC), or PA channels to distribute and communicate Chaplain Corps religious events.

7.7.  Voluntary discussions of religion, even when conducted in uniform, are permissible where it is clear that the discussions are personal, and the discussions do not create an unprofessional relationship. Commanders and supervisors should be mindful of the supervisor and subordinate relationship during such discussions.

**8.  Religious Liberty Inquiries.**

8.1.  Inquires about religious freedom or accommodations may come from external and internal sources.  External inquiries may originate with government agencies, non-federal entities, or interest groups.  Internal matters originate from DoD personnel.  The RRT is the commander's primary resource for responding appropriately to such inquiries.

8.2.  Processing External Religious Inquiries.

8.2.1.  Airmen and Guardians and organizations that receive external religious inquiries will forward the inquiry to the appropriate commander prior to responding to any non-federal entity. **(T-1).**

8.2.2.  The commander will convene the RRT to advise on courses of action regarding the inquiry. **(T-1).**

8.2.3.  The commander will decide the appropriate course of action for the religious inquiry after receiving and evaluating the recommendations of the respective RRT.  **(T-1).**  The commander's decision and the RRT recommendation should be conveyed to the MAJCOM, Field Command, or DRU RRT prior to a response to an external inquiry.

8.3.  Processing Internal Religious Inquiries.  Commanders will process all internal religious inquiries through the RRT except for religious discrimination complaints, which will be resolved through the Equal Opportunity office in accordance with AFI 36-2710, *Equal Opportunity Program*.  **(T-1).**

**9.  Religious Accommodation for Chaplains.**

9.1.  In accordance with DoD Instruction 1300.17, *Religious Liberty in the Military Services*, no Service member may require a chaplain to perform any rite, ritual, or ceremony that is contrary to the conscience, moral principles, or religious beliefs of the chaplain, nor may any Service member discriminate or take any adverse personnel action on the basis of the refusal by the chaplain to comply with such requirements.  Chaplains unable to perform these duties are obligated to facilitate timely identification of a willing provider.  **(T-0)**

9.2.  Notwithstanding any other provision in this instruction, while conducting worship services and during the performance of rites and rituals associated with their religious faith, a chaplain may wear with the military uniform any required religious apparel or accoutrements associated with the traditions or practices of their religious faith.  Commanders may not prohibit chaplains from wearing those religious symbols that are part of the chaplain's duty uniform. **(T-0).**

9.3.  In weighing their own conscience, moral principles, or religious beliefs, the chaplain will show mutual respect and maintain professional relationships with colleagues and those in their

unit, regardless of race, gender, beliefs, or sexual orientation.  **(T-1).**  This includes, but is not limited to, supervisory relationships, sharing workspace and projects, and attending staff meetings.

**10. Religious Accommodations for Air Force Civilian Employees.**  Supervisors should notify the unit commander of all requests by civilian employees for religious accommodation. Commanders should consider convening the Religious Resolution Team to assist the supervisor with a response to the request.  Supervisors will consult at a minimum the Civilian Personnel Office prior to issuing a decision on the requested accommodation.  **(T-1).**

STEVEN A. SCHAICK
Chaplain, Major General, USAF
Chief of Chaplains

**Attachment 1**

**GLOSSARY OF REFERENCES AND SUPPORTING INFORMATION**

*References*

*The Constitution of the United States of America*

Title 10 United States Code

Title 42 United States Code

DoDD 5210.56, *Arming and the Use of Force,* 1 April 2011

DoDI 5210.42-R, *Nuclear Weapons Personnel Reliability Program (PRP) Regulation*, 26 February 2014

DoD Instruction 1300.17, *Religious Liberty in the Military Services,* 1 September 2020

DoDI 5400.11, *DoD Privacy and Civil Liberties Programs,* 29 January 2019

DAFPD 52-1, *Chaplain Corps,* 5 November 2018

DAFPD 52-2, *Accommodation of Religious Practices in the Air Force*, 28 July 2020

AFI 1-1, *Air Force Standards*, 7 August 2012

AFI 33-322, *Records Management and Information Governance Program,* 23 March 2020

