UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| **NAVY SEAL # 1,** et al.**,**<br><br>                Plaintiffs,<br><br>    v.<br><br>**JOSEPH R. BIDEN, JR.**, in his official capacity as President of the United States, et al.,<br><br>                Defendants. | Case No. 8:21-cv-02429-SDM-TGW |

## FIRST NOTICE OF COMPLIANCE

Pursuant to the Order dated November 22, 2021, ECF No. 40, Defendants respectfully notify the Court of compliance with the Order and submit the attached exhibits providing the requested data from the Army, Navy, Marines, Air Force and Coast Guard.[1]  An index of the Exhibits is at the end of this Notice.

1. <u>The Availability of the Data Requested by the Court Is Limited</u>.

As set forth in greater detail in the attached declarations from each Service, there are limitations as to the data that Defendants are able to provide, and other data requires contextual explanation.  Because the availability of the requested data varies by Service, each Service has submitted explanatory declarations and data in compliance with the Court's Order.  For example, the Court requested data regarding the number of exemption requests in which the chaplains determined sincerity.  The

---

[1] There are no Plaintiffs from the Space Force, but Space Force data should be captured by the Department of the Air Force.

religious exemption process differs across the Armed Forces, but in general, an interviewing chaplain does not make a "determination" as to sincerity. Typically, an interviewing chaplain makes an assessment of the request based on the interview and provides input to the decisionmaker, who may have access to additional information. *See, e.g.*, Ex. 1 ¶ 9& n.4; Ex. 2 ¶ 2; ECF No. 42-3 ¶¶ 11-12; Ex. 3 ¶ 2; Ex. 5 ¶¶ 5-11; Ex. 7 ¶ 4.

In addition, the Services differ with respect to the ability to report on current temporary or permanent medical exemptions, and each responding Service lacks the ability to aggregate data on a provider's denial of temporary medical exemptions because that information is not centrally managed. *See, e.g.*, Ex. 1 ¶ 5; Ex. 2 ¶ 2; Ex. 3 ¶ 2; Ex. 6 ¶¶ 4-10; Ex. 7 ¶ 5.

Each Service Declaration provides additional information about the limitations and necessary context for the data estimates provided. *See generally* Exs. 1-7.

2. The Government Objects to the Provision of Periodic Reports.

Finally, the Government reserves its objections to the continued collection, analysis and submission of this data to the Court, for several reasons.

First, the Court presently lacks jurisdiction to proceed in this case and thus to order the submission of information to the Court. In response to Defendants' ripeness arguments, the Court reasoned that "the first moment an objecting service member must act contrary to a religious belief is when the exemption is finally denied" and that ripeness "can occur no later than the moment the member must irreparably receive the injection or irreparably defy an order." ECF No. 40, at 30. Accepting that analysis,

*arguendo*, it appears from the Complaint that no Plaintiff has a ripe claim. *See generally* ECF No. 23, at 33-34 (no service member with pending exemption request is subject to discipline). Ripeness is jurisdictional, *see Elend v. Basham*, 471 F.3d 1199, 1205 (11th Cir. 2006), and "[w]ithout jurisdiction the court cannot proceed at all in any cause." *Sinochem Int'l Co. v. Malaysia Int'l Shipping Corp.*, 549 U.S. 422, 430–31 (2007) (quoting *Steel Co. v. Citizens for a Better Env't*, 523 U.S. 83, 94 (1998)).

Second, as set forth in Defendants' Opposition, the Court should not order any relief, including data collection and submission, for these anonymous Plaintiffs, nor rely on anonymous declarations, because the Court lacks jurisdiction to do so in the absence of an operative complaint with named plaintiffs. *See* ECF No. 23, at 12-13; *see also Doe v. Austin*, No. 3:21-cv-01211-AW-HTC (N.D. Fla. Dec. 1, 2021) (denying similar motion and striking complaint); *Oklahoma v. Biden*, No. CIV-21-1136-F, 2021 WL 6126230, at *2 (W.D. Okla. Dec. 28, 2021) ("Absent permission, the district court lacks jurisdiction over the unnamed parties, as a case has not been commenced with respect to them." (quotation omitted)). In early November 2021, Plaintiffs represented that a motion to proceed under a pseudonym was "forthcoming." *See* ECF No. 30, at 15-16n.2. Months later, Defendants still do not know the identities of the Plaintiffs, and Plaintiffs still have not filed the promised motion.[2] The Court should deny the preliminary injunction on those grounds alone, and in any event should not proceed

---

[2] Plaintiffs also represented to the Court an intention to file a motion for leave to file an amended complaint, *see* ECF No. 41, and represented to Defendants that it would be filed in December, *see* ECF No. 45. Plaintiffs have not filed a motion to amend.

