# Exhibit 2

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

**NAVY SEAL #1,** *et al.*

                Plaintiffs,

v.

**JOSEPH R. BIDEN**, in his official capacity as President of the United States, *et al.*

                Defendants.

Case No. 8:21-cv-02429-SDM-TGW

### DECLARATION OF CAPTAIN MERY-ANGELA SANABRIA KATSON, U.S. NAVY

I, Captain Mery-Angela Sanabria Katson, U.S. Navy, hereby state and declare as follows:

1. I am a captain in the United States Navy, currently serving as the Branch Head, Enlisted Plans and Policy (OPNAV N132), located in Arlington, Virginia. I make this declaration in my official capacity, based upon my personal knowledge and upon information that has been provided to me in the course of my official duties.

2. Exhibit 1, attached to this declaration, provides the available information ordered by the court. Order, 34 ECF No. 40. However, certain data elements are unavailable due to limitations on service information systems:

    (a) <u>The number of those denials in which the chaplain determined that the asserted belief is sincere</u>.

        (1) The chaplain assessment is not a determination of the sincerity of the requestor's belief. In accordance with Bureau of Naval Personnel Instruction ("BUPERSINST") 1730.11A, the chaplain provides the requestor's commander with an assessment of the sincerity of the Service member's personal religious

1

belief. While not questioning the validity of the beliefs, the approval and appeal authority (i.e. DCNO N1 and CNO, respectively) for the Navy will consider the chaplain's input and assess the sincerity of the religious belief on a case-by-case basis using the same criteria in BUPERSINST 1730.11A, enclosure (2). The chaplain's conclusion of the sincerity of the requestor's religious beliefs is not binding on either the approval or appeal authority.

      (2) The overwhelming majority of religious accommodation requests include a chaplain's assessment finding the requestor's belief to be sincere. Requests where the chaplain did *not* find the belief sincere are atypical. To determine the number of initial denials in which the chaplain found the member sincere requires identifying those requests where the chaplain found the requestor *not* sincere in order to subtract that number from initial denials already acted upon. We do not presently have that information.

(b) <u>Number of denials for which the time to appeal has expired without appeal</u>. Navy policies governing religious accommodation requests do not provide an explicit deadline for a requestor to submit an appeal once notified that his or her request has been denied. A requestor is generally afforded 5 business days to submit an appeal using the process outlined in BUPERSINST 1730.11A ¶ 5f(1).[1] Because the deadline does not begin until the member is notified of the decision, and because the applicable deadline may be modified by the cognizant commander (i.e. due to local practice, due to an extension for good cause shown, etc.), the number of denials for which time to appeal has expired without an appeal cannot be accurately determined.

---

[1] Personnel who do not appeal within 5 business days will be considered vaccine refusers. If the requestor appeals after 5 days, separation processing will be suspended. If the requestor subsequently received an approved religious exemption CNO approval, separation processing cease.

(c) <u>Number of medical-exemption requests from COVID-19 vaccination</u>. Both temporary and permanent medical exemption requests are initiated by consulting a medical provider; however, there is no reporting system that records the number of medical appointments scheduled for the purpose of a requestor seeking a medical exemption. Similarly, medical providers serve as the denial authority for both permanent and temporary medical exemption.

(1) Medical readiness for naval forces is documented in the Medical Readiness Reporting System (MRRS). However, military health care providers are not required to record denials of medical exemptions in MRRS, only in the patient's individual medical record. Because medical exemption denials are documented in each Service member's individual medical record, and is therefore not centrally tracked or reported, the number of denials cannot be determined. Conversely, an approved medical exemption is reported in MRRS and is therefore retrievable.

(2) The Navy Bureau of Medicine ("BUMED") Instruction 6230.15B, *Immunizations and Chemoprophylaxis for the Prevention of Infectious Diseases*, (Oct. 7, 2013) outlines authorized administrative exemptions. *See* BUMED Instruction 62310.15B PPP 2-6; App. C. Additional guidance concerning documenting administrative exemptions in MRRS is provided in BUMED Notice 6150, *Guidance for Coronavirus Disease 2019 Vaccination Deferral Status Reporting* (Sep. 21, 2021). While an exemption code may be recorded in MRRS, it generally indicates the Service member is unavailable to receive the (e.g., because they are on emergency leave, executing a PCS move, in civilian confinement, etc.). Ultimately, the code documents a Service member's

3

vaccination status on a given date under a category that generally explains why he or she has not yet received the vaccine. Of note, the Administrative Separation code (often when someone is on terminal leave[2]), does not necessarily represent a decision to exempt someone from the vaccine, but it reflects the fact that a Service member will not be compelled to cancel terminal leave in order to return and receive the vaccine.

