# Exhibit 5

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

NAVY SEAL #1, et al., )
)
   Plaintiffs, )
)
      v. )   No. 8:21-cv-02429
)
JOSEPH R. BIDEN, JR., in his official )
capacity as President of the United States, )
*et al.*, )
)
   Defendants. )
)

## DECLARATION OF CHAPLAIN, MAJOR MATTHEW J. STREETT

I, Matthew J. Streett, hereby state and declare as follows:

1. I am a Major in the United States Air Force currently assigned as a Staff Chaplain at the Office of the Chief of Chaplains. I have been in this position since June 2021. As a part of my duties, I am responsible for coordinating Chaplain Corps policy, publications, and religious accommodation concerns for the United States Air Force and the United States Space Force, lead the Policy branch of the Plans and Programs division, and I serve as one of the chaplain representatives on the Headquarters Air Force Religious Resolution Team advising the Air Force Surgeon General on religious accommodation appeals for vaccination exemption requests.

2. I am generally aware of the allegations set forth in the pleadings filed in this matter. I make this declaration in my official capacity as a Staff Chaplain and based upon my personal knowledge and upon information that has been provided to me in the course of my official duties.

3. I submit this declaration in support of Defendants' response to this Court's November 22, 2021 Order, requesting specific data be provided every fourteen days starting on January 7,

2022, pertaining to the number of requests filed in the Department of the Air Force for religious exemption from the COVID-19 vaccine, including "the aggregate number of initial denials" and "the number of those denials in which the chaplain determined that the asserted belief is sincere". The Department of the Air Force is not able to provide the number of denials in which the chaplain determined the asserted belief is sincere for the reasons provided below.

**Chaplains Advise on, but Do Not Make Final Determinations of, Sincerity**

4. The Air Force policy and procedures for addressing religious accommodation requests are outlined in Department of the Air Force Instruction (DAFI) 52-201, *Religious Freedom in the Department of the Air Force*, dated 23 June 2021 and Air Force Instruction (AFI) 48-110_IP, *Immunizations and Chemoprophylaxis for the Prevention of Infectious Diseases*, dated 7 October 2013 (certified current 16 February 2018).[1]

5. The role of the chaplain under DAFI 52-201 is not to make a final determination on the sincerity of a belief, but to provide a professional assessment based on data to ensure the approval authority is able to make an informed decision. They may provide an assessment of sincerity, but that assessment informs rather than limits decisions. DAFI 52-201, paragraph 4.2.7 states "the chaplain will submit a written memorandum to the approval authority that addresses each item in Attachment 5." Attachment 5 requires the chaplain's memorandum to address, in relevant part, whether the "Requestor's religious beliefs *seemed* honestly, consistently and sincerely held" based on one or more enumerated factors (e.g., credibility, demeanor and pattern of conduct consistent with the request, other persons supporting the claim, etc.).[2] As a practical matter, a chaplain will generally presume a belief to be sincere unless there is evidence to the

---

[1] AFI 48-110_IP is an inter-service publication. The Army identifies it as Army Regulation (AR) 40-562, Navy as Bureau of Medicine and Surgery Instruction (BUMEDINST) 6230.15B, and Coast Guard (CG) Commandant Instruction (COMDTINST) M6230.4G.
[2] DAFI 52-201, Attachment 5.

contrary. Since the chaplain's assessment is based primarily on the member's inputs rather than investigation of external data, a statement on sincerity of belief is a statement that the chaplain did not determine that the member was provably lying. In other words, disproving sincerity of belief is difficult, and so the chaplain may instead choose to focus on whether the belief is a sincerely held religious belief versus a sincerely held nonreligious belief. "Sincerity" is easy to affirm positively and difficult to determine the absence of.[3]

6.  The decision authority (i.e., the Approval and/or Appeal Authority) is still free to make final determination of the members' case, to include whether a member has a sincerely held religious belief, especially since that decision authority will have access to additional data the chaplain does not and since the chaplain's assessment provides data for the leader's decision. The chaplain's inputs to the decision authority are limited to the information available from the interview and anything presented by the member. It does not include other information that may be relevant in determining whether the member has a sincerely held religious belief, such as vaccination records or previous statements made by the member. In this sense, the chaplain's advisements are based on a member's affirmations rather than objective data available to the chaplain that could counter the member's claims.

7.  Although the chaplain's memorandum must also include a recommendation to the decision authority, the recommendation is not necessarily whether the accommodation should be granted or not. While the chaplain is not prohibited from saying whether an exemption should or should not be granted, the chaplain could also recommend that alternate means be explored, or

---

[3] It is uncommon for the chaplain at the interviewer or appeal level to disagree with the member's determination and view a religious request as a non-religious belief of conscience request. In those cases, that will likely happen only if the member's claim makes no reference to religion, or if documents to include the member's own memorandum and appeal make no link between religious claims and vaccination. However, this assessment would simply be a data point considered by the decision authority.

that a belief should be viewed as a belief of conscience or moral principle, which involves a different standard of review, as opposed to religious belief.  For example, in appeals, the chaplain opines on whether the request appears to be religious in nature, the vaccination does or does not constitute a substantial burden, more information should be requested before further chaplain analysis, or further group discussion is requested.

