# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

NAVY SEAL 1, United States Navy, NAVY SEAL 2, United States Navy, ~~EOD OFFICER, United States Navy,~~ SENIOR CHIEF PETTY OFFICER, United States Navy, CHAPLAIN, United States Navy, NAVY EOD OFFICER, United States Navy, COMMANDER SURFACE WARFARE OFFICER, United States Navy, NAVY CHIEF WARRANT OFFICER, United States Navy Reserve, LIEUTENANT COLONEL 1, United States Marine Corps, LIEUTENANT COLONEL 2, United States Marine Corps, LIEUTENANT COLONEL 3, FINANCIAL MANAGEMENT OFFICER, United States Marine Corps, RESERVE LIEUTENANT COLONEL, United States Marine Corps, MAJOR, United States Marine Corps, CAPTAIN, United States Marine Corps, CAPTAIN 2, United States Marine Corps, CAPTAIN 3, United States Marine Corps, FIRST LIEUTENANT, United States Marine Corps, SECOND LIEUTENANT, United States Marine Corps, ~~CAPTAIN~~CHIEF WARRANT OFFICER 3, United States Marine Corps, ~~ARMY RANGER, United States Army,~~ LANCE CORPORAL 1, United States Marine Corps, LANCE CORPORAL 2, United States Marine Corps, ~~ ~~MAJOR, United States Air Force, CHAPLAIN, United States Air Force, RESERVE LIEUTENANT COLONEL 1, United States Air Force, RESERVE LIEUTENANT COLONEL 2, United States Air Force, MASTER SERGEANT SERE SPECIALIST, United States Air Force, TECHNICAL SERGEANT, United States Air Force, CADET, United States Air Force Academy, COLONEL, United States Army, ARMY RANGER, United States Army, NATIONAL GUARDSMAN, Virginia Army National Guard, ~~COAST GUARD LIEUTENANT~~PILOT, United States Coast Guard, ~~ ~~~~COLONEL~~LCDR PILOT, United States ~~Army,       TECHNICAL SERGEANT~~Coast Guard, LIEUTENANT,

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

~~Case~~ No. ~~_____~~8:21-cv-02429 SDM-TGW

United States ~~Air Force, DEFENSE DEPARTMENT CONTRACTOR, United States~~Coast Guard, MANAGEMENT AND PROGRAM ANALYST, Citizenship and Immigration Services, Department of ~~Defense~~Homeland Security, ~~FEDERAL CIVILIAN ENGINEER CONTRACTOR,~~BUREAU OF PRISONS EMPLOYEE 1, STATE DEPARTMENT EMPLOYEE 1, and FEDERAL CIVILIAN CONTRACTOR EMPLOYER, ~~FEDERAL NUCLEAR CONTRACTOR EMPLOYEE, DEPARTMENT OF ENERGY CIVILIAN NUCLEAR TECH,~~ for themselves and all others similarly situated,

Plaintiffs,

v.

~~JOSEPH R. BIDEN, in his official capacity as President of the United States,~~ LLOYD AUSTIN, in his official capacity as Secretary of the United States Department of Defense, ~~and~~CHRISTINE WORMUTH, in her official capacity as Secretary of the United States Army, CARLOS DEL TORO, in his official capacity as Secretary of the United States Navy, GEN. DAVID H. BERGER, in his official capacity as Commandant of the United States Marine Corps, FRANK KENDALL, in his official capacity as Secretary of the United States Air Force, ALEJANDRO MAYORKAS, in his official capacity as Secretary of the Department of Homeland Security, ROBIN CARNAHAN, in her official capacity as Administrator of the United States General Services Administration, KIRAN AHUJA, in her official capacity as Director of the United States Office of Personnel Management, LESLEY A. FIELD, in her official capacity as Acting Administrator for Federal Procurement Policy, Office of Management and Budget, and MATHEW C. BLUM, in his official capacity as Chair of the Federal Acquisition Regulatory Council,

)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)
)

2

Defendants.

**FIRST AMENDED**
**VERIFIED CLASS ACTION COMPLAINT FOR PRELIMINARY AND**
**PERMANENT INJUNCTIVE RELIEF AND DECLARATORY RELIEF**

**"Our citizens in uniform may not be stripped of basic rights**
**simply because they doffed their civilian clothes."**[1]

For their VERIFIED CLASS ACTION COMPLAINT against Defendants,

~~JOSEPH R. BIDEN, in his official capacity as President of the United States,~~ LLOYD

AUSTIN, in his official capacity as Secretary of the United States Department of

Defense, ~~and~~ CHRISTINE WORMUTH, in her official capacity as Secretary of the

United States Army, CARLOS DEL TORO, in his official capacity as Secretary of the

United States Navy, GEN. DAVID H. BERGER, in his official capacity as

Commandant of the United States Marine Corps, FRANK KENDALL, in his official

capacity as Secretary of the United States Air Force, ALEJANDRO MAYORKAS,

in his official capacity as Secretary of the Department of Homeland Security, ROBIN

CARNAHAN, in her official capacity as Administrator of the United States General

Services Administration, KIRAN AHUJA, in her official capacity as Director of the

United States Office of Personnel Management, LESLEY A. FIELD, in her official

capacity as Acting Administrator for Federal Procurement, Office of Management and

Budget, and MATHEW C. BLUM, in his official capacity as Council Chair of the

---

[1] *Chappell v. Wallace*, 462 U.S. 296, 304 (1983) (citing E. Warren, *The Bill of Rights and the Military*, 37 N.Y.U. L. Rev. 181, 188 (1962)).

Federal Acquisition Regulatory Council, Plaintiffs, NAVY SEAL 1, United States Navy, NAVY SEAL 2, United States Navy, ~~NAVY EOD OFFICER, United States Navy,~~ SENIOR CHIEF PETTY OFFICER, United States Navy, CHAPLAIN, United States Navy, NAVY EOD OFFICER, United States Navy, NAVY COMMANDER SURFACE WARFARE OFFICER, United States Navy, NAVY CHIEF WARRANT OFFICER, United States Navy Reserve, LIEUTENANT COLONEL 1, United States Marine Corps, LIEUTENANT COLONEL 2, United States Marine Corps, ~~SECOND~~ LIEUTENANT COLONEL 3, FINANCIAL MANAGEMENT OFFICER, United States Marine Corps, RESERVE LIEUTENANT COLONEL, United States Marine Corps, MAJOR, United States Marine Corps, CAPTAIN, United States Marine Corps, ~~ARMY RANGER, United States Army,~~ CAPTAIN 2, United States Marine Corps, CAPTAIN 3, United States Marine Corps, FIRST LIEUTENANT, United States Marine Corps, SECOND LIEUTENANT, United States Marine Corps, CHIEF WARRANT OFFICER 3, United States Marine Corps, LANCE CORPORAL 1, United States Marine Corps, LANCE CORPORAL 2, United States Marine Corps, MAJOR, ~~UNITED STATES AIR FORCE,~~ United States Air Force, CHAPLAIN, United States Air Force, RESERVE LIEUTENANT COLONEL 1, United States Air Force, RESERVE LIEUTENANT COLONEL 2, United States Air Force, MASTER SERGEANT SERE SPECIALIST, United States Air Force, TECHNICAL SERGEANT, United States Air Force, CADET, United States Air Force Academy, COLONEL, United States Army, ARMY RANGER, United States Army, NATIONAL GUARDSMAN,

Virginia Army National Guard, ~~LIEUTENANT~~PILOT, United States Coast Guard, ~~COLONEL~~LCDR PILOT, United States ~~Army, TECHNICAL SERGEANT~~Coast Guard, LIEUTENANT, United States ~~Air Force, DEFENSE DEPARTMENT CONTRACTOR, United States~~Coast Guard, MANAGEMENT AND PROGRAM ANALYST, Citizenship and Immigration Services, Department of ~~Defense~~Homeland Security, FEDERAL ~~CIVILIAN ENGINEER CONTRACTOR,~~ BUREAU OF PRISONS EMPLOYEE 1, STATE DEPARTMENT EMPLOYEE 1, and FEDERAL CIVILIAN CONTRACTOR EMPLOYER, ~~FEDERAL NUCLEAR CONTRACTOR EMPLOYEE, DEPARTMENT OF ENERGY CIVILIAN NUCLEAR TECH, for~~ for themselves and all others similarly situated, ~~(collectively "Plaintiffs"), on behalf of themselves and all others similarly situated,~~ allege and aver as follows:

## URGENCIES JUSTIFYING EMERGENCY RELIEF

**"The Executive Order mandating vaccinations**
**for all federal employees has provided clear direction. . . .**
**Frankly, if you are not vaccinated, you will not work for the U.S. Navy."[2]**

1.      Plaintiffs are United States Armed Forces servicemembers, federal civilian employees, and federal civilian contractors who face a deadline under the Federal COVID-19 Vaccine Mandate to receive a COVID-19 vaccine that violates their sincerely held religious beliefs, and have been refused any religious exemption or

---

[2]      Vice Admiral William Galinis, Commander, Naval Sea Systems Command (NAVSEA), *ALL HANDS NOTE (10/14/2021) COMNAVSEA Vaccination Message* (Oct. 14, 2021) (warning entire command, comprising more than 85,000 civilian and military personnel).

accommodation. United States Navy and United States Marine Corps servicemembers ~~have~~had until November 28, 2021 to become fully vaccinated. United States Army and United States Air Force servicemembers ~~have~~had until December 15. United States Coast Guard servicemembers ~~have~~had until November 22. And civilian federal employees and contractors ~~have~~had until November 22. **~~These are the terminal~~All of these** dates ~~after which discipline will unquestionably be imposed, but the effective due date for the one dose Johnson and Johnson (J&J) shot is earlier, and earlier still for the first of two Pfizer or Moderna shots. Missing the earlier due dates will necessarily result in discipline at the terminal dates. Moreover, the pressure and abuse are intense~~have passed**, and disciplinary actions have already commenced for some.** Relief is needed now to prevent these military heroes, federal employees, and federal contractors from facing ~~punishments including~~ dishonorable discharge, court martial, other life-altering disciplinary procedures, and termination.

2.      "Greater love hath no man than this, that a man lay down his life for his friends." *John* 15:13 (KJV). Servicemember Plaintiffs have all agreed, voluntarily and sacrificially, to devote their entire lives by this axiomatic truth, regardless of the cost to them personally or to their families who likewise sacrifice in defense of this Nation. They all have sworn an oath to protect and defend the Constitution of the United States, to sacrificially lay down their lives for their fellow citizens against enemies both foreign and domestic, and to preserve for our progeny the heritage and treasure passed down to them by Veterans of old. And, for that ultimate sacrifice in defense of the

6

Constitution and our freedoms, **Defendants are threatening these military heroes with dishonorable discharge for even requesting a religious exemption from the COVID-19 shots. Dishonorable discharge is worse than criminal conviction for these servicemembers because it is a badge of disgrace that follows them for the rest of their lives**. *Having sacrificed everything to defend America and its citizenry—and while carrying the images and sounds of war with them throughout their lives—America, the "land of the free and the home of the brave," would betray them with the worst punishment of dishonorable discharge. And for what cause? Simply because they seek an accommodation from the COVID-19 shots on account of their sincerely held religious beliefs.*

3.    **The deadlines for servicemember Plaintiffs to receive the COVID-19 shots** ~~are fast approaching in October and November.~~**have passed**. *No servicemembers should be forced to choose between dishonorable discharge by the Nation they love or sinning against God by violating their sincere religious beliefs (which, by the way, can be easily accommodated).* ~~This~~**The Court must protect the rights of these military heroes and remove from the Republic the stain of government coercion of conscience**.

4.    As the Supreme Court has long affirmed, **the heroes of the United States Armed Forces do not shed their constitutional rights at the moment of their sacrificial oath**. Indeed, "[t]his Court has never held, nor do we now hold, that military personnel are barred from all redress in civilian courts for constitutional wrongs suffered in the course of military service." *Chappell v. Wallace*, 462 U.S. 296, 304 (1983).

5.     Moreover, while servicemembers certainly have duties and responsibilities "without counterpart in civilian life," *Schlesinger v. Councilman*, 420 U.S. 738, 757 (1975), **the Constitution still provides them with the same blanket of constitutional protection that their dedicated service and sacrifice provide to the average civilian**. For to turn the same Constitution that United States Armed Forces members protect and defend into a weapon against them would be a travesty unknown to the Nation's founding charter and eclipse any dereliction of duty heretofore seen in the great experiment of America. Indeed, as Justice Brennan noted,

> Military (or national) security is a weighty interest, not least of all because national survival is an indispensable condition of national liberties. But the concept of military necessity is seductively broad, and has a dangerous plasticity. **Because they invariably have the visage of overriding importance, there is always a temptation to invoke security "necessities" to justify an encroachment upon civil liberties. For that reason, the military-security argument must be approached with a healthy skepticism: its very gravity counsels that courts be cautious when military necessity is invoked by the Government to justify a trespass on First Amendment rights.**

*Brown v. Glines*, 444 U.S. 348, 369 (1980) (Brennan, J., dissenting) (emphasis added) (citation omitted).

6.     As he continued,

> To be sure, generals and admirals, not federal judges, are expert about military needs. **But it is equally true that judges, not military officers, possess the competence and authority to interpret and apply the First Amendment.** Moreover, in the context of this case, the expertise of military officials is, to a great degree, tainted by the natural self-interest that inevitably influences their exercise of the

power to control expression. Partiality must be expected when government authorities censor the views of subordinates, especially if those views are critical of the censors. **Larger, but vaguely defined, interests in discipline or military efficiency may all too easily become identified with officials' personal or bureaucratic preferences. This Court abdicates its responsibility to safeguard free expression when it reflexively bows before the shibboleth of military necessity.**

*Id.* at 370.

7.      Servicemembers who protect the constitutional freedoms cherished in this Nation can also invoke those same constitutional protections for breaches of their own liberties, despite military service. Here, Defendants have made it clear that they think servicemember Plaintiffs' sacrificial act of swearing an oath to protect the Nation and support and defend the Constitution is accompanied by the sacrificial surrender of those same constitutional protections they defend. The Constitution opposes such callous indifference to sacrificial service, and so, too, should ~~this~~the Court. Indeed, "military life do[es] not, of course, render entirely nugatory in the military context the guarantees of the First Amendment." *Goldman v. Weinberger*, 475 U.S. 503, 507 (1986). *See also Crawford v. Cushman*, 531 F.2d 1114, 1120 (2d Cir. 1976) (**"[T]he military is subject to the Bill of Rights and its constitutional implications**." (emphasis added)). Put simply, "although First Amendment rights . . . may be 'less' for a soldier than a civilian, they are by no means lost to him." *Anderson v. Laird*, 466 F.2d 283, 295 (D.C. Cir. 1972). "**Individual freedom may not be sacrificed to military interests to the point that constitutional rights are abolished**." *Id.* (emphasis added).

9

8.      Servicemember Plaintiffs and all those dedicated members of the United States Armed Forces voluntarily and sacrificially answered their Nation's call to defend the freedoms we enjoy. Yet, Defendants are demanding that these brave military members sacrifice their constitutional rights which they risk their lives to defend. Indeed, "**[i]t is a basic tenet of our legal system that a government agency is not at liberty to ignore its own laws and that agency action in contravention of applicable statutes and regulations is unlawful. The military departments enjoy no immunity from this proscription**." *Dilley v. Alexander*, 603 F.2d 914, 920 (D.C. Cir. 1979) (emphasis added) (citation omitted). For without question, when critical constitutional rights are at issue, "the Supreme Court [has] heard numerous constitutional challenges to military policies." *Singh v. Carter*, 168 F. Supp. 3d 216, 225 (D.D.C. 2016) (cleaned up).

9.      As the Supreme Court held ~~just last~~barely a year ago, "**even in a pandemic, the Constitution cannot be put away and forgotten**." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 68 (~~2021~~2020) (emphasis added). When we have demanded so much of our Soldiers, Sailors, Airmen, and Marines, we owe them nothing less than the full measure of our own devotion and commitment to constitutional principles. Anything less would be desecrating the sacrifices these heroes have made for untold numbers of people when the call of duty demanded it, and would trample upon the graves of so many who made the ultimate sacrifice before them.

10.     When the great American experiment was commenced, our Founders ordained and established the Constitution—including all of the rights it recognized and enshrined—"in Order to form a more perfect Union, establish Justice, insure domestic Tranquility, provide for the common defence, promote the general Welfare, and **secure the Blessings of Liberty to ourselves and our Posterity**." U.S. Const. Pmbl. (emphasis added). To this very day, "we continue to strive toward '[that] more perfect union.'" *Smith v. City of New Smyrna Beach*, No. 6:11–cv–1110–Orl–37KRS, 2013 WL 5230659, at \*1 (M.D. Fla. Sept. 16, 2013). That work is not easy, and sometimes it requires the intervention of the judiciary to set the guardrails for the protection of the Republic's liberties.

11.     Recognizing that times of crisis would arise, that such times might lead governments to seek to repress precious freedoms, and that the Republic's survival depended upon defeating such repressive instincts, the genius of our founding document is that it placed explicit protections into the text of the Bill of Rights. And, importantly, "[o]ur Bill of Rights placed our survival on firmer ground—that of freedom, not repression." *Konigsberg v. State Bar of California*, 366 U.S. 36, 79 (1961) (Black, J., dissenting).

12.     During times of national crisis, the very times when we call upon the United States Armed Forces heroes most, "the fog of public excitement obscures the ancient landmarks set up in our Bill of Rights." *American Communist Ass'n, C.I.O. v. Douds*, 339 U.S. 382, 453 (1950) (Black, J., dissenting). But, where the fog of public excitement is at its apex, "the more imperative is the need to preserve inviolate the

11

constitutional rights of [the First Amendment]." *De Jonge v. Oregon*, 299 U.S. 353, 365 (1937). Without doubt, "[t]herein lies the security of the Republic, the very foundation of constitutional government." *Id.*

13.     Indeed, "[t]imes of crisis take the truest measure of our commitment to constitutional values. **Constitutional values are only as strong as our willingness to reaffirm them when they seem most costly to bear**." *Hartness v. Bush*, 919 F.2d 170, 181 (D.C. Cir. 1990) (Edwards, J., dissenting) (emphasis added). Our willingness to reaffirm our staunch commitment to our fundamental freedoms is imperative to the very survival of the American experiment. **Servicemember Plaintiffs have demonstrated their staunch commitment, and it is time that we honor ours.** "History reveals that the initial steps in the erosion of individual rights are usually excused on the basis of an 'emergency' or threat to the public. **But the ultimate strength of our constitutional guarantees lies in the unhesitating application in times of crisis and tranquility alike**." *United States v. Bell*, 464 F.2d 667, 676 (2d Cir. 1972) (Mansfield, J., concurring) (emphasis added). For, "**[i]f the provisions of the Constitution be not upheld when they pinch as well as when they comfort, they may as well be discarded**." *Home Bldg. & Loan Ass'n v. Blaisdell*, 290 U.S. 398, 483 (1934) (Sutherland, J., dissenting) (emphasis added).

14.     Plaintiffs have demonstrated their commitments to the United States Constitution and the Nation's future comfort, security, and prosperity. ~~This~~The **Court should demand that the Nation return the favor**. Telling Plaintiffs they must accept

or receive a shot they oppose according to their sincerely held religious beliefs, or face court martial, dishonorable discharge, and other life altering disciplinary measures, disgraces the sacrifices these heroes have made.

15.   Indeed, "Our nation asks the men and women in our military to serve, suffer, and sacrifice. But we do not ask them to lay aside their citizenry and give up the very rights they have sworn to protect." *U.S. Navy Seals v. Biden*, No. 4:21-cv-1236-O, 2022 WL 34443, at *1 (N.D. Tex. Jan. 3, 2022) (granting preliminary injunction).

16.   "The Navy provides a religious accommodation process, but by all accounts, **it is theater**. The Navy has not granted a religious exemption to any vaccine in recent memory. **It merely rubber stamps each denial**." *Id.* (emphasis added).

17.   The same is true of every other branch. While there have been many requests, Defendants have granted a grand total of **2 religious exemptions**, and even that number is questionable. Indeed, one of the Marines whose request for a religious exemption was granted has been reported to have been on terminal leave and was thus already in the process of separating from service. *See* Jessica Chasmar & Peter Hasson, *Marines' claim of granting 2 religious COVID-19 vaccine exemptions leads to more questions*, FoxNews (Jan. 18, 2022), www.foxnews.com/politics/marines-claim-2-religious-COVID-19-vaccine-exemptions. The other purportedly granted religious exemption was for an individual who was also already transitioning out of the Marine Corps and was already within 180 days of completing his service. *See id.*

13

18.    The United States Army has received 2,064 requests for religious exemption from the vaccine mandate and **has granted none.** The Army has denied 122 requests, 115 of which included a chaplain's determination that the applicant's beliefs are sincere. (*See* Doc. 47-2, ¶¶ 8–9.)

19.    The United States Army has granted 2,658 requests for medical exemption, both permanent and temporary. (Doc. 47-2, ¶¶ 13–14.)

20.    The United States Navy had received 3,711 requests for religious exemption and **has granted none**. The Navy has denied 3,484 requests and has 1,008 appeals pending. No appeal has been adjudicated. (Doc. 47-3 at 7.)

21.    The Navy has granted 311 requests for medical exemption, both permanent and temporary. (Doc. 47-3 at 7.)

22.    The United States Marine Corps has received 3,192 requests for religious exemption and has denied 3,080 requests—all of which after a determination of sincerity. The Marine Corps claims it has granted 2 appeals from religious exemption denials, but also states that it has adjudicated a total of 81 appeals and **has denied all 81 appeals**. (Doc. 47-4 at 6.)

23.    The Marine Corps has granted 436 requests for medical exemption, both permanent and temporary. (Doc. 47-4 at 6.)

24.    The United States Air Force has received 10,973 requests for religious exemption **and has granted none**. It has denied 2,387 requests, and 311 appeals. (Doc. 47-5 at 6.)

25.     The Air Force has granted 1,723 medical exemptions. (Doc. 47-5 at 6.)

26.     The United States Coast Guard has received 1,303 requests for religious exemption **and has granted none**. The Coast Guard has denied 226 requests, all of which after a determination that the applicant's religious beliefs are sincere.

27.     As the Court recognized in its Order (Doc. 40) on Plaintiffs' preliminary injunction motion over a month ago, Defendants had received 16,643 requests for religious exemption and "had granted none" at that time. (Doc. 40 at 1.)

28.     The Court noted, it is "quite plausible that each branch's procedure for requesting a religious exemption is a ruse that will result inevitably in the undifferentiated (and therefore unlawful under RFRA) denial of each service member's request." (Doc. 40 at 33.)

29.     The Court's foresight proves true in hindsight, as Defendants have still failed to grant religious exemptions. What was a ruse at the commencement of this action is still a ruse today.

15.30. Defendants' vaccine mandate, ostensibly responding to a public health crisis, has created a national emergency of much greater magnitude. The mandate attacks the military from *within* by removing brave servicemembers from defending the Nation by land, air, and sea, and from *without* by eliminating the dedicated civilian defense contractors and employees providing everything from boots and uniforms, to cyber security, to the world's most advanced stealth fighter jet—the F-35 Raptor— solely because these protectors of our constitutional freedoms requested accommodation of their sincerely held religious beliefs under the same Constitution.

The crisis created by Defendants' mandates, applied to two million federal employees, is unnecessary and completely avoidable, but nonetheless imminent and real.

16.31. A TROAn injunction is needed now to prevent the immediate and irreparable injury to Plaintiffs imposed by these unlawful COVID-19 mandates.

## PARTIES

17.32. Plaintiff NAVY SEAL 1, United States Navy, is a citizen of the State of California and a Navy Seal currently stationed at a United States Naval facility in California. NAVY SEAL 1 has requested an exemption and accommodation of his sincerely held religious objections to the Secretary's mandate that all United States Armed Forces personnel accept and receive one of the COVID-19 vaccines as a condition of remaining in their sworn posts. NAVY SEAL 1's request for a religious exemption and accommodation was denied, and he was immediately removed from his position in the United States Navy. Special Operations Chief NAVY SEAL 1 enlisted in the Navy in 2009 and wanted to serve his country to the best of his ability. NAVY SEAL 1 sought to and became a Navy SEAL. He received training from 2009 starting and finishing BUD/S (Basic Underwater Demolition/SEAL) and SQT (SEAL Qualification Training) with class 278. He deployed to Afghanistan from December 2011 to September 2012, and received a Navy and Marine Corps Commendation Medal with a combat "V" (valor) for his actions during deployment, along with a combat action ribbon. NAVY SEAL 1's second tour was to the Philippines in support of Operation Enduring Freedom, working under Joint Special Operations Task Force (JSOTF), and receiving an Army Commendation medal. For

his third tour, which was outside of his usual deployment cycle and thus 100% voluntary, NAVY SEAL 1 volunteered to augment SEAL Team Seven during the height of the Mosul, Iraq clearance from February to April 2017. During NAVY SEAL 1's fourth tour, in Iraq from August 2017 to March 2018, NAVY SEAL 1 was the acting assault lead, putting him in charge of a platoon level force to execute the tactical direction of the platoon chief, and he earned a Navy and Marine Corps Achievement Medal and a Navy and Marine Corps Commendation Medal with a "C" (Combat). His most recent tour was to the United Arab Emirates (UAE) from March to September 2020. For his leadership setting up, organizing, and executing a large joint close air support (CAS) and combat search and rescue (CSAR) exercise, NAVY SEAL 1 received a Navy and Marine Corps Commendation Medal. This robust exercise included units from 5 different countries and over 15 assets. NAVY SEAL 1 also received awards for his time spent at training commands. His first tour was at TRADET-1 as the SOUC (Special Operations Urban Combat) Lead Petty Officer from December 2014 to June 2016. He received a Navy and Marine Corps Achievement Award for his efforts there. His second training command tour was as the Lead Chief Petty Officer of the Navy's only Joint Close Air Support school. For his efforts in synchronizing joint assets and providing mission critical qualification training for creating Joint Terminal Attack Controllers (JTAC) he received a Navy and Marine Corps Commendation Award.

18.33. Plaintiff NAVY SEAL 2, United States Navy, is a citizen of the State of Texas and is a Navy Seal stationed in the State of Florida. NAVY SEAL 2 has served

his country honorably and sacrificially for 19 years. NAVY SEAL 2 submitted a request for a religious accommodation and exemption from the United States Navy. NAVY SEAL 2's request for a religious exemption and accommodation detailed NAVY SEAL 2's religious beliefs and practices that compel him to abstain receiving any of the currently available COVID-19 vaccines. NAVY SEAL 2's request for a religious accommodation was supported by a letter from a religious leader, which demonstrated the sincerity of NAVY SEAL 2's personal beliefs. NAVY SEAL 2's commander noted that NAVY SEAL 2's religious beliefs were sincere and strongly held, but recommended that his request be disapproved, citing readiness, despite NAVY SEAL 2's currently working in a non-deployable staff position. NAVY SEAL 2's request for an accommodation has been forwarded to the Chief of Naval Personnel who is responsible for making the final determination. NAVY SEAL 2 faces potential court martial, dishonorable discharge, and other life-altering disciplinary measures for merely requesting an accommodation for his sincerely held religious beliefs.

