## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA

| | | |
|---|---|---|
| NAVY SEAL 1, *et al.*, for themselves and all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | |
| v. | ) ) | No. <u>8:21-cv-2429-SDM-TGW</u> |
| JOSEPH R. BIDEN, in his official capacity as President of the United States, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

### PLAINTIFFS' SUPPLEMENTAL MEMORANDUM
### <u>AND RENEWED MOTION FOR PRELIMINARY INJUNCTION</u>

Plaintiffs, pursuant to the Court's Order of November 22, 2021 (Doc. 40, the "PI Order") and Local Rule 3.01, file this supplemental memorandum in support of their motion for preliminary injunction (Doc. 2, the "PI Motion") as for servicemember Plaintiffs, and renew their PI Motion as for civilian federal employee Plaintiffs and Plaintiff FEDERAL CIVILIAN CONTRACTOR EMPLOYER. As for servicemember Plaintiffs, the Court's PI Order deferred resolution of Plaintiffs' PI Motion pending Defendants' filing additional data ordered by the Court, and authorized the filing of supplemental memoranda regarding issuance of the preliminary injunction. (Doc. 40 at 33–35.) Defendants filed their First Notice of Compliance (Doc. 47, the "First Notice") providing the first installment of the additional data ordered by the Court, which data support immediate entry of the preliminary injunction as for servicemember Plaintiffs. (Argument Pt. I, *infra*.) And in

conjunction with Plaintiffs' filing their Motion for Leave to Amend Complaint (Doc. 49), attaching Plaintiffs' proposed First Amended Verified Class Action Complaint (Doc. 49-1), Plaintiffs renew their PI Motion on behalf of new civilian federal employee Plaintiffs identified in the proposed amended complaint (Doc. 49-1, ¶¶ 66–68, 170–72), under RFRA and the First Amendment (Argument Pt. II, *infra*), and on behalf of new civilian federal employee Plaintiffs and Plaintiff FEDERAL CIVILIAN CONTRACTOR EMPLOYER, under new Administrative Procedures Act causes of action pleaded in the proposed amended complaint (Doc. 49-1, ¶¶ 295–325 (Counts IV–VI); Argument Pt. III, *infra*).[1] For the reasons stated in the PI Motion and at the November 15 hearing thereon (Doc. 38, the "PI Hearing"), and the reasons stated herein, the Court should issue the preliminary injunction immediately.

## INTRODUCTION

As the Court already observed, "the available interim data lends tentative credence" to the fact that "the regulations are subject to an undisclosed policy of 'deny them all.'" (PI Order 26.) Indeed, even at the commencement of this action (Doc. 1), Plaintiffs' contentions were—"based on current data—quite plausible that each branch's procedure for requesting a religious exemption is a ruse that will result inevitably in the undifferentiated (and therefore unlawful under RFRA) denial of each

---

[1]     Should the Court grant Plaintiffs' motion for leave to amend, the verified amended complaint will include verifications by the new Plaintiffs as to their respective factual allegations.

service member's request." (PI Order 33.) What looked like a ruse then is proved a ruse now.

The data produced by Defendants confirms that "the actual and governing policy-in-fact—perhaps emanating from an implicit understanding common to and extending throughout each branch of the military and throughout the layers of reviewing officers and boards—demands the indiscriminate and undifferentiated denial of each request for a religious exemption." (PI Order 23.) As of Defendants' First Notice, there have been 21,243 requests for religious exemption among all military branches, with none granted to save objecting servicemembers from the choice between vaccination against conscience or involuntary separation. Defendants' unambiguous data compel entry of a preliminary injunction, as they confirm Defendants are "acting in fact under a policy of across-the-board denial without individualized determination required by RFRA." (PI Order at 28.)

- **The Army has granted _zero_ religious exemptions.** The Army has received **2,064 requests** for religious exemption from the COVID-19 Vaccine Mandate and **granted none**. The Army has formally denied 122 requests, 115 of which included a chaplain's determination of sincerity. (_See_ Doc. 47-2, ¶¶ 8–9.) The Army has granted 2,659 temporary and permanent medical exemptions. (Doc. 47-2, ¶¶ 13–15.)

- **The Navy has granted _zero_ religious exemptions.** The Navy has received **3,711 requests** for religious exemption and **granted none**. The Navy has formally denied 3,484 requests and has 1,008 appeals pending. No appeal has been adjudicated.

(Doc. 47-3 at 7.) The Navy has granted 311 temporary and permanent medical exemptions. (Doc. 47-3 at ECF p. 7.)

