# UNITED STATES DISTRICT COURT
# MIDDLE DISTRICT OF FLORIDA

| | | |
|---|---|---|
| NAVY SEAL 1, *et al.*, for themselves and all others similarly situated, | ) ) ) | |
| Plaintiffs, | ) ) | No. 8:21-cv-2429-SDM-TGW |
| v. | ) ) | |
| JOSEPH R. BIDEN, in his official capacity as President of the United States, *et al.*, | ) ) ) ) | |
| Defendants. | ) ) | |

## PLAINTIFFS' MOTION FOR LEAVE TO PROCEED PSEUDONYMOUSLY

Plaintiffs move the Court for leave to proceed pseudonymously pursuant to a protective order prohibiting public disclosure of their identities and further prohibiting disclosure beyond the Government's attorneys and other representatives to whom disclosure is reasonably necessary for the Government's defense of this action. Plaintiffs state as follows in support of this motion:

## MEMORANDUM OF LAW IN SUPPORT

"[A] party to a civil action—whether defendant or plaintiff—may proceed using pseudonyms when the particular circumstances of the case justify pseudonymity." *Doe v. Providential Life & Accident Ins. Co.*, 176 F.R.D. 464, 466 (E.D. Pa. 1997). Indeed, "the Supreme Court has given the practice implicit recognition" in cases involving sensitive issues of a private or highly personal nature. *Doe v. C.A.R.S. Protections Plus, Inc.*, 527 F.3d 358, 371 n.2 (3d Cir. 2008) (citing *Roe v. Wade*, 410 U.S. 113 (1973); *Doe v. Bolton*, 410 U.S. 179 (1973)). Thus, while there is a presumption that parties'

identities are public information, "the rule is not absolute. A party may proceed anonymously in a civil suit in federal court by showing that he has a substantial privacy right which outweighs the customary and constitutionally-embedded presumption of openness in judicial proceedings." *Plaintiff B v. Francis*, 631 F.3d 1310, 1315–16 (11th Cir. 2011) (cleaned up).

"Whether a party's right to privacy outweighs the presumption of openness is a 'totality-of-the-circumstances question.'" *Doe v. Neverson*, 820 F. App'x 984, 986 (11th Cir. 2020) (quoting *In re Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1247 n.5 (11th Cir. 2020)). The first step in the relevant inquiry is to apply a three-factor test:

> Those factors include whether the party seeking anonymity (1) is challenging government activity; (2) would be compelled, absent anonymity, to disclose information of utmost intimacy; or (3) would be compelled, absent anonymity, to admit an intent to engage in illegal conduct and thus risk criminal prosecution.

*Chiquita Brands*, 965 F.3d at 1247; *see also Doe v. Frank*, 951 F.2d 320, 323 (11th Cir. 1992) (same). "Along with these factors, a court 'should carefully review *all* the circumstances of a given case and then decide whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns.'" *Chiquita Brands*, 965 F.3d at 1247 (quoting *Plaintiff B v. Francis*, 631 F.3d 1310, 1316 (11th Cir. 2011)).

Other factors include whether a plaintiff could be subject to retaliation or physical violation and whether proceeding anonymously poses a "unique threat of fundamental unfairness to the defendant." *Doe v. Rollins Coll.*, No. 6:16-cv-2232-Orl-

37KRS, 2017 WL 11610361, at *1 (M.D. Fla. Mar. 22, 2017). Plaintiffs satisfy the Eleventh Circuit's three-part inquiry, and the totality of all circumstances favor leave to proceed pseudonymously.

## I. PLAINTIFFS SHOULD BE ALLOWED TO PROCEED PSEUDONYMOUSLY BECAUSE THEY WOULD OTHERWISE BE REQUIRED TO PUBLICLY DISCLOSE INFORMATION OF THE UTMOST INTIMACY.

### A. Plaintiffs' Decisions Relating to Their Health Care and Medical Treatment Are Matters of the Utmost Intimacy Warranting Their Use of Pseudonyms.

Plaintiffs should be allowed to proceed pseudonymously because their claims are tied to sensitive and private medical decisions. Plaintiffs are all private citizens who sought religious accommodation from a government vaccine mandate directly affecting their health care. (Compl., Doc. 1, ¶ 1.) They commenced this action to challenge the denial of religious accommodations for specific, personal, and private medical decisions concerning their healthcare (i.e., to decline COVID-19 vaccination on religious grounds) based on Defendants' sham exemption policy that denies all religious accommodations and punishes Plaintiffs for exercising their religious beliefs. The primary issue is whether the First Amendment and RFRA require the federal government to accommodate Plaintiffs' sincerely held religious beliefs. And there is a "long tradition in both federal and state courts of permitting parties to proceed anonymously when they have a strong privacy interest in doing so." *Anonymous v. Legal Servs. Corp. of Puerto Rico*, 932 F. Supp. 49, 50 (D.P.R. 1996). "Historically, courts have permitted plaintiffs to proceed pseudonymously in cases involving . . . sensitive

medical conditions, and certain religious observances, among others." *Doe v. Cook Cnty.*, No. 1:20-cv-5832, 2021 WL 2258313, *3 (N.D. Ill. June 3, 2021).

