IN THE UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| **NAVY SEAL # 1,** et al.,<br><br>                      Plaintiffs,<br><br>       v.<br><br>**JOSEPH R. BIDEN, JR.**, in his official<br>capacity as President of the United States, et al.,<br><br>                      Defendants. | Case No. 8:21-cv-02429-SDM-TGW |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS'
## RENEWED MOTION FOR A PRELIMINARY INJUNCTION

The Supreme Court has made clear: "Judges are not given the task of running the Army." *Orloff v. Willoughby*, 345 U.S. 83, 93 (1953). Nor are they given the task of running the Navy, Marine Corps, Air Force, Coast Guard, or National Guard. Yet by seeking to enjoin the military's COVID-19 vaccine directive, Plaintiffs ask this Court to substitute its judgment for that of the Secretary of Defense and senior military leaders across all branches of the military as to the acceptable level of risk to military operations and conclude that vaccination is not necessary for military readiness. Plaintiffs base their request on the false premise that hundreds of military officers are engaging in a "sham," by which they will grant medical exemptions but categorically deny all religious exemptions to vaccination. But the detailed declarations submitted by the Government make clear that the Military Services are conducting the individualized assessments required under the Religious Freedom Restoration Act

("RFRA").   Those declarations also make clear that granting temporary medical exemptions, which may expire in as little as a few weeks, is not comparable to permanently granting more than 20,000 religious exemption requests.   The fact that the military has granted few religious exemptions does not mean that officers are not discharging their duties in good faith; instead, it reflects that the military has a compelling interest in ensuring that service members are medically ready to defend this Nation.   Plaintiffs' motion for a preliminary injunction with respect to the military's policy should be denied, including with respect to the two officers as to whom the Court entered a temporary restraining order ("TRO") on February 2, 2022 (ECF No. 67).   That TRO should be immediately vitiated for the reason set forth in Defendants' opposition to that motion, *see* ECF No. 66, and because of the harms to national security of enjoining the military from relieving Plaintiffs Special Warfare Officer and Lieutenant Colonel from their commands now that the military has lost confidence that they will follow orders.

Nor are Plaintiffs entitled to extraordinary injunctive relief on their challenge to the executive order requiring vaccination of the federal civilian workforce ("EO 14043").   Each of the three anonymous civilian employees listed in the amended complaint has submitted a request to be excepted from the vaccination requirement that remains pending at this time.   Thus, these civilian employees' claims are not ripe and the Court lacks jurisdiction, as multiple courts across the country have concluded in similar circumstances.   Even setting that aside, there is no basis for Plaintiffs' First Amendment or RFRA claims because EO 14043 acknowledges that individuals may

be entitled to religious accommodations, and the anonymous plaintiffs—who have all sought such accommodations—proffer only threadbare allegations that are insufficient to establish a likelihood of success on the merits.   Plaintiffs' claim under the Administrative Procedure Act ("APA") likewise fails because it does not challenge any discrete, final agency action and because EO 14043 is within the President's broad constitutional and statutory authority to manage Executive Branch employees. Finally, the federal civilian employees face no prospect of irreparable harm for their employment-related injuries (which can be remedied at the conclusion of any successful challenge), and the public interest is best served by allowing the federal government to decide how best to protect the federal workforce from a deadly virus that has caused serious disruptions to government operations.

Plaintiffs are also unlikely to succeed in their challenge to EO 14042, which announced vaccine requirements for government contractors.   This Court was clear in its November 11, 2021 Order that Plaintiffs' allegations regarding EO 14042 were not sufficient to show that any plaintiff had standing to challenge the order.   ECF No. 40, at 4, *id.* n.1, *id.* n.2.   Plaintiffs then filed an Amended Complaint but failed to remedy this basic pleading deficiency.   And even if Plaintiffs could show standing to challenge EO 14042, their claims are unlikely to succeed on the merits.

## PROCEDURAL BACKGROUND

Defendants have previously set forth the background for the Department of Defense vaccination directive and the Executive Orders requiring vaccination for federal employees and contractors in their opposition to Plaintiffs' motion for a

preliminary injunction and incorporate that background by reference.  *See* ECF No. 23.  Defendants also incorporate by reference and respectfully refer the Court to the legal standards and arguments in that opposition brief, as well as the declarations and exhibits filed in support of that opposition brief and in opposition to Plaintiffs' motion for class certification.  *See* ECF Nos. 23, 23-1–23-25, 42, 42-1–42-5.  Defendants also expressly incorporate herein in Defendants' Opposition to Plaintiffs' Emergency Motion for a Temporary Restraining Order with respect to two of the Plaintiffs, ECF No. 66, as well as the declarations and exhibits filed in support of that  opposition, ECF Nos. 66-1–66-7.  The Court should now consider and deny Plaintiffs' motion for a preliminary injunction with respect to those two officers, as well as their broader request as to all the other Plaintiffs, for the reasons set forth in prior submissions.

Defendants have limited this brief to responding to Plaintiffs' Supplemental Memorandum and Renewed Motion for Preliminary Injunction ("Pls.' Supp. Br."), ECF No. 51, and to addressing the Court's Order granting in part Plaintiffs' Emergency Motion for a Temporary Restraining Order, ECF No. 67.

## ARGUMENT

## I.   The Service Member Plaintiffs Are Unlikely to Succeed on the Merits of Their Claims.

### A. The Religious Exemption Process Is Not a "Ruse."

Plaintiffs claim that hundreds of military officials are acting in concert to issue indiscriminate and undifferentiated denials of each service member's request for a religious exemption to the COVID-19 vaccination requirement.  *See* Pls.' Supp. Br. 2–

5, 7–13. Plaintiffs' claim is entirely unfounded and should be rejected.

The record reflects that the Military Services are making the required individualized assessment under RFRA for each service member who has requested an exemption from the COVID-19 vaccination requirement on religious grounds. Each of the Military Services has submitted detailed declarations concerning the process each Service undertakes to review and adjudicate religious exemption requests.[1]   As reflected in these declarations, to evaluate each service member Plaintiff's religious accommodation request, military officials from their branch of Service engage in a careful, thorough, and case-by-case analysis of each request, evaluating whether a service member's objection to compliance is based upon a sincere religious belief, evaluating whether requiring compliance would substantially burden the member's religious exercise, identifying the government's compelling interest, and determining whether there are any lesser restrictive means of furthering that interest. And, after the approval authority conducts this rigorous analysis of each request, the appeal authority for each Service conducts their own separate analysis on each appeal. In sum, "[t]here is no blanket policy or practice of approving or disapproving all religious accommodation requests, including with respect to the COVID-19 vaccine."

---

[1] *See* Decl. of Colonel Michele Soltis (Army), ECF No. 23-17; Decl. of Major General Telita Crosland (Army), ECF No. 42-6; Decl. of Vice Admiral William Merz (Navy), ECF No. 23-18; Decl. of Captain Mery-Angela Sanabria Katson (Navy), ECF No. 42-4; Decl. of Lieutenant General David Furness (Marine Corps), ECF No. 23-19; Decl. of Colonel Adam Jeppe (Marine Corps), ECF No. 42-3; Decl. of Major Matthew Streett (Air Force), ECF No. 23-21; Decl. of Major General Sharon Bannister (Air Force), ECF No. 42-1; Decl. of Rear Admiral Shannon Gilreath (Coast Guard), ECF No. 23-25; Decl. of Commander Brooke Grant (Coast Guard), ECF No. 42-2; Decl. of Deputy Director Laurence Bazar (Army National Guard), ECF No. 42-5.

Crosland Decl. ¶ 4, ECF No. 42-6; Bannister Decl. ¶ 4, ECF No. 42-1.

Plaintiffs' supplemental brief makes no attempt to argue the individual merits of any Plaintiff service member's religious accommodation request but instead argues that "the vaccine mandate does not allow for individualized assessments" of their religious exemption requests writ large. Pls.' Supp. Br. 11. The military's adjudication of Plaintiffs' own religious accommodations would almost certainly disprove that allegation by reflecting individualized analyses of their requests, but because Plaintiffs still have not provided most of their names to Defendants, Defendants are unable to investigate their allegations. For the two Plaintiffs who sought a temporary restraining order (and thus the two names Plaintiffs divulged to Defendants), the record indeed shows that the military appeal authority conducted an individualized assessment of both Plaintiffs' religious accommodation request packages, taking into account, for example, each Plaintiff's military duties and considering whether there were any less restrictive means than vaccination that would further the military's compelling interest in readiness. *See* ECF Nos. 66-2, 66-3.

