# Exhibit 11

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| NAVY SEAL #1, *et al.*<br><br>Plaintiffs,<br><br>v.<br><br>JOSEPH R. BIDEN, in his official capacity as President of the United States, *et al.*<br><br>Defendants. | Case No. 8:21-cv-02429-SDM-TGW |

## DECLARATION OF FRANK BRANDON

## [WITH REGARD TO PLAINTIFF NAVY COMMANDER]

I, Captain Frank Brandon, United States Navy, hereby state and declare as follows:

1. I am a Captain in the United States Navy, currently serving as Commodore of Destroyer Squadron TWO SIX, located in Norfolk, Virginia. I make this declaration in my official capacity, based upon my personal knowledge and upon information that has been provided to me in the course of my official duties.

2. I have been assigned to my current position since June 2021. Prior to my current assignment, I served as the Deputy Commodore of Destroyer Squadron TWO SIX from June of 2020 to June of 2021.

3. Select Navy tours include the following: Operations Officer onboard the USS LASSEN (DDG-82) transitioning the ship to the Forward Deployed Naval Forces - Yokosuka, Japan; Main Propulsion Assistant onboard the USS ENTERPRISE (CVN 65) deploying to the Arabian Gulf in support of Operations IRAQI FREEDOM and ENDURING FREEDOM

1

(OIF/OEF); Executive Officer onboard the USS MITSCHER (DDG-57); Commanding Officer onboard the USS MITSCHER executing a 5th Fleet Ballistic Missile Defense Deployment; and Reactor Officer onboard the USS EISENHOWER (CVN-69).

4. I have lost trust and confidence in Plaintiff, and I have determined that he should be removed immediately from his position as commander of a guided-missile destroyer. To be clear, I have not lost trust and confidence in Plaintiff because of his religious beliefs. Rather, once his religious accommodation appeal was denied, he was issued an order giving him five days to receive the COVID-19 vaccine, but he refused to do so. Therefore, Plaintiff is in violation of a lawful order. In the military, adherence to a lawful order is the most fundamental principle on which good order, discipline, and the success of military forces rests. Adherence to orders cannot be taught during a crisis or on the battlefield. Rather, a commanding officer is instilled with the responsibility to create a culture of immediate compliance to orders and military procedures that are reflexive for when such conditions arise. A commanding officer who cannot adhere to military orders has forever lost the ability to instill a culture of good order and discipline in their crew. This will inevitably lead to the breakdown of basic principles of training, safety and seamanship and could have tragic consequences at any moment but especially when the vessel is underway at sea.

5. I have reviewed the temporary restraining order (TRO), ECF No. 67, issued on February 2, 2022. Enjoining Navy leadership from relieving Plaintiff of his command of a destroyer creates a dangerous situation. *See* ECF 67 at 10. Specifically, the Navy is forced to leave an insubordinate officer with poor judgment and a lack of concern for the health and welfare of his crew of over 300 sailors in charge of a nearly 10,000-ton warship—armed with missiles, torpedoes, a mounted naval artillery gun, and other powerful ordnance—that could be

called to respond to a national security crisis. Under Navy regulations, "[t]he responsibility of the commanding officer for his or her command is absolute, except when and to the extent to which, he or she has been relieved therefrom by competent authority." With this awesome responsibility also comes accountability. Every commanding officer is accountable to a superior officer within the chain of command, up to and including the Commander-in-Chief, who is accountable to the American people. Navy Regulations 0802 ¶ 1. Because the Court has ordered that the Plaintiff cannot be removed from command, this result would give the Plaintiff the absolute responsibility and authority over his ship and crew but without any accountability to the chain of command. Providing Plaintiff with this authority and responsibility with no accountability is contrary to every principle of leadership in the 246-year history of the United States Navy and is anathema to the Constitution that every Naval Officer swears to defend.

6. In addition, this destroyer cannot deploy with the Plaintiff as the commanding officer. The TRO has rendered the Plaintiff's destroyer a non-worldwide deployable unit. The Plaintiff's unvaccinated status limits the destroyer's worldwide deployability—at this point in the ship's readiness cycle, she could be soon called upon to support military operations. The requirement to remove the plaintiff from command just prior to combat operations creates risk to the military mission, endangers the crew, and diminishes our national security. For example, vaccination for COVID-19 is required prior to deployment to the U.S. Central Command Area of Responsibility. Given current world events, sidelining a 1.8 billion dollar destroyer significantly reduces the capacity and readiness of my Destroyer Squadron to support national security objectives.

