UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

| | |
|---|---|
| **NAVY SEAL # 1,** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **JOSEPH R. BIDEN, JR.**, in his official capacity as President of the United States, *et al.*, <br><br> Defendants. | Case No. 8:21-cv-02429-SDM-TGW |

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' PLAINTIFFS' MOTION FOR LEAVE TO PROCEED PSEUDONYMOUSLY

All Plaintiffs in this case seek to proceed pseudonymously. But under our system of justice, there is a presumption that judicial proceedings be open to the public and for the identities of the parties to be public knowledge. Plaintiffs may overcome this presumption only by making an extraordinary showing justifying the request to proceed anonymously. Plaintiffs here fail to do so.

*First*, courts around the country, including within the Eleventh Circuit, have denied similar requests to proceed under pseudonyms from plaintiffs challenging the military's vaccine requirements, rejecting the same arguments that Plaintiffs raise in their motion. *See* Order, *Coker v. Austin*, 3:21-cv-1211-AW-HTC (N.D. Fla Dec. 1, 2021) ("Coker Order"), ECF No. 49 (Ex. A); Order, *Oklahoma v. Biden*, No. CIV-21-1136-F, ECF No. 48 (W. Okla. Feb. 2, 2022) ("Oklahoma Order") (denying request to proceed pseudonymously) (Ex. B). Plaintiffs fail to even cite those decisions—much

less explain why this Court should reach a different conclusion.

*Second*, in many cases around the country plaintiffs have been using their real names to challenge military COVID-19 vaccine requirements, including on religious grounds.  *See, e.g. Costin v. Biden*, No. 1:21-cv-2484 (D.D.C.); *Fletterich v. Austin*, No. 21-cv-3193 (D.D.C); *Guettlein v. Merchant Marine Academy*, No. 2:21-cv-06443-JMA-JMW (E.D.N.Y.); *Poffenbarger v. Kendall*, No. 3:22-cv-00001-TMR-SLO (S.D. Ohio); *Vance v. Wormuth*, 3:21-cv-00730-CRS (W.D. Ky.).  Federal employees have likewise filed numerous lawsuits in their own names challenging federal COVID-19 vaccine requirements.  *See, e.g.*, *Feds for Medical Freedom v. Biden*, No. 3:21-cv-00356 (S.D. Tex.) (more than 60 named plaintiffs); *Foley v. Biden*, No. 4:21-cv-019098-O (N.D. Tex.); *McCray v. Biden*, No. 1:21-cv-02882-RDM (D.D.C.) (same); *Payne v. Biden*, No. 1:21-cv-03077 (D.D.C.); *Rodden v. Fauci*, No. 3:21-cv-00317 (S.D. Tex.) (more than ten named plaintiffs).  There is no evidence in the record that any of those parties who have sued in their own names have suffered any harassment, threats or stigma because of their participation in a lawsuit.  Plaintiffs do not explain how they face any circumstances warranting that they proceed anonymously here.

*Third*, "[a]s many courts have recognized, there is a heightened public interest when an individual or entity files a suit against the government."  Oklahoma Order, at 9 (quoting *In re Sealed Case*, 971 F.3d 324, 329 (D.C. Cir. 2020)).  "[T]he public has an important interest in access to legal proceedings, particularly those attacking the constitutionality of popularly enacted legislation."  *Id.* at 3 (citing *Doe v. Frank*, 951

F.2d 320, 324 (11th Cir. 1992)).  "When public employees sue other public employees (including the Secretary of Defense), raising an array of public law issues, 'the public interest in knowing the detail[s] of the litigation that could affect government policy all around the country is particularly great.'"  *Id.* at 9 (quoting *Doe v. Raimondo*, No. 1:21-mc-00127-UNA, Memorandum and Order, ECF No. 1 at 8 (D.D.C. Oct. 14, 2021)).

