IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

**NAVY SEAL # 1**, *et al.*,

        Plaintiffs,

v.

**JOSEPH R. BIDEN, JR.**, in his official capacity as President of the United States, *et al.*,

        Defendants.

Case No. 8:21-cv-02429-SDM-TGW

**DEFENDANTS' OPPOSITION TO PROPOSED INTERVENOR'S
EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER**

**INTRODUCTION**

Proposed intervenor First Lieutenant Thomas Macik is not a plaintiff in this lawsuit, has no apparent connection to this venue, and is not represented by Plaintiffs' counsel. He nonetheless seeks emergency relief from this Court, and has filed an emergency motion asking the Court to prevent the U.S. Marine Corps from disciplining or reassigning Macik, or beginning separation proceedings for any reason whatsoever. Such relief is improper for a non-party, well beyond the proper authority of the courts, and unsupported by the facts present here. This Court is not charged with running the Armed Forces, and should not be making individual assignment decisions for any individual service members, much less for the thousands of service members who will seek emergency relief from this Court if such a motion were granted for a non-party. For these reasons, set forth further below, the proposed intervenor's motion should be denied.

1

## BACKGROUND

### I. Procedural History

The procedural background of this matter is largely set forth in prior filings and orders. *See* ECF Nos. 66, 67, 74. Of note here, Defendants filed an opposition to Plaintiffs' motion for a temporary restraining order and preliminary injunction on November 3, 2021, ECF No. 23; opposed class certification on December 3, 2021, ECF No. 42; opposed a temporary restraining order on February 2, 2022, ECF No. 66; and opposed Plaintiffs' renewed motion for a preliminary injunction on February 4, 2022, ECF No. 74. Defendants incorporate by reference all arguments and declarations submitted in connection with those motions to this brief.

The Court has entered a temporary restraining with respect to two Plaintiffs in this action, pending adjudication of their request for a preliminary injunction. ECF Nos. 67, 84. On February 13, 2022 the proposed intervenor, having no apparent connection to the present lawsuit, emailed Defendants' counsel asking Defendants to "rescind or suspend" the vaccination order applicable to him. *See* ECF No. 94-11. On February 14, 2022, he filed a motion to intervene *pro se* and sought a temporary restraining order along the lines of that granted to two parties in this action. *See* ECF Nos. 93, 94.

### II. Proposed Intervenor

Based on the documents he submitted to the Court,[1] Lieutenant Macik

---

[1] These documents would not comprise a complete administrative record for the request.

2

requested religious accommodation to exempt him from any vaccinations connected to use of fetal stem cells, including the requirement to receive the COVID-19 vaccination. *See generally* ECF No. 94-3, at 7-9. The request was individually evaluated by a chaplain, and by at least three officers in the chain of command. *Id.*, at 2-4, 10-11. Based on consideration of each of those documents and the arguments made by Macik, the religious accommodation request was initially denied in October 2021. ECF No. 94-4. Macik appealed. ECF No. 94-5.

On February 6, 2022, the Assistant Commandant of the Marine Corps disapproved the appeal. ECF No. 94-8. The appeal authority was skeptical that a sincere belief was substantially burdened in light of the fact that the vaccine is not produced using stem cells and does not contain stem cells, but found that even if a sincere belief was burdened, vaccination served the Marine Corps' compelling interests. In so finding, he considered Macik's specific arguments, his working and living situation, his service record, the evidence underlying vaccination, and the overall needs of the force. Ultimately, the Assistant Commandant concluded that "an exemption from the COVID-19 vaccination poses a significant risk to military readiness, and the health and safety of the force, particularly in your case, where you are attached to a deployable unit and must always be ready to deploy to austere environments at a moment's notice." *Id.*, at 4. He noted that Macik works indoors in close proximity to others and cannot perform his duties remotely, that he lives in a barracks, and that he is in a foreign country with limited American medical resources. The Assistant Commandant noted that the less restrictive alternatives proposed were

3

less effective than vaccination and realistically incompatible with the demands of military life. *Id*. He specifically confirmed that he reviewed the entirety of the file on an individualized basis and considered each of the facts and arguments presented by the appeal, including whether less restrictive means were available to protect the Government's compelling interest. *Id*. On February 9, 2022, Lieutenant Macik was given seven days to begin a vaccination series. ECF No. 94-9.

