# EXHIBIT 3

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

NAVY SEAL #1, *et al.*

        Plaintiffs,

v.

JOSEPH R. BIDEN, in his official capacity as President of the United States, *et al.*

        Defendants.

Case No. 8:21-cv-02429-SDM-TGW

## DECLARATION OF ADMIRAL MICHAEL M. GILDAY

I, Michael M. Gilday, hereby state and declare as follows:

1. I am an admiral[1] in the United States Navy, currently serving as the 32nd Chief of Naval Operations (CNO). My place of duty is located in Arlington, Virginia at the Pentagon. The position of CNO is appointed by the President, by and with the advice and consent of the Senate, and is the highest-ranking uniformed officer in the Navy and a member of the Joint Chiefs of Staff.[2] I have served in this position since August 22, 2019. I make this declaration in support of the Government's motion for a stay of this Court's preliminary injunction pending appeal. The statements made in this declaration are based upon my personal knowledge, my military judgment and experience, and upon information that has been provided to me in the course of my official duties.

---

[1] The rank of "admiral" is the highest military rank in the Navy. The term "admirals" is also frequently referred to as "flag officers." Flag officers include the ranks of rear admiral (lower half), rear admiral (upper half), vice admiral and admiral. Flag officers comprise the most senior levels of uniformed leadership in the Navy.

[2] The CNO is the senior uniformed officer in the United States Navy. *See* 10 U.S.C. § 8033(b) ("The Chief of Naval Operations, while so serving, has the grade of admiral without vacating his permanent grade. In the performance of his duties within the Department of the Navy, the Chief of Naval Operations takes precedence above all other officers of the naval service.").

1

## Preliminary Statement

2.      I have reviewed the preliminary injunction order issued by the Court on February 18, 2022. I am the designated official that decides all Navy service member appeals of the denial of religious accommodation (RA) requests that require waiver of Department of Navy policy, to include exemption from the requirement to be inoculated with the COVID-19 vaccine. I carefully review each appeal, to include the service member's initial request and appeal, all enclosed matters submitted by the service member, command endorsement, and the requester's specific duties. In considering these matters, I assume the requester's religious belief is sincere and would be substantially burdened by being required to be inoculated with the COVID-19 vaccine. I then determine whether there are less restrictive means to satisfy the compelling government interest in preventing the spread of diseases to support mission accomplishment, including military readiness, unit cohesion, good order and discipline, and health and safety, at the individual, unit, and organizational level. COVID-19 in particular has taken the lives of Sailors, jeopardized the health and safety of Sailors and their families, and impeded mission accomplishment. I deeply respect every Sailor who raised his or her right hand to wear the uniform of our Nation, and I owe them individual, case-by-case consideration of each of their appeals. To do otherwise would run counter to the sacred duty Navy leaders have to every Sailor under their charge.

## Navy Background and Experience

3.      As CNO, I execute statutory duties and responsibilities as they pertain to the employment of the Navy. Those duties include recruiting, organizing, supplying, equipping, training, servicing, mobilizing, demobilizing, administering, and maintaining of the Navy, as

well as assisting in the execution of any power, duty, or function of the Secretary of the Navy. As the Service Chief for the United States Navy, I serve as a member of the Joint Chiefs of Staff.[3]

4. I have served in the United States Navy for 37 years. I graduated from the United States Naval Academy in 1985 and served in several assignments throughout my career. Some of my prior assignments included command of destroyers USS Higgins (DDG 76) and USS Benfold (DDG 65) and subsequent command of Destroyer Squadron 7, serving as sea combat commander for the Ronald Reagan Carrier Strike Group. Joint assignments include executive assistant to the Chairman of the Joint Chiefs of Staff and naval aide to the President. As a flag officer, I served as commander, Carrier Strike Group 8 embarked aboard USS Dwight D. Eisenhower (CVN 69), and as commander, U.S. Fleet Cyber Command and U.S. 10th Fleet. As a flag officer, I also served in joint positions as director of operations for NATO's Joint Force Command Lisbon; as chief of staff for Naval Striking and Support Forces NATO; as director of operations, J3, for U.S. Cyber Command; and as director of operations, J3, for the Joint Staff. Prior to my current assignment as CNO, I recently served as director, Joint Staff. I hold master's degrees from the Harvard Kennedy School and the National War College.

## Consideration of RA Appeals

5. RA appeals are evaluated by me on a case-by-case basis using criteria outlined in BUPERSINST 1730.11A. Because the Navy requires immunization for all Sailors, RA requests

---

[3] *See* 10 U.S.C. §151(a) (Joint Chiefs of Staff (JCS) is headed by the Chairman of the JCS (CJCS) and composed of the Vice Chairman, the Chief of Staff of the Army, the Chief of Naval Operations, the Chief of Staff of the Air Force, the Commandant of the Marine Corps, the Chief of the National Guard Bureau and the Chief of Space Operations). The CJCS is the principal military adviser to the President, the National Security Council, the Homeland Security Council, and the Secretary of Defense and in carrying out his functions, duties and responsibilities, the CJCS shall consult with and seek the advice of the other members of the JCS and the commanders of the unified and specified combatant commands, as necessary. *Id.* at §151(b)-(c).

