# EXHIBIT 4

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| NAVY SEAL #1, *et al.*<br><br>                         Plaintiffs,<br><br>v.<br><br>JOSEPH R. BIDEN, in his official capacity as President of the United States, *et al.*<br><br>                         Defendants. | Case No. 8:21-cv-02429-SDM-TGW |

## DECLARATION OF GENERAL ERIC M. SMITH

I, Eric M. Smith, hereby state and declare as follows:

    1.    I am a General[1] in the United States Marine Corps, currently serving as the 36th Assistant Commandant of the Marine Corps (ACMC). My place of duty is located in Arlington, Virginia at the Pentagon. The position of ACMC is appointed by the President, by and with the advice and consent of the Senate, and is the second highest ranking uniformed officer in the Marine Corps. I have served in this position since October 8, 2021. I make this declaration in support of the Government's motion for a stay of this Court's preliminary injunction pending appeal. The statements made in this declaration are based upon my personal knowledge, my military judgment and experience, and upon information that has been provided to me in the course of my official duties.

---

[1] The rank of "General" is the highest military rank in the Marine Corps. The term "Generals" is also frequently referred to as "General Officers." General Officers include the ranks of Brigadier General, Major General, Lieutenant General and General. General Officers comprise the most senior levels of uniformed leadership in the Marine Corps.

1

## Preliminary Statement

2. I have reviewed the preliminary injunction order issued by the Court on February 18, 2022. I am the designated official that considers and decides all Marine Corps appeals of the denial of religious accommodation (RA) requests that seek exemption from the requirement to receive the COVID-19 vaccine. The Court's conclusion that the Marine Corps' consideration and decisions on RA requests and my determinations on appeals are made in "bad faith"[2] is wrong and also ignores the demanding requirements and missions the Marine Corps performs across the globe on short notice. I personally consider every appeal including all enclosed matters submitted by the requester, the command endorsements, the recommendation of the Religious Accommodation Review Board (RARB), the input of the Director, Health Services, Headquarters, U.S. Marine Corps and the nature of the requester's current duties, living conditions, deployment status and a variety of other information specific to the individual requester. I review each religious accommodation request and the available information on a case-by-case basis. When I review a Marine's request, unless there is evidence to the contrary, I assume that the individuals request is sincere. Then, I determine whether the required action or policy substantially burdens the requestor's practice of their faith, whether there is a compelling government interest in requiring the appellant to be vaccinated, and whether the requirement is the least restrictive means to satisfy a compelling government interest. I have granted religious accommodation appeals when the compelling government interest in vaccination is not as great or there are less restrictive means to satisfy the compelling government interest. Marines unselfishly and heroically put themselves in harm's way to protect national interests and defend values that Americans hold dear, including the free exercise of religion. I and every Marine

---

[2] ECF No. 111 at 1.

2

Corps leader are committed to ensuring that every Marine can exercise his or her constitutional rights to the maximum extent possible consistent with the demands and requirements of the Service. Any conclusion that my review and adjudication of these requests and appeals is a "sham" process is wholly incorrect. Furthermore, the Court's implication that I am not familiar with concepts such as "complicity with evil"[3] that are "likely familiar to a thoughtful religious lay person" is completely unfounded.

### Military Background and Experience

3. As the ACMC, I am the second highest ranking officer in the United States Marine Corps and I serve as the second-in-command for the Commandant of the Marine Corps (CMC). In the event the CMC is absent or unable to perform his duties, I assume the duties and responsibilities of the CMC and, with the approval from the Secretary of the Navy, may be delegated or prescribed to me. Orders issued by me as the Assistant Commandant while performing such duties have the same weight as those issued by the CMC.

4. I have served in the Marine Corps for 35 years, commissioning in 1987. I have served in several assignments throughout my career and commanded at every level, including Weapons Company, 2d Battalion, 2d Marine Regiment during Operation Assured Response in Monrovia, Liberia; 1st Battalion, 5th Marine Regiment during Operation Iraqi Freedom; and 8th Marine Regiment/ Regimental Combat Team 8 during Operation Enduring Freedom. I also served in Caracas, Venezuela as part of the U.S. Military Group. As a General Officer, I commanded U.S. Marine Corps Forces Southern Command, 1st Marine Division, III Marine Expeditionary Force, and Marine Corps Combat Development Command. My staff assignments as a General Officer include serving as the Director of Capability Development Directorate,

---

[3] *Id.* at 14-15.

