IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

**NAVY SEAL # 1,** et al.,

        Plaintiffs,

v.

**JOSEPH R. BIDEN, JR.**, in his official capacity as President of the United States, et al.,

        Defendants.

Case No. 8:21-cv-02429-SDM-TGW

## NOTICE OF SUPPLEMENT TO DEFENDANTS' EMERGENCY MOTION FOR STAY PENDING APPEAL AND FOR IMMEDIATE ADMINISTRATIVE STAY

Defendants hereby supplement the emergency motion for a stay with one additional declaration, prepared for and filed in a separate matter, that speaks to some of the issues raised in the Motion to Stay, including the harms to the Navy of an unvaccinated sailor. *See* Declaration of Admiral William Merz, attached. It was inadvertently excluded from the Motion to Stay.

Dated: March 2, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director

1

/s/ *Amy E. Powell*
ANDREW E. CARMICHAEL
AMY E. POWELL
Senior Trial Counsel
ZACHARY A. AVALLONE
COURTNEY D. ENLOW
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (919) 856-4013
Fax: (202) 616-8470
Email: amy.powell@usdoj.gov

*Counsel for Defendants*

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS

U.S. NAVY SEALs 1-3; et al.,

        Plaintiffs,

v.

LLOYD J. AUSTIN, III, in his official capacity as
United States Secretary of Defense; et al.,

        Defendants.

Case No. 4:21-CV-01236-O

## SUPPLEMENTAL DECLARATION OF WILLIAM MERZ

I, William Merz, hereby state and declare as follows:

1. I am a Vice Admiral in the United States Navy, currently serving as the Deputy Chief of Naval Operations, Operations, Plans and Strategy (OPNAV N3/N5), located in Arlington, Virginia at the Pentagon. I make this declaration in support of the Government's motion in opposition to Plaintiffs' motion for a preliminary injunction for putative class members in this lawsuit.[1] The statements made in this declaration are based upon my personal knowledge, my military judgment and experience, and upon information that has been provided to me in the course of my official duties.

2. I have reviewed Admiral Lescher's declaration previously filed in this case, and I agree with Admiral Lescher's appraisal of the importance of vaccines in addition to other mitigation measures to reduce the impact of the COVID-19 virus to operations and mission accomplishment. An order directing the Navy to allow potentially 2,500 to 4,000 personnel to

---

[1] ECF 104, filed Feb. 7, 2022.

1

remain unvaccinated while maintaining the status quo, including unvaccinated personnel remaining in deployable units, would cause irreparable harm and unnecessarily endanger readiness and Sailors' lives. Two years into this pandemic, the medical evidence is beyond dispute in that fully unvaccinated personnel develop severe symptoms requiring hospitalizations and emergency medical evacuation or death at a significantly higher rate than their vaccinated peers. The difference is even more dramatic when comparing those fully vaccinated with a booster dose with the unvaccinated. The bottom line is the COVID-19 vaccine is keeping ships at sea, submarines on patrol and aircraft flying to protect and defend the Nation's and our partners' and allies' interests. Directing the Navy to allow thousands of unvaccinated personnel to remain in deployable units puts the Nation's ability to respond to crises around the world at unnecessary and self-inflicted risk.

3.     I also reviewed Plaintiffs' and the Court's characterization[2] of my comments to the *Navy Times* and believe they fundamentally misunderstand and selectively quote those statements. In that article, I stated the Omicron variant has had less of an impact on naval operations *because* the Navy is now requiring 100% vaccination of its service members. The facts and results fully support this conclusion. The outbreak on the USS MILWAUKEE (LCS 5) is an example that a 100% vaccinated force is the best way to mitigate COVID-19's impact on the force. Because the vaccine kept service members from getting seriously ill and therefore

---

[2]     Defendants have not provided sufficient evidence that the Navy will be irreparably injured absent a stay. Vice Admiral Merz, deputy chief of naval operations, describes a highly effective force despite the spread of the Omicron variant. Pls.' App. 3–4, ECF No. 100. Even fully vaccinated ships have experienced outbreaks, but "Omicron has a quick turn around and isn't causing severe illness in sailors." Pls.' App. 4, ECF No. 100. In short, "[Omicron] is coming and going all the time, very small numbers, and really no operational impact." *Id.* Defendants' briefing presents a much grimmer version of the facts. They argue that unvaccinated servicemembers will derail missions, require medical attention where healthcare is limited, and jeopardize the health of other servicemembers. Defs.' Br. 7–9, ECF No. 86.

