IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

**NAVY SEAL # 1,** et al.**,**

        Plaintiffs,

v.

**JOSEPH R. BIDEN, JR.**, in his official capacity as President of the United States, et al.,

        Defendants.

Case No. 8:21-cv-02429-SDM-TGW

**DEFENDANTS' OPPOSITION TO PLAINTIFF USMC CAPTAIN'S
EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER**

Plaintiff United States Marine Captain has filed an emergency motion asking the Court to enjoin an order to be vaccinated. Mot., ECF No. 121. Plaintiff's motion fails to satisfy any of the requirements under law for such emergency relief. Plaintiff makes only a cursory argument concerning his likelihood of success on the merits, which is plainly insufficient to show he is entitled to the "extraordinary relief" of a temporary restraining order. Nor does Plaintiff make any argument whatsoever regarding the public interest of entering a temporary restraining order. And, significantly, there is no emergency and any purported harm is reparable. Plaintiff's claimed injuries relate to the outcome of future officer separation processes, which take, at a minimum, several months to complete and permit Plaintiff to raise arguments against separation. Thus, contrary to Plaintiff's assertions that this matter presents an extraordinary emergency, nothing about the pending motion is proper or remotely justifies the entry of a temporary restraining order.

For these reasons, set forth further below, Plaintiff's motion should be denied.

1

## BACKGROUND

### I. Procedural History

The procedural background of this matter is largely set forth in prior filings and orders. *See* ECF Nos. 66, 67, 74, 118. Of note here, Defendants filed an opposition to Plaintiffs' motion for a temporary restraining order and preliminary injunction on November 3, 2021, ECF No. 23; opposed class certification on December 3, 2021, ECF No. 42; opposed a temporary restraining order on February 2, 2022, ECF No. 66; and opposed Plaintiffs' renewed motion for a preliminary injunction on February 4, 2022, ECF No. 74. Defendants also moved for an emergency stay of the Court's preliminary injunction order as to two Plaintiffs on February 28, 2022. ECF No. 118. Defendants incorporate by reference all arguments and declarations submitted in connection with those motions to this brief.

On February 28, 2022, at 3:43 p.m., Plaintiff's counsel notified Defendants' counsel that they would be seeking emergency relief later in the week as to some plaintiffs in the above captioned case. Plaintiff's counsel did not inform Defendants' counsel of the specific plaintiffs who would be seeking relief or the type of relief they would be seeking. On March 2, 2022, Plaintiffs filed an emergency motion for a temporary restraining order for Plaintiff U.S. Marine Corps Captain pending the Court's decision on their pending motion for a preliminary injunction. Mot. Plaintiff requested that the Court enter a temporary restraining order the following afternoon to prevent him from being disciplined for not following the order to get vaccinated. *Id.* at 2. On March 3, 2022, Defendants notified the Court that the Marine Corps had

agreed to extend the vaccination order for three weeks, to March 24, 2022, thus removing any purported need for emergency briefing. ECF No. 123.

## II. Plaintiff's Background

Plaintiff is a Captain on active duty in the U.S. Marine Corps. Ex. 1 (Decl. of Major Jason Weaver) ¶ 4. He is assigned as an Assistant Series Commander in a Recruit Training Battalion at Parris Island, South Carolina. *Id.* As an Assistant Series Commander, Plaintiff supervises drill instructors and hundreds of recruits during the thirteen-week training course all recruits undertake to become U.S. Marines. *Id.* ¶¶ 3–4. He is in direct daily contact with three platoons of recruits—approximately 200 individuals—as they undergo rigorous physical training and other military-related training, such as hand-to-hand combat skills, marksmanship, swimming survival skills, and land navigation, in addition to classroom lessons in leadership and the Marine Corps' core values. *Id.* Over the course of a year, Plaintiff supervises four training cycles, which means he is in direct contact with approximately 800 recruits. *Id.* ¶ 4.

