## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **NAVY SEAL # 1,** *et al.*, <br><br> Plaintiffs, <br><br> v. <br><br> **JOSEPH R. BIDEN, JR.**, in his official capacity as President of the United States, *et al.*, <br><br> Defendants. | Case No. 8:21-cv-02429-SDM-TGW |

## DEFENDANTS' OPPOSITION TO PROPOSED INTERVENOR'S SECOND EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER

### INTRODUCTION

While neither a party to this action nor a member of any certified class, First Lieutenant Thomas Macik has submitted several filings. He has moved for a temporary restraining order and filed an unauthorized reply and two supplemental declarations in support of it. Now, while that motion remains pending, he has filed yet another emergency motion requesting the same relief. Because courts do not entertain successive duplicative motions, Macik's second motion should be denied as procedurally improper.

Even if the Court were to reach the second motion, it should deny it for the reasons set forth in Defendants' response to Lieutenant Macik's first motion: He has not exhausted his administrative remedies and cannot establish a likelihood of success on the merits. The Marine Corps has a compelling interest in ensuring that Macik is vaccinated against COVID-19 given his particular assignment and circumstances, and there is no less-restrictive alternative. Indeed, though the Court has emphasized the

need for a "to-the-person" analysis in evaluating claims in this case, Macik's latest motion presents no individualized argument at all, instead merely relying on previously filed briefs that do not apply to him specifically.  In addition, Macik does not face imminent irreparable harm given the length of time a separation from service would take.  Finally, a temporary restraining order would not be in the public interest, a key factor ignored by Macik. For these reasons, Macik's motion should be denied.

## <u>BACKGROUND</u>

Much of the relevant background is set forth in Defendants' response to Lieutenant Macik's first motion for a temporary restraining order.  *See* ECF No. 97. After Defendants filed that response, Macik filed an unauthorized reply, ECF No. 98, and a supplemental declaration, ECF No. 126.  While Macik represented himself in connection with his first motion for a temporary restraining order, he filed a notice disclosing that all of his filings were prepared with the assistance of counsel.  ECF No. 99.

On March 8, 2022, Lieutenant Macik filed a second motion for a temporary restraining order, this time represented by Plaintiffs' counsel of record in this case. ECF No. 130.  In the motion, Plaintiffs' counsel indicate that they were previously unable to represent Macik because of other demands on their time, but they have now agreed to file a motion on his behalf.  *Id.* at 2. As they opposed Macik's first motion for a temporary restraining order, Defendants now oppose this one as well.

## LEGAL STANDARDS

"A preliminary injunction is an extraordinary remedy never awarded as of right." *Winter v. Nat'l Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). To justify this "drastic remedy," the movants must "clearly establish[] the burden of persuasion" on the following four elements: (1) the plaintiff has a substantial likelihood of success on the merits; (2) there is a substantial threat that the plaintiff will suffer irreparable injury absent an injunction; (3) the threatened injury to the plaintiff outweighs the damage an injunction would cause to the defendant; and (4) the injunction would not be adverse to the public interest. *Davidoff & CIE, S.A. v. PLD Int'l Corp.*, 263 F.3d 1297, 1300 (11th Cir. 2001) (citation omitted); *see Ga. Advoc. Off. v. Jackson*, 4 F.4th 1200, 1208 (11th Cir. 2021); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225-26 (11th Cir. 2005) (same standard for a temporary restraining order). "Failure to show any of the four factors is fatal[.]" *ACLU of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009).

Aside from these traditional standards for any preliminary injunction, an injunction against the military involves an additional set of considerations and significant hurdles. Judicial review of claims involving the "complex[,] subtle, and professional decisions as to the composition, training, equipping, and control of a military force," *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973), is highly constrained. *Rostker v. Goldberg*, 453 U.S. 57, 66 (1981) (Because of the "healthy deference to legislative and executive judgments in the area of military affairs," courts employ a relaxed scrutiny

in reviewing military policy.); *Aktepe v. United States,* 105 F.3d 1400, 1403 (11th Cir. 1997) ("[T]he political branches of government are accorded a particularly high degree of deference in the area of military affairs."); *see also Winck v. England*, 327 F.3d 1296, 1302–04 (11th Cir. 2003), *abrogated in part on other grounds by Santiago-Lugo v. Warden*, 785 F.3d 467, 471 (11th Cir. 2015). Such deference extends to constitutional claims and military decisions about the health and welfare of the troops. *E.g.*, *Solorio v. United States*, 483 U.S. 435, 448 (1987); *Mazares v. Dep't of Navy*, 302 F.3d 1382, 1385 (Fed. Cir. 2002).

