# Exhibit 1

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **NAVY SEAL #1,** *et al.*<br><br>          Plaintiffs,<br><br>v.<br><br>**JOSEPH R. BIDEN**, in his official capacity as President of the United States, *et al.*<br><br>          Defendants. | Case No. 8:21-cv-02429-SDM-TGW |

### DECLARATION OF JEREMY W. BEAVEN

### [with regard to Thomas Macik]

I, Jeremy W. Beaven, hereby state and declare as follows:

  1. I am a Colonel in the United States Marine Corps (USMC), currently assigned as Chief of Staff for the 1st Marine Aircraft Wing (MAW). I make this declaration in my official capacity, based upon my personal knowledge and upon information that has been provided to me in the course of my official duties.

  2. I have been assigned to my current position since June 19, 2021. Prior to my current assignment, I served as a Legislative Affairs Officer for the United States Marine Corps in Washington, D.C. As part of my current duties, I assist the 1st MAW Commanding General with personnel management, strategic planning, and operational readiness across the 1st MAW.

  3. Thomas Macik is a First Lieutenant (1stLt) on active duty in the USMC, and currently assigned to Marine Air Support Squadron 2 (MASS-2), located in the Okinawa Prefecture in Japan. 1stLt Macik's military occupational specialty (MOS) is 7208, Air Support

1

Control Officer. However, he is temporarily serving in a "B billet", as the MASS-2 Adjutant. He has been serving as the MASS-2 Adjutant since May 1, 2021, and is scheduled to rotate back to his primary MOS on 1 May, 2022. As the squadron's Adjutant, 1stLt Macik works in a 15x25 foot office with 5-6 other Marines and is responsible for daily reports, correspondence, pay and entitlements, travel and other general administration. In Marine Corps squadrons, it is common for Lieutenants to temporarily serve in roles such as this.

    4.     In May, 1stLt Macik will transition back to working as an Air Support Officer in his MOS. Air Support Control Officers plan, direct, and coordinate air support missions in support of operations. They are commonly referred to as the Marine Corps' "911 operators." Air Support Control Officers are responsible for processing immediate requests for close air support and medical evacuations, integrating aviation with other supporting arms, and procedurally controlling aircraft throughout the Marine Air-Ground Task Force (MAGTF)[1] area of operations. Specifically, Air Support Control Officers play a vital role in directly coordinating direct air support, including air operations conducted against enemy installations, facilities, and personnel to directly assist the attainment of the MAGTF objectives by the destruction of enemy resources or the isolation of their military force.

    5.     On a day-to-day peacetime basis, MASS-2 Air Support Control Officers like 1stLt Macik work in a 14 X 17 foot office space at the MASS-2 building aboard Marine Corps Air Station Futenma, with approximately 10 other Marines. During regular training events, they often work in more confined spaces. In training and deployed environments, Air Support Control Officers normally work in the Direct Air Support Center (DASC) or one of its

---

[1] MAGTF is essentially Marine units engaged in combat operations on the ground.

2

subordinate elements, which is often co-located with the Combat Operations Center. A DASC (1stLt Macik's operational workspace) might consist of a large tent or, in the event of a large-scale operational contingency, a hardened building in which he could be in close proximity to up to 150 individuals from a variety of military services, agencies, and nations. Under the current Marine Corps warfighting concept of Expeditionary Advanced Base Operations, 1stLt Macik and others could be called upon to establish a DASC on a highly remote island under extremely austere conditions. Social distancing is not an effective mitigation measure in this type of environment (social distancing is virtually impossible in these workspaces because Air Support Control Officers are sitting close to one another in the DASC) and there is certainly no option for an Air Support Control Officer to telework during an operational contingency or deployment (or while training for one). Similarly, regular testing for COVID-19 is not a viable solution if 1stLt Macik is deployed. Marines regularly deploy to locations where there are no established medical facilities, let alone COVID testing laboratories. Many of the routines we are all familiar with when someone tests positive for COVID are impossible to implement in a deployed environment. If he contracts COVID in a deployed environment, it is unclear where or how he would isolate from others. In a deployed environment, an Air Support Control Officer would be living in shared quarters with other personnel, where access to things like running water for hygiene purposes are often limited. As such, complete physical and medical readiness are essential to ensure the safety of 1stLt Macik and his fellow Marines, and to ensure success of the mission. In the event that a communicable disease, such as COVID-19, spreads among a DASC, it could prove catastrophic to combat effectiveness. Without the DASC, ground units engaged in combat with the enemy would not be able to coordinate effective artillery or air support or direct casualty evacuations. This would substantially degrade the

3

MAGTF's ability to destroy or isolate the enemy and quickly evacuate casualties within the "golden hour"[2]. In short, without the DASC, a MAGTF is less likely to accomplish its mission and Marines are more likely to die from otherwise treatable wounds.

