IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **NAVY SEAL # 1,** *et al.*,<br><br>                                      Plaintiffs,<br><br>v.<br><br>**JOSEPH R. BIDEN, JR.**, in his official<br>capacity as President of the United States, *et al.*,<br>                                      Defendants. | Case No. 8:21-cv-02429-SDM-TGW |

## DEFENDANTS' OPPOSITION TO PLAINTIFF COLONEL FINANCIAL MANAGEMENT OFFICER'S EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER

Plaintiff Colonel Financial Management Officer filed an emergency motion asking the Court to enjoin an order to be vaccinated.[1] Mot., ECF No. 141.  Plaintiff's motion fails to satisfy any of the requirements under law for such emergency relief.

Plaintiff's cursory argument concerning his likelihood of success on the merits is insufficient to show he is entitled to the "extraordinary relief" of a temporary restraining order (TRO).  This is especially true given the Supreme Court's recent grant of the Government's request to partially stay a similar preliminary injunction in *Austin v. U.S. Navy SEALs 1-26*, --- S. Ct. ---, No. 21A477, 2022 WL 882559 (U.S. Mar. 25, 2022) (mem.).  Nor does Plaintiff make any argument regarding the public interest of entering a TRO.  And Plaintiff's motion misrepresents that he would be receiving administrative separation orders on Friday, March 25, 2022.  To the contrary, there is no emergency and in any event, any purported harm is reparable.  Plaintiff's claimed

---

[1] As explained in Defendants' partial response to the motion for a TRO, the remaining 21 individuals who joined the motion are non-parties who are not entitled to relief.  ECF No. 142 at 5.

injuries relate to the outcome of future officer separation processes, which take, at a minimum, several months to complete and permit Plaintiff to raise arguments against separation.   Thus, contrary to Plaintiff's assertions that this matter presents an extraordinary emergency, nothing about the pending motion is proper or remotely justifies the entry of a TRO.   For these reasons, set forth further below, Plaintiff's motion should be denied.

## BACKGROUND

The procedural background of this matter is largely set forth in prior filings and orders. *See* ECF Nos. 23, 42, 66, 67, 74, 97, 118, 132, 139, 140.   Defendants also filed a partial response to Plaintiff's TRO on March 24, 2022.   ECF No. 142.   Defendants incorporate by reference all arguments and declarations submitted in connection with those motions to this brief.

Plaintiff is a colonel on active duty in the U.S. Marine Corps.   Ex. 1 (Decl. of Col. Daren J. Erickson) ¶ 3.   He is assigned to U.S. Marine Corps Forces Pacific (MARFORPAC) in Hawaii.   *Id.*   He holds several financial military occupational specialties and serves as the MARFORPAC Assistant Chief of Staff for the Financial Resources Division.   *Id.*   Plaintiff works in an office in the MARFORPAC headquarters building where he has his own office, but he interacts daily and directly with his staff in their section spaces.   *Id.* ¶ 4.   As an Assistant Chief of Staff, Plaintiff leads a team of about twenty financial professionals and attends at least two in-person staff meetings per week, in which the principal staff members sit within six feet of each in a conference room.   *Id.* ¶ 5.   Although virtual attendance is authorized for most

meetings, virtual attendance almost exclusively occurs from within the MARFORPAC building on a secured network. *Id.* Plaintiff cannot virtually attend any meeting that includes highly classified discussions. *Id.*

As a Marine, Plaintiff must be ready to deploy at all times. *Id.* ¶ 6. To ensure that he is ready to deploy, Plaintiff also must participate in mandatory regular physical and combat training that requires close proximity to other Marines, including Marines who frequently deploy. *Id.* ¶ 7. MARFORPAC staff members, especially due to their location in Hawaii, also travel frequently to other stations in Australia, South Korea, Japan, the Philippines, and the United States, some of which countries have strict COVID vaccination and quarantine requirements that prohibit unvaccinated Marines from entering. *Id.* ¶ 6. Hawaii also has a high rate of tourism, maintains some of the strictest COVID policies in the country, and has limited hospital bed spaces and critical supplies like oxygen necessary in the event of another COVID outbreak. *Id.* ¶ 9.

