IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF FLORIDA

**NAVY SEAL # 1,** *et al.*,

Plaintiffs,

v.

**JOSEPH R. BIDEN, JR.**, in his official
capacity as President of the United States, *et al.*,

Defendants.

Case No. 8:21-cv-02429-SDM-TGW

## DEFENDANTS' OPPOSITION TO PLAINTIFF CADET'S EMERGENCY MOTION FOR A TEMPORARY RESTRAINING ORDER

Plaintiff CADET filed an emergency motion asking the Court to enjoin an order to be vaccinated. Pl.'s Mot. for TRO ("Mot."), ECF No. 157. Plaintiff's motion fails to satisfy any of the requirements under law for such emergency relief. Plaintiff's cursory argument on his likelihood of success on the merits is insufficient to show he is entitled to the "extraordinary" relief of a temporary restraining order (TRO). *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 24 (2008). This is especially true given the Supreme Court's grant of the Government's request to partially stay a similar preliminary injunction in *Austin v. U.S. Navy SEALs 1-*26, 142 S. Ct. 1301 (2022) (mem.). Plaintiff also fails to establish any irreparable harm in light of the substantial additional procedures afforded to cadets recommended for disenrollment. Nor does Plaintiff make any argument regarding the public interest of entering a TRO. Thus, contrary to Plaintiff's assertions that this matter presents an extraordinary emergency, nothing about the pending motion is proper or justifies the entry of a TRO. For these reasons, set forth further below, Plaintiff's motion should be denied.

1

## BACKGROUND

The procedural background of this matter is largely set forth in prior filings and orders. *See* ECF Nos. 23, 42, 66, 67, 74, 97, 118, 132, 139, 140, 142, 156, 158. Defendants incorporate by reference all arguments and declarations submitted in connection with those motions to this brief. Plaintiff is a cadet in his first year ("fourth-class") at the United States Air Force Academy (USAFA). Ex. 1 (Decl. of Major Alyssa S. Tetrault) ¶ 3. USAFA is a four-year military service university whose mission is to "provide successful candidates with degrees of Bachelor of Science and commissions as military officers." *Id.* ¶ 4. Cadets are not enlisted and are not officers; they are students being trained for future military service. *Id.* They are only commissioned as officers upon graduation. *Id.* Cadets must be able to perform across each of USAFA's three core aspects: academic, athletic, and military. *Id.* ¶ 7. All 4,000 cadets must reside in "close confines" in the shared cadet dormitories. *Id.* ¶ 6.

## LEGAL STANDARDS

"The issuance of a temporary restraining order or preliminary injunctive relief is an extraordinary remedy to be granted only under exceptional circumstances." *Cheng Ke Chen v. Holder*, 783 F. Supp. 2d 1183, 1186 (N.D. Ala. 2011) (citing *Sampson v. Murray*, 415 U.S. 61 (1974)); *see also Winter*, 555 U.S. at 24 ("A preliminary injunction is an extraordinary remedy never awarded as of right."). Thus:

> A TRO . . . is appropriate where the movant demonstrates that: (a) there is a substantial likelihood of success on the merits; (b) the TRO . . . is necessary to prevent irreparable injury; (c) the threatened injury outweighs the harm that the TRO . . . would cause to the non-movant;

and (d) the TRO . . . would not be averse to the public interest.

*Parker v. State Bd. of Pardons & Paroles*, 275 F.3d 1032, 1034–35 (11th Cir. 2001). "Because a [TRO or] preliminary injunction is 'an extraordinary and drastic remedy, its grant is the exception rather than the rule, and [the petitioner] must clearly carry the burden of persuasion.'" *Cheng Ke Chen*, 783 F. Supp. 2d at 1186 (quoting *United States v. Lambert*, 695 F.2d 536, 539 (11th Cir. 1983)) (brackets in original).

## ARGUMENT

### I.    Plaintiff Is Unlikely to Succeed on the Merits of His Claims.

#### A.    Plaintiff's Claims Are Not Justiciable.

The Supreme Court has held that "[i]t is obvious that the commissioning of officers in the [military] is a matter of discretion within the province of the President as Commander in Chief," and courts "have never assumed by any process to control the appointing power." *Orloff v. Willoughby*, 345 U.S. 83, 90 (1953). Yet Plaintiff's requested relief would force the Air Force to commission Plaintiff as an officer upon graduation. Indeed, the "core" mission of USAFA is to provide students cadets—who are not yet enlisted—with commissions as military officers upon graduation. Ex. 1 ¶ 4. Preventing the Air Force from disenrolling Plaintiff thus necessarily requires this Court to directly interfere with "the commissioning of officers." *Orloff*, 345 U.S. at 90. The Court should decline Plaintiff's invitation to dole out officer commissions from the bench by forcing the USAFA to retain and commission a cadet as an officer.

