UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

NAVY SEAL 1, et al.,

    Plaintiffs,

v.                                                        CASE NO. 8:21-cv-2429-SDM-TGW

LLOYD AUSTIN, et al.,

    Defendants.
_____/

## PRELIMINARY INJUNCTION AND ORDER

Unless preliminary relief issues, USMC Captain — a devout and observant Muslim — must either accept a COVID-19 vaccination in violation of his religious belief or undergo "punitive [or] other administrative action," including possible separation from service. (Doc. 121 at 2) Granting preliminary relief to other service-member plaintiffs, a February 18, 2022 order (Doc. 111 at 47–48) in this action preliminarily enjoins the defendants:

> (1) from enforcing against Navy Commander and Lieutenant Colonel 2 any order or regulation requiring COVID-19 vaccination and
>
> (2) from any adverse or retaliatory action against Navy Commander or Lieutenant Colonel 2 as a result of, arising from, or in conjunction with Navy Commander's or Lieutenant Colonel 2's requesting a religious exemption, appealing the denial of a request for a religious exemption, requesting reconsideration of the denial of a religious exemption, or pursuing this action or any other action for relief under [the Religious Freedom Restoration Act] or the First Amendment.

Because the parties advanced an overly broad reading of the preliminary injunction, a March 11, 2022 order (Doc. 133 at 3) clarifies the February 18 order and explains, "the defendants remain at liberty to issue commands, assignments, orders, and the like in the normal course of business . . . ." Understood correctly, the preliminary injunction employs the narrowest means available to prevent forced vaccination, to prevent separation, and to prevent retaliation against a service member for pursuing a statutory right under RFRA.

Reviewing a different injunction in a different action in a different circuit — the Fifth Circuit, the United States Supreme Court partially stayed a Texas injunction "insofar as [the injunction] precludes the Navy from considering respondents' vaccination status in making deployment, assignment, and other operational decisions." *Austin v. U.S. Navy Seals 1–26*, 142 S. Ct. 1301 (2022). (Of course, with the benefit of the March 11 order, the preliminary injunction in this action includes no equivalent or even comparable prohibition. The preliminary injunction in this action prevents only forced vaccination, separation from service, and retaliation based on a service member's assertion of the right to a hearing in district court under RFRA.)

In the present action, the defendants moved in the Eleventh Circuit to stay the preliminary injunction pending appeal. In response, both claiming that the Fifth Circuit injunction stayed by the Supreme Court was a "comparable preliminary injunction" (but, of course, not specifying the comparison) and repeating exactly the words in the Supreme Court's stay, the Eleventh Circuit granted-in-part the motion to stay

the February 18 injunction (as clarified) "insofar as it precludes the Navy from considering the plaintiffs' vaccination status in making deployment, assignment, and other operational decisions[.]" *Navy Seal 1 v. Sec'y of the U.S. Dep't of Def.*, No. 22-10645 (11th Cir. Mar. 30, 2022). In sum, the Eleventh Circuit's order purports to remove a prohibition that the district court's order explicitly never imposed.

Consistent with the February 18 injunction (as clarified), consistent with the Supreme Court's partial stay in the Fifth Circuit action, and consistent with the Eleventh Circuit's partial stay (which was, again, not responsive to the earlier preliminary injunction in this action), this order — to preserve a service member's rights under RFRA — grants-in-part USMC Captain's motions (Docs. 121, 147) for preliminary injunctive relief and, pending a full adjudication, prohibits only forced vaccination, separation from service, and retaliation, which is the narrowest effective remedy available (that is, available unless the Eleventh Circuit issues an opinion approving forced vaccination, approving separation from service pending adjudication, or approving retaliation).

