UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| NAVY SEAL 1, *et al.*, for themselves and all others similarly situated, <br><br> Plaintiffs, <br><br> v. <br><br> LLOYD AUSTIN, in his official capacity as Secretary of the United States Department of Defense, *et al.*, <br><br> Defendants. | No. 8:21-cv-2429-SDM-TGW |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM
IN SUPPORT OF CLASSWIDE PRELIMINARY INJUNCTION**

Plaintiffs submit this supplemental memorandum in support of classwide preliminary injunctive relief pursuant to their pending motions for preliminary injunction (Doc. 2) and class certification (Doc. 35).

**ARGUMENT**

**I.   THE COURT SHOULD CERTIFY PLAINTIFFS' PROPOSED CLASS AND ISSUE A CLASSWIDE PRELIMINARY INJUNCTION.**

   **A.   Plaintiffs' Proposed Class Satisfies the Requirements of Rule 23(a).**

      **1.   The proposed class is ascertainable.**

Plaintiffs' proposed class is "all United States Armed Forces servicemembers . . . who are subject to Defendants' COVID-19 Vaccine Mandate, have requested a religious exemption or accommodation from the Mandate based on sincerely held religious beliefs against receiving a COVID-19 vaccine, and been denied such exemption or accommodation." (Doc. 35 at 1.) This proposed class is ascertainable

because Defendants "know[] and can easily ascertain the number of servicemembers who have submitted Religious Accommodation requests." *U.S. Navy SEALS 1–26 v. Austin*, No. 4:21-cv-1236-O, 2022 WL 1025144, at *3 (N.D. Tex. Mar. 28, 2022) [*Navy Seals 1–26*]. There is no question that Defendants know the number of service members who have submitted religious accommodation (RA) requests because Defendants previously filed the RA tracking information from all branches when ordered by the Court. (Docs. 34, 52, 73, 76, 103.) Defendants "are in a better position than anyone to know which servicemembers fall into [the proposed class]," *Navy SEALS 1–26*, 2022 WL 1025144, at *4, and "maintain records of those who have submitted religious accommodation requests," *id.* Thus, Defendants can (and have) ascertained the members of Plaintiffs' proposed class.

### 2. The Proposed Class Satisfies the Numerosity Requirement.

As of the filing of Defendants' Third Notice of Compliance (Doc. 73), Plaintiffs' proposed class includes 24,817 servicemembers who have submitted RA requests, have sincere religious objections to the COVID-19 vaccine, and have been (or inevitably will be) denied their requested religious accommodation[1]—3,252 Army

---

[1] The denials are inevitable because "defendants persistently and resolutely cling to the belief that their accustomed and unfettered command discretion need not yield . . . to the statutory command of RFRA." (Doc. 122 at 9; *see also* Doc. 111 at 42, 44 (noting Defendants' submissions "reveal[] a process of 'rubber stamp' adjudication by form letter" and "strongly illustrates that the military fails to afford an applicant an actual 'case-by-case assessment' as required by RFRA"); Doc 40 at 31 (noting "[t]he data provided by the military are distinctly suggestive and certainly not inconsistent with the plaintiffs' assertions" that Defendants' RA process is a "sham").)

2

servicemembers (Doc. 73-2, ¶ 4), 4,095 Navy servicemembers (Doc. 73-3 at 2), 3,539 Marine servicemembers (Doc. 73-4 at 2), 12,623 Air Force servicemembers (Doc. 73-5 at 3), and 1,308 Coast Guard servicemembers.[2] In *Navy SEALS 1–26*, the court found a class of 4,095 Navy servicemembers sufficient to satisfy numerosity because "[c]ourts have regularly certified classes with far fewer members." 2022 WL 1025144, at *4. And, if joinder of 4,095 Navy servicemembers is impractical (a condition precedent for numerosity), there can be no dispute that joinder of 24,817 servicemembers facing identical mandates and identical injuries is impractical. Thus, Plaintiffs' class numbers "clearly satisfy the numerosity requirement." *Id.*

### 3. The Proposed Class Satisfies the Commonality Requirement for Certification and Classwide Relief.

Plaintiffs' proposed class of "all United States Armed Forces servicemembers . . . who . . . have requested a religious exemption or accommodation from the Mandate based on sincerely held religious beliefs . . . and been denied such exemption or accommodation" (Doc. 35 at 1) demonstrates commonality on its face. As was true in *Navy SEALS 1–26*, Plaintiffs' proposed class members

> have suffered the "same injury," arising from violations of their constitutional [and statutory] rights. Each has submitted a religious accommodation request, and each has had his request denied, delayed, or dismissed on appeal. Exactly zero requests have been granted. And while

---

[2] To the extent any of these numbers has changed since Defendants' February 4, 2022 filing (Doc. 73), Defendants know the updated numbers and can provide them to the Court.

