UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| NAVY SEAL 1, *et al.*, for themselves and all others similarly situated, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) No. 8:21-cv-2429-SDM-TGW<br>) |
| LLOYD AUSTIN, in his official capacity as Secretary of the United States Department of Defense, *et al.*, | )<br>)<br>)<br>) |
| Defendants. | )<br>) |

**PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF
PRELIMINARY INJUNCTION FOR PLAINTIFF CADET,
<u>UNITED STATES AIR FORCE ACADEMY</u>**

Plaintiffs, pursuant to this Court's Order (Doc. 174 at 1 n.*), hereby submit this supplemental memorandum in support of Plaintiffs' motion for injunctive relief for Plaintiff CADET, United States Air Force Academy. (Doc. 157.) For the following reasons, the preliminary injunction should issue.

<u>**INTRODUCTION AND FACTUAL BACKGROUND**</u>

As this Court eloquently summarized:

> Here is the short version: Expressly applicable to each branch of the federal government, the Religious Freedom Restoration Act (RFRA) commands the military to grant to a service member harboring a sincerely held religious objection to COVID-19 vaccination a religious exemption from the vaccination (1) unless a compelling governmental interest requires the vaccination and (2) unless a good faith evaluation, directed specifically to the singular circumstances of the service member — that is, directed "to the person" requesting the exemption — demonstrates that no less restrictive means is available to the military reasonably to protect the compelling governmental interest. Under the command of RFRA, the military bears the burden of showing both the existence of a

> compelling governmental interest and the absence of a less restrictive means of reasonably protecting that interest. In the instance of [CADET], the [United States Air Force Academy] ha[s] failed manifestly to offer the statutorily required demonstration that no less restrictive means is available, and [CADET] is entitled to preliminary injunctive relief that (1) permits [him], pending a final determination on a complete record, to continue to serve without the vaccination and (2) forbids any punitive or retaliatory measure against [him] by the military pending a final judgment in this action.

(Doc. 111, Preliminary Injunction and Order, at 1–2.)

"The long version follows." (Doc. 111 at 2.)

### A. Cadet's Sincerely Held Religious Beliefs

Cadet is a Christian with sincerely held religious beliefs that compel him to abstain from accepting or receiving anything that has connection to abortion. (Doc. 157-1, Declaration of USAFA Cadet,, ¶ 4.) When Cadet learned that the COVID-19 vaccines were connected to abortion, Cadet prayed and sought the Lord on whether it was permissible to receive the vaccine. (*Id.*) After his prayer and study, Cadet determined that it would be a sin for him to accept the vaccine. (*Id.* ("The Word of God set forth in the Bible and God's answers to my prayers showed me that I cannot get the shot without compromising my faith. For me to get the COVID shot would be a sin against God.").)

### B. The United States Air Force Academy's Sham Religious Accommodation Process Is the Same as Defendants' Other Sham Accommodation Processes.

As Defendants' prior submissions to this Court reveal, the United States Air Force—as a whole—has had 12,623 requests for religious accommodation from the

vaccine mandate. (Doc. 73-5 at 4.) Out of those requests, the Air Force had granted 1 request for a religious accommodation. (Doc. 73-5 at 4.)

When he was informed of the COVID-19 vaccine mandate, Cadet was required to attend counseling with his commanding officer concerning his religious accommodation "to discuss if [he] even qualif[ies] and what the process is." (Doc. 157-1, ¶ 6.) At that counseling, Cadet's command informed him that he should "manage his expectations" because he would not be receiving a religious accommodation from the mandate. (Doc. 157-1, ¶ 7.) Despite being told that he would not receive a religious accommodation and being guilted into accepting the vaccine, Cadet submitted a request for a religious accommodation. (Doc. 157-1, ¶ 9.) As with Navy Commander, Marine Lieutenant Colonel 2, and Marine Captain (Doc. 111 at 12, 13–14; Doc. 173 at 4–5), Cadet had an interview with the Academy Chaplain to determine if his religious beliefs were sincere, and the Chaplain determined his beliefs were sincerely held and recommended that he be approved for the religious accommodation. (Doc. 157-1, ¶ 9.)

