## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA

**NAVY SEAL # 1,** et al.**,**

                 Plaintiffs,

    v.

**JOSEPH R. BIDEN, JR.**, in his official
capacity as President of the United States, et al.,

                 Defendants.

Case No. 8:21-cv-02429-SDM-TGW

## DEFENDANTS' RESPONSE TO PLAINTIFFS' SUPPLEMENTAL MEMORANDUM IN SUPPORT OF CLASSWIDE PRELIMINARY INJUNCTION

On November 12, 2021, Plaintiffs moved to certify a class of "all United States Armed Forces servicemembers . . . who are subject to Defendants COVID-19 Vaccine Mandate, have requested a religious exemption or accommodation from the Mandate based on sincerely held religious beliefs against receiving a COVID-19 vaccine, and been denied such exemption or accommodation." ECF No. 35 at 1. On April 26, 2022, Plaintiffs filed supplemental briefing in support of that pending motion. ECF No. 176.[1]

To obtain class certification, a plaintiff must first "demonstrate that the class is 'adequately defined and clearly ascertainable.'" *Sellers v. Rushmore Loan Mgmt. Servs., LLC*, 941 F.3d 1031, 1039 (11th Cir. 2019) (quoting *Little v. T-Mobile USA, Inc.*, 691

---

[1] Plaintiffs appear to concede that their proposed class should exclude the "civilian federal employees and contractors," ECF No. 35 at 1, who were included in the original motion and complaint but have been excised in Plaintiffs' supplemental memorandum, ECF No 176 at 1, in an apparent reaction to this Court's severance order, ECF No. 89.

F.3d 1302, 1304 (11th Cir. 2012)).   If the proposed class is ascertainable, then the plaintiff must satisfy Rule 23(a) by establishing "numerosity, commonality, typicality, and adequacy of representation." *Id*.  In addition, a plaintiff seeking class certification must also satisfy one of the three requirements of Rule 23(b).  *Id*.  Here, Plaintiffs seek certification under Rule 23(b)(2), which requires the district court to find that "the party opposing the class has acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding declaratory relief is appropriate respecting the class as a whole."  Fed. R. Civ. P. 23(b)(2). [2]

A district court must conduct a "rigorous analysis" to ensure that the plaintiff meets his burden of establishing these requirements.  *Brown v. Electrolux Home Prods., Inc.*, 817 F.3d 1225 1234 (11th Cir. 2016) (citation omitted).  Under this standard, a district court does not presume a plaintiff's allegations to be true; rather, the plaintiff "'must affirmatively demonstrate his compliance' with Rule 23 by proving that the requirements are '*in fact*' satisfied." *Id.* (citation omitted) (emphasis in original).  Thus, to the extent there is a disputed question of fact, "the district court has a duty to actually decide it and not accept it as true or construe it in anyone's favor."  *Id*.  That analysis "will frequently entail 'overlap with the merits of the plaintiff's underlying claim.'"  *Id.* (citations omitted).

---

[2] Plaintiffs apparently abandon their argument under Rule 23(b)(3), as they do not attempt to address it in their supplemental briefing.

I.     **Plaintiffs Fail to Establish the Requirements Necessary to Certify a Class.**

       **A. The Proposed Class Is Not Ascertainable.**

"A proposed class is ascertainable if it is adequately defined such that its membership is capable of determination." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1304 (11th Cir. 2021). In addition to the issue described in previous briefing, *see* ECF No. 42 at 2-3, Plaintiffs' proposed class definition is an improper fail-safe class. An improper fail-safe class is one "that 'use[s] legal terminology whose application is linked to the ultimate merits of the case[.]" *Russell v. Tyson Farms, Inc.*, 5:19-cv-1179, 2020 WL 3051241, at *1 (N.D. Ala. June 8, 2020) (quoting *Hurt v. Shelby Cnty. Bd. of Educ.*, No. 2:13-CV-230, 2014 WL 4269113, at *1 (N.D. Ala. Aug. 21, 2014)). A class definition that "assumes what it ostensibly seeks to prove" "rig[s] the certification process so that they cannot lose. That is, '[e]ither the class members win or, by virtue of losing, they are not in the class and, therefore, not bound by the judgment.'" *Hurt* at *19 (quoting *Randleman v. Fid. Nat'l Title Ins. Co.*, 646 F.3d 347, 352 (6th Cir. 2011)).

