UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| NAVY SEAL 1, *et al.*, for themselves and all others similarly situated, | )<br>)<br>) |
| Plaintiffs, | )<br>) |
| v. | ) No. 8:21-cv-2429-SDM-TGW<br>) |
| LLOYD AUSTIN, in his official capacity as Secretary of the United States Department of Defense, *et al.*, | )<br>)<br>)<br>)<br>) |
| Defendants. | )<br>) |

**PLAINTIFFS' RESPONSE
IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

Plaintiffs, pursuant to Local Rule 3.01(b), respond below in opposition to Defendants' Motion to Dismiss, or, in the Alternative, Motion to Sever (Doc. 139), and by the attached Exhibit A respond to the Court's Order of May 5, 2022 (Doc. 183).

**INTRODUCTION**

In their continued efforts to avoid accountability under the First Amendment and RFRA, Defendants move to dismiss Plaintiffs claims based on a host of contentions the Court has rejected, and otherwise mischaracterize Plaintiffs' allegations and the nature of their challenges. To be sure, Defendants "continue[] on the path determined months ago" (Doc. 122 at 19), persisting in mindset that their military decisions are unreviewable (Doc. 139 at 11). But the Court already rejected Defendants' justiciability argument:

> Despite the unmistakable message of the Free Exercise Clause, RFRA, and *O Centro*, the defendants argue as if none of the three exists (or, at least, as if none of the three affects the command

> discretion of the armed forces). . . . Although certainly not "given the task of running the Army," the courts in the narrow instance of RFRA are given the task of ensuring that those who are given the task of running the Army (and the armed forces in general and every other component of the federal government) conform their actions to the governing law, to RFRA, to which the admirals and the generals and commandants are unquestionably subordinate—just like the President, the Speaker of the House, the Chief Justice, and every other person in the federal government.

(Doc. 122 at 8.) Plaintiffs can say it no better, and Defendants' other arguments fare no better. Plaintiffs' claims are well-pleaded, and the Court has jurisdiction and authority to adjudicate them. Defendants' motion should be denied.

## ARGUMENT

"Because of the liberal pleading standard prescribed by F.R.C.P. Rule 8(a), dismissal for failure to state a claim is viewed with disfavor, and is rarely granted." *Sosa v. Coleman*, 646 F.2d 991, 993 (5th Cir. 1981).[1] Under Rule 8, "a pleading must contain a 'short and plain statement of the claim showing that the pleader is entitled to relief,'" *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009), and Rule 8 "do[es] not require heightened fact pleading of specifics, but only enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." *Bell Atl.*, 550 U.S. at 556 (cleaned up). The pleading standard "simply calls for enough fact to

---

[1] The Eleventh Circuit adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir. 1981) (en banc).

2

raise a reasonable expectation that discovery will reveal evidence of illegal [conduct]." *Bell Atl.*, 550 U.S. at 556. Thus, it is an "accepted rule that a complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove *no* set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45 (1957) (emphasis added).

Moreover, a motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint, but does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses. *See* 5A Charles A. Wright & Arthur R. Miller, *Federal Practice and Procedure* § 1356 (1990). Thus, the Court's review is "limited to the four corners of the complaint," *St. George v. Pinellas Cnty.*, 285 F.3d 1334, 1337 (11th Cir. 2002), "accepting the facts alleged in the complaint as true and drawing all reasonable inferences in the plaintiff's favor." *Id.* Defendants' motion improperly relies on substantial matters outside the four corners of the complaint (Doc. 139 at 2, 6 n.2, 6–8, 15, 16, 17 n.5; Docs. 139-2 to 139-7) and otherwise fails to meet the high standard for dismissal.