AFI 36-704, *Discipline and Adverse Actions of Civilian Employees*, 3 July 2018

AFI 36-2710, *Equal Opportunity Program*, 18 June 2020

AFI 36-2903, *Dress and Personal Appearance of Air Force Personnel,* 7 February 2020

AFI 36-3003, *Military Leave Program,* 7 April 2021

AFI 36-3204, *Procedures for Applying as a Conscientious Objector,* 15 July 1994

AFI 44-102, *Medical Care Management,* 17 March 2015

AFI 44-119, *Medical Quality Operations,* 16 August 2011

AFI 48-110_IP, *Immunizations and Chemoprophylaxis for Prevention of Infectious Disease,* 7 October 2013

AFMAN 34-240, *Appropriated Fund (APF) Food Service Program Management,* 19 April 2019

DAFI 33-360, *Publications and Forms Management,* 21 October 2020

AFMAN 36-2032, *Military Recruiting and Accessions,* 27 September 2019

*Prescribed Forms*

None

*Adopted Forms*

AF Form 847, *Recommendation for Change of Publication*

*Abbreviations and Acronyms*

**AETC**—Air Education and Training Command

**AFI**—Air Force Instruction

**AFMAN**—Air Force Manual

**AFPD**—Air Force Policy Directive

**AFSVC**—Air Force Services Center

**DAF**—Department of the Air Force

**DAFI**—Department of the Air Force Instruction

**DAFPD**—Department of the Air Force Policy Directive

**DoD**—Department of Defense

**DoDD**—Department of Defense Directive

**DoDI**—Department of Defense Instruction

**DRU**—Direct Reporting Unit

**FOA**—Field Operating Agency

**FSS**—Force Support Squadron

**ESM**—Essential Station Messing

**HAF**—Headquarters Air Force

**MAJCOM**—Major Command

**MIA**—Missing in Action

**MTF**—Military Treatment Facility

**NAF**—Numbered Air Force

**OPR**—Office of Primary Responsibility

**PA**—Public Affairs

**POW**—Prisoner of War

**PRP**—Personnel Reliability Program

**RRT**—Religious Resolution Team

*Terms*

**Compelling Governmental Interest**—In the DoD, a military requirement that is essential to accomplishment of the military mission.

**Dietary Practice**—Religious tenets that prohibit the eating of specific foods, require fasting, or prescribe a certain manner in which food must be prepared.

**Exercise or Expression of Religion**—Includes any religious practice(s), whether or not compelled by, or central to, a system of religious belief.

**Grooming and Personal Appearance**—Grooming and appearance practices, including but not limited to hair length, facial hair, permanent and temporary tattoos, body piercings, and other modification observed by religious groups.

**Least Restrictive Means**—An individualized determination that, in realizing its compelling interest, the government could not have employed means that were less burdensome on the military member's religious liberties.

**Minimally Conspicuous**—Religious headgear is neat and conservative and would not, in the commander's judgment, draw the focus of an observer's attention from the uniform as a whole. In addition, it does not impair the ability to assess compliance with hair standards, and can fit under the appropriate military headgear.

**Neat and Conservative**—Discreet, tidy, and not dissonant or showy in style, size, design, brightness, or color.

**Peyote**—A hallucinogenic drug that is derived from peyote cactus and used especially in the religious ceremonies of some Native American peoples.

**Religious Apparel**—Articles of clothing worn as part of a doctrinal or traditional observance of the religious faith practiced by the member.

**Religious Body Art**—Temporary or permanent tattoos, piercings through the skin or body part, or other modification to the body that are of a religious nature.

**Sincerely Held Beliefs**—A member's conscience, moral principles, or religious beliefs demonstrated through participation in regular activities associated with the belief, consistency in adherence to the beliefs, tenets and practices, and/or a demeanor and pattern of behavior consistent with the beliefs.

**Substantial Burden**—In general, significantly interfering with the exercise of religion as opposed to minimally interfering with the exercise of religion.

**Unit Cohesion**—The bonding together of military members in such a way as to sustain their will and commitment to each other, the unit, and mission accomplishment, despite combat or mission stress.