3

with discovery at this stage on behalf of anonymous plaintiffs.

Finally, putting the military services to the burden on assembling the request data every two weeks is unwarranted where the requested data is irrelevant.

For example, the total number of sincerity assessments, even if available, would not determine the viability of any individual's RFRA claim. In addition, aggregate data on the availability or unavailability of temporary medical exemptions from vaccination requirements does not determine whether any individual service member is entitled to a permanent religious exemption. The data is at best tangentially related to Plaintiffs' claims, and not related to the pending motion at all because the emergency relief sought by Plaintiffs must be based on the viability of these particular Plaintiffs' requests.

More fundamentally, the Court appears to have ordered the submission of this data based on speculation that data showing exemptions were denied could be some evidence that the process was a "ruse", or in the alternative, that data showing some exemptions were granted could undermine a showing of the Government's compelling interest. *See* ECF No. 40, at 31-33. But drawing either conclusion from data would be improper at any stage of the proceedings. The denial of many or most RFRA exemptions would not show that the process is a "ruse"; it would be consistent with a finding that the military had assessed its interests in vaccination of service members as extremely compelling and not readily satisfied by less restrictive alternatives. In that instance, the lawfulness of the military's actions under RFRA would hinge on whether the military had properly considered the relevant factors and reasonably concluded

that no less restrictive alternatives were available in each individual case. It would be improper to conclude from results alone that senior military leadership was acting in bad faith. The Supreme Court has long directed district courts to give deference to the professional judgment of military authorities concerning the relative importance of a particular military interest. *See Rostker v. Goldberg*, 453 U.S. 57, 71, 81-82 (1981) (It is "quite wrong" and "palpably exceed[s]" the court's authority to "undertak[e] an independent evaluation of [] evidence, rather than adopting an appropriately deferential examination" of the military "evaluation of that evidence."); *Trump v. Hawaii*, 138 S. Ct. 2392, 2421-22 (2018) (declining in matters of national security to "substitute" the Court's own "predictive judgments," or its own "evaluation of the underlying facts," for those of the President); *Goldman v. Weinberger*, 475 U.S. 503, 507 (1986); *Winter v. NRDC, Inc.*, 555 U.S. 7, 9 (2008); *cf. Doe 2 v. Shanahan*, 917 F.3d 694, 728 (D.C. Cir. 2019) (assessing plaintiffs' empirical attacks on the military's justifications with extreme deference for military judgment). Similarly, if the data showed that some or many exemptions are being granted, that also would not undermine the Government's compelling interest; on the contrary, it would be consistent with a finding that in appropriate individual circumstances, the Government was properly considering less restrictive alternatives only when they were available.

In any case, the current data shows that only a fraction of the overall appeals filed have been adjudicated, and thus no conclusion can be drawn from the current data. *See* Exs. 1 ¶ 10 (6 appeals pending, none adjudicated); Ex. 2 (1008 appeals

pending, none adjudicated); Ex. 3 (997 appeals pending, 81 adjudicated); Ex. 4 (140 pending, 235 adjudicated); Ex. 7 (82 appeals pending, none adjudicated).

For the foregoing reasons, the Government objects to the submission of this data. The Plaintiffs' motion for a preliminary injunction should be denied, and the case should then proceed in the ordinary course without court-ordered discovery every two weeks.

Dated January 7, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General
Civil Division

ALEXANDER K. HAAS
Director, Federal Program Branch

ANTHONY J. COPPOLINO
Deputy Director, Federal Programs Branch

*/s/ Amy E. Powell*
ANDREW E. CARMICHAEL
AMY E. POWELL
Senior Trial Counsel
ZACHARY A. AVALLONE
COURTNEY D. ENLOW
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 616-8467
Fax: (202) 616-8470
Email: courtney.d.enlow@usdoj.gov

*Counsel for Defendants*

1/7/2022