 (d) <u>Number of administrative separation proceedings pending or concluded against a Service member whose request for a religious exemption was denied after appeal</u>. Navy policy is to process for separation all Navy service members who refuse the lawful order to receive the COVID-19 vaccine and do not have an approved exemption. *See* NAVADMIN 283/21 ¶ 2. Service members who are denied a vaccine exemption request must receive the COVID-19 vaccine within 5 days of being notified of the denial unless otherwise directed by the exemption adjudication authority. Id. ¶ 3.f.

(1) For enlisted Service members, administrative separation processing is initiated at the command level and is not centrally tracked. The notification process or the administrative board procedure, when applicable, is conducted under the authority each individual Service member's commander. Upon completion of the applicable procedure, the Service member's administrative separation case is forwarded to the COVID Consolidated Disposition Authority (CCDA) for approval. Once approved, the commander is granted authority by the CCDA to separate the Service member from the naval service. Only at this phase

---

[2] "Terminal Leave" refers to Service members using all accrued leave in order to take a prolonged absence (generally 30-60 days) at the end of their service obligation, to be discharged on their final day of leave.

is it feasible to calculate the number of completed administrative separation proceedings for enlisted personnel.

(2) For officers, the CCDA serves as the show cause authority (i.e., the authority which directs that the member be processed for separation following a report of misconduct). Once the applicable administrative procedures are completed, the Service member's commander is directed to complete administrative separation processing. *See* Secretary of the Navy Instruction 1920.6D, *Administrative Separation of Officers*, encl. 10 ¶¶ 5, 6; encl. 11 ¶¶ 14-17. Only at this phase is it feasible to calculate the number of completed administrative separation proceedings for officers.

(3) For either enlisted personnel or officers, however, while the Service tracks the total number of separation proceedings for failure to adhere to the COVID-19 vaccine requirement, it does not distinguish between those who had a religious accommodation that was denied and those who had no religious accommodation request at all. To determine this information the Service must complete a manual comparison of the list of personnel who are separated against the list of personnel who were denied religious accommodation exemptions.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 7th day of January, 2022.

*[signature]*
Mery-Angela Sanabria Katson
Captain, U.S. Navy

5

Exhibit 1 to Declaration of CAPT Katson

## U.S. Navy Court-Ordered Data

Current as of 7 January 2021

(1) Number of religious exemption from COVID-19 vaccination:

| # Initial Requests Under Review | # Initial Request Approved | # Initial Requests Denied | # Denials Where Chaplain Determined Belief Sincere | Total Initial Requests |
|---|---|---|---|---|
| 227 | 0 | 3,484 | UNKNOWN | 3,711 |

| # Denials w/o Appeal Before Deadline[1] | # Appeals Under Review | # Appeals Denied | # Appeals Approved | Fully Resolved Requests | |
|---|---|---|---|---|---|
| | | | | Aggregate # of Approved Requests | Aggregate # of Denied Requests |
| UNKNOWN | 1008 | 0 | 0 | N/A | N/A |

(2) Number of medical-exemption requests from COVID-19 vaccination:

| Temporary Medical Exemption Requests | # Medical Exemptions Denied | # Medical Exemptions Granted | | Total Medical Exemption Requests |
|---|---|---|---|---|
| | | Temporary[2] | Permanent | |
| UNKNOWN | UNKNOWN | 303 | 8 | UNKNOWN |

(3) Number of other exemptions from COVID-19 vaccination granted for any other reason (i.e. administrative exemptions):

| Emergency Leave | Permanent Change of Station (PCS) | Administrative Separation/ Terminal Leave | Administrative Temporary (i.e. no access to vaccine) |
|---|---|---|---|
| 0 | 50 | 482 | 63 |

(4) Number of courts-martial and separation proceedings pending or concluded against a service member whose request for a religious exemption was denied after appeal:

| Courts-Martial | | Administrative Separation (ADSEP) | |
|---|---|---|---|
| Pending | Concluded | ADSEP Initiated | ADSEP Completed |
| 0 | N/A | UNKNOWN | 0 |

---

[1] Appeals submitted after deadline will still be considered.
[2] This number reflects the total number of active temporary exemptions, but does not include expired medical exemptions. Absent a new exemption, a member is required to obtain the COVID-19 vaccine after their temporary medical exemption expires.