8. Additionally, there are multiple chaplains involved in the Religious Accommodation request process.  In the average active duty case there is an interviewing chaplain at the tactical level, a wing chaplain at an installation Religious Respect Team (RRT), and a chaplain advising the Approval Authority.  If a member's request is disapproved and the member appeals, there is an additional chaplain in the appeal process advising the Appeal Authority.  Chaplains may disagree with each other on whether a belief is sincere or religious.  Each chaplain's input is advisory and a data point for the Approval and Appeal Authorities to consider.  The Department of the Air Force has not designated any one chaplain in the process as the authoritative voice for the Chaplain Corps on sincerity.  Accordingly, it is not clear which chaplain's opinion should be provided to the court.  For example, while an interviewing chaplain has the benefit of meeting with the member in person, the RRT chaplain, MAJCOM chaplain, or appeal chaplain, may be more experienced and may have access to other relevant data not available to the interviewer.  Moreover, because the chaplain's function is advising a specific commander, decision authority, or appeal authority, it has not been necessary to log all levels of chaplain opinion in written records. For example, the RRT memorandum provides overall recommendations and inputs from the team, which means the RRT chaplain's views may not be readily apparent or distinguished from others on the team. The cumulative impact means that any data to the court on chaplain assessments of sincerity would be incomplete and misleading.  It would not provide a full picture

of the depth and breadth advice the various chaplains provided and could inaccurately leave the impression that all chaplains within the process agreed that a belief was sincere and/or religious.

## System Limitations

9.     Existing systems for processing religious accommodation for vaccination were not made for the purpose of this type of data collection, which means that data may be present, but not aggregated, consistent, or searchable. Although the Department of the Air Force tracks the number of religious accommodation request packages being processed and their general status (e.g., pending), I am not aware that any enterprise-level system tracks individual packages prior to appeals.  The packages are not stored or routed via a central system unless the initial request is disapproved and appealed.  Prior to that time, packages are routed through the service member's chain of command to the various Approval Authorities in a decentralized manner.  If a request is disapproved and subsequently appealed, the appeals and packages are routed via a centralized system to the Appeal Authority.  Even when the request is centrally stored during appeal, the system does not have a searchable identifier for reporting the number of requests where the chaplain opined that the member seemed to have a sincere belief or that it was religious in nature.  Although the Air Force Chaplain Corps historically attempted to track some of the data points accessible to chaplains, this information is incomplete, it asked questions that did not fit the complexity of the situation, it has no command authority to require responses, and it remains disconnected from any data set linked to determining whether accommodations were granted or denied, so it was never completed and is paused as of this date.  In my opinion, if this information were needed, a new data system would have to be built for it, which would require appropriated funds, assigned manpower or contracts, and development time. In effect, the Chaplain Corps' attempt demonstrated that the data request cannot be done simply or with

5

existing capabilities.

10. Additionally, chaplains do not necessarily provide inputs using consistent language as to whether the belief seemed to be sincere or religious in nature, and the Department of the Air Force has no methodology for categorizing those inputs. There are no uniform wording requirements mandated at the strategic level that chaplains must follow in discussing the sincerity or religious nature of a belief in the chaplain memorandum, even if there may be uniformity at a given MAJCOM level. Accordingly, a wide range of language may be used, which may result in inconsistent inputs. This would hamper the ability to review religious accommodation requests to categorize the chaplain's inputs. In addition, although DoDI 1300.17 makes a clear distinction between religious vs. conscience or moral principles (para. 1.2.d), some religious bodies do not, and the mixed language of those religious bodies informs the language of requests and the chaplain response to them.[4] In other words, DoD chaplains may use language that makes it unclear whether or not the chaplain felt a request seemed to be sincere or religious in nature.

11. Any attempts to categorize the chaplain's inputs as to sincerity or religious nature would be subject to interpretation and result in inaccurate data.

12. Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 7th day of January 2022.

STREETT.MATTHEW.JAMES.1147844570
Digitally signed by STREETT.MATTHEW.JAMES.1147844570
Date: 2022.01.07 09:25:36 -05'00'

MATTHEW J. STREETT, Maj, USAF
Staff Chaplain

---

[4] For example, see the 12 October 2021 "Statement on Coronavirus Vaccines and the Sanctity of Conscience" by Archbishop Timothy P. Broglio of the Catholic Archdiocese for Military Services, USA, which provides a religious justification for conscience objection. In other words, many religious traditions use the language of conscience in a way that is closely tied to religious exercise. By contrast, the DoD understands conscience objections in a different category from religious objections. Some stakeholders (or chaplains) may use language about a belief of conscience as a facet of a religious belief while others may use the same term to distinguish a non-religious belief.