19.   Plaintiff NAVY EXPLOSIVE ORDNANCE DISPOSAL OFFICER ("NAVY EOD OFFICER"), United States Navy, is a citizen of the State of Florida currently stationed at a United States Naval facility in the State of Hawaii. NAVY EOD OFFICER has requested an exemption and accommodation of his sincerely held religious objections to the Secretary's mandate that all United States Armed Forces personnel accept and receive one of the COVID-19 vaccines as a condition of remaining in their sworn posts. After NAVY EOD OFFICER's request for a religious exemption and accommodation, he was immediately placed in a "Not Physically

~~Qualified" ("NPQ") status. If his religious exemption and accommodation request is not granted, he will not be allowed to deploy in January, thus removing him from his position at that time. NAVY EOD OFFICER has admirably and honorably served in the United States Navy for over 19 years, initially becoming an enlisted Navy salvage diver, following which he became an officer specializing in Explosive Ordnance Disposal (EOD). NAVY EOD OFFICER submitted a request for a religious accommodation and exemption from the United States Navy. NAVY EOD OFFICER articulated to his command that he has and exercises sincerely held religious beliefs that compel him to abstain from receiving any of the currently available COVID 19 vaccines. NAVY EOD OFFICER's request for a religious exemption and accommodation has not been approved, and he faces potential court martial, dishonorable discharge, and other life altering disciplinary measures for merely requesting an accommodation of his sincerely held religious beliefs.~~

34. ~~NAVY~~ SENIOR CHIEF PETTY OFFICER, United States Navy, is a 17-year Active Duty Senior Chief Petty Officer stationed with the Marines. His career is marked with service primarily within Special Operations Units, with eight (8) deployments, high performance marks, and nine (9) personal awards. He holds a bachelors from George Washington University in Clinical Health Sciences, and four (4) years of military medical, CBRN and advanced medical training with a focus on operational medicine in the deployed setting. NAVY SENIOR CHIEF PETTY OFFICER obtained his Sub-Investigator Certification in 2017 from the FDA, so he could conduct informed consent of EUA Freeze Dried Plasma (FDP) product, track

its use and report back up the chain of command to the FDA. As part of this informed consent, NAVY SENIOR CHIEF PETTY OFFICER was required to conduct an hour-long ~~brief~~briefing to all eligible personnel of the risks, benefits, and right to refusal of the EUA product. The program placed heavy emphasis on the impropriety of coercive tactics to obtain "consent." Impeccable documentation was required, all personnel had to be afforded consent, and all consents had to be legible, contain addresses, and contain witnessed signatures, with formatting and dates matching. Audits were regularly conducted so any improper documentation that failed to meet this stringent standard was returned and required to be immediately resubmitted. In contrast, NAVY SENIOR CHIEF PETTY OFFICER's experience with the COVID-19 vaccine has been completely the opposite, having observed coercion, public shaming, improper documentation, vaccine stacking, and an overall cavalier attitude towards new technology that does not have any long term data.

20.35. In Summer 2021, NAVY SENIOR CHIEF PETTY OFFICER was infected with SARS-CoV-2 and recovered within two weeks, and now has serological evidence of natural immunity that many experts believe to be consistent with or even superior to ~~the~~a COVID-19 vaccine, and which is recognized by Navy regulation as a basis for exemption from immunization. NAVY SENIOR CHIEF PETTY OFFICER has submitted a religious exemption request to the COVID-19 vaccine, on the basis of the leading of the Holy Spirit, and his Christian religious beliefs, including beliefs that the body is the temple of the Holy Spirit, and the COVID-19 vaccine's close connection to abortion. As of January 20, 2022, the Navy has had 58 days to act upon

NAVY SENIOR CHIEF PETTY OFFICER's religious exemption request, but has not. Conversely, the Navy has approved a temporary medical waiver for him through Fall 2022, and has not removed him from leadership or other responsibilities as a result of being unvaccinated under a medical waiver.

21. Plaintiff NAVY CHAPLAIN is a Chaplain in the United States Navy, with ~~over~~approximately 18 years' honorable service. NAVY CHAPLAIN has personally observed the effect the mandatory COVID vaccination orders have had on mental health and readiness of multiple Sailors, in the course of his recent deployment with a Carrier Strike Group.

22. Based on his own sincerely-held Christian religious beliefs, NAVY CHAPLAIN has submitted a religious exemption request for an accommodation from the COVID shot mandates. NAVY CHAPLAIN believes accepting any of the approved COVID vaccines would be an act of irreverence toward God and would be an attempt to alter the embodied image of God within individuals, and therefore a sin contrary to historic Judeo-Christian tradition and his Christian faith.

~~23.~~36. NAVY CHAPLAIN's commander has provided a negative recommendation for NAVY CHAPLAIN's religious accommodation request. If his request is not approved, NAVY CHAPLAIN fears being forced to choose between his career of service to fellow Sailors, which he loves, and his faith in God and God's commands.

37. Plaintiff~~, LIEUTENANT COLONEL 1~~ NAVY EOD OFFICER, United States ~~Marine Corps~~Navy, is a citizen of the State of ~~Texas~~Florida is an

Explosive Ordnance Disposal (EOD) officer in the United States Navy, currently stationed at a United States military facility in the State of Arizona. LIEUTENANT COLONEL 1Hawaii. NAVY EOD OFFICER has requested an exemption and accommodation forof his sincerely held religious objections to the Secretary's mandate that all United States MilitaryArmed Forces personnel accept and receive one of the COVID -19 vaccines as a condition of remaining in their sworn posts. LIEUTENANT COLONEL 1'sNAVY EOD OFFICER's request for a religious exemption and accommodation is processingwas denied, and adjudication ofhe was immediately removed from his position in the United States Navy. NAVY EOD OFFICER has admirably and honorably served in the United States Navy for over 19 years, initially becoming an enlisted Navy salvage diver, following which he became an officer specializing in EOD. NAVY EOD OFFICER submitted a request for a religious accommodation and exemption from the United States Navy. NAVY EOD OFFICER articulated to his command that he has and exercises sincerely held religious beliefs that compel him to abstain from receiving any of the currently available COVID-19 vaccines. NAVY EOD OFFICER's request for a religious exemption and accommodation was denied. He timely appealed the denial on December 8, 2021. Upon denial of his appeal, NAVY EOD OFFICER faces potential court martial, dishonorable discharge, and other life-altering disciplinary measures for merely requesting an accommodation of his sincerely held religious beliefs.

    38.    Plaintiff COMMANDER SURFACE WARFARE OFFICER, United States Navy ("NAVY COMMANDER SURFACE WARFARE OFFICER"), is a

Surface Warfare Officer in the United States Navy. He is the Commanding Officer of a guided missile destroyer. He joined the Navy after completing university in 2004. NAVY COMMANDER SURFACE WARFARE OFFICER pursued a commission because he wanted to serve his country. NAVY COMMANDER SURFACE WARFARE OFFICER took an oath to uphold the Constitution. NAVY COMMANDER SURFACE WARFARE OFFICER is proud to defend freedom and our republican form of government. NAVY COMMANDER SURFACE WARFARE OFFICER now has nearly 18 years in the service. He submitted his original Religious Accommodation Request (RAR) on September 13, 2021. The Chief of Naval Personnel denied his request on October 22, and his direct supervisor presented the denial to him on October 26. NAVY COMMANDER SURFACE WARFARE OFFICER subsequently submitted his appeal on November 3. Additionally, he (as the Commanding Officer of his unit) positively endorsed 16 of the 17 religious accommodation requests from his command, but **all** were disapproved by the Navy. Even though he specifically stated that he could accommodate the requests of these 16 Sailors, the Navy deemed NAVY COMMANDER SURFACE WARFARE OFFICER's endorsement insufficient. The denial of religious accommodation letter he received is identical to the denial letters received by all 16 Sailors in his command who submitted similar requests (1 is still pending ). Each of the service members under his command submitted distinct, personal accounts of his or her religious practices and the method by which receipt of the COVID-19 vaccine would violate those belief. The form-like denial letter from the Chief of Naval

23

Personnel demonstrates a blanket denial of religious accommodations regardless of individually articulated factors. Blanket denial of religious accommodations violates military service member religious liberties and the right to case-by-case consideration and review as specified in DOD Instruction 1300.17.

39.    Plaintiff NAVY CHIEF WARRANT OFFICER, United States Navy Reserve, is a citizen of the State of Florida, a Chief Warrant Officer 2 in the United States Navy Reserve, and a civilian employee of a federal contractor for the United States Department of Defense. NAVY CHIEF WARRANT OFFICER enlisted in the Navy Reserve's Non-Prior Service and Advance Pay Grade (APG) programs in November 2003. After completing basic training in August 2004, NAVY CHIEF WARRANT OFFICER was assigned to NR SECGRU Minneapolis from 2004 to 2010. From January to December 2008, NAVY CHIEF WARRANT OFFICER was mobilized in support of Operation Iraqi Freedom as part of a Joint Task Force stationed in Balad, Iraq. Following his mobilization, NAVY CHIEF WARRANT OFFICER returned to NR NIOC Texas-Minneapolis and was advanced to Chief Petty Officer in September 2009. NAVY CHIEF WARRANT OFFICER's military leadership assignments include Operations Department Leading Chief Petty Officer at NR NIOC Minneapolis, Senior Enlisted Leader and then Senior Chief Petty Officer in 2015 at NR NIOC Georgia-Orlando, Senior Enlisted Leader at NR Office of Naval Intelligence, and Senior Enlisted Leader NR at NIOC Georgia – Pensacola. Following his tour at NR NIOC Georgia – Pensacola, he was commissioned as a Chief Warrant Officer 2 in 2019. Following his commissioning, he affiliated with NR C10FNIOCGA

ORL and was given active duty orders supporting US Special Operations Command J24. In addition to his reserve duties, in his civilian career, NAVY CHIEF WARRANT OFFICER is an analyst for a federal defense contractor in the Office of the Undersecretary of Defense for Intelligence and Security based in Washington, D.C. NAVY CHIEF WARRANT OFFICER submitted a request to his Naval command for a religious accommodation and exemption from the vaccine mandate based on his sincerely held religious objections to receiving one of the COVID-19 vaccines because of their connection to aborted fetal cell lines. NAVY CHIEF WARRANT OFFICER's request was supported by a Chaplain's recommendation and his supervisor's recommendation. NAVY CHIEF WARRANT OFFICER has not received a response to his request for a religious accommodation but has been informed that it is not likely to be granted. Meanwhile, NAVY CHIEF WARRANT OFFICER's active duty orders expired, returning him to reserve status, and he was advised by his command that he cannot be given further active duty orders, though otherwise qualified, due to his pending religious accommodation request. Although NAVY CHIEF WARRANT OFFICER's federal contractor employer granted the religious exemption request he submitted to the employer, he is on an extended leave of absence from the employer due to his recent Naval active duty orders, leaving NAVY CHIEF WARRANT OFFICER with only his intermittent (one weekend per month) Navy Reserve employment.

24.40. Plaintiff LIEUTENANT COLONEL 1, United States Marine Corps, is a citizen of the State of Texas and a Marine Corps Lieutenant Colonel currently

stationed at a United States military facility in the State of Arizona. LIEUTENANT COLONEL 1 is currently an officer and a pilot in the Marine Corps. He has more than 18 years' exemplary service in the Marine Corps and wishes to continue serving his country for many more. LIEUTENANT COLONEL 1's duties include service as a senior officer and pilot with his unit. LIEUTENANT COLONEL 1 has served the United States on five combat tours and deployments, including one combat deployment in support of Operation Iraqi Freedom (OIF) and two combat deployments in Operation Enduring Freedom (OEF – Afghanistan). LIEUTENANT COLONEL 1 has also served as a TopGun graduate, F/A-18 pilot and instructor, Forward Air Controller (ground-based position calling in air strikes in support of Marine infantry), and in many other billets. Close Air Support and Forward Air Control involves responsibility for dropping ordnance (bombs), firing rockets, and aerial gunnery on enemy targets in close proximity to Marine infantry. An error in judgment or calculation can result in the deaths of Americans and allies in who are in close proximity to the enemy. LIEUTENANT COLONEL 1's skill at both has saved countless American lives and has destroyed America's enemies. LIEUTENANT COLONEL 1, United States Marine Corps, submitted a request for a religious accommodation and exemption from the United States Marine Corps. LIEUTENANT COLONEL 1 articulated to his command that he has and exercises sincerely held religious beliefs that compel him to abstain from receiving any of the currently available COVID-19 vaccines. LIEUTENANT COLONEL 1 met with his unit's Chaplain, who reviewed his request for a religious exemption and

accommodation and who found that LIEUTENANT COLONEL 1's request was made from a position of "absolute sincerity." ~~LIEUTENANT COLONEL 1's request for a religious exemption and accommodation has not been approved, and he~~On December 22, 2021, the Marine Corps denied LIEUTENANT COLONEL 1's religious exemption request by typical form letter. He timely appealed the denial on January 12, 2022. Prior to his timely appeal, however, on January 4, 2022, the Marine Corps removed LIEUTENANT COLONEL 1 ~~him~~ from his position as Executive Officer of his squadron. Upon denial of his appeal, LIEUTENANT COLONEL 1 faces potential court martial, dishonorable discharge, and other life-altering disciplinary measures for merely requesting an accommodation for his sincerely held religious beliefs.

25.41. Plaintiff LIEUTENANT COLONEL 2, United States Marine Corps, is a FY 22 Command Selected Logistics Officer in the Marine Corps and a native of Queens, ~~NY~~New York. She enlisted in the Marine Corps in June of 1997 and served as an Administrative Clerk after completing the Unit Diary Clerks Course in the top ten percent of the class. She served in the reserves and volunteered for active duty following the attacks on September 11th. In 2003, LIEUTENANT COLONEL 2 wanted to be a role model for other women and completed Officer Candidate School where she received her commission as a Second Lieutenant in the Marine Corps. As a Company Grade Officer, she served in several leadership roles including duties as a Platoon Commander in garrison and during Operation Iraqi Freedom. ~~-~~She also served as a Series Commander at Marine Corps Recruit Training, Parris Island and staff jobs

at several O5 level commands. She also deployed as a staff officer in support of Operation Enduring Freedom (Afghanistan). As a Field Grade Officer, she ~~was selected and~~ served as a Department of Defense Legislative Fellow ~~and helped conduct~~to Congressman Joe Wilson (R-SC). She also served as the Legislative Assistant to the Marine Corps Force Innovation Office conducting research to integrate women into ground combat arms jobs. ~~Later, she was selected~~ After serving as the Logistics Policy and Capabilities Division Operations Officer for ~~Command and Staff College where~~Deputy Commandant, Installations and Logistic she earned her Master's Degree through the Advanced Studies Program ~~As a field grade officer~~at Command and Staff College. Next, she ~~held billets~~served as~~ a Company Commander, Battalion Executive ~~Officer~~officer for 2d Maintenance Battalion, and G4 Operations Officer ~~She also served~~at U.S. Marine Corps Forces Special Operations Command (she later assumed an additional role as ~~her unit's~~the Diversity and Inclusion Officer~~.~~). LIEUTENANT COLONEL 2 is currently pending a second modification to her permanent change of station orders to NAVCENT, Bahrain because she submitted a religious accommodation package ~~although she was administratively and medically cleared to execute her orders. LIEUTENANT COLONEL 2 has had an exemplary career. However, like many others, her~~. Like many others, active duty LIEUTENANT COLONEL 2's faith journey has several blemishes that she does not typically discuss unless she is moved by the Holy Spirit to share personal aspects of her life story to help someone in need. ~~One of the concerns that contributes to her decision not to receive the COVID 19 shot is because of her strong opposition to

abortion and how God forgave and healed her from her own abortion. Specifically, in 1995, active duty LIEUTENANT COLONEL 2 became pregnant after being raped. The anger and humiliation of the sexual assault led her to have an abortion which made her even more ashamed. In fact, after her abortion, LIEUTENANT COLONEL 2 felt like a murderer, and punished herself because she felt unworthy. This behavior only stopped after her husband caught her punishing herself, and helped her realize that God had truly forgiven her for the abortion. The COVID shot mandate, given the use of aborted fetal cell lines in testing and development, places LIEUTENANT COLONEL 2 in the position of reliving her rape and subsequent abortion, by being forcibly injected with a product tested on or made with aborted fetal cells, or being dismissed from the service she loves. LIEUTENANT COLONEL 2's religious accommodation request has been denied, and she has timely appealed. Upon denial of her appeal, LIEUTENANT COLONEL 2 will face immediate consequences including involuntary separation.

42. Plaintiff LIEUTENANT COLONEL 3, FINANCIAL MANAGEMENT OFFICER, United States Marine Corps, ("USMC Financial Management Officer") served honorably for over two decades in the critical billet of Financial Management Officer, one of twelve (12) such Lieutenant Colonels in the Marine Corps. During his deployment to Afghanistan, he was nominated for and later received the Assistant Secretary of the Navy Financial Management and Comptroller Budgeting Award by the Assistant Secretary of the Navy (Comptroller) as the Comptroller of the Year. Because of his background and multiple advanced degrees,

the Marine Corps considers him a Subject Matter Expert (SME) in his field of finance. He has worked at the highest levels of Headquarters Marine Corps inside the Pentagon, overseeing the development of a multibillion-dollar budget, and has personally briefed the Marine Corps Resource Oversight Counsel (essentially the Marine Corps' Board of Directors). He currently serves on the principal staff for a 3-star General whose area of responsibility covers two-thirds of the Marine Corps' operating forces, including virtually all of the Marines in the Pacific region. If he is forced out due to his sincerely held religious beliefs, his local command will have a vacancy in a critical billet for which there are currently no replacements available, and its ripple effect will be felt throughout the entire Marine Corps. This will exacerbate the current shortage of Colonels and Lieutenant Colonels in the field, and with only one Finance Marine selected for Colonel on this year's most recent promotion board, it will be at least 2 years before the Marine Corps can make another one, not accounting for pending or inevitable Colonel retirements in his field. USMC Financial Management Officer requested a religious accommodation on August 23, 2021 to exempt him from the COVID shot directive. His request was denied on September 22. On October 1, he requested a ten (10) business day extension to file his appeal, and was permitted to submit his appeal to the Commandant of the Marine Corps on October 21. He received a final denial of his appeal from the Assistant Commandant of the Marine Corps (ACMC) on December 14. The first denial used identical language to others he has seen (minus the names, dates, and a few typos that were later corrected in subsequent form letters). The denial did not address issues he raised in his

request and did not meet the required burden to prove the vaccine is the least restrictive means of furthering a compelling government interest. His initial request was rubber-stamp denied without giving it the due consideration that is required. His final appeal denial contained information that is factually questionable and disingenuous at best, and deeply condescending and disrespectful at worst. It summarily dismissed his sincerely held religious beliefs. Now, the process to separate him has begun.

43.     Plaintiff RESERVE LIEUTENANT COLONEL, United States Marine Corps, is a lieutenant colonel in the United States Marine Corps Reserves (USMCR). She is a cradle Catholic who swore an oath to support and defend the United States Constitution at the age of 17 when she entered the United States Naval Academy. With each promotion during her time in service, she has re-affirmed that oath. Her grandfather was a World War II veteran who landed in Normandy on D-Day and who inspired RESERVE LIEUTENANT COLONEL to pursue an appointment to the Naval Academy. She was a recruited Division 1 athlete and chose the Naval Academy so she would be immersed in the military culture with like-minded patriots with whom she would establish a bond that would extend beyond their time in Annapolis. RESERVE LIEUTENANT COLONEL was a senior at the Naval Academy on September 11, 2001. RESERVE LIEUTENANT COLONEL service selected the United States Marine Corps because she was called to its traditions and challenges, and she wanted to serve with some of the most inspirational officers and senior enlisted leaders who had influenced her while at the Naval Academy. On September 3, 2021, and in accordance with Marine Corps Order 1730.9, RESERVE LIEUTENANT

COLONEL submitted a request for religious accommodation (RA) from the COVID-19 shot mandate to the Deputy Commandant, Manpower and Reserve Affairs (D/C, M&RA), a three-star general, based on RESERVE LIEUTENANT COLONEL's sincerely held Catholic religious beliefs that all life is sacred from conception to natural death. Her RA request included a letter from her parish priest among other required documents. On October 1, RESERVE LIEUTENANT COLONEL received a denial of her RA request from D/C, M&RA, Lt. Gen. David Ottignon, USMC, stating that COVID-19 vaccination was the "least restrictive means of furthering the government's compelling interest." The letter provided her the opportunity to appeal to the Commandant of the Marine Corps (CMC), and on October 13, 2021, RESERVE LIEUTENANT COLONEL did appeal the denial to the CMC. On December 10, 2021, General Eric M. Smith, Assistant Commandant of the Marine Corps (ACMC) denied the appeal, giving as a reason that "the COVID-19 vaccination requirement does not substantially burden your sincerely held religious belief because fetal stem cells are neither used in the manufacture of the Pfizer COVID-19 vaccines nor are they present in the vaccine itself." This statement is in direct contradiction to the Archbishop letter of October 12, 2021. The Marine Corps on December 23, 2021, offered RESERVE LIEUTENANT COLONEL the "choice" of "voluntarily" dropping to "Inactive Ready Reserve" status, or facing administrative separation. Now, she is not able to work for the Marine Corps, losing income and service years toward retirement, because she cannot take vaccine in direct

contradiction to her sincerely held religious beliefs and was trying to avoid defying a direct order.

26.44. Plaintiff MAJOR, United States Marine Corps ("USMC MAJOR") is stationed in North Carolina. He is a patriotic American who believes that Jesus Christ is the virgin-born, incarnate Deity: the King over all kings and the LORD of all lords, Whose shed blood is the sole hope for human redemption from sin and eternal judgment, Whose death and resurrection testify to His preeminence over all creation, and at Whose name alone every knee shall bow. Desiring to serve his country, and follow God's leading for his life, USMC MAJOR took the oath of conditional enlistment in 20042003 and was commissioned a second lieutenant upon completion of the Officer Candidate Course in August 2005. After graduating from The Basic School, he attended the Military Police Officer Basic Course, and spent his first tour of duty in Okinawa, Japan, where he served as Officer in Charge (OIC) for two districts, including an Air Station, off-base jurisdiction areas, and three military camps. He also performed duties as the Antiterrorism and Force Protection officer for two multinational exercises in Korea. USMC MAJOR then deployed to Iraq, where as a platoon commander and convoy commander he led Marines across Al Anbar and Diyala Provinces. Thereafter, as a Provost Marshal's Office Operations Officer, he directed law enforcement operations at the Marine Corps' largest training base for several years; went to Headquarters United States Marine Corps and worked as a staff officer in the Pentagon for several more. USMC MAJOR received additional specialized training and deployed a second time to Iraq, advising and assisting Iraqi

Security Forces in counterpropaganda efforts to defeat ISIS terrorists. Subsequently, he commanded Headquarters Company in a Law Enforcement Battalion; served as Force Protection Officer for a Marine Logistics Group (Forward) in Norway; and deployed to Afghanistan as an advisor to several military, police, and governmental organizations. USMC MAJORhasMAJOR submitted a religious exemption request to, and the COVID shot mandates. HeMarine Corps denied it on October 26, 2021. USMC MAJOR timely appealed the denial on November 10, 2021. Upon denial of his appeal, which could come at any time, the Marine Corps will begin the separation process. USMC MAJOR desires to continue serving in the Marine Corps, consistent with his deep personal faith in the Bible as the Word of God, and consistent with his conscience and the personal leading of Jesus Christ regarding what he admits into his body (which is the temple of the Holy Spirit). These require him to reject any involvement with the destruction of innocent human life as exemplified by the use of human fetal cell lines derived from abortions.

45.    Plaintiff CAPTAIN, United States Marine Corps, is a citizen of the State of South Carolina and a patriotic American whose faith is Islam. Desiring to serve his country, he enlisted in the United States Marine Corps in 2014, graduating from recruit training in March 2015. After serving with a Law Enforcement Battalion and earning his undergraduate degree, he was selected for Officer Candidate School, and commissioned as a second lieutenant in 2016. After graduating from The Basic School, he attended the Military Police Basic Officer Course, with his first duty assignment at a Marine Corps Law Enforcement Battalion as a Platoon Commander. He attended

courses in Norway and commanded a Military Police Integrated Company during a NATO Exercise. He has been deployed in several locations, including Africa. CAPTAIN desires to continue serving in the Marine Corps, consistent with his Islamic religious beliefs that require him to abstain from participation in that which is *haram*—forbidden—including the destruction and commoditization of innocent human life as exemplified by the use of human fetal cell lines derived from abortions. CAPTAIN desires to exercise "complete reliance on God" rather than in what he believes to be morally tainted COVID shots. The Marine Corps denied CAPTAIN's religious accommodation request on October 27, 2021, which denial he timely appealed on November 11, 2021. Upon denial of his appeal, the Marine Corps will begin the separation process.

46.    Plaintiff, CAPTAIN 2, United States Marine Corps is a captain in the United States Marine Corps. He loves America and wanted to serve and protect his fellow citizens in giving back to the Country that God has blessed, which has blessed his family. He comes from a rich line of those who have served their Country in the military, selflessly, since World War I. He enlisted in the Marine Corps in December of 2011 and graduated from the Recruit Training Depot in San Diego March of 2012 as the most physically fit recruit, winning the Iron Man award. He was the honor graduate for the bulk fuel course at the quartermaster schoolhouse and was meritoriously promoted to the rank of Corporal prior to being selected to go to Officer Candidate School (OCS). He subsequently attended and graduated from OCS and The Basic School (TBS) for officers, where he learned about leading Marines as an infantry

officer. His current responsibility with the Marine Corps is a command and control (C2) officer (COMMO) 0602. His job is critical to mission success because it is a vital warfighting function. CAPTAIN 2 enables the commander to effectively C2 his or her units on the battlefield. Without C2, there is no feedback mechanism from the units on the ground regarding new developments to adapt to the situation and no method for commanders to issue orders to the units (division, regiment, battalion, company) under their charge. He has also been trained as a 0603 Marine Air Ground Task Force (MAGTF) Communications Planner and has received training within the information domain, the newest warfighting function for both the Marine Corps and joint services. He is currently enrolled at the Marine Corps Expeditionary Warfare School (EWS). As one of the top ten percent of captains, CAPTAIN 2 was hand-selected by the Marine Corps to attend the resident course. The school focuses on educating and training company grade officers, to prepare them mentally, morally, and physically, for billets of increased leadership responsibility across the Fleet Marine Force and the Joint Force. The training provided by EWS emphasizes the warfighting capabilities of a MAGTF operating within a complex and distributed naval expeditionary environment. By meeting the challenges of the future through a Professional Military Education (PME) program, the Marine Corps is ensuring its leaders are the best prepared of any military organization in the world. In his career, he has served stateside and overseas. CAPTAIN 2 has now honorably served approximately ten years for the United States Marine Corps, both as active duty and in the reserve. CAPTAIN 2 never thought he would be placed in the position of conflict between his

faith and a military order and have to decide whether to remain true to what God wants him to do or be kicked out of the service. CAPTAIN 2 submitted his Religious Accommodation (RA) waiver request on September 15, 2021. When he received an initial denial on September 30, he timely appealed on October 7. The denial did not address his specific request. He found out later that other Marines had received the same exact rubber stamp denial letter in response to their RAs. To date, no RA within CAPTAIN 2's personal knowledge has been approved. He learned that the Religious Accommodation Review Board unanimously voted that he was sincere in his faith, but the Board still denied CAPTAIN 2's request. After he submitted his appeal, he received a final denial on December 7. He is awaiting the order to get the COVID shots at any time, and if he does not comply within 10 calendar days, CAPTAIN 2 will be subjected to discipline and the process will begin to kick him out of the Marine Corps.