- **The Marine Corps has granted *zero* religious exemptions, except for *two* exemptions given to Marines already slated for separation.** The Marine Corps has **received 3,192 requests** for religious exemption and **denied 3,080 requests**—all of which included a chaplain's determination of sincerity—with the remaining 112 initial requests still under review. The Marine Corps records 2 religious exemptions granted on appeal (Doc. 47-4 at ECF p. 6), but media investigation of the granted exemptions indicates that both exemptions were given to Marines already slated for separation.[2] The Marine Corps has granted 436 temporary and permanent medical exemptions. (Doc. 47-4 at 6.)

- **The Air Force has granted *zero* religious exemptions.** The Air Force has received **10,973 requests** for religious exemption and **granted none**. The Air Force has denied 2,387 initial requests and 311 appeals. (Doc. 47-5 at ECF p. 6.) The Air Force has granted 1,723 medical exemptions. (Doc. 47-5 at ECF p. 6.)

---

[2]    According to a news report, quoting "[a]n active-duty officer with a legal background who has extensive knowledge of the internal proceedings in the case involving the two approvals," one of the two exemptions granted by the Marine Corps was given to a Marine on terminal leave, ending in separation, and the other to a Marine who was within the final 180 days of service and already transitioning to civilian life. *See* Jessica Chasmar & Peter Hasson*, Marines' claim of granting 2 religious COVID-19 vaccine exemptions leads to more questions*, Fox News (Jan. 19, 2022), www.foxnews.com/politics/marines-claim-2-religious-COVID-19-vaccine-exemptions ("'Granting RAs [religious accommodations] for civilians is basically a moot point,' the officer told Fox News Digital." (modification in original)).

- **The Coast Guard has granted *zero* religious exemptions.** The Coast Guard has received **1,303 requests** for religious exemption and **granted none**. The Coast Guard has denied 226 requests, all of which included a chaplain's determination of sincerity. (Doc. 47-8 at ECF p. 5.) The Coast Guard has granted 6 permanent medical exemptions and an unknown number of temporary medical exemptions. (Doc. 47-8 at ECF p. 5.)

In total, the Armed Services have received **21,243 requests** for religious exemption and **granted none** to save any servicemember from the choice between vaccination against conscience or involuntary separation. The Armed Services have denied 9,073 requests for religious exemption, and have provided no evidence that any denied request involved a determination of insincerity of belief. But the Armed Services have granted more than **5,135** requests for the nonreligious, temporary and permanent medical exemptions (with the number of Coast Guard temporary medical exemptions unknown). As this Court previously observed, "[t]he data provided by the military are distinctly suggestive and certainly not inconsistent with plaintiffs' assertions" (PI Order at 31), and now the data have moved from suggestive to unequivocal that the Armed Forces' vaccine mandate policies

> in reality disguise an unlawful and pervasive policy of the Secretary of Defense and each branch of the armed forces to deny individual consideration of each claim for a religious exemption, to instead "deny them all," and to punish, possibly by discharge, without exemption and without accommodation, those who assert a sincere religious objection and accordingly refuse the vaccine.

(PI Order at 31.)

"[N]umbers don't lie." *NLRB v. Hartman & Tyner, Inc.*, 714 F.3d 1244, 1250 (11th Cir. 2013). While Defendants claim there exists a process by which military servicemembers may request and receive an accommodation for their sincerely held religious beliefs, the process is pretextual and the accommodation illusory. The preliminary injunction should issue immediately.

## ARGUMENT

**I.   THE PRELIMINARY INJUNCTION SHOULD ISSUE AS FOR SERVICEMEMBER PLAINTIFFS BECAUSE THE COVID-19 VACCINE MANDATE VIOLATES RFRA AND THE FIRST AMENDMENT.**

### A.   Servicemember Plaintiffs' Claims are Justiciable Now.

Contrary to Defendants' ripeness argument (First Not. 2–3), servicemember Plaintiffs' claims are justiciable now. In *Navy Seals 1–26*, a case on all fours with this case, the Northern District of Texas succinctly and correctly disposed of this argument:

> [T]he record indicates the denial of each request is predetermined. As a result, Plaintiffs need not wait for the Navy to engage in an empty formality. In addition, whether the vaccine mandate violates Plaintiffs' First Amendment rights is a legal question well suited for the courts, not the Navy's administrative process. The Court finds that exhaustion is futile and will not provide complete relief, and therefore the case is justiciable.

2022 WL 34443, at *4.[3]

---

[3]   Plaintiffs' motion to proceed pseudonymously will be filed within one business day after this filing, giving the Court and Defendants ample time for consideration. (*See* First Not. 3–4.)