Caselaw demonstrates nearly universal acceptance of pseudonymous plaintiffs in cases involving the fundamentally private issues of their medical histories, conditions, and decisions. *See, e.g.*, *Roe v. Wade*, 410 U.S. 113 (1973) (plaintiffs' pregnancy and healthcare decisions); *Doe v. Bolton*, 410 U.S. 179 (1973) (same); *Doe v. Gaughan*, 808 F.2d 871 (1st Cir. 1986) (plaintiffs' mental health conditions); *Roe v. City of Milwaukee*, 37 F. Supp. 2d 1127, 1129 (E.D. Wis. 1999) (granting use of pseudonym where "in modern society [plaintiff's medical condition] is still considered a stigma"); *W.G.A. v. Priority Pharm., Inc.*, 184 F.R.D. 616, 617 (E.D. Mo. 1999) (allowing plaintiff to proceed under pseudonym in action involving plaintiff's prescription medication for medical condition which was "a personal matter of the utmost intimacy" where "personal embarrassment, ostracism, harassment and discrimination . . . might result from disclosure"); *Anonymous v. Legal Servs. Corp. of Puerto Rico*, 932 F. Supp. 49, 50 (D.P.R. 1996) (finding plaintiff's privacy interest in mental health condition sufficient to proceed anonymously in accordance with "long tradition in both federal and state courts of permitting parties to proceed anonymously when they have a strong privacy interest in doing so"); *Doe v. Sessions*, No. 18-0004(RC), 2018 WL 4637014, at *4 (D.D.C. Sept. 27, 2018) (granting leave to proceed pseudonymously in action involving "sensitive, highly personal matter" of plaintiff's medical condition); *Doe v. Standard Ins. Co.*, No. 1:15-cv-00105-GZS, 2015 WL 5778566 (D. Me. Oct. 2, 2015)

(granting leave to proceed pseudonymously to protect plaintiff's privacy interest in medical condition and treatment at issue); *Roe v. Catholic Health Initiatives Colo.*, No. 11-cv-021799-WYD-KMT, 2012 WL 12840 (D. Colo. Jan. 4, 2012) (granting leave to proceed pseudonymously to protect from disclosure of confidential medical information); *Doe v. Provident Life & Accident Ins. Co.*, 176 F.R.D. 464, 470 (E.D. Pa. 1997) (granting plaintiff leave to proceed pseudonymously where "strong probability that he will be stigmatized in the community if his name is revealed" in connection with medical condition and treatment at issue); *Doe v. Deschamps*, 64 F.R.D. 652, 653 (D. Mon. 1974) (allowing plaintiff to proceed anonymously in case involving pregnancy and medical decisions of "intensely personal nature" where "clear that a practice has developed permitting individuals to sue under fictitious names where the issues involved are matters of a sensitive and highly personal nature").

When a case involves plaintiffs who are "the recipients of certain medical treatment" at issue, "the desire to maintain the anonymity of the [plaintiffs] is motivated by legitimate reasons." *Bryan C. v. Lambrew*, No. 1:21-cv-00005-NT, 2021 WL 242422, *1 (D. Me. Jan. 25, 2021). Here, the gravamen of Plaintiffs' claims is inextricably intertwined with their receipt of (or request not to receive) certain medical treatment. (Compl., ¶¶ 1, 17–41, 58–88.) Thus, Plaintiffs' request to proceed under a pseudonym is legitimate and compelling.