In any event, the allegations in Plaintiffs' amended complaint disprove their arguments that adjudication is undifferentiated. Plaintiffs hold different positions and are in different phases of the religious exemption process with different decision-makers across different Services. *See generally* Am. Compl. ¶¶ 32–65, 137–69, ECF No. 49-1. They received individualized assessments from military chaplains. *See id.* Some commanders recommended in favor of some requests, and some commanders did not.

6

*Compare id.* ¶ 33, *with id.* ¶ 38.[2]  The approval authorities and the appeal authorities across the Services conduct individualized assessments of all requests.  All Plaintiffs have been able to submit religious accommodation requests pursuant to policy, and none has been subject to discipline or separation for refusing the vaccine in the interim.  There is no indication that any particular decision-maker is applying the wrong standard, or that the decision-makers are acting in a vast scheme to apply the wrong standard.  Plaintiffs simply do not like the results received thus far, but that is not a basis for finding that the process is a "sham."

Plaintiffs' assertion that military has a policy of an "across-the-board denial" of religious exemption requests is simply incorrect.  Pls.' Supp. Br. 3; *see also* TRO 8.  Either Plaintiffs misunderstand the applicable policies and how they relate to each other or have incorrectly implied that some of the most senior military officers and civilian officials across all the Military Services are all proceeding in bad faith. The authorities who must approve vaccination exemption requests for both the Navy and Marine Corps are flag officers, and the appeal authorities are the Chief of Naval Operations and the Commandant of the Marine Corps, respectively, who are the most senior officers of the Services.  Merz Decl. ¶ 14, ECF No. 23-18; Furness Decl. ¶ 12, ECF No. 23-19.  The final appeal authority for the Coast Guard is the Director of Military Personnel, who holds the senior rank of Captain.  Grant Decl. ¶ 7, ECF No.

---

[2] One Plaintiff indicates that, as commanding officer, he recommended in favor of 16 of 17 requests on his ship.  Am. Compl. ¶ 38.  Although all were eventually denied, the Plaintiff's own assessment that at least one request failed to meet the standard disproves the concept that the Court can adjudicate these requests as a whole, without individualized assessment required by RFRA.

42-2.  The "vast majority" of the approval authorities for the Air Force are "three- and four-star General Officers," and the appeal authority is the Air Force Surgeon General, who, as a Lieutenant General, is a three-star general officer.  Bannister Decl. ¶¶ 3, 17, ECF No. 42-1.  For the Army and the Army National Guard, the approval authority is the Army Surgeon General, who is also a Lieutenant General and thus a three-star general officer, and the appeal authority is the Assistant Secretary of the Army for Manpower and Reserve Affairs, who is one of the five Assistant Secretaries of the Army and is appointed by the President with the advice and consent of the Senate.  Crossland Decl. ¶ 4, ECF No. 42-6; Bazer Decl. ¶ 9, ECF No. 42-5; *see* 10 U.S.C. § 7016(a).  Defendants' declarations reflect that these senior officials, as well as myriad other military officials who assist in processing religious accommodations requests like chaplains, military health providers, and attorneys, are conducting thorough, individualized assessments of each request.   There is no possible basis to find that they are acting in bad faith.  *See Dodson v. Dep't of Army*, 988 F.2d 1199, 1204 (Fed. Cir. 1993) ("[M]ilitary administrators are presumed to act lawfully and in good faith like other public officers, and the military is entitled to substantial deference in the governance of its affairs."); *Patel v. McHugh*, 2014 WL 953493, at *2 (S.D. Ga. Mar. 11, 2014) (same), *aff'd*, 586 F. App'x 583 (11th Cir. 2014); *Perry v. Dep't of Army*, No. 2013 WL 4432175, at *4 (M.D. Ga. Aug. 15, 2013) (same); *Hicks v. Sec'y of Air Force*, 2009 WL 2151200, at *8 (M.D. Fla. July 14, 2009) (same).  Indeed, both the D.C. Circuit and Ninth Circuit dismissed similar theories of bad faith when vacating (D.C. Circuit) and staying (Ninth Circuit) preliminary injunctions preventing the military

from implementing its then-existing policy regarding military service by transgender individuals and individuals with gender dysphoria. *Doe 2 v. Shanahan*, 755 F. App'x 19, 25 (D.C. Cir. 2019); *Karnoski v. Trump*, 926 F.3d 1180, 1202-03 (9th Cir. 2019); *see also Doe 2 v. Shanahan*, 917 F.3d 694, 731 (D.C. Cir. 2019) (Williams, J., concurring) ("the plausibility of such a scheme tends to unravel as we try to imagine the dozens of participants," including "Cabinet members and other officials," "who would have been needed for its realization" (quotation marks omitted)).  Plaintiffs' contentions should also be rejected here.

Plaintiffs refer to the data submitted by Defendants showing that only three religious accommodation requests have been granted at this point and on that basis argue that the military has a policy of an "across-the-board denial" of such requests. Pls.' Supp. Br. 3; *see also* TRO 8.  But the data support no such conclusion. Only a small percentage of the accommodation requests have been fully adjudicated on appeal across the Services. *See, e.g.*, Katson Decl. Ex. 1, ECF No. 73-3 (showing that only 81 requests have been fully adjudicated, while 1,222 appeals remain pending in the Navy).  Accordingly, drawing any conclusions from the available data—and certainly any conclusion that accommodation requests are not being considered in good faith— is unwarranted.

In any event, the denial of many religious exemption requests for the COVID-19 vaccination requirement does not show that the process is a "ruse" or a "sham," as Plaintiffs allege, Pls.' Supp. Br. 2, 24; rather, it is entirely consistent with a finding that the military has assessed its interests in vaccination of service members as extremely

compelling and not readily satisfied by less restrictive alternatives.  The Court stated that "[o]ne struggles to imagine a wholesome and lawful explanation for the results evidenced in this record."  TRO 8.  To the contrary, when one considers the unique nature of military service, the explanation should be readily apparent.  The purpose of the military is to fight and win our nation's wars and to protect the American public from foreign threats, and the military must have medically ready, "globally deployable forces" to do so.  *See* Decl. of Admiral William Lescher  ¶ 5 & Attach., ECF No. 66-4; Ex. 1 (DoDI 1332.45) at 4 ("To maximize the lethality and readiness of the joint force" it is DoD policy that "all Service members are expected to be deployable.").[3] The military has an indisputably compelling interest in ensuring that service members are healthy and ready to deploy at a moment's notice and that interest is vital to the national security of the United States.  Lescher Decl. ¶ 11.

Vaccination requirements for the military are nothing new.  To the contrary, the military's compelling interest in a fully vaccinated force is supported by generations of historical experience.  *See* Congressional Research Report Defense Health Primer: Military Vaccinations, ECF No. 23-13; Stanley Lemon, et al., *Protecting Our Forces: Improving Vaccine Acquisition and Availability in the US Military*, National Academies Press, 2002, *available at* https://perma.cc/E545-TQ9G at 10, Table 1-1.  For decades, the military has implemented a variety of enduring or situational inoculation measures

---

[3] This declaration was originally prepared in conjunction with other litigation and speaks directly to the military's interest in vaccination.  It also speaks to the Navy's interest in having members of its special operations forces, such as Plaintiff Navy SEAL 1, vaccinated for COVID-19.

to maintain the readiness of the force.  *See* ECF No. 23-13.  Nine vaccines are required for all service members—now ten with the addition of the COVID-19 vaccine—while eight others are required in specialized circumstances, such as deployments to certain parts of the world.  *See* Army Regulation ("AR") 40-562, Table D-1, ECF No. 23-6. Accordingly, "[t]he judgment of each of the Military Services is that vaccines," including the COVID-19 vaccine, "are the most effective tool the Armed Forces have to keep our personnel safe, fully mission capable and prepared to execute the Commander-in-Chief's orders to protect vital United States[] national interests."  *See* Lescher Decl. ¶ 11, ECF No. 66-4; Mem. for all Defense Employees (Aug. 9, 2021), ECF No. 23-2; Ex. 3 (Decl. of Colonel Tanya Rans) ¶ 10; Ex. 4 (Decl. of Major Scott Stanley) ¶ 20; Decl. of Colonel James Poel ¶ 4, ECF No. 66-7.[4]