7. Navy policy and COVID-19 vaccination implementing guidance balances the safety, health and readiness of the Force with the ability of service members to seek medical

3

exemptions and religious accommodations to the vaccination requirement while—to the maximum extent possible—maintaining their current assignments and responsibilities. Specific to those in command, such as Plaintiff, commanding officers may be allowed to remain in command while unvaccinated with proper mitigation measures while their accommodation or exemption requests are pending. If a commanding officer has exhausted his or her exemption processes and is ultimately denied an exemption, he or she faces a choice: get vaccinated or be relieved of command:

> An unvaccinated senior leader without a pending or approved exemption calls into question the Navy's trust and confidence regarding their ability to ensure unit readiness or to maintain good order and discipline. These senior leaders must begin vaccination immediately. This constitutes a lawful order. The immediate superior in command (ISIC), commander, or commanding officer, as applicable, will notify in writing senior leaders refusing the vaccine that they have five (5) calendar days to initiate corrective action. If the senior leader does not begin a vaccination series or request an exemption within that five-day period, the ISIC, commander, or commanding officer will relieve the senior leader and initiate detachment for cause (DFC) [proceedings].

NAVADMIN 225/21 ¶ 6.a.

Plaintiff's religious accommodation appeal was denied, he was ordered to take the vaccine within five days, and he was about to be relieved from command before the TRO was issued. Plaintiff, now in violation of a lawful order, remains in command. The Plaintiff has issued the same or similar orders to members of his crew and has enforced the Navy's disposition guidance on members of his crew for refusing the vaccine—notwithstanding his refusal to obey the same order. The first member of his crew will be separated from the Navy on February 8, 2022 for refusing to get vaccinated.

8.      Pursuant to Navy regulations, "[t]he commanding officer and his or her subordinates shall exercise leadership through personal example, moral responsibility and judicious attention to the welfare of persons under their control or supervision. Such leadership

shall be exercised in order to achieve a positive, dominant influence on the performance of persons in the Department of the Navy." Navy Regulations 0802 ¶ 4. The breadth of the TRO, which would arguably leave this officer in command with no accountability, will likely lead to a breakdown of good order and discipline on this ship. This authority without accountability could lead to tragic results. The TRO sets the conditions for over 300 personnel on this destroyer to not follow Plaintiff's orders because of his personal example. If Sailors disagree with an order issued by this commanding officer, the example they have from this Plaintiff is to refuse the order and, if needed, judicially challenge the order or assignment the commanding officer has issued.[1] A Navy warship cannot function under these conditions.

9.      Men and women charged with the responsibility of command at sea understand that being at sea is fraught with hazards in normal operations. For example, in a span of approximately two months in 2017, two destroyers, USS FITZGERALD and USS JOHN S. MCCAIN, were involved in horrific collisions during routine transits resulting in the loss of 17 Sailors. The Navy determined that these incidents were, in part, based on a failure of leadership. Specifically the commands failed to create a culture that prioritized training, qualifications, and the flawless execution of the basics of seamanship. Because Plaintiff now refuses orders himself, I have lost confidence in his ability to create such a culture in his own command. To mitigate this risk, I have already placed extra supervision onboard the destroyer to ensure the safe handling and operations of this warship at sea.

10.     In addition, the Court's order prohibits the Navy from removing the Plaintiff from his command "for any reason." On its literal terms, the order appears to mean that even if the

---

[1] The Navy waterfront is watching. Restricting my authority to enforce the orders from my Navy superiors sets a precedent across the Navy waterfront, and encourages Sailors to challenge the orders they are given when those Sailors disagree with the order.

5

Plaintiff were to cause a catastrophic event resulting in the loss of life or a tactical blunder with strategic consequences, such as a reckless maneuver in proximity to a hostile military aircraft or vessel, the Court's order appears to foreclose the Navy from removing Plaintiff from command or taking any other action against Plaintiff. Similarly, if Plaintiff issues a clearly unlawful order that endangers his entire crew, again, the Court's order seems to require that he be kept in place. For example, the Court's order purports to require the Navy to keep this officer in command even if he was responsible for a horrific accident similar to those that occurred on the USS FITZGERALD and USS JOHN S. MCCAIN. Even assuming the Plaintiff were to carry out his military duties without incident, the Court's order still would require the Navy to maintain in place a commanding officer who has lost the confidence of his superiors by defying a lawful order critical to ensuring the continued readiness of world-wide deployable Navy.