The public interest is even more acute in this case where Plaintiffs seek to represent a class of up to "2.3 million Active Duty and Reserve servicemembers" and "another 5.8 million civilian federal employees and contractors."  ECF No. 35 at 4. "[T]here is a compelling public interest in open court proceedings, particularly in the context of a class action, where a plaintiff seeks to represent a class of [people] who have a personal stake in the case and a heightened interest in knowing who purports to represent their interests in the litigation."  *See In re Ashley Madison Customer Data Sec. Breach Litig.*, MDL No. 2669, 2016 WL 1366616, at *4 (E.D. Mo. Apr. 6, 2016); *see also Michael v. Bloomberg L.P.*, No. 14-CV-2657 TPG, 2015 WL 585592, at *4 (S.D.N.Y. Feb. 11, 2015).

*Fourth*, concealing the identities of Plaintiffs would inhibit the effective litigation of this dispute and would unnecessarily complicate this case.  If Plaintiffs' motion is granted, briefs and any opinions by the Court would likely need to be filed under seal, at least in part, and any testimony or oral argument in court would inaccessible to the public, at least in part.  Plaintiffs have not established that such logistical burdens, and the loss of public access to information about this case, are necessary under the

3

standards that govern this question.

For these reasons and those explained further below, Plaintiffs' motion should be denied.

## BACKGROUND

On October 15, 2021, pseudonymous Plaintiffs filed a complaint for injunctive and declaratory relief against the President, the Secretary of Defense, and Secretary of the Department of Homeland Security. Compl., ECF No. 1. Plaintiffs simultaneously moved for emergency relief. Mot. for TRO and Prelim. Inj., ECF No. 2. On November 3, 2021, Defendants filed their opposition, noting that no plaintiff had sought leave to proceed under pseudonyms. Opp. to Mot. for TRO and Prelim. Inj., ECF No. 23 at 12. In response, Plaintiffs informed the Court on November 10, 2021, that a motion for leave to proceed pseudonymously was "forthcoming." Reply ISO Mot. for TRO and Prelim, Inj., ECF No. 30 at 15–16 n. 2. On November 22, 2021, the Court denied Plaintiff's motion for emergency relief. ECF No. 40. November and December passed without Plaintiffs filing a motion to proceed pseudonymously.

On January 20, 2022, Plaintiffs moved to amend their Complaint, seeking to remove and add plaintiffs (still identified just by pseudonym), add new defendants, and remove the President as a defendant. ECF No. 49. The next day, Plaintiffs filed a Renewed Motion for Preliminary Injunction and told the Court that the "motion to proceed pseudonymously will be filed within one business day." ECF No. 51 at 6 n.3. Five days later, on Wednesday, January 26, 2022, Plaintiffs finally moved for leave to proceed pseudonymously. ECF No. 55. Defendants now file this brief in opposition.

## LEGAL STANDARDS

"Lawsuits are public events." *Frank*, 951 F.2d at 324; *see also Cox Broad. Corp. v. Cohn*, 420 U.S. 469, 492 (1975) (recognizing the importance of openness in judicial proceedings); *Craig v. Harney*, 331 U.S. 367, 374 (1947) ("A trial is a public event. What transpires in the court room is public property."). Federal Rule of Civil Procedure 10(a) thus requires "'every pleading' in federal court" to "'name all the parties.'" *Plaintiff B v. Francis*, 631 F.3d 1310, 1315 (11th Cir. 2011) (quoting Fed. R. Civ. P. 10(a). This rule "'protects the public's legitimate interest in knowing all of the facts involved, including the identities of the parties.'" *Id.* (quoting *Frank*, 951 F.2d at 322).

"Public access to this information is more than a customary procedural formality; First Amendment guarantees are implicated when a court decides to restrict public scrutiny of judicial proceedings." *Doe v. Stegall*, 653 F.2d 180, 185 (5th Cir. Unit A Aug. 1981)[1] (citing *Richmond Newspapers, Inc. v. Virginia*, 448 U.S. 555, 580 & n.17 (1980)). "This creates a strong presumption in favor of parties' proceeding in their own names." *Plaintiff B*, 631 F.3d at 1315.