## **LEGAL STANDARDS**

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008). To justify this "drastic remedy," the movants must "clearly establish[] the burden of persuasion" on the following four elements: (1) Plaintiffs have a substantial likelihood of success on the merits; (2) there is a substantial threat that Plaintiffs will suffer irreparable injury absent an injunction; (3) the threatened injury to Plaintiffs outweighs the damage an injunction would cause to Defendants; and (4) the injunction would not be adverse to the public interest. *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1300 (11th Cir. 2001) (citation omitted); *see Ga. Advoc. Off. v. Jackson*, 4 F.4th 1200, 1208 (11th Cir. 2021); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005) (same standard for a temporary restraining order). "Failure to show any of the four factors is fatal[.]" *ACLU of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009).

Aside from these traditional standards for any preliminary injunction, an injunction against the military involves an additional set of considerations and

significant hurdles. Judicial review of claims involving the "complex[,] subtle, and professional decisions as to the composition, training, equipping, and control of a military force," *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973), is highly constrained. *Rostker v. Goldberg*, 453 U.S. 57, 66 (1981) (Because of the "healthy deference to legislative and executive judgments in the area of military affairs," courts employ a relaxed scrutiny in reviewing military policy.); *Aktepe v. United States,* 105 F.3d 1400, 1403 (11th Cir. 1997) ("[T]he political branches of government are accorded a particularly high degree of deference in the area of military affairs."); *see also Winck v. England*, 327 F.3d 1296, 1302–04 (11th Cir. 2003), *abrogated in part on other grounds by Santiago-Lugo v. Warden*, 785 F.3d 467, 471 (11th Cir. 2015). Such deference extends to constitutional claims and military decisions about the health and welfare of the troops. *E.g.*, *Solorio v. United States*, 483 U.S. 435, 448 (1987); *Mazares v. Dep't of Navy*, 302 F.3d 1382, 1385 (Fed. Cir. 2002).

Moreover, and especially pertinent here, the Supreme Court and multiple Circuits have confirmed that courts should not interfere with military assignment decisions, even when they involve a constitutional challenge. *See, e.g.*, *Orloff v. Willoughby*, 345 U.S. 83 (1953) (declining to review service member challenge to a military assignment decision that was allegedly discriminatory punishment for his invocation of the constitutional right against self-incrimination)*; see also infra* pp. 10-11 (citing cases).

5

## ARGUMENT

### I.   Proposed Intervenor is Not a Party Who Can Be Entitled to Relief.

Lieutenant Macik is not entitled to emergency relief because he is not a party. An individual who has not yet been added as a party to the case is not entitled to emergency relief. *See Piambino v. Bailey*, 757 F.2d 1112, 1137 n.62 (11th Cir. 1985) (stating that a non-party could not seek an injunction); *Jones v. Arnold*, No. 3:09-CV-1170-J-34JRK, 2010 WL 11507773, at *1 (M.D. Fla. May 7, 2010) ("An unnamed 'class member' in an uncertified class . . . is not a party to this case and lacks standing here to seek the relief requested in the Motion for Preliminary Injunction"). Putative class members become parties to an action—and thus subject to the Court's jurisdiction—only after class certification. *See In re Bayshore Ford Trucks Sales, Inc.*, 471 F.3d 1233, 1245 (11th Cir. 2006); *cf. Molock v. Whole Foods Mkt. Grp., Inc.*, 952 F.3d 293, (D.C. Cir. 2020) (refusing to dismiss or otherwise exercise jurisdiction over claims of putative class members).

Here, Macik has moved to intervene, *see* ECF No. 93, and Defendants will likely oppose. Because there is no certified class, a decision in this case will not affect his substantive rights, and the filings set forth no apparent connection to Plaintiffs, Plaintiffs' counsel, or to the venue. He has not even filed a proposed intervenor complaint; so it is not clear whether his claims are identical to those pursued here. There are over a dozen other cases around the country that Macik may have joined if he has some connection to the forum, or he may have filed his own lawsuit. No such action will be prejudiced by what happens in this lawsuit.

This Court is not required to entertain the emergency motions of a nonparty with no apparent connection to this forum or this lawsuit. Under the local rules, Defendants may respond to the motion to intervene on or before February 28, 2022. Unless and until he is permitted to intervene, Macik is not a party who may receive relief from the Court. And because the Court has not certified a class (and should not), he is also not a class member who could be entitled to relief. The Court should proceed to consider his motion to intervene in due course, followed by any appropriately narrow renewed motion for emergency relief on a reasonable schedule. Despite his remonstrations, the proposed intervenor is not in any danger of immediate harm, *see infra* pp. 16–17, and there is no reason for the Court to exercise its extraordinary equitable powers here. Indeed, to do so could invite TRO motions in this Court from any of the over 21,000 service members that Plaintiffs claim are entitled to religious accommodation with respect to the COVID-19 vaccination. *See* ECF No. 51, at 3.