for exemptions from the requirement to be inoculated with the COVID-19 vaccine are initially acted on by the Chief of Naval Personnel (CNP) as the deciding official. I am the appeal authority in the event that CNP denies the initial RA request. In my review, I assume the requester's religious belief to be sincere, and that the requirement to be inoculated with the COVID-19 vaccine would substantially burden the requester's exercise of his or her religion. I do not deny the requester's appeal unless denial furthers a compelling governmental interest and is the least restrictive means of furthering that compelling government interest. BUPERSINST 1730.11A ¶ 5.a.(2) Factors considered include (but are not limited to) whether there are less restrictive means, whether approving the accommodation would pose a health or safety hazard, or otherwise impair mission accomplishment, good order, discipline, morale or unit cohesion. *Id.*

6.  If the requirement substantially burdens a requester's exercise of his or her religion, the Navy must establish that the substantial burden is required in furtherance of a compelling Navy interest and is the least restrictive means of accomplishing that interest. I consider whether the government's compelling interest applies to the particular requester and whether there are less restrictive means to achieve the Navy's compelling government interest. This is also a case-by-case review that is particularized to circumstances applicable to the individual requester. Specific duty assignments and the requirement for Sailors to be immediately available to deploy in the event of military exigencies will result in less restrictive means not being feasible in many circumstances. A religious accommodation will be approved if it does not adversely impact the Navy's compelling government interest in preventing the spread of diseases to support mission accomplishment, including military readiness, unit

4

cohesion, good order and discipline, or health and safety, at the individual, unit, and organizational levels.

7. The Court's conclusion that the Navy's assessment of the compelling interest is generalized and not specific to the requester is incorrect because there are several common denominators that apply across broad sections of the Navy, particularly to those in deployable units. For example, communicable diseases can interfere with the Navy's mission accomplishment at the individual, unit, and organizational levels, decrease the overall health of the force, degrade military readiness, and place additional strain on already limited medical resources. Spread of communicable diseases among Sailors who live and work in confined quarters aboard ships or in austere deployed environments can cause mission failure if one or more personnel become too sick to perform their jobs. Logistical challenges inherent in moving personnel to and from deployed ships and other deployed environments make it difficult, if not impossible, to quickly evacuate sick personnel and replace them with healthy personnel. Navy ships have limited medical and long-term placement capabilities. Accordingly, if a service member becomes severely ill onboard a ship, the ship may have to abandon its mission and transit to a location that offers more adequate treatment. The spread of communicable diseases from U.S. Navy personnel to foreign or host-nation personnel would have a detrimental impact on U.S. foreign relations, especially if the disease was viewed as preventable.

8. The effectiveness of mitigation measures is extremely limited on ships, where Sailors must live, work, eat, and sleep in close proximity to other Sailors. Ships typically have limited space to quarantine Sailors from the rest of the crew, if such facilities exist at all. Almost all enlisted berthing compartments feature three-foot by six-foot bunks ("racks") that are generally stacked three high with narrow passages between rows. Enlisted berthing

compartments have as few as 12 and as many 210 personnel sleeping in the same space. Health protection measures are more feasible ashore, but the effectiveness is highly dependent on the type of work a Sailor does and the configuration of their workspace. Commands across the Navy Service were obligated to adopt telework policies, where feasible.[4] Finally, Sailors' assignments typically alternate between sea duty and shore duty; however, every Sailor must be deployable. Being unvaccinated will almost certainly result in a Sailor not being deployable. Sailors who are not deployable are subject to a medical discharge.[5] Sailors assigned to shore duty or the Navy Reserve need to be ready to deploy at a moment's notice.

## Conclusion

9.  The unavoidable and irrefutable fact that several common denominators exist across large sections of the Navy does not result in there being a lack of case-by-case review of each request and the application of the compelling government interest to the circumstances of the individual requester. Particular to this officer's request, lesser restrictive means will not achieve the compelling government interest  The Navy is committed to accommodating every Sailor's practice of his or her religious beliefs which do not have an adverse effect on military readiness, unit cohesion, good order and discipline, or health and safety. The Navy is also committed to protecting vital national interests, such as maintaining the advantage over long-term competitors, China and Russia, and their rapidly modernizing militaries built to challenge the international order that has benefited so many for so long. The Navy is committed to defend our Nation and interests around the globe by flawlessly executing our timeless roles of sea

---

[4] Telework is not an option for many Sailors, including those performing work using classified networks, those who work with specialized equipment, or for any work, training, or maintenance on military assets (e.g. ships, aircraft, submarines).

[5] *See* OPNAVINST 1300.20, Deployability Assessment and Assignment Program (requiring administrative separation processing or referral to the Disability Evaluation System for any Sailor who is undeployable for 12 months or longer).

control and power projection. I am committed to accommodating every Sailor's religious practices to the extent the individual's specific request does not undermine the compelling government interests in order to accomplish these vital functions the American people expect and demand of their Navy.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 28th day of February, 2022.

M. M. GILDAY