Combat Development and Integration; Senior Military Assistant to both the Deputy Secretary of Defense and Secretary of Defense; and Deputy Commandant for Combat Development and Integration.

### Consideration of RA Requests and Appeals

5. All requests for religious accommodation are reviewed on a case-by-case basis. Requests for the accommodation of religious practices implicating medical procedures, such as exemption from vaccines, are adjudicated by the Deputy Commandant, Manpower and Reserve Affairs (DC M&RA). If the request for religious accommodation for immunization is disapproved, the service member has the right to request an appeal to the CMC.[4] In reviewing the request, the DC M&RA also considers the recommendation of a RARB.[5] The RARB reviews the religious accommodation request with all endorsements and enclosures and provides written recommendations as to the merits of each religious accommodation request and whether the DC M&RA should approve or deny, in whole or in part, each request. For any medical-related accommodation request, the Director, Health Services, Headquarters, U.S. Marine Corps provides a medical advisory opinion.

6. Each request and appeal for religious accommodation is reviewed on a case-by-case basis, giving consideration to the full range of facts and circumstances relevant to the specific request. The Marine Corps will approve an individual request or appeal unless such approval unavoidably erodes a compelling government interest. The adjudication authority is required to demonstrate that its determination considers whether the request is based on a sincerely held religious belief and whether there is a less restrictive alternative means of meeting

---

[4] I or the Director of the Marine Corps Staff may take action on behalf of the CMC.
[5] The Religious Accommodation Review Board (RARB) consists of a minimum of three voting members and non-voting advisors, to include a recorder, a legal advisor, a chaplain advisor, and other personnel as determined by the Board President.

a compelling government interest. For requests for waivers from immunization requirements, Secretary of the Navy Instruction 1730.8B ¶ 8a. provides that "[t]he religious objection of the service member must be balanced against the medical risk to the member and the military unit, and military requirements such as alert status, deployment potential, and availability of the member for reassignment to units requiring full medical readiness."

7. If DC (M&RA) or I determine there is a sincerely held religious belief, and the policy, practice, or duty (in these cases vaccination) substantially burdens a Marine's exercise of religion, then the request can only be denied if the military policy, practice, or duty is in furtherance of a compelling governmental interest, and there is no lesser restrictive means to furthering that compelling interest. This is also a case-by-case determination. Some sincerely held beliefs may not be substantially burdened if the requester has demonstrated acquiescence to the purported burden in other portions of their life (e.g., receiving other vaccinations or using other products tested using fetal cell lines), and the requester has not stated a sincere religious basis for the difference. Additionally, if the requester's sincerely held religious belief concerns objections to the mRNA vaccines, the requestor's belief may not be substantially burdened by receiving a different type of vaccine, depending on the nature of the requester's sincere religious beliefs. Generally speaking, absent evidence to the contrary, I assume the belief is sincere and I make an assessment regarding whether vaccination substantially burdens that belief based on the requestor's description of the belief.

8. The Marine Corps has a compelling governmental interest in mission accomplishment at the individual, unit, and organizational levels. The necessary elements of mission accomplishment include: (1) military readiness; (2) unit cohesion; (3) good order and discipline; and (4) health and safety. The Marine Corps requires immunizations for all Marines,

based upon the service's compelling interest in military readiness and the health and safety of active duty and reserve Marines. Immunizations are a vital component of individual and unit medical readiness, as Marines operate in environments and under conditions that increase their exposure and susceptibility to illness. This is particularly acute in deployed environments or in circumstances when Marines are required to be in close proximity to each other, such as recruit training or when embarked on ships, aircraft, and military vehicles. Mission accomplishment may necessitate that Marines be immunized to protect against disease due to increased exposure potential, or to conform with international health regulations incident to foreign travel or unit deployment, or to comply with the requirements of those countries that host our Marines.