Court's Order at 8, ECF No. 116

minimized the operational impact, the ship encountered minimal disruption. When compared to a situation before the vaccine was available, when the USS THEODORE ROOSEVELT (CVN 71), a capital asset in the Nation's ability to maintain stability and project force around the globe, remained in port nearly two months due to a COVID outbreak[3] this only further demonstrates the Navy's compelling interest in mandating the COVID-19 vaccine.

    4.      An injunction requiring the Navy to reintroduce unvaccinated service members to operational units (that the Navy previously removed due to their unvaccinated status) or requiring the Navy to keep unvaccinated service members in operational units, would risk jeopardizing the unit's full operational status, returning Navy units to a condition before the vaccine mandate and presenting an unacceptable risk to naval operations. For example, the risk of severe illness from COVID is greatly reduced for vaccinated people, thus minimizing the need for a unit to remain within a certain distance of medical care (which limits what a unit can do) or the cost of diverting that unit to remove Sailors who become severely ill or ill to a point beyond which organic resources can handle their medical care. As I explained in the *Navy Times* article, "[t]hose who have a waiver or are seeking a COVID-19 vaccine exemption are transferred to a shore tour to ensure sailors in operational units are fully vaccinated." I further explained that it is "significantly less expensive to separate a sailor than to conduct a medical evacuation due to a COVID-19 outbreak." These statements further support the Navy's compelling interest in the vaccination of its forces and its units. Finally, the health impact of any COVID variant on any unvaccinated individual is not predictable, and could be fatal even absent pre-conditions. Because sailor health has been the driving concern, having any unvaccinated sailors

---

[3] At the height of the outbreak, over 4,000 crew out of a crew of approximately 4,800 had to be removed from the ship and tragically one Sailor died. ADM. Lescher decl. ¶ 12.

3

onboard forces the Navy to adjust operations to ensure medical care is within reach. Just one unvaccinated sailor can derail an operational plan.

5. The costs of the COVID-19 virus are significant, but are preventable with vaccination. Seventeen Sailors have died and all of those Sailors were not fully vaccinated. Over 600 Sailors have been hospitalized; 578 of the personnel hospitalized were not fully vaccinated. There have been nearly 85,000 infections resulting in over one million lost days in which Sailors were unable to perform duties or train. Even when the unvaccinated do not fall seriously ill, the entire unit bears the burden of a preventable situation. For example, morale has suffered during the pandemic. During the pandemic, the Navy has set records – not records of which we are proud – for days spent at sea without a port visit. Ships have spent from 160 days to up to over 200 consecutive days at sea without a port visit. Prior to the pandemic, 60 days would be considered a lengthy time at sea without a port visit. A single unvaccinated crew member could potentially keep a ship out of a foreign port if that nation requires a COVID-19 vaccination for entry, keeping a ship at sea. Having unvaccinated service members in the crew also results in more time spent away from families with crews having to quarantine away from family for two weeks prior to deployment and, in the case of submarines, also two weeks post deployment. The added financial burden diverts scarce resources from essential programs to COVID-related expenses. For example, the Navy has spent nearly $31,000,000 on COVID-19 medical supplies exclusive of the actual vaccines. Sailors, including new recruits reporting to boot camp, are required to quarantine in hotels or in on-base lodging prior to commencing training or an overseas move. This also comes at great financial cost. By allowing thousands of unvaccinated personnel to remain in these units, all of these costs will continue until the pandemic burns itself out.

6. Navy leadership owes a sacred duty to the Sailors who have voluntarily raised their right hand to serve and wear the uniform of our country. That sacred duty is also owed to those Sailors' families. That duty is for Navy leadership to do everything within its power to ensure Sailors are safe and can succeed – both personally and at the unit level. Commanders would not send Sailors into harm's way without the tools and capabilities necessary to succeed and safely return home to their families. Deploying thousands of unvaccinated Sailors when the vaccine is readily available, safe and effective is a betrayal of the trust and confidence the American people have placed in the United States Navy to protect their sons, daughters, husbands, wives, fathers and mothers.

Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 23rd day of February, 2022.

W. R. MERZ