## LEGAL STANDARDS

"The issuance of a temporary restraining order or preliminary injunctive relief is an extraordinary remedy to be granted only under exceptional circumstances." *Cheng Ke Chen v. Holder*, 783 F. Supp. 2d 1183, 1186 (N.D. Ala. 2011) (citing *Sampson v. Murray*, 415 U.S. 61 (1974)); *see also Winter v. NRDC, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right."). "A TRO or preliminary injunction is appropriate where the movant demonstrates that: (a) there is a substantial likelihood that he ultimately will prevail on the merits; (b) the

TRO or preliminary injunction is necessary to prevent irreparable injury; (c) the threatened injury outweighs the harm that the TRO or Preliminary injunction would cause to the non-movant; and (d) the TRO or preliminary injunction would not be averse to the public interest." *Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034–35 (11th Cir. 2001); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225 (11th Cir. 2005). "Because a [TRO or] preliminary injunction is an extraordinary and drastic remedy, its grant is the exception rather than the rule, and [the petitioner] must clearly carry the burden of persuasion." *Cheng Ke Chen*, 783 F. Supp. 2d at 1186 (quoting *United States v. Lambert*, 695 F.2d 536, 539 (11th Cir. 1983)) (brackets in original).

## ARGUMENT

### I. Plaintiff Is Unlikely to Succeed on the Merits of His Claims.

#### A. Plaintiff Failed to Exhaust His Administrative Remedies.

The Eleventh Circuit has made clear "time and again" that exhaustion of administrative remedies is "require[d]" in military cases. *Winck v. England*, 327 F.3d 1296, 1302 (11th Cir. 2003) (collecting cases), *abrogated on different grounds as recognized in Santiago-Lugo v. Warden*, 785 F.3d 467, 475 n.5 (11th Cir. 2015)).

Plaintiff has not exhausted his military remedies. Even though his religious exemption request has been denied, the Marine Corps has further administrative procedures that offer many opportunities for him to present his arguments and for the Marine Corps to respond. *See* Furness Decl. ¶¶ 13–23, ECF No. 23-19. Service members subject to discipline can challenge the lawfulness of the vaccination requirement in those proceedings. *See United States v. Kisala*, 64 M.J. 50 (C.A.A.F.

4

2006). Should Plaintiff face discharge for non-compliance with the order, he may present arguments before the discharge authority. *See* Furness Decl. ¶¶ 16–20, ECF No. 23-19. For officers like Plaintiff, this process takes several months, and he would receive a formal administrative hearing over which a panel of senior service members preside in order to make findings with respect to the bases for separation, and recommendations with respect to retention or separation and characterization of service. *Id.* ¶¶ 17–18. If Plaintiff is discharged, he can appeal to the Discharge Review Board and Board for Correction of Naval Records. *Id.* ¶ 22. For adverse action less than discharge, the Marine Corps has procedures that can provide relief. *Id.*

The nature of his claim does not excuse failure to exhaust. Even when a plaintiff "allege[s] the deprivation of a constitutional right" or "alleg[es] that the military has acted in violation of applicable statutes," he still must "exhaust[] available intraservice corrective measures" before bringing suit in federal district court. *Mindes v. Seaman*, 453 F.2d 197, 201 (5th Cir. 1971).

The exhaustion requirement is especially important in the military context because it serves the important purpose of allowing the military to apply its "specialized expertise" in the first instance. *Lawrence v. McCarthy*, 344 F.3d 467, 470 (5th Cir. 2003). If Plaintiff is dissatisfied with the military's decision, he may seek judicial review only after exhausting military appeals, allowing the military to make its decision and fully articulate its interests. *See Winck*, 327 F.3d at 1302–04.