Moreover, and especially pertinent here, the Supreme Court and multiple Circuits have confirmed that courts should not interfere with military assignment decisions, even when they involve a constitutional challenge. *See, e.g.*, *Orloff v. Willoughby*, 345 U.S. 83 (1953) (declining to review service member challenge to a military assignment decision that was allegedly discriminatory punishment for his invocation of the constitutional right against self-incrimination).

## **ARGUMENT**

### I.   **Lieutenant Macik's second motion for a temporary restraining order should be denied as duplicative of his previously filed, still-pending motion.**

Lieutenant Macik's second motion should be denied for the straightforward reason that it duplicates the still-pending motion for a temporary restraining order that he filed last month. ECF No. 94. Parties (much less nonparties like Macik) are generally not permitted to file repeat motions requesting the same relief. *See Stann v. First Liberty Ins. Corp.*, No. 6:18-cv-1499, 2022 WL 682759, at *2 (M.D. Fla. Mar. 8,

2022) (admonishing counsel for "attempting to relitigate pending issues"); *Roggio v. United States*, No. 11-22847, 2013 WL 11320225, at *8 (S.D. Fla. June 13, 2013) (concluding that a party "may not seek duplicative relief by repackaging the allegations in the form of two motions"). Yet Macik, within the span of a month, has filed two emergency motions, each demanding the Court's immediate attention, and each (presumably[1]) seeking the same relief. The Court should therefore deny the second motion as improperly duplicative.

Lieutenant Macik's second motion is particularly excessive because he has already, over the course of several weeks, submitted ample material related to his first motion. He filed the first motion for a temporary restraining order, including a declaration and eight exhibits, on February 14, 2022. ECF No. 94. The following day, he filed a supplemental declaration with another exhibit. ECF No. 96. After Defendants' filed their opposition—and without obtaining leave of Court as required by Local Civil Rule 3.01(d)—Macik filed an unauthorized reply. ECF No. 98. Then, on March 7, 2022, Macik filed yet another supplemental declaration with seven more exhibits. ECF No. 126. While this supplemental declaration is labelled as being in

---

[1] It is not exactly clear what relief Lieutenant Macik is seeking in his second motion for a temporary restraining order. He failed to comply with the requirement of Local Rule 6.01(a)(5) that a motion for a temporary restraining order include a proposed order. And nowhere in the motion itself does he describe in detail the relief he would like the Court to enter, which is necessary information for a temporary restraining order. *See* Fed. R. Civ. P. 65(d)(1)(C) (a temporary restraining order must "describe in reasonable detail . . . the act or acts restrained or required"). Instead, Macik merely vaguely asks the Court to "preserve the status quo ante." ECF No. 130 at 5. In the absence of any detail, Defendants assume that Macik's second motion for a temporary restraining order seeks the same relief as his first motion: an order (1) directing the Secretary of Defense to "rescind" the order that Macik be vaccinated against COVID-19, and (2) enjoining the Marine Corps from "diminishing or altering in any manner and for any reason the current status of" Macik. *See* ECF No. 94-1 at 3.

support of Macik's motion to intervene, it contains mostly factual allegations related to his claims of imminent harm.  Over the three-week course of these four filings, Macik has had more than enough opportunity to support his first motion for a temporary restraining order and should not be permitted to submit yet another filing in the form of a duplicative motion.

The second motion for a temporary restraining order is also unnecessary because it adds nothing new  to what the proposed intervenor has already reported to the Court.  The bulk of Macik's roughly seven-page motion is devoted to his assertion that he faces an imminent threat of irreparable harm in light of his receipt on March 3, 2022, of a Notification for Administrative Separation and a Report of Misconduct. ECF No. 130 at 2–4, 5–6.[2]  But Macik already submitted a supplemental declaration informing the Court of those developments on March 7, 2022.  ECF No. 126 at 3, ¶ 8. There has been no material change since that time that would justify a second motion for a temporary restraining order.  The second motion should therefore be denied.

## II.   The second motion for a temporary restraining order should be denied for the same reasons that the Court should deny the first motion.