  6. MASS-2 is an aviation command and control unit that provides the DASC for III Marine Expeditionary Force. It is the oldest and most decorated aviation command and control unit in the Marine Corps. In the past twenty years, MASS-2 has sent multiple detachments to support operations in both Iraq and Afghanistan. MASS-2 continues to regularly deploy in support of exercises and theater security cooperation engagements throughout the Indo-Pacific area of responsibility. MASS-2 is the only air support squadron in the Marine Corps permanently stationed outside the continental United States. The same is also true of 1st MAW (of which MASS-2 is a part). Of note, 1st MAW and the Air Force's 18th Wing (also in Okinawa) are the United States' two air wings geographically closest to the Taiwan Strait, a region of particular strategic interest to the United States. MASS-2 must be ready at a moment's notice to deploy to austere environments where typical COVID-19 mitigation measures, such as social distancing, hygiene, and regular testing, are not feasible.

  7. If 1stLt Macik remains unvaccinated, he is more susceptible to severe outcomes from this disease. As such, his vaccination status has a direct impact on the combat readiness of this unit and the Marine Corps has a compelling interest in ensuring that he is vaccinated against COVID-19. If 1stLt Macik becomes severely ill, he will be unable to perform his duties. As noted previously, this could prove crippling to aviation combat effectiveness. Furthermore, DASCs may be established in highly remote locations

---

[2] The golden hour is the period of time immediately after a traumatic injury during which there is the highest likelihood that prompt medical and surgical treatment will prevent death.

with very difficult ingress and egress. In a combat scenario, if he needed to be medically evacuated from a remote base due to COVID-19, the ramifications would be immense. In such a scenario, numerous combat assets will need to be diverted to evacuate him. In a deployed environment, medical evacuation not only risks the mission (e.g., he is unable to coordinate air support because he is incapacitated by illness) but also creates additional risks to the personnel evacuating him. This is not a fanciful possibility. Throughout history, disease is routinely crippling to combat power and Marines often die attempting to evacuate wounded and sick Marines. It is difficult enough to manage the evacuation of wounded Marines in combat; every preventable illness further complicates an already complex and dangerous process.

8. MASS-2 is located in Okinawa, Japan. This creates additional challenges and risks not encountered by units located in the United States. United States Marines are guests in Okinawa and, as such, should be considerate to our host-nation's concerns and sensitivities. Having Marines contract and spread COVID-19 in Okinawa is of great concern for our host.[3] Accordingly, the Marine Corps must conduct itself in a manner that is respectful of our host in order to maintain positive relations with the Japanese people and Government. Furthermore, the United States has limited medical facilities and personnel on the island of Okinawa and every care must be taken to ensure that those medical facilities and personnel are not overburdened by preventable illnesses.

---

[3] "COVID Cluster at Okinawa U.S. Military Base Raises Concern" https://www.bloomberg.com/news/newsletters/2021-12-24/a-covid-cluster-at-a-u-s-military-base-in-okinawa-is-raising-concern (last accessed February 22, 2022); "Japan orders US military officials in Okinawa base to follow COVID rules amid Omicron fears" https://www.wionews.com/world/japan-orders-us-military-officials-in-okinawa-base-to-follow-covid-rules-amid-omicron-fears-439077 (last accessed February 22, 2022).

5

9.      On September 1, 2021, the Commandant of the Marine Corps released Marine Administrative Message 462/21, directing that all active duty Marines be fully vaccinated against COVID-19 no later than November 28, 2021. On September 16, 2021, 1stLt Macik submitted a religious accommodation request to the Deputy Commandant for Manpower and Reserve Affairs (DC M&RA). On October 18, 2021, DC M&RA denied 1stLt Macik's religious accommodation request and informed him of his right to appeal that decision to the Commandant of the Marine Corps.