## LEGAL STANDARDS

"The issuance of a temporary restraining order or preliminary injunctive relief is an extraordinary remedy to be granted only under exceptional circumstances." *Cheng Ke Chen v. Holder*, 783 F. Supp. 2d 1183, 1186 (N.D. Ala. 2011) (citing *Sampson v. Murray*, 415 U.S. 61 (1974)); *see also Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008) ("A preliminary injunction is an extraordinary remedy never awarded as of right."). A TRO "is appropriate where the movant demonstrates that: (a) there is a substantial likelihood of success on the merits; (b) the TRO . . . is necessary to prevent

irreparable injury; (c) the threatened injury outweighs the harm that the TRO or preliminary injunction would cause to the non-movant; and (d) the TRO or preliminary injunction would not be averse to the public interest." *Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034–35 (11th Cir. 2001); *Schiavo ex rel. Schindler v. Schiavo*, 403 F.3d 1223, 1225 (11th Cir. 2005) (per curiam). "Because a [TRO or] preliminary injunction is 'an extraordinary and drastic remedy, its grant is the exception rather than the rule, and [the petitioner] must clearly carry the burden of persuasion.'" *Cheng Ke Chen*, 783 F. Supp. 2d at 1186 (quoting *United States v. Lambert*, 695 F.2d 536, 539 (11th Cir. 1983)) (brackets in original).

## ARGUMENT

### I.   Plaintiff Is Unlikely to Succeed on the Merits of His Claims.

#### A.   Plaintiff Lacks Venue in this Court.

As discussed in Defendants' motion to dismiss Plaintiffs' complaint, ECF No. 139 at 17–22, this Court should sever Plaintiff and transfer his claims to the proper venue. Plaintiff is a resident of Hawaii and has no connection with this venue in Florida. Ex. 1 ¶ 3; *see also* Order, *Crosby v. Austin*, No. 8:21-cv-02730 (M.D. Fla. Feb. 22, 2022), ECF No. 44 at 1–2 (severing claims in suit brought by fifteen service members where "[o]nly one of the Plaintiffs ha[d] anything to do with the Middle District of Florida") (this order is in the record at ECF No. 139-8).

#### B.   The Eleventh Plaintiff Failed to Exhaust His Administrative Remedies.

The Eleventh Circuit has made clear "time and again" that exhaustion of

administrative remedies is "require[d]" in military cases.  *Winck v. England*, 327 F.3d 1296, 1302 (11th Cir. 2003) (collecting cases), *abrogated on different grounds as recognized in Santiago-Lugo v. Warden*, 785 F.3d 467, 475 n.5 (11th Cir. 2015).  The nature of Plaintiff's claim does not excuse failure to exhaust.  Even when a plaintiff "allege[s] the deprivation of a constitutional right" or "alleg[es] that the military has acted in violation of applicable statutes," he still must "exhaust[] available intraservice corrective measures" before bringing suit in federal district court.  *Mindes v. Seaman*, 453 F.2d 197, 201 (5th Cir. 1971).  The exhaustion requirement is especially important in the military context because it serves the important purpose of allowing the military to apply its "specialized expertise" in the first instance.  *Lawrence v. McCarthy*, 344 F.3d 467, 470 (5th Cir. 2003).  If Plaintiff is dissatisfied with the military's decision, he may seek judicial review only after exhausting military appeals, allowing the military to make its decision and fully articulate its interests.  *See Winck*, 327 F.3d at 1302–04.

Plaintiff has not exhausted his military remedies.  Even though his religious exemption request has been denied, the Marine Corps has further administrative procedures that offer many opportunities for him to present his arguments and for the Marine Corps to respond.  *See* Ex. 2 (Decl. of Chad W. Schrecengost) ¶¶ 3–19 (detailing the lengthy and significant intramilitary procedures related to administrative separation); Furness Decl. ¶¶ 13–23, ECF No. 23-19; *see also United States v. Kisala*, 64 M.J. 50 (C.A.A.F. 2006).  Should Plaintiff face discharge for non-compliance with the order, he may present arguments before the discharge authority.  *See* Furness Decl. ¶¶ 16–20, ECF No. 23-19; Ex. 1 ¶ 15.  For officers like Plaintiff, this process takes several