#### B.    Plaintiff Lacks Venue in this Court.

As discussed in Defendants' motion to dismiss Plaintiffs' complaint, ECF No.

139 at 17–22, this Court should sever Plaintiff and transfer his claims to the proper venue. Plaintiff is a citizen of Oklahoma who resides in Colorado while he attends USAFA. *See* Am. Compl., ECF No. 49-1 ¶ 59. Plaintiff has no connection to this venue in Florida. *See* Order at 1–2, *Crosby v. Austin*, No. 8:21-cv-02730 (M.D. Fla. Feb. 22, 2022), ECF No. 44 (severing claims in suit brought by fifteen service members where "[o]nly one of the Plaintiffs ha[d] anything to do with the Middle District of Florida") (this order is in the record at ECF No. 139-8).

## C. Plaintiff Failed to Exhaust His Administrative Remedies.

The Eleventh Circuit has made clear "time and again" that exhaustion of administrative remedies is "require[d]" in military cases. *Winck v. England*, 327 F.3d 1296, 1302 (11th Cir. 2003) (collecting cases), *abrogated on different grounds as recognized in Santiago-Lugo v. Warden*, 785 F.3d 467, 475 n.5 (11th Cir. 2015). The nature of Plaintiff's claim does not excuse failure to exhaust. Even when a plaintiff "alleg[es] the deprivation of a constitutional right" or "alleg[es] that the military has acted in violation of applicable statutes," he still must "exhaust[] available intraservice corrective measures" before bringing suit in federal district court. *Mindes v. Seaman*, 453 F.2d 197, 201 (5th Cir. 1971). The exhaustion requirement is especially important in the military context because allows the military to apply its "specialized expertise." *Lawrence v. McCarthy*, 344 F.3d 467, 470 (5th Cir. 2003). If a cadet is dissatisfied with USAFA's decision, he may seek judicial review only after allowing USAFA to make its final decision and fully articulate its interests. *See Winck*, 327 F.3d at 1302–04.

Plaintiff has not exhausted his military remedies. Although his religious

accommodation request has been denied on appeal, USAFA has further procedures that offer many opportunities for Plaintiff to present his arguments and for USAFA to respond. *See* Ex. 1 ¶¶ 15–17; *see also United States v. Kisala*, 64 M.J. 50 (C.A.A.F. 2006). Assuming Plaintiff fails to receive the COVID-19 vaccination hereafter, his Group Commander will issue him an order to receive the vaccination. *See* Ex. 1 ¶ 15. If he still chooses not to receive the vaccination, he may be subject to administrative action (in the form of a Letter of Counseling, Letter of Admonishment, or Letter of Reprimand), or non-judicial punishment for failure to obey a lawful order. *Id.* Additionally, Plaintiff's Group Commander will consider whether to recommend disenrollment from USAFA and discharge from the Air Force. *Id.*

Disenrollment involves its own set of procedures. A cadet recommended for disenrollment recieves notice of the recommendation, the basis for the recommendation, any supporting documents, the proposed service characterization,[1] and notification of his right to respond. *Id.* ¶ 16. The cadet is given an opportunity to respond, within three duty days, with the assistance of assigned counsel or retained civilian counsel. *Id.* The cadet may request personal appearances before his Group Commander, the Commandant of Cadets (a Brigadier General), and/or the USAFA Superintendent (a Lieutenant General). *Id.* After the cadet responds, the Group Commander submits his recommendation to the the USAFA Superintendent, who has final decision authority on whether to retain or disenroll the cadet. *Id.* ¶ 17.

---

[1] Disenrollment for failure to follow an order to vaccinate can result in either an Honorable discharge or an Under Honorable Conditions (General) discharge characterization. Ex. 1 ¶ 16.