## BACKGROUND

Born into a Muslim home (and with a father who is an imam), USMC Captain enlisted in the Marine Corps. Two years later, after earning an undergraduate degree, USMC Captain completed officer candidate school and received a commission as a second lieutenant. USMC Captain graduated basic school, attended the military police basic officer course, and received an assignment as a platoon

- 3 -

commander for a law enforcement battalion. During the COVID-19 pandemic, the Marine Corps assigned USMC Captain to serve as an anti-terrorism, force-protection officer. As an anti-terrorism officer, USMC Captain authored the "Critical Infrastructure Protection Program," and the Marine Corps entrusted USMC Captain to revise "the standard operating procedures on tracking personnel traveling outside the Continental United States[.]" (Doc. 121-1 at 3) The Marine Corps deployed USMC Captain to several destinations, including to Djibouti as the "Officer in Charge of planning Base Cluster Defense." (Doc. 121-1 at 3) In May 2021, the Marine Corps assigned USMC Captain to a recruit-training battalion in Parris Island, South Carolina. Attached to a non-deployable billet, USMC Captain supervises drill instructors and recruits during the thirteen-week training course that every recruit must complete to become a Marine. USMC Captain has "graduated over 160 recruits into the U.S. Marines and trained and mentored 24 non-commissioned officers." (Docs. 121-1 at 4, 132-2 ¶ 8)

USMC Captain's Islamic belief requires abstention from "that which is *haram* — forbidden — including the destruction and commoditization of innocent human life as exemplified by the commercial use of human fetal cell lines derived from abortions." (Doc. 121-1 at 2) Based on his religious beliefs, USMC Captain

- 4 -

requested from the Marine Corps a religious accommodation.[1] (Doc. 132-2 ¶ 9) In accord with Marine Corps procedure, a chaplain interviewed USMC Captain and concluded that "[USMC Captain] firmly holds to his religious belief regarding several conflicts between taking the vaccine and the Qur'an." (Doc. 121-1 at 6) Finding USMC Captain's beliefs sincere, the chaplain verifies that USMC Captain "expressed his religious beliefs with extensive research and deep conviction." (Doc. 121-1 at 6) The chaplain identified USMC Captain as credible and with a pattern of conduct consistent with the accommodation request. (Doc. 121-1 at 7) Nonetheless, the Deputy Commandant for Manpower and Reserve Affairs denied USMC Captain's religious accommodation request.

USMC Captain timely appealed. Three months later, the Assistant Commandant denied the appeal. In the appellate denial letter (Doc. 121-1 at 9), the Assistant Commandant acknowledged that USMC Captain harbors sincere beliefs and recognized that USMC Captain bases the exemption request (1) "on [the] belief that the use of fetal stem cells from aborted fetuses is contrary to Islam," (2) on the "[concern] that the vaccine is experimental and therefore may only be used in extreme circumstances under Islamic law," and (3) on an "object[ion] to mRNA technology."

---

[1] An earlier order recapitulates the Marine Corps' requirement to receive a COVID-19 vaccination and the Marine Corps' procedure for requesting a religious exemption. (Doc. 111 at 7–9)

The Assistant Commandant determined that "[USMC Captain's] religious beliefs are not substantially burdened by the requirement to receive a COVID-19 vaccine." (Doc. 121-1 at 10)  Employing language identical to Lieutenant Colonel 2's appellate denial letter (Doc. 66-3 at 3), the Assistant Commandant concluded that no substantial burden results from accepting the Pfizer vaccine because "fetal stem cells are neither used in the manufacture of the Pfizer COVID-19 vaccine nor are they present in the vaccine itself." (Doc. 121-1 at 10)  Attempting to address USMC Captain's objection to an "unproven" vaccine with "various side effects," the Assistant Commandant states that "the Pfizer COVID-19 vaccine has been shown to be safe and effective for use in adults." (Doc. 121-1 at 10)  Finally, the Assistant Commandant insists that "[i]f [USMC Captain's] concern is with mRNA technology, then [USMC Captain] can receive the Johnson and Johnson COVID-19 vaccine, which does not use mRNA." (Doc. 121-1 at 10)  Although claiming that the order to receive COVID-19 vaccination imposes no substantial burden on USMC Captain's religious belief, the Assistant Commandant cites no source, provides no analysis on any vaccine's association or lack of association to fetal stem cells derived from aborted fetuses, and identifies no vaccine that overcomes each of USMC Captain's three bases for objecting.