> Defendants encourage this Court to disregard the data, it is hard to imagine a more consistent display of discrimination.

2022 WL 1025144, at *5.

Although their specific discipline, punishments, or consequences may vary, class members all "have suffered the same core injury." *Id.* "[T]he 'same injury' requirement is satisfied 'even when the resulting injurious effects—the damages—are diverse.'" *Id.* (quoting *In re Deepwater Horizon*, 739 F.3d 790, 810–811 (5th Cir. 2014)). Defendants' unflinching denial of religious accommodations causes the same free exercise injury to every class member.

And Plaintiffs' proposed class claims are capable of classwide resolution because "[a] finding in favor of the Named Plaintiffs on their RFRA and First Amendment claims also resolves the RFRA and First Amendment claims of the class." *Id.* "By resolving [the proposed class's] common questions, this Court may provide relief to all servicemembers in the class." *Id.* Thus, Plaintiffs' proposed class claims involve common questions and injuries under the First Amendment and RFRA, and a preliminary injunction prohibiting further injury to those rights would provide common relief to all class members.

### 4. The Proposed Class Satisfies the Typicality Requirement for Certification and Classwide Relief.

Plaintiffs satisfy the typicality requirement because their claims are identical to the claims of all servicemembers in the proposed class. Plaintiffs "seek relief on RFRA and First Amendment grounds," which are "the precise claims . . . Plaintiffs seek to

4

litigate on behalf of other members of the [proposed class]." *Navy SEALS 1–26*, 2022 WL 1025144, at *6 (cleaned up). Thus, "Plaintiffs' claims are typical of—in fact, identical to—those of the entire class." *Id.* at *7.

The diversity of military branches, job duties, and disciplinary specifics among the proposed class members does not undermine typicality because "factual circumstances need not be identical for each of the class members; some variation among members is permissible." *Id.* To be sure, "such distinctions make no difference" to Defendants because "[a]ll members of the class have unsuccessfully requested religious accommodation." *Id.* As this Court has already observed, "The military, despite several adverse orders, continues on the path determined months ago." (Doc. 122 at 19.) That path leads to one destination—the undifferentiated denial of religious accommodations. None of the military's RA denials are "to the person" as required by RFRA. Rather, the denials uniformly use boilerplate templates and "magic words" that do not satisfy RFRA's strict scrutiny requirements "to the person."

**B.   The Proposed Class Satisfies the Requirements of Rule 23(b).**

Plaintiffs' proposed class also satisfies the Rule 23(b) requirement that "the party opposing the class has acted or refused to act on grounds that apply generally to the class." Fed. R. Civ. P. 23(b)(2). Indeed, as the court in *Navy SEALS 1–26* observed,

> Plaintiffs and potential class members have all been harmed in essentially the same way. Each is subject to the Navy's COVID-19 vaccine mandates. Each has submitted her religious accommodation request, and none has received accommodation. Without relief, each servicemember faces the threat of discharge and the consequences that accompany it. Even though their personal circumstances

5

> may factually differ in small ways, *the threat is the same—get the jab or lose your job.* By uniformly denying potential class members' religious accommodation requests, the Navy has acted on grounds that apply generally to the class. And because potential class members may receive relief from a single injunction, the claim is appropriate for class-wide resolution under Rule 23(b)(2).

2022 WL 1025144, at *9 (cleaned up) (emphasis added).

## II. THE EXISTENCE OF ANOTHER CLASS ACTION DOES NOT UNDERMINE THE NEED FOR CERTIFICATION OF PLAINTIFFS' PROPOSED CLASS AND CLASSWIDE INJUNCTIVE RELIEF.

### A. The Court Has the Discretion to Certify Plaintiffs' Proposed Class and Issue a Classwide Preliminary Injunction Despite Some Overlap by Another Class Action.