Despite receiving a determination of sincerity and a recommendation from the Chaplain that he receive a religious accommodation, Cadet received word from his command on September 10, 2021 that the review board had recommended his religious accommodation request for disapproval. (Doc. 157-1, ¶ 10.) Cadet's command further informed him that his "chances of it being approved are looking slim" and that nobody who had submitted a request for religious accommodation had been approved. (Doc. 157-1, ¶¶ 11–12.)

3

Cadet formally received the denial of his request for religious accommodation on December 22, 2021. (Doc. 157-1, ¶ 13.) As with Navy Commander, Marine Lieutenant Colonel 2, and Marine Captain (*see* Doc. 111 at 36; Doc. 173 at 12–13), the Department of the Air Force stated that it was unable to provide a religious accommodation to Cadet because of the generalized interests in "mission accomplishment, including military readiness, unit cohesion, good order and discipline, and the health and safety of all cadets." (Doc. 157-1, ¶ 14; Doc. 157-1 at A7.) Cadet was given five days to receive the COVID-19 vaccine or face discipline. (Doc. 157-1 at A7–A8.)

On January 12, 2022, Cadet timely submitted his appeal of the denial of his religious accommodation request. (Doc. 157-1, ¶ 25.) On March 30, Cadet received the final denial of his appeal. (Doc. 157-1, ¶ 27.) The Department of the Air Force's formal denial of Cadet's appeal stated in generalized terms that "[t]he Department of the Air Force has a compelling government interest in requiring you to comply with the requirement for the COVID-19 immunization because preventing the spread of disease among the force is vital to mission accomplishment." (Doc. 157-1 at A13.) The denial states that a religious accommodation would "place health and safety, unit cohesion, and readiness at risk." (Doc. 157-1 at A13.) And, it claims that "[t]here are no less restrictive means available in your circumstances as effective as receiving the above immunization in furthering these compelling interests." (Doc 157-1 at A13.)

On March 30, 2022, Cadet also received an Order mandating that Cadet submit to COVID-19 vaccination within five calendar days or "Submit a Form 34 to voluntarily resign from USAFA." (Doc. 157-1 at A14.)

    **D.    Cadet's Status As An Academy Enrollee Makes No Substantive Difference Under RFRA Or The Air Force's COVID-19 Vaccination Orders.**

That Cadet is an enrollee at the United States Air Force Academy makes no substantive difference under RFRA, as the Orders for Cadet to receive the COVID-19 vaccine or face discipline arise from the Air Force itself. (*See* Doc. 157-1 at A7, A13, A14.) The mandate imposed upon Cadet derives from the Air Force's mandate itself, and the denials of Cadet's requested religious exemptions are issued by the Air Force itself. (*See* Doc. 157-1 at A7, A13, A14.) Thus, Cadet's status as a servicemember at the United States Air Force Academy is of little consequence to the analysis, though Plaintiffs raise this issue to address the Court's questions as to the impact of his academy enrollee status on the preliminary injunction. (Doc. 174 at 1 n.*.) All actions taken against Cadet, including the vaccine mandate, the denial of his request for a religious accommodation, and the final denial of his appeal, directly result from the Department of the Air Force's COVID-19 vaccination mandate. (*See* Doc. 157-1 at A14 ("Your appeal for religious accommodation from the COVID-19 vaccination was denied by the Air Force Surgeon General. . . . Therefore, in accordance with the Secretary of the Air Force memorandum of 7 December 2021, 'Supplemental Coronavirus Disease 2019 Vaccination Policy,' I am ordering you to do one of the following within five (5) calendar days upon receipt of this memorandum: a. Begin a

5

COVID-19 vaccination regimen; or b. Submit a Form 34 to voluntarily resign from USAFA.").)

## LEGAL ARGUMENT

I. **CADET HAS A SUBSTANTIAL LIKELIHOOD OF SUCCESS ON THE MERITS OF HIS RFRA CLAIMS AGAINST DEFENDANTS' VACCINE MANDATE.**

    A. **Defendants' Vaccine Mandate Substantially Burdens Cadet's Sincerely Held Religious Beliefs.**

To determine whether the Federal COVID-19 Vaccine Mandate imposes a substantial burden on Plaintiffs' sincere religious beliefs, "the question that RFRA presents [is] whether the [vaccine] mandate imposes a substantial burden on the ability of the objecting parties to conduct business in accordance with their religious beliefs." *Burwell v. Hobby Lobby Stores, Inc.*, 573 U.S. 682, 724 (2014). As this Court has already held, "[g]overnmental action coercing a direct violation of a religious belief imposes a substantial burden." (Doc. 111 at 32.)