Here, Plaintiffs now argue that their "proposed class is 'all United States Armed Forces servicemembers . . . who are subject to Defendants' COVID-19 Vaccine Mandate, have requested a religious exemption or accommodation from the Mandate *based on sincerely held religious beliefs against receiving a COVID-19 vaccine*, and have been denied such exemption or accommodation.'" ECF No. 176 at 1 (emphasis added) (citation omitted). This definition assumes one of the burdens Plaintiffs have in bringing their claim—that each Plaintiff has a sincerely held religious belief.

3

Thousands of service members have submitted religious accommodation requests—thousands more than have ever been requested for any other immunization requirement in military history. *See Navy SEAL 1 v. Austin*, No. 22-0688, 2022 WL 1294486, at *9 n.5 (D.D.C. Apr. 29, 2022), *appeal filed*, No. 22-5114 (D.C. Cir. May 5, 2022). According to one court, that orders-of-magnitude increase strongly suggests that many service members may have applied for religious exemptions based on something other than a sincerely held religious belief. *Id*. There is no way to ascertain which members of the putative class have applied for a religious exemption from the COVID-19 vaccination directive based on sincerely held religious beliefs, as opposed to a religious "preference[,]" a sincerely held secular or philosophical belief, or a belief that is not sincerely held but is merely pretextual. *See GeorgiaCarry.Org. Inc. v. Georgia*, 687 F.3d 1244, 1256 (11th Cir. 2012).[3] Indeed, each service member who intends to bring a RFRA or a Free Exercise claim in federal court must individually demonstrate that he or she "holds a belief, not a preference, that is sincerely held and religious in nature, not merely secular[.]" *Id*. Because the proposed class definition requires the court to determine an aspect of the legal merits of an individual class member's claim

---

[3] Further underscoring the unascertainability of Plaintiffs' proposed class, Plaintiffs improperly suggest that their proposed class includes 24,817 service members. ECF No. 176 at 2. But that number appears to be based on *all* religious exemption requests, not the number of individuals who have submitted religious exemption requests based on sincerely held religious beliefs. Plaintiffs have not demonstrated that each of the 24,817 service members have submitted a religious exemption request based on a sincerely held religious belief, as opposed to a religious preference or a sincere secular or philosophical belief, or a belief that is merely pretextual.

as a predicate to determining membership in the class, the class is not ascertainable. *Bohannan v. Innovak Int'l, Inc.*, 318 F.R.D. 525, 528 (M.D. Ala. 2016).[4]

### B. The Proposed Class Does Not Satisfy Rule 23(a) Requirements.

#### i. The Proposed Class Does Not Share Common Questions.

The highly individualized nature of RFRA claims means that the purported class will not share common questions sufficient to satisfy Rule 23(a)(2). Commonality under Rule 23(a)(2) requires not the literal raising of "common 'questions,'" but rather "the capacity of a class-wide proceeding to generate common *answers* apt to drive the resolution of the litigation." *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 350 (2011) (citation omitted). The Supreme Court has explained that this requires more than showing "merely that [class members] have all suffered a violation of the same provision of law." *Id.*

Despite the Supreme Court's express instruction, Plaintiffs rely on *Navy SEALS 1-26*, where the Court concluded that commonality was met because proposed "class members all 'have suffered the same core injury[.]'" ECF No. 176 at 3-6. But "[q]uite obviously, the mere claim by employees of the same company that they have suffered a Title VII injury, or even a disparate-impact Title VII injury, gives no cause to believe

---

[4] In *U.S. Navy SEALs 1-26*, the court sidestepped this issue based on a misunderstanding of the facts and the law. The court stated that "no one may submit [a religious accommodation] request without a chaplain's memorandum attesting to the applicants sincerity." *U.S. Navy SEALs 1-26 v. Austin*, --- F. Supp. 3d ----, 2022 WL 1025144, at *6 (N.D. Tex. Mar. 28, 2022). That is factually inaccurate—a chaplain interview may result in an assessment of insincerity or a non-endorsement. Decl. of Captain Mery-Angela Sanabria Katson, ECF No. 47-3 ¶ 2. In any event, the chaplain has not been vested with the authority to decide the sincerity or the religiosity of a RFRA's claimant's beliefs. *Id.*

that all their claims can productively be litigated at once." *Wal-Mart*, 564 U.S. at 350; *see, e.g.*, *Vega v. T-Mobile USA, Inc.*, 564 F.3d 1256, 1272 (11th Cir. 2009) (holding plaintiff failed to show commonality under breach of contract claim because, without a common employment contract for all class members, the "mandatory elements of each class members' claim depend on [] individualized facts and circumstances").