I. **THE COURT HAS ALREADY REJECTED DEFENDANTS' MERITLESS RIPENESS AND EXHAUSTION ARGUMENTS.**

   A. **Plaintiffs' claims are ripe for the Court's adjudication.**

Defendants' contention that Plaintiffs' free exercise claims should be dismissed as unripe has no merit. (Doc. 139 at 6–10.) First, the Court already determined that Plaintiffs' free exercise claims are plausible:

> Whether characterized as a facial challenge or as a class of precisely similar as-applied challenges, requiring only a single

3

> judicial determination, the plaintiffs' contention is—based on current data—quite plausible that each branch's procedure for requesting a religious exemption is a ruse that will result inevitably in the undifferentiated (and therefore unlawful under RFRA) denial of each service member's request.

(Doc. 40 at 33; *cf.* Doc. 105, ¶¶ 32–64, 85–115, 128–161, 180–201, 240–280.) As shown above, plausibility satisfies the pleading standard of Rule 8, and defeats dismissal under Rule 12.

Second, the Court already recognized that a Plaintiff's free exercise claim "becomes ripe if the plaintiff faces an "actual or imminent" injury, which occurs if the plaintiff confronts an actual or imminent burden on religious practice." (Doc. 40 at 29 (citation omitted).) Each Plaintiff has alleged such actual or imminent burden and injury by the military's "inevitabl[e] [and] undifferentiated . . . denial of each service member's [religious accommodation] request." (Doc. 105, ¶¶ 32–64, 85–115, 128–161, 180–201, 240–280.) Given these well-pleaded allegations, Defendants cannot show that it is "beyond doubt that the plaintiff[s] can prove *no* set of facts in support of [their] claim[s] which would entitle [them] to relief." *See Conley*, *supra*.

The Court should reject Defendants' attempt to challenge ripeness by importing factual matter from outside the four corners of the complaint, arguing that *some* Plaintiffs have not yet received final denials of their (RA) requests. (Doc. 139 at 6–7 & n.2.) To be sure, the Court established the final denial of an RA appeal as the *ceiling* for ripeness, not the floor:

> In the present instance, the first moment an objecting service member must act contrary to a religious belief is when the exemption is finally denied and the member must choose to

4

> immediately receive the injection or immediately defy a direct order. For that reason, "ripeness" can occur *no later than* the moment the member must irreparably receive the injection or irreparably defy an order.

(Doc. 40 at 30 (emphasis added).) But the Court did not alter the fundamental ripeness requirement of actual or imminent burden on religious practice, and did not reject the plausibility, for purposes of pleading under Rule 8, of inevitable denial of all Plaintiffs' RA requests, and resulting inevitable injury. Moreover, the Court expressly recognized the possibility that "[a]n actual or imminent injury might arise before a plaintiff's request and appeal is conclusively denied if a plaintiff receives targeted punishment for requesting an exemption." (Doc. 40 at 30 n.6.) Thus, if subsequent factual developments were relevant to the sufficiency of Plaintiffs' pleadings, the continual trajectory of those developments supports Plaintiffs' claims. As of this filing, of the 31 pseudonymously named Plaintiffs, 14 have had their final RA appeals denied (Doc. 105, ¶ 145; Doc. 111 at 11–12, 14–15; Doc. 141 at 3, Doc. 141-4 at Page ID 8954–57; Doc. 157-1, ¶ 27; Doc. 166, ¶¶ 7–13; Doc. 173 at 5–9), and another 12 have had their initial RA requests denied and/or have been punished as a result of submitting an RA request. (Docs. 105, ¶¶ 84, 128, 130, 132, 134, 144, 146, 147, 156, 157, 158 ; Ex. A, ¶ 1).

The Court has also recognized the facial nature of Plaintiffs' free exercise challenge to the constitutionality of Defendants' vaccine mandate for its wholesale failure to administer the requisite compelling interest and least restrictive means standard "to the person" and resulting across-the-board denials of accommodations