**Attachment 2**

**SAMPLE PRE-ACCESSION STATEMENT OF UNDERSTANDING OF THE DEPARTMENT OF THE AIR FORCE'S RELIGIOUS ACCOMMODATION POLICY**

**Figure A2.1.  Sample Pre-Accession Statement of Understanding of the Department of the Air Force's Religious Accommodation Policy.**

Date
Name
Commander, Air Force Recruiting Service
Address
City State

Name
Address
City State

To the Commander of Air Force Recruiting Service,

I understand that Department of the Air Force policy is to accommodate religious practices whenever possible, unless doing so would have an adverse impact on mission accomplishment, including military readiness, unit cohesion, good order, discipline or health and safety.

I understand accommodation of my religious practices cannot be guaranteed at all times.  I understand that determination of military necessity rests entirely with my chain of command, and that I will be expected to comply with Department of the Air Force policy, practice or duty from which I am requesting accommodation unless and until approved by the designated authority.

I do NOT desire to request support for specific religious practices at this time
_____
(Applicant Signature)

I DO desire to request support for the following religious practice(s):
_____
(Type of Request)
_____
(Applicant Signature)

(Typed or Printed Name and Signature of Witnessing Recruiting Representative)

**Attachment 3**

**OFFICER PRE-ACCESSION REQUEST FOR RELIGIOUS ACCOMMODATION**

**Figure A3.1.  Officer Pre-Accession Request for Religious Accommodation.**

Date
Name
Commander, Air Force Recruiting Service
Address
City State

Name
Address
City State

To the Commander of Air Force Recruiting Service,

I am an officer candidate for accession the Department of the Air Force.  I request a religious accommodation waiver of the [(uniform) (grooming) (uniform and grooming)] requirements of AFI 36-2903, *Dress and Appearance of Air Force Personnel*, to wear [describe requested religious accommodation].  I request that this determination be made before I accept entry into the service.

This request is based on [describe the religious basis for the request].  Enclosed is a [description or photograph of my requested accommodation] and [any other relevant documentation].  I understand my Air Force recruiter will assist me in arranging for an in-person or telephonic interview with a Department of the Air Force chaplain as part of the process for requesting a religious accommodation.

I understand that if I choose to enter service before my request is acted upon, I will be required to comply with the uniform and grooming standards of AFI 36-2903, *Dress and Personal Appearance of Air Force Personnel* unless or until I am notified that my request is approved.

If my request is disapproved, I understand I may choose to enter military service without an accommodation or I may choose to discontinue the accession process.  I understand that an approved accommodation continues throughout my career, but may be suspended, modified, or revoked by appropriate authorities when required by military necessity.  The point of contact for this request is the undersigned at [phone number] or [email address].


JOHN D. DOE
Officer Candidate

**Attachment 4**

**SAMPLE ENLISTED PRE-ACCESSION REQUESTS FOR RELIGIOUS ACCOMMODATION**

**Figure A4.1.  Sample Enlisted Pre-Accession Requests for Religious Accommodation.**

Date
Name
Commander, Air Force Recruiting Service
Address
City State

Name
Address
City State

To the Commander of Air Force Recruiting Service,

I am a candidate for enlistment into the Department of the Air Force.  I request a religious accommodation waiver of the [(uniform) (grooming) (uniform and grooming)] requirements of Air Force Instruction (AFI) 36-2903, *Dress and Appearance of Air Force Personnel*, to wear [describe requested religious accommodation].  I request that this determination be made before I accept entry into service in the Department of the Air Force as an enlisted member.

This request is based on [describe the religious basis for the request].  Enclosed is a [photograph of my requested accommodation] and [any other relevant documentation].  I understand my recruiter will assist me in arranging for an in-person or telephonic interview with a Department of the Air Force chaplain as part of the process for requesting a religious accommodation.

I understand that if I choose to enter service before my request is acted upon, I will be required to comply with the uniform and grooming standards of AFI 36-2903 unless or until I am notified that my request is approved.

If my request is disapproved, I understand I may choose to enlist and serve without an accommodation or I may choose to discontinue the accession process.  I understand that an approved accommodation continues throughout my career, but may be suspended, modified, or revoked by appropriate authorities when required by military necessity.  The point of contact for this request is the undersigned at [phone number] or [email address].