47.    Plaintiff, CAPTAIN 3, United States Marine Corps, is a Captain in the United States Marine Corps. Shortly after turning 18, in June of 2009, he enlisted in the Marine Corps through the Delayed Entry Program (DEP). While in the DEP prior to going to boot camp, he was awarded the Naval Reserve Officer Training Corps (NROTC) Scholarship to the Virginia Military Institute (VMI). Upon graduating VMI with a degree in international studies, he was commissioned as an active duty Marine officer in May of 2014. Following The Basic School (TBS), CAPTAIN 3 was assigned the military occupational specialty (MOS) of Military Police (MP). While at the Military Police Basic Officer Leadership Course (MPBOLC), he was awarded the

37

leadership award by the faculty and earned a gold medal for the German Armed Forces Proficiency Badge. He served approximately two years and ten months overseas while stationed on Okinawa, Japan and later completed a successful recruiting tour on the east coast. While in the fleet, he became an instructor of non-lethal weapons and tactics (INWIC), as well as an instructor of combat water survival (MCIWS). His job as an MP officer (5803 MOS designation) is of vital importance to the overall mission readiness of the Marine Corps. Force Protection—one of the seven warfighting functions according to US military doctrine—plays an integral role in the military's ability to protect the nation and our interests abroad. MP's are included in every branch of service and have throughout their history provided essential capabilities, especially during times of war. He is a devout Christian who stands firmly in his beliefs in Jesus Christ and the Bible. CAPTAIN 3 submitted a Religious Accommodation (RA) waiver request on September 10, 2021. The Deputy Commandant for Manpower and Reserve Affairs denied the RA on October 1. The denial was identical to nearly every other RA denial across the Navy and Marine Corps. CAPTAIN 3 submitted his appeal package to the Commandant of the Marine Corps on October 13, fulfilling all procedural guidelines and timelines, and proposing numerous viable accommodations of his religious convictions that would achieve the same end state of protection against the virus backed by 20 citations of clinical studies and research materials. The appeal was denied on December 7, 2021, without providing a single source or citation backing the claims that the vaccine is the most efficient means of protection against the COVID-19 virus. On December 13, 2021,

Brigadier General Field, Commanding General of Education Command, ordered CAPTAIN 3 to take the vaccine within 10 days or face an administrative separation. CAPTAIN 3 had to sign an acknowledgement of the order. Because of his faith, CAPTAIN 3 was unable to get the vaccine, and the Marine Corps considers him in violation of the order. On January 14, 2022, the Marine Corps charged CAPTAIN 3 with an Article 92 UCMJ violation, starting the administrative process to separate CAPTAIN 3 from the Marine Corps, which is currently proceeding as fast as the Marine Corps can prosecute it.

48.     Plaintiff, FIRST LIEUTENANT, United States Marine Corps, is a Supply Officer (SUPO) with the First Marine Expeditionary Force (MEF). His job is critical to mission success because it focuses on maintaining the battle tempo and winning battles via supply chain and logistic functions. His role at the Supply Management Unit (SMU) provides for the demands of consumable repair parts to maintain readiness of equipment stateside and abroad. As a SUPO, he keeps track of a multimillion-dollar account and the fiscal obligations of I MEF. His section works in coordination with Marines of the General Account section to communicate how much money is available to replenish stocks within the SMU to support the MEF's missions. Since the start of COVID, all of the units with which FIRST LIEUTENANT has been associated have been fully mission capable. FIRST LIEUTENANT received an initial denial of his Religious Accommodation (RA) request on September 30, 2021, and timely appealed on October 7. The denial did not address his specific request, and he found out later that other Marine had received the same exact rubber stamp denial

letter in response to their RAs. To this date, no RA within his personal knowledge has been approved in the USMC. He has since found out that the Religious Accommodation Review Board unanimously voted that he was sincere in his faith, but the Board still denied his request for accommodation. FIRST LIEUTENANT received a final denial of his RA request on December 27, 2021, and consequences have already occurred. He received the order to get the COVID shots on December 28, stating that if he did not comply within 2 calendar days, he would be subjected to discipline, and the process will begin to kick him out of the Marine Corps. On December 30, 2021 FIRST LIEUTENANT was required to sign a Form 3005 written counseling, stating he was in violation of Article 92—failure to obey a lawful order— by not receiving the COVID shot. There was no mention of his RA request or appeal on this form, which will go into his personnel file. A Form 3005 came on January 5, 2022, relieving him of his duties for cause. He attended a "Transition Readiness Seminar" on January 10, 2022 and is working on his final physical paperwork to fulfill the requirements for out-processing under an administrative separation. While FIRST LIEUTENANT is being out-processed because he has not received a COVID vaccination, more than 100 "fully vaccinated" members of his unit were required to quarantine in January 2022.

27.49. Plaintiff SECOND LIEUTENANT, United States Marine Corps, is a citizen of the State of Alabama who graduated from the United States Naval Academy (USNA) in 2021 and is now currently at The Basic School (TBS). Prior to the Naval Academy, he attended Marion Military Institute (MMI) for two years. His six years of

military college were deliberate, as he has spared no expense in preparing himself to serve as the caliber of leader that United States Marines deserve. He has maintained a flawless conduct record throughout his time in college and in service, as he believes setting such an example is paramount. He has sought out every opportunity for leadership positions requiring ironclad integrity and a dedication to the Profession of Arms, including the MMI Cadet Honor Board and USNA Brigade of Midshipman Honor Investigation System. His professional education and mentorship has focused extensively on the nuances of military law, good order and discipline, the concept of "immediate obedience to orders," and the invaluable obligation that a commissioned officer holds to honor his or her Oath of Office. He is well known by his peers to be exceptionally disciplined in his conduct and dedicated to his Oath of Office, even in facing the potential loss of his livelihood and lifelong dream of serving and leading Marines. SECOND LIEUTENANT submitted a request for a religious accommodation from the COVID shot mandate, on multiple grounds, including his sincerely-held religious belief "that, first and foremost, a Christian's body is the Temple of the Holy Spirit and should be protected from deliberate or reckless injury or violation," and second, that "deceit pursuant to personnel compliance and/or financial gain, is morally objectionable before God." Upon submitting his religious exemption request, he was immediately removed from his training company, and placed in Mike Company, a non-training company reserved for 2nd Lieutenants who are either injured and unable to complete training, or are pending punitive legal action, while his religious accommodation request is routed up his Chain of Command for a

final decision from the Deputy Commandant of the Marine Corps. SECOND LIEUTENANT should have been kept in his training company while his request was pending, as he has not violated any DoD or Marine Corps orders in doing so, and is administratively exempt from all pertinent orders for the duration of time awaiting a final decision. His placement in Mike Company and removal from active training does not protect the force from COVID, as SECOND LIEUTENANT is required to provide administrative and labor assistance to the command, in support of his colleagues in the field and elsewhere. He is required to physically interact with his peers in all current Basic Officer Course classes in the execution of his support role duties. In other words, he remains active around base, working to help his former colleagues graduate from training, while his own training has been placed on hold indefinitely despite no legal or administrative misconduct. This is punitive and an improper response to a religious exemption request. SECOND LIEUTENANT deeply desires to continue training for service to the Nation in the United States Marine Corps, without the profound conflict between his religious beliefs and the COVID shot directives, and without discrimination. As of January 20, 2022, SECOND LIEUTENANT remains out of the training cycle because of his fidelity to his religious beliefs, despite the outstanding personal and professional reviews from his command, and has continued, daily full contact responsibilities in the support program for the same training cycle from which he was removed.

50.     Plaintiff CHIEF WARRANT OFFICER 3, United States Marine Corps, is a Christian who swore an oath to support and defend the United States Constitution

at the age of 20 when he entered the United States Marine Corps. With each reenlistment during his time in service, he has reaffirmed that oath, which he has committed to memory because of its importance. CHIEF WARRANT OFFICER 3 has served in Naval Aviation for nearly two decades where he has deployed on 9 separate occasions, with several being in support of Operation Iraqi Freedom and Operation Enduring Freedom. He has spent more than 6 years of his 20 years of service away from his family and loved ones in service to his Nation. Despite COVID-19's impact on our Nation beginning in March of 2020, his command has been able to accomplish its mission. He received the prestigious Advanced Aircraft Maintenance Officer Course during Weapons Tactics Instructor training over several weeks in Yuma, Arizona without interruption under the COVID protocols in place at the time. After this course, he received an additional MOS making his knowledge and experience essential to combat command as it applies to Marine Corps Aviation abilities. On August 17, 2021, he submitted a Religious Accommodation (RA) request to the Deputy Commandant, Manpower and Reserve Affairs (D/C, M&RA), based on his sincere religious beliefs. It was denied on September 22. He later discovered that the denial letter was virtually identical to other RA denials, without consideration for the uniqueness of his request. He timely appealed on October 2, 2021, and his appeal received its final denial on November 24. CHIEF WARRANT OFFICER 3 was given a January 7, 2022 deadline for being fully vaccinated, despite his religious beliefs. His faith did not allow him to receive a COVID vaccination Now, nothing stands between him and immediate punitive consequences, except the Court's intervention.

28.   Plaintiff CAPTAIN, United States Marine Corps, is a citizen of the State of South Carolina and a patriotic American whose faith is Islam. Desiring to serve his country, he enlisted in the United States Marine Corps in 2014, graduating from recruit training in March 2015. After serving with a Law Enforcement Battalion and earning his undergraduate degree, he was selected for Officer Candidate School, and commissioned as a second lieutenant in 2016. After graduating from The Basic School, he attended the Military Police Basic Officer Course, with his first duty assignment at a Marine Corps Law Enforcement Battalion as a Platoon Commander. He attended courses in Norway and commanded a Military Police Integrated Company during a NATO Exercise. He has been deployed in several locations, including Africa. CAPTAIN desires to continue serving in the Marine Corps, consistent with his Islamic religious beliefs that require him to abstain from participation in that which is *haram* — forbidden — including the destruction and commoditization of innocent human life as exemplified by the use of human fetal cell lines derived from abortions. CAPTAIN desires to exercise "complete reliance on God" rather than in what he believes to be morally tainted COVID shots.

29.1.  Plaintiff ARMY RANGER, United States Army, ARMY RANGER, United States Army, is a citizen of the State of Missouri currently stationed at a United States military facility in the State of Washington. ARMY RANGER has requested an exemption and accommodation for his sincerely held religious objections to the Secretary's mandate that all United States Military personnel accept and receive one

~~of the COVID 19 vaccines as a condition of remaining in their sworn posts. ARMY RANGER has submitted a request for a religious exemption and accommodation, but he has been told by a superior the superior is concerned that the request will "put a target on him" as he is one of two men in the company who have requested a religious exemption from getting the COVID shot. Nonetheless, this superior supports his request for a religious exemption. ARMY RANGER entered active duty in 2015 as an Infantryman (11B). He was selected for Ranger Assessment Selection Program (RASP) in 2015, and graduated Ranger School in 2017, earning his Ranger Tab. He has deployed twice in support of Operation Freedom Sentinel. He is committed to serving the Nation and desires to continue, so long as he is not forced to violate his own religious beliefs and what he believes God requires of him.~~

~~30.~~51. Plaintiff LANCE CORPORAL 1, United States Marine Corps, is a citizen of the State of California currently stationed at a United States Marine Corps facility in California. ~~LANCE CORPORAL 1 has requested an exemption and accommodation of his sincerely held religious objections to the Secretary's mandate that all United States Armed Forces personnel accept and receive one of the COVID 19 vaccines as a condition of remaining in their sworn posts. LANCE CORPORAL 1's request for a religious exemption and accommodation was **denied**.~~ LANCE CORPORAL 1 is currently serving in the United States Marine Corps in the 1st Radio Battalion, I Marine Expeditionary Force Information Group with the I Marine Expeditionary Force. LANCE CORPORAL 1 was raised in a Christian home where his father always told him that he had the choice of going to college or joining

the military. Once he decided to join the military, LANCE CORPORAL 1 instantly chose the Marines because he believed they are the best of the bunch. LANCE CORPORAL 1 started dedicating his life to physical fitness to prepare for the difficult journey he chose. LANCE CORPORAL 1 has discovered a talent and passion for Electrical Maintenance, and intends to pursue it as a civilian career post-military. LANCE CORPORAL 1 signed a 5-year contract, and he plans on serving his country for 5 years. LANCE CORPORAL 1 submitted a request for religious exemption request from the United States Marine Corps. LANCE CORPORAL 1's request for a religious accommodation and exemption articulated vaccine mandate, articulating to his command that he has and exercises sincerely held religious beliefs that compel him to abstain from receiving any of the currently available COVID-19 vaccines. LANCE CORPORAL 1's request for a religious exemption and accommodation has not been approved, and he The Marine Corps denied the request on November 9, 2021, and LANCE CORPORAL 1 timely appealed the denial. Upon denial of his appeal, LANCE CORPORAL 1 faces potential court martial, dishonorable discharge, and other life-altering disciplinary measures for merely requesting an accommodation of his sincerely held religious beliefs.

31.52. Plaintiff LANCE CORPORAL 2 is a citizen of the Commonwealth of Virginia, currently stationed in North Carolina. LANCE CORPORAL 2 joined the Marine Corps in 2018 out of a desire to serve his Country. He graduated Boot Camp, Marine Corps Combat Training, and MOS School, and became a Combat Engineer. LANCE CORPORAL 2 has a strong faith in God and his Son Jesus Christ. He

46

submitted a religious exemption request to the COVID shot orders based on his sincere Christian religious beliefs. He feels the strong conviction of God's Holy Spirit upon his heart that he must not get the COVID shot, and that if he were to get the COVID shot, it would be sin as a violation of the Holy Spirit's leading and direction, and also that it would be sinful complicity in the murder of innocent unborn humans. He believes that all people, born and unborn, are created in God's image, and that life should be respected. He believes it is disrespectful to innocent human life to be associated with or take into his body products derived from abortion. Lance Corporal 2 has been told by several non-commissioned officers that "it is unlikely your religious exemption request will be approved," and that "they're just going to deny them all." If these superiors are correct, he faces involuntary administrative separation at best, and at worst, dishonorable discharge and other life-altering punishment. LANCE CORPORAL 2's Religious Accommodation (RA) request was denied on December 7, 2021, and he appealed the denial on December 18. On or about December 21, LANCE CORPORAL 2 received a phone call from a mental health counselor. The counselor called him to check on his mental health in the wake of the suicide of LANCE CORPORAL 2's platoon mate, because the platoon mate was "being Administratively Separated for refusing the COVID vaccine." LANCE CORPORAL 2 expects his appeal and his RA to be denied and remains resolute in his trust in God, but is deeply grieved over the suicide of his friend.

32.53. Plaintiff MAJOR, UNITED STATES AIR FORCE (("AIR FORCE MAJOR),"), is an officer in the U.S. Air Force with over 18 years of honorable active-

duty service, and holds a Master of Science ~~degree from an accredited Christian university.~~. As a teenage Christian missionary to Mexico, he developed a strong appreciation for the blessings of his home in America and the legacy of Christian values that sets our nation apart. With this love of God and his Christian American legacy, he answered the call on his life to serve the Nation in the Air Force. He was sworn in as a lieutenant by his grandfather, a retired Colonel. AIR FORCE MAJOR went on to fly many life-saving combat missions ~~in Iraq, Africa, and Afghanistan.~~ including aeromedical evacuation out of Iraq, delivering water well machinery to rural Africa, and performing close air support airstrikes in Afghanistan from the Special Operations AC-130 Spectre Gunship. The hell of war struck AIR FORCE MAJOR very deeply through the loss of friendly forces' lives, the suicide of fellow airmen, as well as the deaths of innocent civilians. During one tragic mission, while defending forces surrounded by heavy enemy gunfire, AIR FORCE MAJOR ~~suffered a deadly loss in the gunfight.~~inadvertently shot and killed a small child. In his profound devastation, AIR FORCE MAJOR called on Jesus' help to carry him through the night of continued danger to the special operations team. In subsequent years, his faith journey out of the depths of that pain and ~~pains from~~ other ~~combat missions~~emotional pains has led him to assist in several Christian ministries. He supervised weekly youth church services, Christian summer camp, counseled at ~~a Christian charity relief center~~the Matthew 25 Hope Center, and travelled on leave to Ethiopia to help establish a care point for ~~an international~~the Children's ~~poverty relief center.~~HopeChest. AIR FORCE MAJOR's life ministry now includes three of his own children. Having

recently learned of the use of human abortion derived fetal cell lines in the development, production, or selection and testing of COVID vaccines, AIR FORCE MAJOR's religious convictions conflict with DoD orders that he partake of them. AIR FORCE ~~MAJOR follows God's written direction from Scripture, and knows that he must abstain~~MAJOR's abstinence from the use of vaccines derived from aborted fetal cell lines~~.~~ is not merely a symbolic protest, but a practical abstention against the unbiblical demand and financial incentives for future abortions. Per Proverbs 6:16-17, ~~he has a strong conviction that God will judge "~~the "Lord['s hate for]… hands that shed innocent blood" ~~and he cannot align himself with such deeds.~~is a central part of his doctrinally-common Christian convictions. He ~~believes respect for innocent human life is what differentiates~~finds these values differentiate America from ~~horrific perpetrators of human rights abuses~~the likes of ISIS, the Nazis, and the CCP. AIR FORCE MAJOR's values reflect the best roots of the culture of the Nation and ~~genocide~~reflect the kind of conviction that wins wars.

54.    Plaintiff CHAPLAIN, United States Air Force ("AIR FORCE CHAPLAIN"), joined the Arizona Air National Guard (AZ ANG) in February 2008, and the active-duty Air Force in September 2012. He joined the Chaplain Corps because he loves God and loves America and wanted to serve both by supporting and defending the Constitution. Being a USAF chaplain has been a great highlight of his life, and he has been honored to be invited into some of life's most sacred moments for great Americans from all branches of our Armed Forces. CHAPLAIN has now honorably served as a USAF chaplain approximately fourteen years. During his

service with the AZ ANG in 2010, he was mobilized in support of the Southwest Border Mission, Operation Copper Cactus, serving as chaplain for the Arizona National Guard and Air National Guard members serving along the Arizona/Mexico border. In the USAF he has deployed to: Afghanistan (2014) in support of Operation Enduring Freedom; Turkey (2017) in support of Operation Inherent Resolve; and an undisclosed location in Southwest Asia (2020) in support of Operation Inherent Resolve. He spent three years stationed overseas during which time he supported Theater Security Packages across Europe in support of Operation Atlantic Resolve. CHAPLAIN submitted a 4-page RAR on September 17, 2021 outlining his religious objections to mandatory COVID-19 vaccination. After his RAR was denied, CHAPLAIN timely submitted an 18-page appeal on November 16, expounding further on his religious convictions, which flow out of a Christian worldview developed over forty years. Since 1980 he has been in church virtually weekly. He completed 21 years of Christian education at the elementary, secondary, collegiate, masters and doctoral levels and has been in professional religious work for the past 23 years, including 14 years as a USAF chaplain. CHAPLAIN received notice of the final denial of his RAR on December 3, 2021 and was ordered to provide proof of receiving a COVID shot by December 13. CHAPLAIN has never experienced the kind of singling out that has accompanied the Religious Accommodation Request (RAR) process and the hostility directed at him by his chain of command because of his submission of an RAR. Chaplain submitted his RAR in good faith, and the USAF has not followed its own procedures in denying his request. As of December 13, 2021, the

Air Force has begun the process to punish CHAPLAIN and perhaps discharge him for remaining true to his beliefs.

55.    Plaintiff RESERVE LIEUTENANT COLONEL 1, United States Air Force ("AIR FORCE RESERVE LIEUTENANT COLONEL 1"), is a pilot in the United States Air Force (USAF) Reserve currently serving as a subject matter expert in C-5M Super Galaxy, and Readiness and Training for Air Force Reserve Command (AFRC) at Fourth Air Force (4AF) under the Director of Air Operations and Planning. She has served for over 19 years in the Air Force Reserve. RESERVE LIEUTENANT COLONEL 1 submitted her Religious Accommodation Request (RAR) on October 3, 2021 and received the initial denial of her request on October 27. She timely submitted an appeal, and received a final denial on December 7, 2021, which ordered her to (a) take the vaccine, (b) submit retirement request if eligible or (c) refuse vaccine in writing within 3 days of receiving the denial. The denial memo went on to say that refusal of the vaccine would result in termination by removal from Ready Reserve service. The 3-day timeline that was provided is contrary to the 5-day guidance set forth by the Secretary of the Air Force. On January 5, 2022, RESERVE LIEUTENANT COLONEL 1 received a 30-day medical exemption for an allergy to a substance in the COVID-19 vaccine, but later that same day, the medical exemption was revoked by the Air Force, "because [she] likely was not allergic;" because the Air Force "could not accept documentation from a 'community' allergist;" and because she "had already refused the vaccine" because of her lack of vaccination as of December 7, 2021, the date of her appeal denial, which the Air Force now considers the date of her

"refusal." On January 6, 2022, RESERVE LIEUTENANT COLONEL 1 received a Letter of Reprimand and notice that her commanding general has initiated the process to involuntarily transfer her to the Inactive Ready Reserve, depriving the taxpayers of her service to her Country, and depriving her of a living. RESERVE LIEUTENANT COLONEL 1 now faces immediate and irreparable consequences of having to choose between accepting the vaccine in violation of her religious beliefs or violating a direct order and being separated.

56.     Plaintiff RESERVE LIEUTENANT COLONEL 2, United States Air Force ("AIR FORCE RESERVE LIEUTENANT COLONEL 2"), is a pilot in the United States Air Force Reserve currently managing Program Flight Training (PFT) for aerial refueling tankers (KC-135's, KC-10's, KC-46's), heavy transports (C-17's, C-5's) and tactical airlifts (C-130's). He joined the Air National Guard and graduated from the Academy of Military Science in 2001. He joined the Air Force Reserve in 2015 and currently serves at the HQ for Air Force Reserve Command. He has now honorably served approximately 14 years, 2 months in the Air National Guard, and 6 years, 9 months in the Air Force Reserve. RESERVE LIEUTENANT COLONEL 2 submitted his Religious Accommodation Request (RAR) on October 7, 2021. (E-mails from a higher-level Air Force Reserve General demanded that all RARs be turned in by October 15, 2021—13 days prior to the October 28 deadline in the written order to receive the vaccine). RESERVE LIEUTENANT COLONEL 2's General non-recommended the RAR, falsely stating he had received RESERVE LIEUTENANT COLONEL 2's "division chief's counseling and endorsement" to non-recommend the

RAR. After receiving the initial denial of his RAR on October 28, 2021, RESERVE LIEUTENANT COLONEL 2 timely appealed the denial, noting the many inconsistencies and false statements in his commander's non-recommendation of the initial RAR and in the denial. RESERVE LIEUTENANT COLONEL 2 received a final denial on December 9, 2021, which ordered him to provide proof of receiving the first COVID shot by December 14. RESERVE LIEUTENANT COLONEL 2's faith prohibited him from getting a COVID shot. He is expecting at any time a Letter of Reprimand and notice of his commander's intent to transfer him to the Inactive Ready Reserve for violating a direct order. If RESERVE LIEUTENANT COLONEL 2 is administratively separated, he will lose not only his military position, but will also lose his civilian technician job because it is dependent upon him retaining military employment. As of January 20, 2022, there are a number of "fully-vaccinated" coworkers who are out sick with COVID-19 or teleworking. RESERVE LIEUTENANT COLONEL 2 is one of few workers continuing in-person work at this time, despite being unvaccinated, and he remains healthy in part due to his naturally-acquired COVID immunity.

57.    Plaintiff MASTER SERGEANT SERE SPECIALIST, United States Air Force ("AIR FORCE MSgt SERE SPECIALIST"), has been entrusted with the lives and training of new aircrew and special operators as an instructor at the Air Force Basic Survival School. He instructs personnel in Survival, Evasion, Resistance and Escape (SERE). His current responsibility with the Air Force is as the Superintendent, Wing SERE Operations, as an Air Force Special Operations Command (AFSOC)

SERE Specialist (J1T071), where he is charged with leading six SERE Specialists in the training and preparation of 2,500 AFSOC personnel and deployment in support of United States Special Operations Command (USSOCOM) Personnel Recovery (PR) operations. His job is critical to mission success because it is a vital warfighting function. Before operations can be conducted, Personnel Recovery considerations have to be addressed and plans put into place. AIR FORCE MSgt SERE SPECIALIST advises the commander on SERE and Personnel Recovery matters in preparation to support contingency operations across the globe in any environmental conditions, directs missions in support of Personnel Recovery operations for the commander's units on the battlefield, and conducts Personnel Recovery battlefield preparation. Without SERE training, military personnel who become isolated in enemy territory would be at significantly higher risk of death or capture. Without Personnel Recovery contingency plans, American warfighters, particularly those in the Special Operations and Aviation communities, would be placed at increased physical and psychological risk. There are fewer than 600 Air Force SERE Specialists across the Department of Defense (DoD) due to the demanding training and requirements necessary to carry out the mission. Air Force SERE Specialists are the only DoD personnel trained, equipped, organized, and tasked to report, locate, support, and reintegrate any and all DoD personnel who experience an isolating event, such as being shot down or cut off behind enemy lines. As an experienced and highly trained Senior Non-Commissioned Officer (SNCO), AIR FORCE MSgt SERE SPECIALIST has served in joint and coalition environments, to include Chief of Operations

(CHOPS) and Senior Enlisted Leader (SEL). AIR FORCE MSgt SERE SPECIALIST submitted a Religious Accommodation (RA) request which was processed by the Air Force. He received a final denial of his RA on December 27, 2021 and was notified that his options were to comply or "voluntarily separate." As of January 3, 2022, AIR FORCE MSgt SERE SPECIALIST is subject to discipline and the process has begun to kick him out of the Air Force. He has consulted with the Area Defense Council (ADC), and was informed that as a Senior NCO, the Air Force would make an example of him. It was explained that he will face demotion, court martial with possible felony conviction, and involuntary separation. On January 7, 2022, the Air Force removed MSgt SERE SPECIALIST from his leadership position, and he has begun reporting to an empty office to await his separation while the Administrative Separation process continues.

58.    Plaintiff TECHNICAL SERGEANT, United States Air Force ("AIR FORCE TECHNICAL SERGEANT"), is a citizen of the State of Oklahoma and has spent 15 years in service to her country in the United States Air Force. She felt the call to serve after high school, after being so emotionally affected by the events that transpired on September 11, 2001. TECHNICAL SERGEANT wanted to become a part of something much bigger than herself, and the Air Force offered her a wonderful opportunity. During her time in the Air Force, TECHNICAL SERGEANT felt privileged to serve with so many selfless and inspirational people all around the world. She spent time in Texas, Mississippi, Illinois, Hawaii, and South Korea. She has been deployed to Kandahar Air Base, Afghanistan, spending six months supporting

Operation Enduring Freedom. TECHNICAL SERGEANT submitted a request for a religious accommodation and exemption from the United States Air Force outlining her sincerely held religious objections to receiving one of the COVID-19 vaccines, and the Air Force has denied the request. TECHNICAL SERGEANT was under a temporary medical exemption due to being pregnant, which expired as of January 15, 2022. TECHNICAL SERGEANT has been informed that when she returns from maternity leave she will face court martial, dishonorable discharge, and other disciplinary measures if she does not accept the COVID-19 vaccine.