**B.    Defendants' Process for Religious Exemption From the Vaccine Mandate for Servicemember Plaintiffs Is a Ruse.**

"The Navy provides a religious accommodation process, but by all accounts, *it is theater.*" *U.S. Navy Seals 1–26 v. Biden*, No. 4:21-cv-01236-O, 2022 WL 34443, at *1 (N.D. Tex. Jan. 3, 2022) (hereinafter *Navy Seals 1–26*) (emphasis added) (granting preliminary injunction against Navy's enforcement of Federal COVID-19 Vaccine Mandate). Indeed, the Navy "merely rubber stamps each denial." *Id.* Put simply, a military servicemember's request for a religious exemption are "*denied the moment they begin.*" *Id.* at *5 (emphasis added).

The data prove that the Navy is not alone within the Armed Forces—the entire process is a ruse. The Armed Forces have received **21,243 requests** for religious exemption from the vaccine mandate and **granted none** to save any servicemember from the choice between vaccination against conscience or involuntary separation. The Armed Services have denied 9,073 requests for religious exemption, and have provided no evidence that any denied request involved a determination of insincerity of belief. As is true "[i]n nearly every literary context, phantoms are shrouded in mystery: unseen, hiding, secret and strange." *O'Shea v. Omi Holdings, Inc.*, No. 2:20-cv-01616-KOB, 2021 WL 4290803, at *1 (N.D. Ala. Sept. 21, 2021). Defendants' phantom religious exemptions are likewise unseen, hiding, secret and strange—in a word, *unavailable*.

C.    **The Vaccine Mandate Violates RFRA by Substantially Burdening Servicemember Plaintiffs' Religious Beliefs Without Satisfying Strict Scrutiny.**

"Defendants have substantially burdened Plaintiffs' religious beliefs." *Navy Seals 1–26*, 2022 WL 34443, at *9. As the Northern District of Texas correctly noted, the government impermissibly burdens religious beliefs when it "imposes a choice between one's job and one's religious belief." *Id.* There, as here, "Plaintiffs must decide whether to lose their livelihoods or violate sincerely held religious beliefs. Because they will not compromise these religious beliefs, Plaintiffs have been threatened with separation from the military and other disciplinary action." *Id.* What is true of the Navy is true of all branches. As this Court already noted, failure to accept or receive a COVID-19 vaccine would be a direct violation of an order—regardless of a servicemember's sincerely held religious beliefs—and can result in a disciplinary order, and "defendants' counsel at the hearing could not exclude dishonorable discharge as an available discipline for refusing the vaccine." (PI Order at 29–30.) This substantial burden violates RFRA because it does not satisfy strict scrutiny. (*See* Pt. I.E, *infra*.)

D.    **The Vaccine Mandate Violates the First Amendment by Singling Out Religious Servicemember Objectors for Especially Harsh Treatment and Treating Religious Exemptions Less Favorably than Nonreligious Exemptions Without Satisfying Strict Scrutiny.**

"[G]overnment regulations are not neutral and generally applicable, and therefore trigger strict scrutiny under the Free Exercise Clause, whenever they treat *any* comparable secular activity more favorably than religious exercise." *Tandon v. Newsom*, 141 S. Ct. 1294, 1296 (2021). In fact, "the regulations cannot be viewed as

neutral because they single out [religion] for especially harsh treatment." *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 66 (2020). "When a state so obviously targets religion for differential treatment, our job becomes much clearer." *South Bay United Pentecostal Church v. Newsom*, 141 S. Ct. 716, 717 (Gorsuch, J.).

Defendants' treatment of servicemember Plaintiffs demonstrates they are singling out religious objectors for especially harsh treatment, and are treating religious exemption requests less favorably than nonreligious exemption requests. On a similar record, the Northern District of Texas explained,

> The mandate treats comparable secular activity (e.g., medical exemptions) more favorably than religious activity. First, the Navy has granted *only* secular exemptions—it has never granted a religious exemption from the vaccine. Second, even if the Navy were to grant a religious exemption, that exemption would still receive less favorable treatment than its secular counterparts. Those who receive religious exemptions are medically disqualified. Those who receive medical exemptions are not. But the activity itself—forgoing the vaccine—is identical.

*Navy Seals 1–26*, 2022 WL 34443, at *6.