### B.   Plaintiffs' Religious Beliefs Are Matters of the Utmost Intimacy Warranting the Use of Pseudonyms.

As recognized in binding precedent, "religion is perhaps the quintessentially private matter." *Doe v. Stegall*, 653 F.2d 180, 186 (5th Cir. 1981).[1] Indeed, "[t]he information of utmost intimacy standard applies to cases involving . . . prayer and personal religious beliefs." *Plaintiff B v. Francis*, 631 F.3d 1310, 1316 (11th Cir. 2011). This Court also has held that matters involving personal religious beliefs are appropriate for pseudonymous proceedings. *See, e.g.*, *Doe v. Rollins Coll.*, No. 6:16-cv-2232-Orl., 2017 WL 11610361, at *2 (M.D. Fla. Mar. 22, 2017) ("As to the second factor, the Eleventh Circuit has noted that information of the utmost intimacy includes issues such as abortion, prayer and personal religious beliefs."). Other district courts in the Eleventh Circuit have likewise recognized religion and religious belief as matters of the utmost intimacy warranting use of pseudonyms. *See, e.g.*, *Doe v. Barrow Cnty.*, 219 F.R.D. 189, 193 (N.D. Ga. 2003) (same); *id.* (noting involvement of "religious beliefs" and "the proper interaction between government and religion" are sufficiently private to warrant a plaintiff's proceeding anonymously); *Freedom From Religion Found., Inc. v. Emanuel Cnty. Sch. Sys.*, 109 F. Supp. 3d 1353, 1357 (S.D. Ga. 2015) (concluding factor warranting pseudonym use—"whether plaintiffs will be compelled to disclose information of the 'utmost intimacy'—also applies, for plaintiffs' suit touches upon their beliefs about religion, a topic deemed by this circuit to be 'the

---

[1]     *Doe v. Stegall* is binding in the Eleventh Circuit under *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

quintessentially private matter.'" (quoting *Stegall*, 653 F.2d at 186)). Other circuits, too, have recognized that proceeding pseudonymously is appropriate when a plaintiff's religious convictions are at issue. *See, e.g.*, *Doe v. Porter*, 370 F.3d 558, 560 (6th Cir. 2004) (affirming district court order allowing pseudonymous plaintiffs where "suit—challenging a government activity—forces Plaintiffs to reveal their beliefs about a particularly sensitive topic that could subject them to considerable harassment").

In *Doe v. Barrow County*, the district court considered a plaintiff's motion to proceed pseudonymously while challenging a religious display on government property. 219 F.R.D. at 190.[2] The court noted at the outset that while public access to

---

[2]      The *Barrow County* court denied the defendants' motion to dismiss for lack of jurisdiction, expressly rejecting the defendants' argument that the plaintiffs' filing of his complaint under a pseudonym was a nullity because the plaintiff did not contemporaneously seek leave to do so and thereby prevented the court from obtaining jurisdiction of the action. 219 F.R.D. at 192. The court disagreed with *Estate of Rodriquez v. Drummond Co.*, 256 F. Supp. 2d 1250 (N.D.Ala.2003) (holding no jurisdiction over anonymous plaintiffs who filed under pseudonyms without first seeking leave of court), and instead adopted the reasoning of *EW v. New York Blood Ctr.*, 213 F.R.D. 108, 109 (E.D.N.Y.2003) ("[T]he federal rule [17(a)] itself indicates that failing to bring an action in the name of the real party in interest does *not* immediately and automatically divest a district court of jurisdiction."). The *Barrow County* court also found support in two Eleventh Circuit opinions which, although not directly addressing the relationship between jurisdiction and the timing of a motion to proceed pseudonymously, considered the merits of motions to proceed pseudonymously filed after motions to dismiss. *See* 219 F.R.D. at 192 ("[T]he Eleventh Circuit would have been under a duty to consider the issue *sua sponte* if jurisdiction was lacking.") (citing *Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678 (11th Cir.2001), and *Doe v. Frank*, 951 F.2d 320 (11th Cir.1992)). Defendants in this case made a similar jurisdictional argument, for the first time, in their First Notice of Compliance filed January 7, 2022 (Doc. 47) at p. 3 (misleadingly indicating that the jurisdictional argument was raised in Defendants' opposition to Plaintiffs' preliminary injunction motion). This Court should follow *Barrow County*, both in rejecting the jurisdictional argument and granting leave to proceed pseudonymously.

information is important, the plaintiff was merely trying to shield his name from public disclosure, not his constitutional claims or the court's proceedings thereon. *Id.* at 193. And while the plaintiff did not have to explicitly state his religious beliefs in order to prosecute his lawsuit, he had to prove injury as a result of the display to establish standing. *Id.* Thus, the court reasoned, his "explanation will necessarily require him to reveal his beliefs concerning the proper interaction between government and religion." *Id.* Because the majority of the community in which the plaintiff lived supported the display, "the court recognize[d] that such concerns can implicate privacy matters similar to those associated with actual religious teachings and beliefs. Accordingly, the court acknowledge[d] plaintiff's privacy concerns." *Id.*

The same considerations weigh even more heavily for Plaintiffs here. Plaintiffs have plainly stated to their employers their sincerely held religious beliefs against receiving any of the COVID-19 vaccines, as was necessary to seek a religious exemption, and pseudonymously in their Complaint, as necessary to establish standing and state a claim challenging the Vaccine Mandate and its phantom religious exemption policy under the First Amendment and RFRA. (Compl., ¶¶ 58–88, 98–115.) Thus, Plaintiffs' claims and their underlying factual bases are public. Plaintiffs have not, however, disclosed their identities to the public at large. Requiring Plaintiffs to identify themselves to the public at large would necessarily result in public disclosure of the "quintessentially private matter[s]" of Plaintiffs' personal religious beliefs. *Stegall*, 653 F.2d at 186.