As the Vice Chief of Naval Operations explains, "[u]nvaccinated or partially vaccinated service members are at higher risk to contract COVID-19, and to develop severe symptoms requiring hospitalizations that remove them from their units and impact mission execution."  Lescher Decl. ¶ 2, ECF No. 66-4; *see also* Ex. ¶ 18 ("Between July and November of 2021, non-fully-vaccinated active-duty service members had a 14.6-fold increased risk of being hospitalized when compared to fully vaccinated active-duty service members.  In December 2021 unvaccinated adults were 16-times more likely to be hospitalized than vaccinated adults."); Ex. 3 ¶¶ 14–40 (explaining continued benefits of vaccination).  This can lead to medical evacuations

---

[4] This declaration was originally prepared in conjunction with other litigation and speaks directly to the Air Force's interest in vaccination.

that "create additional risk . . . to the mission" and "place those service members executing medical evacuation at risk of harm," including by providing "transport from a hostile, remote or diplomatically sensitive area."  Lescher Decl. ¶ 21; Ex. 11 (Decl. of Captain Frank Brandon) ¶ 12.  For a force that requires every service member to be deployable, this means even vaccination against tetanus—which is not transferable from human to human—is required.  *See* Ex. 1 at 4; AR 40-562, Table D-1, ECF No. 23-6.  Moreover, because of the extremely transferable nature of COVID-19, the heightened risk that an unvaccinated service member will contract COVID-19 necessarily heightens the risk that others in his unit will contract COVID-19.  Lescher Decl. ¶ 17  ("[U]nvaccinated personnel in a unit degrade the force health protection conditions in the unit, placing personnel in the unit at risk and degrading the unit's ability to safely conduct operations, regardless of the scope of the operation.").

Plaintiffs (and the Court) may disagree with these assessments, but disagreement with the military's compelling interests in vaccine requirements does not mean that military leaders are operating in bad faith.  And the law governing the Court's review of military decisions is clear: the Supreme Court has long directed district courts to give deference to the professional judgment of military authorities concerning the relative importance of a particular military interest.  *See Rostker v. Goldberg*, 453 U.S. 57, 71, 81–83 (1981); *Trump v. Hawaii*, 138 S. Ct. 2392, 2421–22 (2018); *Winter v. NRDC, Inc.*, 555 U.S. 7, 9 (2008); *cf. Doe 2*, 917 F.3d at 728 (Williams, J., concurring) (assessing plaintiffs' empirical attacks on the military's justifications with deference for military judgment).  This is true even for claims under the First

Amendment and RFRA.  *See Goldman v. Weinberger*, 475 U.S. 503, 507 (1986); S. Rep. 103-111, 12, *reprinted in* 1993 U.S.C.C.A.N. 1892, 1901 (expressing the committee's "inten[tion] and expect[ation]" that courts will apply deference principles under RFRA).  The most senior military leaders have determined vaccination is essential for military readiness.  The Court should defer to that assessment, and should not make determinations based its own intuition or reading of limited data to discount the military's compelling interest in protecting the health and safety of the force.

### B. Aggregate Medical Exemption Data Do Not Undermine the Government's Compelling Interest in Vaccination.

Plaintiffs rely entirely on aggregate data pertaining to religious exemptions and temporary medical exemptions to the COVID-19 vaccine requirement to argue that the military is engaging in a sham process by granting exemptions for medical reasons, but not for religious reasons.  But the number of medical exemptions from vaccination requirements does not determine whether any individual service member is entitled to a permanent religious exemption.   And those data in no way lend credence to Plaintiffs' theory that the religious exemption process is a "ruse."

As an initial matter, unlike religious exemptions, medical exemptions serve the government's interest in military readiness.  Giving a vaccine to a service member who is, for example, allergic to a component of the vaccine, would harm the member's health, and thus would be contrary to the military's interest in ensuring readiness and the health and safety of service members.   Ex. 6 (Decl. of Major General Telita Crosland) ¶ 10; Ex. 7 (Decl. of Rear Admiral Gayle Shaffer) ¶ 11; Ex. 5 (Decl. of

Artemio Chapa) ¶ 13; Ex. 8 (Decl. of Rear Admiral Dana Thomas) ¶ 5; *see also Doe v. Mills*, 16 F.4th 20, 34 (1st Cir. 2021) (providing medical exemptions for contraindicated vaccines supports the State's goal of keeping healthcare works healthy and able to provide care); *Doe v. San Diego Unified Sch. Dist.*, 19 F.4th 1173, 1178 (9th Cir. 2021) (having a medical exemption to those with contraindications to the vaccines "serves the primary interest for imposing the mandate—protecting student 'health and safety'"). The inability of some members to receive the vaccine for a period of time due to contraindications or health issues increases the military's compelling interest in maximizing the vaccination of other service members to prevent the spread of the disease. Ex. 5 ¶ 15. Therefore, the fact that the Services have granted medical exemptions where the health of the member would have been compromised by vaccination does not diminish the military's assessment that vaccination is necessary to achieve its interest in military readiness.

In addition, the vast majority of medical exemptions are temporary in nature. All temporary medical exemptions last only up to 365 days, AR 40-562 ¶ 2.6, ECF No. 23-6, and many last as little as a few days or weeks depending on a change in the medical condition, *see* Ex. 5 ¶ 12; Ex. 8 ¶ 6. Once the exemption expires, the member must get vaccinated. Indeed, in the four weeks between Defendants' first and third data submissions, many temporary medical exemptions have already expired, and the service members will now be required to receive the COVID-19 vaccination.[5] Thus,

---

[5] *Compare* Mahoney Decl. ¶ 15, ECF No. 47-2, *with* Mahoney Decl. ¶ 11, ECF No. 73-2 (number of

the impact on the military mission and deployablity of a service member with a temporary medical exemption is decidedly different than a service member receiving a permanent religious exemption to the COVID-19 vaccination requirement.

Common reasons to grant temporary medical exemptions are pregnancy or acute infection (e.g., a current infection of COVID-19).  *See* AR 40-562 ¶ 2.6, ECF No. 23-6.   Indeed, the Navy's data shows that over 75% of the temporary medical exemptions for active-duty marines and nearly 70% of the temporary medical exemptions for active-duty sailors are related to pregnancy or current infection.  Ex. 7 ¶ 6.  Both of these conditions are time-limited, and once the condition is resolved, the member's temporary medical exemption expires and the member is expected to get vaccinated.  *Id.* ¶ 7; Ex. 6 ¶¶ 8–9.  Other reasons for a temporary medical exemption include, for example, cancer treatments, Ex. 6 ¶ 7, and members undergoing assessments for medical contraindications for vaccination, Ex. 7 ¶ 6.  But, again, these exemptions are all temporary in nature and members are expected to get vaccinated once their condition resolves.  There would be no such expectation for a religious exemption, which again is presumably permanent.

Moreover, many of the common reasons that a service member may receive a medical exemption from an immunization requirement may also make the service

---

temporary medical exemptions in the Army dropped from 1,354 to 1,105); *compare* Kaston Decl. Ex. 1, ECF No. 47-3, *with* Katson Decl. Ex. 1, ECF No. 73-3 (number of temporary medical exemptions in the Navy dropped from 303 to 252); *compare* Reid Decl. Ex. 1, ECF No. 47-4, *with* Reid Decl. Ex. 1, ECF No. 73-4 (number of temporary medical exemptions in the Marine Corps dropped from 419 to 232); *compare* Holbrook Decl. Ex. 1, ECF No. 47-5, *with* Holbrook Decl. ECF No. 73-5 (number of temporary medical exemptions in the Air Force dropped from 1,723 to 1,513).

member nondeployable, such that the member is already not medically ready to deploy, regardless of vaccination status.  Ex. 9 (Decl. of Captain Joon Yun) ¶ 8.  A pregnant service member is generally not worldwide deployable or deployable on ships or aircraft during pregnancy—and that is true whether or not that service member is vaccinated.  Ex. 1 at 11.  However, the member is expected to return to a worldwide deployable status following pregnancy, including getting vaccinated to be fully medically ready for deployment.[6]  In contrast, a member with a religious exemption would not be expected to get the vaccine, as the member's religious convictions are presumably permanent.

Previous adverse response to immunization may be grounds for a permanent medical exemption, *see* AR 40-562 ¶ 2.6, ECF No. 23-6, but such exemptions have rarely been necessary for the COVID-19 vaccine.  For example, the Army has granted only six permanent medical exemptions for the COVID-19 vaccine, and all were a result of an adverse reaction to the first shot.  Ex. 6 ¶ 10.  For this same reason, the Navy has granted ten permanent medical exemptions,[7] Ex. 7 ¶ 10, and the Coast Guard has granted five, Ex. 8 ¶ 5.[8]  These service members "have at least some

---

[6] Because "all Service members are expected to be deployable," a service member who is non-deployable for more than 12 consecutive months is evaluated for continued retention or possible referral to the Disability Evaluation System for a possible medical separation.  Ex. 1 at 4.