11. The TRO will also result in decreased morale and a breakdown of discipline within the unit and likely other units as well. The order creates a bifurcated system for leading, assigning, disciplining, and employing Navy personnel. The lack of uniformity and disparate treatment necessitated by the TRO significantly corrodes good order and discipline beyond this officer's destroyer.

12. As the commanding officer of a guided-missile destroyer, Plaintiff commands a crew of more than 300 Sailors aboard a 510-foot long ship. Generally, the Arleigh Burke Class Guided Missile Destroyers are warships that provide multi-mission offensive and defensive capabilities. These modern warfighting platforms cost approximately $1.8 billion to build. Destroyers can operate independently or as part of Carrier Strike Groups, Surface Action Groups, and Expeditionary Strike Groups. Guided-missile destroyers are multi-mission surface combatants capable of conducting Anti-Air Warfare, Anti-Submarine Warfare, and Anti-Surface

Warfare. The destroyer's armament has greatly expanded the role of the ship in strike warfare utilizing the MK-41 Vertical Launching System. The class's armament includes Standard Missile; Vertical Launch ASROC missiles; Tomahawk; six MK-46 torpedoes (from two triple tube mounts); Close In Weapon System, 5-in. MK 45 Gun, and Evolved Sea Sparrow Missile (ESSM). Aircraft include two LAMPS MK III MH-60 B/R helicopters with Penguin/Hellfire missiles and MK 46/MK 50 torpedoes. Because a destroyer can fill several mission sets and deploy independently, it is one of the most dynamic and versatile assets within the Navy.[2] Readiness to deploy is paramount. Onboard, the crew of the ship and others, who may include helicopter air crews or embarked special operations forces, sleep in confined berthing spaces, are in close proximity in passageways, and eat meals in a communal galley. There is no ability to social distance on a destroyer. There is no ability on a destroyer to provide appropriate care for a service member with severe COVID-19 symptoms. Accordingly, if a service member were to develop severe symptoms on a destroyer, it would require the ship to return to port (and abandon its present mission) or arrange for an emergency medical evacuation using a helicopter. Often a medical evacuation may not be a viable option due to the ship's location and the limited range of the ship's helicopter. Even where a medical evacuation is an option, it may involve the long-term loss of the ship's helicopter and members of the ship's crew to accompany the sick service member. Such a loss would have an adverse impact on employment of the ship and the ability of the ship to execute its assigned missions. Because of the risks to unvaccinated personnel, the crew, and the mission, unvaccinated personnel cannot be assigned to operational units.[3]

---

[2] For instance, the Commander of U.S. Central Command, Gen McKenzie, stated the following regarding destroyers in his 2021 posture statement: "As Iran's ballistic missile force is the most formidable in the region, USCENTCOM's missile defense assets incorporate Patriots, Sentinel and Avenger systems, and *Navy cruisers/destroyers* to form a layered defense, augmented by Theater High-Altitude Air Defense when ordered."

[3] "[A]ll operational Navy units are assumed to be 100 percent vaccinated. Unvaccinated uniformed personnel should only include those with an approved waiver, those awaiting waiver disposition, or those processing for separation." NAVADMIN 077/22 ¶5.b.1. "Operational" units refer to the Navy's warfighting units, like a guided-missile destroyer,

7

NAVADMIN 007/22.

13.     The destroyer that Plaintiff currently commands is in her "basic phase." The "basic phase" means the ship is in training in preparation for future deployment, conducting measures such as live-fire events, helicopter operations, handling of munitions and ordnance, small-craft boarding team evolutions, and others, to prepare for future deployment certification. In other words, the ship is preparing for deployment. This preparation involves qualifications and certification events that require the ship to be underway (at sea) for several short periods of time. Units that have completed the basic phase may be tasked with independent contingency operations as directed by the President and Secretary of Defense, in addition performing homeland security, humanitarian assistance (HA) and disaster relief (DR), or other specific, focused operations. It should also be noted that this ship is homeported on the east coast. Geopolitical events and national security crises are unpredictable but some are foreseeable. This ship could be called into foreseeable contingency operations in very short order. If this occurs, the Navy would have to deploy a destroyer with a commander for whom I have lost confidence in his ability to follow orders, faithfully execute his duties as assigned, and who could compromise the health and effectiveness of the ship. The Navy's discretion to choose commanders of its destroyers for deployments is paramount for national security.