Given this strong presumption of openness in judicial proceedings, courts permit plaintiffs to proceed under fictitious names only in "exceptional case[s]." *Frank*, 951 F.2d at 323. "The ultimate test for permitting a plaintiff to proceed

---

[1] *See Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (holding that decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981, are binding in the Eleventh Circuit).

anonymously is whether the plaintiff has a substantial privacy right which outweighs the 'customary and constitutionally-embedded presumption of openness in judicial proceedings.'" *Id.* (quoting *Stegall*, 653 F.2d at 186).  In analyzing a plaintiff's request to proceed anonymously, courts "review all the circumstances of a given case and then decide whether the customary practice of disclosing the plaintiff's identity should yield to the plaintiff's privacy concerns." *Id.* (citing *Southern Methodist Univ. Ass'n of Women Law Students v. Wynne & Jaffe* (*SMU*), 599 F.2d 707, 713 (5th Cir. 1979)).  "A plaintiff should be permitted to proceed anonymously only in those exceptional cases involving matters of a highly sensitive and personal nature, real danger of physical harm, or where the injury litigated against would be incurred as a result of the disclosure of the plaintiff's identity."  *Id.* at 324.

Plaintiffs bear "the burden to establish, in the first instance, that their privacy rights outweigh the presumption of judicial openness."  *In re: Chiquita Brands Int'l, Inc.*, 965 F.3d 1238, 1247 (11th Cir. 2020), *cert. denied sub nom. Doe 7 v. Chiquita Brands Int'l, Inc.*, 142 S. Ct. 312 (2021).

In the Eleventh Circuit, courts apply this test by first weighing the three factors laid out in *Southern Methodist University Association v. Wynne & Jaffe* ("*SMU*"): (1) "are the plaintiffs seeking anonymity challenging governmental activity"; (2) "will they be required to disclose information of the utmost intimacy"; and (3) "will the plaintiffs be compelled to admit their intention to engage in illegal conduct and thus risk criminal prosecution?"  *Plaintiff B*, 631 F.3d at 1316 (citing *SMU*, 599 F.2d at 713).

After analyzing these factors, courts must then consider the particular circumstances of each case.  For example, "[c]ourts have looked at factors such as whether the plaintiffs were minors, whether they were threatened with violence or physical harm by proceeding in their own names, and whether their anonymity posed a unique threat of fundamental unfairness to the defendant."  *Id.* (citing *Stegall*, 653 F.2d at 186; *SMU*, 599 F.2d at 713).

## ARGUMENT

I.  **Plaintiffs' Challenge to Government Activity Does Not Weigh in Favor of Granting Plaintiffs' Request for Anonymity.**

"While suing a private defendant gives '*more* reason *not* to grant the plaintiffs' request for anonymity,' the Eleventh Circuit has never held 'that there is more reason to grant a plaintiff's anonymity if the plaintiff is suing the government.'"  Coker Order, Ex. A, at 3 (quoting *Frank*, 951 F.2d at 324); *see also Frank*, 951 F.2d at 324 "([*SMU*] does not stand . . . for the proposition that there is more reason to grant a plaintiff's request for anonymity if the plaintiff is suing the government").  Indeed, "in only a very few cases challenging governmental activity can anonymity be justified."  *Stegall*, 653 F.2d at 186*; see also Roe v. Aware Woman Ctr. for Choice, Inc.*, 253 F.3d 678, 686 (11th Cir. 2001) ("[N]o published opinion that we are aware of has ever permitted a plaintiff to proceed anonymously merely because the complaint challenged government activity.").

Because Plaintiffs are "suing government actors in their official capacities" and are "challenging the constitutional, statutory or regulatory validity of government

activity," this first factor has, at best, "a neutral effect." *Nat'l Rifle Ass'n of Am., Inc. v. Bondi (NRA)*, No. 4:18CV137-MW/CAS, 2018 WL 11014101, at *3 (N.D. Fla. May 13, 2018); *see also Frank*, 951 F.2d at 324 ("[T]he fact that Doe is suing the Postal Service does not weigh in favor of granting Doe's request for anonymity."); *Freedom From Religion Found., Inc. v. Emanuel Cnty. Sch. Sys.*, 109 F. Supp. 3d 1353, 1357 (S.D. Ga. 2015) ("It is not that suing the government weighs in favor of granting a request for anonymity; rather, the operative principle is that a suit against a private party weighs against a plaintiff's request for anonymity.").   "That the defendants here are government officials does not move the needle toward anonymity."  Coker Order, Ex. A, at 3.