## II. An Order Requiring The Department Of The Navy To Disregard Plaintiffs' Unvaccinated Status In Making Assignment And Reassignment Decisions Would Inflict Irreparable Damage On The Navy And The Public.

As explained in the previously submitted declaration from the Vice Chief of Naval Operations, the second highest uniformed officer in the United States Navy, an order interfering with the military's ability to make judgments about officer assignments would pose immediate and severe threats to both the success of the Navy's missions and the health of its service members. *See* Decl. of William K. Lescher, ECF No. 66-4; *see generally* Defs.' Opp'n to Pls.' Emergency Mot. for a TRO

9-13, ECF No. 66; Defs.' Opp'n to Pls.' Renewed Mot. for a Prelim. Inj. 10-13, 35-37, ECF No. 74; Decl. of Col. Tonya Rans, ECF No. 74-4; Declaration of Maj. Scott Stanley, ECF No. 74-5. Other declarations previously submitted in this matter further establish the importance of vaccination, as well as good order and discipline, in the Marine Corps specifically. *See* Decl. of Adam Lyle Jeppe, ECF No. 42-3; Decl. of Eric N. Thompson, ECF No. 74-11. The requested TRO here would improperly interfere with the constitutional duties of the President and the Armed Forces, and would pose an immediate threat to the readiness of the units affected.

The requested relief is particularly inappropriate for another reason as well. It prevents the change of his assignment or job duties "for any reason." *See* Application for Emergency TRO 1, ECF No. 94. Thus, under such an order, the Marine Corps could not discipline the lieutenant for any misconduct whatsoever, regardless of its connection to this lawsuit, nor re-assign him based on a military crisis, nor prevent him from working if he contracted COVID-19 or other illness. The circumstances that could require immediate reassignment, removal or discipline are myriad and not necessarily related to this lawsuit. The requested order is thus overbroad and dangerous.

### III.  Proposed Intervenor Is Unlikely to Succeed on the Merits of His Claims.

The proposed intervenor cannot establish a likelihood of success on the merits because (1) he failed to exhaust administrative remedies; (2) he seeks an injunction with respect to military assignments, which are not justiciable; and (3) he has not disproven the military's showing that it has a compelling interest in vaccination and

that there are no less restrictive alternatives available, particularly in light of the deference due to military officials.

### A. Macik Failed to Exhaust Administrative Remedies.

Defendants have previously established that military service members are required to exhaust military remedies before bringing a lawsuit. *See* ECF No. 66, at 13-17; ECF No. 74, at 18-19; *see generally Winck v. England*, 327 F.3d 1296, 1302 (11th Cir. 2003) (collecting cases) (citing *Linfors v. United States*, 673 F.2d 332, 334 (11th Cir. 1982) (per curiam)).

The proposed intervenor has not exhausted his military remedies. Even though his religious exemption request has been denied, internal military procedures are available to him and should be completed before judicial review here. The Marine Corps has further administrative procedures that offer many opportunities for Marines to present their arguments, and for the Marine Corps to respond. *See* Declaration of David J. Furness ¶¶ 13–23, ECF No. 23-19; *see also* MCO 5800.16 – V15, § 0110 (governing administration separation of officers without Board action).[2] Service members subject to discipline can challenge the lawfulness of the vaccination requirement in those proceedings (including asserting a RFRA defense). *See generally United States v. Kisala*, 64 M.J. 50 (C.A.A.F. 2006). Should service members face separation for non-compliance with the directive, they may present their arguments to

---

[2] *See* https://www.marines.mil/Portals/1/Publications/MCO%205800.16%20Volume%2015.pdf?ver=2018-08-16-080917-883.

9

the separation authority. *See* Furness Decl. ¶¶ 16–20, ECF No. 23-19. For officers, this process can take several months. Furness Decl. ¶¶ 17–18, ECF No. 23-19. If a service member is discharged, he or she can appeal to the Navy Discharge Review Board and Board for Correction of Naval Records ("BCNR"). Declaration of William Merz ¶ 22, ECF No. 23-18; Furness Decl. ¶ 22, ECF No. 23-19. For adverse action less than discharge, the military has additional procedures that can provide relief. Merz Decl. ¶ 22, ECF No. 23-18; Furness Decl. ¶ 22, ECF No. 23-19. Courts have found that service members have failed to exhaust administrative remedies when even fewer steps in the administrative process remained, and that this process is particularly important in the military context. *See* ECF No. 66, at 13-17; ECF No. 74, at 18-19 (collecting cases).