9. Even though vaccinations are vital to medical readiness, DC (M&RA) and I still consider, on a case-by-case basis, whether there is a compelling interest as applied to the individual requester and whether there are less restrictive means to achieve the Marine Corps' compelling government interest including mission accomplishment at the individual, unit, and organizational levels. This is also based on a case-by-case review that is highly dependent on the particular facts applicable to the requester. If I do not have enough information to complete a case-by-case analysis, then my staff will ask the requestor or the requestor's command for more information in order to adjudicate a request or an appeal (Exhibit A). Religious accommodations will be approved if a less restrictive means is available that does not adversely impact the Marine Corps' compelling government interest in preventing the spread of communicable diseases to support mission accomplishment, including military readiness, unit cohesion, good order and discipline, or health and safety.

10. DC (M&RA) and I consider a variety of unique factors specific to the requester in determining if less restrictive means are available. Some of the considerations may include

where the requestor lives (e.g., in military barracks where bathrooms and messing facilities are often shared with other Marines), where the requester works (e.g., confined indoor space, outdoors, if telework is feasible), the nature of the requester's unit (e.g., is it deployable, living conditions if deployed, embarkation on a vessel if deployed), the nature of required military training (e.g., will the requester be required to train in close proximity with United States service members or foreign partners and allies), and the nature of the requestor's primary and collateral duties, among other factors. While considering these factors and others as may be applicable, the approval and appellate authorities will also consider if mitigation measures (e.g., social distancing, additional sanitation, masking, self-quarantining, periodic testing, etc.) will be effective without undermining the Marine Corps' compelling interest in mission accomplishment at the individual, unit, and organizational levels. These mitigation measures and similar ones are often incompatible with the demands of military life, where Marines and Sailors must live, work, realistically train, and, if necessary, fight in close quarters. Because the Marine Corps is the smallest of the Services, and is America's force in readiness, every Marine must be deployable and ready to fight tonight. If a Marine is not deployable, we will make every effort to assist in making the Marine deployable. Where a Marine is unable to deploy for an indefinite period, they will be discharged. Readiness is our number one concern each day, and we take seriously that every Marine is a rifleman. That is why *every* Marine undergoes combat training and *every* Marine officer undergoes training to be a rifle platoon commander.

## Conclusion

11.     The fact that few requests and appeals have been approved is not due to a lack of case-by-case review of each request or the lack of an individualized application of the compelling government interest to the circumstances of the requester. Nor is it evidence that this

7

process is a "'rubber stamp'" adjudication by form letter."[6] Where an accommodation does not undermine the mission of the Marine Corps, the Marine Corps will accommodate Marines' religious beliefs. For example, the Marine Corps has facilitated the ability to observe the Sabbath or holy days and provides kosher or halal meals to Marines who make those requests. We also recently granted a Sikh Marine the ability to deviate from our uniform and grooming standards in certain circumstances in order to observe the tenants of his faith. The fact that few of the requests or appeals for exemption to the vaccine have been approved is a reflection of the extraordinarily compelling government interest in total force readiness, and the health and safety of our Marines. In the case of the Marine Lieutenant Colonel, who is the subject of the Court's order, I considered several specific facts and circumstances unique to her. She is currently assigned to a deployable unit, was slated to deploy overseas but her orders had to be canceled because of her unvaccinated status, and she is currently slated to take command of a deployable unit that will be embarked on a ship in confined quarters and where mitigation measures are virtually impossible to enforce. She will very likely need to travel to countries that require a COVID-19 vaccination as a condition of entry or where there are requirements for significant delays to entry because of quarantine requirements for unvaccinated persons. Marines remain forward deployed and forward engaged in the Pacific, South America, Africa, Europe and the Middle East. As a relevant and in high-demand instrument of national power, Marines respond to crises around the world, and until six months ago Marines have remained engaged in continual combat operations in Afghanistan. The relatively few exemptions to the COVID-19 vaccine requirement is not proof of the Marine Corps' lack of *commitment* to Marines' free exercise of their religions. On the contrary, the few exemptions to the vaccine are a direct reflection of the

---

[6] ECF No. 111 at 42.

8

Marine Corps' *commitment* to the daunting and unrelenting demands the Nation requires of us, as the most flexible, versatile, and adaptable Service, to execute any mission immediately anywhere in the world.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 28th day of February, 2022.