As other courts have recently found in similar contexts, review of service members' claims without first allowing the military's internal processes to conclude

5

"would undermine the purpose of exhaustion and infringe on the military's expertise and interest in handling its own personnel matters." *Church v. Biden*, ---F. Supp. 3d---, 2021 WL 5179215, at *11 (D.D.C. Nov. 8, 2021) (citing, *inter alia*, *Orloff v. Willoughby*, 345 U.S. 83, 94 (1953)). In *Short v. Berger*, the court concluded that a Marine Corps officer whose appeal had been denied failed to exhaust administrative remedies because "he still must undergo separation proceedings before any permanent adverse consequences are imposed." Order, *Short v. Berger*, No. 2:22-cv-1151 (C.D. Cal. Mar. 3, 2022), ECF No. 25 at 5.[1] Moreover, the officer would have the opportunity to submit a "written rebuttal" during separation proceedings, and four different individuals would consider his separation, "any one of which could decide to close the process upon review of Plaintiff's written submissions." *Id.* (citing *Diraffael v. Cal. Mil. Dep't*, 2011 WL 13274364, at *3 (C.D. Cal. Mar. 21, 2011)). The court rejected the plaintiff's argument that the administrative remedies would be futile, finding that there is "no evidence, other than argumentative conjecture, that separation proceedings are always decided against the appealing servicemember." *Id.* at 5–6. The same is true here—Plaintiff has presented no evidence that separation proceedings would be futile so as to excuse the exhaustion requirement.[2] *See generally* Mot.

### B. Plaintiffs' RFRA and First Amendment Claims Are Unlikely To Succeed.

The Assistant Commandant of the Marine Corps conducted an "independent

---

[1] The *Short* Order denying the plaintiff's motion for preliminary relief is attached.
[2] Nor has Plaintiff shown that he will suffer irreparable harm to excuse administrative exhaustion. *See infra* Part II.

review" of Plaintiff's request for a religious exemption "on an individualized basis" and has reasonably assessed the Government's compelling interest in vaccinating Plaintiff and the lack of less restrictive alternatives, taking into consideration current military needs, and Plaintiff's unique circumstances. *See* Pl.'s Ex. 3 at 4, ECF No. 121-1; *see also* 42 U.S.C. § 2000bb–1(a).

### 1. The COVID-19 Vaccination Requirement Furthers the Government's Compelling Interest in Military Readiness.

"[T]he government certainly has a compelling interest in preventing the spread of COVID-19 amongst members of the Marine Corps." Order at 9, *Short*, No. 2:22-cv-1151 (citing *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020)). In addition, "when evaluating whether military needs justify a particular restriction on religiously motivated conduct, courts must give great deference to the professional judgment of military authorities concerning the relative importance of a particular military interest."[3] *Goldman v. Weinberger*, 475 U.S. 503, 507 (1986); Tr. of Order 36:4–6, *Dunn v. Austin*, No. 22-cv-0028 (E.D. Cal. Feb. 22, 2022), ECF No. 22[4] ("As courts have said over and over again . . . , the Court must give great deference to the professional judgment of military authorities concerning the relative importance of a particular military interest.").

---

[3] Congress intended for courts to continue to apply principles of military deference in RFRA cases. *See* S. REP. 103-111, 12, *reprinted in* 1993 U.S.C.C.A.N. 1892, 1901 ("The courts have always recognized the compelling nature of the military's interest in [good order, discipline, and security] in the regulations of our armed services. Likewise, the courts have always extended to military authorities significant deference in effectuating these interests. The committee intends and expects that such deference will continue under this bill.").
[4] The *Dunn* transcript reflecting the Court's order denying the plaintiff's motion for a preliminary relief is attached.

Upon review of Plaintiff's religious exemption request package, the appeal authority, the Assistant Commandant of the Marine Corps, determined that Plaintiff's vaccination is in furtherance of the government's compelling interests in "military readiness and in the health and safety of the force." Pl.'s Ex. 3 at 2, ECF No. 121-1. The Assistant Commandant further found that "[s]ervice members who are fully vaccinated have a significantly smaller risk of hospitalization, severe disease, and death" and that "[t]he Marine Corps has seen increasingly convincing data that service members who remain unvaccinated are more likely to experience a wide range of new, returning, or ongoing health problems known as 'long COVID' after being infected with COVID-19 as opposed to those who are fully vaccinated." *Id.* at 2–3. The Assistant Commandant noted that personnel who have fallen ill from COVID-19 have "undermine[d] a unit's effective functioning and negatively impact[ed] their unit's ability to accomplish the mission." *Id.* at 3. Accordingly, "personnel who are unvaccinated do not just put themselves at risk, they also risk the health and medical readiness of other persons within their unit, which in turn decreases the military readiness of the unit and the Marine Corps as a whole." *Id.*