In addition to being improperly duplicative, Lieutenant Macik's second motion for a temporary restraining order fails for the reasons that Defendants set forth in their opposition to his first motion for a temporary restraining order seeking the same relief, ECF No. 97.  Macik, though well aware of those arguments, fails to address them in

---

[2] Page numbers following an ECF number refer to the ECF-generated page numbers in the upper right corners of the pages.

his second motion.  Defendants incorporate those arguments by reference, which are also summarized and augmented below.

### A.    Lieutenant Macik cannot obtain relief because he is not a party.

As explained in Defendants' opposition to Lieutenant Macik's first motion for a temporary restraining order, Macik may not obtain emergency injunctive relief because he is not a party to this action. ECF No. 97 at 6–7.  While Macik has moved to intervene, the Court has not granted that motion; nor has the Court certified the proposed class of which Macik purports to be a part.  Lacking status as either a party or a class member, Macik may not obtain a temporary restraining order in this case.  *See id.* at 6 (citing *Piambino v. Bailey*, 757 F.2d 1112, 1137 n.62 (11th Cir. 1985) (stating that a nonparty could not seek an injunction)).

### B.    Lieutenant Macik is unlikely to succeed on the merits.

Also as detailed in Defendants' response to Lieutenant Macik's first motion for a temporary restraining order, even if he were a party to this case, he would not be entitled to an emergency order because he would be unlikely to prevail on the merits. ECF No. 97 at 8–16.  That is because he (1) failed to exhaust administrative remedies, *id.* at 9–10; (2) seeks an order with respect to nonjusticiable military assignment decisions, *id.* at 10–12; and (3) cannot disprove the military's showing that it has a compelling interest in vaccinating its service members—including him—and no less restrictive alternative, *id.* at 12–16.

Macik's second motion for a temporary restraining order presents no argument on the merits.  Instead, he simply incorporates by reference the arguments set forth in

Plaintiffs' briefs in support of their initial motion for a preliminary injunction (on which the Court deferred ruling, ECF No. 40 at 34–35) and their renewed motion for a preliminary injunction (which remains pending) as well as the Court's orders granting (and declining to stay) preliminary relief as to two specific Plaintiffs, known pseudonymously as Navy Commander and Lieutenant Colonel 2. ECF No. 130 at 4. But such unadorned reference to filings unrelated to Lieutenant Macik individually will not do.  The Court has made clear that Plaintiffs' claims under the Free Exercise Clause and the Religious Freedom Restoration Act require an "individualized 'to the person' analysis."  Prelim. Inj. & Order, ECF No. 111 at 39; *see also id* at 34 (stating that the government must make the necessary showing as to "a specific denial"). Lieutenant Macik may not obtain the extraordinary relief of a temporary restraining order without even attempting to make such an individualized argument.  Indeed, as shown in Defendants' response to Macik's first motion for a temporary restraining order, ECF No. 97 at 12–16, and in the declaration of Colonel Jeremy Beaven submitted with this opposition, in Macik's case, the United States Marine Corps has a compelling interest in requiring his vaccination and no less restrictive alternative. Macik also failed to exhaust administrative remedies.  *Id.* at 9–12.  Given these defects, Macik is unlikely to prevail.

1.   *Lieutenant Macik failed to exhaust administration remedies.*

Defendants have shown in their response to Lieutenant Macik's first motion that Macik has not exhausted administrative remedies because he may yet challenge the requirement that he be vaccinated through additional military procedures.  ECF

No. 97 at 9–10.  As other courts have recently found in similar contexts, review of service members' claims without first allowing the military's internal processes to conclude "would undermine the purpose of exhaustion and infringe on the military's expertise and interest in handling its own personnel matters." *Church v. Biden*, — F. Supp. 3d —, 2021 WL 5179215, at *11 (D.D.C. Nov. 8, 2021) (citing, *inter alia*, *Orloff*, 345 U.S. at 94).  In *Short v. Berger*, the court concluded that a Marine Corps officer whose appeal had been denied failed to exhaust administrative remedies because "he still must undergo separation proceedings before any permanent adverse consequences are imposed." Order at 5, *Short v. Berger*, No. 2:22-cv-1151 (C.D. Cal. Mar. 3, 2022).[3] The officer would have the opportunity to submit a "written rebuttal" during separation proceedings, and four different individuals would consider his separation, "any one of which could decide to close the process upon review of Plaintiff's written submissions." *Id.* (citing *Diraffael v. Cal. Mil. Dep't*, No. 10-07240, 2011 WL 13274364, at *3 (C.D. Cal. Mar. 21, 2011)).  The court rejected the plaintiff's argument that the administrative remedies would be futile, finding that there is "no evidence, other than argumentative conjecture, that separation proceedings are always decided against the appealing servicemember." *Id.* at 5–6.  The same is true here—Macik has presented no evidence that separation proceedings would be futile so as to excuse the exhaustion requirement.