10.     1stLt Macik submitted an appeal to the Commandant on November 3, 2021. On February 8, 2022, the Assistant Commandant of the Marine Corps denied 1stLt Macik's appeal. On February 9, 2022, 1stLt Macik's commanding officer ordered 1stLt Macik to receive the vaccine within seven calendar days. On March 2, 2022, the Commanding General, 1st Marine Aircraft Wing signed a "Report of Misconduct" and "Notification of Recommendation for Separation;" the latter document informed 1stLt Macik that he intended to recommend that 1stLt Macik be separated. These documents were served on 1stLt Macik the following day. By regulation, 1stLt Macik has 10 calendar days to submit a statement to the Commanding General, or he can decline to do so. As of today, 1stLt Macik has yet to submit a statement. After reviewing anything that 1stLt Macik submits, the Commanding General will then make a determination as to whether to still recommend separation. If he still recommends separation, the documentation would be routed to the Commanding General of III Marine Expeditionary Force. If the Commanding General does not recommend separation, then 1stLt Macik's Report of Misconduct will still be routed in the same manner, but will include a recommendation to the Secretary of the Navy that 1stLt Macik be retained. After the Commanding General of III Marine

6

Expeditionary Force reviews and endorses the documentation, the documentation is routed to the Deputy Commandant for Manpower and Reserve Affairs. Before presentation to DC M&RA, a team of judge advocates from Headquarters Marine Corps screens the package for procedural completeness and legality. The DC M&RA then reviews the documentation and decides to either retain the officer or recommend separation. If the DC M&RA decides to retain the Marine, he can close the case at his level.[4] If the DC M&RA recommends separation, the documentation is routed to the separation authority: the Assistant Secretary of the Navy for Manpower and Reserve Affairs. The separation authority has complete discretion to elect to retain him or separate him. If separated, the least favorable characterization of service is General (Under Honorable Conditions). The Secretary of the Navy can also award an Honorable characterization of service. While it is impossible to accurately predict how long this entire process will take for any officer case, it is measured in months, not days.

  11. On March 8, 2022, 1st MAW received an "Article 138 Complaint" that was submitted by 1stLt Macik. An Article 138 Complaint is an additional administrative means to request redress. The Commanding General of 1st MAW has not yet reviewed the complaint. By regulation, the Commanding General has 90 days to respond to this complaint. After the Commanding General reviews the complaint and issues whatever authorized redress he deems appropriate, he will forward a report on the matter to Judge Advocate Division (JAD) for review. If JAD determines that additional redress is required, they will forward the report to the Assistant Secretary of the Navy, Manpower and Reserve Affairs. The general basis of 1stLt Macik's complaint is that he believes an order for him to get

---

[4] The DC M&RA is the first officer in the routing chain with the authority to close out an officer misconduct case.

vaccinated is unlawful unless the vial is labeled "Comirnaty." Department of the Navy policy holds that "Comirnaty" and "Pfizer-BioNTech" are the same thing and thus, can be used interchangeably. Since this policy is issued by higher authority, any redress regarding those issues would likely have to come from the Secretary of the Navy. I cannot speculate as to whether the Secretary of the Navy or some other authority will grant 1stLt Macik relief through the Article 138 process.

     12.    1stLt Macik's unvaccinated status makes it impossible for him to be world-wide deployable at a moment's notice. Nearly all nations have imposed various levels of entry restrictions due to COVID-19. These restrictions rapidly change due to the fluctuating state of COVID-19; as such, it is not feasible to recount them all here. However, nations commonly impose more severe restrictions on entry for unvaccinated individuals. For example, the Philippines currently denies entry to unvaccinated travelers (with no special exception for U.S. military personnel). Thailand imposes a 10-day quarantine for all unvaccinated visitors (again, with no special exception for U.S. military personnel); vaccinated visitors who test negative are not required to quarantine at all. Moving a squadron and all its combat gear to a foreign nation was already an exceptionally complex process before COVID-19. COVID-19 has made this process even more complex. If 1stLt Macik remains unvaccinated, it adds yet more complexity and, in many cases, will make it impossible to deploy him at all. For example, if a humanitarian disaster struck the Philippines tomorrow and the President directed the deployment of U.S. Marines (a common occurrence in this region and a common mission for U.S. Marine aviation units), MASS-2 would be required to leave 1stLt Macik behind in Okinawa and their operational effectiveness would suffer as a result. If MASS-2 deploys to Thailand for training or an

operational mission, 1stLt Macik will be stuck in quarantine for 10 days at the port of entry. Depending on the particular situation, MASS-2 will need to plan whether it is even worthwhile to deploy him. For example, if the contingency is anticipated to last a week, it would be useless to bring him. If they do bring him, the squadron will additionally need to account for how to sustain him (i.e. food, billeting, etc.) for 10 days at the port of entry, and then transport him to the area of operations after the rest of the squadron has already made the movement. Again, these are simply two basic examples of real-world practical ramifications that 1stLt Macik's vaccination status presents.

     Pursuant to 28 U.S.C. § 1746, I declare under penalty of perjury that the foregoing is true and correct. Executed this 14th day of March, 2022.

J. W. BEAVEN