5

months and involves a formal administrative hearing over which a panel of general officers preside in order to make findings with respect to the bases for separation, and recommendations with respect to retention or separation and characterization of service. *See* Furness Decl. ¶¶ 17–18, ECF No. 23-19; Ex. 2 ¶¶ 3–6. If Plaintiff is discharged, he can appeal to the Board for Correction of Naval Records. *See* Furness Decl. ¶ 22, ECF No. 23-19. For adverse action less than discharge, the Marine Corps has procedures that can provide relief. *Id.*

As other courts have recently found in similar contexts, review of Plaintiff's claims now "would undermine the purpose of exhaustion and infringe on the military's expertise and interest in handling its own personnel matters." *Church v. Biden*, ---F. Supp. 3d---, No. 21-2815, 2021 WL 5179215, at *11 (D.D.C. Nov. 8, 2021) (citing, *inter alia*, *Orloff v. Willoughby*, 345 U.S. 83, 94 (1953)). In *Short v. Berger*, the court concluded that a Marine Corps officer whose appeal had been denied failed to exhaust administrative remedies because "he still must undergo separation proceedings before any permanent adverse consequences are imposed." Order, *Short v. Berger*, No. 2:22-cv-1151 (C.D. Cal. Mar. 3, 2022), ECF No. 25 at 5 (this order is in the record at ECF No. 132-5). Moreover, the officer would have the opportunity to submit a "written rebuttal" during separation proceedings, and four different individuals would consider his separation, "any one of which could decide to close the process upon review of Plaintiff's written submissions." *Id.* (citing *Diraffael v. Cal. Mil. Dep't*, No. CV 10-07240, 2011 WL 13274364, at *3 (C.D. Cal. Mar. 21, 2011)). The

court in *Short* rejected the plaintiff's argument that the administrative remedies would be futile, finding that there is "no evidence, other than argumentative conjecture, that separation proceedings are always decided against the appealing servicemember." *Id.* at 5–6. The same is true here—Plaintiff has presented no evidence that separation proceedings would be futile so as to excuse the exhaustion requirement.[2] *See generally* Mot.

### C.   Plaintiffs' RFRA and First Amendment Claims Are Unlikely To Succeed.

The Assistant Commandant of the Marine Corps conducted an independent review of Plaintiff's request for a religious exemption on an individualized basis and has reasonably assessed the Government's compelling interest in vaccinating Plaintiff and the lack of less restrictive alternatives, taking into consideration current military needs, and Plaintiff's unique circumstances. *See* Pl.'s Ex. D at 18–21, ECF No. 141-4; *see also* 42 U.S.C. § 2000bb–1(a).

#### 1.   The COVID-19 Vaccination Requirement Furthers the Government's Compelling Interest in Military Readiness.

"[T]he government certainly has a compelling interest in preventing the spread of COVID-19 amongst members of the Marine Corps." *Short* Order at 9 (citing *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020)). In addition, "when evaluating whether military needs justify a particular restriction on religiously

---

[2] Nor has Plaintiff shown that he will suffer irreparable harm so as to excuse administrative exhaustion. *See infra* Part II.

motivated conduct, courts must give great deference to the professional judgment of military authorities concerning the relative importance of a particular military interest."[3] *Goldman v. Weinberger*, 475 U.S. 503, 507 (1986); Tr. of Order 36:3–6, *Dunn v. Austin*, No. 22-cv-00288 (E.D. Cal. Feb. 22, 2022), ECF No. 22 ("As courts have said over and over again . . . , the Court must give great deference to the professional judgment of military authorities concerning the relative importance of a particular military interest.") (this order is in the record at ECF No. 132-6).

The Supreme Court's recent grant of the government's application for a partial stay in *U.S. Navy SEALs 1-2*6, 2022 WL 882559, confirms the importance of deference to the judgement of military authorities. The plaintiffs in *U.S. Navy SEALs 1-26*, like plaintiffs in this case, are military service members who contend that they are entitled to exemptions from military COVID-19 vaccination requirements under RFRA. The district court in *U.S. Navy SEALs 1-26* granted a preliminary injunction similar to the TRO that plaintiffs request here, prohibiting the military from applying its COVID-19 vaccination policies to the plaintiffs and "from taking any adverse action against Plaintiffs on the basis of Plaintiffs' requests for religious accommodation." *U.S. Navy SEALs 1-26 v. Biden*, --- F. Supp. 3d ---, No. 21-cv-1236, 2022 WL 34443, at *14 (N.D. Tex. Jan. 3, 2022); *see also* Mot. 1 (asking the court "to preserve the status quo ante").