As other courts have recently found in similar contexts, review of Plaintiff's claims now "would undermine the purpose of exhaustion and infringe on the military's expertise and interest in handling its own personnel matters." *Church v. Biden*, ---F. Supp. 3d---, No. 21-2815, 2021 WL 5179215, at *11 (D.D.C. Nov. 8, 2021) (citing, *inter alia*, *Orloff*, 345 U.S. at 94). Plaintiff "still must undergo separation proceedings before any permanent adverse consequences are imposed." *Short v. Berger*, No. 22-cv-1151-DMG-AGRX, 2022 WL 1051852, at *4 (C.D. Cal. Mar. 3, 2022), *appeal filed*, No. 22-55339 (9th Cir. 2022) (noting that separation proceedings involve the opportunity to submit a "written rebuttal," and consideration by four different individuals, "any one of which could decide to close the process upon review of Plaintiff's written submissions"). Nor is there any evidence that the administrative remedies would be futile so as to excuse exhaustion, given that there is "no evidence, other than argumentative conjecture, that separation proceedings are always decided against the appealing servicemember." *Id.*[2]; *see generally* Mot.

### D. Plaintiff's RFRA and First Amendment Claims Are Unlikely To Succeed.[3]

The USAFA Superintendent and the Air Force Surgeon General both independently reviewed Plaintiff's request for a religious accommodation on an individualized basis and reasonably assessed the Air Force's compelling interest in

---

[2] Nor has Plaintiff shown that he will suffer irreparable harm so as to excuse administrative exhaustion. *See infra* Part II.

[3] There is no reason to address Plaintiff's First Amendment claim separately from Plaintiff's RFRA claim. If Plaintiff prevails on his RFRA claim, Plaintiff would necessarily also be likely to succeed on his challenge to the vaccination requirement. Conversely, if the Government prevails under RFRA, it would necessarily also prevail under Plaintiff's First Amendment theory.

vaccinating Plaintiff and the lack of less restrictive alternatives, taking into consideration current military needs, and Plaintiff's unique circumstances. *See* Decl. of Cadet, Ex. A at A7–8, ECF No. 157-1; Ex. 1 ¶ 13; *see also* 42 U.S.C. § 2000bb–1(a).

### 1. The COVID-19 Vaccination Requirement Furthers the Government's Compelling Interest in Military Readiness.

The Supreme Court has recognized that "[s]temming the spread of COVID–19 is unquestionably a compelling interest." *Roman Cath. Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63, 67 (2020). And "when evaluating whether military needs justify a particular restriction on religiously motivated conduct, courts must give great deference to the professional judgment of military authorities concerning the relative importance of a particular military interest."[4] *Goldman v. Weinberger*, 475 U.S. 503, 507 (1986); Tr. of Order at 36:3–6, *Dunn v. Austin*, No. 22-cv-00288 (E.D. Cal. Feb. 22, 2022), ECF No. 22 ("*Dunn* PI Tr.") ("As courts have said over and over again . . . , the Court must give great deference to the professional judgment of military authorities concerning the relative importance of a particular military interest.") (this order is in the record at ECF No. 132-6). The Supreme Court's grant of the government's application for a partial stay in *U.S. Navy SEALs 1-26*, 142 S. Ct. 1301, confirms the importance of deference in this precise context. As Justice Kavanaugh recognized in his concurrence, "the Court has long emphasized" that "the 'complex,

---

[4] Congress intended for courts to continue to apply principles of military deference in RFRA cases. *See* S. Rep. No. 103-111, at 12 (1993), *reprinted in* 1993 U.S.C.C.A.N. 1892, 1901 ("The courts have always recognized the compelling nature of the military's interest in [good order, discipline, and security] in the regulations of our armed services. Likewise, the courts have always extended to military authorities significant deference in effectuating these interests. The committee intends and expects that such deference will continue under this bill.").

subtle, and professional decisions as to the composition, training, equipping, and control of a military force are essentially professional military judgments.'" *Id.* at 1302 (Kavanaugh, J., concurring) (quoting *Gilligan v. Morgan*, 413 U.S. 1, 10 (1973)). Even Justice Alito's dissent "agree[d] that the Navy has a compelling interest in preventing COVID–19 infection from impairing its ability to carry out its vital responsibilities, as well as a compelling interest in minimizing any serious health risk to Navy personnel." *Id.* at 1305 (Alito, J., dissenting).