"[A]ssuming that COVID-19 vaccination substantially burdens [USMC Captain's] religious beliefs," the Assistant Commandant "weighed" USMC Captain's "assertions" against "the government's compelling interests in military readiness and

in the health and safety of the force."  (Doc. 121-1 at 11)  The Assistant Commandant asserts "consider[ing] such necessary elements of mission accomplishment as (1) military readiness, (2) unit cohesion, (3) good order and discipline, and (4) the health and safety of the force."  (Doc. 121-1 at 10)

Without quantifying or specifying the threat to USMC Captain's unit attributable to USMC Captain's unvaccinated status and without citing any medical, scientific, or other source — the Assistant Commandant states:

> The COVID-19 vaccine is the most effective and readily available tool the Marine Corps has to keep service members healthy and safe, and to ensure that the Marine Corps continues to be able to accomplish its mission of protecting vital national interests. . . .
>
> [P]ersonnel who are unvaccinated do not just put themselves at risk, they also risk the health and medical readiness of other persons within their unit, which in turn decreases the military readiness of the unit and the Marine Corps as a whole. For a unit to function effectively, either in garrison, in field training, or in combat, all personnel must be able to perform their individually assigned duties which ensures military readiness, another of the government's compelling interest. . . .
>
> While masking, social distancing, hygiene, teleworking, and other similar measures, individually or in combination, have been shown to help slow the spread of the virus, they are simply not as effective as vaccination. Moreover, these measures are often incompatible with the demands of military life . . . .
>
> While the [Deputy Commandant's denial] letter may not have been individually tailored to your satisfaction, this does not mean that the adjudication authority did not consider the entirety of your individual request, and weigh the factors presented in order to reach a decision.

- 7 -

(Doc. 121-1 at 11)  Relying on generalized and ethereal conclusions about how COVID-19 affects the total force, the Assistant Commandant avoids identifying the marginal benefit, if any, of USMC Captain's receiving a vaccine and remains silent on the marginal cost of replacing USMC Captain.  (Of course, in admitting that the Deputy Commandant's denial letter features insufficient "tailoring," the Assistant Commandant identifies — but fails to remedy — the military's deficiency, the failure to demonstrate that the denial of USMC Captain's accommodation request results from analysis directed "to the person.")

     The Marine Corps ordered USMC Captain to receive vaccination no later than March 3, 2022, and USMC Captain moved (Doc. 121) on an emergency basis for temporary injunctive relief.  The Marine Corps extended the time within which USMC Captain must undergo vaccination and on March 28, 2022, ordered USMC Captain to undergo vaccination not later than April 1, 2022.  (Doc. 147-1)  Anticipating no other extension, USMC Captain moved (Doc. 147) for emergency injunctive relief.  The Marine Corps' March 28 order confirms that "violation of [the order] may subject [USMC Captain] to punitive and/or administrative action." (Doc. 147-1)  An April 1, 2022 order (Doc. 150) grants USMC Captain's motions and through April 15, 2022, temporarily enjoins the defendants "(1) from enforcing against USMC Captain any order or regulation requiring COVID-19 vaccination and (2) from any retaliatory action as a result of, or arising from, USMC Captain's requesting a religious accommodation, appealing the denial of a request for a religious

accommodation, or pursuing this action or any other action for relief under RFRA or the First Amendment." (Doc. 150 at 5) The order schedules for April 11, 2022, a hearing on further preliminary relief. At the April 11, 2022 hearing, USMC Captain testified and moved additional exhibits (Docs. 163-1–163-6) into evidence. Offering no new evidence of any kind, the defendants chose not to rebut USMC Captain, whose testimony was entirely credible and persuasive.