The Supreme Court tacitly endorsed the propriety of multiple and overlapping class actions against the same defendant in *China Agritech, Inc. v. Resh*, explaining that "multiple filings may aid a district court in determining, early on, whether class treatment is warranted" and "could be filed in different districts, at different times . . . or on behalf of only partially overlapping classes," and that "district courts have ample tools at their disposal to manage the suits." 138 S. Ct. 1800, 1811 (2018). The Eleventh and other circuits have likewise accepted the propriety of the practice. *See, e.g.*, *Medical & Chiropractic Clinic, Inc. v. Oppenheim*, 981 F.3d 983, 985 (11th Cir. 2020) ("[W]hen a defendant engages in questionable business practices on a widespread basis, it may not only face one class action, but several."); *Negrete v. Allianz Life Ins. Co. of N. Am.*, 523 F.3d 1091, 1100 (9th Cir. 2008) (considering "parallel or multiple class actions" and "competing cases"); *Reynolds v. Beneficial Nat'l Bank*, 288 F.3d 277, 280 (7th Cir. 2002) (relating "more than twenty class actions" against defendants); *Rutter & Wilbanks Corp.*

*v. Shell Oil Co.*, 314 F.3d 1180, 1183 (10th Cir. 2002) (comparing three related class action cases in one district and two "competing class actions" filed elsewhere); *In re Diet Drugs*, 282 F.3d 220, 225 (3d Cir. 2002) ("involving competing mass tort class actions in federal and state courts"); *cf. Tech. Training Assocs., Inc. v. Buccaneers Ltd. P'ship*, 874 F.3d 692 (11th Cir. 2017) (holding named plaintiffs in a class action could intervene in competing class action against same defendant).

District courts in the Eleventh Circuit have also recognized that competing class actions are commonplace. *See, e.g.*, *Figueroa v. Sharper Image Co.*, 517 F. Supp. 2d 1292, 1317 (S.D. Fla. 2007) ("The existence of competing class actions is not dispositive; indeed, competing and simultaneous class actions are routine."); *Wilson v. Everbank*, No. 14-CIV-22264-BLOOM/VALLE, 2016 WL 457011, at *19 (S.D. Fla. Feb. 3, 2016) ("The risk of litigating a nationwide class action is often exacerbated by the existence of competing parallel proceedings in other courts, which may reach settlement or certification first, and the considerable amount of labor that is usually undertaken to litigate a class action to resolution."); *Faught v. American Home Shield Corp.*, No. 2:07-CV-1928-RDP, 2010 WL 10959223, at *20 (N.D. Ala. Apr. 27, 2010) ("the court is well aware of concerns that arise when a defendant is faced with competing class actions").

Thus, the certification of a class and subclasses of Navy servicemembers in *Navy SEALS 1–26* in no way precludes certification of a class of Navy servicemembers in this case. Moreover, there are no competing classes certified for servicemembers from

the other five military branches (Air Force, Army, Coast Guard, Marine Corps, and Space Force), all of which are represented by named Plaintiffs in this case. All servicemembers will benefit from this Court's certification of Plaintiffs' proposed class.

> **B. Judge O'Connor in *Navy Seals 1–26* Recognized the Benefits of Multiple, Parallel Classwide Injunctions, Including From This Court in This Action.**

In his order certifying the Navy class and subclasses in *Navy SEALS 1–26*, Judge O'Connor concluded that multiple, parallel class actions are not problematic. 2022 WL 1025144, at *7. To be sure, he opined that his classwide preliminary injunction benefited potential class members in parallel litigation in other courts, and specifically that classwide injunctive relief from this Court would benefit his Navy class members:

> Simultaneous litigation in other courts does not present a conflict here. To the contrary, the injunctive relief that Plaintiffs seek will benefit all religiously opposed Navy servicemembers who are presently involved in other vaccine mandate litigation. Potential class members will not be harmed by class-wide relief. Likewise, Plaintiffs here will benefit from injunctive relief granted in other courts. For example, the Named Plaintiffs and potential class members here would benefit from a class-wide injunction protecting "all United States Armed Forces servicemembers and civilian federal employees and contractors who are subject to Defendants COVID-19 Vaccine Mandate, have requested a religious exemption or accommodation from the Mandate based on sincerely held religious beliefs against receiving a COVID-19 vaccine, and been denied such exemption or accommodation."