Cadet is a Christian with sincerely held religious beliefs that compel him to abstain from accepting or receiving anything that has connection to abortion. (Doc. 157-1, ¶ 4.) When Cadet learned that the COVID-19 vaccines were connected to abortion, Cadet prayed and sought the Lord on whether it was permissible to receive the vaccine. (*Id.*) After his prayer and study, Cadet determined that it would be a sin for him to accept the vaccine. (*Id.* ("The Word of God set forth in the Bible and God's answers to my prayers showed me that I cannot get the shot without compromising my faith. For me to get the COVID shot would be a sin against God.").) Thus,

6

identically to Navy Commander, Marine Lieutenant Colonel 2, and Marine Captain (Doc. 111 at 33; Doc. 173 at 11), Cadet faces the unconscionable choice of violating a direct order or violating his conscience. That is a substantial burden on his religious beliefs.

As this Court held with respect to Navy Commander and Marine Lieutenant Colonel 2, "[t]he fact of, and the consequences of, disobeying a direct order doubtlessly pressure [Cadet] to alter [his] religious practice." (Doc. 111 at 33.) Indeed, the Department of the Air Force's COVID-19 vaccination requirement "puts [Cadet] to this choice," and, as a result, "the requirement to vaccinate substantially burdens religious exercise." (Doc. 111 at 33.) (*See also* Doc. 173 at 11 ("And because the [Air Force's order—on threat of separation or other punitive action—to receive COVID-19 vaccination puts [Cadet] to the choice of accepting vaccination or violating his sincerely held religious beliefs, the order substantially burdens [Cadet's] sincere religious exercise." (cleaned up)).) Here, Defendants have put Cadet to the choice: accept COVID-19 vaccination, voluntarily resign, or face discipline and administrative separation. (Doc. 157-1 at A14.) Defendants' actions unquestionably burden Cadet's sincerely held religious beliefs.

**B.     Because Defendants' Vaccine Requirement Substantially Burdens Cadet's Sincerely Held Religious Beliefs, They Are Required—but Fail—to Satisfy Strict Scrutiny.**

As this Court has held numerous times, Defendants are required to demonstrate a compelling government interest and the least restrictive means as it relates directly to Cadet. Indeed, "RFRA's focus on 'the burden to the person' demands more than

7

dismissive, encompassing, and inflexible generalizations about the government's interest and about the absence of a less restrictive alternative." (Doc. 111 at 34.) And, Defendants "must discharge both of RFRA's burdens 'through application of the challenged law to the person—the particular claimant whose sincere exercise of religion is being substantially burdened." (Doc. 111 at 34 (quoting *Gonzalez v. O Centro Espirita Beneficiente Uniao do Vegetal*, 546 U.S. 418, 430-31 (2006)).) Moreover, "[t]hat the military must demonstrate 'to the person' analysis is no mere formality." (Doc. 173 at 13.) "RFRA requires that a district court 'scrutinize the asserted harm of granting specific exemptions to the particular religious claimants'—in other words, to look to the marginal interest in enforcing the mandate." (Doc. 173 at 13 (quoting *Hobby Lobby*, 573 U.S. at 726).) Defendants utterly fail to discharge either of those burdens.

In fact, ignoring what this Court has ordered multiple times and what RFRA plainly demands of them, Defendants continue to "persistently and resolutely cling to the belief that their accustomed and unfettered command discretion need not yield—on the narrow and specific question of the free exercise of religion—to the statutory command of RFRA." (Doc. 122 at 9.) Defendants continue in their charted course "as if RFRA does not exist or has no application to the military or is a matter subject to the command discretion of the military." (Doc. 122 at 10.) "The military designs to avoid the 'to the person' test, but the statute is unflinching" (Doc. 122 at 15), and Defendants fail to yield to its commands or to discharge the burden it places upon them. Indeed, whether Defendants can satisfy the 'to the person' test for a compelling government interest and the least restrictive means is "the question that RFRA burdens

the defendants to answer. They have not." (Doc. 122 at 17.) And, they have not because they cannot. The preliminary injunction should issue.