RFRA empowers courts to fashion "individualized exceptions" to rules of general applicability and "contemplate[s] an inquiry more focused than the" class approach advanced by Plaintiffs. *See Gonzales v. O Centro Espirita Beneficente Uniao do Vegetal*, 546 U.S. 418, 430 (2006). The resolution of each RFRA claim "requires a case-specific consideration of the particular circumstances and claims." *Ramirez v. Collier*, 142 S. Ct. 1264, 1283 (2022). Resolving a RFRA claim necessarily requires individualized analysis of the nature of the particular claimant's beliefs, the particular burden on those beliefs, the government's compelling interest in implementing a requirement, and the availability of the less restrictive alternatives advanced by each claimant. *See id.*; *see also Burwell v. Hobby Lobby Stores Inc.*, 573 U.S. 682 (2014). It "requires the Government to demonstrate that the compelling interest test is satisfied through application of the challenged law 'to the person'—the particular claimant whose sincere exercise of religion is being substantially burdened." *O Centro*, 546 U.S. at 430-31 (quoting 42 U.S.C. § 2000bb–1(b)). Accordingly, each service member in the putative class would require an individual "mini-trial[]" on his particular circumstances. *Truesdell v. Thomas*, 889 F.3d 719, 726 (11th Cir. 2018). Thus, the mere

fact that the putative class members raise a RFRA claim as to the same policy does not establish commonality.  *See Wal-Mart*, 564 U.S. at 350.

Instead, as Defendants have previously explained, a putative class in a discrimination-type case must establish that the *reasons* (in other words, the *answers* to the common questions) for adverse treatment are the same for each putative class member.  *See id.* at 352 (explaining that when plaintiffs "wish to sue about literally millions of employment decisions at once" under Title VII, "[w]ithout some glue holding the alleged *reasons* for all those decisions together, it will be impossible to say that examination of all the class members' claims for relief will produce a common answer to the crucial question *why was*" each exemption request denied); *see also Truesdell*, 889 F.3d at 726 (holding that plaintiff failed to establish commonality because defendant's "reasons" for allegedly violating the relevant statute "may vary for each class member") (citation omitted).[5]  But Plaintiffs fail to show *in fact* either: (1) that the employer "used a biased testing procedure" common to the whole proposed class, or (2) "[s]ignificant proof that an employer operated under a general policy of discrimination" that would apply to the class.  *Wal-Mart*, 564 U.S. at 353 (citation omitted); *see also id.* at 347 (rejecting plaintiffs' argument that their "evidence of commonality was sufficient to 'raise the common question whether Wal-Mart's

---

[5] The plain language of Title VII makes it unlawful for an employer to discriminate on the basis of religion.  42 U.S.C. § 2000e-2.  The plain language of RFRA does not prohibit discrimination and it is far from clear whether its individualized elements would permit a claimant to import these types of Title VII antidiscrimination theories to establish a violation at all.  *Cf. Washington v. Davis*, 426 U.S. 229, 238 (1976) (declining to construe the Equal Protection Clause to prohibit conduct prohibited under Title VII).

female employees nationwide were subjected to a single set of corporate policies (not merely a number of independent discriminatory acts)'") (citation omitted).

At best, Plaintiffs provide "statistical proof" about the number of accommodation requests denied which "would still not demonstrate that commonality of issue exists." *Id*. at 357 ("Merely showing that Wal-Mart's policy of discretion has produced an overall sex-based disparity does not suffice."). As another federal district court recently explained: "If after conducting [individualized processing] and following the requirements of RFRA the [Armed Forces] concludes all [religious accommodation requests] for the COVID-19 vaccine should be denied, then the [Armed Forces] ha[ve] complied with the law and the denials of all applications are not evidence otherwise." *Roth v. Austin*, No. 8:22-CV-3038, 2022 WL 1568830, at *15 (D. Neb. May 18, 2022).