5

for sincere religious objectors (Doc. 40 at 26 ("the contention that the vaccine requirement is 'effectively without exception' constitutes a 'form of a facial challenge'")), which further supports ripeness under First Amendment precedents. The usual jurisdictional concern for ripeness is relaxed for facial challenges under the First Amendment. *See, e.g.*, *Speech First, Inc. v. Cartwright*, 32 F.4th 1110, 1120 (11th Cir. 2022) (explaining that ripeness inquiry "is most loosely applied—particularly in terms of how directly the injury must result from the challenged governmental action—where First Amendment rights are involved, because of the fear that [liberties] will be chilled even before the law, regulation, or policy is enforced" (cleaned up)); *Beaulieu v. City of Alabaster*, 454 F.3d 1219, 1227 (11th Cir. 2006) ("Because this case involves an alleged violation of the First Amendment, our review of this suit's ripeness is at its most permissive."); *Cheffer v. Reno*, 55 F.3d 1517, 1523 n.12 (11th Cir. 1995) ("We note that the doctrine of ripeness is more loosely applied in the First Amendment context.").

Moreover, facial challenges to regulations prior to enforcement are proper in the First Amendment context. *See, e.g.*, *Dombrowski v. Pfister* 380 U.S. 479, 486 (1965) ("[W]e have not required that all of those subject to overbroad regulations risk prosecution to test their rights."); *Thornhill v. Alabama*, 310 U.S. 88, 97 (1940) ("It is not merely the sporadic abuse of power by the censor but the pervasive threat inherent in its very existence that constitutes the danger to freedom of discussion.") As the Eleventh Circuit held: "We will not force a plaintiff to choose between intentionally violating a law to gain access to judicial review and foregoing what he or she believes

6

to be constitutionally protected activity in order to avoid criminal prosecution." *White's Place, Inc. v. Glover*, 222 F.3d 1327, 1329 (11th Cir. 2000). Thus, "one does not have to await the consummation of threatened injury to obtain preventive relief. If the injury is certainly impending, that is enough." *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979) (cleaned up); *see also Steffel v. Thompson*, 415 U.S. 452, 459 (1974) ("[I]t is not necessary that petitioner first expose himself to actual arrest or prosecution to be entitled to challenge a statute that he claims deters the exercise of his constitutional rights."); *ACLU v. The Florida Bar*, 999 F.2d 1486, 1492 (11th Cir. 1993) ("When a plaintiff has stated that he intends to engage in a specific course of conduct 'arguably affected with a constitutional interest,' however, he does not have to expose himself to enforcement to be able to challenge the law.").

"If the rule were otherwise, the contours of regulation would have to be hammered out case by case—and tested only by those hardy enough to risk criminal prosecution to determine the proper scope of regulation." *Drombrowski*, 380 U.S. at 487. The First Amendment—"of transcendent value to all society, and not merely to those exercising their rights—might be the loser." *Id.*

Defendants' contention that Plaintiffs must await completion of enforcement, which includes the threat of dishonorable discharge (Doc. 105, ¶ 180; Doc. 40 at 29 (noting Defendants "could not exclude dishonorable discharge as an available discipline")), is wrong. The inevitability of Defendants' punitive enforcement of the vaccine mandate is "latent in the existence of the [mandate]," *Majors v. Abell*, 317 F.3d

7

719, 721 (7th Cir. 2003), and thus ripens Plaintiffs' challenge before Defendants finally enforce the mandate against them.

### B. Plaintiffs need not exhaust administrative remedies under RFRA or the First Amendment.

Defendants' exhaustion of remedies argument (Doc. 139 at 6–10), closely related to its ripeness argument, is also meritless. (*Cf.* Doc. 40 at 29 ("Defendants argue that no challenge to the military's vaccination requirement is ripe because no plaintiff has exhausted available administrative remedies." (cleaned up)).) And the Court has already rejected it. (Doc. 40 at 29–30.)