JOHN D. DOE
Enlisted Candidate

**Attachment 5**

**CHAPLAIN INTERVIEW CHECKLIST**

**Table A5.1.  Chaplain Interview Checklist.**

| Date of Interview: | | | |
|---|---|---|---|
| Applicant Information | | | Chaplain Information |
| Rank/Name: | | | Rank/Name: |
| Phone: | | | Phone: |
| Email: | | | E-mail: |
| Unit of Assignment: | | | Unit of Assignment: |
| Interview Preliminaries | | | |
| Yes | No | N/A | |
| | | | Chaplain reviewed DAFI 52-201 on religious accommodation and the issue for which the requestor is seeking accommodation |
| | | | Applicant was notified that the interview is not confidential and will be used to advise the applicant's chain of command |
| | | | Chaplain explained to the applicant that confidential support can be received from another chaplain |
| | | | Applicant has been granted a religious accommodation for this practice previously |
| | | | Applicant's request memorandum reflects the belief cited in the application |
| Type of Waiver Requested | | | |
| Yes | No | N/A | |
| | | | Uniform standards |
| | | | Grooming standards |
| | | | Immunization requirements |
| | | | Religious Practice |
| | | | Other (Please describe): |
| Interview | | | |
| Yes | No | N/A | |
| | | | Requestor's religious beliefs seemed honestly, consistently and sincerely held using one or more of the following factors: |
| | | | 1.  Requestor was credible (consistently keeps tenets, practices, etc.) |
| | | | 2.  Requestor's demeanor and pattern of conduct are consistent with the request |
| | | | 3.  Requestor participates in activities associated with the belief(s) |
| | | | 4.  Other persons supporting the claim are credible |
| | | | 5.  Request is supported by letter(s) of verification or endorsement from an organization espousing the beliefs which are the basis for the claim |
| | | | Alternate means of accommodating the practice were explored in the interview |
| | | | Requester identified the substantial burden which infringes upon religious free |
| Process Checklist | | | |
| Yes | No | N/A | |
| | | | Chaplain has prepared a memorandum documenting the interview and making a recommendation to the decision authority |
| | | | Memorandum must address: |

| | | | |
|---|---|---|---|
| | | | 1. The requestor's sincerity<br>2. Alternate means explored for religious accommodation<br>3. The substantial burden infringing on religious free exercise<br>4. Recommendation to the decision authority |
| | | | Chaplain reviewed memorandum with applicant and provided a copy |
| | | | Chaplain submitted the memorandum to the commanding officer via chain of command |
| | | | Chaplain referred applicant to command to process request |

**Attachment 6**

**SAMPLE POST-ACCESSION REQUEST FOR RELIGIOUS ACCOMMODATION**

**Figure A6.1.  Sample Post-Accession Request for Religious Accommodation.**

Date
Name
Commander, (Unit)
Address
City State

Name
Address
City State

To the Commander of (Unit),

I request a religious accommodation waiver of the [(uniform) (grooming) (uniform and grooming)] requirements of Air Force Instruction (AFI) 36-2903, *Dress and Appearance of Air Force Personnel*, to wear [describe requested religious accommodation]. My DoD ID number is XXXXXX. My Specialty Code is XXXXXXX.

This request is based on [describe the religious basis for the request].  Enclosed is a [photograph of my requested accommodation] and [any other relevant documentation].  I understand I must arrange an in-person interview with a Department of the Air Force chaplain as part of the process for requesting a religious accommodation.

I understand that I am required to comply with the uniform and grooming standards of AFI 36-2903 unless or until I am notified that my request is approved.

If my request is disapproved, I understand I must comply with the aforementioned uniform and grooming standards.  I understand that an approved accommodation continues throughout my career, but may be suspended, modified, or revoked by appropriate authorities when required by military necessity.  The point of contact for this request is the undersigned at [phone number] or [email address].