59.   Plaintiff CADET, United States Air Force Academy ("AIR FORCE CAEDET"), is a citizen of Oklahoma residing in Colorado while he attends the United States Air Force Academy (USAFA). CADET worked extremely hard to get into the Academy and has continued his hard work and excellence since entering, so much so that he was selected by leadership to receive the "Outstanding [Cadet 4th Class] of the Semester" award for the most impactful contribution in his class to the mission at USAFA for the Fall 2021 Semester. Since March 2020, unvaccinated Cadets, including Plaintiff CADET, have been able to fully and safely perform the mission of USAFA. Moreover, Cadets are non-deployable anywhere else until graduation from the Academy, which for CADET is over three years away. Despite, however, the ability of unvaccinated Cadets to fully and safely perform the mission of the Academy since the beginning of the pandemic and prior to the availability of vaccines, and the non-deployability of any Cadet before graduation, the Academy has demanded that all Cadets receive a COVID vaccination pursuant to the Federal COVID-19 Vaccine

Mandate. Because receiving any of the available COVID-19 vaccines would violate CADET's sincerely held religious beliefs, CADET submitted a religious accommodation request (RAR) for exemption from the vaccine mandate. The USAFA Commander formally denied CADET'S RAR by Memorandum dated December 22, 2021. The denial Memorandum generically cited "compelling governmental interest of mission accomplishment, including military readiness, unit cohesion, good order and discipline, and the health and safety of all cadets" as reasons for denial, but did not give any reasoning that pertained to CADET's individual request. The denial Memorandum also stated, generically, that "mission requirements cannot be fully accomplished without frequent exposure to other people," and, "Cadets that remain unvaccinated are unable to perform the mission at USAFA. This places additional stress on vaccinated members and impacts mission accomplishment. As a result, unit cohesion and morale are affected." A comparison of the denial Memorandum to the denial of another Cadet's RAR revealed the denial language and reasoning to be identical. The boilerplate denial language ignores the AY 21-22 CADET WING COVID-19 ROEs guidance, which treats vaccinated and unvaccinated Cadets virtually identically for purposes of mission accomplishment, requiring 5 days' isolation or quarantine, and either 5 or 10 days of wearing a mask after quarantine or exposure. The boilerplate denials also ignore the fact that USAFA immunization goals have already been met, with over 95% of the USAFA population having already been vaccinated. Finally, the denial Memorandum states, "Remaining unvaccinated poses a threat to all exposed." On January 6, 2022, however, USAFA

Commandant of Cadets, Brigadier General Paul Moga, announced to the Cadets at a lunch assembly, regarding USAFA's posturing for the Omicron variant, "there is very little danger to the force." CADET believes he has been subjected to a sham process, as evidenced by the denial Memorandum's inclusion of the same boilerplate, non-specific denial reasons that the Air Force has offered in denying every other Air Force RAR, and that he faces the imminent dismissal from the Academy.

60.   Plaintiff COLONEL, United States Army ("ARMY COLONEL"), is a citizen of the State of Texas and has served as a health care provider in the United States Army for 22 years. He has been deployed twice to Bosnia for six-months, and to Iraq for one year. COLONEL has treated countless numbers of Soldier patients over his career, and his family has sacrificed, as a military families do, for him to be able to serve Soldiers and other members of the military. COLONEL hoped to retire with the United States Army, but as a result of the COVID-19 mandate, he faces discipline for the mere exercise of his sincerely held religious beliefs. COLONEL submitted a request for a religious accommodation and exemption from the United States Army. COLONEL articulated to his command that he has and exercises sincerely held religious beliefs that compel him to abstain from receiving any of the currently available COVID-19 vaccines. COLONEL met with his unit's Chaplain, who reviewed his request for a religious exemption and accommodation and found that COLONEL's request was sincere. COLONEL's request for a religious exemption and accommodation has not been approved, and he faces potential court martial,

dishonorable discharge, and other life-altering disciplinary measures for merely requesting an accommodation of his sincerely held religious beliefs.

61.    Plaintiff ARMY RANGER, United States Army, is a citizen of the State of Missouri currently stationed at a United States military facility in the State of Washington. ARMY RANGER has requested an exemption and accommodation for his sincerely held religious objections to the Secretary's mandate that all United States Military personnel accept and receive one of the COVID-19 vaccines as a condition of remaining in their sworn posts. ARMY RANGER has submitted a request for a religious exemption and accommodation, but he has been told by a superior the superior is concerned that the request will "put a target on him" as he is one of two men in the company who have requested a religious exemption from getting the COVID shot. Nonetheless, this superior supports his request for a religious exemption. ARMY RANGER entered active duty in 2015 as an Infantryman (11B). He was selected for Ranger Assessment Selection Program (RASP) in 2015, and graduated Ranger School in 2017, earning his Ranger Tab. He has deployed twice in support of Operation Freedom Sentinel. He is committed to serving the Nation and desires to continue, so long as he is not forced to violate his own religious beliefs and what he believes God requires of him.

33.62. Plaintiff NATIONAL GUARDSMAN, Virginia Army National Guard, a citizen of the Commonwealth of Virginia, entered service with the Virginia Army National Guard in 1987. He graduated Fort Benning Infantry school and became an Infantryman. His unit attended and graduated Jungle Expert school and pulled guard

duty in 1988 before the Invasion of Panama. He is an expert rifleman more times than not. He was selected as the Soldier of the Year for his company and went on to win the board for the Battalion Soldier of the year in 1989. He was promoted to SGT in June of 1990. NATIONAL GUARDSMAN was employed by a Textile Mill in Virginia where he quickly rose to Production Supervisor where he served until June 2001 when NAFTA was taking a toll on the economy. He made a career change and enlisted into the Active Guard Reserve (AGR) program 2001. From May 2001-2005, he's served as Readiness/Training NCO and deployed to Guantanamo Bay, Cuba where he performed Force Protection Duties along with being the Sergeant of the Guard of Camp Delta Detainment Center. Upon returning to the United States, he earned another MOS in Logistics. In 2007, NATIONAL GUARDSMAN was promoted to Sergeant First Class. With his new unit, he served as the Senior Logistics NCO in charge and in May of 2010, NATIONAL GUARDSMAN deployed to the austere Shindand, Afghanistan during the 2010 Surge, and it was there that he earned the Bronze Star (without V Device). He deployed as the Senior BN Logistics NCO with the 1-116th IN to Doha, Qatar for a Force Protection mission. NATIONAL GUARDSMAN served or trained in 7 countries and has over 50 awards / Impact awards. He has served as an Infantryman Squad Leader, Platoon SGT, First SGT and a Logistics NCO, has two additional skill identifiers of Battle Staff NCO and DoD Contracting Specialist. He is currently Number 2 on the State of Virginia Army National Guard. NATIONAL GUARDSMAN submitted a request for a religious accommodation and exemption from the Virginia Army National Guard.

NATIONAL GUARDSMAN articulated to his command that he has and exercises sincerely held religious beliefs that compel him to abstain from receiving any of the currently available COVID-19 vaccines. NATIONAL GUARDSMAN's request for a religious exemption and accommodation has not been approved, and he has been told that he could potentially face court martial, dishonorable discharge, and other life-altering disciplinary measures for merely requesting an accommodation for his sincerely held religious beliefs. NATIONAL GUARDSMAN has also been REMOVED from his scheduled deployment because of his request for an accommodation and exemption.

63.    Plaintiff COAST GUARD LIEUTENANT, United States Coast Guard, is a citizen of the State of Florida.Plaintiff PILOT, United States Coast Guard ("COAST GUARD PILOT"), is a fixed-wing aircraft pilot in the United States Coast Guard. He is qualified in the HC-144B aircraft and estimates the cost of his training borne by the taxpayers as at least $1,400,000. He commissioned in the Coast Guard in 2018. He has served the people of the United States for over 3 years, enforcing the law and keeping people safe. PILOT participated in many search and rescue operations and has been critical in locating and coordinating aid for many distressed mariners and persons in the water. He has flown countless law enforcement patrols of our nation's southern border and has aided in the detection and interdiction of illegal immigrants and fishing vessels. The command climate where he is stationed is hostile to any religious beliefs and requests for religious accommodation that conflict with the vaccine mandate. On August 26, 2021, PILOT first learned about the vaccine

mandate, and was compelled by his faith to submit a religious accommodation request (RAR). On September 27, 2021, PILOT submitted an RAR on the grounds that there are fetal cell lines used in the production and/or testing of all the currently available vaccines which is contrary to his understanding of the sanctity of human life, and that the status of his body as a temple of the Holy Spirit makes it a sin to accept medicines or treatments with unknown long term effects and numerous adverse events documented in only the first 12 months of use. After submitting his RAR, Pilot experienced retaliation and discrimination from his command in the form of restriction to a 50 mile radius from his home and duty station because he had merely submitted an RAR. PILOT's Commanding Officer stated, regarding the purpose of the increased restrictions on PILOT as a result of submitting an RAR, "It's not to just keep you from being infected, because if that was the case then we would maintain what we did before, which was early on, Admiral Netto, D8, said, you know, people go to locations where it's a reduced infection rate in the area, then they're permitted to do so. . . . That was what we were able to do in order to make sure everybody maintained a healthy mentality, and then when the vaccine was available, things did shift." PILOT's Commanding Officer has vocally supported the Coast Guard's creating policy specifically intended to "make things difficult" for those seeking to obtain religious accommodation from the vaccine mandate, not for the purposes of "health and safety" or mitigating infection risk.

64.    Plaintiff LCDR PILOT, United States Coast Guard ("COAST GUARD LCDR PILOT"), is a commissioned officer and aviator in the United States Coast

Guard, having served honorably on active duty for over 12 years. LCDR PILOT has flown the HC-130J fixed-wing aircraft for nearly 2 years, and previously flew the MH-65C/D helicopter for 8 years. He has 2,932 military flight hours along with 218 simulator hours and has served in operational tours in Louisiana, Puerto Rico, and Alaska. He has served as the HC-130J Engineering Officer and the unit's Assistant Engineering Officer. He estimates the cost of his training to exceed $10 million over 12 years of military aviation. The vaccine mandate has placed LCDR PILOT in a position of conflict between his faith and a military order and must decide whether to remain faithful to his conscience and God or be separated from service. Based on his Roman Catholic Christian faith and absolute opposition to abortion, he cannot accept a vaccine that has been manufactured, or whose efficacy has been tested and proved, using aborted fetal cells. LCDR PILOT submitted a Religious Accommodation Request (RAR) on September 24, 2021, which has not been granted.

34.65. Plaintiff LIEUTENANT, United States Coast Guard ("COAST GUARD LIEUTENANT"), is a citizen of the State of Florida and a Lieutenant in the United States Coast Guard. She has spent 14 years in service to her country, and is currently stationed along the Gulf Coast. Following in the footsteps of two generations of her family, she felt the call to serve as a young child. COAST GUARD LIEUTENANT had a desire to serve the people of this nation and steward its natural resources and the Coast Guard's missions had been a perfect fit. During her time in

the Coast Guard, COAST GUARD LIEUTENANT has felt privileged to serve alongside a diverse group of people from all around the world, including the Naval and Coast Guard members of other nations. COAST GUARD LIEUTENANT submitted a request for a religious accommodation and exemption from the ~~United States Coast Guard~~vaccine mandate, outlining her sincerely held religious objections to receiving one of the COVID-19 vaccines. While breastfeeding her child born earlier this year, she is currently under a temporary medical exemption while undergoing testing for allergies to vaccine components. Though her immediate supervisor supports her requests, COAST GUARD LIEUTENANT has been informed that should these waivers be denied, she may face an other-than-honorable discharge, loss of benefits, and other disciplinary measures if she does not accept the COVID-19 vaccine. COAST GUARD LIEUTENANT has also been informed that even if the medical waivers are approved, she may be determined medically unfit for service and discharged.

66.    ~~Plaintiff COLONEL, United States Army,~~Plaintiff MANAGEMENT AND PROGRAM ANALYST is a civilian federal employee with the United States Citizenship and Immigration Services, Department of Homeland Security. He has faithfully served for approximately 24 years of creditable service in the federal government. He received a broadcast email that states if he is denied reasonable accommodation, he will have 14 days to either receive a single shot vaccine or the first of a two-shot vaccine with the second shot due within six weeks. He received a broadcast email describing the various consequences of non-compliance, including formal discipline, such as a letter of reprimand or suspension proposal, with the last

step being removal from federal service. MANAGEMENT AND PROGRAM ANALYST has a sincerely held religious objection to receiving any vaccine using aborted fetal cells in their development or testing, and to the loss of his free will to preserve his body as the temple of the Holy Spirit as best as he can. MANAGEMENT AND PROGRAM ANALYST has requested a religious accommodation which has not been granted.

67.    Plaintiff FEDERAL BUREAU OF PRISONS EMPLOYEE 1 is a civilian federal employee of the Federal Bureau of Prisons. He was given a deadline under the vaccine mandate to be fully vaccinated against COVID-19 by November 22, 2021. FEDERAL BUREAU OF PRISONS EMPLOYEE 1's sincerely held religious beliefs compel him to abstain from accepting or receiving any COVID-19 vaccine that is connected with aborted fetal cells. He submitted a request for a religious exemption and accommodation in early October 2021, before the deadline set by the Bureau of Prisons, and has not received any decision on his request despite the passing of his deadline to vaccinate.

68.    Plaintiff STATE DEPARTMENT EMPLOYEE 1 is a civilian federal employee, employed by the United States Department of State for six years. He is a federal law enforcement officer and has been a member of the Foreign Service in multiple domestic and overseas assignments. He has been repeatedly instructed to take the COVID-19 vaccine and informed that there will be adverse disciplinary actions and career repercussions should he refuse to do so. He has been working remotely for the last six months and is scheduled to continue working remotely for another six

months. He has sincerely held religious beliefs that compel him to abstain from accepting or receiving one of the COVID-19 vaccines because he believes it would be violating the stewardship he has over his body and violating the Lord's instructions. He has requested a religious exemption and accommodation but has not been given a response to his request other than a Letter of Counseling threatening consequences of his failure to provide proof of full vaccination for COVID-19.

35.1.   is a citizen of the State of Texas and has served as a health care provider in the United States Army for 22 years. He has been deployed twice to Bosnia for six months, and to Iraq for one year. COLONEL has treated countless numbers of Soldier patients over his career, and his family has sacrificed, as a military families do, for him to be able to serve Soldiers and other members of the military. COLONEL hoped to retire with the United States Army, but as a result of the COVID-19 mandate, he faces discipline for the mere exercise of his sincerely held religious beliefs. COLONEL submitted a request for a religious accommodation and exemption from the United States Army. COLONEL articulated to his command that he has and exercises sincerely held religious beliefs that compel him to abstain from receiving any of the currently available COVID-19 vaccines. COLONEL met with his unit's Chaplain, who reviewed his request for a religious exemption and accommodation and found that COLONEL's request was sincere. COLONEL's request for a religious exemption and accommodation has not been approved, and he faces potential court martial, dishonorable discharge, and other life-altering disciplinary measures for merely requesting an accommodation of his sincerely held religious beliefs.

66

36.   Plaintiff TECHNICAL SERGEANT, United States Air Force, is a citizen of the State of Oklahoma and has spent 15 years in service to her country in the United States Air Force. She felt the call to serve after high school, after being so emotionally affected by the events that transpired on September 11, 2001. TECHNICAL SERGEANT wanted to become a part of something much bigger than herself, and the Air Force offered her a wonderful opportunity. During her time in the Air Force, TECHNICAL SERGEANT felt privileged to serve with so many selfless and inspirational people all around the world. She spent time in Texas, Mississippi, Illinois, Hawaii, and South Korea. She has been deployed to Kandahar Air Base, Afghanistan, spending six months supporting Operation Enduring Freedom. TECHNICAL SERGEANT submitted a request for a religious accommodation and exemption from the United States Air Force outlining her sincerely held religious objections to receiving one of the COVID-19 vaccines. Although she is currently under a temporary medical exemption due to being seven months pregnant, TECHNICAL SERGEANT has been informed that once that runs out, she will face court martial, dishonorable discharge, and other disciplinary measures if she does not accept the COVID-19 vaccine.

37.   Plaintiff DEFENSE DEPARTMENT CONTRACTOR (and NAVY RESERVE CHIEF WARRANT OFFICER) is a citizen of the State of Florida and a contractor of the United States Department of Defense (DoD). DEFENSE DEPARTMENT CONTRACTOR is on leave of absence from his DoD Contractor employer, where he conducted Intelligence, Surveillance, and Reconnaissance (ISR)

quantitative and qualitative assessments and studies in all phases of ISR asset and sensor performance and effectiveness for the DoD. These assessments are briefed to DoD senior leadership to inform decisions on future employment, allocation, and procurement. He holds a Top Secret/Sensitive Compartmented information (TS/SCI) security clearance. As a NAVY RESERVE CHIEF WARRANT OFFICER, he formerly enlisted in the Navy Reserve's Non Prior Service and Advance Pay Grade (APG) programs in November 2003. After completing basic training in August 2004, DEFENSE DEPARTMENT CONTRACTOR was assigned to NR SECGRU Minneapolis from 2004 to 2010. From January to December 2008, DEFENSE DEPARTMENT CONTRACTOR was mobilized in support of Operation Iraqi Freedom as part of a Joint Task Force stationed in Balad, Iraq. Following his mobilization, DEFENSE DEPARTMENT CONTRACTOR returned to NR NIOC Texas Minneapolis and was advanced to Chief Petty Officer in September 2009. DEFENSE DEPARTMENT CONTRACTOR's military leadership assignments include Operations Department Leading Chief Petty Officer at NR NIOC Minneapolis, Senior Enlisted Leader and then Senior Chief Petty Officer in 2015 at NR NIOC Georgia Orlando, Senior Enlisted Leader at NR Office of Naval Intelligence, and Senior Enlisted Leader NR at NIOC Georgia – Pensacola. Following his tour at NR NIOC Georgia – Pensacola, he was commissioned as a CWO2 in 2019. Following his commissioning, he affiliated with NR C10FNIOCGA ORL and has been on active duty orders supporting US Special Operations Command J24. He has submitted a request for a religious accommodation and exemption from

68

the United States outlining his sincerely held religious objections to receiving one of the COVID 19 vaccines because of their connection to aborted fetal cell lines. DEFENSE DEPARTMENT CONTRACTOR's request was supported by a Chaplain's recommendation and his supervisor's recommendation. DEFENSE DEPARTMENT CONTRACTOR has not received a response to his request for a religious accommodation but has been informed that it is not likely to be granted.

38.   Plaintiff FEDERAL CIVILIAN ENGINEER CONTRACTOR is a citizen of the State of Georgia and employed by a large military defense contractor that provides LCD screens used in United States Armed Forces aircraft. FEDERAL CIVILIAN ENGINEER CONTRACTOR is a level 2 electrical engineer working nearly exclusively on contracts for the United States Armed Forces. FEDERAL CIVILIAN ENGINEER CONTRACTOR is an active congregant of his church with sincerely held religious beliefs that compel him to abstain from accepting or receiving the COVID 19 vaccines. FEDERAL CIVILIAN ENGINEER CONTRACTOR would like to submit a request for a religious exemption and accommodation, but has has seen his employer's responses to some religious exemption requests submitted by colleagues stating a "waiver of required vaccination should be granted indefinitely, after which time you will need to be fully vaccinated," rendering any granted exemption potentially illusory, and subject to revocation at any time.

39.69. Plaintiff FEDERAL CIVILIAN CONTRACTOR EMPLOYER is a citizen of the State of Michigan who owns his own engineering company located in the Midwest. FEDERAL CIVILIAN CONTRACTOR EMPLOYER and his

company develop and support military weapons systems, including current and next generation land vehicles for the Army and next generation Navy vessels. FEDERAL CIVILIAN CONTRACTOR EMPLOYER would like to request a religious exemption and accommodation from the ~~Executive Order mandating that all government contractors mandate the COVID 19 vaccines~~vaccine mandate as applicable to federal contractors, and he would like to be able to accommodate and exempt his employees that likewise have sincerely held religious objections to the COVID-19 vaccines. FEDERAL CIVILIAN CONTRACTOR EMPLOYER ~~is concerned that as a result of his desire to provide religious exemptions and accommodations and the Executive Order mandating that all government contractors and subcontractors require COVID 19 vaccines of their employees,~~expects that his government contracts (future and current) will be terminated as a result of his desire to be exempt and provide religious exemptions from the vaccine mandate.

~~40.     Plaintiff FEDERAL NUCLEAR CONTRACTOR EMPLOYEE is a citizen of the Commonwealth of Virginia and a young woman of child-bearing age. She holds sincere Christian religious beliefs about human life and marriage. She believes that mankind was created by God, that men and women are designed for a unique, complementary relationship within the context of marriage, and that as part of that relationship, God has designed the female body to fulfill the Creation mandate to "be fruitful and multiply." FEDERAL NUCLEAR CONTRACTOR EMPLOYEE believes abortion to be a great sin, and is morally opposed to the use of aborted fetal~~

cells in the testing or development of vaccines, including the COVID vaccines. FEDERAL NUCLEAR CONTRACTOR EMPLOYEE is not married yet, but hopes to be one day, and in that relationship to have a child or children as God blesses her. She believes that "children are an heritage of the Lord," and that bearing a child or children in the context of marriage fulfils a Divine mandate. FEDERAL NUCLEAR CONTRACTOR EMPLOYEE is aware that no long term studies have been performed on any of the COVID shots regarding their impact on female fertility, and given her religious beliefs about marriage and childbearing, cannot receive any of the COVID shots. FEDERAL NUCLEAR CONTRACTOR EMPLOYEE fears being placed in the position of having to choose between her job and her faith.

41.    Plaintiff DEPARTMENT OF ENERGY CIVILIAN NUCLEAR TECH is a citizen of the State of Texas and is an R&D Research Technician/Operations Technician for Material Physics Applications Quantum (MPA-Q) which is his group at the Los Alamos National Laboratory in New Mexico. He works with Radar Frequencies, Tesla Magnets, Class 3/4 Laser Operations and Experiments, as well as many other aspects of the DOE's nuclear programs. He has been employed at his current position for 12 years and is a faithful and exemplary employee. DEPARTMENT OF ENERGY CIVILIAN NUCLEAR TECH requested a religious exemption and accommodation from Defendants' COVID-19 vaccine mandate on federal civilian contractors, and his request was denied. DEPARTMENT OF

71

ENERGY CIVILIAN NUCLEAR TECH was given until October 15 to accept one of the vaccines or face termination.

42.    Defendant JOSEPH R. BIDEN, in his official capacity as President of the United States, is the head of the federal government and Commander in Chief of the United States Armed Forces, and is responsible for enacting, implementing, and enforcing the federal COVID 19 vaccine mandate for members of the United States Armed Forces and civilian federal employees and contractors. Specifically, President Biden issued two Executive Orders on September 9, 2021, mandating that all civilian federal employees and contractors receive a COVID 19 vaccine. President Biden is sued in his official capacity.

43. 70. Defendant LLOYD AUSTIN, in his official capacity as the Secretary of the United States Department of Defense (DoD), is responsible for enacting, implementing, and enforcing the federal COVID-19 vaccine mandate for members of the United States Armed Forces under DoD authority. Specifically, Secretary Austin issued the August 24 Memorandum for Senior Pentagon Leadership and other officials mandating that all military servicemembers under Department of Defense authority receive a COVID-19 vaccine. Secretary Austin is sued in his official capacity.

71.    Defendant CHRISTINE WORMUTH, in her official capacity as Secretary of the United States Army, is responsible for enacting, implementing, and enforcing the Federal COVID-19 Vaccine Mandate for members of the United States Army. Defendant Wormuth is sued in her official capacity.

72.    Defendant CARLOS DEL TORO, in his official capacity as Secretary of the United Sates Navy, is responsible for enacting, implementing, and enforcing the Federal COVID-19 Vaccine Mandate for members of the United States Navy. Defendant Del Toro is sued in his official capacity.

73.    Defendant GEN. DAVID H. BERGER, in his official capacity as Commandant of the United States Marine Corps, is responsible for enacting, implementing, and enforcing the Federal COVID-19 Vaccine Mandate for members of the United States Marine Corps. Defendant Gen. Berger is sued in his official capacity.

74.    Defendant FRANK KENDALL, in his official capacity as Secretary of the United States Air Force, is responsible for enacting, implementing, and enforcing the Federal COVID-19 Vaccine Mandate for members of the United States Air Force and is responsible for overseeing the mandate for members of the United States Space Force. Defendant Kendall is sued in his official capacity.

44.75. Defendant ALEJANDRO MAYORKAS, in his official capacity as Secretary of the Department of Homeland Security, is responsible for enacting, implementing, and enforcing the federalFederal COVID-19 vaccine mandateVaccine Mandate for members of the United States Coast Guard and other civilian federal employees and contractors. Secretary Austin issued a directive, in accordance with President Biden's September 6 Executive Orders, mandating that all Department of Homeland Security employees, including United States Coast Guard servicemembers, receive a COVID-19 vaccine. Secretary Mayorkas is sued in his official capacity.

76. Defendant ROBIN CARNAHAN, in her official capacity as Administrator of the United States General Services Administration, directs and controls a federal agency tasked with routinely overseeing and administering contracts with the United States government. Defendant Carnahan is sued in her official capacity.

77. Defendant KIRAN AHUJA, in her official capacity as Director of the United States Office of Personnel Management, is responsible for overseeing human resources for all employees of the United States government and is tasked with enforcing and administering Federal COVID-19 Vaccine Mandate for all federal employees. Defendant Ahuja is sued in her official capacity.

78. Defendant LESLEY A. FIELD, in her official capacity as Acting Administrator for Federal Procurement Policy, Office of Management and Budget, is tasked with enforcing and administering the Federal COVID-19 Vaccine Mandate for all civilian federal employees and contractors. Defendant Field is sued in her official capacity.

79. Defendant MATHEW C. BLUM, in his official capacity as Chair of the Federal Acquisition Regulatory Council, is tasked with enforcing and administering the Federal COVID-19 Vaccine Mandate for all civilian federal contractors. Defendant Blum is sued in his official capacity.

## JURISDICTION AND VENUE

45.80. This action arises under the First Amendment to the United States Constitution. This action also arises under federal statutory law, namely the Religious

Freedom Restoration Act, 42 U.S.C. §§ 2000bb to 2000bb-4, and under the Emergency Use Authorization provisions of the Federal Food Drug and Cosmetic Act, 21 U.S.C. § 360bbb-3.

46.81. This Court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1331, 1343, and 1367.

47.82. Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district.

48.83. This Court is authorized to grant declaratory relief under the Declaratory Judgment Act, 28 U.S.C. §§ 2201–2202, implemented through Rule 57, Federal Rules of Civil Procedure.

49.84. This Court is authorized to grant Plaintiffs' prayer for a temporary restraining order (TRO) and preliminary and permanent injunctive relief pursuant to Rule 65 of the Federal Rules of Civil Procedure.

## GENERAL ALLEGATIONS

### A.    THE FEDERAL COVID-19 VACCINE MANDATE.

50.85. On September 9, 2021, President Biden issued Executive Order 14043, Requiring Coronavirus Disease 2019 Vaccination for Federal Employees, requiring all federal employees to receive one of the COVID-19 vaccines as a condition of employment. (A true and correct copy of Executive Order 14043 is attached hereto as **EXHIBIT A** and incorporated herein.)