The record here shows all Armed Forces branches are engaging in the same discrimination. As shown above, having received a total of 21,243 requests for religious exemption from the vaccine mandate, the combined Armed Forces have effectively granted none. Conversely, they have granted at least 5,135 medical exemption requests (with an unknown number granted by the Coast Guard). The Armed Forces have made an impermissible value judgment that nonreligious

exemptions are more worthy or important than religious exemptions. Such value judgments by the government are unconstitutional if unable to survive strict scrutiny:

> [T]he medical exemption raises concern because it indicates that the Department has made a value judgment that secular (i.e., medical) motivations for wearing a beard are important enough to overcome its general interest in uniformity but that religious motivations are not. As discussed above, when the government makes a value judgment in favor of secular motivations, but not religious motivations, the government's actions must survive heightened scrutiny.

*Fraternal Order of Police Newark Lodge No. 12 v. City of Newark*, 170 F.3d 359, 366 (3d Cir. 1999).

### E.   The Phantom Exemption Policy for Servicemember Plaintiffs Fails Strict Scrutiny.

#### 1.   The Government Has No Compelling Government Interest in Undifferentiated Denials of Religious Exemptions.

While stemming the spread of disease may be a compelling government interest, "its limits are finite." *Navy Seals 1–26*, 2022 WL 34443, at *9; *see also Does 1-3 v. Mills*, 142 S. Ct. 17, 20 (Gorsuch, J., dissenting) ("[T]his interest cannot qualify as such forever.") "Courts must look beyond broadly formulated interests, and instead consider the asserted harm of granting specific exemptions to particular religious claimants." *Id.* at *10 (cleaned up). Defendants "must articulate a compelling interest in vaccinating the . . . religious servicemembers currently before the Court." *Id.*

This Court previously recognized that satisfying RFRA's strict scrutiny requires an individualized assessment of servicemember Plaintiffs' requests for religious

exemption. (PI Order at 32–33.) Undifferentiated, across-the-board denials of religious exemptions fail the requisite inquiry and are "therefore unlawful under RFRA." (PI Order at 33.) "Without individualized assessment, the [Armed Forces] cannot demonstrate a compelling interest in vaccinating these particular Plaintiffs." *Navy Seals 1–26*, 2022 WL 34443, at *10. Moreover, the fact that the Armed Forces provide exemptions for nonreligious reasons undermines their compelling interest in blanket denials of religious exemptions. *See id.* ("[T]he Navy is willing to grant exemptions for nonreligious reasons. . . . As a result, the mandate is underinclusive.") The vaccine mandate "cannot be regarded as protecting an interest of the highest order . . . when it leaves appreciable damage to that supposedly vital interest unprohibited." *Republican Party of Minn. v. White*, 536 U.S. 765, 780 (2002) (cleaned up).

Because the vaccine mandate does not allow for individualized assessments of servicemember Plaintiffs' religious exemption requests, and because it treats nonreligious exemptions more favorably than religious exemptions posing identical risks, "Defendants do not demonstrate a compelling interest to overcome the Plaintiffs' substantial burden." *Navy Seals 1–26*, 2022 WL 34443, at *11.

### 2. Universal Denial of Religious Exemptions Is Not the Least Restrictive Means.

"As the Government bears the burden of proof on the ultimate question of [the vaccine mandate's] constitutionality, [Plaintiffs] must be deemed likely to prevail unless the Government has shown that [Plaintiffs'] proposed less restrictive alternatives are less effective than [the mandate]." *Ashcroft v. ACLU*, 542 U.S. 656, 666

(2004). Under this standard, "[n]arrow tailoring requires the government to demonstrate that a policy is the "least restrictive means" of achieving its objective." *Agudath Israel of Am. v. Cuomo*, 983 F.3d 620, 633 (2d Cir. 2020) (quoting *Thomas v. Rev. Bd. Of Ind. Emp. Sec. Div.*, 450 U.S. 707, 718 (1981).

To meet this burden, the government must show it "seriously undertook to address the problem with less intrusive tools readily available to it," meaning that it "considered different methods that other jurisdictions have found effective." *McCullen v. Coakley*, 573 us 464, 494 (2014). And the government must "show either that substantially less-restrictive alternatives were tried and failed, or that the alternatives were closely examined and ruled out for good reason," *Bruni v. City of Pittsburgh*, 824 F.3d 353, 370 (3d Cir. 2016), and that "imposing lesser burdens on religious liberty 'would fail to achieve the government's interests, not simply that the chosen route was easier.'" *Agudath Israel*, 983 F.3d at 633 (quoting *McCullen*, 573 U.S. at 495).

As the Supreme Court said in *Tandon*,

> narrow tailoring requires the government to show that measures less restrictive of the First Amendment activity could not address its interest in reducing the spread of COVID. Where the government permits other activities to proceed with precautions, it must show that the religious exercise at issue is more dangerous than those activities even when the same precautions are applied. Otherwise, precautions that suffice for other activities suffice for religious exercise too.