## II. PLAINTIFFS SHOULD BE ALLOWED TO PROCEED PSEUDONYMOUSLY BECAUSE THEY ARE CHALLENGING GOVERNMENT ACTIVITY.

Plaintiffs challenge government activity—namely, the Federal COVID-19 Vaccine Mandate. The government activity factor for proceeding pseudonymously, therefore, weighs in favor of Plaintiffs. *See Stegall*, 653 F.2d at 186; *see also Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 686 (11th Cir. 2001) ("One of the factors the [*Stegall*] Court identified was that plaintiffs seeking anonymity were often challenging governmental activity.").

## III. PLAINTIFFS' RELIGIOUS OBJECTIONS TO COVID-19 VACCINATION SUBJECT THEM TO STIGMA AND OSTRACIZATION AND A SUBSTANTIAL THREAT OF REAL PHYSICAL HARM JUSTIFYING PROCEEDING PSEYDONYMOUSLY.

Plaintiffs should also be allowed to proceed under pseudonyms because of the legitimate danger of stigma, ostracization, retaliation, and other harms from public disclosure of their identities. The danger of harm from the public disclosure of a plaintiff's identity is a substantial factor in determining whether a court should grant leave to proceed pseudonymously. *See, e.g.*, *Stegall*, 653 F.2d at 186 ("The threat of hostile public reaction to a lawsuit, standing alone, will only with great rarity warrant public anonymity. But the threats of violence generated by this case, in conjunction with the other factors weighing in favor of maintaining the Does' anonymity, tip the balance against the customary practice of judicial openness."); *see also Doe v. City of Chicago*, 360 F.3d 667 (7th Cir. 2004) ("The danger of retaliation is often a compelling ground for allowing a party to litigate anonymously . . . ."); *United States v. Doe*, 655

F.2d 920, 922 n.1 (9th Cir. 1981) ("Where it is necessary . . . to protect a person from harassment, injury, ridicule or personal embarrassment, courts have permitted the use of pseudonyms."); *Doe v. St. Clair Cnty.*, No. 18-CV-380-SMY-SCW, 2018 WL 1071744, at *1 (S.D. Ill. Feb. 26, 2018) ("Plaintiff lives in fear of retaliation and has legitimate fears of humiliation for bringing this lawsuit. The Court finds that revealing Plaintiff's name will potentially expose her to the risk of retaliation by members of the public.").

In *Does 1–6 v. Mills*, No. 1:21-cv-242-JDL, 2021 WL 4005985 (D. Me. Sept. 2, 2021), the district court was presented with nearly identical challenges to a government COVID-19 vaccine mandate, and concluded, "Plaintiffs have a reasonable fear of harm that outweighs the public's interest in open litigation." 2021 WL 4005985, at *2. The court based its conclusion, in part, on its "judicial notice of the substantial public controversy currently surrounding public and private mandates requiring individuals to be vaccinated for the COVID-19 coronavirus or to provide proof of vaccination status." *Id.*

The district court in *Doe 1 v. Northshore University HealthSystem*, No. 21-cv-05683, 2021 WL 5578790 (C.D. Ill. Nov. 30, 2021), also found that proceeding pseudonymously was appropriate in an action challenging the denial of religious exemptions from the COVID-19 vaccine mandate of a public employer. 2021 WL 5578790, at *9. The court noted "news articles and online comments" cited by the plaintiffs "in which commenters ridicule or insult Plaintiffs and call for them to be fired," as well as "'broader sentiment around the country' and 'threats, ridicule,

ostracism, harassment, scorn and opprobrium directed more generally at those who, like [Plaintiffs], have religious objections to receiving a COVID-19 vaccine.'" *Id.* (modification in original). The court found that the plaintiffs' citations "demonstrate[d] 'risk of serious social stigmatization surpassing a general fear of embarrassment.'" *Id.* The court also noted the harassment and intimidation the plaintiffs had already received at work. *Id.* at *10. Thus, the court concluded, "[i]n addition to the arguments involving medical records and the private nature of religious beliefs, these concerns suffice to overcome the 'strong presumption of public access.'" *Id.* (cleaned up).