[7] The Navy granted an additional permanent medical exemption because the service member "had medical conditions that precluded vaccination due to family history of vaccine reaction and severe cardiac disease, with a recommendation for medical board separation processing due to these underlying conditions."  Ex. 7 ¶ 10.

[8] The Air Force is giving only temporary medical exemptions to ensure that members with temporary medical conditions get vaccinated once their condition is resolved and to allow the Air Force to reassess members with contraindications for the vaccine to determine whether a vaccine has been approved with constituents the member can safely take.  Ex. 5 ¶ 11.

modicum of protection from having received the initial dose, which will increase the effectiveness of mitigation measures." Ex. 6 ¶ 10. More importantly, there is a decidedly different impact on the military force between granting 21,243 religious exemptions, *see* Pls.' Supp. Br. 3, from the COVID-19 vaccine and permanently excusing 21 individuals from a second COVID-19 vaccine dose when there is evidence that it may actually cause them physical harm.

Finally, Plaintiffs' argument that the military is "treating religious exemption requests less favorably than nonreligious exemption requests," Pls.' Supp. Br. 9; *see also* TRO 8, is wrong. Because they are unvaccinated, service members with a medical exemption are still subject to myriad limitations and restrictions, such as restrictions on deployment eligibility, foreign country entry restrictions, frequent COVID-19 testing or extended quarantine requirements, and travel restrictions. Ex. 9 ¶ 6; Ex. 11 ¶ 12. In addition, members who are unvaccinated for any reason may have to seek a separate medical clearance to perform certain duties or a waiver from a Combatant Commander to deploy within that commander's geographic area of responsibility. Ex. 9 ¶ 7. Accordingly, it is simply not the case that members who are medically exempt are permitted to serve without any consequences.[9]

---

[9] Plaintiffs further rely on the district court's misinterpretation of Navy instructions in *Navy Seals 1–26*, 2022 WL 34443 (N.D. Tex. Jan. 3, 2022), *appeal filed*, No. 22-10077 (5th Cir. 2022). There the court found that Navy treats vaccine medical exemptions and vaccine religious exemptions for members of the Navy Special Warfare community differently for deployability purposes. *Id.* at *9. But, as explained by the Force Medical Officer for Navy Special Warfare Command, the Navy requires any special operations service member who is not vaccinated, either by reason of a medical exemption or based on a religious request, to obtain a separate waiver in order to become deployable and continue in that career field. *See* Ex. 2 (Decl. of Captain Lanny Littlejohn) ¶ 6. "[A] service member who

### C. Plaintiffs Have Failed to Exhaust Administrative Remedies.

Plaintiffs also are unlikely to succeed on the merits of their claims, and therefore are not entitled to any preliminary injunctive relief, because they have failed to exhaust administrative remedies.  The Eleventh Circuit has made clear "time and again" that exhaustion of administrative remedies is "require[d]" in military cases.  *Winck v. England*, 327 F.3d 1296, 1302 (11th Cir. 2003), *abrogated on other grounds by Santiago-Lugo v. Warden*, 785 F.3d 467, 471 (11th Cir. 2015) (collecting cases).

Plaintiffs rely exclusively on an out-of-circuit district court opinion for the proposition that the Court can ignore military exhaustion requirements because exhaustion would be futile.  *See* Pls.' Supp. Br. 6.  That decision is plainly wrong under precedent that binds this Court as well.  But that district court also contravened its own Circuit's precedent.  In *Hodges v. Callaway*, for example, the Fifth Circuit concluded that although the plaintiff seemed unlikely to prevail in challenging his discharge, he was required nonetheless to exhaust his military remedies, including challenging his discharge, and ordered dismissal of the action because "courts must—at least initially—indulge the optimistic presumption that the military will afford its members the protections vouchsafed by the Constitution, by the statutes, and by its own regulations."  499 F.2d 417, 424 (5th Cir. 1974).  To do otherwise "might upset the

---

receives an exemption or accommodation from the COVID-19 vaccination requirement, whether for religious or secular reasons, is not [physically qualified for special operations] unless he or she obtains separate medical clearance."  *Id.*  A medical exemption for the COVID-19 vaccination, like a religious exemption, only determines whether the service member will be required to receive the COVID-19 vaccination.  In either circumstance, a service member will not be considered physically qualified for special operations duty and deployable until he or she receives separate medical clearance.  *Id.*

balance between the civilian judiciary and the military" and involve "untoward, unreasonable interference with the efficient operation of the military's judicial and administrative systems and allow the military an opportunity to exercise its own expertise and rectify its own errors before a court is called to render judgment." *Id.* at 423. Neither the exemption process nor the separation process reasonably can be deemed an "empty formality"; all levels of military command are engaged in reasoned decision-making to find facts and make determinations about military needs. The Court should not foreclose that process, which could afford relief or partial relief to Plaintiffs and which allows the military to exercise its judgment and develop a record in the first instance. *See Church v. Biden*, 2021 WL 5179215, at *10 (D.D.C. Nov. 8, 2021); *Robert v. Austin*, No. 21-CV-02228-RM-STV, 2022 WL 103374, at *3 (D. Colo. Jan. 11, 2022).

Plaintiffs' demands for extraordinary preliminary relief with respect to the military's COVID-19 vaccination requirements are nothing more than an effort to short circuit both the administrative and normal judicial process. Their demand fails to satisfy any of the requirements for an injunction at this stage.

## II.   The Civilian Employee Plaintiffs Are Unlikely to Succeed on the Merits of Their Claims.

### A. This Court Lacks Jurisdiction Over Plaintiffs' Challenge to EO 14043.

#### 1.   Plaintiffs' Challenge to EO 14043 is Not Ripe.

Because the civilian employee Plaintiffs present unripe claims, the Court lacks

jurisdiction to award any relief against EO 14043.[10]  *See, e.g.*, *Dermer v. Miami-Dade Cnty.*, 599 F.3d 1217, 1220 (11th Cir. 2010).  Each civilian employee alleges that he has submitted a request for a religious exception to the vaccination requirement that is currently pending with his employing agency.  *See* Am. Compl. ¶¶ 66–68.  While these exception requests are pending, Plaintiffs are not subject to discipline.[11]  And because the requests might be granted, Plaintiffs' potential injuries depend "upon contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Texas v. United States*, 523 U.S. 296, 300 (1998) (citation omitted).  As multiple courts have concluded in rejecting similar challenges to EO 14043 on ripeness grounds, potential injuries based on "hypothetical predictions of the outcomes of . . . exemption requests" are "insufficient to 'render an issue ripe for review.'"  *Church*, 2021 WL 5179215, at *9; *accord Brnovich v. Biden*, ---F. Supp. 3d----, 2022 WL 252396, at *8 (D. Ariz. Jan. 27, 2022); *McCray v. Biden*, 2021 WL 5823801, at *8–9 (D.D.C. Dec. 7, 2021); *AFGE Local 501 v. Biden*, No. 21-23828-CIV, ECF No. 33, at 17 (S.D. Fla. Dec. 22, 2021); *Donovan v. Vance*, No. ---F. Supp. 3d----, 2021 WL 5979250, at *4–5 (E.D. Wash. Dec. 17, 2021).

　　This is especially true with respect to the civilian employee Plaintiffs' RFRA

---

[10] On January 21, 2022, a district court entered a nationwide preliminary injunction prohibiting the government from "implementing or enforcing Executive Order 14043 until this case is resolved on the merits."  *Feds for Med. Freedom v. Biden*, ---F. Supp. 3d----, 2022 WL 188329, at *8 (S.D. Tex. Jan. 21, 2022).  The government has appealed that ruling, *see* No. 22-40043 (5th Cir. Jan. 21, 2022), and motions to stay the injunction are pending before both the district court and the Fifth Circuit.

[11] The alleged State Department employee asserts that he has received a "Letter of Counseling threatening consequences of [*sic*] his failure to provide proof of full vaccination for COVID-19."  Am. Compl. ¶ 68.  Because Plaintiffs have not provided this individual's identity, Defendants cannot verify this allegation.  But in any event, a letter of counseling is merely the first informal step in a multi-step disciplinary process, and no federal employee will be subject to any discipline while the *Feds for Medical Freedom* nationwide injunction remains in effect.

claims.  Allowing their employing agencies to reach an initial decision with respect to the requests will make concrete the (at present abstract) dispute between the parties and create a record of, for example, Plaintiffs' job duties, any difficulties associated with accommodating a particular religious exemption request, and the extent to which the vaccination requirement as applied to an individual employee is narrowly tailored to serve the government's compelling interest in stopping the spread of COVID-19 among the federal workforce.  *See, e.g., Toca Producers v. FERC*, 411 F3d 262, 266 (D.C. Cir. 2005) (dispute not ripe where an agency had "yet to pass conclusively upon whether the [applicants] are entitled to the only relief they now seek").