14.     In addition to refusing to obey a lawful order, after exhausting the religious accommodation process, on February 1, 2022, Plaintiff then submitted a "new" request in an effort to remain in an indefinite "exemption request pending" status to avoid adverse administrative action and accountability. Plaintiff's religious accommodation appeal was denied

---

which are required to be worldwide deployable at all times to ensure our national security. The assumption is that, to ensure mission readiness, unvaccinated personnel will only remain assigned to these types of units temporarily until such time as they are vaccinated, reassigned, or separated.

on January 23, 2022. Plaintiff's "new" religious accommodation request seeks the identical accommodation that was the subject of his appeal. However, Plaintiff contends that there are significant changes in the physical environment by referencing the number of personnel vaccinated, infections with the Omicron variant, and the fact that he was inconvenienced during the holiday period when his executive officer became infected with COVID-19, requiring Plaintiff to be aboard the ship—of which his responsibility for is "absolute"—for more than he would have preferred.[4] In response, the Chief of Navy Personnel, the adjudication authority for religious accommodation requests, denied the renewed request, finding that there was no significant change in the environment and no change in the compelling government interest in Plaintiff being vaccinated. Exhibit B. In the short time since his religious accommodation appeal was denied and through his actions and words, Plaintiff has demonstrated that he will remain personally unvaccinated to the detriment of the readiness of his crew and unit.

15.     In conclusion, the COVID-19 vaccine is the best defense the military has against a virus which can significantly degrade the health and welfare of service members and compromise the mission. The Court's order barring the implementation of this lawful order, and requiring the Navy to leave an insubordinate officer in command, has undermined the good order and discipline onboard this destroyer. As long as this order remains in place, this TRO will continue to severely undermine the military readiness of this destroyer. Due to its overall impact on good order and discipline it is also likely to affect the military readiness of other ships and the Navy. Finally, sidelining a 1.8 billion dollar destroyer is an unnecessary risk to national security.

---

[4] "Of note, my holiday stand down was limited/non-existent because my XO (fully vaccinated) contracted COVID-19 and remained away from his duties to execute required ROM [restriction of movement] protocols." Exhibit A at 2.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 4th day of February, 2022.

*[signature]*

Frank Brandon

Exhibit A

1 Feb 22

From: ▮▮▮▮▮▮▮▮▮▮ USN
To: Deputy Chief of Naval Operations (Manpower, Personnel, Training and Education) (N1)
Via: Commander, Destroyer Squadron TWO SIX

Subj: REQUEST FOR WAIVER OF POLICY IN SUPPORT OF RELIGIOUS PRACTICE

Ref: (a) DOD Instruction 1300.17
(b) SECNAVINST 1730.8
(c) BUPERSINST 1730.11A

Encl: (1) APPEAL OF RELIGIOUS ACCOMMODATION FOR IMMUNIZATION REQUIREMENT, dated 23 January 2022
(2) APPEAL OF DISAPPROVED REQUEST FOR WAIVER OF POLICY IN SUPPORT OF RELIGIOUS PRACTICE IN CONSIDERATION OF COMMANDER ▮▮▮▮▮
(3) Email from CDR ▮▮▮ to ISIC requesting missing information from RA disapproval, dated 29 December 2021
(4) Email from CDR ▮▮▮ to OPNAV requesting missing information from RA disapproval, dated 04 January 2022
(5) Email from ISIC providing the missing documentation, dated 24 January
(6) REQUEST FOR RELIGIOUS ACCOMMODATION THROUGH WAIVER OF IMMUNIZATION REQUIREMENTS ICO CDR ▮▮▮▮▮ USN, dated 13 October 2021 (BUMED letter)
(7) https://www.washingtonpost.com/national-security/2022/01/03/uss-milwaukee-covid-outbreak/
(8) https://news.usni.org/2022/01/04/uss-milwaukee-back-in-sea-after-covid-19-outbreak
(9) https://www.medrxiv.org/content/10.1101/2021.08.24.21262415v1
(10) https://www.thelancet.com/journals/lanepe/article/PIIS2666-7762(21)00258-1/fulltext
(11) https://www.news-medical.net/news/20210608/No-point-vaccinating-those-whoe28099ve-had-COVID-19-Findings-of-Cleveland-Clinic-study.aspx
(12) https://www.nih.gov/news-events/nih-research-matters/lasting-immunity-found-after-recovery-covid-19

1. Per references (a) and (b), the Department of the Navy (DON) recognizes that religion can be as integral to a person's identity as one's race or sex. To that extent, DON promotes a culture of diversity, tolerance, and excellence by **making every effort** to accommodate religious practices **absent a compelling operational reason** to the contrary. Religious medical practices include traditional objections to receiving immunizations. It is DON policy to accommodate the traditional observances of the religious faith practiced by individual members when these doctrines or observances **will not** have an adverse impact on military readiness, individual or unit readiness, unit cohesion, health, safety, discipline, or mission accomplishment. Immunizations requirements may be waived when requested by the member based on religious objection.