## II.   Plaintiffs Will Not Be Required to Reveal Information of the Utmost Intimacy.

As to the second factor, neither Plaintiffs' "medical decisions" nor their "personal religious beliefs" are the kind of information considered to be of the utmost intimacy.   ECF No. 55 at 3, 6.   The Eleventh Circuit has explained that the "information of the utmost intimacy" standard applies to cases in which "the social stigma attached to the plaintiff's disclosure" was so extreme as to overcome "the presumption of openness in judicial proceedings."  *Frank*, 951 F.2d at 324 (listing mental illness, sexual orientation, and transgender identity as examples); *Roe*, 253 F.3d at 685 (abortion); *Plaintiff B*, 631 F.3d at 1317 (finding that "descriptions of the Plaintiffs in various stages of nudity and engaged in explicit sexual conduct while they were minors who were coerced by the Defendants into those activities" "could not be

8

of a more sensitive and highly personal nature"); *SMU*, 599 F.2d at 712–13 (listing "birth control, abortion, homosexuality, [and] the welfare rights of illegitimate children or abandoned families" as examples (footnotes omitted)).

Under this strict standard, "the fact that [a plaintiff] may suffer some personal embarrassment, standing alone," does not require the granting of a request to proceed anonymously. *Frank*, 951 F.2d at 324. Indeed, "courts have denied the use of pseudonyms in cases involving matters that many would consider extremely private." *NRA*, 2018 WL 11014101, at *3; *see also, e.g.*, *Plaintiff B*, 631 F.3d at 1316 ("[C]ourts have often denied the protection of anonymity in cases where plaintiffs allege sexual assault, even when revealing the plaintiff's identity may cause her to suffer some personal embarrassment."); *Frank*, 951 F.2d at 324 (finding "no abuse of discretion in the district court's implicit conclusion that the stigma involved in Doe's disclosure [of alcoholism] does not rise to the level necessary to overcome the presumption of openness in judicial proceedings").

## A.    Plaintiffs' Vaccination Status Is Not a Matter of Utmost Intimacy.

The fact that a case will involve medical decisions or medical history—standing alone—has never been considered information of the utmost intimacy that requires shielding a party's name from the public. Medical history or conditions are only sufficient where "the social stigma attached to the plaintiff's disclosure" was so extreme as to overcome "the presumption of openness in judicial proceedings." *Frank*, 951 F.2d at 324 (listing mental illness, sexual orientation, and transgender identity as examples); *cf. Roe v. Wade*, 410 U.S. 113 (1973) (abortion); *Doe v. Bolton*, 410 U.S. 179

9

(1973) (abortion).

Following the direction in *Frank*, courts in the Eleventh Circuit have generally not permitted plaintiffs to proceed using pseudonyms just because medical information is at issue unless the case involved abortion, mental illness, or one of the categories listed in *Frank*. *See, e.g.*, *Frank*, 951 F.2d at 324 ("the stigma involved in Doe's disclosure [of his medical condition of alcoholism] does not rise to the level necessary to overcome the presumption of openness in judicial proceedings or the explicit requirements of Rule 10(a)"); *Doe v. Samford Univ.*, No. 2:21-CV-00871-ACA, 2021 WL 3403517, at *2 (N.D. Ala. July 30, 2021) (denying unopposed motion for leave to proceed anonymously, rejecting plaintiff's argument that "disclosure of his medical conditions exposes him to social stigma"), *appeal filed*, No. 21-12592 (11th Cir. Aug. 2, 2021); *Doe v. Univ. of Miami (Miller Sch. of Med.)*, No. 12-23933-CIV, 2012 WL 12960871, at *2 (S.D. Fla. Nov. 28, 2012) (denying request to proceed using pseudonyms even though "Plaintiff's therapy and medical treatment" related to ADHD and other mental disorders were "at issue in this case"); *S.G. v. Mears Transp. Grp., Inc.*, No. 6:14-CV-917-ORL-37, 2014 WL 4637139, at *1 (M.D. Fla. Aug. 12, 2014) (granting request when allegations involved plaintiff's HIV status).