In sum, an exercise of the court's equity powers is premature. Because Macik has not exhausted his intra-military remedies, he fails to show a likelihood of success on the merits.

### B. The Court Cannot Make Military Assignment Decisions Through Injunctive Relief.

Even if Macik's claims about his individual exemption denial were subject to judicial review, the particular relief sought with respect to his individual assignments should not be granted. As previously explained, decisions about how to assign and deploy service members are for the military to make, under the supervision of the President as Commander in Chief, not civilian courts. *See* ECF No. 66, at 17-20; ECF No. 74, at 35-37. For that reason, the Supreme Court and multiple Circuits have

confirmed that courts should not review challenges to such assignment decisions, even when they involve a constitutional challenge. *See, e.g.*, *Orloff*, 345 U.S. at 83. Indeed, the Eleventh Circuit has observed that courts "have traditionally deferred to the superior experience of the military in matters of duty orders, promotions, demotions, and retentions." *Speigner v. Alexander*, 248 F.3d 1292, 1298 (11th Cir. 2001). In *Speigner,* the Court found that a claim regarding injury from such orders was non-justiciable, despite the existence of constitutional claims, reasoning that "it is imperative to the military that only those officers determined to be competent to serve are retained" and that "[t]o dictate to the military which officers should be considered competent would be to interfere in just the way that *Feres* and its progeny preclude." *Id*. Courts in other circuits have reached the same conclusion. *See* ECF No. 66, at 18 (collecting cases).

The ultimate relief sought in the proposed amended complaint is an injunction against enforcement of the vaccinate mandate across the armed services, including a prohibition on related discipline. *See* ECF No. 75. That is extraordinary in itself, but the relief sought in this emergency motion is even more extraordinary – ongoing judicial oversight of assignment and duty decisions across the armed forces, even for non-parties, as a preliminary matter. The proposed intervenor, through a purported "emergency" motion, invites the Court to make an assignment and command decision with respect to him. But these are core constitutional responsibilities entrusted to the President as Commander in Chief and, through him, to military commanders. However the Court may rule on the underlying merits of this case, it should not

purport to determine who may presently be assigned to hold a particular position in the United States Marine Corps. This is especially so where the military has judged that doing so would harm the health and readiness of the military force and, thus, harm to the national security of the United States as the Navy and the Marine Corps carry out their vital missions.

### C. Plaintiffs' RFRA and First Amendment Claims Are Unlikely To Succeed.

Defendants have previously explained that Plaintiffs in this matter are unlikely to succeed on their religious freedom claims because the COVID-19 vaccination requirement furthers a compelling government interest in military readiness, because vaccination is the least restrictive means of protecting that interest, and because the religious exemption process is not a "ruse". *See* ECF No. 23, at 27-30; ECF No. 66, at 20-31; ECF No. 74, at 4-17; ECF No. 42-3.

Here, a senior military commander has reasonably assessed the Government's compelling interest in vaccinating this particular service member and has considered and rejected less restrictive alternatives, taking into consideration current military needs, and his unique circumstances. *See* ECF No. 94-8. Without the benefit of a full administrative record, the Court should not, on emergency briefing, conclude that the proposed intervenor has a strong likelihood of success on the merits of his RFRA and First Amendment claims such that a temporary restraining order is warranted.[3] Even

---

[3] There is no reason to address Plaintiffs' First Amendment claim separately. If Plaintiffs prevail on their RFRA claim there is no need to reach their separate First Amendment theory, as the Court would

the limited record before the Court shows he does not.

### 1. The COVID-19 Vaccination Requirement As Applied to this Individual Furthers the Government's Compelling Interest in Military Readiness.

Defendants have previously established the military's compelling interest in mandatory vaccination, a decision that was made by military leadership based on the best available current evidence. ECF No. 23, at 28-29; ECF Nos. 23-3, 23-8; ECF No. 66, at 21-26; ECF No. 66-4; ECF No. 74, at 9-17; ECF Nos. 74-4, 74-5; *see also Goldman v. Weinberger*, 475 U.S. 503, 507 (1986) ("when evaluating whether military needs justify a particular restriction on religiously motivated conduct, courts must give great deference to the professional judgment of military authorities concerning the relative importance of a particular military interest.").[4] As previously established, these professional military judgments are supported by the evidence showing COVID-19's harmful impact on the military in general and the Navy and Marine Corps in particular. *See* Jeppe Decl. ¶¶ 14-19, ECF No. 42-3; Lescher Decl., ECF No. 66-4; ECF Nos. 74-4 (Rans), 74-5 (Stanley), 74-11 (Thompson), 74-12 (Brandon).