E. M. SMITH

Exhibit A to General Smith's Declaration

# RELIGIOUS ACCOMMODATION APPEAL - APPLICANT INFORMATION FORM

## SECTION A – APPLICANT PERSONNEL DATA

| 1. NAME OF APPLICANT (LAST, FIRST, MI) | 2. PAYGRADE/RANK<br>SELECT RANK | 3. DoD ID NUMBER |
|---|---|---|
| 4. CURRENT BILLET | 5. MOS | 6. SERVICE COMPONENT<br>SELECT SERVICE |
| 7. UNIT OR ORGANIZATION | 8. GENERAL COURT-MARTIAL CONVENING AUTHORITY UNIT/ORGANIZATION | |

## SECTION B – ADDITIONAL INFORMATION

9. Did the chain of command endorse the appeal?  ◯ Yes  ◯ No
10. Does the applicant reside on a military installation or in military housing?  ◯ Yes  ◯ No
11. Does the applicant reside in the barracks?  ◯ Yes  ◯ No
12. If they reside in the barracks, does the applicant have a roommate?  ◯ N/A  ◯ Yes  ◯ No
13. Does the applicant share a bathroom with others?  ◯ Yes  ◯ No
14. Whether on base or off, please describe applicant's living arrangements.

15. Does the applicant work primarily indoors?  ◯ Yes  ◯ No
16. Can the applicant perform primary duties remotely?  ◯ Yes  ◯ No
17. Does the applicant work in close proximity to others?  ◯ Yes  ◯ No
18. Describe the applicant's current billet, primary duties, and working conditions.

| | | | | |
|---|---|---|---|---|
| 19. Is the applicant attached to a deployable unit? | | ○ Yes | | ○ No |
| 20. Is the applicant scheduled to deploy? | | ○ Yes | | ○ No |
| 21. Please describe the nature of the deployment, the applicant's primary duties on the deployment, and what their living arrangements will be. | | | ☐ | N/A |
| | | | | |
| 22. Will the applicant be required to serve on ship? | | ○ Yes | | ○ No |
| 23. Please describe the applicant's berthing and primary responsibilities while serving on ship. | | | ☐ | N/A |
| | | | | |
| 24. Will the applicant be required to participate in exercises or other unit training events that require them to be in close proximity to others? | | ○ Yes | | ○ No |
| 25. Please describe the applicant's primary duties and billeting for these exercises and training events. | | | ☐ | N/A |
| | | | | |
| 26. Does the applicant expect to PCS/PCA in the next 18 months? | | ○ Yes | | ○ No |
| 27. If the applicant expects to PCS/PCA in the next 18 months, when is their anticipated date of departure? | | | ☐ | N/A |
| 28. If the applicant expects to PCS/PCA in the next 18 months, what is their future billet and duty responsibilities? | | | ☐ | N/A |
| | | | | |
| 29. Is the applicant required to stand duty? | | ○ Yes | | ○ No |
| 30. Does standing duty place the applicant in close proximity to others? | | ○ Yes | | ○ No |
| 31. Please describe how often the applicant stands duty and their primary responsibilities while on duty. | | | ☐ | N/A |
| | | | | |

| | | |
|---|---|---|
| 32. Does the applicant have collateral duties that place them in close proximity to others? | ○ Yes | ○ No |

33. Describe the applicant's collateral duties. ☐ N/A

34. To your knowledge, has the applicant requested or received any previous religious accommodations?    ○ Yes    ○ No

35. If so, describe previous religious accommodations. ☐ N/A

36. Is there any additional information you would like to provide the appeal authority? ☐ N/A

| 37. CO, XO, or OIC Name (LAST, FIRST, MI) | 38. CO, XO, or OIC Signature |
|---|---|
| | |

| 39. Date Religious Accommodation Form routed to GCMCA SJA for review: | |
|---|---|
| 40. Date Religious Accommodation Form routed to JCA, JAD: | |

**SUBMISSION INSTRUCTIONS:**

All Religious Accommodations Forms must be saved in the following format: LNAME, FI. MI. RAAPPEAL Form

Please return this form to your SJA. SJA's, after reviewing the form, please send to the following email address: JCA@usmc.mil