The Assistant Commandant took Plaintiff's assignment as an Assistant Series Commander into account, finding that as a "series commander responsible for supervising drill instructors" and recruits, Plaintiff is "in close proximity to drill instructors and recruits on a daily basis." *Id.* Vaccination is "a vital component of individual and unit medical readiness" in "recruit training," as "Marines are required to be in close proximity to each other," which "increase[s] their exposure and

8

susceptibility to illness." Jeppe Decl. ¶ 15, ECF No. 42-3. Indeed, Plaintiff "is in direct daily contact with three platoons of recruits, roughly two hundred individuals, undergoing the rigorous physical training, academics, marksmanship, land navigation, and many other military-related training events." Ex. 1 ¶ 4. Over the course of a year, Plaintiff is responsible for—and is in close proximity on a daily basis with—approximately eight hundred recruits over four training cycles. *Id.* Assistant Series Commanders like Plaintiff "are required to get within close proximity of recruits during training" (i.e., "within one arm's distance or less") to conduct "daily hygiene inspections in the morning and evening," as well as inspections of recruits' uniforms and weapons handling abilities. *Id.* Assistant Series Commanders also supervise recruits and drill instructors during mealtimes in crowded chow halls, during physical training activities, such as martial arts, marksmanship, and use of a gas mask in a gas chamber. *Id.* In addition, Assistant Series Commanders routinely conduct in-person interviews with recruits at various points during the grueling thirteen-week training course to ensure recruits' basic needs are met and that there is no misconduct by their drill instructors. *Id.* Because certain recruits arrive at Parris Island unvaccinated (and are then required to get vaccinated during the first week of training), they are at an increased risk of exposure to the coronavirus, missing training, and delay in graduation and it is thus even more important for those around them, such as Plaintiff, to be vaccinated. *Id.* ¶ 7.

As the Assistant Commandant found, in "field training," like the recruit training Plaintiff supervises, "all personnel must be able to perform their individually assigned

9

duties" to ensure military readiness. Pl.'s Ex. 3 at 3, ECF No. 121-1. The purpose of the Recruit Depot at Parris Island is to turn recruits into Marines and ensure they are ready to join operating units. Ex. 1 ¶ 6. "An outbreak of COVID-19 amongst recruits and drill instructors could jeopardize the mission of Marine Corps Recruit Depot Parris Island to 'Make Marines,' as even a brief disruption in the flow of new Marines to operating forces would cause significant ripple effects on mission-ready forces." *Id.* Because "Marine units around the country depend on new Marines graduating on time and joining their units shortly thereafter," "[d]elays in graduation result in delays in Marines joining operating units, which results in units operating at less than full capacity, thereby degrading the ability of the Marine Corps to provide for the security of the United States." *Id.*

Finally, the Assistant Commandant found that vaccination was necessary because, even though Plaintiff is currently not in a deploying command, he is a Marine and "must be world-wide deployable." Pl.'s Ex. 3 at 3, ECF No. 121-1. Even Marines in non-deployable billets "could be called upon to deploy on short-notice in support of a myriad of operations around the world, all of which would require him to be fully vaccinated." Ex. 1 ¶ 8. Vaccination is necessary for deployment to "protect against disease," and "to conform with international health regulations incident to foreign travel or unit deployment." Jeppe Decl. ¶ 15, ECF No. 42-3.

Plaintiff does not address any of the Assistant Commandant's findings and instead argues only that "neither COVID-19, nor USMC Captain's or any other Marine's vaccination status, has prevented the performance of any mission assigned