---

[3] The *Short* order denying the plaintiff's motion for preliminary relief is filed on this Court's docket at ECF No. 132-5.

2.     *The Government has a compelling interest, and there is no less-restrictive alternative.*

The Assistant Commandant of the Marine Corps, General E. M. Smith, performed an "independent review" of Lieutenant Macik's request for a religious exemption "on an individualized basis" and reasonably assessed that the Government has a compelling interest in vaccinating Macik and no less-restrictive alternatives, accounting for military needs and Macik's unique circumstances.  ECF No. 94-8 at 4.  As such, the Marine Corps' order that Macik be vaccinated against COVID-19 violates neither the Free Exercise Clause nor the Religious Freedom Restoration Act.  *See* 42 U.S.C. § 2000bb–1(b).

1.     "[T]he government certainly has a compelling interest in preventing the spread of COVID-19 amongst members of the Marine Corps." Order at 9, *Short*, No. 2:22-cv-1151 (citing *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020)).  In addition, "when evaluating whether military needs justify a particular restriction on religiously motivated conduct, courts must give great deference to the professional judgment of military authorities concerning the relative importance of a particular military interest." *Goldman v. Weinberger*, 475 U.S. 503, 507 (1986); Tr. of Order 36:4–6, *Dunn v. Austin*, No. 22-cv-288 (E.D. Cal. Feb. 22, 2022) ("As courts have said over and over again . . . , the Court must give great deference to the professional judgment

of military authorities concerning the relative importance of a particular military interest.").[4]

Upon review of Macik's religious exemption request package, General Smith determined that Macik's vaccination against COVID-19 is in furtherance of the government's compelling interests in "military readiness and in the health and safety of the force." ECF No. 94-8 at 3. General Smith found that "the greatest risk of transmission [of COVID-19] . . . is from and among unvaccinated people." *Id.* at 3. He noted that personnel who have fallen ill from COVID-19 have "undermine[d] a unit's effective functioning and would negatively impact their unit's ability to accomplish the mission." *Id.* Accordingly, "personnel who are unvaccinated do not just put themselves at risk, they also risk the health and medical readiness of other persons within their unit, which in turn decreases the military readiness of the unit and the Marine Corps as a whole." *Id.*

General Smith accounted for Lieutenant Macik's particular circumstances, including the facts that he (1) is attached to a deployable unit and "must always be ready to deploy to austere environments at a moment's notice," (2) works indoors in close proximity to other service members and cannot perform his duties remotely, (3) lives in a military barracks, and (4) is stationed in a foreign country with limited American medical resources. ECF No. 94-8 at 4. Indeed, Macik is currently stationed in Okinawa, Japan and is temporarily serving as his squadron's adjutant. Ex. 1, Decl.

---

[4] The transcript of the *Dunn* court's order denying the plaintiff's motion for preliminary relief is filed at ECF No. 132-6.

of Jeremy Beaven ¶ 3 (Mar. 14, 2022) ("Beaven Decl."). As such, he works in a 15x25-foot office with five to six other Marines present. *Id.*

In May 2022, Macik is scheduled to return to his military occupational specialty serving as an Air Support Control Officer with Marine Air Support Squadron 2 ("MASS-2").[5]   Beaven Decl. ¶ 4.   Commonly referred to as the Marines' "911 operators," Air Support Control Officers are responsible for processing immediate requests for close air support and medical evacuations and procedurally controlling aircraft throughout the area of operations of the Marine Air-Ground Task Force. *Id.* Air Support Control Officers play a vital role in coordinating air support, including air operations against enemy targets. *Id.*