---

[3] Congress intended for courts to continue to apply principles of military deference in RFRA cases. *See* S. Rep. No. 103-111, at 12, *reprinted in* 1993 U.S.C.C.A.N. 1892, 1901 ("The courts have always recognized the compelling nature of the military's interest in [good order, discipline, and security] in the regulations of our armed services. Likewise, the courts have always extended to military authorities significant deference in effectuating these interests. The committee intends and expects that such deference will continue under this bill.").

The Supreme Court granted the government's request to stay that injunction "insofar as it precludes the Navy from considering respondents' vaccination status in making deployment, assignment, and other operational decisions." *U.S. Navy SEALs 1-26*, 2022 WL 882559, at *1. Justice Kavanaugh observed in a concurring opinion that a stay was warranted because the district court had "in effect inserted itself into the Navy's chain of command, overriding military commanders' professional military judgments," and because "even accepting that RFRA applies in this particular military context, RFRA does not justify judicial intrusion into military affairs in this case." *Id.* (Kavanaugh, J., concurring). The Supreme Court's decision granting a partial stay in *U.S. Navy SEALs 1-26* necessarily rejected the reasoning of the district court in entering preliminary injunctive relief in that case, and confirms that this Court should deny Plaintiff's similar request for a TRO.

Moreover, the appeal authority—the Assistant Commandant of the Marine Corps—conducted an individualized review of Plaintiff's religious exemption request package and determined that Plaintiff's vaccination is in furtherance of the government's compelling interests in "military readiness and in the health and safety of the force." *See* Pl.'s Ex. D at 20, ECF No. 141-4. The Assistant Commandant further found that "[t]he Delta variant of the novel coronavirus is highly transmissible and causes more severe illness, hospitalization, and death than previous variants." *Id.* The Assistant Commandant noted that personnel who remain unvaccinated "do not just put themselves at risk, they also risk the health and medical readiness of other persons within their unit, which in turn decreases the military readiness of the unit and

9

the Marine Corps as a whole." *Id.*

The Assistant Commandant took Plaintiff's assignment as an Assistant Chief of Staff into account, finding that "as a principal staff officer, [Plaintiff] work[s] primarily indoors and [is] required to be present in [his] work spaces to support the needs of [his] commander." *Id.* Thus, the Assistant Commandant explained that Plaintiff's duties "include[] attending meetings with other high level staff, conducting annual training, and engaging in other activities in close proximity to [Plaintiff's] fellow Marines." *Id.* Indeed, Plaintiff leads a team of about 20 financial professionals and attends at least two in-person staff meetings per week, in which the principal staff members sit within six feet of each other in a conference room. Ex. 1 ¶ 5. The Assistant Commandant also noted that "as a member of the Fleet Marine Force," Plaintiff "must be ready to deploy on a moment's notice." Pl.'s Ex. D at 20, ECF No. 141-4. "Readiness to deploy is an absolute requirement for all individual Marines, and it is an obligation for all officers to ensure that their assigned personnel can deploy and be combat effective." Ex. 1 ¶ 6. Vaccination is necessary to ensure combat readiness for deployment. Ex. 1 ¶¶ 8–9. In response, Plaintiff fails to address any of the Assistant Commandant's findings and instead merely argues that he received a "generalized, boilerplate, form-letter denial[]." Mot. 9–10.

Plaintiff cannot rely on the assertion that the military was able to continue to function without a vaccination requirement. Rather, the record reflects that the military confronted significant and harmful effects from COVID-19 prior to the vaccination requirement. *See e.g.,* Stanley Decl. ¶¶ 3–19, ECF No. 23-16; *see also*

*Church*, 2021 WL 5179215, at *18 (rejecting a similar argument); *Short* Order at 13 n.17 ("The notion that the military has not been significantly impacted is also belied by the nearly *400,000* infections and 93 deaths it has incurred."). "And merely because the military has found ways to perform its duties despite the risks of COVID-19 does not mean it must endure these risks indefinitely when there are effective means of mitigating them." *Id.* at 13 ("Like many millions of other essential workers, the military has heroically and with great ingenuity found ways to persevere during an unprecedented deadly pandemic. But that does not mean that the military is not entitled to use the most effective means available to end its crisis footing and return to a semblance of normalcy."); *Dunn* Prelim. Inj. Tr. 37:4–7 ("[I]t does come down . . . to what level of risk is appropriate. If the military can eliminate almost all risk through this policy, then there is a compelling governmental interest.").