Here, after consulting with "medical experts and military leadership," the Secretary of Defense "determined that mandatory vaccination against [COVID-19] is necessary to protect the Force and defend the American people." ECF No. 23-3 at 1. The Secretary of the Air Force likewise found that each service member must be vaccinated to ensure military readiness and the health and safety of airmen. *See* ECF No. 23-11. The Court must "give great deference" to the "professional military judgments" of these leaders regarding military readiness and the welfare of service members. *See Winter*, 555 U.S. at 24–25; *Goldman*, 475 U.S. at 507. And especially "when executive officials 'undertake to act in areas fraught with medical and scientific uncertainties' their judgments 'should not be subject to second-guessing by an unelected federal judiciary, which lacks the background, competence, and expertise to assess public health.'" *Short*, 2022 WL 1051852, at *5 (quoting *S. Bay United Pentecostal Church v. Newsom*, 140 S. Ct. 1613, 1613–14 (2020) (Roberts, C.J., concurring)).

These professional military judgments are supported by the evidence showing COVID-19's harm to the military and the unmatched protection that vaccination

affords. *See Church*, 2021 WL 5179215, at *18 (requiring vaccination is "supported by a lengthy record replete with data demonstrating the necessity of a general vaccine mandate"); *see, e.g.*, Decl. of Major Scott Stanley ¶¶ 3, 7–12, 16–20, ECF No. 74-5; Ex. 2 (Decl. of Colonel Tonya Rans) ¶¶ 8–13, 17, 21, 29, 41.[5] Even the risk of a single unvaccinated cadet is serious because each unvaccinated individual increases the rate of transmission. *See* Ex. 2 ¶ 17; Stanley Decl. ¶¶ 16–18; Decl. of Colonel James R. Poel ¶ 9, ECF No. 66-7.

Moreover, the appeal authority—the Air Force Surgeon General—conducted an individualized review of Plaintiff's religious accommodation request package and determined that his vaccination is necessary to protect the Air Force's compelling interests in "preventing the spread of disease among the force." Cadet Decl., Ex. A at A13; *see also id.* at A7 (noting the Air Force's "compelling governmental interest of mission accomplishment, including military readiness, unit cohesion, good order and discipline, and the health and safety of all cadets"). The Surgeon General determined that Plaintiff's "present duty assignment requires intermittent to frequent contact with others and is not fully achievable via telework or with adequate distancing." *Id.* at A13. The Surgeon General further found that Plaintiff's "student (trainee) status also requires frequent contact and immersion with multiple individuals, which would

---

[5] As established in these declarations, the COVID-19 vaccines are safe and effective. *See, e.g.*, Ex. 2 ¶¶ 8–13, 17, 21, 29, 41. In response, Plaintiffs have proffered leaked, incorrect data from the Defense Medical Epidemiology Database (DMED). That data has been debunked as an error in the DMED database. *See* Ex. 3 (Decl. of Lieutenant Colonel Scott Robinson, M.D.) ¶¶ 4–5, 7 (explaining the error in the DMED database and authenticating the DMED Information Paper); Ex. 4 (DMED Information Paper).

significantly impact training accomplishment if [Plaintiff], [Plaintiff's] instructors, or [Plaintiff's] fellow trainees were exposed or actively infected." *Id.* Thus, "[Plaintiff's] health status as a non-immunized individual in this dynamic environment, and aggregated with other non-immunized individuals in steady state operations, would place health and safety, unit cohesion, and readiness at risk." *Id.* As a professional military judgment from the highest-ranking military medical professional in the Air Force, this decision is due "great deference." *Goldman*, 475 U.S. at 507.

Plaintiff's does not contest that the Air Force has a compelling interest in preventing the spread of COVID-19 and maintaining a healthy force. Plaintiff's attached declaration simply asserts that Plaintiff's initial denial was not individualized because he received a denial "identical" to another cadet. Cadet Decl. ¶ 16. Although Plaintiff provides no evidence of this cadet's "identical" denial, presumably that cadet is also a student at USAFA and is therefore subject to the same program requirements as Plaintiff. *See* Ex. 1 ¶¶ 4–8. Similarity in denial letters across cadets subject to the same requirements at the same university should not be surprising, and does not indicate that the USAFA Superintended and Surgeon General did not consider each cadet's individual circumstances.[6]

Plaintiff's attached declaration also misleadingly argues that the Air Force has

---

[6] Moreover, the decision memorandums merely notify Plaintiff of the ultimate decision made as to the religious accommodation request. They are not meant to be, and do not purport to be, a comprehensive explanation of why the decision was made or a substitute for the entire religious accommodation package and materials or knowledge considered reviewed in reaching that decision (i.e., an administrative record). The full package includes, among other things, recommendations and inputs from Plaintiff's direct leadership concerning the impacts on academics, professional development, and whether less restrictive means were available. *See generally* Cadet Decl., Ex. A.