## DISCUSSION

USMC Captain moves (Docs. 121, 147) for a preliminary injunction and alleges that the denial of his request for a religious accommodation from COVID-19 vaccination violates RFRA. Preliminary injunctive relief issues only if the movant shows (1) that the movant enjoys a substantial likelihood of success on the merits, (2) that the movant will suffer an imminent and irreparable injury absent an injunction, (3) that the injury to the movant outweighs the injury to the enjoined party, and (4) that the injunction is not adverse to the public interest. *Siegel v. LePore*, 234 F.3d 1163, 1176 (11th Cir. 2000).

A. <u>Substantial likelihood of success</u>

To state a prima facie case under RFRA, USMC Captain must demonstrate that the order to receive a COVID-19 vaccine substantially burdened his sincerely held religious belief. Despite the Assistant Commandant's boilerplate assertion (Doc. 121-1 at 10), USMC Captain credibly shows that the order to receive the COVID-19 vaccine substantially burdens his faith, which precludes his accepting into

his body any substance that is known or likely to be *haram*. Seemingly conceding the sincerity of USMC Captain's religious beliefs, the Assistant Commandant states that the order to receive COVID-19 vaccination "does not substantially burden [USMC Captain's] sincerely held religious belief." The Assistant Commandant concludes that USMC Captain suffers no substantial burden "because fetal stem cells are neither used in the manufacture of the Pfizer vaccine nor are they present in the vaccine itself." (Doc. 121-1 at 10) Also, the Assistant Commandant claims that the Johnson & Johnson vaccine satisfies USMC Captain's "concern" with "mRNA technology" and that the Pfizer vaccine "has been shown to be safe and effective." (Doc. 121-1 at 10)

The Assistant Commandant concludes that the connection between the vaccination and USMC Captain's religious practice of refusing the introduction of a *haram* substance into his body is too attenuated. However, that conclusion "dodges the question that RFRA presents . . . and instead addresses a very different question that the federal courts [and the military] have no business addressing." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 724 (2014). The Assistant Commandant's insistence that "fetal stem cells are neither used in the manufacture of the Pfizer vaccine nor are they present in the vaccine itself" and that the Pfizer vaccine "has been shown to be safe and effective" does not defeat the sincerity of USMC Captain's belief that the

COVID-19 vaccines are *haram* but instead challenges the validity of the belief.[2] *Hobby Lobby* prohibits the Assistant Commandant's conclusion. Because USMC Captain shows that his objection to receiving COVID-19 vaccination results from "an honest conviction" about the conduct that Islam permits and prohibits, USMC Captain demonstrates a sincere religious objection to receiving COVID-19 vaccination. *Hobby Lobby*, 573 U.S. at 575. And because the Marine Corps' order — on threat of separation or other punitive action — to receive COVID-19 vaccination puts USMC Captain "to the choice" of accepting vaccination or violating his sincerely held religious belief, the order substantially burdens USMC Captain's sincere religious exercise. *See Holt v. Hobbs*, 574 U.S. 352, 361 (2015). In opposing USMC Captain's motions for injunctive relief, the defendants include no argument to the contrary and offer no support for the Assistant Commandant's conclusion. USMC Captain satisfies his threshold burden under RFRA.

---

[2] Further, the Assistant Commandant's boilerplate conclusion ignores or fails to respond to several of USMC Captain's objections to receiving COVID-19 vaccination. The Assistant Commandant's conclusion that "fetal stem cells are neither used in the manufacture of the Pfizer vaccine nor are they present in the vaccine itself" conflates the use of fetal stem cells in the manufacturing of a vaccine with USMC Captain's objection — that is, to any "use of fetal stem cells from aborted fetuses," including in the development of, or testing the efficacy of, the vaccine (a stage that is conspicuously absent from the Assistant Commandant's assurance). Although the Assistant Commandant states that the Johnson & Johnson vaccine satisfies USMC Captain's "concern" with "mRNA technology," the Assistant Commandant fails to recognize that fetal cell lines were used in the production of the Johnson & Johnson vaccine. Thus, the Assistant Commandant identifies no vaccine compliant with each of USMC Captain's reasons for objecting.