*Id.* (cleaned up) (quoting Pls.' Mot. to Certify Class, Doc. 35, at 02429, doc. 35 at 1); *see also id.* at *7 n.4 ("This class certification does not prevent other judges from

8

hand[l]ing similar pending cases elsewhere as one district court is not permitted to interfere with the proceedings of another.").

### C. Even if an Overlapping Class Action Was Problematic, the First-Filed Rule Would Compel Handling by This Court.

Even if *Navy SEALS 1–26* or another overlapping class action presented a problem for the Court's management of this case, the "first-filed" rule would compel deference to this Court. "The first-filed rule provides that when parties have instituted competing or parallel litigation in separate courts, the court initially seized of the controversy should hear the case." *Collegiate Licensing Co. v. Am. Cas. Co. of Reading, Pa.*, 713 F.3d 71, 78 (11th Cir. 2013); *see also Manuel v. Convergys Corp.*, 430 F.3d 1132, 1135 (11th Cir. 2005) ("Where two actions involving overlapping issues and parties are pending in two federal courts, there is a strong presumption across the federal circuits that favors the forum of the first-filed suit under the first-filed rule."). Courts in the Eleventh Circuit have applied the first-filed rule to competing class actions in some contexts. *See, e.g.*, *Chapman v. Progressive Am. Ins. Co.*, 3:17-CV-102/MCR/CJK, 2017 WL 3124186 (N.D. Fla. July 24, 2017) (staying putative class action pending determination of class certification in action filed one year earlier); *Kelly v. Gerber Prods. Co.*, No. 21-60602-CIV-SINGHAL/VALLE, 2021 WL 2410158 (S.D. Fla. June 11, 2021) (transferring one of seven similar class actions, brought on behalf of Florida class members, to venue of first-filed action brought on behalf of nationwide class); *Peterson v. Aaron's Inc.*, No. 1:14-CV-1919-TWT, 2015 WL 224750, at *2 (N.D. Ga. Jan. 15,

9

2015) (staying case pending appellate review of denial of class certification in competing, previously filed action).

When applying the first-filed rule to class actions where one or more of the classes has not been certified, "courts look at the proposed classes to determine whether substantial overlap exists." *Williams v. Fred's Stores of Tenn., Inc.*, No. 1:17-CV-1703-SCJ-JCF, 2017 WL 11621746, at *1 (N.D. Ga. June 29, 2017); *Peterson*, 2015 WL 224750, at *2 ("And 'courts routinely look to the similarities of the *proposed* classes even where the court has not yet ruled on the certification question.'").

> For purposes of identity of the parties when applying the first-to-file rule, courts have looked at whether there is substantial overlap with the putative class even though the class has not yet been certified. The reason is fairly straightforward: if the opposite rule were adopted, the first-to-file rule might never apply to overlapping class actions as long as they were filed by different plaintiffs.

*Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 790–91 (6th Cir. 2016) (cleaned up).

Thus, any obstacle posed by the overlap of the Navy class certified in *Navy SEALS 1–26* with Plaintiffs' proposed class in this, first-filed case, must be overcome by proceeding in this case, either by allowing both cases to proceed for the benefit of all class members (*see* Pts. II.A, B, *supra*), by staying the second-filed case pending determination of the class issues in this case, *see Chapman*, *supra*, or by transferring the second-filed case to this court, *see Kelly*, *supra*; *see also China Agritech, Inc.*, 138 S. Ct. at 1811 ("[D]istrict courts have ample tools at their disposal to manage the suits, including the ability to stay, consolidate, or transfer proceedings."). The decision rests

with this Court, for "once the court determines that the two suits likely involve substantial overlap, it is no longer up to the second-filed court to resolve the question of whether both should be allowed to proceed." *In re Checking Account Overdraft Litig.*, 859 F. Supp. 2d 1313, 1325 (S.D. Fla. 2012). "Rather, the proper course of action is for the court to transfer the case to the first-filed court to determine which case should, in the interests of sound judicial administration and judicial economy, proceed." *Id.* (cleaned up).

### D. Certification and Classwide Injunctive Relief in This Case Are Necessary to Protect All Military Class Members, Including Those Who Are Not Covered by the Limited *Navy SEALS 1–26* Class.