> 1. **Defendants' fail to discharge their burden under RFRA to demonstrate that forcing Cadet to comply with the vaccine mandate is supported by a compelling interest.**

"[T]he government must proffer 'specific and reliable evidence (not formulaic commands, policies, and conclusions demonstrating that the marginal benefit flowing from a specific denial . . . furthers a compelling governmental interest." (Doc. 111 at 34 (quoting *Gonzales*, 546 U.S. at 430-31).) Put simply, as this Court has held, "a district court must not defer to an official's 'mere say-so that the official could not accommodate' a request." (Doc. 111 at 35 (quoting *Holt v. Hobbs*, 574 U.S. 352, 369 (2015)).) "In satisfying this burden of applying RFRA to the person, 'broadly articulated governmental interests and broadly articulated demands of military life' will not suffice." (Doc. 173 at 12; Doc. 111 at 38.) Defendants fail to demonstrate that imposing the vaccine mandate on Cadet is supported by a compelling interest.

As with Navy Commander, Marine Lieutenant Colonel 2, and Marine Captain, Defendants assert mere generalized interests to deny Cadet's requested accommodation. (*See* Doc. 157-1 at 21.) Specifically, the Air Force asserted that it "has a compelling government interest in requiring you to comply with the requirement for COVID-19 immunization because preventing the spread of disease among the force is vital to mission accomplishment." (Doc. 157-1 at A13.) The appeal denial letter further states that the Air Force has a compelling government interest in "health and safety, unit cohesion, and readiness," as well as "military readiness and public health and

safety." (Doc. 157-1 at A13.) This is precisely the government interest asserted by the Navy and Marine Corps as it related to Navy Commander, Marine Lieutenant Colonel 2, and Marine Captain. (*See* Doc. 111 at 36 (noting the Navy's asserted government interest in mandating Navy Commander's vaccination as "mission accomplishment," "military readiness," "unit cohesion," and "military readiness and health of the force"); Doc. 111 at 37 (noting the Marine Corps' asserted government interest in mandating Lieutenant Colonel 2's vaccination as "military readiness" and "health and safety of the force"); Doc. 173 at 13 (noting the Marine Corps' asserted interest in mandating Captain's vaccination as "military readiness" and "health and safety of the force").)

As this Court has already stated, a review of Cadet's denial letters "reveals the same infirmities that plague" the Navy and Marine Corps' denials of Navy Commander, Marine Lieutenant Colonel 2, and Marine Captain's requests for religious accommodation. (Doc. 173 at 13.) In fact, the asserted government interests are identical in all instances. Defendants come to this Court with little more than "military readiness," "unit cohesion," "health and safety of the force," and "demands of military life" for all RFRA claimants before this Court. Defendants' contentions to this Court fail to satisfy RFRA's burden because they "reveal only generalized and ethereal conclusions above interests of the 'Total Force.' [No] letter demonstrates analysis directed 'to the person.'" (Doc. 173 at 13.)

Put simply, "the government has not shown that the stated interests cannot be reasonably preserved without subjecting [Cadet] to vaccination contrary to a sincerely

10

held religious belief protected by RFRA or, given refusal to vaccinate, separating [him] from service." (Doc. 111 at 40.) Indeed, Defendants' "justifications for denying a religious accommodation to [Cadet] are elementally inadequate under RFRA." (Doc. 111 at 39.) "RFRA demands more" (Doc. 111 at 38), and Defendants offer less. The preliminary injunction should issue as to Cadet because Defendants have failed to adequately demonstrate a compelling government interest in mandating vaccination to the person of Cadet.

### 2. Defendants fail to discharge their burden under RFRA to demonstrate that forcing Cadet to comply with the vaccine mandate is the least restrictive means.

As was true with Navy Commander, Marine Lieutenant Colonel 2, and Marine Captain, Defendants' denials of Cadet's requested religious accommodation—once again—rely on mere "generalized interests of a less restrictive means" plainly insufficient under RFRA. (Doc. 111 at 40.) In fact, the letter denying Cadet's appeal claims—without any evidence or contrary considerations—that "[t]here are no less restrictive means available in your circumstance as effective as receiving the above immunization." (Doc. 157-1 at A13.) And, Defendants' initial denial of Cadet's religious accommodation request was even more formulaic:

> [T]he COVID-19 vaccine is the single most effective tool in protecting the health and safety of each member and unit. It is also the least restrictive means available to accomplish the compelling government interest and mitigate the risk to military readiness, unit cohesion, good order and discipline, health, and safety. Other measures, including masking and testing, do not provide comparable protection to you and those with in-person contact.