Similarly Plaintiffs provide "anecdotal evidence," which is "too weak to raise any inference that all the individual, discretionary personnel decisions are discriminatory," *id.* at 358, and fails to show that any alleged discrimination "manifested itself . . . in the same general fashion" across each of the putative class members' unique religious accommodation requests, *id.* at 353. Rather, Plaintiffs' claims turn on the distinct contours of each putative class member's case—the individualized assessment of the vaccine mandate as applied to each "particular claimant." *Gonzales*, 546 U.S. at 430–31. Such an inquiry cannot be resolved on a classwide basis for either Plaintiffs' RFRA or First Amendment claims. Because Plaintiffs fail to establish a "common contention," the determination of which "will

resolve an issue that is central to the validity of each one of the [RFRA and First Amendment] claims in one stroke," Plaintiffs have failed to establish commonality pursuant to Rule 23(a)(2). *Wal-Mart*, 564 U.S. at 350.[6]

### ii.   The Named Plaintiffs Are Not Typical Of The Putative Class.

For related reasons, Plaintiffs cannot satisfy the typicality requirement of Rule 23(a)(3). Under RFRA, each claim requires an individual analysis of relative burden to the service member's religious exercise and whether there exist less restrictive means of furthering the government's compelling interest. Accordingly, differences in occupational duties, deployment tempo, and work environment all affect the RFRA analysis. Yet Plaintiffs' putative class includes service members across the entire possible range of military occupations and circumstances. The Navy alone is comprised of approximately 350,000 active duty personnel who serve at sea, overseas, or ashore; in surface operations on aircraft carriers, amphibious assault ships, cruisers, destroyers, littoral combat ships, minesweepers, patrol craft, submarines, fixed-wing aircraft, helicopters, and onshore installations and organizations. Decl. of Admiral Daryl Caudle, ECF No. 118-3 ¶¶ 5, 7, 9, 11, 13. Plaintiffs' typicality argument necessarily assumes that all of these positions are so similar that individualized RFRA

---

[6] Defendants also note that they have submitted to the clerk religious accommodation request letters filed under seal pursuant to the Court's Order dated February 13, 2022. ECF No. 103. The letters provided are not the full administrative record for each accommodation request. "[T]he appeal denial letters plainly do not contain the complete individualized assessment of the applicants' RARs" and "are not comprehensive explanations of the individualized assessment through all levels of the chain of command that had input into the process." *Roth*, 2022 WL 1568830, at *14. But the letters show individualized adjudication and some approvals. Moreover, since the time Defendants submitted these letters to the Court, the Navy has granted additional religious accommodation requests. *See* https://www.navy.mil/us-navy-covid-19-updates/#alnav.

analysis for each position is unnecessary. Even assuming that "all members of the class have unsuccessfully requested a religious accommodation[,]" that does not mean that these "distinctions make no difference" as Plaintiffs assert, ECF No. 176 at 5, because "RFRA[] 'makes clear that it is [ultimately] the obligation of the court to consider whether exceptions are required under the test set forth by Congress.'" *Holt v. Hobbs*, 574 U.S. 352, 364 (2015) (quoting *O Centro*, 546 U.S. at 434).[7]

Plaintiffs' putative class also includes service members with a broad variety of claimed religious beliefs and, consequently, different reasons for objecting to the COVID-19 vaccine. *See Navy SEAL 1*, 2022 WL 1294486, at *9 n.5. These differences are essential in determining whether a particular vaccine places a substantial burden upon a service member's religion and whether there are available lesser restrictive means. *See, e.g., United States v. Grady*, 18 F.4th 1275, 1286 (11th Cir. 2021) (Under RFRA, "government must refute [only] the alternative schemes proposed by petitioners"), *petition for cert. filed,* No. 21-1297 (U.S. Mar. 25, 2022); *Smith v. Owens*, 13 F.4th 1319, 1326-27 (11th Cir. 2021) (same). For example, a service member requesting exemption from mRNA vaccines may not be substantially burdened if offered another type of vaccine, such as the Janssen (Johnson & Johnson) vaccine. Someone who mistakenly believes that, as a factual matter, available vaccines include

---

[7] In *Roth*, the United States District Court for the District of Nebraska applied an individualized analysis and found that application of the COVID-19 vaccination order to a group of Air Force personnel was the least restrictive means of furthering a compelling interest, even after determining that no deference to military decision-making was proper. 2022 WL 1568830, at *11-13, *21-29.

embryonic stem cells may have difficulty demonstrating a substantial burden. Someone who is opposed to the use of medicine may have difficulty proving their claims if he or she routinely takes medications.