A military plaintiff need not exhaust administrative remedies before bringing a First Amendment or RFRA challenge to military policies. *See, e.g.*, *Beaulieu v. City of Alabaster*, 454 F.3d 1219, 1226–27 (11th Cir. 2006) ("The Supreme Court and this Court have held that there is no requirement that a plaintiff exhaust his administrative remedies before filing suit under § 1983."); *Adair v. England*, 183 F. Supp. 2d 31, 55 (D.D.C. 2002) (military plaintiff need not exhaust administrative remedies to bring First Amendment Free Exercise challenge to military regulations); *Singh v. Carter*, 168 F. Supp. 3d 216, 226 (D.D.C. 2016) (military plaintiff not required to exhaust administrative remedies to bring RFRA challenge to military policies substantially burdening his religious exercise). As noted in *Singh*, "RFRA certainly provides no textual support for the defendants' position that the plaintiff is required to exhaust administrative remedies in a court-martial proceeding before bringing his constitutional and RFRA claims before this Court." 168 F. Supp. 3d at 226; *see also*

8

*Oklevueha Native Am. Church of Hawaii, Inc. v. Holder*, 676 F.3d 829, 838 (9th Cir. 2012) ("We decline, however, to read an exhaustion requirement into RFRA where the statute contains no such condition and the Supreme Court has not imposed one." (citation omitted)).

"Resolving a claim founded solely upon a constitutional right is singularly suited to a judicial forum and clearly inappropriate to an administrative board." *Downen v. Warner*, 481 F.2d 642, 643 (9th Cir. 1973). In *Downey*, the Ninth Circuit held that a military service member need not exhaust administrative remedies to bring a constitutional challenge. *Id.* Thus, the plaintiff "was not barred from the district court through her failure to exhaust administrative remedies." *Id.*

In *Dilley v. Alexander*, the court explained why military plaintiffs may bring their claims directly in federal court. 603 F.2d 914, 920 (D.C. Cir. 1979). The court reasoned that deference to the military is

> wholly inappropriate . . . when a case presents an issue that is amenable to judicial resolution. Specifically, courts have shown no hesitation to review cases in which a violation of the Constitution, statutes, or regulations is alleged. It is a basic tenet of our legal system that a government agency is not at liberty to ignore its own laws and that agency action in contravention of applicable statutes and regulations is unlawful. The military departments enjoy no immunity from this proscription.

*Id.* (citations omitted).

Defendants' contention that Plaintiffs must exhaust all administrative remedies before bringing their First Amendment and RFRA challenges in federal court "falls flat." *Adair*, 183 F. Supp. 2d at 55. This Court has already said so:

9

> The pertinent precedents (and a fair empathy for the conscience of the sincere religious objector) suggest that in a Free Exercise Clause claim the initial episode of denial of free exercise causes irreparable harm and satisfies the demands of "ripeness" without the need to endure the denial of free exercise during the protracted exhaustion of every non-judicial remedy.

(Doc. 40 at 30.)

Defendants' resort to *Mindes v. Seaman*, 453 F.2d 197 (5th Cir. 1971) (Doc. 139 at 8–9), is unavailing. As the Fifth Circuit recognized in *U.S. Navy SEALS 1–26 v. Austin*, 27 F.4th 336 (5th Cir. 2022) [hereinafter *Navy SEALS*], "following RFRA's enactment, abstention based on the *Mindes* test is no longer permissible" because "RFRA 'operates as a kind of super statute, displacing the normal operation of other federal laws[.]'" *Id.* at 346 (modification in original) (quoting *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1754 (2020)). But even if the *Mindes* test still applied, Plaintiffs still need not exhaust administrative remedies. Specifically, "Plaintiffs are exempted from exhausting their administrative remedies" because "the administrative remedy is futile and plaintiffs raise substantial constitutional claims." *Id.* at 347.

First, the administrative exhaustion requirement would be futile here because Defendants "ha[ve] not accommodated any religious request to abstain from any vaccination in seven years, and to date it has denied all religiously based claims for exemption from COVID-19 vaccination." *Id.* The same futility obtains here. (*See* Docs 73-2, 73-3, 73-4, 73-5, 74-6.) Defendants have "effectively stacked the deck against even those exemptions supported by Plaintiffs' immediate commanding

officers and military chaplains," 27 F.4th at 347, so requiring them to go hat in hand through the same sham process is the definition of futility.