JOHN D. DOE
Rank, USAF/USSF

**Attachment 7**

**SAMPLE TURBAN, UNCUT BEARD AND HAIR APPROVAL MEMORANDUM**

**Figure A7.1.  Sample Turban, Uncut Beard And Hair Approval Memorandum.**

MEMORANDUM FOR MEMBER'S RANK AND NAME

FROM:  WG/CC
         (ADDRESS)
SUBJECT: Decision Regarding Religious Accommodation Request – Member's
         Names
       I have received your request for a religious accommodation to permit you to wear a turban with uncut beard and uncut hair in observation of your Sikh faith, along with the recommendations of your chain of command. After careful consideration of the specific facts and circumstances, I grant your request for an accommodation to wear a turban with uncut beard and uncut hair indoors and outdoors in all uniform combinations subject to the limitations described in this decision memorandum. A copy of this decision memorandum will be placed in your automated personnel records.
       While assigned or performing routine, non-hazardous duties, you may wear a turban with uncut beard and uncut hair. The turban will be worn in a neat and conservative manner that presents a professional and well-groomed appearance. The material will be plain, dark blue, or black, free of designs or markings; except when wearing the Operational Camouflage Pattern Uniform, you may wear a turban or under-turban in a camouflage pattern matching the uniform. If you are assigned to units wearing a beret of any color, you may wear an appropriately colored turban or under-turban as directed by the unit commander.
       Your beard must be maintained to a length not to exceed 2 inches when measured from the bottom of the chin. Beard hair longer than 2 inches must be rolled and/or tied to achieve the required length and must be worn in a neat and conservative manner that presents a professional appearance. You may use styling products to groom or hold the beard in place, but may not use petroleum-based products if wearing a protective mask. The bulk of your beard may not impair the ability to operate an assigned weapon, military equipment, or machinery.
       A mustache worn with a beard may extend sideways beyond the corners of the mouth to connect with the beard, but must be trimmed or groomed to not cover the upper lip.
       Unless duties, position, or assignment require you to wear the Advanced Combat Helmet or other protective headgear, you are not required to wear military headgear in addition to the turban or under-turban. Rank insignia will be displayed on the turban or under-turban when worn in circumstances where military headgear is customarily worn.
       When the turban is worn, hair worn under the turban is not subject to the standards in Air Force Instruction 36-2903, *Dress and Personal Appearance of Air Force Personnel*, but may not fall over the ears or eyebrows or touch the collar while in uniform. When wearing an Advanced Combat Helmet or other protective headgear with the under-turban, the bulk of the hair will be repositioned or adjusted to ensure proper fit.

When directed by a commander, you may be required to wear an under-turban of fire-resistant material.

Due to the Air Force's compelling interest of safety, you must remove your turban if you go within 25 feet of an operating aircraft. If you must remove your turban, you will adhere to the female dress and appearance standards for hair as outlined in Air Force Instruction 36-2903, Paragraph 3.1.3

Should you be assigned or directed to perform hazardous duty (duties for which you would be entitled to receive incentive pay for hazardous duty, special pay for duty subject to hostile fire or imminent danger, or hazardous duty incentive pay for flying duty) or operate in a hazardous environment (to include a chemical threat), continuation of this accommodation will be evaluated by your chain of command.

This evaluation will be expeditiously forwarded to me for decision whether to suspend the accommodation during your assignment to such areas. This Paragraph is not intended, nor does it operate, to impede your command's authority to order immediate removal of your turban to ensure, for example, a proper gas mask fit in the event of a chemical, biological, radiological, nuclear or explosive threat.

I may withdraw or limit the scope of your accommodation for reasons of military necessity. If circumstances require that you be directed to comply fully with standards in Air Force Instruction 36-2903, you should be prepared to do so.

My point of contact for this action is XXXX, who can be reached at XXX-XXX-XXX (DSN XXX).

NAME
Rank,
USAF
Duty
Title

cc:
Member's Unit

**Attachment 8**

**SAMPLE HIJAB APPROVAL MEMORANDUM**

**Figure A8.1.  Sample Hijab Approval Memorandum.**

MEMORANDUM FOR MEMBER'S RANK AND

NAME FROM: WG/CC
          (ADDRESS)

SUBJECT: Decision Regarding Religious Accommodation Request – Member's
Name

    I have received your request for religious accommodation to permit you to wear a
hijab in observation of your Muslim faith, along with the recommendations of your chain of
command.
After careful consideration of the specific facts and circumstances, I grant your request for
an accommodation to wear a hijab indoors and outdoors in all uniform combinations
subject to the limitations described in this decision memorandum. A copy of this decision
memorandum will be placed in your automated personnel records.