51.86. In Executive Order 14043, President Biden stated: "I have determined that to promote the health and safety of the Federal workforce and the efficiency of the civil service, it is necessary to require COVID-19 vaccination for all Federal employees . . . ." (Ex. A at 2.)

52.87. Consistent with that determination, Executive Order 14043 states: "Each agency shall implement, to the extent consistent with applicable law, a program to require COVID-19 vaccination for all of its Federal employees . . . ." (Ex. A at 2.)

53.88. Also on September 9, 2021, President Biden issued Executive Order 14042, Ensuring Adequate COVID Safety Protocols for Federal Contractors, requiring that all federal contractors and subcontractors "comply with all guidance for contractor or subcontractor workplace locations published by the Safer Federal Workforce Task Force." (A true and correct copy of Executive Order 14042 is attached hereto as **EXHIBIT B** and incorporated herein.) Pursuant to Executive Order 14042, the Safer Federal Workforce Task Force issued its *Guidance for Federal Contractors and Subcontractors* on September 24, 2021, requiring that all employees of federal contractors and subcontractors receive one of the COVID-19 vaccines as a condition of performing any contract for work for the Federal Government. (A true and correct copy of the *Guidance* is attached hereto as **Exhibit C** and incorporated herein.)

54.89. On August 24, 2021, Secretary Austin issued a Memorandum for Senior Pentagon Leadership, Commanders of the Combatant Commands, and Defense Agency and DoD Field Activity Directors, Subject: Mandatory Coronavirus Disease 2019 Vaccination of Department of Defense Service Members, mandating that all

military servicemembers under DoD authority receive the COVID-19 vaccine. (A true and correct copy of the Secretary's August 24 Memorandum is attached hereto as **EXHIBIT D** and incorporated herein.)

55.90. In his Memorandum, Secretary Austin stated: "After careful consultation with medical experts and military leadership, and with the support of the President, I have determined that mandatory vaccination against coronavirus disease 2019 (COVID-19) is necessary to protect the Force and defend the American people." (Exhibit DC at 1.)

56.91. Secretary Austin further stated: "I therefore direct the Secretaries of the Military Departments to immediately begin full vaccination of all members of the Armed Forces under DoD authority on active duty or in the Ready Reserve, including the National Guard, who are not fully vaccinated against COVID-19." (Exhibit DC at 1.)

57.92. Though not even possible right now (*see infra*), the Secretary stated that mandatory vaccination "will only use COVID-19 vaccines that receive full licensure from the Food and Drug Administration (FDA), in accordance with FDA-approved labeling and guidance." (Ex. DC at 1.)

93.   President Biden's Executive Orders, Secretary Austin's Memorandum, and all related, resulting, subsequent, amended, or superseding federal orders or directives mandating the vaccination of United States Armed Forces servicemembers, federal civilian employees, or federal civilian contractors, are sometimes collectively referred to herein as the "Federal COVID-19 Vaccine Mandate."

B.    **PLAINTIFFS' SINCERELY HELD RELIGIOUS BELIEFS.**

~~58.~~94. Plaintiffs all have sincerely held religious beliefs, rooted in Scripture, that preclude them from complying with the Federal COVID-19 Vaccine Mandate because of the connections between the various COVID-19 vaccines and the cell lines of aborted fetuses, whether in the vaccines' origination, production, development, testing, or other inputs. Plaintiffs also have sincerely held religious beliefs, rooted in Scripture, that their bodies are temples of the Holy Spirit and that they cannot place anything into their Temples without confirmation and conviction from the Holy Spirit.

~~59.~~95. A fundamental component of Plaintiffs' sincerely held religious beliefs is that all life is sacred, from the moment of conception to natural death, and that abortion is the murder of an innocent life and a grave sin against God.

~~60.~~96. Plaintiffs' sincerely held religious beliefs are rooted in Scripture's teachings that "[a]ll Scripture is given by inspiration of God, and is profitable for doctrine, for reproof, for correction, [and] for instruction in righteousness." *2 Timothy* 3:16 (KJV).

~~61.~~97. Because of that sincerely held religious belief, Plaintiffs believe that they must conform their lives, including their decisions relating to medical care, to the commands and teaching of Scripture.

~~62.~~98. Plaintiffs have sincerely held religious beliefs that God forms children in the womb and knows them prior to birth, and that because of this, life is sacred from the moment of conception to natural death. *See Psalm* 139:13–14 (ESV) ("For you formed my inward parts; you knitted me together in my mother's womb. I praise you,

for I am fearfully and wonderfully made."); *Psalm* 139:16 (ESV) ("Your eyes saw my unformed substance; in your book were written, every one of them, the days that were formed for me, when as yet there was none of them."); *Isaiah* 44:2 (ESV) ("Thus says the Lord who made you, who formed you from the womb . . . ."); *Isaiah* 44:24 (ESV) ("Thus says the Lord, your Redeemer, who formed you from the womb: 'I am the Lord, who made all things . . . .'"); *Isaiah* 49:1b (ESV) ("The Lord called me from the womb, from the body of my mother he named my name."); *Isaiah* 49:5 (ESV) ("And now the Lord says, he who formed me from the womb to be his servant . . . ."); *Jeremiah* 1:5 (ESV) ("'Before I formed you in the womb I knew you, and before you were born I consecrated you; I appointed you a prophet to the nations.'").

~~63.~~99.  Plaintiffs also have sincerely held religious beliefs that every child's life is sacred because each is made in the image of God. *See Genesis* 1:26–27 (ESV) ("Then God said, 'Let us make man in our image, after our likeness. . . . So God created man in his own image, in the image of God he created him; male and female he created them.'" (footnote omitted)).

~~64.~~100.     Plaintiffs have sincerely held religious beliefs that because life is sacred from the moment of conception, the killing of that innocent life is the murder of an innocent human in violation of Scripture. *See, e.g.*, *Exodus* 20:13 (ESV) ("'You shall not murder.'"); *Exodus* 21:22–23 (ESV) (imposing death penalty for killing of an unborn child); *Exodus* 23:7 (ESV) ("'[D]o not kill the innocent and righteous . . . .'"); *Genesis* 9:6 (ESV) ("'Whoever sheds the blood of man, by man shall his blood be shed,

for God made man in his own image.'"); *Deuteronomy* 27:25 (ESV) ("Cursed be anyone who takes a bribe to shed innocent blood." (internal quotation marks omitted)); *Proverbs* 6:16–17 (ESV) ("There are six things that the LORD hates, seven that are an abomination to him: . . . hands that shed innocent blood . . . .").

~~65.~~101.    The Hebrew word for "abomination" in the text above is תּוֹעֵבָה (to`eba). The verbal form is "abhor," "loath," "detest," and "exclude." Twelve times the Book of Proverbs uses תּוֹעֵבָה in reference to an "abomination to the LORD." (יהוה or Yahweh). The word is also used in conjunction with the Ammonites and the Ashtoreth, the Sidonians, Chemosth, and Moab. Some of these nations sacrificed their children to Baal. Indeed, *Jeremiah* 19:4–9, refers to the shedding of innocent blood by sacrificing children as the reason for judgement against Judah. Abortion is the modern-day sacrifice of children made in the image of God. Plaintiffs do not want to be part of such an "abomination." They do not want indirectly or directly to be in any way associated with abortion. To do so is abhorrent, loathsome, detestable, abominable to God. In short, to require these employees to inject a substance into their bodies that has any association (no matter how near or remote to abortion) is a sin against their Creator, their Lord, and their Savior.

~~66.~~102.    Plaintiffs also have sincerely held religious beliefs that it would be better to tie millstones around their necks and be drowned in the sea than to bring harm to an innocent child. *See Matthew* 18:6; *Luke* 17:2 (ESV).

~~67.~~103.    Plaintiffs also have sincerely held religious beliefs that their bodies are temples of the Holy Spirit, and that to inject medical products that have any

connection whatsoever to aborted fetal cell lines would be defiling the temple of the Holy Spirit. (*See 1 Corinthians* 6:15–20 (ESV) ("Do you not know that your bodies are members of Christ? . . . Or do you not know that your body is a temple of the Holy Spirit within you, whom you have from God? You are not your own, for you were bought with a price. So glorify God in your body.").

68.104.   Plaintiffs' religious beliefs compel them to not condone, support, justify, or benefit (directly or indirectly) from the taking of innocent human life via abortion, and that to do so is sinning against God.

69.105.   Plaintiffs' sincerely held religious beliefs preclude them from accepting any one of the three currently available COVID-19 vaccines derived from, produced or manufactured by, tested on, developed with, or otherwise connected to aborted fetal cell lines.

70.106.   As reported by the North Dakota Department of Health, in its handout literature for those considering one of the COVID-19 vaccines, "[t]he non-replicating viral vector vaccine produced by Johnson & Johnson **did require the use of fetal cell cultures, specifically PER.C6, in order to produce and manufacture the vaccine**." *See* North Dakota Health, *COVID-19 Vaccines & Fetal Cell Lines* (Apr. 20, 2021), https://www.health.nd.gov/sites/www/files/documents/COVID%20Vaccine%20Page/COVID-19_Vaccine_Fetal_Cell_Handout.pdf.

71.107.   The Louisiana Department of Health likewise confirms that the Johnson & Johnson COVID-19 vaccine used the PER.C6 fetal cell line, which "is a

retinal cell line that was **isolated from a terminated fetus in 1985**." La. Dep't of Public Health, *You Have Questions, We Have Answers: COVID-19 Vaccine FAQ* (Dec. 21, 2020), https://ldh.la.gov/assets/oph/Center-PHCH/Center-PH/immunizations/ You_Have_Qs_COVID-19_Vaccine_FAQ.pdf (emphasis added).

~~72.~~108.    Scientists at the American Association for the Advancement of Science have likewise published research showing that the Johnson & Johnson vaccine used aborted fetal cell lines in the development and production phases of the vaccine. Meredith Wadman, *Vaccines that use human fetal cells draw fire*, Science (June 12, 2020), *available at* https://science.sciencemag.org/content/368/6496/1170.full.

~~73.~~109.    The same is true of the Moderna and Pfizer-BioNTech mRNA vaccines. The Louisiana Department of Health's publications again confirm that aborted fetal cells lines were used in the "proof of concept" phase of the development of their mRNA vaccines. *See* La. Dep't of Public Health, *supra*.

~~74.~~110.    The North Dakota Department of Health likewise confirms: "Early in the development of mRNA vaccine technology, **fetal cells were used for 'proof of concept' (to demonstrate how a cell could take up mRNA and produce the SARS-CoV-2 spike protein) or to characterize the SARS-CoV-2 spike protein**." N.D. Health, *supra* (emphasis added).

~~75.~~111.    The Chief Scientific Officer and Senior Director of Worldwide Research for Pfizer have also been reported to demonstrate that its COVID-19 vaccine is derived from aborted fetal cells and have made statements that they wanted to keep

82

that information from the public. *See PFIZER LEAKS: Whistleblower Goes On Record, Reveals Internal Emails from Chief Scientific Officer & Senior Director of Worldwide Research Discussing COVID Vaccine … 'We Want to Avoid Having the Information on the Fetal Cells Floating Out There'*, ProjectVeritas (Oct. 6, 2021), https://www.projectveritas.com/news/pfizer-leaks-whistleblower-goes-on-record-reveals-internal-emails-from-chief/.

76.112.     Specifically, Vanessa Gelman, Pfizer Senior Director of Worldwide Research: "From the perspective of corporate affairs, we want to avoid having the information on fetal cells floating out there…The risk of communicating this right now outweighs any potential benefit we could see, particularly with general members of the public who may take this information and use it in ways we may not want out there. We have not received any questions from policy makers or media on this issue in the last few weeks, so we want to avoid raising this if possible." *Id.*

77.113.     And, Philip Dormitzer, Pfizer's Chief Scientific Officer is reported as saying that he wanted to keep the information secret because of the objections that pro-life individuals, such as Plaintiffs in this action, would have: "HEK293T cells, used for the IVE assay, are ultimately derived from an aborted fetus. On the other hand, the Vatican doctrinal committee has confirmed that they consider it acceptable for Pro-Life believers to be immunized. Pfizer's official statement couches the answer well and is what should be provided in response to an outside inquiry." *Id.*

78.114.     Because all three of the currently available COVID-19 vaccines are developed and produced from, tested with, researched on, or otherwise connected with

the aborted fetal cell lines HEK-293 and PER.C6, Plaintiffs' sincerely held religious beliefs compel them to abstain from obtaining or injecting any of these products into their body, regardless of the perceived benefit or rationale.

79. 115.      Plaintiffs have sincerely held religious beliefs that their bodies are temples of the Holy Spirit, and that to inject medical products that have any connection whatsoever to aborted fetal cell lines would be defiling the temple of the Holy Spirit.

80. 116.      Plaintiffs sincerely religious beliefs that their bodies are temples of the Holy Spirit and that they are to glorify God with their bodies lays the foundation for everything they do, consume, or inject into their bodies. From this foundation they make studied and reasonable decisions about what is good and what is not good or may not be good for their bodies. To knowingly abuse their bodies by engaging in a dishonorable act, or consuming or injecting a substance that will or may produce adverse consequences, is a sin against God. Based on this foundation, Plaintiffs would consume pure water over a similarly clear liquid they know or reasonably conclude is harmful to the body. This belief and other sincerely held religious beliefs are foundational to all their decisions and actions and are not limited to aborted fetal cell lines.

81. 117.      Plaintiffs have sincerely held religious beliefs that the Holy Spirit—through prayer and the revelation of Scripture—guide them in all decisions they make in life.

82.118.     Plaintiffs have sincerely held religious beliefs that Jesus Christ came to this earth, died on the cross for their sins, was resurrected three days later, and that when He ascended to Heaven, He sent the Holy Spirit to indwell His believers and to guide them in all aspects of their lives. *See John* 16:7 (ESV) ("Nevertheless, I tell you the truth: it is to your advantage that I go away, for if I do not go away, the Helper will not come to you. But if I go, I will send him to you."); *John* 14:26 (ESV) ("But the Helper, the Holy Spirit, whom the Father will send in my name, he will teach you all things and bring to your remembrance all that I have said to you.").

83.119.     Plaintiffs have sincerely held religious beliefs that the Holy Spirit was given to them by God to reprove them of righteousness and sin and to guide them into all truth. *See John* 16:8–13 (ESV) ("And when he comes, he will convict the world concerning sin and righteousness and judgment . . . . When the Spirit of truth comes, he will guide you into all the truth, for he will not speak on his own authority, but whatever he hears he will speak, and he will declare to you the things that are to come.").

84.120.     Plaintiffs also have sincerely held religious beliefs that they will receive answers to their questions through prayer and supplication, including for decisions governing their medical health. *See James* 1:5 (ESV) ("If any of you lacks wisdom, let him ask God, who gives generously to all without reproach, and it will be given him."); *Mark* 11:24 (ESV) ("Therefore I tell you, whatever you ask in prayer, believe that you have received it, and it will be yours."); *Philippians* 4:6–7 (ESV) ("[D]o not be anxious about anything, but in everything by prayer and supplication with

thanksgiving let your requests be made known to God. And the peace of God, which surpasses all understanding, will guard your hearts and your minds in Christ Jesus."); *1 John* 4:14–15 (ESV) ("And we have seen and testify that the Father has sent his Son to be the Savior of the world. Whoever confesses that Jesus is the Son of God, God abides in him, and he in God.").

85.121.    Through much prayer and reflection, Plaintiffs have sought wisdom, understanding, and guidance on the proper decisions to make concerning these COVID-19 vaccines, and Plaintiffs have been convicted by the Holy Spirit that accepting any of the three currently available vaccines is against the teachings of Scripture and would be a sin.

86.122.    Plaintiffs have sincerely held religious beliefs that compel them to follow the teachings of the Holy Spirit, who has not given them peace, comfort, or admonition to accept any of the three currently available COVID-19 vaccines.

87.123.    Plaintiffs have sincerely held religious beliefs that they are being guided and instructed by the Holy Spirit not to accept any of the three currently available COVID-19 vaccines and that it would be a sin against God to do so.

88.124.    Plaintiff CAPTAIN is of the Islamic faith whose sincerely held religious beliefs that require him to abstain from participation in that which is *haram*— —forbidden——including the destruction and commoditization of innocent human life as exemplified by the use of human fetal cell lines derived from abortions.

CAPTAIN desires to exercise "complete reliance on God" rather than in what he believes to be morally-tainted COVID shots

### C.   PLAINTIFFS' WILLINGNESS TO COMPLY WITH SAFE AND TESTED ALTERNATIVES TO UNIVERSAL VACCINATION AS ACCOMMODATION OF THEIR SINCERELY HELD RELIGIOUS BELIEFS.

89. 125.    Plaintiffs have offered, and are ready, willing, and able to comply with all reasonable health and safety requirements to facilitate their religious exemption and accommodation from the Federal COVID-19 Vaccine Mandate.

90. 126.    Plaintiffs have all informed their respective commanding officers and civilian supervisors that they are willing to comply with reasonable conditions that were sufficient for nearly two years, permitting them to fulfill their sworn duties and faithful service to their employers and a grateful nation, and which reasonable conditions continued from the FDA's Emergency Use Authorization (EUA) of the first COVID-19 vaccine in December 2020, until August 24, 2021 for military servicemembers and September 9 for federal civilian federal employees and contractors. Nothing has changed except for the Vaccine Mandate, and thus the past proves a good example of present and future reasonable accommodations.

91. 127.    The accommodations which have been ongoing for nearly two years are certainly reasonable under the accumulating scientific evidence. Indeed,

> A preliminary study has shown that in the case of a breakthrough infection, the Delta variant is able to grow in the noses of vaccinated people **to the same degree as if they were not vaccinated at all**. The virus that grows is just as infectious as that in unvaccinated people, meaning vaccinated people can transmit the virus and infect others.

Sanjay Mishra, *Evidence mounts that people with breakthrough infections can spread Delta easily*, National Geographic (Aug. 20, 2021), https://www.nationalgeographic.com/science/article/evidence-mounts-that-people-with-breakthrough-infections-can-spread-delta-easily (emphasis added); *see also Statement from CDC Director Rochelle P. Walensky, MD, MPH on Today's MMWR* (July 30, 2021), https://www.cdc.gov/media/releases/2021/s0730-mmwr-covid-19.html (noting "**the Delta infection resulted in similarly high SARS-CoV-2 viral loads in vaccinated and unvaccinated people**" (emphasis added).)

128.   The CDC Director also admitted that the currently available COVID-19 vaccines do not prevent transmission. *See* Tim Hains, *CDC Director: Vaccines No Longer Prevent You From Spreading COVID* (Aug. 6, 2021), https://www.realclearpolitics.com/video/2021/08/06/cdc_director_vaccines_no_lo nger_prevent_you_from_spreading_covid.html#!.

92.129.   Other reasonable protocols beyond the currently-available COVID vaccines remain sufficient to prevent the spread of COVID-19 among military servicemembers, federal employees, and federal contractors, and constitute a reasonable alternative to mandatory, universal vaccination as an accommodation of sincerely held religious beliefs.

93.130.   The United States District Court for the Western District of Louisiana recently issued a TRO against a medical school for the school's failure to grant religious exemptions when other reasonable accommodations were available

and mandatory vaccination was not the least restrictive means of achieving the school's interest in protecting the school's student body. *See Magliulo v. Edward Via College of Osteopathic Medicine*, No. 3:21-CV-2304, 2021 WL 36799227 (W.D. La. Aug. 17, 2021).

94.131.    The United States District Court for the Western District of Michigan issued a TRO against a university for its failure to allow students with religious objections to vaccination to participate in athletics and other extracurricular activities when other reasonable alternatives were available as a reasonable accommodation for their religious beliefs. *See Dahl v. Bd. of Trustees of W. Mich. Univ.*, No. 1:21-cv-757, 2021 WL 3891620, *2 (W.D. Mich. Aug. 31, 2021). The Sixth Circuit Court of Appeals affirmed that preliminary injunction in its order refusing to stay the preliminary injunction. *See Dahl v. Bd. of Trustees of W. Mich. Univ.*, No. 21-2945, 2021 WL 4618519 (6th Cir. Oct. 7, 2021).

95.    The United States District Court for the Northern District of New York and the Second Circuit Court of Appeals have both entered injunctions against enforcement of New York's COVID 19 vaccine mandate on healthcare workers that expressly excluded any religious exemption. On October 12, 2021, the Northern District of New York entered a preliminary injunction enjoining state officials from enforcing the mandate. *See Dr. A. v. Hochul*, No. 1:21 CV 1009, 2021 WL 4734404 (N.D.N.Y. Oct. 12, 2021). The court had previously entered a TRO to the same effect. *See* 2021 WL 4189533 (N.D.N.Y. Sept. 14, 2021). On September 30, in between the Northern District's TRO and preliminary injunction, the Second Circuit gave its

~~imprimatur to the *Dr. A.* TRO in *We The Patriots USA, Inc. v. Hochul*, No. 21-2179, dkt.~~

~~65 (2d Cir. Sept. 30, 2021). In *We The Patriots*, the Second Circuit issued an injunction~~

~~pending appeal against New York's mandate, enjoining state officials from enforcing~~

~~it "in a manner that would violate the terms of the temporary restraining order issued~~

~~in *Dr. A v. Hochul*."~~

132.   In *U.S. Navy Seals v. Biden*, No. 4:21-cv-1236-O, 2022 WL 34443 (N.D.

Tex. Jan. 3, 2022), the United States District Court for the Northern District of Texas

entered a preliminary injunction against the United States Navy's sham process for

requesting and receiving a religious exemption and accommodation. Indeed, the Court

there noted that "The Navy provides a religious accommodation process, but by all

accounts, **it is theater**. The Navy has not granted a religious exemption to any vaccine

in recent memory. **It merely rubber stamps each** denial." *Id.* at *1 (emphasis added).

133.   In *State v. Nelson*, No. 8:21-cv-2524-SDM-TGW, 2021 WL 6108948, *11

(M.D. Fla. Dec. 22, 2021) (Merryday, J.), this Court held that Defendants' COVID-

19 vaccine mandate on federal contractors was also unlawful and issued a preliminary

injunction. This Court held that the mandate was issued in excess of the statutory

jurisdiction provided to Defendants.

134.   The Sixth Circuit, too, has held that the President and the agencies to

whom he purportedly delegated authority for the vaccine mandate on federal

contractors lacked authority to issue a mandate on federal contractors. *See Kentucky v.*

*Biden*, No. 21-6147, 2022 WL 43178 (6th Cir. Jan. 5, 2022). Indeed, "if the President

can order medical interventions in the name of reducing absenteeism, what is the logical stopping point of that power?" *Id.* at *15. Defendants' vaccine mandate on federal contractors "**requires vaccination everywhere and all the time**. It is not 'anchored' to the statutory text, not is it even 'anchored' to the work of federal contractors." *Id.* (emphasis added). "We thus conclude that the federal government is unlikely to prevail on its argument that the Property Act authorizes imposition of the contractor mandate." *Id.* at 16.

96. 135.    The United States Military Health System allows three different types of permanent *medical* exemptions from compulsory immunizations: (1) "Determination by a medical provider that further vaccination will seriously endanger patient's health;" (2) "Medical, Reactive exemption: Previously severe reaction after specific vaccine;" and (3) "Medical, Immune exemption: Evidence of existing immunity (e.g., by serologic antibody test, documentation of previous infection or natural infection presumed)." *See* Military Health System, *Immunization Exemption Guidance*, Health.mil, https://www.health.mil/Military-Health-Topics/Health-Readiness/Immunization-Healthcare/Clinical-Consultation-Services/Exemption-Guidance (last visited October 14, 2021).

97. 136.    Several Plaintiffs and countless other class members were previously infected with COVID-19, have serologic test results demonstrating natural antibodies and immunity to COVID-19, and otherwise qualify for the exemptions ostensibly available for servicemembers. Plaintiffs, however, have been denied the ability to even requests the officially available exemptions.

### D.   PLAINTIFFS' REQUESTS FOR AN ACCOMMODATION FROM THE MANDATORY COVID-19 VACCINE POLICY.

98. 137.    On September 7, 2021, NAVY SEAL 1 submitted to the United States Navy a request for religious exemption from the Federal COVID-19 Vaccine Mandate as an accommodation of his sincerely held beliefs. NAVY SEAL 1 articulated to his command that he has and exercises sincerely held religious beliefs that compel him to abstain from receiving any of the currently available COVID-19 vaccines. NAVY SEAL 1 met with his unit's Chaplain, who reviewed his request for a religious exemption and accommodation and found that NAVY SEAL 1's request was sincere. NAVY SEAL 1's Chaplain forwarded NAVY SEAL 1's request to the command. After review, NAVY SEAL 1's request for a religious exemption and accommodation was denied, and he was preemptively removed from his position as Platoon Chief. NAVY SEAL 1 faces potential court martial, dishonorable discharge, and other life-altering disciplinary measures for exercising and seeking accommodation of his sincerely held religious beliefs against COVID-19 vaccination.

99. 138.    On September 14, 2021, NAVY SEAL 2 submitted to the United States Navy a request for religious exemption from the Federal COVID-19 Vaccine Mandate as an accommodation of his sincerely held beliefs. NAVY SEAL 2's request for a religious exemption and accommodation detailed NAVY SEAL 2's religious beliefs and practices that compel him to abstain from receiving any of the currently available COVID-19 vaccines. NAVY SEAL 2's request for a religious accommodation was supported by a letter from a religious leader, which demonstrated

the sincerity of NAVY SEAL 2's personal beliefs. NAVY SEAL 2's commander noted that NAVY SEAL 2's religious beliefs were sincere and strongly held, but recommended that his request be disapproved. NAVY SEAL 2's request for an accommodation has been forwarded to the officers responsible for making the final determination, but he has been informed that his request will not be approved because of his direct commander's recommendation of denial. NAVY SEAL 2 faces potential court martial, dishonorable discharge, and other life-altering disciplinary measures for exercising and seeking accommodation of his sincerely held religious beliefs against COVID-19 vaccination.

139.   NAVY SENIOR CHIEF PETTY OFFICER has submitted a religious exemption request to the COVID-19 vaccine, on the basis of the leading of the Holy Spirit, and his Christian religious beliefs, including beliefs that the body is the temple of the Holy Spirit, and the COVID-19 vaccine's close connection to abortion. His request has not been granted, and he has been subject to coercion and public shaming for requesting an exemption for his religious beliefs. As of January 20, 2022, the Navy has had 58 days to act upon NAVY SENIOR CHIEF PETTY OFFICER's religious exemption request, but has not. Conversely, the Navy has approved a temporary medical waiver for him through Fall 2022, and has not removed him from leadership or other responsibilities as a result of being unvaccinated under a medical waiver.

140.   NAVY CHAPLAIN submitted a request for a religious exemption based upon his sincerely held religious beliefs that accepting any of the approved COVID vaccines would be an act of irreverence toward God and would be an attempt to alter

the embodied image of God within individuals, and therefore a sin contrary to historic Judeo-Christian tradition and his Christian faith. His request was given a negative recommendation from his commander, and he has not been approved for a religious exemption.

100.141.    On September 15, 2021, NAVY EOD OFFICER submitted to the United States Navy a request for religious exemption from the Federal COVID-19 Vaccine Mandate as an accommodation of his sincerely held beliefs. NAVY EOD OFFICER articulated to his command that he has and exercises sincerely held religious beliefs that compel him to abstain from receiving any of the currently available COVID-19 vaccines. NAVY EOD OFFICER's request for a religious exemption and accommodation has not been approved, and hewas denied. He timely appealed the denial on December 8, 2021. Upon denial of his appeal, NAVY EOD OFFICER faces potential court martial, dishonorable discharge, and other life-altering disciplinary measures for exercising and seeking accommodation of his sincerely held religious beliefs against COVID-19 vaccination.