141 S. Ct. at 1296–97.

Here, Defendants cannot satisfy their burden because "restrictions inexplicably applied to one group and exempted from another do little to further [the government's]

goals and do much to burden religious freedom." *Maryville Baptist Church, Inc. v. Beshear*, 957 F.3d 610, 615 (6th Cir. 2020). As shown above, having received a total of 21,243 requests for religious exemption from the vaccine mandate, the combined Armed Forces have effectively granted none. Conversely, they have granted at least 5,135 medical exemption requests (with an unknown number granted by the Coast Guard). The liberal granting of medical exemption requests eviscerates any claim that universal denial of religious exemption requests is the least restrictive means of achieving any compelling government interest. The preliminary injunction should issue immediately.

## II.   THE PRELIMINARY INJUNCTION SHOULD ISSUE AS FOR CIVILIAN FEDERAL EMPLOYEES BECAUSE IT VIOLATES THE FIRST AMENDMENT AND RFRA.

The vaccine mandate on civilian federal employees substantially burdens their religious beliefs, and is therefore subject to strict scrutiny under RFRA. (*See* Pt. I.C, *supra*.) Moreover, the vaccine mandate policy creates a system of individualized exemptions, permitting the government to consider the particular reasons for an individual's refusal of a COVID-19 vaccine, and is therefore not generally applicable. *See Fulton v. City of Philadelphia*, 141 S. Ct. 1868, 1877 (2021). ("A law is not generally applicable if it 'invites the government to consider the particular reasons for a person's conduct by providing 'mechanism for individualized exemptions." (quoting *Emp't Div. v. Smith*, 494 U.S. 872, 884 (1990))). Such a burden on religious exercise that is not generally applicable is subject to strict scrutiny under the First Amendment. (PI Order at 16 (noting *Smith* distinguishes a generally applicable policy from "a circumstance in

which the state has in place a system of individual exemptions, in which case the state may not refuse to extend that system to cases of religious hardship without compelling reason." (cleaned up) (quoting *Smith*, 494 U.S. at 884)).)

First, the fact that the vaccine mandate purports to offer federal employees a mechanism for requesting and receiving religious and exemptions demonstrates that the mandate requires individualized consideration of employees' requests. *See Navy Seals 1-26*, 2022 WL 34443, at *11 ("[B]y accepting individual applications for exemptions, the law invites an individualized assessment of the reasons why [an individual] is not vaccinated.").) This fact alone renders the policy not generally applicable.

Second, the vaccine mandate exempts entire departments of the federal government from its requirements. (*See* Doc. 2 at 20.) The United States Postal Service and the Internal Revenue Service are entirely exempt from the same vaccine mandate imposed on federal employee Plaintiffs. (*Id.*) These blanket exemptions for federal employees of favored governmental units also prove a system of individualized exemptions treating some "comparable secular activity more favorably than religious exercise." *Tandon*, 141 S. Ct. at 1296. Federal employees unvaccinated for nonreligious reasons (i.e., working for the IRS) are treated better than employees unvaccinated for religious reasons.

Defendants' policy of individualized exemptions and unequal treatment demonstrates that the vaccine mandate is not neutral and generally applicable as to

federal employee Plaintiffs. The mandate is therefore subject to strict scrutiny on their RFRA and First Amendment challenges, which it cannot survive. (*See* Pt. I.E, *supra*.)

III. **THE PRELIMINARY INJUNCTION SHOULD ISSUE AS FOR CIVIILIAN FEDERAL EMPLOYEE PLAINTIFFS AND FEDERAL CIVILIAN CONTRACTOR EMPLOYER BECAUSE THE EXECUTIVE BRANCH LACKS AUTHORITY TO IMPOSE THE COVID-19 VACCINE MANDATE ON FEDERAL EMPLOYEES OR CONTRACTORS AND ISSUED THE MANDATE IN VIOLATION OF THE ADMINISTRATIVE PROCEDURES ACT.**

A. **The Executive Branch Lacks the Authority to Impose the COVID-19 Vaccine Mandate on Federal Employees and Contractors.**

As this Court has already held,

> Because the record in this action presents only a threadbare and conclusory rationalization that is incommensurate with the boundless expansiveness of the executive order's application, with the invasiveness of the executive order's requirement, and with the intrusion of the executive order into a state prerogative with which even Congress likely cannot interfere, I join Judges Van Tatenhove, Baker, and Noce in *Kentucky*, *Georgia*, and *Missouri* in concluding that Executive Order 14042 almost certainly exceeds the President's authority under FPASA.