In *Does 1 through 11 v. Board of Regents of the University of Colorado*, No. 21-cv-02637-RM-KMT, 2022 WL 43897 (D. Colo. Jan. 5, 2022), the district court likewise permitted plaintiffs challenging a mandatory COVID-19 vaccine policy on religious grounds to proceed pseudonymously primarily because of "the political climate and public attitudes concerning those who refuse vaccination from COVID-19." 2022 WL 43897, at *3.  The court credited the plaintiffs' showing, from their complaint and online media, "that if outside persons know they have chosen to be unvaccinated, they are personally subject to a substantial risk of retaliation, including physical harm." 2022 WL 43897, at *3 (noting online comment, "'The anti-vaxers are ignorant trash and don't deserve to live. Gun them down while they're all in one place and let God sort it out,'" and public remarks of President Biden towards the unvaccinated, "'We've been patient, but our patience is wearing thin, and the refusal has cost all of us . . . .'"). The court also credited the plaintiffs' argument that public disclosure of their identities

would harm their future employment prospects. *Id.* The court concluded, "[t]here is no question that there exists in our nation a certain enmity from some persons in society against those persons who choose not to become vaccinated," and that the plaintiffs had "presented evidence that supports their contention that choosing not to become vaccinated can stigmatize an individual as uncaring for the well-being of others." *Id.* at *4 (footnote omitted). Thus, the court held, "the Plaintiffs have a substantial privacy right in protecting against public knowledge of their identities that outweighs the presumption of openness in judicial proceedings." *Id.* at *5.

All the same considerations that justified pseudonymous proceedings in *Does 1–6*, *Doe 1*, and *Does 1 through 11*, *supra*, justify allowing Plaintiffs to proceed pseudonymously in this case. Not only have Plaintiffs demonstrated current harassment, intimidation, and retaliation at work as a result of their religious objections to vaccination (Compl., ¶¶ 17–41, 98–113; Declaration of Richard L. Mast (attached hereto as Exhibit A, "Mast Declaration"), ¶ 4), *see Doe 1*, *supra*, and harm to their future employability as a result of their religious and legal positions if their identities are disclosed (Mast Decl., ¶ 12), *see Does 1 through 11*, *supra*, but Plaintiffs have also demonstrated a legitimate danger of stigma, ostracization, retaliation, and other harms from the public if forced to reveal their identities beyond Defendants' necessary representatives (Mast. Decl., ¶¶ 5–11).

The President himself—servicemember Plaintiffs' Commander in Chief—in remarks to the American public, disparaged and stigmatized unvaccinated Americans

such as Plaintiffs as uncaring, immoral, dangerous, and responsible for widespread illness and death—even the pandemic itself—and ginned up animus towards them:

- "This is a pandemic of the unvaccinated.  And it's caused by the fact that . . . we still have nearly 80 million Americans who have failed to get the shot."

- "The vast majority of Americans are doing the right thing. Nearly three quarters of the eligible have gotten at least one shot, but one quarter has not gotten any.  . . . That 25 percent can cause a lot of damage—and they are."

- "For the vast majority of you who have gotten vaccinated, I understand your anger at those who haven't gotten vaccinated."

- "Many of us are frustrated with the nearly 80 million Americans who are still not vaccinated . . . ."

- "We've been patient, but our patience is wearing thin. And your refusal has cost all of us."

- "[A] distinct minority of Americans . . . are keeping us from turning the corner."

- "The bottom line: We're going to protect vaccinated workers from unvaccinated co-workers."

- "[W]e've had record job creation for a new administration, economic growth unmatched in 40 years.  We cannot let unvaccinated . . . undo it, turn it back."

(Mast. Decl., ¶ 5.)

Media posts and associated public comments ridiculing Plaintiffs' sincerely held religious beliefs and threatening or calling for action against their livelihoods and personal safety as unvaccinated Americans include public reaction to a virtually identical lawsuit challenging the State of Maine's COVID-19 Vaccine Mandate for healthcare workers, which comments are representative of a general public sentiment

against religious objectors to vaccination and evidence the societal stigma against the

unvaccinated:

- "Well one would have to wonder if the above is really true since both these deplorable 'Christian' sociopathic groups see no harm in placing innocents at risk of serious long term health problems or death."

- "These people turn my stomach! Somebody's fake religion has nothing to do with our health. Such a lawsuit shouldn't even be considered by the court. In fact, maybe as citizen, Americans ought to be suing the fools who put this lawsuit together."