2.   The Civil Service Reform Act Precludes Plaintiffs' Challenge to EO 14043.

Plaintiffs' claims are also precluded by the Civil Service Reform Act ("CSRA"), which "provides the exclusive procedure for challenging federal personnel decisions." *Hendrix v. Snow*, 170 F. App'x 68, 80 (11th Cir. 2006) (citing *United States v. Fausto*, 484 U.S. 439, 443, 454–55 (1988); *Broughton v. Courtney*, 861 F.2d 639, 643 (11th Cir. 1988)); *see* 5 U.S.C. §§ 7512, 7513(d), 7703(b)(1) ("adverse actions" reviewable by Merit Systems Protection Board and Federal Circuit); *id.* §§ 1214(a)(3), 2302 (review scheme for less severe "personnel action[s]").  The Supreme Court has concluded that, "[g]iven the painstaking detail with which the CSRA sets out the method for covered employees to obtain review of adverse employment actions," Congress "intended to deny such employees an additional avenue of review in district court."  *Elgin v. Dep't of the Treasury*, 567 U.S. 1, 11–12 (2012).  This comprehensive remedial scheme precludes Plaintiffs from challenging the employment condition set forth in EO 14043

21

in district court.[12]

## B. The Civilian Employees Plaintiffs' First Amendment and RFRA Claims Are Unlikely to Succeed.

In support of their First Amendment and RFRA challenges to EO 14043, Plaintiffs continue to allege that the executive order "prohibit[s] Plaintiffs from seeking and receiving exemption and accommodation for their sincerely held religious beliefs against the COVID-19 vaccines." Am. Compl. ¶¶ 258, 282. But as the Court has already held in rejecting Plaintiffs' previous attempt to preliminarily enjoin EO 14043, the executive order "expressly require[s] religious exemption." Order 3, ECF No. 40. Plaintiffs offer nothing in either their amended complaint or renewed motion that would alter this conclusion—indeed, their motion simply adopts by reference Plaintiffs' arguments regarding the military vaccination requirement and contains no argument that EO 14043 violates either the First Amendment or RFRA. *See* Pls.' Supp. Br. 15.[13] Whatever showing Plaintiffs have made regarding that vaccination requirement (and as explained elsewhere in this brief, that showing does not establish a likelihood of success on Plaintiffs' First Amendment and RFRA challenges to the military order), the record is completely devoid of support for Plaintiffs' contention that civilian employees are "prohibited" from receiving religious exemptions from EO

---

[12] The alleged employees of the Bureau of Prisons and State Department have additionally failed to establish that any relief obtained in this lawsuit would redress their alleged injuries because they do not sue any official at either agency responsible for implementing EO 14043.

[13] Plaintiffs' motion argues only that EO 14043 is "not generally applicable" and thus "subject to strict scrutiny under the First Amendment," Pls.' Supp. Br. 13. Even assuming *arguendo* the truth of that contention, it is irrelevant here because Plaintiffs also bring a RFRA claim. *See* Order 20, ECF No. 40 (noting that RFRA provides "greater protection . . . than is available under the First Amendment").

14043 or that the Plaintiffs' pending religious exemption requests will be denied.[14]  *See* Order 4 n.1, ECF No. 40 (in reviewing religious exemption requests, federal agencies should consider "the basis for the claim; the nature of the employee's job responsibilities' and the reasonably foreseeable effects on the agency's operations, including protecting agency employees and the public from COVID-19").  Plaintiffs' facial challenge to EO 14043 thus fails.  *See Horton v. City of St. Augustine*, 272 F.3d 1318, 1329 (11th Cir. 2001) (facial challenges are "the most difficult challenge to mount successfully" because they require the challengers to "establish that no set of circumstances exists under which the [challenged government action] would be valid"); *Donovan*, 2021 WL 5979250, at *6–7 (rejecting facial challenge to EO 14043).

To the extent Plaintiffs assert an as-applied challenge to EO 14043, as described above, they present fundamentally unripe claims and there is no basis for the Court to consider them now.  *See Church*, 2021 WL 5179215, at *9 ("absence of any factual record providing the basis for any denial of a religious accommodation request (if, in fact any plaintiff's request is denied) hamstrings the Court's ability to evaluate" First Amendment and RFRA challenges to EO 14043).  In any event, Plaintiffs proceed anonymously and provide only conclusory allegations about the manner in which EO 14043 purportedly burdens their religious beliefs.  But "an asserted belief must be 'sincere'; a [plaintiff's] pretextual assertion of a religious belief in order to obtain an

---

[14] As noted, EO 14043 is now enjoined on a nationwide basis.  While that injunction remains in effect, the government is prohibited from disciplining any civilian employees for noncompliance with its vaccination requirement or from adjudicating (and denying) any pending exemption requests.

exemption . . . would fail." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 717 n. 28 (2014). Until Defendants and this Court can examine their claims, "[n]either the government nor the court has to accept the [plaintiffs'] mere say-so." *United States v. Bauer*, 84 F.3d 1549, 1559 (9th Cir. 1996); *see also, e.g.*, *Fallon v. Mercy Cath. Med. Ctr. of Se. Pa.*, 877 F.3d 487, 492 (3d Cir. 2017); *Friedman v. Clarkstown Cent. Sch. Dist.*, 75 F. App'x 815, 819 (2d Cir. 2003). For this reason too, Plaintiffs' RFRA and First Amendment challenges are unlikely to succeed.

### C. The Civilian Employee Plaintiffs' APA Claim Is Unlikely to Succeed.

Plaintiffs also press a claim, purportedly under the APA, that the "Executive Branch" lacks the "power to impose a vaccine mandate on all civilian federal employees." Pls.' Supp. Br. 16. As a threshold matter, the Court lacks jurisdiction over this claim because Plaintiffs fail to identify any "final agency action for which there is no other adequate remedy in a court." 5 U.S.C. § 704; *see Nat'l Parks Conservation Ass'n v. Norton*, 324 F.3d 1229, 1236 (11th Cir. 2003). Indeed, they point to no action by any agency to implement EO 14043 or apply its requirements to any federal employee (and indeed, do not even sue the agencies that employ the alleged Bureau of Prisons and State Department plaintiffs). Final agency action (1) "must mark the consummation of the agency's decisionmaking process," and (2) must determine legal "rights or obligations" or have other "legal consequences." *Bennett v. Spear*, 520 U.S. 154, 177–78 (1997) (citations omitted). However, an agency has not consummated its decisionmaking process where it is clear that "further administrative

action is forthcoming." *Nat'l Parks Conservation Ass'n*, 324 F.3d at 1238.  Here, the relevant "final agency action" applying EO 14043 to any particular civilian employee is the relevant employing agency's ultimate decision—which has not occurred for any of the civilian employee plaintiffs here—regarding whether an individual employee "receives an exemption, whether and what additional remedial measures and procedures should be taken, and whether and how [that employee] should be disciplined." *Rodden v. Fauci*, ---F. Supp. 3d----, 2021 WL 5545234, at *3 (S.D. Tex. Nov. 27, 2021).

In any event, EO 14043 is a valid exercise of the President's authority pursuant to Article II of the Constitution and multiple federal statutes (5 U.S.C. §§ 3301, 3302, and 7301).  *See Rydie v. Biden*, No. 21-cv-2696, 2021 WL 5416545, at *3 (D. Md. Nov. 19, 2021), *appeal filed*, No. 21-2359 (4th Cir. Dec. 7, 2021); *Oklahoma v. Biden*, 2021 WL 6126230, at *10 (W.D. Okla. Dec. 28, 2021); *Brnovich*, 2022 WL 252396, at *12; *see also Brass v. Biden*, No. 21-cv-2778, 2021 WL 6498143, at *3 (D. Colo. Dec. 23, 2021) (report and recommendation), *adopted* 2022 WL 136903 (D. Colo. Jan. 14, 2022); *Smith v. Biden*, No. 21-cv-19457, 2021 WL 5195688, at *6 (D.N.J. Nov. 8, 2021), *appeal filed*, No. 21-3091 (3d Cir. Nov. 10, 2021).  Plaintiffs ignore these persuasive authorities and rely instead on the lone district court decision to find that EO 14043 likely exceeds the President's authority.  *See* Pls.' Supp. Br. 16–17 (citing *Feds for Med. Freedom*). That case was wrongly decided; just as private employers across the country have required their employees to be vaccinated against COVID-19, so too

can the President, as proprietor of the Executive Branch workforce, make COVID-19 vaccination a condition of federal employment.