Subj:  REQUEST FOR WAIVER OF POLICY IN SUPPORT OF RELIGIOUS PRACTICE

2. Per enclosure (1), I received denial of my Religious Accommodation (RA) appeal request from the CNO dated 23 Jan 2022. I am submitting a new RA request per reference (c) which states as follows:

> *5f(2) When a religious accommodation request is denied, the requestor may renew the request upon change in **physical**, operational or geographical environment, or at any time in which there is a change to pertinent policy.*

Since my original request for RA submitted 13 September 2021 and appeal submitted 3 November 2021, my physical environment has changed significantly as follows:
1. About 300 sailors at my command have become vaccinated or natural infected and recovered from the COVID-19 virus;
2. I contracted the COVID-19 virus on 10 November 2021 with mild symptoms associated with the Omicron variant and have natural immunity that I did not have previously;
3. Over 160 Sailors have contracted the COVID-19 virus despite being fully vaccinated. Of note, my holiday stand down was limited/non-existent because my XO (fully vaccinated) contracted COVID-19 and remained away from his duties to execute required ROM protocols.
4. Over 5500 COVID-19 positive reports on surface ships under USFFC have demonstrated the primary COVID-19 infections are in vaccinated sailors, clearly indicating current COVID-19 vaccinations do not prevent contraction or spread of the COVID-19 virus;
5. The Omicron variant (as opposed to the original virus and subsequent variants), though more transmissible, has significantly lower instances leading to hospitalization and almost non-existent instances of death directly relating to COVID-19 infection; and
6. [REDACTED] is increasing its operational status with fewer and fewer days ashore, naturally limiting myself and crew to additional, outside COVID-19 virus exposure.

3. Additionally, after I submitted my RA appeal in November 2021 per enclosure (2), I was made aware by my PERSREP JAG that I had not received all of the information utilized by N1 to deny my Sep 2021 RA request. Specifically, in consult with my JAG, I had the right to view documents and/or recommendations made by other agencies and individuals which should have been provided along with the CNP denial letter dated 22 Oct 2021, contained in enclosure (2). I requested this information from my ISIC on 29 Dec 2021 (see enclosure (3)) and formally requested this information from OPNAV N1 via email on 04 Jan 2022, see enclosure (4). In my email request, I asked the following information to be provided:

   a. Reference (h) of CNP's denial letter: BUMED ltr 6320 Ser M44/21UM40540 of 13 Oct 21 which CNP states in paragraph 5 he relied upon in making his determination.

   b. Any documents, notes, or additional material submitted to CNP for evaluation and consideration of my 13 September 2021 request for religious accommodation.

After receiving some of the requested documentation from N1 on 24 Jan 2022 via email from my ISIC (see enclosure (5)), it was clear that **I had not had the opportunity to fully address the issues I would have raised in my appeal had I been provided the original denial's supporting documents.**

2

Subj:   REQUEST FOR WAIVER OF POLICY IN SUPPORT OF RELIGIOUS PRACTICE

4. Upon reading the BUMED letter dated 13 Oct 2021, see enclosure (6), I would like to proactively address some of the information that is contained therein as follows:

   a. Per para 2, vaccines required for individual medical readiness have met the safety requirements of the FDA. Of note, vaccines that are required for individual medical readiness have been approved by the FDA. The only COVID-19 vaccines that are currently approved by the FDA are "COMIRNATY" by BioNTech Manufacturing GmbH (Mainz, Germany) and "SPIKEVAX" by Moderna, neither of which are available in the United States presently as stated in the 31 Jan 2022 letter to ModernaTX, Inc. which states:

   *"Although SPIKEVAX (COVID-19 Vaccine, mRNA) and Comirnaty (COVID-19 Vaccine, mRNA) are approved to prevent COVID-19 in certain individuals, within the scope of the Moderna COVID-19 Vaccine authorization, there is **not sufficient approved vaccine** available for distribution to this population in its entirety at the time of reissuance of this **EUA**."*

   b. Currently, all other COVID-19 vaccinations that are available to servicemembers are only authorized by the FDA for Emergency Use Authorization (EUA) only. Per 21 USC Sec. 360bbb-3, vaccinations under EUA are voluntary, unless waived by POTUS per 10 USC Sec. 1107a, DoDI 1300.17 and DoDI 6200.02.

   c. The BUMED letter states that vaccinations have demonstrated effectiveness in disease prevention. That statement may apply to other vaccinations; however, it does not apply to any of the current COVID-19 vaccines available. The efficacy of the current COVID-19 vaccinations is based on reducing symptoms if exposed and preventing severe illness or death. None of the COVID-19 vaccinations prevent contracting the predominant Omicron variant virus, or transmission of the virus as evidenced by world wide reports and current Navy COVID-19 virus positivity tracking data.

   d. Per para 3, the letter states that active duty personnel will be up to date on routine vaccinations. COVID-19 is not a routine vaccination.

   e. Per para 4, the BUMED letter states that a waiver of immunization requirements would have a **detrimental** effects on readiness of myself and my fellow service members. The letter does not explain **how** this is detrimental. The letter continues to state that primary prevention of disease is through immunization. It is still common knowledge that COVID-19 vaccination does not prevent the contraction or spread of COVID-19. Studies have shown natural immunity is an effective guard against contraction, spread and symptoms that would cause hospitalization or death, see enclosures (9) through (12).

   f. The BUMED letter further cites the case of USS THEODORE ROOSEVELT that had a COVID outbreak in March 2021 as an example of how an outbreak of COVID can degrade the individual unit readiness. This case is used by BUMED to "highlight the importance of vaccination to both individual and unit force health protection. A similar outbreak happened to the USS MILWAULKEE (LCS 5) in December 2021 with a crew that was 100% vaccinated, see enclosures (7) and (8). One third of the crew tested positive for COVID. This ship had just deployed, and had

3

Subj:  REQUEST FOR WAIVER OF POLICY IN SUPPORT OF RELIGIOUS PRACTICE

to be isolated inport, removing the unit from executing its mission capabilities for about two weeks. This demonstrates that unit and mission readiness could be negatively impacted **regardless** of COVID vaccination status.

      g. Per para 5, the BUMED letter states that unvaccinated individuals remain at risk for developing COVID-19 and propagating new variants that impact the force. This statement is inaccurate in that both vaccinated and unvaccinated individuals can develop COVID-19. Also, studies show that vaccinated individuals are just as likely to transmit COVID and propagate variants, see enclosure (9). Specifically, researchers found that "those who were fully vaccinated with the Pfizer-BioNTech Covid-19 vaccine had a 13.06-fold increased risk of developing COVID-19 from the delta variant than those who had previously contracted and recovered from a COVID-19. The study also found that those who previously contracted and recovered from COVID-19 had increased protection against reinfection from a single dose of Pfizer's COVID-19 vaccine compared to those who had had a prior infection and remained unvaccinated. Researchers calculated the 13-fold increased risk of infection based on just 238 infections among about 16,000 vaccinated people—accounting for less than 1.5% of that group—versus 19 reinfections among roughly 16,000 study participants who had been previously infected." According to the CDC website, "High viral loads suggest an increased risk of transmission and raised concern that, unlike with other variants, vaccinated people infected with Delta can transmit the virus," CDC Director Rochelle Walensky said in a statement. "This finding is concerning and was a pivotal discovery leading to CDC's updated mask recommendation. The masking recommendation was updated to ensure the vaccinated public would not unknowingly transmit virus to others, including their unvaccinated or immunocompromised loved ones." **The BUMED letter is not up to date with the CDC** comments on vaccinated individuals being susceptible to transmitting COVID. Therefore, it should not be used against unvaccinated personnel who are no different.

      h. Per para 6, the BUMED letter states that vaccination remains the most effective means to prevent COVID-19. However, studies show that vaccination does not prevent one from contracting or spreading COVID. The letter does state that efficacy was tied to **preventing symptomatic** COVID. This matches up with my previous statement; it should be restated that the efficacy is NOT tied to preventing the contraction or transmission of COVID. Additionally, the BUMED letter refers to the FDA approved vaccine. The FDA has only approved two of the five COVID-19 vaccine products, COMIRNATY on 23 Aud 2021 and SPIKEVAX on 31 Jan 2022. Of note, the other three COVID vaccine products (Pfizer-BioNTech, Moderna, and Johnson&Johnson remain under EUA). This statement by BUMED implies that the FDA approved vaccine is and has been available to servicemembers. Based upon my personal attempts to locate an FDA licensed vaccine at my local MTFs, I have been unsuccessful to locate any.