Only one district court within the Eleventh Circuit has considered whether the purported social stigma arising from COVID-19 vaccination status was sufficient to allow plaintiffs to proceed under pseudonyms. *See* Coker Order, Ex. A. As the *Coker* court explained, the standard for proceeding pseudonymously is so strict that "[e]ven cases involving sexual assault allegations don't suffice" and "[v]accination status

10

simply is not that level."  Coker Order, Ex. A, at 3–4 (citing *Plaintiff B*, 631 F.3d at 1316).

The out-of-circuit examples cited by Plaintiff are not to the contrary—they generally involve abortion, mental illness, or AIDS.  *Doe v. Gaughan*, 808 F.2d 871 (1st Cir. 1986) (mental illness); *Roe v. City of Milwaukee*, 37 F. Supp. 2d 1127, 1129 (E.D. Wis. 1999) (being HIV-positive "is still considered a stigma"); *W.G.A. v. Priority Pharm., Inc.¸*184 F.R.D. 616, 617 (E.D. Mo. 1999) (AIDS); *Anonymous v. Legal Servs. Corp. of Puerto Rico*, 932 F. Supp. 49, 50 (D.P.R. 1996) (mental illness); *Doe v. Sessions*, No. 18-0004 (RC), 2018 WL 4637014 (D.D.C. Sept. 27, 2018) (Asperger's Syndrome); *Doe v. Standard Ins. Co.*, No. 1:15-cv-00105-GZA, 2015 WL 5778566 (D. Me. Oct. 2, 2015) (unopposed motion to proceed under pseudonym when plaintiff had mental disability); *Robe v. Cath. Health Initiatives Colo.*, No. 11-cv-021799-WYD-KMT, 2012 WL 12840 (D. Colo. Jan. 4, 2012) (involved unlawful disclosure of medical records and requiring real name would cause the very harm the suit was trying to prevent); *Doe v. Provident Life & Accident Ins. Co.*, 176 F.R.D. 464 470 (E.D. Pa. 1997) (psychiatric disorders); *Doe v. Deschamps*, 64 F.R.D. 652, 653 (D. Mon. 1974) (abortion); *Bryan C. v. Lambrew*, No. 1:21-cv-00005-NT, 2021 WL 242422, at *1 (D. Me. Jan. 25, 2021) (minor children who were administered psychotropic medication without proper oversight and management).

Plaintiff's three cases where courts have allowed pseudonymous plaintiffs to challenge COVID-19 vaccine requirements are readily distinguishable.  As an initial

11

matter, none are within the Eleventh Circuit, which has a particularly strict standard for proceeding under a pseudonym.  For example, in *Does 1–6 v. Mills*, the court allowed plaintiffs to proceed with pseudonyms based on nothing more "the substantial public controversy surrounding public and private mandates requiring individuals to be vaccinated for the COVID-19 coronavirus."  No. 1:21-cv-00242-JDL, 2021 WL 4005985, at *2 (D. Me. Sept. 2, 2021) (granting unopposed motion to proceed using pseudonyms for preliminary-injunction stage, but reserving right to revisit ruling).  But in the Eleventh Circuit, alleged public controversy would plainly not be enough because "[t]he threat of hostile public reaction to a lawsuit, standing alone, will only with great rarity warrant public anonymity."  *Stegall*, 653 F.2d at 186.

The plaintiffs in *Doe 1 v. Northshore University HealthSystem*, provided "news articles and online comments about [that] case in which commenters ridicule or insult Plaintiffs and call for them to be fired."  No. 21-cv-05683, 2021 WL 5578790 at *9 (C.D. Ill. Nov. 30, 2021), *appeal filed*, No. 21-3242 (7th Cir. Dec. 3, 2021).  While Plaintiffs here have attached the same comments submitted to the *Northshore* court, Plaintiffs in this case fail to attach any similar material related to *this case* or comments about *these plaintiffs*.  Moreover, in *Doe 1*, there was specific evidence of physical danger—"one of the Plaintiffs 'was harassed by an individual to the point where law enforcement [was] required to come and rescue [Plaintiff].'"  *Id.* at *10 (citation omitted).  The *Doe 1* court relied on this evidence when it allowed the *Doe 1* plaintiffs to use pseudonyms.  There is no evidence that any Plaintiff in this case faces potential violence or specific threats.  At most, a plaintiff in this case states that he has overheard

12

people at their workplace use unpleasant words like "plague rats" and "transvaxxites," Doc. 55-1, ¶ 4.