Upon review of Lieutenant Macik's religious exemption request package, the

---

already have concluded that Plaintiffs are likely to succeed on their challenge to the vaccination requirement. Conversely, if the Government prevails under RFRA, it would necessarily prevail under Plaintiffs' First Amendment theory as well.

[4] Congress intended for courts to continue to apply principles of military deference in RFRA cases. *See* S. REP. 103-111, 12, *reprinted in* 1993 U.S.C.C.A.N. 1892, 1901 ("The courts have always recognized the compelling nature of the military's interest in [good order, discipline, and security] in the regulations of our armed services. Likewise, the courts have always extended to military authorities significant deference in effectuating these interests. The committee intends and expects that such deference will continue under this bill.").

appeal authority concluded that the Marine Corps has a compelling interest in vaccinating Macik. *See* ECF No. 94-8. He found that vaccination served the Marine Corps' compelling "interests in military readiness and in the health and safety of the force" because "[t]he greatest risk of transmission . . . is from and among unvaccinated people," and that while fully vaccinated people can have breakthrough infections, "they appear to spread the virus for a shorter period of time." *Id.* at 4. Accordingly, "personnel who are unvaccinated do not just put themselves at risk, they also risk the health and medical readiness of other persons within their unit, which in turn decreases the military readiness of the unit and the Marine Corps as a whole." *Id.* Exempting Lieutenant Macik would thus harm the readiness of the unit, especially because Macik works indoors in close proximity to others and cannot perform his duties remotely, and lives in a barracks. Macik's location in a foreign country with limited American medical resources poses additional challenges for his unit if he becomes ill.

  That conclusion is supported by other information in the partial record before the Court as well. The interviewing chaplain found Macik's request "sincere," and "consistent" with his religious beliefs. Although Macik's immediate commanding officer recommended approval in light of Macik's sincere belief, two others in the chain of command recommended against. *See* ECF No. 94-3. The Commanding General of the First Marine Aircraft Wing, for example, recommended against an exemption because Macik is a "member of MASS-2, a deployable unit within III Marine Expeditionary Force" and the "unit must be ready at a moment's notice to deploy to austere environments throughout the Indo-Pacific Theater." ECF No. 94-

3, at 2. He explained that if "Macik remains unvaccinated, he is more susceptible to severe outcomes from this disease" and "his vaccination status has a direct impact on the combat readiness of this unit." *Id*.

These military readiness determinations, based on the scope of information available to senior military leaders, are subject to the utmost deference from this Court.

### 2. **Vaccination is the Least Restrictive Means of Furthering the Government's Compelling Interest in Vaccinating Macik.**

Defendants have previously established that, in general, vaccination is the least restrictive means of furthering the Government's compelling interest in military readiness, including in the Navy and Marine Corps. ECF No. 42-3 ¶¶ 17-19; ECF No. 66, at 26-31; ECF No. 66-4 ¶ 12; *see also Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 731 (2014) (examining whether alternatives served the Government interest "equally well").

After careful consideration of Macik's request for a religious exemption and appeal, the Marine Corps concluded that there are no lesser restrictive means than vaccination to further the military's compelling interests in readiness and ensuring the health and safety of service members. The Assistant Commandant of the Marine Corps found that mitigation measures such as "masking, social distancing, hygiene, teleworking, and other similar measures, individually or in combination," are "not as effective as vaccination" and "are often incompatible with the demands of military life, where Marines and Sailors must live, work, realistically train, and, if necessary, fight in close quarters." ECF No. 94-8, at 4. Again, Macik is in a deployable unit

where all personnel need to be deployable, and he lives and works in close proximity to others. The other measures Macik proposes are simply not as effective as vaccination in preventing infection or serious illness. The Assistant Commandant specifically rejected Macik's demand that he be tested for antibodies. *Id.*; *see also* Rans Decl. ¶¶ 19, 43, ECF No. 74-4 (currently available serology tests are not a test for immunity because the presence of antibodies is not the same thing as being immune).