10

to USMC Captain or any unit of which he has been a part." Mot. 5. While the military was able to continue to function without a vaccination requirement, the record reflects that it is not the case that it did so without interruption, as Plaintiff claims. *See e.g.*, Stanley Decl. ¶¶ 3–19; *see also Church*, 2021 WL 5179215, at *18 (rejecting a similar argument); Order at 13 n.17, *Short*, No. 2:22-cv-1151 ("The notion that the military has not been significantly impacted is also belied by the nearly *400,000* infections and 93 deaths it has incurred."). "And merely because the military has found ways to perform its duties despite the risks of COVID-19 does not mean it must endure these risks indefinitely when there are effective means of mitigating them." Order at 13, *Short*, No. 2:22-cv-1151. Nor should the military have to wait for a communicable disease to "prevent[] the performance of any mission" assigned to a particular service member, Mot. 5, before it takes action to minimize the risk of such an occurrence, *see* Order at 13, *Short*, No. 2:22-cv-1151 ("Like many millions of other essential workers, the military has heroically and with great ingenuity found ways to persevere during an unprecedented deadly pandemic. But that does not mean that the military is not entitled to use the most effective means available to end its crisis footing and return to a semblance of normalcy."); Tr. of Order 37:4–7, *Dunn*, No. 22-cv-0028 ("[I]t does come down . . . to what level of risk is appropriate. If the military can eliminate almost all risk through this policy, then there is a compelling governmental interest.").

    2. **Vaccination is the Least Restrictive Means of Furthering the Government's Compelling Interest in Military Readiness.**

As other courts have found, in non-military settings, vaccination is the least

restrictive means in fully accomplishing the government's interest in preventing the spread of infectious diseases in the workforce. *See, e.g.*, *Does 1–6 v. Mills*, 2021 WL 4783626, at *14 (D. Me. Oct. 13, 2021), *aff'd*, 16 F.4th 20 (1st Cir. 2021); *see also Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 733 (2014) ("Other coverage requirements, such as immunizations, may be supported by different interests (for example, the need to combat the spread of infectious diseases) and may involve different arguments about the least restrictive means of providing them."). This reasoning has even greater force in the military setting, where health of service members is key to military readiness.

After careful consideration of Plaintiff's request for a religious exemption and his appeal, the Assistant Commandant of the Marine Corps concluded that there are no lesser restrictive means than vaccination to further the military's compelling interests in readiness and ensuring the health and safety of service members. The Assistant Commandant found that Plaintiff could not perform his "critical role" of supervising drill instructors and recruits remotely, nor could he adequately social distance because he is in "close proximity to drill instructors and recruits on a daily basis." Pl.'s Ex. 3 at 3, ECF No. 121-1. The Assistant Commandant likewise found that mitigation measures such as "masking, social distancing, hygiene, teleworking, and other similar measures, individually or in combination," are "not as effective as vaccination" and "are often incompatible with the demands of military life, where Marines . . . must live, work, realistically train, and, if necessary, fight in close quarters." *Id.* This is especially true for the "recruits and drill instructors" who Plaintiff supervises, as they "eat, sleep, train, and hygiene in a group setting where

12

traditional mitigation measures are difficult to enforce." *Id.*; *see also* Order at 10, *Short*, No. 2:22-cv-1151 (It is "reasonable to conclude—and certainly not the Court's role to micromanage—that some servicemembers, including Plaintiff, need to be able to work in close quarters with others and to deploy to environments where social distancing and surveillance testing are not possible."). And "[d]ue to the nature of some of the[] [recruits' training] events, such as swim qualification, martial arts, or the gas chamber, COVID-19 mitigation measures such as social distancing and mask wearing, are not available." Ex. 1 ¶ 4. Plaintiff even admits that he has worn masks only in the chow halls and that he has "attempted to maintain social distancing as much as possible." Pl.'s Ex. 1 ¶ 7, ECF No. 121-1. Plaintiff provides no argument rebutting the Assistant Commandant's findings. *See generally* Mot.

In sum, the military's vaccine policy is narrowly tailored to serve compelling military interests. The military—not this Court—is best situated to assess whether a specific unvaccinated individual puts the military mission at risk, or whether feasible, less restrictive alternatives are available. *See Orloff*, 345 U.S. at 94; Order at 10, *Short*, No. 2:22-cv-1151 (deferring to the military's "judgment that only vaccination will allow Plaintiff to perform his essential duties during the pandemic with an acceptable level of risk to the safety and effectiveness of both himself and his unit"). The Marine Corps has considered whether there are any lesser restrictive means of achieving its interest in military readiness and concluded that there are none. RFRA does not compel the military to adopt a measure that is inferior in the military context to requiring the use of safe and effective vaccines. Therefore, Plaintiff has not shown a

likelihood of success on his RFRA claims to warrant the extraordinary relief he seeks.