As an Air Support Control Officer, Lieutenant Macik will work in a 14x17-foot office at Marine Corps Air Station Futenma in Okinawa. *Id.* ¶ 5. During regular training events, he will be in even more confined spaces with others. When training or deployed, Air Support Control Officers normally work in a Direct Air Support Center, which might consist of a tent or building in which Macik could be in close proximity to 150 other individuals from a variety of military Services, government agencies, and nations. *Id.* If COVID-19 were to spread in a Direct Air Support Center, "it could prove catastrophic to combat effectiveness." *Id.* Without the Direct Air

---

[5] MASS-2 is the oldest and most decorated aviation command and control unit in the Marine Corps. Beaven Decl. ¶ 6. Over the past twenty years, it has sent multiple detachments to support operations in Iraq and Afghanistan and continues to deploy in support of exercises in the Indo-Pacific area. *Id.* It is the only air support squadron in the Marine Corps permanently stationed outside the continental United States. *Id.* It is part of the 1st Marine Aircraft Wing, which, with the Air Force's 18th Wing, is one of the military's two air wings closest to the Taiwan Strait, a region of particular strategic interest to the United States. *Id.*

Support Center, ground units engaged in combat would not be able to coordinate artillery or air support or direct casualty evacuations. *Id.* The Marine Corps would be less likely to accomplish its mission, and Marines would be more likely to die from otherwise treatable wounds. *Id.*

So long as Lieutenant Macik remains unvaccinated, he is more susceptible to the severe outcomes of COVID-19. Beaven Decl. ¶ 7. Should Macik become severely ill, he will be unable to perform his duties, which in turn could prove crippling to aviation combat effectiveness. *Id.* And if Macik were to become severely ill in a combat scenario and in need of evacuation, numerous combat assets would need to be diverted for the evacuation. *Id.* Indeed, throughout history, disease has crippled the combat power of military forces, and Marines have died attempting to evacuate wounded and sick Marines. *Id.* For these reasons, Macik's vaccination status impacts the combat readiness of his unit, and the Marine Corps has a compelling interest in ensuring that he is vaccinated against COVID-19. *Id.*

In addition, Lieutenant Macik's duty station in Okinawa, Japan presents additional risks due to his unvaccinated status. The Marine Corps is a guest in Okinawa and must be considerate of Japan's sensitivities. Beaven Decl. ¶ 8. The Government of Japan has expressed great concern about Marines contracting and spreading COVID-19 within its borders. *Id.* In order to maintain positive relations with Japan and maintain its strategic position, the Marine Corps must conduct itself in a manner that is respectful of these sovereign concerns. *Id.* In addition, the United States has limited medical facilities and personnel on the island of Okinawa and must

ensure that those resources are not overburdened due to preventable illnesses.  *Id.*

Finally, Lieutenant Macik's unvaccinated status means that he is not immediately worldwide deployable.  Beaven Decl. ¶ 12.  Nearly every nation has imposed some level of entry restrictions due to COVID-19, and these restrictions are commonly more stringent for unvaccinated individuals.  *Id.*  As just one example, the Philippines currently denies entry to unvaccinated travelers without exception for U.S. military personnel.  *Id.*  So if a humanitarian disaster were to strike the Philippines tomorrow (a common occurrence in this region) and the President directed Marines to deploy to assist (a common mission for aviation units), MASS-2 would be required to leave Lieutenant Macik behind in Okinawa, and their operational effectiveness would suffer as a result.  *Id.*  For this reason, the Marine Corps has a substantial interest in requiring Macik to be vaccinated.

2.     As other courts have found in non-military settings, vaccination is the least restrictive means to fully accomplish the government's interest in preventing the spread of infectious diseases in the workforce. *See, e.g.*, *Does 1–6 v. Mills*, — F. Supp. 3d —, 2021 WL 4783626, at *14 (D. Me. Oct. 13, 2021), *aff'd*, 16 F.4th 20 (1st Cir. 2021); *see also Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 733 (2014) ("Other coverage requirements, such as immunizations, may be supported by different interests (for example, the need to combat the spread of infectious diseases) and may involve different arguments about the least restrictive means of providing them."). This reasoning has even greater force in the military setting, where the health of service members is key to military readiness.