### 2. Vaccination is the Least Restrictive Means of Furthering the Government's Compelling Interest in Military Readiness.

As other courts have found, in non-military settings, vaccination is the least restrictive means in fully accomplishing the government's interest in preventing the spread of infectious diseases in the workforce. *See, e.g.*, *Does 1–6 v. Mills*, --- F. Supp. 3d ---, 2021 WL 4783626, at *14 (D. Me. Oct. 13, 2021), *aff'd*, 16 F.4th 20 (1st Cir. 2021), *cert. denied*, 142 S. Ct. 1112 (2022); *see also Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 733 (2014) ("Other coverage requirements, such as immunizations, may be supported by different interests (for example, the need to combat the spread of infectious diseases) and may involve different arguments about the least restrictive

11

means of providing them."). This reasoning has even greater force in the military setting, where the health of service members is key to military readiness.

After careful consideration of Plaintiff's request for a religious exemption and his appeal, the Assistant Commandant of the Marine Corps concluded that there are no lesser restrictive means than vaccination to further the military's compelling interests in readiness and ensuring the health of service members. Pl.'s Ex. D at 20, ECF No. 141-4. The Assistant Commandant noted that Plaintiff's proffered "alternative treatments, such as Ivermectin, . . . are not as effective as vaccination." *Id.* Nor does "waiting for the availability of vaccines currently in development" achieve the military's "compelling interests in readiness, and health and safety." *Id.*

The Assistant Commandant likewise found that mitigation measures such as "masking, social distancing, hygiene, teleworking, and other similar measures, individually or in combination," are "not as effective as vaccination" and "are often incompatible with the demands of military life, where Marines . . . must live, work, realistically train, and, if necessary, fight in close quarters." *Id.*; *see also Short* Order at 10 (It is "reasonable to conclude—and certainly not the Court's role to micromanage— that some servicemembers, including Plaintiff, need to be able to work in close quarters with others and to deploy to environments where social distancing and surveillance testing are not possible."). Indeed, Plaintiff's work requires daily and direct contact with other individuals, including the 20 financial professionals he leads and the principal staff members with whom he attends two staff meetings each week. Ex. 1 ¶ 5. Plaintiff cannot work entirely remotely because even virtual attendance at meetings

requires Plaintiff's presence within the MARFORPAC building on a secured network, and he cannot virtually attend any meeting that involves discussion of classified documents. *Id*. His training also requires direct contact with other Marines, including those that regularly deploy. *Id.* ¶ 7.[4]  Plaintiff provides no argument rebutting the Assistant Commandant's findings.

In sum, the military's vaccine policy is narrowly tailored to serve compelling military interests.   And the military is best situated to assess whether a specific unvaccinated individual puts the military mission at risk, or whether feasible, less restrictive alternatives are available.  *See Orloff*, 345 U.S. at 94; *Short* Order at 10 (deferring to the military's "judgment that only vaccination will allow Plaintiff to perform his essential duties during the pandemic with an acceptable level of risk to the safety and effectiveness of both himself and his unit").   The Marine Corps has concluded that there are no lesser restrictive means of achieving its interest in military readiness.   RFRA does not compel the military to adopt an inferior, less effective measure than vaccines.   Therefore, Plaintiff has not shown a likelihood of success on his RFRA claims to warrant the extraordinary relief he seeks.

## II.   Plaintiff Does Not Face Irreparable Harm.

Plaintiff argues that that he faces irreparable harm from an order to either get vaccinated or face adverse action.   *See generally* Mot.   Yet Plaintiff's motion

---

[4] To ensure that he is always ready to deploy, Plaintiff must participate in annual physical fitness (PFT) and combat fitness tests (CFT).  Ex. 1 ¶ 7.  During the CFT, Marines drag and carry one another on their backs.  *Id.*  Plaintiff is also required to conduct annual pistol marksmanship training, water survival training in the pool, and gas mask training.  *Id.*  All these events are done in group settings in relatively close proximity.

misrepresents the imminence of any alleged harm, and, moreover, Plaintiff fails to allege any harm that is irreparable.