gone unaffected by COVID-19.  Cadet Decl. ¶ 17.  To the contrary, the record reflects that the military confronted significant and harmful effects from COVID-19 prior to the vaccination requirement.  *See, e.g.*, Stanley Decl. ¶¶ 3–19; *see also Church*, 2021 WL 5179215, at *18 (rejecting a similar argument); *Short*, 2022 WL 1051852, at *9 n.17 ("The notion that the military has not been significantly impacted is also belied by the nearly *400,000* infections and 93 deaths it has incurred.").  "And merely because the military has found ways to perform its duties despite the risks of COVID-19 does not mean it must endure these risks indefinitely when there are effective means of mitigating them."  *Short*, 2022 WL 1051852, at *9 ("[T]he military has heroically and with great ingenuity found ways to persevere during an unprecedented deadly pandemic.  But that does not mean that the military is not entitled to use the most effective means available to end its crisis footing and return to a semblance of normalcy."); *Dunn* PI Tr. at 37:4–7 ("[I]t does come down . . . to what level of risk is appropriate.  If the military can eliminate almost all risk through this policy, then there is a compelling governmental interest.").

Plaintiff also argues that USAFA guidance undermines the Air Force's compelling government interest simply because the guidance treats "vaccinated and unvaccinated cadets who test positive for COVID-19 . . . exactly the same" following a positive COVID-19 test.  Cadet Decl. ¶ 21.[7]  But the purpose of vaccination is to

---

[7] USAFA guidance requires anyone who tests positive for COVID-19—"regardless of vaccination status"—to isolate for at least 5 days and wear a mask for an additional 5 days.  AY 21-22 Cadet Wing COVID-19 ROEs, https://www.usafa.edu/app/uploads/CW-COVID-ROE-5-Jan-22.pdf.

reduce the total number of COVID-19 infections and to mitigate the negative effects of break-through infection. Thus, it would make little sense to treat cadets who test positive for COVID-19 differently based on whether they are vaccinated or unvaccinated. And although vaccinated individuals are less likely to contract or spread COVID-19, Ex. 2 ¶ 17, the Air Force has made the judgment that even that chance is not worth the risk.

The Air Force has made the professional judgement that stemming the spread of COVID-19 so as to maintain a medically fit force is a compelling governmental interest, and that judgment is due great deference. *See Goldman*, 475 U.S. at 507.

### 2. Vaccination is the Least Restrictive Means of Furthering the Government's Compelling Interest in Military Readiness.

As other courts have found in non-military settings, vaccination is the least restrictive means in fully accomplishing the government's interest in preventing the spread of infectious diseases in the workforce. *See, e.g.*, *Does 1–6 v. Mills*, --- F. Supp. 3d ---, 2021 WL 4783626, at *14 (D. Me. Oct. 13, 2021), *aff'd*, 16 F.4th 20 (1st Cir. 2021), *cert. denied*, 142 S. Ct. 1112 (2022); *see also Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 733 (2014) ("Other coverage requirements, such as immunizations, may be supported by different interests (for example, the need to combat the spread of infectious diseases) and may involve different arguments about the least restrictive means of providing them."). This reasoning has even greater force in the military setting, where the health of service members is key to military readiness. *See Short*, 2022 WL 1051852, at *7 (noting that "deference [to military judgments] is layered on

12

top of the deference that courts must give to expert policymakers on matters involving complex medical or scientific uncertainties"). A less restrictive means must serve the Air Force's interests "equally well" relative to vaccination. *Burwell*, 573 U.S. at 731.

After careful consideration of Plaintiff's request for a religious accommodation and his appeal, the Surgeon General concluded "[t]here are no less restrictive means available in [Plaintiff's] circumstance[s] as effective as receiving the [COVID-19] immunization in furthering these compelling government interests." Cadet Decl., Ex. A at A13. The USAFA Superintendent determined that "[o]ther measures, including masking and testing, do not provide comparable protection to [Plaintiff] and those with in-person contact." *Id.* at A7.