As a February 18, 2022 order (Doc. 111 at 32) explains, RFRA requires the defendants to justify this substantial burden on religious exercise by showing — through analysis directed "to the person" — that the denial of a request for religious accommodation and consequent order to receive COVID-19 vaccination "(1) is in furtherance of a compelling governmental interest and (2) is the least restrictive means of furthering that compelling governmental interest." In satisfying this burden of applying RFRA to the person, "broadly articulated governmental interests and broadly articulated demands of military life" will not suffice. (Doc. 111 at 38) After reviewing the boilerplate denials of Navy Commander's and Lieutenant Colonel 2's appeals, the February 18 order concludes (1) that "each letter predicates [the] denial on a broadly articulated interest in 'the health and safety of the force' and on the assertion that broadly articulated 'demands of military life' render ineffective any less restrictive means . . . to mitigate COVID-19, (2) that these broadly articulated interests and generalized assessments of less restrictive means fail to satisfy RFRA's burden, and (3) that, consequently, Navy Commander and Lieutenant Colonel 2 demonstrate a substantial likelihood of a successful RFRA challenge." (Doc. 111 at 37–38)

A review of USMC Captain's denial letters (Doc. 121-1 at 8–12) reveals the same infirmities that plague the Marine Corps' denial of Navy Commander's and Lieutenant Colonel 2's accommodation requests. In language identical to Lieutenant Colonel 2's denial letter, the Marine Corps denies USMC Captain's appeal

- 12 -

because of "the government's compelling interests in military readiness and in the health and safety of the force." *Compare* (Doc. 60-2 at 13) *with* (Doc. 121-1 at 11) Although USMC Captain proposes masking and social distancing to mitigate the spread of COVID-19, the denial letter concludes (again, in language identical to Lieutenant Colonel 2's denial letter) that these less restrictive alternatives "are less effective than vaccination" and "are often incompatible with the demands of military life." (Doc. 121-1 at 3).

That the military must demonstrate "to the person" analysis is no mere formality. RFRA requires that a district court "'scrutinize the asserted harm of granting specific exemptions to particular religious claimants' — in other words, to look to the marginal interest in enforcing the[] mandate . . . ." *Hobby Lobby*, 573 U.S. at 726 (citing *Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 431 (2006)). But the Deputy Commandant's denial letter and the Assistant Commandant's appellate denial letter reveal only generalized and ethereal conclusions about the interests of the "Total Force." Neither letter demonstrates analysis directed "to the person."

For example, in denying USMC Captain's request, the Deputy Commandant issued a one-page letter, which states:

> In making this determination, I considered your request dated 1 October 2021, the command endorsements, advice from the Director, Health Services, Headquarters, U.S. Marine Corps, and the recommendation of the Religious Accommodation Review Board. Additionally, I considered your right to observe the tenets of your sincerely held religious beliefs, and the government's compelling interests in mission accomplishment, including military readiness and the health and safety of the Total

> Force. I also considered whether an exception to the vaccination requirement is the least restrictive means of furthering the government's compelling interest. Finally, I consulted with legal counsel.
>
> Per DoDI 1300.17, my decision must be consistent with mission accomplishment, including consideration of potential medical risks to other persons comprising the unit or organization. Immunizations are a critical component of individual and unit readiness. This compelling interest is not unique to the COVID-19 vaccination, and cannot be accomplished with the requested exception. I find that there is no less-restrictive way of accommodating your request that ensures military readiness and the preservation of the health of the force.