This case is the first and only putative class action (known to Plaintiffs) seeking to represent a class of all military servicemembers across all branches. By contrast, *Navy SEALS 1–26* involves only Navy servicemembers, and certified a class and subclasses of only Navy servicemembers: (a) the "Navy Class" of "all Navy servicemembers subject to the vaccine mandate who have submitted religious accommodation requests;" (b) the "Navy Special Warfare/Special Operations (NSW/SO) Subclass" of "all members of the Navy Class who (1) *are* assigned to NSW/SO, and (2) have submitted a religious accommodation request concerning the vaccine mandate;" and (c) the "Navy SEALs Subclass" of "all members of the Navy Class who (1) *are* SEALs, and (2) have submitted a religious accommodation request concerning the vaccine mandate." 2022 WL 1025144, at *3–4.

Thus, while the *Navy SEALS 1–26* class covers the approximately 4,095 Navy servicemembers in Plaintiffs' proposed class, it excludes the approximately 20,722

servicemembers in Plaintiffs' proposed class from the other military branches (i.e., Air Force, Army, Coast Guard, Marine Corps, and Space Force). (Pt. I.A.1, *supra*.) And there is no evidence that servicemembers in the other branches are realizing any benefit whatsoever from the Navy classwide relief granted in *Navy SEALS 1–26*. These heroic and honorable servicemembers need relief from this Court.

### III. CLASSWIDE RELIEF IS NEEDED TO PREVENT IMMEDIATE AND IRREPARABLE INJURY TO SERVICEMEMBERS ALREADY FACING THE UNCONSCIONABLE CHOICE OF VACCINATION OR SEPARATION.

Plaintiffs' proposed class includes approximately 24,817 servicemembers whose sincerely held religious beliefs preclude their COVID-19 vaccination. (Pt. I.A.1, *supra*.) Every day Plaintiffs' undersigned counsel and their staff at Liberty Counsel communicate with servicemembers and their spouses. Every week a Liberty Counsel attorney communicates with hundreds of servicemembers on conference calls where servicemembers share heart-wrenching stories of the pressure, abuse, and unlawful violations of their religious free exercise rights resulting solely from their religious objections to COVID-19 vaccination. Liberty Counsel has communicated with over a thousand putative class members who are facing immediate and irreparable injury for pressing their free exercise rights guaranteed by RFRA and the First Amendment. (Doc. 166, ¶ 3.)

The escalating, abusive, and retaliatory adverse consequences for servicemembers who have asserted their sincerely held religious objections to

12

COVID-19 vaccination and received final denials of their RA appeals include the following:

- The Marines forced Plaintiff RESERVE LIEUTENANT COLONEL into the Individual Ready Reserve (IRR), making her inactive, unable to drill, and unable to earn points towards advancement or benefits, which will inevitably result in final separation (Doc. 166, ¶ 7);

- The Marines removed Plaintiffs CAPTAIN 2 and CAPTAIN 3 from Expeditionary War School a mere 75 days from graduation, and placed them on the Officer Disciplinary Notebook (ODN) (a fatal career blow), and slated CAPTAIN 2 for a Board of Inquiry (BOI), which is the last step in the separation process (Doc. 166, ¶ 8);

- The Marines relieved Plaintiff FIRST LIEUTENANT of his duties, issued him a Report of Misconduct and Notification of Separation, and required his completion of the Transition Readiness Seminar and follow up Capstone interview requirements, leaving only separation orders to effect his final discharge from the Marine Corps (Doc. 166, ¶ 9);

- The Air Force sustained a Letter of Counseling (LOC) and Letter of Reprimand (LOR) against Plaintiff CHAPLAIN for failing to obey an order to vaccinate, posted the ROC to his Unfavorable Information File (UIF), eliminated him from competition for in-residence Air Command and Staff College, removed him from all instructor duty responsibilities and tasked him with only behind-the-scenes and

administrative/logistical work, and issued him a negative referral Officer Performance Report (OPR)—all damaging his career and propelling him towards discharge (Doc. 166, ¶ 10);

- The Air Force issued Plaintiff RESERVE LIEUTENANT COLONEL 1 a Letter of Reprimand (LOR) for failure to obey an order to vaccinate and sent her to Individual Ready Reserve (IRR), denying her a Board of Inquiry (BOI), access to the Transition Assistance Program, and a referral to a medical specialist at a military medical center (Doc. 166, ¶ 11);