(Doc. 157-1 at A7.)

11

Defendants' denial of Cadet's appeal was based merely on Defendants' asserted "magic words" (Doc. 111 at 41), as if restating the allegedly compelling government interest in military readiness, unit cohesion, order and discipline, and public health satisfy the least restrictive means. As Mark Twain once opined, "saying so don't make it so." Mark Twain, *The Adventures of Tom Sawyer* 4 (1876). As was true of the Marines' treatment of Marine Captain, the Air Force "identifies no evidence detailing why the vaccination of [Cadet] is on the margin a critical component of [Cadet's] individual or unit readiness." (Doc. 173 at 14.) In fact, the Air Force "provided neither sources nor reasoning." (Doc. 173 at 14.) In sum, the Air Force's denials of Cadet's requested religious accommodation and appeal "employ[] similar conclusory statements [and] present[] little or nothing for a district court to scrutinize." (Doc. 173 at 14.) The Air Force "offers only a simulacrum of reasoning, but never reasoning itself." (Doc. 173 at 14.)

As was true of Navy Commander and Marine Lieutenant Colonel 2, "[t]he administrative record documenting the denial of [Cadet's] request for a religious exemption fails to evidence the required 'to the person' evaluation of whether a less restrictive means is available to further a compelling governmental interest" (Doc. 111 at 42), and represents little more than "generalizations tweaked to mimic reasoning." (Doc. 173 at 17.) Such evidentiary legerdemain does not suffice under RFRA, and the preliminary injunction should issue.

## II. CADET FACES IMMEDIATE AND IRREPARABLE INJURY ABSENT A PRELIMINARY INJUNCTION.

"[T]here can be no question that the challenged restrictions, if enforced, will cause irreparable harm. The loss of First Amendment freedoms, for even minimal periods of time, unquestionably constitutes irreparable injury.'" *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 62, 67 (2020) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). As this Court has held, "the substantial pressure on a religiously objecting servicemember to obey the COVID-19 vaccination order and violate a sincerely held religious belief constitutes an irreparable injury redressable by a preliminary injunction." (Doc. 111 at 44–45.) Indeed, "[r]equiring a servicemember either to follow a direct order contrary to a sincerely held religious belief or to face immediate processing for separation or other punishment undoubtedly causes irreparable harm." (Doc. 111 at 45.)

Here, Defendants have put Cadet to the choice: accept COVID-19 vaccination, voluntarily resign, or face discipline and administrative separation. (Doc. 157-1 at A14.) Thus, because Cadet "faces immediate processing for separation or other punishment, the record shows irreparable harm will result absent injunctive relief." (Doc. 173 at 18.)

## III. THE BALANCE OF THE EQUITIES AND PUBLIC INTEREST FAVOR INJUNCTIVE RELIEF.

As this Court has already held, "the public has no interest in tolerating even a minimal infringement on Free Exercise." (Doc. 111 at 45.) Indeed, "no injury to the public results from recognizing a person's constitutional or statutory right or from

13

'encouraging' a person to vindicate that right in federal court." (Doc. 111 at 46.) In vivid contrast, the only harm that befalls Defendants in the instant matter is a self-inflicted wound. As this Court held, "to the extent a substantial disruption results from the defendants' systemic failure to assess a religious exemption request to the person, the 'harm' suffered by defendants results from the defendants' own failure to comply with RFRA." (Doc. 111 at 46.) Cadet "requests only narrow, specific, and temporary relief and only that [should be] granted." (Doc. 173 at 19.) "Both the balance of the equities and public interest favor [Cadet]." (Doc. 173 at 19.) The preliminary injunction should issue.

## **CONCLUSION**

Because Defendants' COVID-19 vaccination mandate imposes a substantial burden on Cadet's sincerely held religious beliefs, and because Defendants have not—and cannot—satisfy their burden under strict scrutiny, the preliminary injunction should issue.

Respectfully submitted,

/s/ Daniel J. Schmid
Mathew D. Staver
Horatio G. Mihet
Roger K. Gannam
Daniel J. Schmid*
Richard L. Mast*
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854
(407) 875-1776
court@lc.org
hmihet@lc.org
rgannam@lc.org
dschmid@lc.org
rmast@lc.org
*Admitted specially

***Attorneys for Plaintiffs***