Thus, for the Court to properly consider whether each putative class member is entitled to an individualized exemption from the COVID-19 vaccination policy under RFRA, the Court must take into account all of these individualized job circumstances for each of the 10,000 putative class members. *Cf. Murray v. Auslander*, 244 F.3d 807, 812 (11th Cir. 2001) (noting that even in challenge to the same allegedly illegal policy, "the need for complex, individualized hearings to determine [Medicaid] eligibility" under that policy would counsel against a finding of commonality and typicality). Moreover, religious accommodation requests are reviewed by different decisionmakers at multiple levels across the Services on a case-by-case basis giving consideration to the full range of facts and circumstances relevant to each specific request. *See* Decl. of Admiral Michael M. Gilday, ECF No. 118-4 ¶¶ 5-9; Decl. of General Eric M. Smith, ECF No. 119-5 ¶¶ 5-11. Plaintiffs' suggestion that their claims are "identical" merely because they bring the same legal claim against the same general policy misunderstands the nature of RFRA and class action requirements.

### C. Plaintiffs Fail to Show a Class That Can Be Maintained Under Rule 23(b) Because the Requested Relief is not Indivisible.

Rule 23(b)(2) classes are mandatory in that putative class members may not opt out of the class, nor is the Court obliged to afford them notice of the action, because relief will necessarily "affect the entire class at once." *See Wal-Mart*, 564 U.S. at 362; *see also Casa Orlando Apartments, Ltd. v. Fed. Nat'l Mortg. Ass'n*, 624 F.3d 185, 198 (5th Cir. 2010) (explaining that Rule 23(b)(2) "seeks to redress what are really group as opposed to individual injuries," thus "render[ing] the notice and opt-out provisions of [Rule 23](b)(3) unnecessary") (citation omitted).   Accordingly, to certify a Rule 23(b)(2) class, the requested relief must be "indivisible" such that "the conduct . . . can be enjoined or declared unlawful only as to all of the class members or as to none of them." *Wal-Mart*, 564 U.S. at 360 (citation omitted).   Plaintiffs fail to make the necessary showing for such a mandatory class.

Plaintiffs' requested relief is not "indivisible." *Id.* (citation omitted).  Plaintiffs claim that the requirement to be vaccinated against COVID-19 to be fit for military service substantially burdens a belief that is religious in nature in violation of RFRA. *See* Compl. ¶¶ 212-234.   Because each RFRA claim necessarily involves a separate analysis of different underlying facts and circumstances involved in each element, the Court cannot grant relief "only as to all of the class members or to none of them." *Wal-Mart*, 564 U.S. at 360; *see also id.* at 361 ("In particular, the Rule reflects a series of decisions involving challenges to racial segregation—conduct that was remedied by a single classwide order.   In none of the cases cited by the Advisory Committee as

examples of (b)(2)'s antecedents did the plaintiffs combine any claim for individualized relief with their classwide injunction"). "RFRA[] 'makes clear that it is the obligation of the courts to consider whether [individualized] exceptions are required under the test set forth by Congress.'" *Holt*, 574 U.S. at 364 (quoting *O Centro*, 546 U.S. at 434). Accomplishing that for the thousands of individuals that Plaintiffs believe are part of the putative class in one proceeding is not possible. Plaintiffs thus fail to establish the indivisibility requirement for a mandatory class under Rule 23(b)(2).

Accordingly, Plaintiffs have failed to show that they meet the requirements necessary to certify a class.

## II.    The Court Should Not Certify A Duplicative Class that Includes Members of the Class Certified in *U.S. Navy SEALs 1-26*.

### A. Plaintiffs Provide No Rational Basis for the Court to Certify a Duplicative Class Action.

Plaintiffs ask this Court to certify a class that is duplicative of the class certified in *Navy SEALs 1-26*. ECF No. 176 at 6-8. The *Navy SEALs 1-26* class already includes "all Navy servicemembers subject to the vaccine mandate who have submitted religious accommodation requests" *U.S. Navy SEALs 1-26*, 2022 WL 1025144, at *3. Plaintiffs provide no case squarely holding that a district court has discretion to certify a duplicative Rule 23(b)(2) class seeking equitable relief and there is good reason to believe that the Court lacks discretion to do so. *See, e.g. McNeil v. Guthrie*, 945 F.2d 1163, 1166 (10th Cir. 1991) ("Claims for equitable relief must be made through the class representative until the class action is over or the consent decree is modified.");

*Groseclose v. Dutton*, 829 F.2d 581, 584-85 (6th Cir. 1987); *Goff v. Menke*, 672 F.2d 702, 704 (8th Cir. 1982) ("[A] class member should not be able to prosecute a separate equitable action once his or her class has been certified.").