Second, "Plaintiffs allege specific, and far from frivolous, violations of their free exercise rights under both the First Amendment and RFRA," so "the nature and strength of Plaintiffs' claims weigh in favor of judicial resolution." *Id.* at 348. The same holds true here, as this Court has already determined (nine times) that Plaintiffs are substantially likely to prevail on the merits of their claims. (*See* Docs. 40, 67, 111, 122, 133, 150, 157, 173, 174.)

Third, Plaintiffs face immediate and irreparable injury absent the Court's adjudication of their claims. *See Navy SEALS*, 27 F.4th at 348. The Court has already held Plaintiffs face such irreparable harm absent judicial intervention. (*See* Docs. 40, 67, 111, 122, 133, 150, 157, 173, 174.)

Fourth, given Defendants' approval of thousands of medical exemptions, it is "illogical that Plaintiffs' religious-based refusal to take a COVID-19 vaccine would seriously impede military function." *Navy SEALS*, 27 F.4th at 348 (cleaned up).

Finally, Plaintiffs are exempt from exhaustion requirements because the record in this case reveals that "[d]espite the unmistakable message of the Free Exercise Clause, RFRA, and *O Centro*, the defendants argue as if none of the three exists" (Doc. 122 at 8), revealing that "courts must intervene because generals don't make good judges—especially when it comes to nuanced constitutional issues." *Navy SEALS*, 27 F.4th at 349 (cleaned up).

11

## II. PLAINTIFFS' VERIFIED COMPLAINT STATES A CLAIM UNDER THE EUA STATUTE AND 21 U.S.C. § 1107.

### A. The Court's initial preliminary injunction order does not require dismissal.

Defendants make much of the Court's prior discussion of Plaintiffs' claims under 21 U.S.C. § 1107. (Doc. 139 at 12–17.) But the Court was deciding then whether Plaintiffs had demonstrated a likelihood of success on the merits of their claims for purposes of a preliminary injunction (Doc. 40 at 7), not whether they had sufficiently pleaded a claim. This procedural distinction matters. "[T]he standard governing a motion to dismiss is quite different from the standard governing a motion for preliminary injunction." *Keeton v. Anderson-Wiley*, No. CV 110-099, 2011 WL 13345348, at *1 n.1 (S.D. Ga. Aug. 22, 2011). "On a motion to dismiss, the Court must take the pleaded facts in the light most favorable to the non-moving party. Conversely, on a motion for preliminary injunctive relief, the Petitioner has the burden to show that it is likely to succeed on the merits." *Pershing LLC v. Curi*, No. 12-62449-CIV, 2013 WL 2304189, at *2 (S.D. Fla. May 24, 2013). The denial of a preliminary injunction "does not mean that [Plaintiffs] will be unable to ultimately prevail on the merits of [their] claim[s]." *Id.* The reason for this is simple: "the standard for demonstrating a likelihood of success on the merits . . . is far more demanding than the plausibility standard applied to survive dismissal for the failure to state a claim at the pleading stage." *Benitez v. King*, 298 F. Supp. 3d 530, 536 (W.D.N.Y. 2018) (cleaned up); *see also New Hope Family Servs., Inc. v. Poole*, 966 F.3d 145, 165 (2d Cir. 2020) ("[The plaintiff there] had to demonstrate a reasonable likelihood of success on

12

its Free Exercise claim, a heavier burden than [Plaintiffs here] bear in pleading the plausible claim necessary to avoid dismissal."). Thus, Defendants' reliance on the Court's prior finding that Plaintiffs had not demonstrated a substantial likelihood of success on the merits is misplaced. Plaintiffs have crossed the minimal threshold of pleading sufficient facts to avoid dismissal under Rule 12.

    **B.  Plaintiffs' Complaint plainly alleges that Defendants do not have and do not use a fully licensed vaccine and thus violate 21 U.S.C. § 1107 by mandating a vaccine that is authorized but not approved.**

Defendants contend that Plaintiffs' Emergency Use Authorization claim fails under 21 U.S.C. §§ 1107 and 1107a because "no Plaintiff alleges that he or she has sought (much less been denied) a COVID-19 vaccine that complies with an approved Biologics License Application." (Doc. 139 at 12.) Defendants further contend that they have not violated § 1107 because the "DoD has not required that service members receive COVID-19 vaccines only authorized for emergency use." (Doc. 139 at 15.) Specifically, Defendants contend that "no Plaintiff has alleged that the military will require them to 'receive an emergency vaccine not complying with the FDA license.'" (Doc. 139 at 13.) Defendants' contentions are false.