    While assigned or performing routine, non-hazardous duties, you may wear a hijab.
The hijab will be plain, dark blue, black or may be in the same camouflage pattern as the
Operational Camouflage Pattern Uniform. The hijab must be closely fitted to the contours
of your head and neck and may not cover your eyebrows, eyes, cheeks, nose, mouth, or
chin. The bottom edge of the hijab will be tucked under the uniform top and all required
headgear must still be worn. Furthermore, your hair underneath the hijab will comply with
grooming standards in Air Force Instruction 36-2903, *Dress and Personal Appearance of
Air Force Personnel*. Additionally, you must comply with all safety and sanitary
requirements.

    Should you be assigned or directed to perform hazardous duty (duties for which you
would be entitled to receive incentive pay for hazardous duty, special pay for duty subject
to hostile fire or imminent danger, or hazardous duty incentive pay for flying duty) or
operate in a hazardous environment (to include a chemical threat), continuation of this
accommodation will be evaluated by your chain of command. This evaluation will be
expeditiously forwarded to me for decision whether to suspend the accommodation during
your assignment to such areas. This Paragraph is not intended, nor does it operate, to
impede your command's authority to order immediate removal of your hijab to ensure, for
example, a proper gas mask fit in the event of a chemical, biological, radiological, nuclear
or explosive threat.

    I may withdraw or limit the scope of your accommodation for reasons of military
necessity. If other circumstances require that you be directed to comply fully with
standards in AFI 36-2903, you should be prepared to do so.

Case 8:21-cv-02429-SDM-TGW   Document 23-22   Filed 11/03/21   Page 62 of 64 PageID 1276

My point of contact for this action is XXX, who can be reached at XXX-XXX-XXX (DSN XXX).

Name
  Rank, USAF
  Duty Title

cc:
Member's Unit

**Attachment 9**

**SAMPLE BEARD APPROVAL MEMORANDUM**

**Figure A9.1.  Sample Beard Approval Memorandum.**

MEMORANDUM FOR MEMBER'S RANK AND NAME

FROM: WG/CC
          (ADDRESS)

SUBJECT: Decision Regarding Religious Accommodation Request – Member's Name

I have received your request for religious accommodation to authorize the wear of a beard in observance of your religious faith. After careful consideration of the specific facts and circumstances, I grant your request for accommodation from Air Force personal appearance and grooming standards, subject to limitations described in this decision memorandum. A copy of this decision memorandum will be placed in your automated personnel records.

While assigned or performing routine, non-hazardous duties, you may wear a neat, conservative beard that presents a professional, well-groomed military appearance, and does not exceed two inches in bulk. You may roll and tie the beard to meet the two inch bulk requirement. Additionally, you must comply with all safety and sanitary requirements.

Should you be assigned or directed to perform hazardous duty (duties for which you would be entitled to received incentive pay for hazardous duty, special pay for duty subject to hostile fire or imminent danger, or hazardous duty incentive pay for flying duty) or operate in a hazardous environment (to include a chemical threat), continuation of this accommodation will be evaluated by your chain of command. If your chain of command recommends altering this religious accommodation, the recommendation will be expeditiously forwarded to me for a decision whether to suspend the accommodation during your assignment to such areas. This Paragraph is not intended, nor does it operate, to impede command's authority to order immediate removal of facial hair to ensure, for example, a proper gas mask fit in the event of a chemical, biological, radiological, nuclear or explosive threat.

The scope of this accommodation may be limited or withdrawn for reasons of military necessity. If circumstances require you be directed to comply fully with the grooming standards in AFI 36-2903, *Dress and Personal Appearance of Air Force Personnel*, you should be prepared to do so.

My point of contact for this action is XXX, who can be reached at XXX-XXX-XXX (DSN XXX).

Name
Rank,
USAF
Duty
Title


cc:
Member's Unit