142.    NAVY COMMANDER SURFACE WARFARE OFFICER submitted a request for a religious exemption and accommodation on September 13, 2021 and received his initial denial on October 26.

143.    On October 2, 2021, NAVY CHIEF WARRANT OFFICER submitted to his Naval command a request for religious exemption from the Federal COVID-19 Vaccine Mandate as an accommodation of his sincerely held beliefs. NAVY CHIEF WARRANT OFFICER's request for a religious accommodation and exemption

outlined his sincerely held religious objections to receiving any of the COVID-19 vaccines because of their connections to aborted fetal cell lines. NAVY CHIEF WARRANT OFFICER's request was supported by a Chaplain's and supervisor's recommendations. NAVY CHIEF WARRANT OFFICER's request has not been approved, and he has been informed that it is likely to be denied. Meanwhile, NAVY CHIEF WARRANT OFFICER's active duty orders expired, returning him to reserve status, and he was advised by his command that he cannot be given further active duty orders, though otherwise qualified, due to his pending religious accommodation request. Although NAVY CHIEF WARRANT OFFICER's federal contractor employer granted the religious exemption request he submitted to the employer, he is on an extended leave of absence from the employer due to his recent Naval active duty orders, leaving NAVY CHIEF WARRANT OFFICER with only his intermittent (one weekend per month) Navy Reserve employment. NAVY CHIEF WARRANT OFFICER faces potential court martial, dishonorable discharge, and other life-altering disciplinary measures for exercising and seeking accommodation of his sincerely held religious beliefs against COVID-19 vaccination.

101.144.    On September 16, 2021, USMC LIEUTENANT COLONEL 1, United States Marine Corps, submitted to the United States Marine Corps a request for religious exemption from the Federal COVID-19 Vaccine Mandate as an accommodation of his sincerely held beliefs. LIEUTENANT COLONEL 1 articulated to his command that he has and exercises sincerely held religious beliefs that compel him to abstain from receiving any of the currently available COVID-19

vaccines. LIEUTENANT COLONEL 1 met with his unit's Chaplain, who reviewed his request for a religious exemption and accommodation and found that LIEUTENANT COLONEL's request was made from a position of "absolute sincerity." On December 22, 2021, the Marine Corps denied LIEUTENANT COLONEL 1's request for a religious exemption and accommodation has not been approved, and he request by typical form letter. He timely appealed the denial on January 12, 2022. Prior to his timely appeal, however, on January 4, 2022, the Marine Corps removed LIEUTENANT COLONEL 1 him from his position as Executive Officer of his squadron. Upon denial of his appeal, LIEUTENANT COLONEL 1 faces potential court martial, dishonorable discharge, and other life-altering disciplinary measures for exercising and seeking merely requesting an accommodation of for his sincerely held religious beliefs against COVID 19 vaccination.

102.145.    USMC LIEUTENANT COLONEL 2, United States Marine Corps, submitted to the United States Marine Corps a request for religious exemption from the Federal COVID-19 Vaccine Mandate as an accommodation of her sincerely held beliefs. LIEUTENANT COLONEL 2 articulated to his her command that she has and exercises sincerely held religious beliefs that compel her to abstain from receiving any of the currently available COVID-19 vaccines. LIEUTENANT COLONEL 1's request for a 2's religious exemption and accommodation request has not been approved, and he faces denied, and she has timely appealed. Upon denial of her appeal, LIEUTENANT COLONEL 2 will face immediate consequences including potential court martial, dishonorable discharge, and other life-altering

disciplinary measures for exercising and seeking accommodation of his sincerely held religious beliefs against COVID-19 vaccination.

~~103.~~1. On September 16, 2021, ARMY RANGER submitted to the United States Army a request for religious exemption from the Federal COVID 19 Vaccine Mandate as an accommodation of his sincerely held beliefs. ARMY RANGER articulated to his command that he has and exercises sincerely held religious beliefs that compel him to abstain from receiving any of the currently available COVID 19 vaccines. ARMY RANGER met with his unit's Chaplain, who reviewed his request for a religious exemption and accommodation and who found that ARMY RANGER's request was sincere. ARMY RANGER also submitted a pastor's verification letter with his request. ARMY RANGER's request for a religious exemption and accommodation has not been approved, and he faces potential court martial, dishonorable discharge, and other life altering disciplinary measures for exercising and seeking accommodation of his sincerely held religious beliefs against COVID 19 vaccination.

146. USMC LIEUTENANT COLONEL 3, FINANCIAL MANAGEMENT OFFICER, has submitted a request for a religious exemption on August 23, 2021 to exempt him from the COVID shot directive. His request was denied on September 22. On October 1, he requested a ten (10) business day extension to file his appeal, and was permitted to submit his appeal to the Commandant of the Marine Corps on October 21. He received a final denial of his appeal from the

Assistant Commandant of the Marine Corps (ACMC) on December 14. He faces immediate discipline for the exercise of his religious beliefs.

147.   USMC RESERVE LIEUTENANT COLONEL submitted a request for religious exemption and received her initial denial of October 1, 2021. She timely submitted an appeal, and received a final appeal denial on December 10. The Marine Corps on December 23, 2021, offered RESERVE LIEUTENANT COLONEL the "choice" of "voluntarily" dropping to "Inactive Ready Reserve" status, or facing administrative separation. Now, she is not able to work for the Marine Corps, losing income and service years toward retirement, because she cannot take vaccine in direct contradiction to her sincerely held religious beliefs and was trying to avoid defying a direct order.

148.   USMC MAJOR submitted a religious exemption request, and the Marine Corps denied it on October 26, 2021. USMC MAJOR timely appealed the denial on November 10, 2021. Upon denial of his appeal, which could come at any time, the Marine Corps will begin the separation process.

149.   USMC CAPTAIN submitted a request for a religious exemption because of his Islamic religious beliefs that require him to abstain from participation in that which is *haram*—forbidden—including the destruction and commoditization of innocent human life as exemplified by the use of human fetal cell lines derived from abortions. CAPTAIN desires to exercise "complete reliance on God" rather than in what he believes to be morally-tainted COVID shots. The Marine Corps denied CAPTAIN's religious accommodation request on October 27, 2021, which denial he

timely appealed on November 11, 2021. Upon denial of his appeal, the Marine Corps will begin the separation process.

150.   USMC CAPTAIN 2 submitted a request for a religious exemption on September 15, 2021. When he received an initial denial on September 30, he timely appealed on October 7. The denial did not address his specific request. He found out later that other Marines had received the same exact rubber stamp denial letter in response to their RAs. To date, no RA within CAPTAIN 2's personal knowledge has been approved. He learned that the Religious Accommodation Review Board unanimously voted that he was sincere in his faith, but the Board still denied CAPTAIN 2's request. After he submitted his appeal, he received a final denial on December 7, and consequences will begin to flow. He is awaiting the order to get the COVID shots at any time, and if he does not comply within 10 calendar days, CAPTAIN 2 will be subjected to discipline and the process will begin to kick him out of the Marine Corps.

151.   USMC CAPTAIN 3 submitted a Religious Accommodation (RA) waiver request on September 10, 2021. The Deputy Commandant for Manpower and Reserve Affairs denied the RA on October 1, and his final appeal of his denial was issued on December 7. On December 13, 2021, Brigadier General Field, Commanding General of Education Command, ordered CAPTAIN 3 to take the vaccine within 10 days or face an administrative separation. CAPTAIN 3 had to sign an acknowledgement of the order. Because of his faith, CAPTAIN 3 was unable to get the vaccine, and the Marine Corps considers him in violation of the order. On January

14, 2022, the Marine Corps charged CAPTAIN 3 with an Article 92 UCMJ violation, starting the administrative process to separate CAPTAIN 3 from the Marine Corps, which is currently proceeding as fast as the Marine Corps can prosecute it.

152.   USMC FIRST LIEUTENANT received an initial denial of his Religious Accommodation (RA) request on September 30, 2021, and timely appealed on October 7. The denial did not address his specific request, and he found out later that other Marine had received the same exact rubber stamp denial letter in response to their RAs. To this date, no RA within his personal knowledge has been approved in the USMC. He has since found out that the Religious Accommodation Review Board unanimously voted that he was sincere in his faith, but the Board still denied his request for accommodation. FIRST LIEUTENANT received a final denial of his RA request on December 27, 2021, and consequences have already occurred. He received the order to get the COVID shots on December 28, stating that if he did not comply within 2 calendar days, he would be subjected to discipline, and the process will begin to kick him out of the Marine Corps. On December 30, 2021 FIRST LIEUTENANT was required to sign a Form 3005 written counseling, stating he was in violation of Article 92—failure to obey a lawful order—by not receiving the COVID shot. There was no mention of his RA request or appeal on this form, which will go into his personnel file. He received a Form 3005 on January 5, 2022, relieving him of his duties for cause. He attended a "Transition Readiness Seminar" on January 10, 2022 and is working on his final physical paperwork to fulfill the requirements for out-processing under an administrative separation.

153.   USMC SECOND LIEUTENANT submitted a request for a religious exemption from the COVID shot mandate, on multiple grounds, including his sincerely-held religious belief "that, first and foremost, a Christian's body is the Temple of the Holy Spirit and should be protected from deliberate or reckless injury or violation," and second, that "deceit pursuant to personnel compliance and/or financial gain, is morally objectionable before God." Upon submitting his religious exemption request, he was immediately removed from his training company, and placed in Mike Company, a non-training company reserved for 2nd Lieutenants who are either injured and unable to complete training, or are pending punitive legal action, while his religious accommodation request is routed up his Chain of Command for a final decision from the Deputy Commandant of the Marine Corps. SECOND LIEUTENANT should have been kept in his training company while his request was pending, as he has not violated any DoD or Marine Corps orders in doing so, and is administratively exempt from all pertinent orders for the duration of time awaiting a final decision. As of January 20, 2022, SECOND LIEUTENANT remains out of the training cycle because of his fidelity to his religious beliefs, despite the outstanding personal and professional reviews from his command, and has continued, daily full contact responsibilities in the support program for the same training cycle from which he was removed.

154.   USMC CHIEF WARRANT OFFICER 3 submitted his request for a religious exemption on August 17, 2021, which was denied on September 22. He timely appealed on October 2, 2021, and his appeal received its final denial on

November 24. CHIEF WARRANT OFFICER 3 has been given a January 7, 2022 deadline for being fully vaccinated, despite his religious beliefs. Now, nothing stands between him and immediate punitive consequences, except the Court's intervention.

104.155.     On September 9, 2016, USMC LANCE CORPORAL 1 submitted to the United States Marine Corps a request for religious exemption from the Federal COVID-19 Vaccine Mandate as an accommodation of his sincerely held beliefs. LANCE CORPORAL articulated to his command that he has and exercises sincerely held religious beliefs that compel him to abstain from receiving any of the currently available COVID-19 vaccines. LANCE CORPORAL's The Marine Corps denied the request for a religious exemption on November 9, 2021, and accommodation has not been approved, and he LANCE CORPORAL 1 timely appealed the denial. Upon denial of his appeal, LANCE CORPORAL 1 faces potential court martial, dishonorable discharge, and other life-altering disciplinary measures for exercising and seeking merely requesting an accommodation of his sincerely held religious beliefs against COVID 19 vaccination.

156.   USMC LANCE CORPORAL 2's request for a religious exemption was denied on December 7, 2021, and he appealed the denial on December 18. On or about December 21, LANCE CORPORAL 2 received a phone call from a mental health counselor. The counselor called him to check on his mental health in the wake of the suicide of LANCE CORPORAL 2's platoon mate, because the platoon mate was "being Administratively Separated for refusing the COVID vaccine." LANCE

CORPORAL 2 expects his appeal and his RA to be denied and remains resolute in his trust in God, but is deeply grieved over the suicide of his friend.

157.   AIR FORCE MAJOR submitted a request for a religious exemption based upon his beliefs that abstinence from the use of vaccines derived from aborted fetal cell lines is not merely a symbolic protest, but a practical abstention against the unbiblical demand and financial incentives for future abortions. Per Proverbs 6:16-17, the "Lord['s hate for]… hands that shed innocent blood" is a central part of his doctrinally-common Christian convictions. His religious exemption has not been approved.

158.   AIR FORCE CHAPLAIN submitted a request for religious accommodation on September 17, 2021 outlining his religious objections to mandatory COVID-19 vaccination. After his RAR was denied, CHAPLAIN timely submitted an 18-page appeal on November 16, expounding further on his religious convictions, which flow out of a Christian worldview developed over forty years. Since 1980 he has been in church virtually weekly. He completed 21 years of Christian education at the elementary, secondary, collegiate, masters and doctoral levels and has been in professional religious work for the past 23 years, including 14 years as a USAF chaplain. CHAPLAIN received notice of the final denial of his RAR on December 3, 2021 and was ordered to provide proof of receiving a COVID shot by December 13. He now faces immediate consequences and discipline for refusing to accept or receive a vaccine that violates his sincerely held religious beliefs.

159.   AIR FORCE RESERVE LIEUTENANT COLONEL 1 submitted a request for religious exemption on October 3, 2021 and received the initial denial of her request on October 27. She timely submitted an appeal, and received a final denial on December 7, 2021, which ordered her to (a) take the vaccine, (b) submit retirement request if eligible or (c) refuse vaccine in writing within 3 days of receiving the denial. The denial memo went on to say that refusal of the vaccine would result in termination by removal from Ready Reserve service. On January 6, 2022, RESERVE LIEUTENANT COLONEL 1 received a Letter of Reprimand and notice that her commanding general has initiated the process to involuntarily transfer her to the Inactive Ready Reserve, depriving the taxpayers of her service to her Country, and depriving her of a living. RESERVE LIEUTENANT COLONEL 1 now faces immediate and irreparable consequences of having to choose between accepting the vaccine in violation of her religious beliefs or violating a direct order and being separated.

160.   AIR FORCE RESERVE LIEUTENANT COLONEL 2 submitted his Religious Accommodation Request (RAR) on October 7, 2021. (E-mails from a higher-level Air Force Reserve General demanded that all RARs be turned in by October 15, 2021—13 days prior to the October 28 deadline in the written order to receive the vaccine). RESERVE LIEUTENANT COLONEL 2's General non-recommended the RAR, falsely stating he had received RESERVE LIEUTENANT COLONEL 2's "division chief's counseling and endorsement" to non-recommend the RAR. After receiving the initial denial of his RAR on October 28, 2021, RESERVE

LIEUTENANT COLONEL 2 timely appealed the denial, noting the many inconsistencies and false statements in his commander's non-recommendation of the initial RAR and in the denial. RESERVE LIEUTENANT COLONEL 2 received a final denial on December 9, 2021, which ordered him to provide proof of receiving the first COVID shot by December 14. RESERVE LIEUTENANT COLONEL 2's faith prohibited him from getting a COVID shot. He is expecting at any time a Letter of Reprimand and notice of his commander's intent to transfer him to the Inactive Ready Reserve for violating a direct order. If RESERVE LIEUTENANT COLONEL 2 is administratively separated, he will lose not only his military position, but will also lose his civilian technician job because it is dependent upon him retaining military employment. As of January 20, 2022, there are a number of "fully-vaccinated" coworkers who are out sick with COVID-19 or teleworking. RESERVE LIEUTENANT COLONEL 2 is one of few workers continuing in-person work at this time, despite being unvaccinated, and he remains healthy in part due to his naturally-acquired COVID immunity.

161. AIR FORCE MSgt SERE SPECIALIST submitted a Religious Accommodation (RA) request which was processed by the Air Force. He received a final denial of his RA on December 27, 2021 and was notified that his options were to comply or "voluntarily separate." As of January 3, 2022, MSgt SERE SPECIALIST is subject to discipline and the process has begun to kick him out of the Air Force. He has consulted with the Area Defense Council (ADC), and was informed that as a Senior NCO, the Air Force would make an example of him. It was explained that he

will face demotion, court martial with possible felony conviction, and involuntary separation. On January 7, 2022, the Air Force removed MSgt SERE SPECIALIST from his leadership position, and he has begun reporting to an empty office to await his separation while the Administrative Separation process continues.

162.   AIR FORCE TECHNICAL SERGEANT submitted a request for a religious accommodation and exemption from the United States Air Force articulating her sincerely held religious objections to receiving one of the COVID-19 vaccines, and the Air Force has denied the request. TECHNICAL SERGEANT was under a temporary medical exemption due to being pregnant, which expired as of January 15, 2022. TECHNICAL SERGEANT has been informed that when she returns from maternity leave she will face court martial, dishonorable discharge, and other disciplinary measures if she does not accept the COVID-19 vaccine.

163.   AIR FORCE CADET submitted a religious accommodation request (RAR) for exemption from the vaccine mandate because receiving any of the available COVID-19 vaccines would violate CADET's sincerely held religious beliefs. The USAFA Commander formally denied CADET'S RAR by Memorandum dated December 22, 2021. As a result of the denial, AIR FORCE CADET faces imminent dismissal from the USAF Academy.

164.   On September 28, 2021, ARMY COLONEL submitted to the United States Army a request for religious exemption from the Federal COVID-19 Vaccine Mandate as an accommodation of his sincerely held beliefs. COLONEL articulated to his command that he has and exercises sincerely held religious beliefs that compel him

to abstain from receiving any of the currently available COVID-19 vaccines. COLONEL met with his unit's Chaplain, who reviewed his request for a religious exemption and accommodation and found that COLONEL's request was sincere. COLONEL's request for a religious exemption and accommodation has not been approved, and he faces potential court martial, dishonorable discharge, and other life-altering disciplinary measures for exercising and seeking accommodation of his sincerely held religious beliefs against COVID-19 vaccination.

165.   On September 16, 2021, ARMY RANGER submitted to the United States Army a request for religious exemption from the Federal COVID-19 Vaccine Mandate as an accommodation of his sincerely held beliefs. ARMY RANGER articulated to his command that he has and exercises sincerely held religious beliefs that compel him to abstain from receiving any of the currently available COVID-19 vaccines. ARMY RANGER met with his unit's Chaplain, who reviewed his request for a religious exemption and accommodation and who found that ARMY RANGER's request was sincere. ARMY RANGER also submitted a pastor's verification letter with his request. ARMY RANGER's request for a religious exemption and accommodation has not been approved, and he faces potential court martial, dishonorable discharge, and other life-altering disciplinary measures for exercising and seeking accommodation of his sincerely held religious beliefs against COVID-19 vaccination.

105.166.   On October 4, 2021, NATIONAL GUARDSMAN submitted to the Virginia Army National Guard a request for religious exemption from the Federal

COVID-19 Vaccine Mandate as an accommodation of his sincerely held beliefs. NATIONAL GUARDSMAN articulated to his command that he has and exercises sincerely held religious beliefs that compel him to abstain from receiving any of the currently available COVID-19 vaccines. NATIONAL GUARDSMAN's request for a religious exemption and accommodation has not been approved, and he has already been removed from his scheduled deployment because of his request. NATIONAL GUARDSMAN additionally faces potential court martial, dishonorable discharge, and other life-altering disciplinary measures for exercising and seeking accommodation of his sincerely held religious beliefs against COVID-19 vaccination. NATIONAL GUARDSMAN has also been removed from his scheduled deployment because of his request for an accommodation and exemption.

167.   On September 27, 2021, COAST GUARD PILOT submitted a religious accommodation request (RAR) on the grounds that there are fetal cell lines used in the production and/or testing of all the currently available vaccines which is contrary to his understanding of the sanctity of human life, and that the status of his body as a temple of the Holy Spirit makes it a sin to accept medicines or treatments with unknown long term effects and numerous adverse events documented in only the first 12 months of use. After submitting his RAR, Pilot experienced retaliation and discrimination from his command in the form of restriction to a 50 mile radius from his home and duty station because he had merely submitted an RAR.

168. COAST GUARD LCDR PILOT submitted a Religious Accommodation Request (RAR) on September 24, 2021, based on his Roman Catholic Christian faith and absolute opposition to abortion, under which he cannot accept a vaccine that has been manufactured, or whose efficacy has been tested and proved, using aborted fetal cells. COAST GUARD LCDR PILOT'S RAR has not been granted.

106.169. COAST GUARD LIEUTENANT, United States Coast Guard submitted a request for a religious accommodation and exemption from the United States Coast Guard outlining her sincerely held religious objections to receiving one of the COVID-19 vaccines, which has not been granted. Although she is currently under a temporary medical exemption while breastfeeding her child born earlier this year and undergoing testing for allergies to vaccine components, LIEUTENANT has been informed that should these waivers be denied, she will may face dishonorable discharge, loss of benefits, and other disciplinary measures if she does not accept the COVID-19 vaccine. LIEUTENANT has also been informed that even if the medical waivers are approved, she may be determined medically unfit for service and discharged.

170. On September 28, 2021, MANAGEMENT AND PROGRAM ANALYST has requested a religious accommodation based on his sincerely held religious objection to receiving any vaccine using aborted fetal cells in their development or testing, and to the loss of his free will to preserve his body as the temple

109

of the Holy Spirit as best as he can. MANAGEMENT AND PROGRAM ANALYST's request for accommodation has not been granted.

171. FEDERAL BUREAU OF PRISONS EMPLOYEE 1 submitted a request for a religious exemption and accommodation in early October 2021, before the deadline set by the Bureau of Prisons, because his sincerely held religious beliefs compel him to abstain from accepting or receiving any COVID-19 vaccine that is connected with aborted fetal cells. FEDERAL BUREAU OF PRISONS EMPLOYEE 1 has not received any decision on his request despite the passing of his November 22, 2021 deadline to vaccinate.

172. STATE DEPARTMENT EMPLOYEE 1 has sincerely held religious beliefs that compel him to abstain from accepting or receiving one of the COVID-19 vaccines because he believes it would be violating the stewardship he has over his body and violating the Lord's instructions, but he has been informed that there will be adverse disciplinary actions and career repercussions should he refuse vaccination. He has requested a religious exemption and accommodation but has received no response to his request other than a Letter of Counseling threatening consequences of his failure to provide proof of full vaccination for COVID-19.

107.1. COLONEL submitted to the United States Army a request for religious exemption from the Federal COVID-19 Vaccine Mandate as an accommodation of his sincerely held beliefs. COLONEL articulated to his command that he has and exercises sincerely held religious beliefs that compel him to abstain from receiving any of the currently available COVID-19 vaccines. COLONEL met with his unit's

Chaplain, who reviewed his request for a religious exemption and accommodation and found that COLONEL's request was sincere. COLONEL's request for a religious exemption and accommodation has not been approved, and he faces potential court martial, dishonorable discharge, and other life-altering disciplinary measures for exercising and seeking accommodation of his sincerely held religious beliefs against COVID-19 vaccination.

108.    TECHNICAL SERGEANT submitted to the United States Air Force a request for religious exemption from the Federal COVID-19 Vaccine Mandate as an accommodation of her sincerely held beliefs. TECHNICAL SERGEANT articulated to her command that she has and exercises sincerely held religious beliefs that compel her to abstain from receiving any of the currently available COVID-19 vaccines. TECHNICAL SERGEANT also requested and was granted a temporary medical exemption because she is seven months pregnant, which will expire at the end of her pregnancy. TECHNICAL SERGEANT's request for a religious exemption and accommodation has not been approved, and she faces potential court martial, dishonorable discharge, and other life-altering disciplinary measures for exercising and seeking accommodation of her sincerely held religious beliefs against COVID-19 vaccination.

109.    On October 2, 2021, DEFENSE DEPARTMENT CONTRACTOR submitted to the United States Department of Defense a request for religious exemption from the Federal COVID-19 Vaccine Mandate as an accommodation of his sincerely held beliefs. DEFENSE DEPARTMENT CONTRACTOR's request for

a religious accommodation and exemption outlined his sincerely held religious objections to receiving any of the COVID-19 vaccines because of their connections to aborted fetal cell lines. DEFENSE DEPARTMENT CONTRACTOR's request was supported by a Chaplain's and supervisor's recommendations. DEFENSE DEPARTMENT CONTRACTOR's request has not been approved, and he has been informed that it is likely to be denied. DEFENSE DEPARTMENT CONTRACTOR faces potential court-martial, dishonorable discharge, and other life-altering disciplinary measures for exercising and seeking accommodation of his sincerely held religious beliefs against COVID-19 vaccination.

110.  FEDERAL CIVILIAN ENGINEER CONTRACTOR would like to submit a request for religious exemption from the Federal COVID-19 Vaccine Mandate as an accommodation of his sincerely held beliefs, but has been deprived of guidance on how and to whom to submit such a request. FEDERAL CIVILIAN ENGINEER CONTRACTOR has also been informed that there is little chance such requests will be approved. FEDERAL CIVILIAN ENGINEER CONTRACTOR faces termination for exercising and seeking accommodation of his sincerely held religious beliefs against COVID-19 vaccination.

111.173.  FEDERAL CIVILIAN CONTRACTOR EMPLOYER would like to submit a request for religious exemption from the Federal COVID-19 Vaccine Mandate as an accommodation of his sincerely held beliefs, and to be able to provide religious exemptions and accommodations to his employees who have sincerely held religious objections to the COVID-19 vaccines, but has been deprived of guidance on

how and to whom to submit such a request. Given the Mandate's requirement that all employees of federal government contractors and subcontractors receive a COVID-19 vaccine, FEDERAL CIVILIAN CONTRACTOR EMPLOYER faces termination of his current government contracts and disqualification from future contracts as a result of his exercising and seeking accommodation of his and his employees' sincerely held religious beliefs against COVID-19 vaccination.

112.   FEDERAL NUCLEAR CONTRACTOR EMPLOYEE is not married yet, but hopes to be one day, and in that relationship to have a child or children as God blesses her. She believes that "children are an heritage of the Lord," and that bearing a child or children in the context of marriage fulfils a Divine mandate. FEDERAL NUCLEAR CONTRACTOR EMPLOYEE is aware that no long term studies have been performed on any of the COVID shots regarding their impact on female fertility, and given her religious beliefs about marriage and childbearing, cannot receive any of the COVID shots. FEDERAL NUCLEAR CONTRACTOR EMPLOYEE fears being placed in the position of having to choose between her job and her faith.

113.   DEPARTMENT OF ENERGY CIVILIAN NUCLEAR TECH requested a religious exemption and accommodation from Defendants' COVID-19 vaccine mandate on federal civilian contractors, and his request was denied. DEPARTMENT OF ENERGY CIVILIAN NUCLEAR TECH was given until October 15 to accept one of the vaccine or face termination.

114.174.    While many Plaintiffs' and class members' religious exemption requests have already been denied, the still pending requests have been effectively denied, as Plaintiffs and class members with pending requests have been threatened with dishonorable discharge, court martial, termination, or other life-altering disciplinary measures for merely seeking accommodation of their sincerely held religious beliefs, and some of these Plaintiffs have been informed by their superiors that **no religious exemption or accommodation will be given so there is no point in even making a request**.

115.175.    For example, on October 14, 2021, Vice Admiral William Galinis, Commander, Naval Sea Systems Command (NAVSEA), sent a warning to his entire command, comprising more than 85,000 civilian and military personnel: "The Executive Order mandating vaccinations for all federal employees has provided clear direction. We are moving quickly toward a workforce where vaccinations are a condition of employment. Frankly, if you are not vaccinated, you will not work for the U.S. Navy."