*State of Florida v. Nelson*, No. 8:21-cv-2524-SDM-TGW, 2021 WL 6108948, at *11 (M.D. Fla. Dec. 22, 2021) (Merryday, J.)

The Sixth Circuit, too, has held that the President and the agencies to whom he purportedly delegated authority for the vaccine mandate lacked authority to issue such a mandate on federal contractors. *See Kentucky v. Biden*, No. 21-6147, 2022 WL 43178 (6th Cir. Jan. 5, 2022). Indeed, "if the President can order medical interventions in the name of reducing absenteeism, what is the logical stopping point of that power?" *Id.* at *15. The vaccine mandate on federal contractors "requires vaccination everywhere

and all the time. It is not 'anchored' to the statutory text, nor is it even 'anchored' to the work of federal contractors." *Id.* "We thus conclude that the federal government is unlikely to prevail on its argument that the Property Act authorizes imposition of the contractor mandate." *Id.* at 16.

There is no Executive Branch power to impose a vaccine mandate on every federal contractor, in every state, at all times, and for all places. The United States Code contains no grant of power this immensely broad. If the government could impose such a mandate on Plaintiff FEDERAL CIVILIAN CONTRACTOR EMPLOYER and other federal contractors, would federal law somehow "confer a *de facto* police power upon the President to dictate the terms and conditions of one-fifth of our workforce's lives?" *Id.* at \*15. Certainly not. There is no authority to issue or enforce the vaccine mandate on federal contractors, and the preliminary injunction should issue as for Plaintiff FEDERAL CIVILIAN CONTRACTOR EMPLOYER immediately.

Nor is there any Executive Branch power to impose a vaccine mandate on all civilian federal employees. *Today*, the Southern District of Texas issued a nationwide preliminary injunction against the COVID-19 Vaccine Mandate as for civilian federal employees. *See Feds for Med. Freedom v. Biden*, Mem. Op. and Order, No. 3:21-cv-356, Doc. 36 (S.D. Tex. Jan. 21, 2022) (attached hereto as Exhibit A.) The court held that the President's Executive Order 14043, imposing the Federal COVID-19 Vaccine Mandate on all federal employees, "amounts to a presidential mandate that all federal employees consent to vaccination against COVID-19 or lose their jobs," but that "the

President's authority is not that broad." *Feds for Med. Freedom* at 1. The court noted that the question was "whether the President can, with the stroke of a pen and without the input of Congress, require millions of federal employees to undergo a medical procedure as a condition of their employment," and that, "under the current state of the law as just recently expressed by the Supreme Court, [that] is a bridge too far." *Id.* at 2. The court provided a simple reason: "the Supreme Court has expressly held that a COVID-19 vaccine mandate is not an employment regulation. And that means the President was without statutory authority to issue the federal-worker mandate." *Id.* at 15. The concluded, as this Court should too, that "[t]he government has offered no answer—no limiting principle to the reach of the power they insist the President enjoys. For its part, this court will say only this: however extensive that power is, the federal-worker mandate exceeds it." *Id.* at 16.

### B. The COVID-19 Vaccine Mandate as to Federal Contractors Violates the Administrative Procedures Act Because It Exceeds the Executive Branch's Statutory Jurisdiction.

Under the Administrative Procedures Act, 5 U.S.C. § 706, "[t]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . in excess of statutory jurisdiction, authority, or limitations." 5 U.S.C. § 706(2)(C). The COVID-19 Vaccine Mandate, as to civilian federal contractors, is unlawful, not in accordance with law, and in excess of the government's authority because it was issued by the Office of Management and Budget, which has no authority to issue such a mandate. Moreover, as to federal contractors, the Vaccine Mandate is unlawful, not in accordance with law, and in excess of the government's

authority because it represents an unlawful attempt by the President to delegate authority to issue regulations under 41 U.S.C. § 1303 when he possesses no authority to issue such regulations himself.

Furthermore, as to federal contractors, the is unlawful, not in accordance with law, and in excess of Defendants' authority because it was issued at the direction of the President, not Congress, and "invokes the outer limits of Congress' power." *Solid Waste Agency of N. Cook Cnty. v. U.S. Army Corps of Eng'rs*, 531 U.S. 159, 172 (2001). The Court must "expect a clear indication that Congress intended" the OMB to possess such authority, *id.*, but no such clear indication of Congressional intent has been given, and no such indication could have been given because Congress lacks the authority to impose a mandate itself, much less delegate to an executive agency the authority to impose such a mandate. Congress did not authorize executive agencies, by virtue of their authority to enter procurement contracts with private companies, to concomitantly possess the right to mandate, direct, or otherwise require contractors or their employees to submit to mandates imposed by the executive agency. Congress did not give the OMB, and the President does not otherwise possess—by Constitution, statute, or otherwise—the right to impose a COVID-19 vaccine mandate on all entities contracting with the federal government.