- "The Liberty Counsel is the Christian American Taliban."

- "This dangerous and deadly public health matter presents an opportunity to further control those who look to [religion] for spiritual nourishment."

- "When your choice endangers everyone around you, you are a public threat, and should be incarcerated, just as you would be if you were firing a gun at random in a crowd."

(Mast Decl., ¶ 6.)

Likewise representative of a general public sentiment against religious objectors

to vaccination and evidencing the societal stigma against the unvaccinated are the

public comments on news reports about a similar lawsuit challenging an Illinois public

healthcare employer's COVID-19 vaccine mandate on religious grounds:

- "let them forgo the shots I say AND fire them…they'll infect their entire family and they'll all leave the gene pool...win win"

- "Fools and Kowards hide behind a book of fairy tales"

- "The number of nurses refusing the vaccine is roughly on par with the number of nurses that turn out to be serial killers Coincidence?"

- "90% are heroes. It's the science denying, ignorant, stubborn and stupid ones that are getting let go.

- "Fire their asses. Let them go work at a church."

- "Fire those religious hysteric anti vaxx kooks!"

- "no exemptions your mental illness has no place in science except to study get the vaccine or get in the unemployment line"

(Mast Decl., ¶ 7.)

Other representative comments from news organization social media sites reporting on religious objections to COVID-19 vaccine mandates call religious objectors "killers" and "traitors," and call for their permanent quarantine, permanent unemployment, public humiliation, and even death:

- "It is unbelievable how many stupid unvaccinate people live in this country. They just continue to make stupid excuses not to get vaccinate. Maybe y'all should just get together in a group get a pistol & play roulette."

- "If you want to take part in a post-COVID19 world you'll have to be vaccinated, or live permanently in isolation until you change your mind."

- "Ppl who are not getting vaccinated are traitors, who are killing other Americans."

- "Now the only thing lacking is to turn out these selfish religious lawbreakers to the camps. I say these self righteous ones who claim the Book denounces murdering of innocents might be branded as seditious. All tolled, it will serve society best if only those who Want to Save Lives are allowed to work or receive unemployment.

  "We can march them out into the street and pin crosses on them."

- "It's called quarantine. We need to isolate the plague spreading fools from the sane and treatable. You are a liar and promote mass death. Hell is too kind a place for those like you."

- "Phuq you. The anti vax have a voice. They are just rightly ignored for being dangerous idiots. You decline to be vaccinated you are telling the public you want them to unnecessarily suffer and die from a disease."

(Mast Decl., ¶¶ 8–9.)

Other examples of hostility towards religious objectors such as Plaintiffs abound. A recent guest on an MSNBC program referred to those seeking religious exemptions as "bioterrorists" and called for "drone strikes" against those who object to mandatory vaccines. (Mast Decl., ¶ 10.) A commentator on ABC News's *This Week* stated that the government should "just make it almost impossible for people to—to live their lives without being protected and protecting the rest of us." (Mast Decl. ¶ 10.) Another national commentator stated that those with religious objections to the vaccine are "shrieking anti-vaccine maniacs who are doing their level best to put more children in intensive care" and "should be exiled from society until they get their shots." (Mast Decl., ¶ 10.)

Finally, servicemember Plaintiffs have a unique concern: Publicly revealing their identities in this action may lead to violence against them and their families by America's enemies, as urged, for example, by ISIS. (Mast Decl., ¶ 11.)

The intensity of the invective and opprobrium directed against unvaccinated Americans such as Plaintiffs, even suggesting rounding them up for permanent isolation or public punishment—or death—demonstrates the legitimacy of Plaintiffs' fears of harm from disclosure of their identities. As in *Doe v. Stegall*, there is ample evidence that "the Does may expect extensive harassment and perhaps even violent reprisals if their identities are disclosed to [the] community hostile to the viewpoint

16

reflected in plaintiffs' complaint." 653 F.2d at 186; *see also Does 1–6*, *Doe 1*, and *Does 1 through 11*, *supra*. Indeed, the threats being leveled against all manner of individuals declining COVID-19 vaccination in obedience to conscience suggests there is "a real danger of physical harm" to Plaintiffs. *Doe v. Frank*, 951 F.2d 320, 324 (11th Cir. 1992).