The President has inherent constitutional authority under Article II to act as chief executive officer of the Executive Branch.  *See, e.g.*, *Seila Law LLC v. CFPB*, 140 S. Ct. 2183, 2191 (2020).  This includes "general administrative control over those executing the laws."  *Id*. at 2197–98 (citation omitted).  The Supreme Court has "[t]ime and again" emphasized the government's "wide latitude" in managing federal employees.  *NASA v. Nelson*, 562 U.S. 134, 148, 154 (2011) (quotation marks omitted).  Accordingly, the President may "prescribe the qualifications of [Executive Branch] employees and . . . attach conditions to their employment."  *Friedman v. Schwellenbach*, 159 F.2d 22, 24 (D.C. Cir. 1946).

Plaintiffs err in contending that the Government recognizes "no limiting principle to the reach of" the President's power.  Pls.' Supp. Br. 17 (quoting *Feds for Med. Freedom v. Biden*, 2022 WL 188329, at *6 (S.D. Tex. Jan. 21, 2022, *appeal filed*, 22-40043 (5th Cir. 2022).  Most relevant here, the CSRA authorizes removal, suspension, and other enumerated discipline only "for such cause as will promote the efficiency of the service."  5 U.S.C. §§ 7503(a), 7513(a).  Any covered plaintiff who might be disciplined for failing to become vaccinated pursuant to EO 14043 could seek review of such discipline under the extensive procedures set forth in the CSRA and contend that the discipline did not satisfy the statutory standard.

Moreover, even if explicit statutory authority were necessary, *see* Pls.' Supp. Br. 17, Congress has provided it here.  *See Rydie*, 2021 WL 5416545, at *3; *Oklahoma*, 2021

WL 6126230, at *10; *see also Smith*, 2021 WL 5195688, at *6–7 (employee vaccination requirement is within the federal government's "broad[]" authority when acting as "an employer under 5 U.S.C. §§ 3301, 3302, 7301").  Most importantly, 5 U.S.C. § 7301 permits the President to "prescribe regulations for the conduct of employees in the executive branch."  Plaintiffs and the court in *Feds for Medical Freedom* would have this statute apply to "workplace conduct," *Feds for Med. Freedom*, 2022 WL 188329, at *5, but there is no basis to read words into the statute that do not exist.  Had Congress meant to limit its grant of authority to the "workplace"—as it did with its reference to "occupational safety" in the Occupational Safety and Health Act, *see Nat'l Fed'n of Indep. Bus. v. OSHA*, 142 S. Ct. 661, 665 (2022) (per curiam)—"it knew how to say so." *Rubin v. Islamic Republic of Iran*, 138 S. Ct. 816, 826 (2018).  In any case, EO 14043 regulates workplace activity because it ensures that federal workers are vaccinated (or otherwise subject to a reasonable accommodation) when they enter the workplace and interact with their colleagues or the public.

EO 14043 is consistent with a long line of Presidential actions imposing conditions on federal employment with respect to conduct that occurs both on- and off-duty.  *See, e.g.*, Exec. Order No. 12564, 51 Fed. Reg. 32,889, 32,890 (Sept. 15, 1986) (President Reagan prohibiting "[t]he use of illegal drugs by Federal employees, whether on duty or off duty"); Exec. Order No. 12674, 54 Fed. Reg. 15,159, 15,159 (Apr. 12, 1989) (President George H.W. Bush requiring that federal employees refrain from conduct on or off the job that would conflict with their official duties; satisfy all "just financial obligations," including by paying federal, state, and local taxes; and

refrain from soliciting or accepting gifts from persons doing business with their agencies, among other restrictions).  As the Supreme Court has recognized, these kinds of employment-related executive orders are "plainly a reasonable exercise of the President's responsibility for the efficient operation of the Executive Branch," *Old Dominion Branch No. 496, Nat'l Ass'n of Letter Carriers, AFL-CIO v. Austin*, 418 U.S. 264, 273 n.5 (1974); *see also Biden v. Missouri*, 142 S. Ct. 647, 652 (2022) (per curiam) (looking to "longstanding practice of [the Executive Branch] in implementing the relevant statutory authorities" in upholding a federal vaccination requirement).

## III.  The Contractor Employer Plaintiff Is Unlikely to Succeed on the Merits of Its Claims.

The lone remaining Plaintiff challenging EO 14042 as alleged in the Amended Complaint, known as Federal Civilian Contractor Employer ("FCCE"), lacks standing to challenge EO 14042 because Plaintiffs' allegations are insufficient to show that FCCE is a covered contractor.[15]  As this Court has already concluded, "the record remains devoid of material suggesting that any plaintiff's employer is a federal contractor 'covered' by" the EO.[16]  Order 4, ECF No. 40.  Despite the Court putting

---

[15] EO 14042's enforcement is enjoined nationwide.  *Georgia v. Biden*, --- F. Supp. 3d ----, No. 1:21-CV-163, 2021 WL 5779939, at *12 (S.D. Ga. Dec. 7, 2021).  This Court has also enjoined enforcement of EO 14042 within Florida.  *State v. Nelson*, No. 8:21-CV-2524-SDM-TGW, 2021 WL 6108948, at *16 (M.D. Fla. Dec. 22, 2021).  FCCE, however, is likely not subject to this Court's preliminary injunction because it is located in Michigan and does not allege to have any contracts—covered or otherwise—within Florida (or seemingly have any connection whatsoever to this forum).  *See* Am. Compl. ¶ 69.

[16] This Court stated that "the record remains devoid of material suggesting that any plaintiff's employer is a federal contractor 'covered' by Executive Order 14043," Order 4, but Defendants understand this Court to be referring to EO 14042, which pertains to federal contractors.  More specifically, the Safer Workforce Task Force Guidance that the Office of Management and Budget ("OMB") approved in implementing EO 14042 refers to covered contracts and covered contract employees and employers.

the FCCE on notice that it had failed to show standing, the amended complaint provides no further detail about FCCE's "current and future" contracts, which may or may not be covered contracts within the meaning of the EO.

Because EO 14042 only applies to certain kinds of federal contracts, FCCE must provide enough detail for this Court to determine that EO 14042 has caused it an actual or imminent injury-in-fact. *See Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560–61 (1992). Notably, the EO does not apply to most contracts for procurement of goods (as opposed to services). *See* EO 14042, § 5; *see also* Determination of the Acting OMB Director Regarding the Revised Safer Federal Workforce Task Force Guidance for Federal Contractors and the Revised Economy & Efficiency Analysis, 86 Fed. Reg. 63,418, 63,420 (Nov. 16, 2021) (affirming that "contract[s] or subcontract[s] for the manufacturing of products" are "not covered or directly addressed by" the EO). The "land vehicles" and "Navy vessels" that FCCE and his company "develop and support," Am. Compl. ¶ 69, may well be product contracts, which would place FCCE's contracts outside the scope of the EO. Moreover, the EO does not apply to "contracts or subcontracts whose value is equal to or less than the simplified acquisition threshold, as that term is defined in § 2.101 of the Federal Acquisition Regulation." EO 14042 § 5(b)(iii). FCCE provides no information about the value of the "current and future" contracts his company holds. Because FCCE provides too little information to show that it is a covered contractor subject to EO 14042, it fails to establish an "actual," "imminent," or "concrete" injury, as opposed to one that is merely "conjectural" and "hypothetical." *Lujan*, 504 U.S. at 560.

Even if it were a "covered" contractor subject to EO 14042, FCCE lacks standing to bring a religious accommodation challenge because "Federal guidance commits to the employing contractor the responsibility 'for considering, and dispositioning, such requests for accommodations regardless of the covered contractor employee's place of performance." Order 4 n.1, ECF No. 40. FCCE is thus responsible "for considering, and dispositioning" his own request for religious accommodation. FCCE's "allege[d] confusion about the requirements of the process for granting a religious exemption"—allegations not expanded in the Amended Complaint—do not "successfully accomplish the formidable, if not impossible, task of elevating confusion to an injury that supports a claim for relief." *Id.* at 4 n.2.