      i. Per para 7, the BUMED letter states that my religious objects must be balanced against the medical risk to me and my unit. Subsequent to my original RA request and RA denial appeal, I have already contracted COVID-19 and have natural immunity to the virus. I am not at risk for severe illness. All personnel (vaccinated or unvaccinated) are susceptible to COVID transmission; vaccination status does not prevent that fact. Per enclosure (10), there is increasing evidence that vaccinated individuals are more likely to transmit COVID than unvaccinated individuals. Regardless, it has already been shown that mission accomplishment can still be done despite vaccination status. And we already know that complete vaccination can still be impacted by COVID, which could affect unit readiness. Not receiving the vaccine has no measurable effect to

4

Subj:   REQUEST FOR WAIVER OF POLICY IN SUPPORT OF RELIGIOUS PRACTICE

the opinion that BUMED states in their letter, and should not be held against service members that have a sincerely held belief or religious objection.

5. Per reference (c), when a religious accommodations is denied, the request or may renew the request upon a change in physical, operational or geographical environment. Physical environment includes your work environment on the ship, on the job. Since my initial RA request of 13 Sep 2021, and the subsequent appeal on 03 Nov 2021, I contracted & recovered from COVID-19 (with a positive test dated 10 Nov 2021). Natural immunity reduces the risk of additional covid infection and effects, see enclosures (9) through (12). Lasting immunity is found up to 8 months post COVID infection. It can be concluded that "This study demonstrated that natural immunity confers longer lasting and stronger protection against infection, symptomatic disease and hospitalization caused by the Delta variant of SARS-CoV-2, compared to the BNT162b2 two-dose vaccine-induced immunity."

6. The Religious Freedom Restoration Act of 1993 (RFRA) states the Government may substantially burden an individual's exercise of religion only if it demonstrates that the application of the burden to the person is: (1) in furtherance of a compelling governmental interest, and (2) is the least restrictive means of furthering that interest. The burden rests with the government to demonstrate both factors in their entirety, not the individual requesting the exemption per DoDI 1300.17, September 1, 2020. All requests for accommodation of religious practices are to be assessed on a case-by-case basis. My original RA request, subsequent appeal, and this change to RA request demonstrate facts that the government's vaccination mandate is NOT the least restrictive means to further the interest of mission accomplishment and unit readiness. The original disapproval from CNP and subsequent Appeal disapproval from CNO **do not** explain how vaccination outweighs my sincerely held beliefs to accomplish the mission and promote good order and discipline, nor do they explain how this would detrimentally affect me and my unit's readiness. Using the information provided, I have demonstrated how the COVID-19 vaccination is not the least restrictive means available to preserve military readiness, mission accomplishment and the health and safety of military service members. Natural immunity also confers the same benefits and offers better protection. The government must show it cannot accommodate the religious adherent while achieving its interest through a viable alternative, which is available.

7. Unit cohesion and good order and discipline are not affected by my vaccination status at the command. The medical status of individuals is a private matter that is not disclosed to the command at large. All military members may wear a mask for personal protection even if fully vaccinated in light of personal health protection. It is well-established that even individuals who have been fully vaccinated against COVID-19 may still contract and spread the virus. Individuals who chose to receive a COVID-19 vaccination did so to protect their individual health and have put their confidence in the efficacy and effectiveness of the vaccine to protect them from contracting the virus or reducing the effects of the virus if contracted. The vaccination status of co-workers is not an issue within our command.

8. On 3 Jan 2022, Judge Reed O'Connor issued a preliminary injunction for plaintiffs in U.S. NAVY SEALS 1-26, et al, v. JOSEPH R. BIDEN, JR., et al. Plaintiffs had submitted RA requests but were not provided the legal review required in evaluating their submissions. The Court noted that the Navy utilized a "six-phase, fifty step process" that at Phase 1 the administrator is instructed to update a prepared disapproval template with the requestor's name and rank. Based upon the

5

Subj:   REQUEST FOR WAIVER OF POLICY IN SUPPORT OF RELIGIOUS PRACTICE

boilerplate rejection template, it appears the RA review process is pre-determined and sidesteps an individualized review process as required by law. The Judge called the Navy RA review process "theater" and that it "merely rubber stamps each denial." Based upon the documents presented to the Court and the Judge's acknowledgement of the blanket denial process of all RA requests, I am submitting a new RA request for an individualized case-by-case review as required under the law.