The last case cited by *Does 1 through 11 v. Board of Regents of the University of Colorado* is also distinguishable, No. 21-cv-02637-RM-KMT, 2022 WL 43897 (D. Colo. Jan. 5, 2022). At the outset, the *Does 1 through 11* court was clear that "a medical condition that is described as unvaccinated against COVID-19 is not so highly sensitive and personal in nature as to overcome the presumption of openness in judicial proceedings." *Id.* at *3. The court, however, ultimately granted leave to proceed anonymously, citing "the political climate and public attitudes concerning those who refuse vaccination from COVID-19." *Id.* Again, this would not be enough to satisfy the requirements to proceed pseudonymously in the Eleventh Circuit. *See Stegall*, 653 F.2d at 186 ("[t]he threat of hostile public reaction to a lawsuit" generally not enough).[2]

Plaintiffs claim that disclosure of their names will lead to "intens[e]" "invective and opprobrium" directed at them. Pls. Mot. for Leave to Proceed Pseudonymously, Doc. No. 55 at 16. But "[p]ublic and non-public figures routinely speak out in favor of or against vaccine requirements without facing the kinds of retaliation that plaintiffs hypothesize. In any event, being subject to criticism in the public sphere, even if

---

[2] There are also serious questions about whether this satisfies the requirements under the Tenth Circuit. "If the embarrassment inherent in being exposed as a sex offender (as in *Femedeer* [*v. Haun*, 227 F.3d 1244, 1246 (10th Cir. 2000)] ) will not suffice, the possibility of criticism for not taking the vaccine would not support a request to proceed anonymously. Criticism, ostracism and vitriol plainly fall short of a 'real danger of physical harm.'" Oklahoma Order at 7.

intense, does not pose a risk of mental harm sufficient to support anonymity." Oklahoma Order at *7 (quoting *Doe v. Raimondo*, No. 1:21-mc-00127-UNA, Memorandum and Order, ECF No. 1 at *7 (D.D.C. Oct. 14, 2021)). Numerous lawsuits pending around the country challenge vaccine requirements where parties are using their real names, and Plaintiffs have provided no evidence that those named parties are facing any sort of the stigma alleged here.

Of course, to the extent there are individualized issues in a plaintiff's medical history that require confidentiality, such information can be protected with a standard protective order, narrowly drawn to protect any legitimate privacy concerns.

### B.    While Religious Beliefs Are Certainly Private, They Are Not a Valid Basis to Proceed Pseudonymously in this Case.

While being forced to disclose religious beliefs can sometimes be a relevant privacy interest, a Plaintiff's "sincere religious belief" in this case is not the kind of information that meets the threshold required under the standard for proceeding under a pseudonym. The law does not support granting pseudonym status merely because the case may touch upon a plaintiff's religious beliefs. *See Freedom From Religion Found.* 109 F. Supp. 3d at 1357-58 ("While religion is certainly an individual matter of conscience that is constitutionally shielded from government intervention, . . . it is generally practiced openly and communally, and no court from this or any other circuit has considered a plaintiff's religious beliefs to be a matter of such sensitivity as to *automatically* entitle the plaintiff to Doe status.") (citing *Santa Fe Indep. Sch. Dist. v. Doe*, 530 U.S. 290, 301–02 (2000); *Stegall*, 653 F.2d at 185–86).