In sum, the military's vaccine policy is narrowly tailored to serve compelling military interests. The military is best situated to assess whether a specific unvaccinated individual puts the military mission at risk, or whether feasible, less restrictive alternatives are available. *See Orloff*, 345 U.S. at 94; *Bryant v. Gates*, 532 F.3d 888, 899 (D.C. Cir. 2008) (Kavanaugh, J., concurring) ("[T]he Supreme Court has indicated" that "military decisions and assessments of morale, discipline, and unit cohesion . . . are well beyond the competence of judges."). The Marine Corps has considered whether there are any lesser restrictive means of achieving their interest in military readiness and concluded that there are none. RFRA does not compel the military to adopt a measure that is inferior in the military context to requiring the use of safe and effective vaccines. Therefore, the proposed intervenor has not shown a likelihood of success on his RFRA claims to warrant the extraordinary injunctive relief they seek.

### IV. Macik Does Not Face Irreparable Harm.

Defendants have previously explained that injuries like military discipline and discharge are not in fact irreparable, particularly given the strong showing of

irreparable harm required to support any judicial intervention in military affairs. *See* ECF No. 23, at 30-36; ECF No. 66, at 31-34; ECF No. 74, at 32-33.

The proposed intervenor makes no such showing. He is not subject to forcible or involuntary vaccination. *See* ECF No. 23, at 34 (collecting regulation cites). Nor does he allege otherwise. Separation or discharge procedures could begin, but nothing indicates that the process has even been initiated. If a process is initiated soon, such processes could then take months to complete, given the notification procedures available to a probationary officer like Macik. *See* ECF No. 23-18, ¶¶ 17, 19 (Navy); ECF No. 23-19, ¶¶ 17–18 (Marines); *see also* MCO 5800.16 – V15, § 0110 (governing administration separation of officers without Board action).[5] Even if Macik is ultimately separated based on refusal of the vaccine, such a separation is neither imminent nor irreparable. Military administrative and disciplinary actions, including separation, are not *irreparable* injuries because the service member could later be reinstated and provided back pay if he prevailed on his claim. Placement on the Officer Disciplinary Notebook, as Macik claims will happen, likewise does not constitute irreparable harm; it is not even a disciplinary measure.[6] Even a court-martial, unlikely here, would not constitute irreparable injury. *See Schlesinger v. Councilman*, 420 U.S. 738, 755 (1975). If even the most severe and unlikely penalty available is not

---

[5] *See* https://www.marines.mil/Portals/1/Publications/MCO%205800.16%20Volume%2015.pdf?ver=2018-08-16-080917-883.

[6] Placement on the Officer Disciplinary Notebook, "a database used to track officer misconduct and substandard performance in the Marine Corps," is not itself a disciplinary measure, and ODN entries are not included in an officer's personnel file. *See* MCO 5800.016 § 104.

17

irreparable harm, then assignment to other job duties in which their vaccination status will pose less of a threat to their units is certainly not irreparable harm. For this reason alone, there is no basis for emergency injunctive relief, let alone relief directing the military's command assignment decisions, where the proposed intervenor's alleged injuries are fully reparable.

## CONCLUSION

The proposed intervenor is not a party in this case and not entitled to injunctive relief. But if his motion for a TRO is considered nonetheless, it should be denied. The Marine Corps denied Lieutenant Macik's religious accommodation request based on the Marine Corps' considered military judgment that vaccination is the only way to meet its needs with respect to this particular individual. The Court should defer to that judgment, which is amply supported in the record. While the Court evaluates this matter, Lieutenant Macik faces no imminent irreparable harm that this court can redress, but he does in fact pose an ongoing threat to the readiness of his unit. The Court should not determine where officers may serve in the military, nor dictate to the military that this individual must remain in his position, contrary to the judgement of military officials. For all of these reasons, the proposed intervenor's motion for a temporary restraining order should be denied.

Dated: February 15, 2022    Respectfully submitted,

BRIAN M. BOYNTON    /s/ Amy E. Powell
Acting Assistant Attorney General    ANDREW E. CARMICHAEL
    AMY E. POWELL
ALEXANDER K. HAAS    Senior Trial Counsel
Director, Federal Programs Branch    ZACHARY A. AVALLONE

ANTHONY J. COPPOLINO  
Deputy Director

COURTNEY D. ENLOW  
R. CHARLIE MERRITT  
Trial Attorneys  
United States Department of Justice  
Civil Division, Federal Programs Branch  
1100 L Street, N.W.  
Washington, DC 20005  
Tel: (919) 856-4013  
Email: amy.powell@usdoj.gov  
*Counsel for Defendants*