## II.   Plaintiff Does Not Face Irreparable Harm.

Plaintiff spends the majority of his brief arguing that that he faces irreparable harm from an order to get vaccinated or face adverse action.  *See generally* Mot.  He argues, for example, that if he does not obey the order to get vaccinated, he will suffer "life-altering discipline," *id.* at 2, and faces an "irreversible vaccinate-or-separate choice," *id.* at 4.  But "[m]ilitary administrative and disciplinary actions, including separation, are not . . . irreparable injuries."  Tr. of Order 45:25–46:2, *Dunn*, No. 22-cv-0028.  "[H]arms such as lost rank, duties, benefits, and pay are not irreparable because 'these harms are redressable as monetary damages and therefore insufficient to obtain injunctive relief.'"  Order at 13, *Short*, No. 2:22-cv-1151 (quoting *Air Force Officer v. Austin*, 2022 WL 468799, at *12 (M.D. Ga. Feb. 15, 2022)).

"The harms stemming from separation are also not irreparable for the additional reason that Plaintiff has an opportunity to challenge separation through the administrative process even before seeking relief in court."  *Id.* at 13–14.  Indeed, although Plaintiff alleges he is on the cusp of being discharged, that is not so.  Instead, the process to discharge a Marine Corps officer has multiple steps, goes through multiple levels of review, and can take months.  *See* Furness Decl. ¶¶ 13–21, ECF No. 23-19.  In other words, initiation of separation proceedings today does not mean that the service member will be separated tomorrow.  And if Plaintiff does proceed to a Board of Inquiry, the Board has a range of options available.  *See generally* Ex. 2 (Secretary of the Navy Instruction (SECNAVINST) 1920.6D) at encl. (11) ¶ 13.  It

14

could find that Plaintiff had not committed the misconduct alleged, *see id.* ¶ 13a, or if it finds misconduct, the Board could nevertheless recommend his retention, which would be binding on the Secretary of the Navy, *see* 10 U.S.C. § 1182(d)(1); Ex. 2 at encl. (11), ¶ 13a(2)–(3); *id.* ¶ 17b.  And if Plaintiff is discharged, he can seek review from a Discharge Review Board or the Board for Correction of Naval Records, which may result in him being reinstated into the Marine Corps.  *Id.* ¶ 22.  These remedies make plain that Plaintiff does not face irreparable harm by the initiation of separation proceedings.

Other disciplinary measures the Marine Corps may take are likewise not irreparable.  If Plaintiff does not follow the order to get vaccinated, he will be placed on the Officer Disciplinary Notebook and a report of misconduct will be initiated.  Ex. 1 ¶ 9.  Placement on the Officer Disciplinary Notebook, "a database used to track officer misconduct and substandard performance in the Marine Corps," is not itself a disciplinary measure, and such information is not included in an officer's personnel file.  *See* Ex. 3 (Marine Corps Order 5800.16, Vol. 15) ¶ 0.10401.  A report of misconduct is generated when the officer's commanding general determines that the officer committed misconduct but declines to take disciplinary action against the officer.  *See id.* ¶¶ 010502.A, 010603, 010604.  After the report is signed, the officer has an opportunity to provide a rebuttal.  *Id.* ¶ 010603.J.  Then the report and the officer's rebuttal is forwarded to a senior officer in the Marine Corps (either the Deputy Commandant for Manpower and Reserve Affairs or a three-star general) via the officer's chain of command to determine whether to process the officer for separation.

15

*Id.* ¶ 010603. If the senior officer decides to process the officer for separation, that officer is entitled to additional proceedings which can take months. *See infra* Part I.A; Furness Decl. ¶¶ 16–20, ECF No. 23-19.