After considering Lieutenant Macik's request for a religious exemption, General Smith concluded that there are no lesser restrictive means than vaccination to further the Marine Corps' compelling interests in readiness and the health and safety of its Marines and Sailors. General Smith found that Macik is unable to perform his duties remotely and works indoors in close proximity to others, where social distancing is not feasible. ECF No. 94-8 at 4. He likewise found that mitigation measures such as "masking, social distancing, hygiene, teleworking, and other similar measures, individually or in combination," are "not as effective as vaccination" and "are often incompatible with the demands of military life, where Marines . . . must live, work, realistically train, and, if necessary, fight in close quarters." *Id.*; *see also* Order at 10, *Short*, No. 2:22-cv-1151 (It is "reasonable to conclude—and certainly not the Court's role to micromanage—that some servicemembers, including Plaintiff, need to be able to work in close quarters with others and to deploy to environments where social distancing and surveillance testing are not possible."). Further, were Macik deployed, he would operate in a Direct Air Support Center, where social distancing is not possible and COVID-19 testing unavailable. Beaven Decl. ¶ 5.

\*　　\*　　\*

In sum, the military's vaccine policy is narrowly tailored to serve compelling military interests. The military—not this Court—is best situated to assess whether a specific unvaccinated individual puts the military mission at risk, or whether feasible, less restrictive alternatives are available. *See Orloff*, 345 U.S. at 94; Order at 10, *Short*, No. 2:22-cv-1151 (deferring to the military's "judgment that only vaccination will

15

allow Plaintiff to perform his essential duties during the pandemic with an acceptable level of risk to the safety and effectiveness of both himself and his unit"). The Marine Corps has considered whether there are any lesser restrictive means of achieving its interest in military readiness and concluded that there are none. The Religious Freedom Restoration Act does not compel the military to adopt a measure that is inferior in the military context to requiring the use of safe and effective vaccines. Therefore, Macik has not shown a likelihood of success warranting the extraordinary relief he seeks.

### C.  Lieutenant Macik does not face irreparable harm.

Defendants have also shown that Lieutenant Macik does not face irreparable harm. ECF No. 97 16–18.  He is not subject to forcible vaccination, and any separation procedures would take months to complete.  *Id.* at 17.  For example, if Macik submitted a statement disputing his recommended separation and report of misconduct, then his immediate commanding general would review anything that Macik submitted and then make a determination whether to recommend separation. Beaven Decl. ¶ 10.  If he recommends separation, that recommendation will be routed to the Commanding General, III Marine Expeditionary Force.  *Id.*  If that commanding general, after reviewing that material, endorses the recommended separation, the documentation would then be routed to the Deputy Commandant for Manpower and Reserve Affairs, where it will be screened by a team of judge advocates for procedural completeness and legality before being presented to the Deputy Commandant.  *Id.*  The Deputy Commandant would then review the documentation

and decide whether to retain Macik. If the Deputy Commandant recommends separation, the documentation is routed to yet another authority—the Assistant Secretary of the Navy for Manpower and Reserve Affairs—who would have discretion to separate or retain Macik. *Id.* This process is measured in months. *Id.*

Further, on March 8, 2022, Lieutenant Macik submitted an "Article 138" complaint, which is an additional administrative means of requesting redress. Beaven Decl. ¶ 11. His immediate commanding general has 90 days to respond to the complaint and, as of March 14, 2022, had not yet reviewed it. *Id.* After the commanding general reviews the complaint and issues any authorized redress, the general will forward it to the Marine Corps' Judge Advocate Division for review. *Id.* If the Judge Advocate Division determines that additional redress is warranted, it will forward the report to the Assistant Secretary of the Navy for Manpower and Reserve Affairs. *Id.* For Macik to receive the particular redress he seeks, it would have to come from the Secretary of the Navy. *Id.* Given these available procedures, Macik is not facing irreparable injury warranting a temporary restraining order.

Finally, to the extent Macik's request to "preserve the status quo ante" would require the Navy to keep him in a certain billet or performing certain duty assignments, the Court cannot and should not order such relief. *See, e.g.*, *Orloff*, 345 U.S. at 94; *Speigner v. Alexander*, 248 F.3d 1292, 1298 (11th Cir. 2001); *Harkness v. Sec'y of Navy*, 858 F.3d 437, 443 (6th Cir. 2017); *see also* ECF No. 97 at 10–12 (showing that the Court cannot make military assignment decisions through injunctive relief).

### D.    Emergency relief is not in the public interest.

The public interest also weighs against a temporary restraining order. Lieutenant Macik's failure to even address this factor warrants the denial of his motion. *See ACLU of Fla.,* 557 F.3d 1177, 1198 (11th Cir. 2009) ("Failure to show any of the four factors is fatal[.]"); Local Rule 6.01(b) ("The legal memorandum *must* establish . . . the nature and extent of the public interest affected.") (emphasis added).