Plaintiff incorrectly represented in his motion that he would receive separation orders on March 25, 2022. Yet when the Marine Corps denied Plaintiff's religious exemption appeal in December, Plaintiff sought a medical exemption. *See* Pl.'s Ex. D at 18–22, ECF No. 141-4. MARFORPAC leadership allowed Plaintiff approximately two months to schedule medical appointments to be evaluated for a medical exemption. Ex. 1 ¶ 12. MARFORPAC leadership thereafter provided Plaintiff two additional extensions of time to attend medical appointments, with a final deadline of March 24, 2022. *Id.* ¶¶ 13–14. Plaintiff did not obtain a DoD health care provider recommendation or endorsement for a medical exemption by that date. *Id.* ¶ 14. Thus, Plaintiff was fully in compliance with the DoD policy and the Marine Corps mandatory vaccination order until March 24, 2022. *Id.* ¶ 16.

Plaintiff also fails to establish any harm that is irreparable. He argues that if he does not obey the order to get vaccinated, he will suffer "irreparable damage to [his] military career," including "deprivation of [his] accumulated status and standing in the United States military, as well as prospective advancement and benefits." Mot. 10. But "[m]ilitary administrative and disciplinary actions, including separation, are not . . . irreparable injuries." *Dunn* Prelim. Inj. Tr. 45:25–46:2. "[H]arms such as lost rank, duties, benefits, and pay are not irreparable because 'these harms are redressable as monetary damages and therefore insufficient to obtain injunctive relief.'" *Short* Order at 13 (quoting *Air Force Officer v. Austin*, ---F. Supp. 3d---, 2022 WL 468799, at

*12 (M.D. Ga. Feb. 15, 2022)).

"The harms stemming from separation are also not irreparable for the additional reason that Plaintiff has an opportunity to challenge separation through the administrative process even before seeking relief in court." *Id.* at 13–14. Indeed, although Plaintiff alleges he is on the cusp of being discharged, the process to discharge a Marine Corps officer has multiple levels of review and can take many months. *See* Furness Decl. ¶¶ 13–21, ECF No. 23-19. In other words, even if Plaintiff were correct that initiation of separation proceedings were to begin imminently, he still would not be at imminent risk of separation. And if Plaintiff does proceed to a Board of Inquiry, the Board has a range of options available. *See generally* Secretary of the Navy Instruction (SECNAVINST) 1920.6D at encl. (11) ¶ 13, ECF No. 132-3; Ex. 2 ¶ 8.[5] Moreover, because Plaintiff is retirement-eligible, the Board of Inquiry cannot take away Plaintiff's retirement or the financial, medical, and other benefits associated with retiring; it is limited to recommending whether Plaintiff should be retired and the appropriate retirement grade. Ex. 1 ¶ 15. And if Plaintiff is discharged via retirement, he can seek review from the Board for Correction of Naval Records, which may result in him being reinstated into the Marine Corps. SECNAVINST at encl. (11), ¶ 22, ECF No. 132-3. These remedies make plain that Plaintiff does not face irreparable harm by the initiation of separation proceedings.

---

[5] It could find that Plaintiff had not committed the misconduct alleged, *see* SECNAVINST 1920.6D at encl. (11) ¶ 13.a, or if it finds misconduct, the Board could nevertheless recommend his retention, which would be binding on the Secretary of the Navy, *see* 10 U.S.C. § 1182(d)(1); SECNAVINST 1920.6D at encl. (11), ¶ 13.a(2)–(3), ECF No. 132-3; *id.* ¶ 17b.