Plaintiff makes no attempt to present any alternatives to vaccination, and indeed none would be proper. Plaintiff lives in "very close confines" with the 4,000 cadets at USAFA such that masking and social distancing are impossible. Ex. 1 ¶ 6. Plaintiff is required to live in the cadet dormitories with his squadron. *Id.* He shares a room with one roommate, and that room is located in a small, ten-foot-by-ten-foot alcove with three more rooms that house five additional cadets. *Id.* In total, Plaintiff's squadron alone is comprised of 111 cadets living in several alcoves within the same dormitory building. *Id.* The cadets in Plaintiff's squadron "gather in hallways, the dining facility, and the squadron assembly room on a daily basis." *Id.* The whole squadron and the neighboring squadron share one male restroom. *Id.* Thus, "germs can spread very quickly" within the Cadet Wing and can be "challenging . . . to eradicate." *Id.* Under these circumstances, it would not be possible for Plaintiff to

13

socially distance or wear a mask at all times when around other cadets. *Id.* ¶ 9.
"Unless [Plaintiff] were to be isolated completely or required to wear his mask 24 hours
per day, 7 days per week (even while sleeping), he would still have an increased risk
of infected, at a minimum, his roommate and those with which he dines." *Id.*; *see also*
*Short*, 2022 WL 1051852, at *7 (finding that it is "reasonable to conclude—and
certainly not the Court's role to micromanage—that some servicemembers, including
Plaintiff, need to be able to work in close quarters with others" such that "social
distancing and surveillance testing are not possible.").

Plaintiff also cannot continue his studies entirely remotely. "Military education
and leadership training is a hands-on experience which requires in-person and
sometimes physical interactions with other cadets." Ex. 1 ¶ 8. Fourth-class cadets like
Plaintiff participate in weekly Direct Development Training sessions comprised of
physical fitness training, military knowledge, and drill practice. *Id.* ¶ 7. Physical
fitness training, which takes place both outside and indoors, generally requires spacing
of one to two feet between cadets. *Id.* All cadets also must participate in either
intercollegiate athletics or intramural sports; Plaintiff plays intramural flag football for
his squadron. *Id.* While Plaintiff can participate remotely for some requirements, he
cannot participate remotely in all military and athletic requirements. *Id.* Accordingly,
remote attendance "negatively impacts [a] cadet's professional development as a
future officer and leader in the" Air Force. *Id.* ¶ 8. This is concerning both for the
sake of the cadet and for the sake of the Air Force, since a cadet's failure to get
vaccinated subsequently "limit[s] the ability of the U.S. Air Force to utilize the

education and training provided . . . in the future." *Id.*; *see also id.* (explaining that a four-year education at USAFA is valued at over $416,000, which cadets receive at no cost). The number of cadets at USAFA is limited by statute, so the Air Force cannot simply add more cadets to make up for any lag in professional development due to inability to fully participate in USAFA programming. *See id.* ¶ 5.

Nor are regular testing and temperature checks a sufficient alternative. Temperature checks identify only if a member has a fever; they do not detect COVID-19. Poel Decl. ¶ 16. And although "[s]erial testing will curtail the exposure in the unit after the infection is detected," it "is not as effective as preventing the original infection." *Id.* ¶ 20. Indeed, the military experienced multiple COVID-19 outbreaks when it merely required service members to undergo routine testing requirements, rather than requiring vaccination. Stanley Decl. ¶¶ 7–8; *see Does 1-6*, 16 F.4th at 33 (noting same true in Maine). Nor do testing and temperature checks prevent a cadet who tests positive from suffering serious health outcomes, such as long COVID, hospitalization, or death. Poel Decl. ¶ 21. Moreover, the "virus can be easily transmitted to others prior to symptom development and therefore may infect significant numbers before being identified." Ex. 2 ¶ 10; *see also* Poel Decl. ¶¶ 16–20.

In sum, the Air Force's vaccine policy is narrowly tailored to serve compelling military interests. The military is best situated to assess whether a specific unvaccinated individual puts the military mission at risk, or whether feasible, less restrictive alternatives are available. *See Orloff*, 345 U.S. at 94 ("Orderly government requires that the judiciary be as scrupulous not to interfere with legitimate Army

15

matters as the Army must be scrupulous not to intervene in in judicial matters."); *Short*, 2022 WL 1051852, at *7 (deferring to the military's "judgment that only vaccination will allow Plaintiff to perform his essential duties during the pandemic with an acceptable level of risk to the safety and effectiveness of both himself and his unit"). The Air Force has concluded that there are no lesser restrictive means of achieving its interest. That judgment is entitled to considerable deference, and RFRA does not compel the military to adopt an inferior, less effective measure than vaccines. For these reasons, Plaintiff has not shown a likelihood of success on his RFRA claims so as to warrant the extraordinary relief he seeks.