(Doc. 121-1 at 8)  The Deputy Commandant includes no detail on what "advice" the director of Health Services provided, what formed the foundation for that advice, how the Deputy Commandant applied the advice to USMC Captain's request, and what limit, if any, the advice warrants.  Although claiming that "Immunizations are a critical component of individual and unit readiness," the Deputy Commandant identifies no evidence detailing why the vaccination of USMC Captain is on the margin a critical component of USMC Captain's individual or unit readiness.  Further, the denial letter places USMC Captain at a distinct disadvantage on appeal.  USMC Captain had no ability to rebut the sources on which the Deputy Commandant relied and no opportunity to challenge the Deputy Commandant's reasoning because the Deputy Commandant provided neither sources nor reasoning.  Employing similar conclusory statements, the appellate denial letter delivered to USMC Captain presents little or nothing for a district court to scrutinize.  The Deputy Commandant's letter offers only a simulacrum of reasoning, but never reasoning itself.

To permit adequate scrutiny of a particular denial, RFRA requires that the defendants offer more than "generalized statements of interest, unsupported by specific and reliable evidence." *Davila v. Gladden*, 777 F.3d 1198, 1206 (11th Cir. 2015). In *Davila*, a federal prisoner asked to bring into the prison a set of beads necessary for a Santeria ritual. Under prison policy requiring that "religious items . . . be received only from 'approved vendors' listed in the prison catalog," the prison denied the prisoner's request because the beads could not be purchased from the catalog.

The prisoner sued and alleged that the refusal violated RFRA. Relying on "a prison warden's terse affidavit" and "offer[ing] little more than a conclusory assertion" that "permitting inmates to obtain personal religious items from unauthorized sources . . . would drastically increase an inmate's ability to smuggle contraband [or] weapons" and that the individual screening of a religious item from an unauthorized source would "have a major impact on prison resources," the prison employees argued that the refusal in accord with the prison policy satisfied RFRA. 777 F.3d at 1203–06.

Holding that the prison employees "failed, as a matter of law, to meet their burden of demonstrating that their policy furthers a compelling government interest," *Davila* instructs that an official "cannot simply utter[] magic words . . . and as a result receive unlimited deference from those of us charged with resolving these disputes." 777 F.3d at 1206 (citing *O Centro*, 546 U.S. at 438). The conclusory assertions by the prison employees "left [the Eleventh Circuit] to wonder" the number of similarly

- 15 -

situated objectors, the prison's process for screening objects, past incidents justifying the warden's fears, and "the actual costs and time the prison would need to spend on screening" religious items purchased from unauthorized sources. 777 F.3d at 1206. *Davila* continues that the prison employees failed to show "that the[] wholesale ban on religious items outside the catalog is the least restrictive means for furthering" a compelling interest. 777 F.3d at 1207. Thus, despite the "due deference" afforded "to the experience and expertise" of prison employees to maintain good order, security, and discipline, *Davila* finds RFRA's requirements unmet. 777 F.3d at 1206 (concluding that the district court erred in granting summary judgment).

Like the prison employees in *Davila*, the defendants fail to show by specific and reliable evidence that the Marine Corps' denial of USMC Captain's accommodation request satisfies RFRA's burden. RFRA demands a "to the person" analysis such as this: Given the virtually complete vaccination of the Marine Corps and given the residual chance of injury to USMC Captain from the vaccination and the residual chance of transmission of COVID-19 by or to a vaccinated person despite the vaccination, and given the description of USMC Captain's assignment and the investment in training and equipping him to perform that assignment, can the Marine Corps reasonably accommodate USMC Captain's refusing the vaccine without any unreasonable injury to the readiness, safety, and health of the force? No discussion of that sort appears anywhere from the defendants in this instance or any other.