- The Air Force issued Plaintiff RESERVE LIEUTENANT COLONEL 2 a Letter of Reprimand (LOR) for failure to obey and order to vaccinate, issued him a negative referral Officer Performance Report (OPR), and posted to his Unfavorable Information File (UIF), beginning the process of curtailing his Active Guard Reserve (AGR) orders and transferring him involuntarily to the Individual Ready Reserve (IRR) (Doc. 166, ¶ 12);

- The Air Force removed Plaintiff MASTER SERGEANT SERE SPECIALIST from his leadership position, issued him a Letter of Reprimand (LOR) for failure to obey an order to vaccinate, and issued him a second order to vaccinate and a second LOR for failure to obey the order, fatally damaging his career and propelling him towards discharge, despite requiring him to operate at high operations tempo since March 28 as "mission essential personnel" (which he has continuously and successfully done) (Doc. 166, ¶ 13);

- The Marines administratively separated putative class member LANCE CORPORAL ADMINISTRATIVE SPECIALIST from service for her failure to vaccinate (Doc. 166, ¶ 15), publicly humiliating her on her separation date by driving her to the gate of her base, dropping her off outside, confiscating her Marine Corps ID card, and leaving her standing on the curb with her baggage;

- The Marines declared putative class member CAPTAIN 4 in violation of a COVID-19 vaccination order, issued him a "Page 11" administrative counseling and written promotion hold, and removed him from company command, despite having previously selected him for promotion to Major (Doc. 166, ¶ 16);

- The Marines issued putative class member STAFF SERGEANT a "6105" formal counseling stating a violation of "Article 90, Willfully Disobeying a Superior Commissioned Officer," and administrative separation papers (Doc. 166, ¶ 17);

- The Air Force stripped putative class member MAJOR 1 of all duties and titles, removed him from flight status (depriving him of $1,000 per month flight pay), initiated involuntary curtailment of his career-status Active Guard Reserve (AGR) orders, initiated his involuntary reassignment to the Individual Ready Reserve (IRR), and designated an involuntary separation date of June 26, 2022 (Doc. 166, ¶ 18);

- The Air Force issued putative class member TECH SERGEANT a second Letter of Reprimand (LOR), followed by a third order to be COVID-19 vaccinated on April 4, 2022 (with 48 hours to comply), instructed him to give an early

written response to the order, and denied him leave until he submitted the early response—all exposing him to imminent separation orders (Doc. 166, ¶ 19);

- The Air Force Reserve issued putative class member LIEUTENANT COLONEL 2 a second, official shot order and initiated his involuntary reassignment to the IRR as an inactive reservist (Doc. 166, ¶ 20).

The foregoing is but a sampling of the immediate and irreparable harms facing Plaintiffs and putative class members, 23 of which are before the Court in their pending TRO motions (Docs. 130, 141). As of this filing, however, there are **385** servicemembers and counting (up from 334 as of April 8, *see* Doc. 166, ¶ 5) who have contacted Liberty Counsel and whose final RA appeals have been denied, exposing them to the ubiquitous order to vaccinate or separate and the resulting discipline for failure to obey. Despite the Court's judicious consideration of Plaintiffs' several ad hoc TRO motions, necessary due process (briefing, hearings, etc.) make it wholly impractical and an unbearable burden on judicial and party resources to file for immediate relief for 385 servicemembers and counting—the very problem Rule 23 and provisional classwide relief were conceived to ameliorate.

These unprotected servicemembers desperately need and hope for classwide relief. Their hopes fade, however, each day they languish in the voluntary and honorable service of the country they love while taking orders from leaders who do not want them. Some who have already begun the separation process have all but lost hope of restoration of their military careers. The accumulating stresses for these servicemembers have not only burdened their religious exercise, but have also caused

16

despair, hospitalization, and even suicide (Doc. 166, ¶¶ 27–29). Only classwide relief can prevent this mounting irreparable harm to thousands of servicemembers for whom individual actions or motions for relief are impossible. Plaintiffs urge the Court to use its pen to protect those who carry the sword.

## CONCLUSION

For the foregoing reasons, the Court should certify Plaintiffs' proposed class and issue a classwide preliminary injunction.

Respectfully submitted,

/s/ Roger K. Gannam
Mathew D. Staver
Horatio G. Mihet
Roger K. Gannam
Daniel J. Schmid*
Richard L. Mast*
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854
(407) 875-1776
court@lc.org
hmihet@lc.org
rgannam@lc.org
dschmid@lc.org
rmast@lc.org
*Admitted specially

***Attorneys for Plaintiffs***