But even assuming this Court has the discretion to certify Plaintiffs' proposed duplicative class, Plaintiffs make no attempt to offer any basis whatsoever for doing so.  ECF No. 176 at 6-8.  "The primary goals of class action lawsuits are to avoid a multiplicity of actions and the risk of inconsistent or conflicting adjudications."  3 William B. Rubenstein, Newberg on Class Actions § 10:33 (5th ed. 2021).  Certifying a duplicative class action would entirely undermine the goal of the class action device. Contrary to Plaintiffs' assertions, "'[m]ultiple courts of appeal[]' have approved the practice of staying a case, or dismissing it without prejudice, 'on the ground that the plaintiff is a member of a parallel class action.'"  *Wynn v. Vilsack*, No. 3:21-cv-514, 2021 WL 7501821, at *3 (M.D. Fla. Dec. 7, 2021) (citation omitted); *see also Jiaming Hu v. U.S. Dep't of Homeland Sec.*, No. 4:17-cv-02363, 2018 WL 1251911, at *4 (E.D. Mo. Mar. 12, 2018) (collecting cases).

The Supreme Court has never "tacitly endorsed the propriety of multiple and overlapping class actions against the same defendant[,]" as Plaintiffs assert.  ECF No. 176 at 6.  In *China Agritech Inc. v. Resh*, 138 S. Ct. 1800 (2018), the Supreme Court suggested that "multiple filings" of putative class action complaints, "may aid a district court in determining, early on, whether class treatment is warranted, and if so, *which of the contenders would be the best representative*"—the Court did not endorse certification of redundant class representatives purporting to litigate the same claims on behalf of

the same individuals in separate forums. *Id*. at 1811 (emphasis added). The Court recognized that the process, in early stages, is sometimes messy, with multiple putative class filings. *Id*. But it explained that "district courts have ample tools at their disposal to manage the suits[.]" *Id*. Certifying duplicative class actions—an action that would not manage the situation at all—was obviously not among them. *Id*. Instead, those tools include "the ability to stay, consolidate, or transfer proceedings." *Id*. If Plaintiffs were proposing any of the *China Agritech* tools, Defendants would consider them. But Plaintiffs have not filed a motion requesting any of these potential solutions here.

### B. Plaintiffs Fail to Properly Invoke the First-Filed Rule.

Plaintiffs argue that, notwithstanding class certification in *Navy Seals 1-26*, the first-filed rule *"would* compel deference to this Court" to certify a class action in this case. ECF No. 176 at 9 (emphasis added). They contend that, as the first-filed case, this Court may issue a class-wide injunction even though the court in *Navy Seals 1-26* already has done so for at least part of the same class. But they have not properly moved the Court for any type of anti-suit injunction that would properly permit consideration of that issue.

"[W]hen separate courts are presented with the same lawsuit[,] . . . one court must yield its jurisdiction to the other[.]" *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Haydu*, 675 F.2d 1169, 1173 (11th Cir. 1982). A party invoking the first-filed rule utilizes different procedures depending on whether the rule is being invoked in the first-filed action or a later-filed action. The rule permits the first court to enjoin the

prosecution of the second action.  *See, e.g. Collegiate Licensing Co. v. Am. Cas. Co. of Reading*, 713 F.3d 71, 80 (11th Cir. 2013) ("[D]istrict court's decision to enjoin Appellants from proceeding with their intervention complaints pursuant to the first-filed rule will not be disturbed absent a showing of abuse of discretion."); *Nw. Airlines, Inc. v. Am. Airlines, Inc.*, 989 F.2d 1002, 1006-07 (8th Cir. 1993) (addressing "orders enjoining a party from proceeding with a duplicative, second-filed lawsuit in another forum"); *Mann, Mfg., Inc. v. Hortex, Inc.*, 439 F.2d 403, 407 (5th Cir. 1971) ("[T]he trial judge acted properly in temporarily restraining Goodrich from proceeding with a motion in [the second-filed court] that, if successful, could have stripped him of all jurisdiction over the controversy before he had [a] chance to hold a hearing and decide the question for himself."); *Semmes Motors, Inc. v. Ford Motor Co.*, 429 F.2d 1197, 1202 (2d Cir. 1970) (Friendly, J.) (expressing "no doubt" that the first-filed "court could properly have enjoined prosecution of the [second] action" where same plaintiff brought both actions).  "While the normal chronology would have been for the court of first impression . . . to have enjoined the second court, this procedure is not mandatory.  The same policies are furthered by the second court's exercising judicial self-restraint[.]"  *Adam v. Jacobs*, 950 F.2d 89, 93 (2d Cir. 1991).