Plaintiffs have plainly alleged that the only vaccines available in the United States—including those available to the United States Military—are vaccines available solely under Emergency Use Authorization. (Doc. 105, ¶¶ 162–175.) Plaintiffs explicitly allege that "the only currently available COVID-19 vaccines are authorized under EUA only." (Doc. 105, ¶ 175.) Also, Plaintiffs allege that "the FDA has admitted and acknowledged that COMIRNATY is not available for the population of

13

the United States." (Doc. 105, ¶ 171.) Yet, despite Plaintiffs' plainly alleging that there is no BLA-compliant vaccine available in the United States (Doc. 105, ¶ 171) and that Defendants are nonetheless requiring Plaintiffs to take a COVID-19 vaccine currently available in the United States (Doc. 105, ¶¶ 173–75), Defendants still contend that Plaintiffs have failed to state a claim. To the contrary, Plaintiffs have explicitly alleged that Defendants are requiring them to take an emergency vaccine not compliant with an FDA license, which is sufficient to state a claim under § 1107.[2]

### III. PLAINTIFFS' CLAIMS ARE PROPERLY JOINED.

Defendants' contention that the claims in the instant proceeding should be severed is incorrect as a matter of law. Rule 20 provides that Plaintiffs "may join in one action as plaintiffs if: (A) they assert any right . . . with respect to or arising out of the same transaction, occurrence, or series of transactions or occurrences; and (B) any question of law or fact common to all plaintiffs will arise in the action." Fed. R. Civ. P. 20(a)(1)(A), (B). *See also Swan v. Ray*, 293 F.3d 1252, 1253 (11th Cir. 2002). And, as the Supreme Court has made clear, "joinder of claims, parties, and remedies is strongly encouraged." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 724 (1966). The purpose behind permissive joinder being is to "'promote trial convenience and expedite resolution of disputes, thereby eliminating unnecessary lawsuits.'" *Swan*, 293 F.3d at 1253.

---

[2] Not only did Plaintiffs' adequately plead facts sufficient to state their claim, but their subsequent testimony demonstrates the truth of the allegation. (Doc 112 at 51–55, 60 ("We do not have the product Comirnaty here."); 167–69.)

14

Plaintiffs' claims plainly arise out of the same transaction or occurrence, involve identical claims, and involve identical requests for relief. First, all Plaintiffs allege that they harbor sincere religious objections to accepting a COVID-19 vaccine that is connected in any way with aborted fetal cells. (Doc. 105, ¶¶ 85–115.) All Plaintiffs' claims arise out of Defendants' vaccine mandate (Doc. 105, ¶¶ 80–84), and all Plaintiffs bring identical challenges to that mandate (Doc. 105, ¶¶ 212–280). As the first words of this action pointed out, "Plaintiffs are United States Armed Forces servicemembers . . . who face a deadline under the COVID-19 Vaccine Mandate to receive a COVID-19 vaccine that violates their sincerely held religious beliefs, and have been refused any religious exemption or accommodation." (Doc. 1, ¶ 1.) Plaintiffs' claims "involve questions of fact and law that are common to all class members." (Doc. 105, ¶ 205.) Indeed, as the Court has already held, Plaintiffs' action "present[s] a single issue of uniform noncompliance with RFRA." (Doc. 40 at 28.) That is sufficient for Rule 20 and makes joinder of Plaintiffs and their identical claims permissible.