   E.    **THE ONLY COVID-19 VACCINES AVAILABLE IN THE UNITED STATES ARE ADMINISTERED UNDER EMERGENCY USE AUTHORIZATION BECAUSE THERE IS NO FDA APPROVED COVID-19 VACCINE CURRENTLY AVAILABLE IN THE UNITED STATES.**

116.176.    Despite the misreporting, there is no COVID-19 vaccine available in the United States that has received full FDA licensing and approval.

117.177.    On August 23, 2021, the United States Food and Drug Administration issued two separate letters pertaining to two separate COVID-19 vaccines. *See* Letter, United States Food and Drug Administration to BioNTech Manufacturing          GmbH          (Aug.          23,          2021), https://www.fda.gov/media/151710/download ("BioNTech Letter"); Letter, United States Food and Drug Administration to Pfizer, Inc. (Aug. 23, 2021), https://www.fda.gov/media/150386/download ("Pfizer Letter"). (A true and correct copy of the BioNTech Letter is attached hereto as **EXHIBIT E** and incorporated herein. A true and correct copy of the Pfizer Letter is attached hereto as **EXHIBIT F** and incorporated herein.)

118.178.    In the Pfizer Letter, the FDA confirms that, on December 11, 2020, it granted Emergency Use Authorization (EUA) for the Pfizer-BioNTech COVID-19 Vaccine. (Pfizer Letter at 1.) It also notes that the EUA was continued on December 23, 2020, February 25, 2020, May 10, 2021, June 25, 2021, and August 12, 2021. (Pfizer Letter at 1-2.)

119.179.    The Pfizer Letter also makes clear that there are scientific, manufacturing, and **legal** differences between the Pfizer-BioNTech COVID-19 Vaccine and the newly approved BioNTech COMIRNATY, COVID-19 Vaccine, mRNA. (Pfizer Letter at 2 n.9, 3 n.10.)

120.180.    Specifically, the FDA stated that although COMIRNATY was granted full approval by the FDA, the Pfizer-BioNTech COVID-19 Vaccine was still only authorized under the EUA. (Pfizer Letter at 2 n.9 ("In the August 23, 2021

revision, FDA clarified that, subsequent to the FDA approval of COMIRNATY (COVID-19 Vaccine, mRNA) for the prevention of COVID-19 for individuals 16 years of age and older, **this EUA would remain in place for the Pfizer-BioNTech COVID-19 vaccine for the previously-authorized indication and uses**. It also authorized COMIRNATY (COVID-19 Vaccine, mRNA) under this EUA for certain uses that are not included in the approved biologics license application (BLA)." (emphasis added).

~~121.~~181.     All existing vials of the Pfizer-BioNTech COVID-19 Vaccine remain available only under the authorization of the EUA. (Pfizer Letter at 2 n.9.)

~~122.~~182.     On information and belief, the existing vials of Pfizer-BioNTech COVID-19 Vaccine in the United States number in the millions, and that all of these EUA vaccine doses will be administered **before any does of the fully approved COMIRNATY**, meaning the fully approved COMIRNATY will not be available for administration in the United States in the near future.

~~123.~~183.     There are currently no available doses of COMIRNATY in the United States, and **COMIRNATY is not being manufactured for production or distribution in the United States at this time**.

~~124.~~184.     **In fact, the FDA Pfizer Letter plainly states that COMIRNATY is not available in the United States: "Although COMIRNATY (COVID-19 Vaccine, mRNA) is approved to prevent COVID-19 in individuals 16 years of age**

**and older, there is no sufficient approved vaccine for distribution to the population**." (Pfizer Letter at 6 n.12 (emphasis added).)

~~125.~~185.    Thus, the FDA has admitted and acknowledged that COMIRNATY is not available for the population in the United States, and thus extended the EUA for the Pfizer-BioNTech Covid-19 Vaccine. (*Id.*)

~~126.~~186.    Indeed, in order for the FDA to have extended the EUA for the Pfizer-BioNTech Covid-19 Vaccine, **it was required to find that there were no alternatives available for the Pfizer-BioNTech Vaccine**. (*See* Pfizer Letter at 6 ("There is no adequate, approved, and **available alternative** to the Pfizer-BioNTech COVID-19 Vaccine to prevent COVID-19." (emphasis added).)

~~127.~~187.    Moreover, though Secretary Austin stated that the Federal COVID-19 Vaccine Mandate "will only use COVID-19 vaccines that receive full licensure from the Food and Drug Administration (FDA), in accordance with FDA-approved labeling and guidance," (Ex. D at 1), additional military documents reveal that the Department of Defense is not following its own directive and is, instead, using EUA vaccines because there is no FDA approved vaccine available. In a Memorandum for Assistant Secretary of the Army (Manpower and Reserve Affairs), Assistant Secretary of the Navy (Manpower and Reserve Affairs), Assistant Secretary of the Air Force (Manpower and Reserve Affairs), and the Director of the Defense Health Agency, Terry Adirim, Acting Assistant Secretary of Defense for Health Affairs, admitted that the Department of Defense was not administering a fully

licensed and approved vaccine to the heroes in the United States Armed Forces, but was instead skirting federal law by mandating an EUA vaccine instead. (A true and correct copy of Acting Assistant Secretary Adirim's Memorandum is attached hereto as **EXHIBIT G** and incorporated herein.)

128.188.    Specifically, the Memorandum stated that Department of Defense health care providers "**should use doses distributed under the EUA to administer the vaccination series as if the doses were the licensed vaccine**." (Ex. G at 1 (emphasis added).)

129.189.    Thus, the only currently available COVID-19 vaccines are authorized under EUA only, and therefore cannot be mandated by Secretary Austin. (*See infra* Count I.)

130.190.    The Federal Food, Drug, And Cosmetic Act provides that

**subject to the provisions of this section**, the Secretary (of the Department of Health and Human Services) may authorize the introduction into interstate commerce, during the effective period of a declaration under subsection (b), of a drug, device, or biological product intended for use in an actual or potential emergency (referred to in this section as an "emergency use."

21 U.S.C. § 360bbb-3(a)(1) (emphasis added) [hereinafter EUA Statute].

131.191.    As an essential part of the explicit statutory conditions for EUA, **the EUA Statute mandates that all individuals to whom the EUA product may be administered be given the option to accept or refuse administration of the product**:

With respect to the emergency use of an unapproved product, the Secretary, to the extent practicable given the applicable circumstances described in subsection (b)(1), shall, for a person who carries out any

activity for which the authorization is issued, establish such conditions on an authorization under this section as the Secretary finds necessary or appropriate to protect the public health, including the following:

. . . .

(ii) Appropriate conditions designed to ensure that individuals to whom the product is administered are informed—

(I)  that the Secretary has authorized the emergency use of the product;

(II) of the significant known and potential benefits and risks of such use, and of the extent to which such benefits and risks are unknown; and

(III) **of the option to accept or refuse administration of the product**, of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks.

21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(I)–(III) (emphasis added).

~~132.~~192.    The statutorily required Fact Sheets for each of the EUA COVID-19 vaccines acknowledge that individuals cannot be compelled to accept or receive the vaccine. *See, e.g.*, Pfizer-BioNTech, *Fact Sheet for Recipients and Caregivers* (June 25, 2021), https://www.fda.gov/media/144414/download ("**It is your choice to receive or not to receive the Pfizer-BioNTech COVID-19 Vaccine. Should you decide not to receive it, it will not change your standard medical care**." (emphasis added)).

~~133.~~193.    Because all COVID-19 vaccines available in the United States are subject to the EUA Statute restrictions and limitations, all individuals—**including military servicemembers, federal employees, and federal civilian contractors**—have

119

the explicit right under the EUA Statute to accept or refuse administration of the products.

### F.   IRREPARABLE HARM TO PLAINTIFFS.

~~134.~~194.   Because of Defendants' refusal to grant Plaintiffs merited religious exemptions from the Federal COVID-19 Vaccine Mandate, Plaintiff servicemembers face the unconscionable choice of violating their sincerely held religious beliefs or facing court martial and dishonorable discharge from their faithful service to the Nation or, in the case of Plaintiff civilian employees and contractors, termination from their employment and contracts.

~~135.~~195.   As a result of the Federal COVID-19 Vaccine Mandate, Plaintiffs have suffered and are suffering irreparable injury by being prohibited from engaging in their constitutionally and statutorily protected rights to the free exercise of their sincerely held religious beliefs.

~~136.~~196.   As a result of the Federal COVID-19 Vaccine Mandate, Plaintiffs have suffered and are suffering irreparable injury by being forced to choose between maintaining the ability to feed their families and the free exercise of their sincerely held religious beliefs.

~~137.~~197.   As a result of the Federal COVID-19 Vaccine Mandate, Plaintiffs have suffered and are suffering irreparable injury by being stripped of their rights to equal protection of the law and being subjected to disfavored class status in the United States Armed Forces, federal employment, and federal contracting.

~~138.~~198.     Military servicemember Plaintiffs also face the prospect of irreparable medical injury as a result of the Federal COVID-19 Vaccine Mandate. A recent study conducted by the Department of Defense found "**higher than expected rates of heart inflammation following receipt of COVID-19 vaccines**" among military servicemembers. *See* Patricia Kime, *DoD Confirms: Rare Heart Inflammation Cases Linked to COVID-19 Vaccines*, Military.com (June 30, 2021), https://www.military.com/daily-news/2021/06/30/dod-confirms-rare-heart-inflammation-cases-linked-covid-19-vaccines.html (emphasis added).

> In fact, on or about June 29, 2021, Defendants knew that the mRNA vaccines would causing myocarditis/pericarditis (a potentially serious and deadly heart inflammation) in certain members of the military, particularly in males 30 and under. In a study conducted by United States Army, Navy, and Air Force physicians specifically found: A total of 23 male patients (22 currently serving in the military and 1 retiree; median [range] age, 25 [20-51] years) **presented with acute onset of marked chest pain within 4 days after receipt of an mRNA COVID-19 vaccine. All military members were previously healthy with a high level of fitness**. Seven received the BNT162b2-mRNA vaccine and 16 received the mRNA-1273 vaccine. A total of 20 patients had symptom onset following the second dose of an appropriately spaced 2-dose series. All patients had significantly elevated cardiac troponin levels. Among 8 patients who underwent cardiac magnetic resonance imaging within the acute phase of illness, all had findings consistent with the clinical diagnosis of myocarditis. . . . **While the observed number of myocarditis cases was small, the number was higher than expected among male military members after a second vaccine dose**.

Jay Montgomery, et al., *Myocarditis Following Immunization With mRNA COVID-19 Vaccines in Members of the US Military*, Journal of American Medical Association Network (June 29, 2021), *available at*

https://jamanetwork.com/journals/jamacardiology/fullarticle/2781601    (emphasis added).

139.199.    Dr. Matthew Oster, a member of the President's COVID-19 Task Force, confirmed the link between the COVID-19 vaccines and myocarditis, stating: "It does appear that mRNA vaccines may be a new trigger for myocarditis yet it does have some different characteristics." Jackie Salo, *COVID-19 mRNA vaccines likely linked to rare heart condition in kids: CDC panel*, (June 23, 2021), https://nypost.com/2021/06/23/covid-19-vaccines-from-pfizer-moderna-likely-linked-to-rare-heart-condition-cdc-panel/.

140.200.    Indeed, it is now well confirmed by the CDC and other studies that males 30 and under have an unacceptable risk of developing myocarditis as a result of the COVID-19 vaccines. *See* **EXHIBIT H,** Declaration of Dr. Peter McCullough.

141.201.    The COVID-19 genetic vaccines (Pfizer, Moderna, J&J) skipped testing for genotoxicity, mutagenicity, teratogenicity, and oncogenicity. In other words, it is unknown whether or not these products will change human genetic material, cause birth defects, reduce fertility, or cause cancer. (Ex. H, McCullough Decl. ¶ 16.)

142.202.    The Pfizer, Moderna, and JNJ vaccines are considered "genetic vaccines", or vaccines produced from gene therapy molecular platforms which according to US FDA regulatory guidance are classified as gene delivery therapies and

should be under a 15-year regulatory cycle with annual visits for safety evaluation by the research sponsors. FDA. Food and Drug Administration. (*Id.* ¶ 17.)

143.203.    The FDA has "advised sponsors to observe subjects for delayed adverse events for as long as 15 years following exposure to the investigational gene therapy product, specifying that the long-term follow-up observation should include a minimum of five years of annual examinations, followed by ten years of annual queries of study subjects, either in person or by questionnaire." (emphasis added) Thus, the administration of the Moderna, Pfizer, and JNJ vaccines should not be undertaken without the proper consent and arrangements for long-term follow-up which are currently not offered in the US. (See, EUA briefing documents for commitments as to follow up: Moderna , Pfizer , J&J ). They have a dangerous mechanism of action in that they all cause the body to make an uncontrolled quantity of the pathogenic wild-type spike protein from the SARS-CoV-2 virus for at least two weeks probably a longer period based on the late emergence of vaccine injury reports. This is unlike all other vaccines where there is a set amount of antigen or live-attenuated virus. This means for Pfizer, Moderna, and J&J vaccines it is not predictable among patients who will produce more or less of the spike protein. The Pfizer, Moderna, and JNJ vaccines because they are different, are expected to produce different libraries of limited antibodies to the now extinct wild-type spike protein. We know the spike protein produced by the vaccines is obsolete because the 17th UK Technical Report on SARS-CoV-2 Variants issued June 25, 2021, and the CDC June 19, 2021, Variant Report

both indicate the SARS-CoV-2 wild type virus to which all the vaccines were developed is now extinct. (*Id.* ¶ 18.)

144.204.   The spike protein itself has been demonstrated to injure vital organs such as the brain, heart, lungs, as well as damage blood vessels and directly cause blood clots. Additionally, because these vaccines infect cells within these organs, the generation of spike protein within heart and brain cells, in particular, causes the body's own immune system to attach to these organs. This is abundantly apparent with the burgeoning number of cases of myocarditis or heart inflammation among individuals below age 30 years. (*Id.*)

145.205.   Because the US FDA and CDC have offered no interpretation of overall safety of the COVID-19 vaccines according to the manufacturer or as a group, nor have they offered methods of risk mitigation for these serious adverse effects which can lead to permanent disability or death, no one should be pressured, coerced, receive the threat or reprisal, or be mandated to receive one of these investigational products against their will. Because the vaccine centers, CDC, FDA, and the vaccine manufacturers ask for the vaccine recipient to grant indemnification on the consent form before injection, all injuries incurred by the person are at their own cost which can be prohibitive depending on the needed procedures, hospitalizations, rehabilitation, and medications. (*Id.*)

146.206.   The COVID-19 public vaccination program operated by the CDC and the FDA is a clinical investigation and under no circumstance can any person receive pressure, coercion, or threat of reprisal on their free choice of participation.

Violation of this principle of autonomy by any entity constitutes reckless endangerment with a reasonable expectation of causing personal injury resulting in damages. (*Id.* ¶ 21.)

147.207.    The total safety reports in VAERS for all vaccines per year up to 2019 was 16,320. The total safety reports in VAERS for COVID-19 Vaccines alone through October 1, 2021, is 778,683. Based on VAERS as of October 1, 2021, there were 16,310 COVID-19 vaccine deaths reported and 75,605 hospitalizations reported for the COVID-19 vaccines (Pfizer, Moderna, JNJ). By comparison, from 1999, until December 31, 2019, VAERS received 3167 death reports (158 per year) adult death reports for all vaccines combined. Thus, the COVID-19 mass vaccination is associated with at least a 39-fold increase in annualized vaccine deaths reported to VAERS. (*Id.* ¶ 28.)

148.208.    COVID-19 vaccine adverse events account for 98% of all vaccine-related AEs from December 2020 through the present in VAERS. (*Id.* ¶ 29.)

149.209.    The COVID-19 vaccines are not safe for general use and cannot be deployed indiscriminately or supported, recommended, or mandated among any group. (*Id.* ¶ 30.)

150.210.    There are emerging trends showing that the vaccine is especially risky for those 12- 29 in my expert medical opinion with complications in the cardiovascular, neurological, hematologic, and immune systems. (See, Rose J, et al). Increasingly the medical community is acknowledging the possible risks and side effects including myocarditis, Bell's Palsy, Pulmonary Embolus, Pulmonary

125

Immunopathology, and severe allergic reaction causing anaphylactic shock. See Chien-Te Tseng, Elena Sbrana, Naoko Iwata- Yoshikawa, Patrick C Newman, Tania Garron, Robert L Atmar, Clarence J Peters, Robert B Couch, Immunization with SARS coronavirus vaccines leads to pulmonary immunopathology on challenge with the SARS virus, https://pubmed.ncbi.nlm.nih.gov/22536382/ (last visited June 21, 2021); Centers for Disease Control and Prevention, Allergic Reactions Including Anaphylaxis After Receipt of the First Dose of Pfizer-BioNTech COVID-19 Vaccine—United States, December 14– 23, 2020 (Jan 15, 2021). (*Id.* ¶ 31.)

151.211.　　The Centers for Disease Control has held emergency meetings on this issue and the medical community is responding to the crisis. It is known that myocarditis causes injury to heart muscle cells and may result in permanent heart damage resulting in heart failure, arrhythmias, and cardiac death. These conditions could call for a lifetime need for multiple medications, implantable cardio defibrillators, and heart transplantation. Heart failure has a five-year 50% survival and would markedly reduce the lifespan of a child or young adult who develops this complication after vaccine-induced myocarditis. (*Id.* ¶ 32.)

152.212.　　COVID-19 vaccine-induced myocarditis has a predilection for young males below age 30 years. The Centers for Disease Control has held emergency meetings on this issue and the medical community is responding to the crisis and the US FDA has issued a warning on the Pfizer and Moderna vaccines for myocarditis. In the cases reviewed by the CDC and FDA, 90% of children with COVID-19 induced myocarditis developed symptoms and clinical findings sufficiently severe to warrant

hospitalization. Because this risk is not predictable and the early reports may represent just the tip of the iceberg, no individual under age 30 under any set of circumstances should feel obliged to take this risk with the current genetic vaccines particularly the Pfizer and Moderna products. (*Id.* ¶ 33.)

153 213.    Multiple recent studies and news reports detail people 18-29 dying from myocarditis after receiving the COVID-19 vaccine. According to the CDC, 475 cases of pericarditis and myocarditis have been identified in vaccinated citizens aged 30 and younger. See FDA, Vaccines and Related Biological Products Advisory Committee June 10, 2021, Meeting Presentation. The FDA found that people 12-24 account for 8.8% of the vaccines administrated, but 52% of the cases of myocarditis and pericarditis were reported. (*Id.* ¶¶ 34-35.)

154 214.    The CDC recently released data stating that there have been 267 cases of myocarditis or pericarditis reported after receiving one dose of the COVID-19 vaccines and 827 reported cases after two doses through June 11. There are 132 additional cases where the number of doses received is unknown. Id. There have been 2466 reported cases of myocarditis that have occurred, and the median age is thirty. (*Id.* ¶ 37.) And, the CDC just announced that the vaccine is "likely linked" to myocarditis. Advisory Board, CDC panel reports 'likely association' of heart inflammation and mRNA COVID-19 vaccines in young people. (*Id.* ¶ 36.)

155 215.    The irreparable harm to Plaintiffs and the class members they represent is incalculable, unconscionable, and unconstitutional. As the Declaration of Nay Chaplain (attached hereto as **EXHIBIT I** and incorporated herein) demonstrates,

the military heroes of this Nation are under inordinate strain from this forced mandate that violates their conscience, and it is having tremendous mental health effects, including a large number of military suicides. (Ex. I, ¶¶6 32.) The Declaration of COAST GUARD LIEUTENANT (attached hereto as **EXHIBIT J** and incorporated herein) likewise demonstrates immeasurable and irreparable injury.

### CLASS ALLEGATIONS

156.216.    Plaintiffs satisfy the requirements Fed. R. Civ. P. 23(a) because the class is so numerous that joinder of all members is impracticable, each member's claims involve common questions of law and fact, the claims of the representatives are typical of and identical to the claims of the other members of the class, and the representatives here will fairly and adequately protect the interests of the class in having the primarily legal questions addressed by thisthe Court in an expeditious manner. Between Active Duty Military and Reserves, the United States Armed Forces comprise almost 2.3 million individuals, the federal government directly employees approximately 2.1 million, and federal contractors and subcontractors total about 3.7 million.

157.217.    Plaintiffs have typicality with the other members of the class of military servicemembers, civilian federal employees, and civilian federal contractors who have been denied religious exemption from the Federal COVID-19 Vaccine Mandate, estimated to number in the thousands or even tens of thousands, and who are threatened with the unconscionable choice between conformance with their sincerely held religious convictions adverse employment action.

158.218.    Plaintiffs have commonality with the other members of the class because they are all members of the United States Armed Forces, civilian federal employees, or civilian federal contractors subject to the Federal COVID-19 Vaccine Mandate.

159.219.    Plaintiffs' claims in thisthe Court are representative of the claims of other class members and involve questions of fact and law that are common to all class members, including, *inter alia*,

(a) whether the EUA Statute requires that Plaintiffs be given the option to refuse a COVID-19 vaccine because there is currently no FDA approved COVID-19 vaccine available;

(b) whether Defendants violate the First Amendment to the United States Constitution by mandating that Plaintiffs accept and receive a COVID-19 vaccine regardless of whether Plaintiffs' and the other class members' sincerely held religious beliefs compel them to abstain from acceptance or receipt of the three currently available COVID-19 vaccines; and

(c) whether the federal Religious Freedom Restoration Act (RFRA) requires Defendants and all those in active concert with them to provide accommodations and exemptions to those Plaintiffs with sincerely held religious convictions that compel them to abstain from receiving one of the three currently available COVID-19 vaccines.

160.220.    Plaintiffs' claims are representative and common among all class members because the injury sustained—Defendants' refusals to grant exemption and

accommodation for sincerely held religious objections to the COVID-19 vaccines and the resulting adverse employment actions—are categorically identical. Indeed, Plaintiffs and the other members of the class "have suffered the same injury." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011).

161.221.    Plaintiffs will fairly and adequately protect the interests of the class because they are seeking a temporary restraining order, preliminary and permanent injunctive relief, and declaratory relief against enforcement of the Federal COVID-19 Vaccine Mandate and Defendants' refusals to entertain or grant religious exemptions and accommodations which will provide relief to all class members.

162.222.    Plaintiffs likewise satisfy the requirements of Fed. R. Civ. P. 23(b) because Defendants have acted in a manner that applies to all members of the class with respect to the Federal COVID-19 Vaccine Mandate, and have refused to grant religious accommodations to the entire group of class members who have sincerely held religious objections to receiving a COVID-19 vaccine under the Mandate. Fed. R. Civ. P. 23(b)(2).

163.223.    Additionally, Plaintiffs' requested injunctive and declaratory relief would appropriately protect of the entire class as a whole. Fed. R. Civ. P. 23(b)(2).

164.224.    Moreover, Plaintiffs satisfy the requirements of Fed. R. Civ. P. 23(b) because the common questions of law and fact applicable to the class members' claims predominate over individualized questions pertaining to individual class members. Fed. R. Civ. P. 23(b)(3).

165.225.    Adjudication of Plaintiffs and the other class members' claims are more fairly and efficiently adjudicated by a class action, as the claims for religious accommodation and exemption from the Federal COVID-19 Vaccine Mandate are virtually identical among all class members, the relevant facts applicable to each individual class member are substantially similar, and the applicable substantive law for the class members' claims is identical in all respects. Fed. R. Civ. P. 23(b)(3).

## COUNT I – VIOLATION OF THE EMERGENCY USE AUTHORIZATION PROVISIONS OF THE FEDERAL FOOD, DRUG, AND COSMETIC ACT, 21 U.S.C. § 360bbb-3

166.226.    Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1–165–225 as if fully set forth herein.

167.227.    The Federal Food, Drug, And Cosmetic Act provides that

> **subject to the provisions of this section**, the Secretary (of the Department of Health and Human Services) may authorize the introduction into interstate commerce, during the effective period of a declaration under subsection (b), of a drug, device, or biological product intended for use in an actual or potential emergency (referred to in this section as an "emergency use."

21 U.S.C. § 360bbb-3(a)(1) (emphasis added).

168.228.    For ease of reference, Plaintiffs will refer to the general provisions of 21 U.S.C. §360bbb-3 as the "Emergency Use Authorization Statute" or "EUA Statute."

169.229.    The Emergency Use Authorization Statute further provides the limitations on when the Secretary may authorize the emergency use of an unapproved product for use in interstate commerce, and specifically limits such authorization to

circumstances where the Secretary of Homeland Security has determined certain emergencies exits, where the Secretary of Defense has determined that certain military emergencies exist, where the Secretary of the Department of Health and Human services has determined that certain public health emergencies exist, and where there has been some identification of a material threat pursuant to other provisions of the United States Code. *See* 21 U.S.C. § 360bbb-3(b)(1)(A)-(D).

~~170.~~230.    The Secretary's Emergency Use Authorization terminates whenever the circumstances described in 21 U.S.C. § 360bbb-3(b)(1)(A)-(D) cease to exist or where the product approved for Emergency Use under the statute receives a change in approval status. 21 U.S.C. § 360bbb-3(b)(2)(A)(i)-(ii).

~~171.~~231.    As an essential part of the explicit statutory conditions for EUA, **the EUA Statute mandates that all individuals to whom the EUA product may be administered be given the option to accept or refuse administration of the product**:

> With respect to the emergency use of an unapproved product, the Secretary, to the extent practicable given the applicable circumstances described in subsection (b)(1), shall, for a person who carries out any activity for which the authorization is issued, establish such conditions on an authorization under this section as the Secretary finds necessary or appropriate to protect the public health, including the following:
>
> . . . .
>
> (ii) Appropriate conditions designed to ensure that individuals to whom the product is administered are informed—
>
> > (I)  that the Secretary has authorized the emergency use of the product;

132

(II) of the significant known and potential benefits and risks of such use, and of the extent to which such benefits and risks are unknown; and

(III) **of the option to accept or refuse administration of the product**, of the consequences, if any, of refusing administration of the product, and of the alternatives to the product that are available and of their benefits and risks.

21 U.S.C. § 360bbb-3(e)(1)(A)(ii)(I)–(III) (emphasis added).

~~172.~~232.    Consistent with the requirement in the Emergency Use Authorization statute that all potential recipients of the COVID-19 vaccine be informed of the option to accept or refuse the vaccine, the Emergency Use Authorization Fact Sheet for all three of the currently available COVID-19 vaccines specifically states——**as required by the Emergency Use Authorization Statute**—— that individuals have the right to refuse administration of the COVID-19 vaccine. A true and correct copy of the Emergency Use Authorization Fact Sheet for the Moderna COVID-19 Vaccine is attached hereto as EXHIBIT ## and incorporated herein. A true and correct copy of the Emergency Use Authorization Fact Sheet for the Pfizer-BioNTech COVID-19 Vaccine is attached hereto as EXHIBIT ## and incorporated herein. A true and correct copy of the Emergency Use Authorization Fact Sheet for the Janssen (Johnson & Johnson) COVID-19 Vaccine is attached hereto as EXHIBIT ## and incorporated herein.