Congress, itself, does not have the authority under the Constitution to issue a COVID-19 vaccine mandate on all federal employees.  At best, Congress would have to rely on the Commerce Clause to issue such a mandate itself, but Congress's authority to impose a COVID-19 vaccine mandate under the Commerce Clause is

utterly lacking because "a person's choice to remain unvaccinated and forego regular testing is noneconomic activity," and "while the Commerce Clause power may be expansive . . . it does not grant Congress the power to regulate noneconomic inactivity traditionally within the States' police power." *BST Holdings, L.L.C. v. OSHA*, 17 F.4th 604, 617 (5th Cir. 2021). Because Congress lacks the authority under the Constitution to do so, it could not have delegated to or otherwise given the OMB the authority to impose a COVID-19 Vaccine Mandate on all entities contracting with the federal government.

### C.   The COVID-19 Vaccine Mandate Violates the Administrative Procedures Act Because It Is Contrary to the Constitutional Rights of Federal Employees and Federal Contractors.

Under the Administrative Procedures Act, 5 U.S.C. § 706, "[t]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B). In addition to being in excess of the statutory jurisdiction afforded to the OMB, the Federal COVID-19 Vaccine Mandate is unlawful under the APA because it is contrary to a constitutional right, power, privilege, or immunity. As shown above (*see* Pt. II, *supra*), the Federal COVID-19 Vaccine Mandate and the corresponding refusals to review, consider, or grant religious exemptions and accommodations from the mandate are neither neutral nor generally applicable and cannot survive strict scrutiny, and are therefore contrary to the First Amendment rights of federal employees and federal contractors.

19

### D.     The COVID-19 Vaccine Mandate Violates the Administrative Procedures Act Because It Is Arbitrary and Capricious.

Under the Administrative Procedures Act, 5 U.S.C. § 706, "[t]he reviewing court shall . . . hold unlawful and set aside agency action, findings, and conclusions found to be . . . arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. §706(2)(A). An agency action is arbitrary and capricious where—as here—it fails to "examine the relevant data and articulate a satisfactory explanation for its action including a "rational connection between the facts found and the choice made." *Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mutual Auto Ins. Co.*, 463 U.S. 29, 43 (1983) (cleaned up). "If the administrative action is to be tested by the basis upon which it purports to rest, that basis must be set forth with such clarity as to be understandable." *SEC v. Chenery Corp.*, 332 U.S. 194, 196 (1947), and "[i]t will not do for a court to be compelled to guess at the theory underlying the agency's action." *Id.* at 196–97. The Court also cannot "be expected to chisel that which must be precise from what the agency has left vague and indecisive." *Id.* at 197.

"The agency must make findings that support its decision, and those findings must be supported by substantial evidence." *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 168 (1962). "The reviewing court should not attempt itself to make up for such deficiencies: [It] may not supply a reasoned basis for the agency's action that the agency itself has not given." *Motor Vechicle Mfrs. Ass'n*, 463 U.S. at 43 (cleaned up). The COVID-19 Vaccine Mandate is arbitrary and capricious under the APA because it fails to reflect the required reasoned decisionmaking.

The Federal COVID-19 Vaccine Mandate for civilian federal contractors—issued at the direction of the President—contains no reasons or rationale whatsoever. It contains no examination of the relevant data or any connection of that data to the stated rationale, nor is supported by compelling or substantial evidence. The Mandate, as to federal contractors, states only that it will "improve economy and efficiency by reducing absenteeism and decreasing labor costs for contractors and subcontractors working on or in connection with a Federal Government contract." 86 Fed. Reg. 53,691, 53,692 (Sept. 28, 2021). It makes no supported findings, fails to provide evidence for its findings, and impermissibly relies upon the Court to chisel precision out of its arbitrary and capricious—indeed, unstated—rationale.

## IV. PLAINTIFFS ARE SUFFERING IRREPARABLE HARM.

As the Supreme Court has recently affirmed, "[t]here can be no question that the challenged restrictions, if enforced, will cause irreparable harm. 'The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Here, because of Defendants' refusals to grant religious exemptions to the Vaccine Mandate, Plaintiffs face the unconscionable choice of violating their sincerely held religious beliefs or facing life-altering discharge from the military or termination of their federal employment or contracts. While such losses are not typically irreparable harm, they are in this case because they "are inextricably intertwined with Plaintiffs' loss of constitutional rights." *See Navy Seals 1-26*, 2022 WL 34443, at *13. "The crisis of conscience imposed by the

mandate is itself an irreparable harm." *Id.* "It is incorrect to say that Plaintiffs' harm is merely speculative at this stage. Plaintiffs are already suffering injury while waiting for the [government] to adjudicate their requests." *Id.* at *12.