## IV. PLAINTIFFS FACE THE UNCONSCIONABLE CHOICE OF ABANDONING MERITED CLAIMS IF FORCED TO PUBLICLY IDENTIFY THEMSELVES.

Another factor federal courts have considered in determining whether to allow pseudonymous proceedings "asks if the litigant will choose to sacrifice a claim to preserve his anonymity." *Doe v. Regional Sch. Unit No. 21*, No. 2:19-00341-NT, 2020 WL 2833248, at *3 (D. Me. May 29, 2020). Where a plaintiff "avers that he will not prosecute his claims if he must do so in his own name, this factor weighs in plaintiff's favor." *Doe v. Trustees of Dartmouth Coll.*, No. 18-cv-040-LM, 2018 WL 2048385, at *6 (D.N.H. May 2, 2018). Plaintiffs have established that they would not have commenced this action in their own names due to the harassment and retaliation they have already experienced at work and the public stigma and ostracization of the unvaccinated they have already observed. (Mast Decl., ¶ 13.) All Plaintiffs desire to proceed with a determination of the merits of their claims against Defendants, but, if required to publicly disclose their personal identities, medical decisions relating to the COVID-19 vaccines, and personal religious beliefs concerning vaccination, no Plaintiff will desire to further pursue their claims under the increasing public stigma of being unvaccinated and associated harassment and threats. (Mast Decl., ¶ 13.) Many Plaintiffs, if faced with that choice, may decide to abandon their merited claims rather

than proceed under such undue hardship. (Mast Decl., ¶ 13.) Moreover, if any Plaintiff "is forced to reveal his or her name . . . other similarly situated litigants [will] be deterred from litigating claims that the public would like to have litigated." *Doe v. Trustees of Dartmouth Coll.*, 2018 WL 2048385, at *6 (quoting *Doe v. Megless*, 654 F.3d 404, 410 (3d Cir. 2011)). Neither Plaintiffs nor those similarly situated should be put to such a choice.

**V.   PLAINTIFFS SHOULD BE ALLOWED TO PROCEED PSEUDONYMOUSLY BECAUSE THE PUBLIC HAS AN ATYPICALLY WEAK INTEREST IN KNOWING PLAINTIFFS' IDENTITIES IN PURELY LEGAL CHALLENGES, AND THE PUBLIC'S RIGHT TO FOLLOW THE PROCEEDINGS WILL NOT BE IMPEDED.**

   **A.   The Public Has an Atypically Weak Interest in Plaintiffs' Identities for Pure Legally Challenges.**

Because of the purely legal questions primarily at issue in this litigation, namely whether the First Amendment and RFRA compel the Government to accommodate Plaintiffs' sincerely held religious beliefs, the public has an atypically weak interest in knowing the identity of Plaintiffs. "When a case raises questions that are purely legal there is an atypically weak public interest in the identity of the litigants." *Doe v. Princeton Univ.*, No. 19-7853 (BRM), 2019 WL 5587327, at *5 (D.N.J. Oct. 30, 2019); *see also L.A. v. Hoffman*, No. 14-6895(FLW)(DEA), 2015 WL 4461852, at *2 (D.N.J. July 21, 2015) (holding plaintiffs could proceed pseudonymously because "Plaintiffs bring a constitutional challenge to a statute as it applies to a general class of people and therefore the individual facts and circumstances surrounding each Plaintiff are not of central importance to Plaintiffs' claims"); *Lozano v. City of Hazelton*, 496 F. Supp. 2d

477, 513 (M.D. Pa. 2007) ("The subject matter of this litigation is primarily constitutional law, and the identities of the particular plaintiffs are not as important to the outcome of the litigation as the legal arguments they raise.").

Indeed, the public's interest is more aligned with not disclosing Plaintiffs' identities. "[T]here is a substantial public interest in ensuring that litigants not face such retribution in their attempt to seek redress for what they view as a Constitutional violation." *Freedom From Religion Found., Inc. v. Connellsville Area Sch. Dist.*, No. 2:12-cv-1406, 2013 WL 2296075, at *2 (W.D. Pa. May 24, 2013); *id.* at *3 ("[T]he issue in this case does not turn on the identity of the Plaintiff, and the Court presently does not see how denying Plaintiffs' request will interfere with the public's right to follow the proceedings, which will be kept open to the public while maintaining the confidentiality of the Does' identities."); *see also Bryan C. v. Lambrew*, No. 1:21-cv-00005-NT, 2021 WL 242422, at *1 (D. Me. Jan. 25, 2021) (noting public interest aligns with not deterring other similarly situated litigants from pursuing merited claims).

This case is not about whether Plaintiffs' religious beliefs are sincere, and answering the purely legal questions of whether the First Amendment and RFRA require the Government to accommodate Plaintiffs' religious beliefs does not depend on Plaintiffs' identities. Nor does any potential factual question regarding the Government's ability to accommodate religious objectors in general, or any Plaintiff in particular, because such questions can be determined without reference to Plaintiffs' identities.