Moreover, even if FCCE had standing to challenge EO 14042 and OMB's approval of the Task Force Guidance, its APA claims fail on the merits. First, the APA is provides no basis to challenge EO 14042 and its implementation. The APA does not apply to OMB's Determination, which FCCE challenges in Count IV, and FCCE identifies no final agency action that would be subject to the APA. The OMB Director's Determinations were issued under Presidential authority delegated to her under 3 U.S.C. § 301. When the President delegates his authority under § 301, the APA does not authorize judicial review of the action taken pursuant to that delegation. Officers exercising Presidential authority delegated to them through § 301 "stand[] in the President's shoes" and "exercis[e] purely presidential prerogatives." *Nat. Res. Def. Council, Inc. v. Dep't of State*, 658 F. Supp. 2d 105, 109 & n.5, 111 (D.D.C. 2009). Just as the President cannot be sued under the APA, *see Franklin v. Massachusetts*, 505 U.S.

788, 796 (1992), the Director's actions "cannot be subject to judicial review under the APA" either. *Nat. Res. Def. Council*, 658 F. Supp. 2d at 109; *see also Detroit Int'l Bridge Co. v. Gov't of Canada*, 189 F. Supp. 3d 85, 100 (D.D.C. 2016), *aff'd*, 875 F.3d 1132 (D.C. Cir. 2017), *aff'd*, 883 F.3d 895 (D.C. Cir. 2018). And to the extent FCCE generally challenges the federal contractor vaccine mandate under the APA in Counts V and VI, it cannot do so for failure to identify a final agency action.

Second, even if the APA applied, EO 14042 and OMB's Determination both comport with applicable law. EO 14042 is not contrary to law because it reflects the required nexus to the statutory objective of "an economical and efficient system" for contracting and procurement as set forth in the Procurement Act, 40 U.S.C. §101. The safeguards required by the EO "will decrease worker absence, reduce labor costs, and improve the efficiency of contractors and subcontractors at sites where they are per-forming work for the Federal Government." EO 14042 § 1. Those efforts, in turn, help to avoid delays and reduced performance quality in critical federal contracts. The safeguards also minimize the leave and health care costs that, in some contracts, might be passed along to the federal government. By ensuring that the federal government is entering into contracts that will be performed efficiently, EO 14042 contributes directly to establishing "an economical and efficient system,"40 U.S.C. § 101, for "[p]rocuring…property and nonpersonal services" and "performing related functions including contracting," *id.* § 101(1); *see also UAW-Labor Emp't & Training Corp. v. Chao*, 325 F.3d 360, 366 (D.C. Cir. 2003) (the Procurement Act accords the President both "necessary flexibility and 'broad-ranging authority'" in setting procurement policies)

31

(quoting *AFL-CIO v. Kahn*, 618 F.2d 784, 789 (D.C. Cir. 1979)).

And even if APA review applied to the OMB Determination—which it does not—the Determination does not violate the APA.  The Determination was not issued in excess of OMB's authority because, as explained above, OMB used the authority the President expressly delegated to OMB in EO 14042 itself.  EO 14042 § 2.  Nor was the OMB Determination arbitrary and capricious: it likewise would meet that "deferential" standard of review.  *Nat'l Ass'n of Home Builders v. Defs. of Wildlife*, 551 U.S. 644, 658 (2007).  Indeed, a district court in Kentucky examined this same claim and concluded that the plaintiffs were unlikely to succeed in claiming that the OMB Determination was arbitrary and capricious. *Kentucky v. Biden*, 2021 WL 5587446, at *12 (E.D. Ky. Nov. 30, 2021) (noting that November OMB determination included a "thorough and robust economy-and-efficiency analysis").  FCCE's APA challenges to the federal contractor vaccine requirements accordingly fail.

## IV.   Plaintiffs Have Not Demonstrated Irreparable Harm.

"[E]ven if Plaintiffs establish a likelihood of success on the merits, the absence of a substantial likelihood of irreparable injury would, standing alone, make preliminary injunctive relief improper."  *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000) (citations omitted).   Irreparable harm "must be neither remote nor speculative, but actual and imminent."  *Ne. Fla. Chapter of Ass'n of Gen. Contractors of Am. v. City of Jacksonville*, 896 F.2d 1283, 1285 (11th Cir. 1990).  "In cases involving claims related to military personnel decisions, moreover, courts have held that the

showing of irreparable harm must be *especially strong* before an injunction is warranted, given the national security interests weighing against judicial intervention in military affairs." *Shaw v. Austin*, 539 F. Supp. 3d 169, 183 (D.D.C. 2021).

Plaintiffs make no such showing.  No service member is subject to forcible or involuntary vaccination.  *See* ECF No. 23, at 34 (collecting regulation cites).  Nor do they allege otherwise.  Separation or discharge procedures could begin, but nothing indicates that the process has even been initiated as to these Plaintiffs, and such processes can take months, *see, e.g.*, Merz Decl. ¶¶ 17, 19, ECF No. 23-18.  Even if Plaintiffs are ultimately separated based on their refusal of the vaccine, such a separation is neither imminent nor irreparable.  Military administrative and disciplinary actions, including separation, are not *irreparable* injuries because the service member can later be reinstated and provided back pay if he prevails on his claim.  *See, e.g.*, *Hartikka v. United States*, 754 F.2d 1516, 1518 (9th Cir. 1985); *Chilcott v. Orr*, 747 F.2d 29, 34 (1st Cir. 1984); *Guitard v. Sec'y of Navy*, 967 F.2d 737, 742 (2d Cir. 1992); *Church*, 2021 WL 5179215, at *17.  Even a court-martial would not constitute irreparable injury.  *See Schlesinger v. Councilman*, 420 U.S. 738, 755 (1975).

The federal employee Plaintiffs also fail to establish irreparable harm.  As Plaintiffs recognize, the loss of employment—and any associated financial or reputational damages stemming therefrom—is "not typically irreparable harm."  Pls.' Supp. Br. 21; *see Sampson v. Murray*, 415 U.S. 61, 91, 92 n.68 (1974).  This is because injuries that "can be undone through monetary remedies" are not irreparable, *SME*

*Racks, Inc. v. Sistemas Mecanicos Para, Electronica, S.A.*, 243 F. App'x 502, 504 (11th Cir. 2007), and "the simple loss of a job is loss of income [which] does not establish irreparable injury," *V.N.A. of Greater Tift Cnty., Inc. v. Heckler*, 711 F.2d 1020, 1030 (11th Cir. 1983); *see also Garcia v. United States*, 680 F.2d 29, 31-32 (5th Cir. 1982) (noting that it "[i]s is practically universal jurisprudence in labor relations in this country that there is an adequate remedy for individual wrongful discharge after the fact of discharge," *i.e.*, "reinstatement and backpay").  Even if any civilian employee Plaintiff were certain to be removed for refusal to be vaccinated—and as discussed above, there is no such certainty—any associated harm would not be irreparable, in part because of the availability of reinstatement under the CSRA and back pay under the Back Pay Act.  *See Sampson*, 415 U.S. at 92 n.68.  Several courts have thus held that a federal employee's choice between complying with a COVID-19 vaccination requirement and suffering job-related consequences is not irreparable harm.  *See Rydie*, 2021 WL 5416545, at *5; *Church*, 2021 WL 5179215, at *13–15; *Smith*, 2021 WL 5195688, at *8-9; *Donovan*, 2021 WL 5979250, at *7; *Altschuld v. Raimondo*, No. 21-cv-2779, 2021 WL 6113563, at *3–5 (D.D.C. Nov. 8, 2021).  This Court should do the same.

In any event, the civilian employee and contractor Plaintiffs face no risk of irreparable harm so long as the *Feds for Medical Freedom* and *Georgia* injunctions remain in place.  *See Feds for Med. Freedom*, 2021 WL 188329, at *8 (denying request to preliminarily enjoin EO 14042 because it "is already subject to a nationwide injunction").

## V.    The Balance of Harms Tips Sharply in the Government's Favor.

The public has an exceptionally strong interest in national defense, *see Winter*, 555 U.S. at 24, and the military has a compelling interest in requiring its fighting forces to be vaccinated, healthy, and ready to deploy.  As set forth above, an injunction that allows Plaintiffs to serve in a military setting without being vaccinated against COVID-19 would threaten harm to Plaintiffs and other service members serving alongside them.  *See* Lescher Decl. ¶ 2.  The heightened risk that an unvaccinated service member will contract COVID-19 necessarily heightens the risk that others in the unit will contract COVID-19.  *See id.* ¶ 17.  For these reasons, Plaintiffs' motion for preliminary injunctive relief should be denied as to all Plaintiffs, including the two identified Plaintiffs subject to the Court's TRO, and the TRO entered by the Court should be vitiated for the reasons set forth in Defendants' prior opposition.  *See* ECF No. 66.