9. As I discussed in my initial religious accommodation request, I believe that my natural God-given immunity, in conjunction with my healthy diet/lifestyle, is better than the artificial immunity created by the COVID-19 vaccine. Studies support the conclusion that natural immunity derived from prior COVID-19 infection confers longer lasting and stronger protection against infection, symptomatic disease, and hospitalization caused by the Delta variant of SARS-CoV-2 compared to the Pfizer two-dose vaccine induced immunity. In comparison, vaccines had over 13-fold increased risk of breakthrough infection with the Delta variant compared to those individuals previously infected. Proof of recovery from a prior COVID-19 infection is a less restrictive means of furtherance of a compelling government interest as opposed to an additional unnecessary and less effective vaccination that substantially burdens my religious freedoms. Other mitigations still remain in place, such as: mask wear, social distancing, frequent sanitization, weekly testing, etc.

10. As stated in my previous request, I cannot do something that I know to be wrong for my body. Being mandated to take the COVID-19 vaccine would negatively impact my spiritual, mental, and emotional readiness, and cause significant anguish due to my sincerely held beliefs. I have served honorably for nearly 18 years. I can continue in my capacity with current mitigations that is backed by research, science, and opinions of leading medical experts.

11. In closing, the Founders envisioned a nation where religious people are free to practice their faith without fear of discrimination or retaliation by the federal government. For that reason, the Constitution enshrines and protects the fundamental right to religious liberty as Americans' first freedom. Federal law protects this freedom without undue interference by the federal government. James Madison said the free exercise of religion is "in its nature an unalienable right because the duty owed to one's creator is precedent both in order of time and in degree of obligation to the claims of Civil Society." Except in the narrowest circumstances, no one should be forced to choose between living out his or her faith and complying with the law.

12. Based upon the above supplement to my appeal request and enclosures in support, I respectfully request another review of my religious accommodation request and appeal. As stated by Judge O'Connor:
   *"The COVID-19 pandemic provides the government no license to abrogate those [religious] freedoms. There is no COVID-19 exception to the First Amendment. There is no military exclusion from our Constitution.*



6

Exhibit B



**DEPARTMENT OF THE NAVY**
OFFICE OF THE CHIEF OF NAVAL OPERATIONS
2000 NAVY PENTAGON
WASHINGTON DC 20350-2000

1730
Ser N1/117995
2 Feb 22

From: Deputy Chief of Naval Operations (Manpower, Personnel, Training and Education) (N1)
To: ▮▮▮▮▮▮▮▮▮▮ USN
Via: Commander, Destroyer Squadron TWO SIX

Subj: REQUEST FOR RELIGIOUS ACCOMMODATION THROUGH WAIVER OF IMMUNIZATION REQUIREMENTS

Ref: (a) ▮▮▮▮▮▮▮▮▮▮ USN ltr of 1 Feb 22 w/ends
(b) BUPERSINST 1730.11A
(c) DCNO/N1 RA Response ltr of 22 Oct 21
(d) CNO Appeal RA1 Response ltr of 23 Jan 22

1. Your request at reference (a) is denied. Contrary to your assertion, there have been no substantive changes to the physical environment since your original request and appeal. The compelling government interest in ensuring mission accomplishment, to include military readiness, unit cohesion, good order and discipline, health and safety, on both individual and unit levels remains the same.

2. As provided in reference (b), members are afforded the opportunity to renew requests when the physical, operational, or geographical environment in which they work or operate has changed. In your case, the environment has not materially changed. Specifically, and as already noted in references (c) and (d), you remain a Surface Warfare Officer commanding an operational warship, where you live and work in close proximity with your shipmates. Further, a waiver of the COVID-19 immunization would continue to have a predictable and detrimental effect on your readiness and the readiness of the Sailors who serve alongside you in both operational and non-operational environments. Granting your request would still have a direct and foreseeable negative impact on the compelling government interests of military readiness and health of the force. Finally, while no vaccine is completely effective, vaccines reduce disease incidence and disease severity.

JOHN B. NOWELL, JR

Copy to:
OPNAV (N131, N0975)
BUMED