14

Although "religion is perhaps the most quintessentially private matter," religion is relevant to proceeding pseudonymously only when those beliefs "are shown to have invited an opprobrium analogous to the infamy associated with criminal behavior." *Stegall*, 653 F.2d at 186. In *Doe v. Stegall*, the Eleventh Circuit held that plaintiffs were entitled to proceed anonymously where they presented threats of violence and community hostility indicating that they "may expect extensive harassment and perhaps even violent reprisals." *Id.* (involving mother and two children who challenged school's prayer reading exercises). Courts have also occasionally allowed plaintiffs in sexual assault cases to proceed anonymously when their "religious affiliation [] would make the revelation of [their] identit[ies] especially injurious." *Doe v. City of Dalton*, No. 4:21-CV-0128-LMM, 2021 WL 4618600, at *1 (N.D. Ga. July 12, 2021) (holding that plaintiff's Baptist affiliation would make the revelation of her sexual assault particularly harmful); *see also Doe v. Neverson*, 820 F. App'x 984, 988 (11th Cir. 2020) (unpublished) (same with regard to plaintiff's Muslim affiliation).

No such circumstances exist here. Plaintiffs do not explain how proceeding anonymously is necessary to protect their religious beliefs. Plaintiffs do not provide any evidence that revealing their religious beliefs would subject them to any credible threats of violence. Plaintiffs proffer statements from the President about his frustration with unvaccinated citizens. Doc. 55-1, ¶ 5. They have identified anonymous internet comments posted in response to articles unrelated to this case or these plaintiffs. *Id.*, ¶ 6 (internet comments on article related to Maine healthcare vaccination requirements); *id.*, ¶ 7 (internet comments on article describing Illinois

vaccination requirements); *id.* ¶ 8 (social media posts related to Illinois vaccination requirements); *id.*, ¶ 9 (comments on article describing a dissent written by Justice Gorsuch. Plaintiffs also identified one statement from a commentator on a news program, one tweet, and one article that included generalized statements about vaccines. *Id.* ¶ 10.

But Plaintiffs do not suggest that any of those statements or internet comments were referring to any specific Plaintiff in this case or even in reference to this lawsuit. In short, Plaintiffs have supplied no evidence specific to them that supports this conclusory, speculative allegation. And none of the cases cited by Plaintiffs provide a basis for expanding the type of religious information that would satisfy the burden for proceeding pseudonymously. *See Doe v. Rollins Coll.*, No. 6:16-cv-2232-Orl-37KRS, 2017 WL 11610361 (M.D. Fla. Mar. 22, 2017) (pseudonym request not based on religion); *Doe v. Barrow Cnty.*, 219 F.R.D. 189, 193 (N.D. Ga. 2003) (allowing parties to use pseudonyms when specific evidence of threats against plaintiffs and presiding judge had received direct threats related to the case); *Freedom From Religion Found.*, 109 F. Supp. 3d at 1361 (allowing child plaintiffs to proceed under pseudonyms given "the special status and vulnerability of the child-litigants") (quoting *Stegall*, 653 F.2d at 186).

### III. Plaintiffs Are Not Required To Admit Their Intention to Engage in Illegal Conduct and Risk Criminal Prosecution.

Third, Plaintiffs properly do not argue that her lawsuit compels them "to admit their intention to engage in illegal conduct and thus risk criminal prosecution." *See*

*Plaintiff B*, 631 F.3d at 1316.

## IV.  No Other Relevant Factors Support Pseudonyms.

Finally, having considered the three factors in *SMU*, none of the other particular circumstances in Plaintiffs' case weigh in favor of anonymity.  *See id.*

First, there are no allegations that any Plaintiff is a minor.  *See id.*

Second, Plaintiffs have not shown that they will be "threatened with violence or physical harm by proceeding in their own names."  *Id.*  Although Plaintiffs' motion summarily states that "[p]ublicly revealing their identities in this action may lead to violence against them and their families by America's enemies, as urged, for example, by ISIS," Doc. 55 at 16, Plaintiff proffers no evidence of threats to support this conclusory, speculative allegation.  *Cf. Stegall*, 653 F.2d at 186 (holding that threats of violence actually generated by the lawsuit helped tip the balance in favor of parents and minor children proceeding anonymously).  Indeed, it is no secret that these individuals are in the military.  A Google search of the plaintiffs who are known to defendants returns articles and webpages that identify plaintiffs as being members of the military.[3]

## V.  Granting Plaintiffs' Motion Would Interfere with the Public's Access to Proceedings and Inject Unnecessary Complexity to this Case.