While entry on the Officer Disciplinary Notebook holds in abeyance all pending personnel actions (*e.g.*, promotion, separation, or permanent change of station orders) for the officer, such "Personnel/Administrative Hold" carries with it no punitive stigma but, rather, is implemented to maintain the status quo until matters are resolved by the cognizant commander. *Id.* ¶ 011101. Necessarily, then, entry on the Officer Disciplinary Notebook does not constitute irreparable harm. Likewise, even a final, approved report of misconduct, if ultimately directed by the Deputy Commandant for Manpower and Reserve Affairs to be placed in the officer's official military personnel file, is not an irreparable harm, as it may be removed, upon petition, by the Board for Correction of Naval Records or by court order. And separation proceedings, if a senior officer decides to initiate them, may not result in separation and, even if an officer is separated, the officer can be reinstated into service. In sum, there is no basis for emergency injunctive relief where Plaintiff's alleged injuries are fully reparable.

Plaintiff also argues that he will suffer irreparable harm by the loss of his constitutional and statutory rights. Mot. 7. But, as shown above, Plaintiff addressed the merits in only a cursory fashion and has not established a likelihood of success on the merits on any of his claims. Thus, no presumption of irreparable harm is warranted. *See* Order at 14, *Short*, No. 2:22-cv-01151 ("[B]ecause this Court has found that Plaintiff failed to demonstrate a sufficient likelihood of success on the merits of

his religious freedom claims, there is no presumption of irreparable harm."); Tr. of Order 45:16–18, *Dunn*, No. 22-cv-0028 ("[I]n a case where plaintiff has failed to demonstrate a sufficient likelihood of success on the merits, then a presumption wouldn't apply.").

### III. The Public Interest Weighs Against the Entry of a Temporary Restraining Order.

Plaintiff entirely failed to address the public interest factor, which alone warrants denial of his motion. *See ACLU of Fla., Inc. v. Miami-Dade Cty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009) ("Failure to show any of the four factors is fatal[.]"); Local Rule 6.01(b) ("The legal memorandum *must* establish . . . the nature and extent of the public interest affected.") (emphasis added).

In any event, the public has an exceptionally strong interest in national defense, *see Winter*, 555 U.S. at 7, and "the military—and the public generally—undoubtedly have a strong interest in maintaining the combat readiness and health of the force, especially in these uncertain times," Order at 14, *Short*, No. 2:22-cv-01151 (citing *Church*, 2021 WL 5179215, at *18; *see also* Tr. of Order 47:14–16, *Dunn*, No. 22-cv-0028 ("Courts should be and this court in particular is reluctant to enjoin the military when military readiness is at stake."). As described in detail in numerous declarations previously filed by the Government, an injunction that allows Plaintiff to serve in a military setting without being vaccinated against COVID-19 would threaten harm to Plaintiff and the other service members serving alongside him. *See, e.g.*, Jeppe Decl. ¶¶ 15–16, 19, ECF No. 42-3; Lescher Decl. ¶¶ 2, 11, 17, ECF No. 66-4; Stanley Decl.

17

¶ 8, ECF No. 23-19; Second Stanley Decl. ¶¶ 3–20, ECF No. 66-6; Rans Decl. ¶¶ 5–39, ECF No. 66-5; Poel Decl. ¶¶ 6, 10–36, 38, ECF No. 66-7. This is especially true for Plaintiff, as he is in close contact each day with hundreds of recruits and drill instructors who cannot always practice COVID-19 mitigation measures such as masking and social distancing due to the intense nature of their physical training and the requirements to live and eat in communal, close-quarter settings. *See* Ex. 1 ¶ 4; Jeppe Decl. ¶¶ 15, 18, ECF No. 42-3 (noting the importance of vaccination during "recruit training" when "Marines are required to be in close proximity to each other"); *see also Garland v. N.Y.C. Fire Dep't*, 2021 WL 5771687, at *9 (E.D.N.Y. Dec. 6, 2021) (noting the city's "significant interest" in preventing the spread of COVID-19 among firefighters who work in "close proximity" with each other "while on duty [and] in their fire stations").