The public has an exceptionally strong interest in national defense, *see Winter*, 555 U.S. at 7, and "the military—and the public generally—undoubtedly have a strong interest in maintaining the combat readiness and health of the force, especially in these uncertain times," Order at 14, *Short*, No. 2:22-cv-01151 (citing *Church*, 2021 WL 5179215, at *18; *see also* Tr. of Order 47:14–16, *Dunn*, No. 22-cv-0028 ("Courts should be and this court in particular is reluctant to enjoin the military when military readiness is at stake."). As described in detail in numerous declarations previously filed by the Government in this action, an injunction that allows a service member to serve in a military setting without being vaccinated against COVID-19 would threaten harm to the service member and others serving alongside him. *See, e.g.,* Decl. of Adam Lyle Jeppe ¶¶ 15–16, 19, ECF No. 42-3; Decl. of William K. Lescher ("Lescher Decl.") ¶¶ 2, 11, 17, ECF No. 66-4; Decl. of Major Scott Stanley ¶ 8, ECF No. 23-19; 2d Decl. of Major Scott Stanley ¶¶ 3–20, ECF No. 66-6; Decl. of Colonel Tonya Rans ¶¶ 5–39, ECF No. 66-5; Decl. of Colonel James R. Poel ¶¶ 6, 10–36, 38, ECF No. 66-7. This is especially true for Lieutenant Macik, as he works indoors and in close proximity to others, Beaven Decl. ¶¶ 3, 5; *see also Garland v. N.Y.C. Fire Dep't,* — F. Supp. 3d —,

2021 WL 5771687, at *9 (E.D.N.Y. Dec. 6, 2021) (noting the city's "significant interest" in preventing the spread of COVID-19 among firefighters who work in "close proximity" with each other "while on duty [and] in their fire stations"). The Court should defer to the military's judgment on matters of maintaining a combat-ready force and not enter an injunction that would undermine that important public interest.

A temporary restraining order would also undercut the maintenance of military good order and discipline. Lescher Decl. ¶ 16, ECF No. 66-4; Decl. of David J. Furness ¶ 23, ECF No. 23-19; Decl. of William M. Jurney ¶ 14, ECF No. 118-7; Decl. of Jason M. Weaver ¶ 7, ECF No. 132-2; *see also Miller v. United States*, 42 F.3d 297, 303 (5th Cir. 1995) (stating that the concern for preserving military discipline is "the most important consideration in any single case" (quoting *Scales v. United States*, 685 F.2d 970, 973 (5th Cir. 1982)). No military can successfully function where service members feel free to define the terms of their own military service, including which orders they will choose to follow. *See Chappell v. Wallace*, 462 U.S. 296, 300 (1983) ("The inescapable demands of military discipline and obedience to orders cannot be taught on battlefields; the habit of immediate compliance with military procedures and orders must be virtually reflex with no time for debate or reflection."). The temporary restraining order Macik demands here would encourage other members to attempt to bypass the military's processes and ask courts to enter similar injunctive relief, which "in the aggregate present the possibility of substantial disruption and diversion of military resources" and is contrary to the public interest. *Parrish v. Brownlee*, 335 F. Supp. 2d 661, 669 (E.D.N.C. 2004) (citation omitted); *see Chappell*, 462 U.S. at 305

(courts are "ill-equipped to determine the impact upon discipline that any particular intrusion upon military authority might have") (quoting E. Warren, *The Bill of Rights and the Military*, 37 N.Y.U. L. Rev. 181, 187 (1962)).  Proceedings in this Court—where Plaintiffs and non-plaintiffs alike have filed numerous emergency motions for temporary restraining orders before the military even begins its months-long separation proceedings—make clear that this is no idle concern.

## CONCLUSION

Lieutenant Macik's second motion for a temporary restraining order should be denied.

Dated:  March 22, 2022

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director

*/s/ Amy E. Powell*
ANDREW E. CARMICHAEL
AMY E. POWELL
Senior Trial Counsel
ZACHARY A. AVALLONE
COURTNEY D. ENLOW
CATHERINE YANG
JOHNNY H. WALKER
MICHAEL P. CLENDENEN
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (919) 856-4013
Email: amy.powell@usdoj.gov
*Counsel for Defendants*