Other disciplinary measures the Marine Corps may take are likewise not irreparable. If Plaintiff does not follow the order to get vaccinated, he will be placed on the Officer Disciplinary Notebook and a report of misconduct will be initiated. *See* Decl. of Maj. Jason M. Weaver, ECF No. 132-2 ¶ 9. Placement on the Officer Disciplinary Notebook, "a database used to track officer misconduct and substandard performance in the Marine Corps," is not itself a disciplinary measure, and such information is not included in an officer's personnel file. *See* Marine Corps Order 5800.16, Vol. 15 ¶ 010401, ECF No. 132-4. While entry on the Officer Disciplinary Notebook holds in abeyance all pending personnel actions (*e.g.*, promotion, separation, or permanent change of station orders) for the officer, such "Personnel/Administrative Hold" carries with it no punitive stigma but, rather, is implemented to maintain the status quo until matters are resolved by the cognizant commander. Marine Corps Order 5800.16, Vol. 15 ¶ 011101, ECF No. 132-4. Necessarily, then, entry on the Officer Disciplinary Notebook does not constitute irreparable harm.

A report of misconduct is generated when the officer's commanding general determines that the officer committed misconduct but *declines* to take disciplinary action against the officer. *See id.* ¶¶ 010502.A, 010603, 010604. After the report is signed, the officer is entitled to extensive additional proceedings which can take

months.[6]  Even a final, approved report of misconduct, if ultimately directed by the Deputy Commandant for Manpower and Reserve Affairs to be placed in the officer's personnel file, is not an irreparable harm, as it may be removed, upon petition, by the Board for Correction of Naval Records or by court order.  And separation proceedings, if a senior officer decides to initiate them, may not result in separation and, even if an officer is separated, the officer can be reinstated into service.  In sum, there is no basis for emergency injunctive relief where Plaintiff's alleged injuries are fully reparable.

Plaintiff also argues that he will suffer irreparable harm by the loss of his constitutional and statutory rights.  Mot. 9–11.  But, as shown above, Plaintiff addressed the merits in only a cursory fashion and has not established a likelihood of success on the merits on any of his claims.  Thus, no presumption of irreparable harm is warranted.  *See Short* Order at 14 ("[B]ecause this Court has found that Plaintiff failed to demonstrate a sufficient likelihood of success on the merits of his religious freedom claims, there is no presumption of irreparable harm."); *Dunn* Prelim. Inj. Tr. 45:16–18 ("[I]n a case where plaintiff has failed to demonstrate a sufficient likelihood of success on the merits, then a presumption wouldn't apply.").

## III.   The Public Interest Weighs Against the Entry of a TRO.

Plaintiff entirely failed to address the public interest factor, which alone

---

[6] After the report is signed, the officer has an opportunity to provide a rebuttal.  Marine Corps Order 5800.16, Vol. 15 ¶ 010603.J.  Then the report and the officer's rebuttal is forwarded to a senior officer in the Marine Corps (either the Deputy Commandant for Manpower and Reserve Affairs or a three-star general) via the officer's chain of command to determine whether to process the officer for separation.  *Id.* ¶ 010603.  If the senior officer decides to process the officer for separation, that officer is entitled to additional proceedings, which can take months.  *See infra* Part I.A; Furness Decl. ¶¶ 16–20, ECF No. 23-19.

warrants denial of his motion. *See ACLU of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009) ("Failure to show any of the four factors is fatal[.]"); Local Rule 6.01(b) ("The legal memorandum *must* establish . . . the nature and extent of [the] public interest affected.") (emphasis added).

In any event, the public has an exceptionally strong interest in national defense, *see Winter*, 555 U.S. 7, and "the military—and the public generally—undoubtedly have a strong interest in maintaining the combat readiness and health of the force, especially in these uncertain times," *Short* Order at 14 (citing *Church*, 2021 WL 5179215, at *18; *see also Dunn* Prelim. Inj. Tr. 47:14–16 ("Courts should be and this court in particular is reluctant to enjoin the military when military readiness is at stake.").  As described in detail in numerous declarations previously filed by the Government, an injunction that allows Plaintiff to serve in a military setting without being vaccinated against COVID-19 would threaten harm to Plaintiff and the other service members serving alongside him. *See, e.g.*, Ex. 1 ¶ 8; Lescher Decl. ¶¶ 2, 11, 17, ECF No. 66-4; Stanley Decl. ¶ 8, ECF No. 23-16; Second Stanley Decl. ¶¶ 3–20, ECF No. 66-6; Rans Decl. ¶¶ 4–39, ECF No. 66-5; Poel Decl. ¶¶ 6, 10–36, 38, ECF No. 66-7.  This is especially true for Plaintiff, as he is in close contact each day with the service members he leads. Ex. 1 ¶ 5.  His training also necessitates close contact with other Marines who cannot always practice COVID-19 mitigation measures such as masking and social distancing due to the intense nature of their physical and field training.  *See* Ex. 1 ¶ 7; *see also Garland v. N.Y.C. Fire Dep't*, ---F. Supp. 3d---, 2021 WL 5771687, at *9 (E.D.N.Y. Dec. 6, 2021) (noting the city's "significant interest" in preventing the spread of COVID-19

among firefighters who work in "close proximity" with each other "while on duty [and] in their fire stations").