## II.   Plaintiff Does Not Face Irreparable Harm.

Plaintiff also fails to establish any harm that is either immediate or irreparable. He argues that if he does not obey the order to get vaccinated, he will suffer "irreparable damage to his military career." Mot. 16. Plaintiff proffers no further explanation of this speculative concern, and such concerns about how a career will proceed is not the kind of harm that can a TRO can remedy.

Plaintiff cannot otherwise establish any irreparable harm that would warrant a TRO. Plaintiff faces possible administrative action, non-judicial punishment, and disenrollment from USAFA for failure to vaccinate pursuant to a lawful order. None of these harms are irreparable. Rather, "a delay in completing courses" due to disenrollment "from [a military academy] does not necessarily constitute irreparable harm," and Plaintiff "does not explain why any delay" while waiting for the merits of this case to be resolved "would not be compensable with monetary damages." *Spadone*

16

*v. McHugh*, 842 F. Supp. 2d 295, 302 (D.D.C. 2012) (holding former cadet disenrolled from United States Military Academy failed to show that he would suffer irreparable harm if he was not reenrolled); *cf. Martin v. Stone,* 759 F. Supp. 19, 21 (D.D.C. 1991) (stating that "the fact that the plaintiff is falling behind her peers at the Academy during the pendency of her challenge to her separation" did not constitute irreparable harm); *Hamblet v. Brownlee,* 319 F. Supp. 2d 422, 430 (S.D.N.Y. 2004) (holding that the possible damage to a West Point cadet's reputation and career caused by a nine-month suspension did not constitute irreparable injury). If Plaintiff ultimately prevails on the merits of his claims, Plaintiff can reenroll at USAFA without suffering any irreparable harm in the meantime. *See, e.g.*, *Hodges v. Bd. of Supervisors of La. State Univ. & Agric. & Mech. Coll.*, No. CV 20-1456, 2020 WL 5017665, at *3–4 (E.D. La. Aug. 25, 2020) (collecting cases for the proposition that "delays in education pending resolution of disciplinary processes where reinstatement is sought can be compensated through monetary relief"); *Baer v. Nat'l Bd. of Med. Exam'rs*, 392 F. Supp.2d 42, 49 (D. Mass. 2005) (inability to continue as medical student without interruption is not a harm that is irreparable to potential medical career).

"The harms stemming from [disenrollment] are also not irreparable for the additional reason that Plaintiff has an opportunity to challenge [disenrollment] through the administrative process even before seeking relief in court." *Short*, 2022 WL 1051852, at *9. Indeed, although Plaintiff alleges he is on the cusp of being disenrolled, the process to disenroll a cadet has multiple levels of review, as described above in Part I.C. These remedies make plain that Plaintiff does not face irreparable

harm by the initiation of disenrollment proceedings.

Plaintiff also argues that he will suffer irreparable harm by the loss of his constitutional and statutory rights. Mot. at 6. But, as shown above, Plaintiff addressed the merits in only a cursory fashion and has not established a likelihood of success on the merits on any of his claims. Thus, no presumption of irreparable harm is warranted. *See Short*, 2022 WL 1051852, at *9 ("[B]ecause this Court has found that Plaintiff failed to demonstrate a sufficient likelihood of success on the merits of his religious freedom claims, there is no presumption of irreparable harm."); *Dunn* PI Tr. at 45:16–18 ("[I]n a case where plaintiff has failed to demonstrate a sufficient likelihood of success on the merits, then a presumption wouldn't apply.").

## III. An Order Requiring USAFA to Disregard Plaintiff's Unvaccinated Status and Retain Him for Officer Commissioning Would Inflict Irreparable Damage on the Air Force and the Public.

Plaintiff fails entirely to address the harm to the government or the public interest, which alone warrants denial of his motion. *See ACLU of Fla., Inc. v. Miami-Dade Cnty. Sch. Bd.*, 557 F.3d 1177, 1198 (11th Cir. 2009) ("Failure to show any of the four factors is fatal[.]");   Local Rule 6.01(b) ("The legal memorandum *must* establish . . . the nature and extent of [the] public interest affected.") (emphasis added).