Instead, the Assistant Commandant conclusively and dismissively "consider[s] a variety of unique factors specific to the requestor," including, among others, "where the requestor lives," "where the requestor works," whether the requestor can work remotely, and whether the requestor is attached to a deployable unit or required to serve on a vessel. (Doc. 118-5 at 5–6, and Ex. A)  USMC Captain's denial supports this assertion: The Assistant Commandant concludes that an exemption "poses a significant risk to military readiness" because USMC Captain "works as a series commander" — a "critical role that cannot be performed remotely and that places [USMC Captain] in close proximity to drill instructors and recruits" — because USMC Captain might "eat, sleep, train, and hygiene in a group setting," and because USMC Captain "must be world-wide deployable even when . . . not currently in a deploying command."  The Assistant Commandant's statements include no reasoning, but rather generalizations tweaked to mimic reasoning.

Because the Marine Corps predicates USMC Captain's denial on broadly claimed governmental interests and generalized assessments of least restrictive means, the Marine Corps fails to satisfy RFRA's burden "to the person."  For these reasons and others stated in the February 18 order, USMC Captain enjoys a substantial likelihood of successfully challenging under RFRA the Marine Corps' denial of USMC Captain's request for a religious accommodation from the requirement to receive vaccination from COVID-19.

B.   Irreparable Harm

To warrant preliminary relief, USMC Captain must establish a substantial threat of immediate and irreparable harm. The Marine Corps' March 28, 2022 order forces USMC Captain to choose between accepting COVID-19 vaccination and subjecting himself "to punitive and/or administrative action." "The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury." *Elrod v. Burns*, 427 U.S. 347, 373 (1976). The protection against a loss of First Amendment freedoms applies with equal force against a violation of RFRA. *Opulent Life Church v. City of Holly Springs*, 697 F.3d 279, 295 (5th Cir. 2012). If the injury "constitute[s] 'direct penalization, as opposed to incidental inhibition' of First Amendment rights" the injury "[cannot] be remedied absent an injunction." *KH Outdoor, LLC v. City of Trussville*, 458 F.3d 1261, 1272 (11th Cir. 2006) (citing *Hohe v. Casey*, 868 F.2d 69, 72–73 (3d. Cir. 1989)). Because USMC Captain faces immediate processing for separation or other punishment, the record shows irreparable harm will result absent injunctive relief.

C.   Balance of the equities and public interest

The balance of the equities and the public interest, the final two requirements for injunctive relief, merge if the military is the opposing party. *Swain v. Junior*, 958 F.3d 1081, 1091 (11th Cir. 2020). RFRA recognizes that a service member enjoys a protected interest in avoiding substantial burdens on religious exercise, and "[t]he vindication of constitutional rights and the enforcement of a federal statute serve the

public interest almost by definition." *League of Women Voters of Fla. v. Browning*, 863 F. Supp. 2d 1155, 1167 (N.D. Fla. 2012). Further, in accord with *Navy Seal 1 v. Sec'y of the U.S. Dep't of Def.*, No. 22-10645 (11th Cir. Mar. 30, 2022), no part of this preliminary relief "precludes the [Marine Corps] from considering [USMC Captain's] vaccination status in making deployment, assignment, and other operational decisions . . . ." USMC Captain requests only narrow, specific, and temporary relief and only that is granted in this order. Both the balance of the equities and public interest favor USMC Captain.

## CONCLUSION

USMC Captain's motions (Docs. 121, 147) for preliminary injunctive relief are **GRANTED-IN-PART**. The defendants are **PRELIMINARILY ENJOINED** (1) from enforcing against USMC Captain any order or regulation requiring COVID-19 vaccination, (2) from separating USMC Captain from the Marine Corps, and (3) from any retaliatory action against USMC Captain as a result of, or arising from, USMC Captain's requesting a religious accommodation, appealing the denial of a request for religious accommodation, or pursuing this action or any other action for relief under RFRA or the First Amendment. Nothing in this injunction precludes

the defendants from considering USMC Captain's vaccination status in making deployment, assignment, and other operational decisions.

ORDERED in Tampa, Florida, on April 21, 2022.

                                              STEVEN D. MERRYDAY
                                              UNITED STATES DISTRICT JUDGE