In absence of a pending motion on this issue, there is no sound basis for the Court to opine on it.  Plaintiffs' memorandum leaves entirely unaddressed why they invoke the first-filed rule—a rule designed to "give[] proper weight to the necessity of avoiding duplicative litigations, thereby conserving judicial resources[,]" *First City*

*Nat'l Bank & Tr. Co. v. Simmons*, 878 F.2d 76, 80 (2d Cir. 1989)—as part of a request that the Court certify a duplicative class action.

### C. The *U.S. Navy SEALs 1-26* Court's Suggestion that Class Members Could Proceed Elsewhere Simultaneously Flies in the Face of Law Governing Duplicative Litigation.

Plaintiffs devote a section of their brief to a paragraph from the *U.S. Navy SEALs 1-26* class certification order that asserts that "[s]imultanious litigation [by class members] in other courts does not present a conflict[.]" ECF No. 176 at 8 (quoting 2022 WL 1025144, at *7). But that paragraph—which does not cite a single case addressing duplicative proceedings for injunctive relief—flies in the face of the first-filed rule, could lead to conflicting injunctions for the same plaintiffs, and in any event did not appear to contemplate two overlapping *class actions*. Indeed, "a district court can go 'beyond the allowable bounds of discretion' when it refuses to stay or dismiss a duplicative suit." *Adam*, 950 F.2d at 92 (quoting *Semmes Motors, Inc.*, 429 F.2d at 1204). The *U.S. Navy SEALs 1-26* court simply asserts that "[t]his class certification does not prevent other judges from handling similar pending cases elsewhere as one district court is not permitted to interfere with the proceedings of another." 2022 WL 1025144, at *7 n.4. But "[t]o allow two or more district judges to issue directions to [the government] simultaneously would be to create what [the Eighth Circuit] aptly characterized as an 'inefficient' situation, fraught with potential for inconsistency, confusion, and unnecessary expense." *Groseclose*, 829 F.2d at 584. In these cases, for example, different courts would be asked to tailor relief issued to the same class, and

purport to maintain jurisdiction over the same Service Members on the same issue. And if injunctive relief were granted here, that outcome could force Defendants into an unmanageable compliance predicament. Additionally, certifying a class action to address claims by absent class members who have not prevailed in individual RFRA claims against the government elsewhere would improperly provide them with a second bite at the apple. *See, e.g., Roth*, 2022 WL 1568830, at *31; *Creaghan v. Austin*, No. 21-0981, 2022 WL 1500544, at *11 (D.D.C. May 12, 2022); *Navy SEAL 1*, 2022 WL 1294486 at *17;

## III.   The Putative Class Does Not Face Irreparable Harm.

Finally, Plaintiffs have not established that the putative class faces any irreparable harm. Plaintiffs appear to misunderstand the meaning of "irreparable." Each of Plaintiffs' examples of prior alleged harms—which include administrative discipline, separation, and reassignment to the Individual Ready Reserve, ECF No. 176 at 13–16—are entirely reparable.

Indeed, multiple courts considering this issue have held that "[m]ilitary administrative and disciplinary actions, including separation, are not . . . irreparable injuries." *Dunn v. Austin,* No. 22-cv-288, (E.D. Cal.) Prelim. Inj. Tr. 45:25–46:2 ("Dunn Op.").[8]   "[H]arms such as lost rank, duties, benefits, and pay are not irreparable because 'these harms are redressable as monetary damages and therefore insufficient to obtain injunctive relief.'" *Mark Short v. Berger*, No. CV 22-1151, 2022

---

[8] A copy of this order is included in the record of this case. ECF No. 132-6

WL 1051852, at *9 (C.D. Cal. Mar. 3, 2022) (quoting *Air Force Officer v. Austin*, ---F. Supp. 3d---, 2022 WL 468799, at *12 (M.D. Ga. Feb. 15, 2022)), *appeal filed*, No. 22-55339 (9th Cir. Apr. 5, 2022); *Roth*, 2022 WL 1568830, at *29 (holding that "various kinds of economic loss . . . that is or will be caused by enforcement of the Air Force's COVID-19 vaccination mandate" did not establish irreparable harm); *Navy SEAL 1*, 2022 WL 1294486, at *4 (same); *Creaghan*, 2022 WL 1500544, at *10 (same); *Church v. Biden*, ---F. Supp. 3d---, 2021 WL 5179215, at *15 (D.D.C. Nov. 8, 2021) (citing *Sampson v. Murray*, 415 U.S. 61, 92 n.68 (1974)).