Defendants' only answer to the common—indeed, identical—questions of law and fact at issue here is to trot out their previously rejected argument that Plaintiffs here bring only "as-applied" challenges that must be adjudicated individually. (Doc. 139 at 18.) This is simply incorrect. As the Court already held, Plaintiffs' "contention that the vaccine requirement is effectively without exception constitutes a form of facial challenge." (Doc. 40 at 26 (cleaned up); *see also* Doc. 40 at 28 ("The present class action . . . is much nearer a facial constitutional challenge than an individual claim for

15

damages or injunction.").) The Court's holding remains true today, and Defendants' contentions to the contrary are without merit.

Finally, the Court has already determined that joining the claims of the Plaintiffs in this matter is permitted and advisable because the claims involve common questions of law and arise out of the same transaction or occurrence. (Doc. 67 at 3 (holding that Navy Commander should be joined as a Plaintiff because his "claims arise out of the same transaction, occurrence, or series of transactions or occurrences and contain a question of law or fact common to *the other service member plaintiffs*." (emphasis added).) This Court's finding was correct as to Navy Commander, and it remains correct as to all Plaintiffs in the instant action.

## IV. VENUE IS APPROPRIATE IN THIS COURT AS TO ALL PLAINTIFFS' CLAIMS.

Defendants contend that because not *all* Plaintiffs reside in the Middle District of Florida, venue is improper as to those Plaintiffs. (Doc. 139 at 2, 20–21.) This is incorrect.

> A civil action in which a defendant is an officer or employee of the United States or any agency thereof acting in his official capacity or under color of legal authority, or an agency of the United States, or the United States, may, except as otherwise provided by law, be brought in any judicial district in which . . . the plaintiff resides if no real property is involved in the action.

28 U.S.C. § 1391(e)(1).

Courts in the Eleventh Circuit—as well as throughout the country—interpret this provision to mean that venue is proper as to all plaintiffs if *any* plaintiff resides in the district. *See, e.g.*, *A.J. Taft Coal Co. v. Barnhart*, 291 F. Supp. 2d 1290, 1301–02 (N.D.

16

Ala. 2003) (collecting cases); *Institute of Certified Practitioners, Inc. v. Bentsen*, 784 F. Supp. 1370, 1372 (N.D. Ga. 1994) ("only one of the plaintiffs need reside in the district in question for venue to be properly invoked pursuant to 28 U.S.C. § 1391(e)").

"For over thirty years federal courts have conclusively and consistently held that the statutory language in 28 U.S.C. § 1391(e) regarding the residency of 'the plaintiff' should be interpreted to mean *any* plaintiff rather than *all* plaintiffs." *A.J. Taft*, 291 F. Supp. 2d at 1301-02 (N.D. Ala. 2003). Indeed, the *A.J. Taft* court noted that despite "the vast resources of their respective law groups, [defendants] could not identify a single case deciding that § 1391(e) should be interpreted to mean *all* plaintiffs." *Id.*

The Sixth Circuit's decision in *Sidney Coal Co., Inc. v. Social Sec. Admin.*, 427 F.3d 336 (6th Cir. 2005) is particularly instructive on this issue. There, the federal government defendants contended that venue was improper in the district court because "only four of the eight subsidiary-plaintiffs reside in Kentucky." 427 F.3d at 343. As Defendants do here, the federal government urged the court "to interpret the words 'the plaintiff,' as found in §1391(e), to require *each* plaintiff or *all* plaintiffs to reside in the judicial district." *Id.* at 344. The Sixth Circuit plainly rejected that reading of § 1391. "The statute's legislative history and the plethora of case law interpreting the statute, taken together, persuade this Court that § 1391(e) contains no requirement that all plaintiffs must reside in the same district." *Id.* Indeed, "no court has interpreted the statute as such since the statute's enactment in 1962." *Id.* The purpose of the revisions to § 1391 was "to make it more convenient for an aggrieved person to file suit against a federal entity," and "interpreting the phrase 'the plaintiff' to mean 'all

17

plaintiffs' or 'each plaintiff' would substantially limit the statute's breadth and undermine congressional intent." *Id.* The Sixth Circuit therefore rejected the federal government's contention that every plaintiff in a civil action against it must reside in the district in which the action is brought.