~~173.~~233.    Specifically, the Emergency Use Authorization Fact Sheets for all three COVID-19 vaccines state that it is the individual's right to refuse administration of the vaccine. (*See* Exhibit H at 4 ("**It is your choice to receive or not to receive the**

**Moderna COVID-19 Vaccine. Should you decide not to receive it, it will not change your standard medical care**." (emphasis added)); Exhibit I at 5 ("**It is your choice to receive or not to receive the Pfizer-BioNTech COVID-19 Vaccine. Should you decide not to receive it, it will not change your standard medical care**." (emphasis added)); Exhibit J at 5 ("**It is your choice to receive or not to receive the Janssen COVID-19 Vaccine. Should you decide not to receive it, it will not change your standard medical care**." (emphasis added))).)

~~174.~~234.     "Congress has prohibited the administration of investigational drugs to service members without their consent." *Doe v. Rumsfeld*, 341 F. Supp. 2d 1, 19 (D.D.C. 2004).

~~175.~~235.     There is a very strict mechanism under which any military exception to the EUA statute may be deployed, and neither have occurred here.

~~176.~~236.     First, the President can waive the informed consent requirement, but that Presidential waiver must be in writing and demonstrate that the President has determined "that obtaining consent is not in the interests of national security."

~~177.~~237.     The strict criteria laid out in the statutory framework demonstrate the limited scope of the exceptions to the informed consent requirement. To start, the initial emergency declaration by the HHS Secretary must be based on one of four statutorily listed justifications——none of which apply here. The first requires the Secretary of Defense to find a **domestic emergency**, or significant potential for a domestic emergency, based on heightened risk of attack with a **biological, chemical,**

**radiological, or nuclear agent**. 21 U.S.C.A. § 360bbb–3(b)(1)(A) ("A "determination by the Secretary of Homeland Security that there is a domestic emergency, or a significant potential for a domestic emergency, involving a heightened risk of attack with a biological, chemical, radiological, or nuclear agent or agents.").

~~178.~~238.     The second requires a finding that there is a **military emergency** involving a heightened risk to US military forces of an attack with a **biological, chemical, radiological, or nuclear agent**, or an agent that may cause an imminently life-threatening and specific risk to US military forces. 21 U.S.C. § 360bbb-3(b)(1)(B) ("A "determination by the Secretary of Defense that there is a **military emergency**, or a significant potential for a military emergency, involving a heightened risk to United States military forces, including personnel operating under the authority of title 10 or title 50, of **attack with a biological, chemical, radiological, or nuclear agent or agents**; or an agent or agents that may cause, or are otherwise associated with, **an imminently life-threatening and specific risk** to United States military forces." (emphasis added)).

~~179.~~239.     The third requires a finding that there is a public health emergency, or significant potential for a public health emergency that affects national security or the health and security of US citizens abroad that involves a **biological, chemical, radiological, or nuclear agent or a disease or condition attributable to one of those agents**. 21 U.S.C. §360bbb-3(b)(1)(C) (A "determination by the Secretary that there is a **public health emergency**, or a significant potential for a public health emergency,

**that affects**, or has a significant potential to affect, **national security** or the health and security of United States citizens living abroad, **and** that involves **a biological, chemical, radiological, or nuclear agent or agents, or a disease or condition that may be attributable to such agent or agents**." (emphasis added)).

~~180.~~240.    The fourth requires the identification of a material threat involving **chemical, biological, radiological, and nuclear agents** sufficient to affect national security or the health and security of US citizens living abroad. 21 U.S.C. § 360bbb-3(b)(1)(D) ("The "identification of a **material threat** [involving chemical, biological, radiological, and nuclear agents] pursuant to section 319F–2 of the Public Health Service Act [42 U.S.C. 247d–6b] sufficient **to affect national security** or the health and security of United States citizens living abroad." (emphasis added)).

~~181.~~241.    Under the above statute, there is no legal basis on which the President may waive consent for the COVID-19 vaccines for the military. Indeed, he has not done so because he has no statutory authority under these facts to waive the EUA requirements for the military.

~~182.~~242.    Even after the HHS Secretary establishes that one of the four criteria are satisfied, then under § 360bbb–3 the HHS Secretary then must make a separate determination that an "agent" referred to in the declaration can cause a serious or life-threatening disease or condition **and** that based on the scientific evidence available for the product authorized under the EUA (i) it may be effective in diagnosing, treating, or preventing the disease or serious life-threatening disease, (ii)

the known and potential benefits outweigh the risks; (iii) there is no adequate, approved, and available alternative to the product authorized under the EUA; (iv) **in the case of a military emergency based on a biological, chemical, radiological, or nuclear agent, the Secretary of Defense made the emergency use request**; and (v) other criteria established by regulation are satisfied.

~~183.~~243.      None of the foregoing criteria has been satisfied.

~~184.~~244.      Defendants have ignored their obligations under the EUA Statute.

~~185.~~245.      There has been no Presidential declaration sufficient to invoke the consent exceptions of the EUA statute.

~~186.~~246.      There has been no domestic emergency, military emergency, public health emergency, or material threat of a biological, chemical, radiological, or nuclear agent, or a disease attributable to one of those conditions.

~~187.~~247.      As such, Defendants are prohibited by the EUA statute from mandating that any Plaintiffs or similarly situated military servicemembers receive or accept one of the COVID-19 vaccines.

~~188.~~248.      Put simply, the Emergency Use Authorization Statute provides that, **as a condition of receiving authorization for emergency use, <u>ALL individuals to whom the EUA product may be administered are given the right to accept or refuse administration of the product</u>**—**<u>and this includes members of the military. And, of course, the EUA right to accept or refuse applies and cannot be waived respecting the federal employees and federal civilian contractor Plaintiffs.</u>**

189.249.     The only currently available COVID-19 vaccines (Janssen/Johnson & Johnson, Moderna, and Pfizer/BioNTech) are only authorized for use under the Emergency Use Authorization statute and have no general approval under the United States Code.

190.250.     Because all three of the currently available COVID-19 vaccines are subject only to Emergency Use under the Emergency Use Authorization statute, the Emergency Use Authorization statute mandates that all individuals to whom the product may be administered, **including Plaintiffs**, be given the right to accept or refuse administration of the product.

191.251.     Put simply, because all three of the currently available COVID-19 vaccines are subject only to Emergency Use under the Emergency Use Authorization statute, the Emergency Use Authorization statute prohibits Defendants from making the COVID-19 vaccines mandatory.

192.252.     The Federal COVID-19 Vaccine Mandate, on its face and as applied, has caused, is causing, and will continue to cause irreparable harm and actual and undue hardship on Plaintiffs' sincerely held religious beliefs.

193.253.     Plaintiffs have no adequate remedy at law for the continuing deprivation of their most cherished constitutional liberties and sincerely held religious beliefs.

## COUNT II – VIOLATION OF THE FIRST AMENDMENT
## TO THE UNITED STATES CONSTITUTION

138

194.254.       Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1—165225 above as if fully set forth herein.

195.255.       The Free Exercise Clause of the First Amendment to the United States Constitution prohibits the government from abridging Plaintiffs' rights to free exercise of religion.

196.256.       Plaintiffs have sincerely held religious beliefs that Scripture is the infallible, inerrant word of the Lord Jesus Christ, and that they are to follow its teachings.

197.257.       Plaintiffs have and exercise sincerely held religious beliefs (articulated *supra*in Section B, *supra*) which compel them to abstain from receiving or accepting any of the currently available COVID-19 vaccines.

198.258.       The Federal COVID-19 Vaccine Mandate, on its face and as applied, targets Plaintiffs' sincerely held religious beliefs by prohibiting Plaintiffs from seeking and receiving exemption and accommodation for their sincerely held religious beliefs against the COVID-19 vaccines.

199.259.       The Federal COVID-19 Vaccine Mandate, on its face and as applied, impermissibly burdens Plaintiffs' sincerely held religious beliefs, compels Plaintiffs to either change those beliefs or act in contradiction to them, and forces Plaintiffs to choose between the teachings and requirements of their sincerely held religious beliefs in the commands of Scripture and the government's imposed value system.

200.260.     The Federal COVID-19 Vaccine Mandate, on its face and as applied, places Plaintiffs in an irresolvable conflict between compliance with the mandate and their sincerely held religious beliefs.

201.261.     The Federal COVID-19 Vaccine Mandate, on its face and as applied, puts substantial pressure on Plaintiffs to violate their sincerely held religious beliefs or face loss of their ability to feed their families.

202.262.     The Federal COVID-19 Vaccine Mandate, on its face and as applied, is neither neutral nor generally applicable.

203.263.     The Federal COVID-19 Vaccine Mandate, on its face and as applied, specifically targets Plaintiffs' religious beliefs for disparate and discriminatory treatment.

204.264.     The Federal COVID-19 Vaccine Mandate, on its face and as applied, creates a system of individualized exemptions for preferred exemption requests while discriminating against requests for exemption and accommodation based on sincerely held religious beliefs. Regarding the federal employee and federal civilian contractor Plaintiffs, Defendant Biden imposed the Vaccine Mandate on them while exempting Congress, the Internal Revenue Service (IRS) and the United States Postal Service. Indeed, a certain husband and wife are both federal employees. One works for the IRS while the other works for the Veterans Administration (VA). Although husband and wife are working as federal employees, one is under the Vaccine Mandate, and one is not. The VA has used a simple one-page form on which an employee merely checks a box to request a religious exemption. Other federal

employees are subject to a more burdensome process or have received no guidance on submitting religious exemption requests. The civilian federal contractors face a deadline of November 22, but none have received any guidance on whether or where they might file a request for religious exemption and accommodation.

205.265.     The Federal COVID-19 Vaccine Mandate, on its face and as applied, constitutes a religious gerrymander by unconstitutionally orphaning exemption and accommodation requests based solely on sincerely held religious beliefs of Plaintiffs while permitting the more favored medical exemptions to be granted.

206.266.     The Federal COVID-19 Vaccine Mandate, on its face and as applied, constitutes a substantial burden on Plaintiffs' exercise of their sincerely held religious beliefs.

207.267.     The Federal COVID-19 Vaccine Mandate, on its face and as applied, fails to accommodate Plaintiffs' sincerely held religious beliefs.

208.268.     There is no legitimate, rational, or compelling interest in the Federal COVID-19 Vaccine Mandate's exclusion of exemptions and accommodations for sincerely held religious beliefs.

209.269.     The Federal COVID-19 Vaccine Mandate is not the least restrictive means of achieving an otherwise permissible government interest.

210.270.     The Federal COVID-19 Vaccine Mandate, on its face and as applied, has caused, is causing, and will continue to cause irreparable harm and actual and undue hardship on Plaintiffs' sincerely held religious beliefs.

211. 271.     Plaintiffs have no adequate remedy at law to protect the continuing deprivation of their most cherished constitutional liberties and sincerely held religious beliefs.

WHEREFORE, Plaintiffs respectfully pray for relief against Defendant as hereinafter set forth in their prayer for relief

## COUNT III - VIOLATION OF THE RELIGIOUS FREEDOM RESTORATION ACT, 42 U.S.C. § 2000bb-1, *et seq.*

212. 272.     Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1 165225 above as if fully set forth herein.

213. 273.     The Religious Freedom Restoration Act (RFRA)), 42 U.S.C. §§ 2000bb to 2000bb-4, provides that "Government shall not substantially burden a person's exercise of religion even if the burden results from a rule of general applicability." 42 U.S.C. § 2000bb-1(a).

214. 274.     RFRA also demands that, should the government substantially burden a person's free exercise of religion, it bears the burden of demonstrating that its burden on religious exercise furthers a compelling government interest and is the least restrictive means of achieving that compelling government interest. 42 U.S.C. § 2000bb-1(b).

215. 275.     RFRA plainly applies to Defendants, as they constitute a "branch, department, agency, instrumentality, and official of the United States." 42 U.S.C. § 2000bb-2(1).

216.276.    Congress enacted RFRA "to provide **very broad** protection for religious liberty," going "far beyond what [the Supreme Court] has held is constitutionally required" under the First Amendment. *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 693, 706 (2014) (emphasis added).

217.277.    As such, RFRA encompasses a very broad definition of "exercise of religion," which includes "'any exercise of religion, whether or not compelled by, or central to, a system of religious belief.'" *Hobby Lobby*, 573 U.S. at 696 (quoting 42 U.S.C. § 2000bb—5(7)(A)).

218.278.    RFRA mandated that the law "'be construed in favor of a broad protection of religious exercise, to the maximum extent permitted by the terms of this chapter and the Constitution.'" *Hobby Lobby*, 573 U.S. at 696 (quoting 42 U.S.C. § 2000cc—3(g)).

219.279.    "RFRA operates as a kind of super statute, displacing the normal operation of other federal laws." *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1754 (2020).

220.280.    Plaintiffs have sincerely held religious beliefs that Scripture is the infallible, inerrant word of the Lord Jesus Christ, and that they are to follow its teachings.

221.281.    Plaintiffs have and exercise sincerely held religious beliefs (articulated *supra* Section B) which compel them to abstain from receiving or accepting any of the currently available COVID-19 vaccines.

222.282.    The Federal COVID-19 Vaccine Mandate, on its face and as applied, targets Plaintiffs' sincerely held religious beliefs by prohibiting Plaintiffs from

seeking and receiving exemption and accommodation for their sincerely held religious beliefs against the COVID-19 vaccines.

223. 283.    The Federal COVID-19 Vaccine Mandate, on its face and as applied, impermissibly burdens Plaintiffs' sincerely held religious beliefs, compels Plaintiffs to either change those beliefs or act in contradiction to them, and forces Plaintiffs to choose between the teachings and requirements of their sincerely held religious beliefs in the commands of Scripture and the government's imposed value system.

224. 284.    The Federal COVID-19 Vaccine Mandate, on its face and as applied, places Plaintiffs in an irresolvable conflict between compliance with the mandate and their sincerely held religious beliefs.

225. 285.    The Federal COVID-19 Vaccine Mandate, on its face and as applied, puts substantial pressure on Plaintiffs to violate their sincerely held religious beliefs or face loss of their ability to feed their families.

226. 286.    The Federal COVID-19 Vaccine Mandate, on its face and as applied, specifically targets Plaintiffs' religious beliefs for disparate and discriminatory treatment.

227. 287.    The Federal COVID-19 Vaccine Mandate, on its face and as applied, creates a system of individualized exemptions for preferred exemption requests while discriminating against requests for exemption and accommodation based on sincerely held religious beliefs.

144

228.288.     The Federal COVID-19 Vaccine Mandate, on its face and as applied, constitutes a substantial burden on Plaintiffs' exercise of their sincerely held religious beliefs.

229.289.     By forcing Plaintiffs into the unconscionable choice between violating their sincerely held religious convictions or facing dishonorable discharge, courts martial, termination, and other disciplinary measures, Defendants' mandate constitutes a substantial burden on Plaintiffs' exercise of religion.

230.290.     The Federal COVID-19 Vaccine Mandate, on its face and as applied, fails to accommodate Plaintiffs' sincerely held religious beliefs.

231.291.     There is no legitimate, rational, or compelling interest in the Federal COVID-19 Vaccine Mandate's exclusion of exemptions and accommodations for sincerely held religious beliefs.

232.292.     The Federal COVID-19 Vaccine Mandate is not the least restrictive means of achieving an otherwise permissible government interest.

233.293.     The Federal COVID-19 Vaccine Mandate, on its face and as applied, has caused, is causing, and will continue to cause irreparable harm and actual and undue hardship on Plaintiffs' sincerely held religious beliefs.

234.294.     Plaintiffs have no adequate remedy at law for the continuing deprivation of their most cherished constitutional liberties and sincerely held religious beliefs.

WHEREFORE, Plaintiffs respectfully pray for relief against Defendants as hereinafter set forth in their prayer for relief.

145

## COUNT IV – VIOLATION OF THE ADMINISTRATIVE PROCEDURES ACT, 5 U.S.C. § 706(2)(C), BY ACTING IN EXCESS OF STATUTORY JURISDICTION

295.   Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1–225 above as if fully set forth herein.

296.   Under the Administrative Procedures Act, 5 U.S.C. § 706, "[t]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(C).

297.   As to Plaintiff civilian federal contractors, the Federal COVID-19 Vaccine Mandate is unlawful, not in accordance with law, and in excess of Defendants' authority because it was issued by the Office of Management and Budget, which has no authority to issue such a mandate.

298.   As to Plaintiff civilian federal contractors, the Federal COVID-19 Vaccine Mandate is unlawful, not in accordance with law, and in excess of Defendants' authority because it represents an unlawful attempt by the President to delegate authority to issue regulations under 41 U.S.C. § 1303 when he possesses no authority to issue such regulations himself.

299.   As to Plaintiff civilian federal contractors, the Federal COVID-19 Vaccine Mandate is unlawful, not in accordance with law, and in excess of Defendants' authority because it was issued at the direction of the President, not Congress, and "invokes the outer limits of Congress' power." *Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 172 (2001).

300.   The Court must "expect a clear indication that Congress intended" the OMB to possess such authority, *id.*, but no such clear indication of Congressional intent has been given, and no such indication could have been given because Congress lacks the authority to impose a mandate itself, much less delegate to an executive agency the authority to impose such a mandate.

301.   Congress did not authorize executive agencies, by virtue of their authority to enter procurement contracts with private companies, to concomitantly possess the right to mandate, direct, or otherwise require contractors or their employees to submit to mandates imposed by the executive agency.

302.   Congress did not give the OMB, and the President does not otherwise possess—by Constitution, statute, or otherwise—the right to impose a COVID-19 vaccine mandate on all entities contracting with the federal government.

303.   Congress, itself, does not have the authority under the Constitution to issue a COVID-19 vaccine mandate on all federal employees.

304.   At best, Congress would have to rely on the Commerce Clause to issue such a mandate itself, but Congress's authority to impose a COVID-19 vaccine mandate under the Commerce Clause is utterly lacking because "a person's choice to remain unvaccinated and forego regular testing is noneconomic activity," and "while the Commerce Clause power may be expansive . . . it does not grant Congress the power to regulate noneconomic inactivity traditionally within the States' police power." *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 617 (5th Cir. 2021).

305.   Because Congress lacks the authority under the Constitution to do so, it could not have delegated to or otherwise given the OMB the authority to impose a COVID-19 vaccine mandate on all entities contracting with the federal government.

306.   Plaintiffs have no adequate remedy at law for the ongoing and irreparable harm imposed by the Federal COVID-19 Vaccine Mandate issued in violation of the APA and in gross excess of any statutorily authorized jurisdiction.

WHEREFORE, Plaintiffs respectfully pray for relief against Defendants as hereinafter set forth in their prayer for relief

## COUNT V – VIOLATION OF THE ADMINISTRATIVE PROCEDURES ACT, 5 U.S.C. § 706(2)(B), BY ACTING CONTRARY TO CONSTITUTIONAL RIGHT

307.   Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1–225 and 254-271 above as if fully set forth herein.

308.   Under the Administrative Procedures Act, 5 U.S.C. § 706, "[t]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

309.   In addition to being in excess of the statutory jurisdiction afforded to the OMB, the Fedearal COVID-19 Vaccine Mandate is unlawful under the APA because it is contrary to a constitutional right, power, privilege, or immunity.

310.   The Federal COVID-19 Vaccine Mandate and the corresponding refusals to review, consider, or grant religious exemptions and accommodations from the

148

mandate are neither neutral nor generally applicable, and are contrary to the First Amendment of the United States Constitution.

311.   Plaintiffs have no adequate remedy at law for the ongoing and irreparable harm imposed by Defendants' COVID-19 Vaccine Mandate issued in violation of the APA and in violation of Plaintiffs' constitutional rights.

WHEREFORE, Plaintiffs respectfully pray for relief against Defendants as hereinafter set forth in their prayer for relief.

## COUNT VI – VIOLATION OF THE ADMINISTRATIVE PROCEDURES ACT, 5 U.S.C. §706(2)(A), BY IMPOSING ARBITRARY AND CAPRICIOUS RULE

312.   Plaintiffs hereby reallege and adopt each and every allegation in paragraphs 1–225 above as if fully set forth herein.

313.   Under the Administrative Procedures Act, 5 U.S.C. § 706, "[t]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §706(2)(A).

314.   An agency action is arbitrary and capricious where—as here—it fails to "examine the relevant data and articulate a satisfactory explanation for its action including a "rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mutual Auto Ins. Co.*, 463 U.S. 29, 43 (1983) (cleaned up).

315.   "If the administrative action is to be tested by the basis upon which it purports to rest, that basis must be set forth with such clarity as to be understandable."

*SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947), and "[i]t will not do for a court to be compelled to guess at the theory underlying the agency's action." *Id.* at 196–97.

316.    The Court also cannot "be expected to chisel that which must be precise from what the agency has left vague and indecisive." *Id.* at 197.

317.    "The agency must make findings that support its decision, and those findings must be supported by substantial evidence." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962).

318.    "The reviewing court should not attempt itself to make up for such deficiencies: [It] may not supply a reasoned basis for the agency's action that the agency itself has not given." *Motor Vechicle Mfrs. Ass'n*, 463 U.S. at 43 (cleaned up).

319.    The Federal COVID-19 Vaccine Mandate is also arbitrary and capricious under the APA because it fails to reflect the required reasoned decisionmaking.

320.    The Federal COVID-19 Vaccine Mandate for civilian federal contractors—issued at the direction of the President—contains no reasons or rationale whatsoever.

321.    The Federal COVID-19 Vaccine Mandate for civilian federal contractors contains no examination of the relevant data or any connection of that data to the stated rationale.

322.    The Federal COVID-19 Vaccine Mandate for civilian federal contractors is not supported by compelling or substantial evidence.

323.    The Federal COVID-19 Vaccine Mandate for civilian federal contractors states only that it will "improve economy and efficiency by reducing absenteeism and

decreasing labor costs for contractors and subcontractors working on or in connection with a Federal Government contract." 86 Fed. Reg. 53,691, 53,692 (Sept. 28, 2021).

324.   The Federal COVID-19 Vaccine Mandate for civilian federal contractors makes no supported findings, fails to provide evidence for its findings, and impermissibly relies upon the Court to chisel precision out of its arbitrary and capricious—indeed, unstated—rationale.

325.   Plaintiffs have no adequate remedy at law for the ongoing and irreparable harm imposed by The Federal COVID-19 Vaccine Mandate issued in violation of the APA and in an arbitrary and capricious manner.

WHEREFORE, Plaintiffs respectfully pray for relief against Defendants as hereinafter set forth in their prayer for relief

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, on behalf of themselves and all others similarly situated, respectfully pray for relief as follows:

A.   That the Court issue a temporary restraining order restraining and enjoining Defendants and their officers, agents, employees, and attorneys, and all other persons in active concert or participation with them, from enforcing, threatening to enforce, attempting to enforce, or otherwise requiring compliance with the Federal COVID-19 Vaccine Mandate such that:

      i.   Defendants will immediately comply with the Emergency Use Authorization Statute so that each individual has the "option to accept or refuse" administration of the COVID-19 vaccines as

there is currently no FDA approved COVID-19 vaccine available to the population;

ii.     Defendants will immediately cease in their refusal to consider, evaluate, or accept Plaintiffs' requests for exemption and accommodation for their sincerely held religious beliefs;

iii.    Defendants' will immediately grant Plaintiffs' requests for religious exemption and accommodation from the Federal COVID-19 Vaccine Mandate; and

iv.     Defendants will immediately cease any actions arising from or connected to the military servicemember Plaintiffs' religious exemption and accommodation requests, including current and ongoing punishment and threatening to dishonorably discharge, court martial, and impose other life-altering disciplinary actions on Plaintiffs for failure to accept a COVID-19 vaccine that violates their sincerely held religious beliefs;

v.      Defendants will immediately cease any actions arising from or connected to the federal civilian employee and contractor Plaintiffs' religious exemption and accommodation requests, including demotion, termination, or other disciplinary actions on Plaintiffs for failure to accept a COVID-19 vaccine that violates their sincerely held religious beliefs;

B.      That the Court issue a preliminary injunction pending trial, and a permanent injunction upon judgment, restraining and enjoining Defendants and their officers, agents, employees, and attorneys, and all other persons in active concert or participation with them, from enforcing, threatening to enforce, attempting to enforce, or otherwise requiring compliance with the Federal COVID-19 Vaccine Mandate such that:

  i.     Defendants will immediately comply with the Emergency Use Authorization Statute so that each individual has the "option to accept or refuse" administration of the COVID-19 vaccines as there is currently no FDA approved COVID-19 vaccine available to the population;

  ii.    Defendants will immediately cease in their refusal to consider, evaluate, or accept Plaintiffs' requests for exemption and accommodation for their sincerely held religious beliefs;

  iii.   Defendants' will immediately grant Plaintiffs' requests for religious exemption and accommodation from the Federal COVID-19 Vaccine Mandate; and

  iv.    Defendants will immediately cease any actions arising from or connected to the military servicemember Plaintiffs' religious exemption and accommodation requests, including current and ongoing punishment and threatening to dishonorably discharge, court martial, and impose other life-altering disciplinary actions

on Plaintiffs for failure to accept a COVID-19 vaccine that violates their sincerely held religious beliefs;

v.    Defendants will immediately cease any actions arising from or connected to the federal civilian employee and contractor Plaintiffs' religious exemption and accommodation requests, including demotion, termination, or other disciplinary actions on Plaintiffs for failure to accept a COVID-19 vaccine that violates their sincerely held religious beliefs;

C.    That ~~this~~the Court render a declaratory judgment declaring that the Federal COVID-19 Vaccine Mandate, both on its face and as applied by Defendants, is illegal and unlawful in that it purports to remove federal civil rights and constitutional protections from military servicemembers and civilian federal employees and contractors, and further declaring—

i.    the Federal COVID-19 Vaccine Mandate violates the federal Emergency Use Authorization provisions of the Federal Food, Drug, and Cosmetic Act by imposing a mandatory COVID-19 shot upon Plaintiffs without giving the "option to accept or refuse" the EUA product;

ii.    the Federal COVID-19 Vaccine Mandate, without sufficient provision for exemption or accommodation for sincerely held religious beliefs, violates the First Amendment to the United States

Constitution by imposing a substantial burden on Plaintiffs' sincerely held religious beliefs;

iii.    the Federal COVID-19 Vaccine Mandate, without sufficient provision for exemption or accommodation for sincerely held religious beliefs, violates the federal Religious Freedom Restoration Act by imposing a substantial burden on Plaintiffs' sincerely held religious beliefs;

iv.    the Federal COVID-19 Vaccine Mandate as to civilian federal contractors is unlawful under the Administrative Procedures Act because it was issued in excess of statutory jurisdiction, is contrary to a constitutional right, privilege, or immunity, and is arbitrary and capricious.

D.    That ~~this~~the Court adjudge, decree, and declare the rights and other legal obligations and relations within the subject matter here in controversy so that such declaration shall have the full force and effect of final judgment;

E.    That ~~this~~the Court retain jurisdiction over the matter for the purposes of enforcing the Court's order;

F.    That ~~this~~the Court grant such other and further relief as the Court deems equitable and just under the circumstances.

Respectfully submitted,

Mathew D. Staver
Horatio G. Mihet
Roger K. Gannam
Daniel J. Schmid*
Richard L. Mast***
LIBERTY COUNSEL
Liberty Counsel
P.O. Box 540774
Orlando, FL 32854
Phone: (407) 875-1776
Facsimile: (407) 875-0770
Email:
court@lc.org
hmihet@lc.org
rgannam@lc.org
dschmid@lc.org*
rmast@lc.org*
**Admitted pro hac vice
**Application for Admission admission pro hac vice pendingforthcoming

*Attorneys for Plaintiffs*