As the Southern District of Texas recognized today, "the Hobson's choice employees face between their jobs and their jabs amounts to irreparable harm." *Feds for Med. Freedom* at 10 (quoting *BST Holdings, LLC v. OSHA*, 17 F.4th 604, 618 (5th Cir. 2021)). Indeed, "[r]egardless of what the conventional wisdom may be concerning vaccination, no legal remedy adequately protects the liberty interests of employees who must choose between violating a mandate of doubtful validity or consenting to an unwanted medical procedure that cannot be undone." *Id.*

## V.  PLAINTIFFS SATISFY THE OTHER REQUIREMENTS FOR A PRELIMINARY INJUNCTION.

When the government imposes a universal vaccine mandate on servicemembers, employees, and contractors, and purport to strip them of the ability to receive (or even request) exemption and accommodation for the exercise of their sincerely held religious beliefs, courts "have a duty to conduct a serious examination of the need for such a drastic measure." *Roman Catholic Diocese*, 141 S. Ct. at 68. And, as here, "it has not been shown that granting the applications will harm the public." *Id.* Nor could Defendants make such a showing, as Plaintiffs are merely seeking to rise each morning, don the same uniforms and protective equipment that sufficed to make them heroes for nearly two years, and continue to provide military defense, national

security, and critical federal services to a Nation in need. Plaintiffs' vaccination status was irrelevant to their service for nearly two years, and it is irrelevant today.

Moreover, the government "is in no way harmed by the issuance of an injunction that prevents the [government] from enforcing unconstitutional restrictions." *Legend Night Club v. Miller*, 637 F.3d 291, 302–03 (4th Cir. 2011). Conversely, for Plaintiffs, even minimal infringements upon First Amendment values constitute irreparable injury. *Roman Catholic Diocese*, 141 S. Ct. at 67. "Proper application of the Constitution, moreover, serves the public interest, as it is always in the public interest to prevent the violation of a party's constitutional rights." *Dahl v. Bd. of Trustees of W. Mich. Univ.*, 15 F.4th 728, 736 (6th Cir. 2021).

There is no comparison between the irreparable injury suffered by Plaintiffs and the non-existent interest Defendants have in enforcing unconstitutional mandates and depriving Plaintiffs of federally required protection of the exercise of their sincerely held religious beliefs. Absent an immediate preliminary injunction, Plaintiffs "face an impossible choice: [accept a vaccine] in violation of their sincere religious beliefs, or risk [termination] for practicing those sincere religious beliefs." *On Fire Christian Ctr., Inc. v. Fischer*, 453 F. Supp. 3d 901, 914 (W.D. Ky. 2020). The preliminary injunction should issue immediately to protect Plaintiffs' exercise of their sincerely held religious beliefs and ensure that federal protections afforded to them are honored by the Nation they faithfully and heroically serve each day.

## CONCLUSION

The Armed Forces' process for requesting and obtaining a religious exemption from the vaccine mandate is a sham to otherwise conceal a policy of "deny them all" (PI Order at 26). And their vaccine mandate policy is unquestionably discriminatory in that it has denied thousands of requests for religious exemption, and granted none, while granting thousands of requests for nonreligious, medical exemptions. The vaccine mandate as to civilian federal employees is likewise discriminatory because it exempts large swaths of the federal workforce, thereby creating a system of unjustified, individualized exemptions in violation of the First Amendment. And the vaccine mandate as to federal contractors is blatantly *ultra vires* and violates the APA. Because of these incurable deficiencies and constitutional infirmities, the preliminary injunction should issue.

/s/ Roger K. Gannam
Mathew D. Staver
Horatio G. Mihet
Roger K. Gannam
Daniel J. Schmid*
Richard L. Mast**
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854
(407) 875-1776
court@lc.org
hmihet@lc.org
rgannam@lc.org
dschmid@lc.org*
rmast@lc.org*
*Admitted pro hac vice
**Application for admission
pro hac vice forthcoming
***Attorneys for Plaintiffs***

24

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this January 21, 2022, I caused a true and correct copy of the foregoing to be electronically filed with the Court. Service will be effectuated on all counsel of record via the Court's ECF/electronic notification system.

/s/ Roger K. Gannam
Roger K. Gannam