**B.      Granting Plaintiffs Leave to Proceed Pseudonymously Will Not Impede the Public's Right to Follow the Proceedings.**

In balancing whether a plaintiff should be permitted to proceed pseudonymously with the public's general right to open proceedings, courts have counted the fact that the proceedings themselves will be open in favor of a plaintiff's proceeding pseudonymously. As one district court explained, "although the issues in the Amended Complaint may be of some interest to the public, Doe's use of a pseudonym will not interfere with the public's right or ability to follow the proceedings. Indeed, this Court intends to keep the proceeding open to the public while still maintaining the confidentiality of plaintiff's identity." *Doe v. Provident Life & Accident Ins. Co.*, 176 F.R.D. 464, 468 (E.D. Pa. 1997). Here, Plaintiffs do not seek sealing or any other mechanism to prevent access to the proceedings. Allowing Plaintiffs to proceed pseudonymously will not restrict the public's ability to see the evidence and arguments presented in the case, and Plaintiffs welcome such public access.

**C.      Plaintiffs' Status as Private Individuals Warrants Allowing Pseudonyms.**

Where a plaintiff is not a public figure, "the public's interest in the subject matter 'will not be impeded merely because plaintiff's identity is kept private.'" *Doe v. Regional Sch. Unit No. 21*, 2020 WL 2833248, at *4 (quoting *Doe v. Trustees of Dartmouth Coll.*, 2018 WL 2048385, at *7); *see also Doe v. Princeton Univ.*, 2019 WL 5587327, at *6. Plaintiffs are private litigants who do not wish to become public figures (Mast Decl., ¶ 3), which weighs in favor of granting them leave to proceed pseudonymously.

## VI.    DEFENDANTS WILL SUFFER NO PREJUDICE FROM PLAINTIFFS' PROCEEDING PSEUDONYMOUSLY.

In determining whether a defendant may be prejudiced by a plaintiffs' proceeding pseudonymously, "courts look at the damage to a defendant's reputation caused by the anonymous proceeding, the difficulties in discovery, as well as at the fundamental fairness of proceeding in this manner." *EW v. New York Blood Ctr.*, 213 F.R.D. 108, 112 (E.D.N.Y. 2003). Under these factors, Defendants will suffer no prejudice from allowing Plaintiffs to proceed pseudonymously.

The Government will suffer no damage to its reputation as a result of Plaintiffs' proceeding pseudonymously. The Government's positions on the issues involved in this litigation are already well known and a matter of national discussion and practice. The Government is not granting any religious exemptions to its COVID-19 Vaccine Mandate and does not seem to care who knows it. This is not a case where, for example, "the nature of the allegations . . . are graphic and serious," or "the reputational damage risk to Defendant is high and fairness requires that plaintiff be prepared to stand behind her charges publicly." *Doe v. Townes*, No. 19-cv-8034 (ALC) (OTW), 2020 WL 2395159, at *6 (S.D.N.Y. May12, 2020) (cleaned up).

Plaintiffs seek to shield their identities only from the public, not from the Government's representatives for whom knowledge of Plaintiffs' identities is reasonably necessary to the Government's defense. Such disclosure to the Government's representatives under an appropriate protective order obviates any discovery difficulties or fundamental fairness issues.

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs leave to proceed pseudonymously pursuant to a protective order prohibiting public disclosure of their identities and further prohibiting disclosure beyond the Government's attorneys and other representatives to whom disclosure is reasonably necessary for the Government's defense of this action.

/s/ Roger K. Gannam
Mathew D. Staver
Horatio G. Mihet
Roger K. Gannam
Daniel J. Schmid*
Richard L. Mast**
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854
(407) 875-1776
court@lc.org
hmihet@lc.org
rgannam@lc.org
dschmid@lc.org
rmast@lc.org
*Admitted specially
**Application for special admission
pending

*Attorneys for Plaintiffs*

## <u>Local Rule 3.01(g) Certification</u>

The undersigned counsel for Plaintiffs conferred with Defendants' counsel by e-mail correspondence and is authorized to represent to the Court that Defendants oppose Plaintiffs' proceeding pseudonymously in this case and will file a response in opposition to this motion, but that the parties will attempt to negotiate an interim protective order to facilitate disclosure of Plaintiffs' identities to Defendants pending the final disposition of this motion.

/s/ Roger K. Gannam
Roger K. Gannam

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this January 26, 2022, I caused a true and correct copy of the foregoing to be electronically filed with the Court. Service will be effectuated on all counsel of record via the Court's ECF/electronic notification system.

/s/ Roger K. Gannam
Roger K. Gannam