Military leaders, in their professional judgment, have concluded that the risks of these outcomes to military operations and national security are significantly higher when unvaccinated service members are deployed.  *See, e.g.*, Lescher Decl. ¶ 25 (expressing "the Navy's judgment" "that COVID-19 vaccines are a critical defense against COVID-19 and mitigate risk both to our force and to our mission," "tak[ing] into account the environments our service members operate in, the operations the Navy conducts, and the absence of other effective COVID-19 mitigation measures in the environments in which we operate").  An order precluding the military from considering Plaintiffs' vaccination status in making assignments would therefore threaten "[t]he health, readiness, and mission execution" of Plaintiffs' units.  *Id.* ¶ 2.

The requested injunction would also undercut the maintenance of military good order and discipline. *Id.* ¶ 16; Merz Decl. ¶ 23, ECF No. 23-18; Furness Decl. ¶ 23, ECF No. 23-19. No military can successfully function where service members feel free to define the terms of their own military service, including which orders they will choose to follow. *Chappell v. Wallace*, 462 U.S. 296, 300 (1983). The injunction Plaintiffs now demand here would encourage other members to attempt to bypass the military's process and ask courts to enter similar injunctive relief, which "in the aggregate present the possibility of substantial disruption and diversion of military resources" and is contrary to the public interest. *Parrish v. Brownlee*, 335 F. Supp. 2d 661, 669 (E.D.N.C. 2004); *see Chilcott*, 747 F.2d at 33 (noting the "strong judicial policy against interfering with the internal affairs of the armed forces"); *Shaw*, 539 F. Supp. 3d at 184 ("the public interest supports . . . limited intrusion in military affairs from civilian courts").

The public interest is especially high in ensuring that no preliminary injunction would direct the military to maintain service members in particular assignments. In particular, the Court's TRO, which keeps two Plaintiffs in command positions, is clearly improper under long-standing precedent and is causing immediate, irreparable harm to the military. *See* Defs.' TRO Opp'n 17–20, ECF No. 66. The Court's TRO has required the Navy to maintain in place the commander of a destroyer with a crew of 300 Sailors after the Navy has lost confidence in him and concluded he is unfit for duty for failure to follow lawful orders. Ex. 11 ¶¶ 4–9. Should the Navy need the destroyer to deploy in response to a geopolitical event or a national security crisis, the

Court's Order means that the Navy would have to deploy a destroyer with a commander who the Navy has assessed is unfit for command, and who could compromise the health and effectiveness of the ship. Ex. 11 ¶ 13.  Similarly, because Plaintiff Lieutenant Colonel had been selected for a battalion command, the Court's Order forces the Marine Corps to place her in a leadership role, with the prospective authority, responsibility and accountability for mission accomplishment and the readiness, health and welfare of 300 Marines, even though the Marine Corps has lost confidence in her ability to follow orders.  Ex. 10 (Decl. of Colonel Eric Thompson) ¶ 4.  Moreover, Plaintiff Lieutenant Colonel had been selected for command of a unit that will be deploying overseas, but because certain countries have vaccination requirements, she would not be able to command her unit in those countries, which "will result in diminished unit effectiveness and mission accomplishment."  *Id.* ¶ 9.

Wholly apart from the merits of the underlying RFRA claims, the Court's TRO is in clear conflict with authority that specific military assignment decisions are the province of the military, not the Courts.  *See* Defs.' TRO Opp'n 17–20, ECF No. 66. A commanding officer who cannot adhere to military orders themselves has forever lost the ability to instill a culture of good order and discipline in their Sailors or Marines, which is absolutely crucial to mission success, and, thus, national security. Ex. 10 ¶ 4; Ex. 11 ¶¶ 4, 8, 11; *Chappell*, 462 U.S. at 300.  For these reasons in particular, the Plaintiffs' demand for a preliminary injunction with respect to these two officers (Plaintiff Navy Commander and Plaintiff Marine Lt. Colonel) must be denied, and the TRO vitiated.

With respect to EO 14043, a preliminary injunction would harm the public interest in slowing the spread of COVID-19 among millions of federal employees and the members of the public with whom they interact.  As several other courts have recognized, "barring enforcement of the vaccine requirement for federal employees would do substantial and irreparable harm to the public health." *Rydie*, 2021 WL 5416545, at *5; *see also Church*, 2021 WL 5179215, at *19; *Smith*, 2021 WL 5195688, at *9; *Altschuld*, 2021 WL 6113563, at *5.  An injunction would also harm "[t]he effective administration of the federal government, in which Defendants and the public have a deep and abiding interest." *Rydie*, 2021 WL 5416545, at *5.  The COVID-19 pandemic has interfered with numerous aspects of the government's work, and the essential services it provides, by, *e.g.*, forcing office closures, limiting official travel, and causing staffing shortages.  *See generally* Pandemic Response Accountability Committee: COVID-19 Emergency Relief and Response Efforts, Top Challenges Facing Federal Agencies (June 2020), https://perma.cc/NUP9-V3XT.  Enjoining EO 14043 would thus likely interfere with the government's ability to resume normal, pre-pandemic operations.  *See Church*, 2021 WL 5179215, at *19.  These significant harms outweigh any of the quintessentially reparable harms that might befall the civilian employee Plaintiffs if, in the absence of emergency relief, they faced the prospect of workplace discipline.

## VI.    Plaintiffs' Anonymous Allegations Cannot Satisfy the Burden for a Preliminary Injunction.

Finally, over three months into this litigation, Plaintiffs still have not complied

with Federal Rule of Civil Procedure 10(a) by filing a complaint that "name[s] all the parties." *See Doe v. Frank*, 951 F.2d 320, 322–24 (11th Cir. 1992).  Plaintiffs finally filed their long-anticipated motion to proceed under a pseudonym but have provided neither the Court nor Defendants with their names.  Plaintiffs' failure to do so inhibits Defendants from "contradict[ing] or explain[ing] assertions" in the Complaint and declarations or providing fulsome explanations to the Court regarding each Plaintiff's individual circumstances. *See KeyView Labs, Inc. v. Barger*, 2020 WL 8224618, at *6 (M.D. Fla. Dec. 22, 2020); *see also Oklahoma*, 2021 WL 6126230, at *2 ("Absent permission, the district court lacks 'jurisdiction over the unnamed parties, as a case has not been commenced with respect to them.'" (citation omitted)).

Rather than provide sufficient information for the Court to assess Plaintiffs' claims, they instead make arguments in the abstract based on their allegation that the entire military religious accommodation process is a "ruse" and thus the Court must grant all religious exemptions without regard to the individual request and without regard to the military's judgment as to military needs.  But "Federal courts do not exercise general legal oversight of the Legislative and Executive Branches[.]" *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2203 (2021).  And Plaintiffs "must assert [their] own legal rights and interests, and cannot rest [their] claim to relief on the legal rights or interests of third parties." *Warth v. Seldin*, 422 U.S. 490, 499 (1975).

By failing to provide their names, Plaintiffs do not allow the Court to assess whether they are likely to succeed on the merits of their claims or whether they will suffer any irreparable harm. *See KeyView Labs*, 2020 WL 8224618 at *6, *13.

Accordingly, the Court cannot grant a preliminary injunction as to the "named" Plaintiffs, much less issue a preliminary injunction as to any purported class. *TransUnion*, 141 S. Ct. at 2208 ("Article III does not give federal courts the power to order relief to any uninjured plaintiff, class action or not.") (quoting *Tyson Foods, Inc.* v. *Bouaphakeo*, 577 U.S. 442, 466 (2016) (Roberts, C. J., concurring)).

## CONCLUSION

For the foregoing reasons, and for those set forth in Defendants' Opposition to Plaintiffs' Motion for a Preliminary Injunction and in Defendants' Opposition to Plaintiffs' Emergency Motion for a Temporary Restraining Order, as well as their supporting exhibits and declarations, Plaintiffs' Motion for a Preliminary Injunction should be denied as to all Plaintiffs, including Plaintiff Navy Commander and Plaintiff Marine Lt. Colonel, and the TRO entered on February 2, 2022 (ECF No. 67).

Dated: February 4, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Acting Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director

*/s/ Courtney D. Enlow*
ANDREW E. CARMICHAEL
AMY E. POWELL
Senior Trial Counsel
VINITA B. ANDRAPALLIYAL
ZACHARY A. AVALLONE
COURTNEY D. ENLOW
R. CHARLIE MERRITT
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 616-8467
Email: courtney.d.enlow@usdoj.gov
*Counsel for Defendants*