Granting the motion to proceed pseudonymously would add unnecessary complexity to this case, will require briefs to be filed under seal, and will block public access to testimony and argument.  Plaintiffs are wrong to suggest that this case only

---

[3] Defendants can provide examples at the Court's request.

17

involves "purely legal questions"—the issues in this case will turn on facts specific to each individual who has made a religious exemption request.

First, Defendants intend to raise threshold issues in their forthcoming response to Plaintiffs' Amended Complaint, including standing issues.  Defendants will address specific details about Plaintiffs' alleged harms and particular activities.  In this respect, Plaintiffs' anonymity presents an issue of fairness to Defendants.  Plaintiffs' identities are necessary to litigate threshold jurisdictional issues that Defendants anticipate raising in support of a motion to dismiss the case and may need further briefing on any renewed motion for class certification.  In a similar case, the court found that "the concern for fairness to DoD as a defendant militates in favor of identification of Plaintiffs." *Doe #1 v. Von Eschenbach*, No. 06-2131 (RMC), 2007 WL 1848013, at *3 (D.D.C. June 27, 2007).  Like Plaintiff in this case, those plaintiffs challenged the Department of Defense's vaccine requirements. *Id.*  The court concluded that because "[i]t is impossible for DoD to litigate standing without knowing who the Plaintiffs are," "[f]airness dictates that Plaintiffs' identities be revealed." *Id.*  Indeed, despite the existence of a protective order in this case, Plaintiffs have *still* not provided the identities of all Plaintiffs to Defendants—frustrating Defendants' ability to defend this case.[4]

_____

[4] Moreover, this Court has noted "[t]he optimum array of the parties and the claims remains unresolved (that is, for example, whether to sever some parties or claims)."  Doc No. 67 at 7.  To the extent that the Court considers whether all of the plaintiffs in this case are properly joined as parties or should be severed, specific facts and details concerning each plaintiff, including where they reside and whether activities concerning their claims are connected to this forum, would need to be

Second, Plaintiffs have raised claims under the Religious Freedom Restoration Act, which the Supreme Court has explained requires "the Government 'demonstrates that application of the burden *to the person*—(1) is in furtherance of a compelling governmental interest; and (2) is the least restrictive means of furthering that compelling governmental interest.'" *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 695 (2014) (quoting 42 U.S.C. § 2000bb-1(b)) (emphasis added). Thus the merits of each Plaintiff's claims will require a factual analysis that will include specific details of each Plaintiff's job, responsibilities, and work environment.

Given the details that will likely be included in the parties' briefs, many will need to be filed under seal (at least in part), blocking the public's access to important details regarding the proceedings. If granted, the public may not be able to observe some live testimony or oral argument in open court. The parties will either need to limit their presentation or argument, or the Court will need to seal the courtroom for portions of proceedings. These extraordinary measures are simply unnecessary and unwarranted under the standards applicable to closing judicial proceedings in this circuit.

## CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' motion to proceed anonymously in this case.

---

addressed. Such an issue could not be litigated on the public record if Plaintiffs' proceed anonymously.

Dated February 9, 2022                    Respectfully submitted,

                                          BRIAN M. BOYNTON
                                          Acting Assistant Attorney General
                                          Civil Division

                                          ALEXANDER K. HAAS
                                          Director, Federal Program Branch

                                          ANTHONY J. COPPOLINO
                                          Deputy Director, Federal Programs
                                          Branch

                                          */s/Zachary A. Avallone*
                                          ANDREW E. CARMICHAEL
                                          AMY E. POWELL
                                          Senior Trial Counsel
                                          ZACHARY A. AVALLONE
                                          COURTNEY D. ENLOW
                                          Trial Attorneys
                                          United States Department of Justice
                                          Civil Division, Federal Programs
                                          Branch
                                          1100 L Street, N.W.
                                          Washington, DC 20005
                                          Tel: (202) 514-2705
                                          Fax: (202) 616-8470
                                          Email: zachary.a.avallone@usdoj.gov

                                          *Counsel for Defendants*