A temporary restraining order would also undercut the maintenance of military good order and discipline. Lescher Decl. ¶ 16, ECF No. 66-4; Furness Decl. ¶ 23, ECF No. 23-19; Jurney Decl. ¶ 14, ECF No. 118-7; Ex. 1 ¶ 7; *see also Miller v. United States*, 42 F.3d 297, 303 (5th Cir. 1995) (stating that the concern for preserving military discipline is "the most important consideration in any single case" (quoting *Scales v. United States*, 685 F.2d 970, 973 (5th Cir. 1982)). No military can successfully function where service members feel free to define the terms of their own military service, including which orders they will choose to follow. *See Chappell v. Wallace*, 462 U.S. 296, 300 (1983) ("The inescapable demands of military discipline and obedience to orders cannot be taught on battlefields; the habit of immediate compliance with

18

military procedures and orders must be virtually reflex with no time for debate or reflection."). The temporary restraining order Plaintiff demands here would encourage other members to attempt to bypass the military's processes and ask courts to enter similar injunctive relief, which "in the aggregate present the possibility of substantial disruption and diversion of military resources" and is contrary to the public interest. *Parrish v. Brownlee*, 335 F. Supp. 2d 661, 669 (E.D.N.C. 2004); *see Chappell*, 462 U.S. at 305 (courts are "ill-equipped to determine the impact upon discipline that any particular intrusion upon military authority might have"). Proceedings in this Court—where Plaintiffs and non-plaintiffs alike have filed numerous emergency motions for temporary restraining orders before the military even begins its months-long separation proceedings—make clear that this is no idle concern.

### IV. Plaintiff's Failure to Follow the Local Rules Warrants Denial of His Motion.

Plaintiff also fails to meet the procedural requirements necessary to obtain the extraordinary relief of a temporary restraining order. Local Rule 6.01 requires a plaintiff to include "a precise and verified description of the conduct . . . subject to restraint" and "a proposed order." "And Rule 65(d) requires a temporary restraining order to, among other things, 'describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required.'" *Art Headquarters, LLC v. Lemak*, No. 8:19-cv-2899-T-36JSS, 2019 U.S. Dist. LEXIS 205748, at *9 (M.D. Fla. Nov. 27, 2019) (quoting Fed. R. Civ. P. 65(d)(1)(C)).

19

Not only did Plaintiff fail to file a proposed order in violation of Local Rule 6.01, he also does not precisely describe the acts to be restrained. Plaintiff requests only that the Court "preserve the status quo ante." Mot. 1. Such a request is insufficient to issue a temporary restraining order under Federal Rule of Civil Procedure 65 and Local Rule 6.01. *See Art Headquarters*, 2019 U.S. Dist. LEXIS 205748, at *9. And to the extent Plaintiff's request to "preserve the status quo ante" is tantamount to requiring the Marine Corps to keep Plaintiff in a certain billet or performing certain duty assignments, the Court cannot and should not order such relief. *See, e.g.*, *Orloff*, 345 U.S. 83; *Speigner v. Alexander*, 248 F.3d 1292, 1298 (11th Cir. 2001); *Harkness v. Sec'y of Navy*, 858 F.3d 437, 443 (6th Cir. 2017).

## CONCLUSION

For all of these reasons, Plaintiff's motion for a temporary restraining order should be denied.

Dated: March 11, 2022                    Respectfully submitted,

BRIAN M. BOYNTON                         /s/ *Courtney D. Enlow*
Principal Deputy Assistant Attorney      ANDREW E. CARMICHAEL
General                                  AMY E. POWELL
                                         Senior Trial Counsel
ALEXANDER K. HAAS                        ZACHARY A. AVALLONE
Director, Federal Programs Branch        COURTNEY D. ENLOW
                                         CATHERINE YANG
ANTHONY J. COPPOLINO                     Trial Attorneys
Deputy Director                          United States Department of Justice
                                         Civil Division, Federal Programs Branch
                                         1100 L Street, N.W.
                                         Washington, DC 20005
                                         Tel: (202) 616-8467
                                         Email: courtney.d.enlow@usdoj.gov
                                         *Counsel for Defendants*