A TRO would also undercut the maintenance of military good order and discipline. Lescher Decl. ¶ 16, ECF No. 66-4; Furness Decl. ¶ 23, ECF No. 23-19; Jurney Decl. ¶ 14, ECF No. 118-7; Ex. 1 ¶ 8; *see also Miller v. United States*, 42 F.3d 297, 303 (5th Cir. 1995) (stating that concern for preserving military discipline is "the most important consideration in any single case" (quoting *Scales v. United States*, 685 F.2d 970, 973 (5th Cir. 1982))). No military can function where service members define the terms of their own military service, including which orders they choose to follow. *See Chappell v. Wallace*, 462 U.S. 296, 300 (1983) ("The inescapable demands of military discipline and obedience to orders cannot be taught on battlefields; the habit of immediate compliance with military procedures and orders must be virtually reflex with no time for debate or reflection."). The TRO Plaintiff demands here would encourage other members to attempt to bypass the military's processes and ask courts to enter similar injunctive relief, which "in the aggregate present the possibility of substantial disruption and diversion of military resources" and is contrary to the public interest. *Parrish v. Brownlee*, 335 F. Supp. 2d 661, 669 (E.D.N.C. 2004); *see Chappell*, 462 U.S. at 305 (courts are "ill-equipped to determine the impact upon discipline that any particular intrusion upon military authority might have"). Proceedings in this Court—where Plaintiffs and non-plaintiffs alike have filed numerous emergency motions for TROs before the military even begins its months-long separation proceedings—make clear that this is no idle concern.

## IV.   Plaintiff's Failure to Follow the Local Rules Warrants Denial of His Motion.

Plaintiff also fails to meet the procedural requirements necessary to obtain the extraordinary relief of a TRO.  Local Rule 6.01(a) requires a plaintiff to include "a precise and verified description of the conduct . . . subject to restraint" and "a proposed order."  "And Rule 65(d) requires a temporary restraining order to, among other things, 'describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required.'"  *Art Headquarters, LLC v. Lemak*, No. 8:19-cv-2899-T-36JSS, 2019 WL 6340245, at *3 (M.D. Fla. Nov. 27, 2019) (quoting Fed. R. Civ. P. 65(d)(1)(C)).

Plaintiff failed to file a proposed order or describe the acts to be restrained. Plaintiff requests only that the Court "preserve the status quo ante."  Mot. 1.  Such a request is insufficient to issue a TRO under Federal Rule of Civil Procedure 65 and Local Rule 6.01.  *See Art Headquarters*, 2019 WL 6340245, at *3.  And to the extent Plaintiff's request to "preserve the status quo ante" is tantamount to requiring the Marine Corps to keep Plaintiff in a certain billet or performing certain duty assignments, the Court cannot and should not order such relief.  *See, e.g.*, *U.S. Navy SEALs 1-26*, 2022 WL 882559; *Orloff*, 345 U.S. 83; *Speigner v. Alexander*, 248 F.3d 1292, 1298 (11th Cir. 2001); *Harkness v. Sec'y of Navy*, 858 F.3d 437, 443 (6th Cir. 2017).

## CONCLUSION

For all of these reasons, Plaintiff's motion for a temporary restraining order should be denied.

Dated:  April 6, 2022

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney
General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director

Respectfully submitted,

*/s/ Cassandra Snyder*
ANDREW E. CARMICHAEL
AMY E. POWELL
Senior Trial Counsel
ZACHARY A. AVALLONE
COURTNEY D. ENLOW
CATHERINE M. YANG
R. CHARLIE MERRITT
CASSANDRA M. SNYDER (DC Bar
No. 1671667)
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 451-7729
Fax: (202) 616-8460
Email: cassandra.m.snyder@usdoj.gov

*Counsel for Defendants*