In any event, an injunction allowing Plaintiff to remain at USAFA unvaccinated would pose immediate and irreparable harm on the Air Force. To begin, Plaintiff's unvaccinated status threatens harm to Plaintiff, the 3,999 other cadets at USAFA, and the staff at USAFA. Ex. 1 ¶ 9. Plaintiff lives and studies in constant close contact with other cadets. *Id*. ¶ 6; *see also Garland v. N.Y.C. Fire Dep't*, ---F. Supp.

3d---, 2021 WL 5771687, at *9 (E.D.N.Y. Dec. 6, 2021) (noting the city's "significant interest" in preventing the spread of COVID-19 among firefighters who work in "close proximity" with each other "while on duty, [and] in their fire stations").   More broadly, a TRO would undercut the maintenance of military good order and discipline. *See Miller v. United States*, 42 F.3d 297, 303 (5th Cir. 1995) (stating that concern for preserving military discipline is "the most important consideration in any single case" (quoting *Scales v. United States*, 685 F.2d 970, 973 (5th Cir. 1982))).   No military can function where service members—especially student cadets not yet even commissioned—define the terms of their own military service, including which orders they choose to follow.   *See Chappell v. Wallace*, 462 U.S. 296, 300 (1983) ("The inescapable demands of military discipline and obedience to orders cannot be taught on battlefields; the habit of immediate compliance with military procedures and orders must be virtually reflex with no time for debate or reflection.").   The TRO Plaintiff demands here may also encourage other cadets and service members to attempt to bypass the military's processes and ask courts to enter similar injunctive relief, which "'in the aggregate' present[s] the possibility of substantial disruption and diversion of military resources" and would severely undermine the kind of discipline and adherence to orders essential for military service. *Parrish v. Brownlee*, 335 F. Supp. 2d 661, 669 (E.D.N.C. 2004); *see Chappell*, 462 U.S. at 305 (courts are "ill-equipped to determine the impact upon discipline that any particular intrusion upon military authority might have").   Proceedings in this Court—where Plaintiffs and non-plaintiffs alike have filed numerous emergency motions for TROs before the military even

19

begins its months-long separation proceedings—make clear that this is no idle concern.

## IV.   Plaintiff's Failure to Follow the Local Rules Warrants Denial of His Motion.

Plaintiff also fails to meet the procedural requirements for obtaining the extraordinary relief of a TRO.  Under L.R. 6.01(a), a plaintiff must include "a precise and verified description of the conduct . . . subject to restraint" and "a proposed order." "And Rule 65(d) requires a temporary restraining order to, among other things, 'describe in reasonable detail—and not by referring to the complaint or other document—the act or acts restrained or required.'"  *Art Headquarters, LLC v. Lemak*, No. 8:19-cv-2899-T-36JSS, 2019 WL 6340245, at *3 (M.D. Fla. Nov. 27, 2019) (quoting Fed. R. Civ. P. 65(d)(1)(C)).   Plaintiff failed to file a proposed order or describe the acts to be restrained and requests only that the Court "preserve the status quo ante."  Mot. at 1.  Such a request is insufficient to issue a TRO under Fed. R. Civ. P. 65 and L.R. 6.01.  And to the extent Plaintiff's request is tantamount to requiring the Air Force to ultimately commission Plaintiff as an officer, the Court cannot and should not order such relief.  *See, e.g.*, *U.S. Navy SEALs 1-26*, 142 S. Ct. 1301; *Orloff*, 345 U.S. 83; *Speigner v. Alexander*, 248 F.3d 1292, 1298 (11th Cir. 2001); *Harkness v. Sec'y of Navy*, 858 F.3d 437, 443 (6th Cir. 2017).

## CONCLUSION

For all of these reasons, Plaintiff's motion for a temporary restraining order should be denied.

Dated:  April 15, 2022                              Respectfully submitted,

BRIAN M. BOYNTON  
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS  
Director, Federal Programs Branch

ANTHONY J. COPPOLINO  
Deputy Director

/s/ *Cassandra Snyder*  
ANDREW E. CARMICHAEL  
AMY E. POWELL  
Senior Trial Counsel  
ZACHARY A. AVALLONE  
COURTNEY D. ENLOW  
CATHERINE M. YANG  
R. CHARLIE MERRITT  
CASSANDRA M. SNYDER (DC Bar No. 1671667)  
Trial Attorneys  
United States Department of Justice  
Civil Division, Federal Programs Branch  
1100 L Street, N.W.  
Washington, DC 20005  
Tel: (202) 451-7729  
Fax: (202) 616-8460  
Email: cassandra.m.snyder@usdoj.gov

*Counsel for Defendants*