Thus, for example, Plaintiff Reserve Lieutenant Colonel's transfer into the Individual Ready Reserve is reparable with reassignment and back pay.  Plaintiffs Captain 2 and Captain 3's placement on the Officer Disciplinary Notebook, Plaintiff Chaplain's Letter of Counseling and Letter of Reprimand, and all other Plaintiffs' administrative disciplinary actions are removable by the Board for Correction of Naval Records, Decl. of Vice Admiral William Merz, ECF No. 23-18 ¶ 22; and, to the extent that they have caused lost opportunity, are reparable with damages.  To the extent that Plaintiff Captain 2's Board of Inquiry ultimately approves separation, such separation is reparable by reinstatement and back pay.  Plaintiffs' alleged list of harms only underscores their misunderstanding of "irreparability."

Nor can Plaintiffs rely on the notion that the class raises First Amendment claims.  "[S]urely the naked recitation of a constitutional claim isn't [a] sufficient [Article III injury]; if it were, every § 1983 plaintiff would, by definition, have standing to sue." *Gardner v. Mutz*, 962 F.3d 1329, 1341 (11th Cir. 2020).  In any event, Plaintiffs

19

fail to establish likelihood of success on the merits, so infringement is neither "threatened [nor] occurring." *Elrod v. Burns*, 427 U.S. 347, 374 (1976); *see, e.g.*, *Archdiocese of Wash. v. Wash. Metro. Area Transit Auth.*, 897 F.3d 314, 334 (D.C. Cir. 2018) (explaining that to show irreparable harm based on loss of constitutional rights, movant must "show a likelihood of success on the merits"), *cert. denied*, 140 S. Ct. 1198 (2020); *Bellinger v. Bowser*, 288 F. Supp. 3d 71, 88–89 (D.D.C 2017) (denying preliminary injunction, "even assuming that every [constitutional] allegation constitutes an irreparable injury," where the other factors "weigh so heavily against Plaintiffs that they cannot prevail"); *Mark Short*, 2022 WL 1051852, at \*9 ("[B]ecause this Court has found that Plaintiff failed to demonstrate a sufficient likelihood of success on the merits of his religious freedom claims, there is no presumption of irreparable harm."); *Dunn* Op. at 45; *Thomas Short v. Berger*, No. CV-22-00044, 2022 WL 1203876, at \*7-8 (D. Ariz. Apr. 22, 2022), *appeal filed*, No. 22-15755 (9th Cir. May 18, 2022) *Creaghan*, 2022 WL 1500544, at \*10 (explaining that in addition to not showing a likelihood of success, a claim based on RFRA asserts loss of a "*statutory* right" and does not constitute irreparable harm "predicated on the loss of a *constitutional* right" (emphasis in original)).

Accordingly, Plaintiffs fail to establish classwide irreparable harm.

## CONCLUSION

For all of these reasons, Plaintiffs' motion for class certification and for a class-wide preliminary injunction should be denied.

Dated: May 23, 2022          Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

ALEXANDER K. HAAS
Director, Federal Programs Branch

ANTHONY J. COPPOLINO
Deputy Director

*/s/ Liam C. Holland*
ANDREW E. CARMICHAEL
AMY E. POWELL
Senior Trial Counsel
STUART J. ROBINSON
Senior Counsel
ZACHARY A. AVALLONE
LIAM C. HOLLAND
CATHERINE M. YANG
MICHAEL P. CLENDENEN
JOHNNY H. WALKER
CASSANDRA M. SNYDER
Trial Attorneys
United States Department of Justice
Civil Division, Federal Programs Branch
1100 L Street, N.W.
Washington, DC 20005
Tel: (202) 514-4964
Fax: (202) 616-8470
Email: liam.c.holland@usdoj.gov

*Counsel for Defendants*