The Northern District of Alabama's and the Sixth Circuit's analyses are universally shared in the federal courts. In fact, the interpretation employed by those courts "is not the majority view—it is the only view adopted by the federal courts since 1971." *Id.* at 345. *See also Exxon Corp. v. Fed. Trade Comm.*, 588 F.2d 895, 898–99 (3d Cir. 1978), *overruled on other grounds Reifer v. Westport Ins. Corp.*, 751 F.3d 129 (3d Cir. 2014) ("[R]equiring every plaintiff in an action against the federal government or an agent thereof to independently meet section 1391(e)'s standards would result in an unnecessary multiplicity of litigation. The language of the statute itself mandates no such narrow construction. There is no requirement that all plaintiffs reside in the forum district."); *Railway Labor Executives Ass'n v. I.C.C.*, 958 F.2d 252, 256 (9th Cir. 1991) ("venue need be proper for only one plaintiff under 28 U.S.C. §1391(e)"); *Kolluri v. U.S. Citizenship & Imm. Serv.*, No. 3:20-CV-02897-N, 2021 WL 183316, *3 (N.D. Tex. Jan. 17, 2021) (holding that 7 out of the 314 plaintiffs residing in the district was sufficient to establish proper venue) ("For over thirty years federal courts have conclusively and consistently held that the statutory language of 28 U.S.C. § 1391(e) regarding the residency of 'the plaintiff' should be interpreted to mean *any* plaintiff rather than *all* plaintiffs" (quoting *A.J. Taft*, 291 F. Supp. 2d at 1301)); *Ray v. Cuccinelli*, No. 20-cv-06279-JSC, 2020 WL 6462398, at *3 (N.D. Cal. Nov. 3, 2020) (holding that

18

6 of the 45 plaintiffs residing in the district was sufficient to establish proper venue) ("The Court declines to depart with courts' decades-long interpretation of the venue statute. The residence of 6 Plaintiffs in this District is, 'standing alone, sufficient to establish that venue was proper.'" (quoting *Californians for Renewable Energy. U.S. EPA*, No. C 15 3293 SBA, 2018 WL 1586211, at *6 (N.D. Cal. Mar. 30, 2018)); *East Tex. Baptist Univ. v. Sebelius*, No. H-12-3009, 2013 WL 4678016, at *7 (S.D. Tex. Aug. 20, 2013) ("Under § 1391(e)(1), venue is proper as to all plaintiffs if suit is brought in a district where any one or more of the plaintiffs resides." (quoting *Crane v. Napolitano*, 920 F. Supp. 2d 724, 733 (N.D. Tex. 2013))); *Dow Chem., USA v. Consumer Prod. Safety Comm.*, 459 F. Supp. 378, 384 n.4 (W.D. La. 1978) ("The term 'plaintiff' [in § 1391(e)] relating to venue . . . means a plaintiff rather than all the plaintiffs").

Thus, Defendants' contention that Plaintiffs claims should be "litigated in districts where venue is proper" (Doc. 139 at 2) is plainly incorrect. Here, Plaintiffs NAVY SEAL 2 and NAVY CHIEF WARRANT OFFICER both reside in this district. (Exhibit A.) Thus, venue is proper in this district as to all Plaintiffs.

## CONCLUSION

Because Defendants' motion seeks to challenge claims this Court has already held have a substantial likelihood of success on the merits, and because Plaintiffs' allegations have plainly "nudged [Plaintiffs'] claims across the line from conceivable to plausible," *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007), and for all the foregoing reasons, this Court should deny Defendants' motion.

Respectfully submitted,

/s/ Roger K. Gannam
Mathew D. Staver
Horatio G. Mihet
Roger K. Gannam
Daniel J. Schmid*
Richard L. Mast*
LIBERTY COUNSEL
P.O. Box 540774
Orlando, FL 32854
(407) 875-1776
court@lc.org
hmihet@lc.org
rgannam@lc.org
dschmid@lc.org
rmast@lc.org
*Admitted specially

***Attorneys for Plaintiffs***